# Exhibit A

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **NORTHWESTERN CORPORATION,** | Case Nos. 03-12872 (JLP) |
| Debtor. | |
| **NORTHWESTERN CORPORATION,** | |
| Plaintiff, | |
| -vs- | Adv. No. 04-55051 (JLP) |
| **MAGTEN ASSET MANAGEMENT CORPORATION, and TALTON R. EMBRY,** | |
| Defendants. | |

**ORDER WITH RESPECT TO MOTION OF MAGTEN ASSET
MANAGEMENT CORPORATION AND TALTON R. EMBRY PURSUANT
TO RULE 7041(A) OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE FOR THE PAYMENT OF FEES AND EXPENSES INCURRED**

For the reasons set forth in the Court's Memorandum Opinion of this date,

IT IS ORDERED that the Motion of Magten Asset Management Corporation and Talton

R. Embry Pursuant to Rule 7041(a) of the Federal Rules of Bankruptcy Procedure for the

Payment of Fees and Expenses Incurred [Docket No. 97] is denied in toto.

DATED this 6th day of June, 2005.

BY THE COURT

_/s/ John L. Peterson_
HON. JOHN L. PETERSON
United States Bankruptcy Judge

# Exhibit B

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**NORTHWESTERN CORPORATION,**<br><br>Debtor. | Chapter 11<br><br>Case Nos. 03-12872 (JLP) |
| **NORTHWESTERN CORPORATION,**<br><br>Plaintiff,<br><br>-vs-<br><br>**MAGTEN ASSET MANAGEMENT CORPORATION, and TALTON R. EMBRY,**<br><br>Defendants. | Adv. No. 04-55051 (JLP) |

**MEMORANDUM OPINION WITH RESPECT TO MOTION OF MAGTEN ASSET MANAGEMENT CORPORATION AND TALTON R. EMBRY PURSUANT TO RULE 7041(A) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR THE PAYMENT OF FEES AND EXPENSES INCURRED**

Pending in this adversary proceeding is the Defendants' motion pursuant to Federal Rule of Bankruptcy Procedure 7041(a)(2) (applying Federal Rule of Civil Procedure 41(a)(2) in adversary proceedings) for award of attorney's fees and costs [Adv. Pro. No. 04-55051, Docket No. 97] and Plaintiff's objection thereto [Adv. Pro. No. 04-55051, Docket No. 103]. Briefs have been filed by the parties. After conclusion of oral argument, the Court took the matter under advisement. Thereafter, both parties submitted additional documentation, with Plaintiff's request that the Court take judicial notice of the complaint, the Securities Trading Order, the Hanson deposition, motion of Magten to dismiss the complaint, memorandum of Plaintiff in opposition thereto, order denying the motion to dismiss, motion of the Official Unsecured Creditors

Committee for order permitting trading of securities upon establishing an Ethical Wall, order thereto, and the transcript of the oral argument of May 3, 2005. The Court takes judicial notice of each submission by both parties. This is a core proceeding under 28 U.S.C. section 157(b)(2).

Defendant Embry was at all relevant times 100% owner of the Defendant Magten Asset Management Corporation ("Magten") and chairman of the company board of directors. Magten filed a proof of claim (#842) in the plaintiff's chapter 11 reorganization case, based on an unliquidated amount of the face value of approximately 40% of Debtor Northwestern Corporation ("Northwestern") series A 8.45% Quarterly Income Preferred Securities (QUIPS) owned by Magten, and damages allegedly occurring from an alleged fraudulent transfer in 2002. As a result of Magten's holdings, Magten and Embry were placed on the Official Committee of Unsecured Creditors (the "Committee") by the office of U.S. Trustee. On November 6, 2003, the Court entered an Order Permitting Securities Trading Upon the Establishment of Ethical Wall (the "Securities Trading Order") [Case No. 03-12872, Docket No. 335], which prohibited members of the Committee from trading in securities of Northwestern, or its affiliates, unless and until each Committee member establishes and implements the terms of the Securities Trading Order. Magten, through Embry, requested membership on the Committee and was appointed November 25, 2003. Upon that appointment, like all members of the Committee, Magten and Embry held a fiduciary duty to comply with the Securities Trading Order. On December 18, 2003, Embry, on behalf of Magten, executed a Confidentiality Agreement, whereby both Defendants agreed to maintain as confidential all non-public and proprietary information provided to the Committee by Northwestern. A similar confidentiality agreement was likewise executed by the Defendants with Northwestern. Magten and Embry served on the Committee through May 14, 2004, at which time they were dismissed from the Committee by the U.S.

2

Trustee due to litigation instituted by Magten against Northwestern.

On August 20, 2004, Northwestern filed a complaint against the defendants in this adversary proceeding seeking subordination of the Magten claim, actual damages and equitable relief based on Magten's alleged improper trading of QUIPS while serving as a member of the Committee. The Defendants responded to the complaint by filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which was denied by the Court on November 8, 2004. Thereafter, the Defendants filed an answer to the complaint on November 29, 2004 [Adv. Pro. No. 04-55051, Docket No. 26]. The Court set the matter for trial on February 7, 2005, and the parties undertook pre-trial discovery.

The parties attempted a global settlement of this adversary proceeding and other litigation pending between the parties, but that effort failed after objection by Class 7 creditors who claimed the settlement was contrary to terms of the confirmed Plan. The Court thus refused the global settlement.

Thereafter, on February 25, 2005, Northwestern and Magten filed a joint motion to dismiss this adversary proceeding with prejudice pursuant to Rule 7041(a) (and pending counterclaims in Magten's actions against Northwestern). The Court granted the motion on March 9, 2005 [Adv. Pro. No. 04-55051, Docket No. 94], on the condition that the Defendants would be allowed to file a request for award of fees and costs. Magten did not refute the Plaintiff's reasons for the dismissal as stated in the joint motion. The motion to dismiss stated:

> In reviewing information obtained during the discovery process from the Committee's advisors, Members and Magten, the debtor has determined that while it can prove that the Debtor provided material non-public information to the Committee's advisors, the discovery produced by the Committee does not clearly establish what information was conveyed to the Members. As a result, it no longer makes economic sense for the Debtor to continue the Northwestern adversary proceeding.

3

The motion noted that discovery was not completed as a result of the proposed settlement, but that documents produced by the Committee's advisors do not identify what material, non-public confidential information was provided to the Members or when such information was provided. Thus, Northwestern concluded that in considering litigation costs to the bankruptcy estate, it was no longer cost effective to pursue the action against Magten.

Under Rule 7041(a)(2), when a defendant has filed an answer to the complaint, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829 (3d Cir. 1990), holds that courts generally agree that Rule 41(a)(2) motions should be allowed unless defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit. *Id.* at 863. Since this action was dismissed with prejudice on grounds it was in the best interest of the Debtor, its estate, its creditors and other parties-in-interest, and reserving the right of the Defendants to seek attorney's fees and costs, no plain legal prejudice was incurred by the Defendants by reason of the dismissal. As stated in Wright and Miller, *Federal Practice and Procedure*, Vol. 9, Dismissal of Actions, Rule 41, sec. 2366, pp. 317-12:

> Furthermore, it has been held that if the dismissal is with prejudice, the court lacks the power to require the payment of attorney's fees, unless the case is of a kind in which attorney's fees otherwise might be ordered after termination on the merits.

The treatise cites *Colombrite v. Kelly*, 764 F.2d 122 (2d Cir. 1985); *Couley v. Wilson*, 754 F.2d 769 (7th Cir. 1985); *Mobile Power Enterprises, Inc. v. Power Vac, Inc.*, 496 F.2d 1311 (10th Cir. 1974); *Painter v. Golden Rule Inc.*, 121 F.3d 436 (8th Cir. 1997), *cert. denied*, 523 U.S. 1074; and *Sarkes Tarzian, Inc. v. Philco Corp.*, 351 F.2d 551 (7th Cir. 1965). *See also Dutoit v. Strategic Minerals Corp.*, 136 F.R.D. 82 (D. Del. 1991). As summarized in *York v. Ferris State*

*Univ.*, 36 F.Supp.2d 976 (W.D. Mich. 1998), when a plaintiff voluntarily moves to dismiss with prejudice, attorney's fees can be granted only when exceptional circumstances call for their allowance in order to do justice or when authorized by statute or when agreed to between the parties. *Id.* at 980 (citing *Smoot v. Fox*, 353 F.2d 832 (6th Cir. 1965)). *York* further held that sanctions in the form of attorney's fees under 42 U.S.C. section 1988 where plaintiff's claim "was frivolous, unreasonable or without foundation, even though not brought in subjective bad faith" was not warranted because the defendant was not a prevailing party since it had not obtained a favorable judicial decision on the merits or filed an dispositive motion. *Id.* at 981. The court stated:

> By seeking a voluntary dismissal with prejudice, York, "made the commendable decision not to continue to litigate after it became apparent that he would not be able to meet his burden of proof." *Westmoreland v. J.I. Case Co.*, 714 F.Supp. 397, 398 (E. D. Wis. 1989).

*Id.* at 983.

It is also axiomatic that under the "American Rule," the prevailing party in litigation is not entitled to attorney's fees unless certain stringent exceptions apply. The seminal case of *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975), where the Supreme Court went to considerable lengths to trace the development of the American Rule, held:

> What Congress has done, however, while fully recognizing and accepting the general rule, is to make specific and explicit provisions for the allowance of attorney's fees under selected statutes granting or protecting various federal rights
> . . . .

*Id.* at 261. In the bankruptcy context, Congress has created attorney's fees provisions in the Bankruptcy Code[1] in limited instances, such as sections 362(h) and 506(b), and certainly under

---

[1] Unless otherwise indicated, all citations to statutory sections are to title 11 of the Bankruptcy Code (the "Code"), 11 U.S.C. § 101 *et seq*.

section 330 for professionals employed under sections 327 or 328. In *Agassi v. Planet Hollywood Int'l., Inc.*, 269 B.R. 543 (D. Del. 2001), the court embraced the proposition

> "where the litigated issues involve not basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney's fees will not be awarded absent bad faith or harassment by the losing party." *In re Fobian*, 951 F.2d 1149, 1153 (9th Cir. 1991).

*Id.* at 552. Here, the litigation was filed in a good faith attempt to preserve the integrity of the operations of the Committee, the confidentiality agreements and the fiduciary obligations undertaken by Magten/Embry as members of the Committee.

*Renfrow v. Draper*, 232 F.3d 688 (9th Cir. 2000) holds:

> The rule we announced in *In re Baroff* [105 F.3d 439 (9th Cir. 1997)] does not permit a bankruptcy court to award a party attorney's fees for litigating federal law issues in a bankruptcy court wherever state law is 'integral' to determining dischargeability. Instead we held that attorney's fees should be awarded solely to the extent they were incurred in litigating state law issues.

*Id.* at 694 (citations omitted).

Magten cites authorities such as *In re Mizrahi*, 179 B.R. 322 (Bankr. M.D. Fla. 1995), *Peifer v. Royal Bank of Canada*, 121 F.R.D. 39, 41 (M.D. Pa. 1986) and *Beer v. John Hancock Life Ins. Co.*, 211 F.R.D. 67, 70 (N.D. N.Y. 2002) (quoting *Schwarz v. Folloder*, 717 F.2d 125, 130 (5th Cir. 1985)), that when a complaint is dismissed with prejudice, courts have reasoned that because a dismissal with prejudice is tantamount to a judgment on the merits, the defendant is the prevailing party and should ordinarily be entitled to "costs." However, the *Beer* case supports the Plaintiff's position here in relying upon *Colombrito v. Kelly*, 764 F.2d 122 (2d Cir. 1985):

> The only pertinent exception for present purposes is the court's inherent authority to award fees when a party litigates frivolously or in bad faith. The bad faith exception permits an award upon a showing that the claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for

6

> other improper purpose . . . . *Neither meritlessness alone*, nor improper motives alone, will suffice.

211 F.R.D. 67 at 68-69 (emphasis supplied). *Beer* continued:

> When a lawsuit is voluntarily dismissed *with prejudice* under Fed. R. Civ. P. 31(a)(2) [sic], attorney's fees have almost never been awarded.
>
> * * * *
>
> The reason for denying a fee award upon dismissal of claims with prejudice is simply that the defendant, unlike a defendant against whom a claim has been dismissed without prejudice, has been freed of the risk of relitigation of the issues just as if the case had been adjudicated in his favor at trial, in which event (absent statutory authorization) the American Rule would preclude such an award . . . .

*Id.* at 69.

The *Beer* Court denied an award of attorney's fees on grounds it could not be said with certainty that plaintiff's claim was entirely without color or based on perjury, even assuming arguendo that it was presented for an improper purpose. *Id.* *Beer* did award costs under Federal Rule of Civil Procedure 54(d), but, as will be shown in this Opinion, the bankruptcy rule on costs is different from the Federal District Court Rule. As *Beer* followed *Colombrito v. Kelly, supra*, and Defendants here rely on *Beer*, I conclude the case authorities support the proposition that where a lawsuit is voluntarily dismissed with prejudice an award of attorney's fees is appropriate only where there is independent statutory authority for such award because "We would not want to discourage such a salutary disposition of litigation by threatening to award attorney's fees if a plaintiff did not complete a trial . . . [W]e decline to adopt [the exceptional circumstances test] as the standard for a fee award under Rule 41(a)(2)." *Colombrito*, 764 F.2d at 134-35.

Finally, Defendants, relying on *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991), assert the American Rule has a definite exception to punish a plaintiff for bad faith, vexatious, oppressive and wanton conduct, citing also 28 U.S.C. section 1927 (attorney who multiplies proceeding may

7

be required to satisfy costs and fees). This authority is clearly misplaced to the present issues. One only has to cite the opening sentence of *Chambers* to determine its inapplicability, where the Court opens the decision as thus: "This case requires us to explore the scope of inherent power of a federal court to sanction a litigant for bad faith conduct." *Id.* at 35. The Court then concluded:

> Chambers maintains that 28 U.S.C. § 1927 and the various sanctioning provisions in Federal Rules of Civil Procedure [Rules 11, 16(f), 26(g), 30(g), 37, 56(g)] reflect a legislative intent to displace the inherent power. At least, he argues that they obviate or foreclose resort to the inherent power in this case. We agree with the court of appeals that neither proposition is persuasive.
>
> * * * *
>
> a court may assess attorney's fee when a party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Alyeska, supra.* In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, *Universal Oil, supra*, at 580, as it may when a party "shows bad faith by delaying or disrupting litigation or by hampering enforcement of a court order."

*Id.* at 42-46. In short, two propositions involving this case stand out. First, *Chambers* had absolutely nothing to do with Rule 7041(a)(2); and second, there is nothing before this Court that suggests the type of legal conduct here perpetrated by Chambers that requires imposing sanctions for "the relentless, repeated fraudulent and brazenly unethical efforts of Chambers and others." 501 U.S. at 58. In sum, I see nothing in this record which suggests or even comes close to suggesting, that the plaintiff practiced fraud on the Court or Defendants, so as to be a predicate for applying the *Chambers* rule.

Yet, the Defendants argue that the complaint was filed in bad faith for the purpose of obtaining leverage against the Defendants and forcing Defendants to incur substantial fees in defending the frivolous action. I only can conclude here that Defendants counsel indeed incurred exceptionally exorbitant fees and costs. The Defendants assert that prior to filing the action, the

8

Plaintiff had obtained from Magten its trades in QUIPS, showing no trades from the time it attended the first Committee meeting until after Magten was no longer on the Committee. I find little belief in this argument. The complaint alleges that after Magten was on the Committee it purchased 28,540 QUIPS beginning December 1, 2003 through January 21, 2003, and sold 3,800 QUIPS on December 17, 2003. Magten thus increased its QUIPS holdings, which on October 29, 2003, consisted of 33% of QUIPS debentures. Further, after being ejected from the Committee, but still bound by the Ethical Wall, Magten purchases another 95,000 QUIPS from May 14, 2004 through July 8, 2004. The Plaintiff had colorable right to infer that Magten's QUIPS trades were based on non-public, confidential information supplied to the Committee advisors by the Plaintiff, and which it could rightly assume was passed on to the Defendants. Magten cuts the pie thin when it argues that the trades after appointment were made before "it attended its first committee meeting." But that it precisely why Magten must fail here. The facts must be put in proper perspective.

    The Plaintiff was sued by Magten for fraud on May 14, 2004, before the Plaintiff filed this action against Magten. Under such circumstance, Plaintiff, its counsel or any employee, was prohibited from interviewing or contacting Embry as to why he made the purchases and sales, whether it was or was not based upon non-public information supplied to the Committee advisers by the Plaintiff. Moreover, the Plaintiff knew it had provided non-public, confidential information to the Committee advisers, but it did not know until after discovery produced by the Committee what information was conveyed to Committee members. The challenge by Magten that Plaintiff never undertook pre-trial investigation to determine what non-public information went to Magten when it engaged in substantial trades to increase its pre-petition holdings completely ignores the adversary position which Plaintiff faced due to Magten's fraud action.

Magten was at that time, and still is, an antagonist to the reorganization effort. Plaintiff's desire to keep the reorganization process clean by filing the lawsuit against Magten was done under a very strong colorable right, which is completely divorced from fraud, vexatious, wanton or oppressive conduct. I find the contentions of the Defendants to the contrary are without merit.

In sum, the complaint, a notice pleading, alleged the Securities Trading Order prohibited each Committee member from trading debtor's securities unless and until each member established an ethical wall. The order provided, as alleged in the complaint, that each member, including Defendants, became subject to the ethical wall order unless such party filed an "Unbound - by Order Notice." CEO Hanson's deposition testimony thus relates that the debtor had facts to support Magten trades after being bound by the Ethical Wall order, and that the debtor provided to the financial advisers and attorneys of the Committee material non-public information from which the Debtor could properly assume such materials were made available to each Committee member. Following further discovery, the Debtor only then determined that proof of the material information was passed to Defendants could not be substantiated. While Defendant's argument makes much of a simple allegation that infers Magten acquired 40% of the QUIPS during the relevant period, a reading of that paragraph of the complaint set forth that Defendants breached its duties in connection with purchase of more than 100,000 QUIPS after becoming members of the Committee and securing material, non-public information from the Debtor. Such allegations are subject to proof at trial, and do not at all involve bad faith, vexatious or wanton misconduct.

Although I have concluded the award of fees and costs are not warranted from the reasons set forth above, I deem it necessary to comment on the applications. The Defendants have filed two separate attorneys' fee applications, one by Fried, Frank, Harris, Shriver & Jacobsen LLP

("Fried Frank") and the other by Blank, Rome LLP ("Blank Rome"). The Fried Frank Application consists of thirty-two pages requesting an award of fees of $698,602.00, while Blank Rome's application seeks additional fees of $11,922.00, for a grand and exorbitant amount of $710,524.00. In addition, Fried Frank seeks costs of $73,596.30.

While Delaware Local Bankruptcy Rule 2016-2 may not apply to the pending applications (Rule 2016-2(a)), the rule does provide this Court with guidance for ruling on the applications as to their reasonableness and the necessity of services and costs. Moreover, Federal Rule of Bankruptcy Procedure 7054(b) governs the allowance of costs to a prevailing party when a statute of the United States or rules provide otherwise.

As to the attorneys' fee, Local Rule 2016-2(c) (General Information Requirements) and Local Rule 2016-2(d) (Information Requirements Relating to Compensation Requests) were totally ignored. Subsection (d) states a request shall sufficiently detail activity descriptions to allow the Court to determine whether all time, or any portion thereof, is actual, reasonable and necessary, shall include:

> (i)   All activity descriptions, shall be divided into general project categories of time;
> (ii)  Each activity shall include a time allotment billed in increments of one-tenth of an hour (6 minutes).
> (iii) Each activity description shall include the type of activity and the subject matter;
> (iv)  Activity descriptions shall not be lumped – each activity shall have a separate description and time allotment;
> (v)   Travel time during which no work is performed shall be separately described and may be billed at no more than 50% of regularly hourly rates;
> (vi)  The activity description shall individually identify all meetings and hearings, each participant, the subject of the meeting or hearing and the participant's role.
> (vii) Activity description shall be presented chronologically.

The Fried Frank billing statements show extensive duplication of legal work on the same

subject matter, predominant lumping and vague activity descriptions to the point of being meaningless. Fried Frank worked on the legal matters for a total of eighty-one days from August 20, 2004 through January 27, 2005. For those eighty-one days, the daily rate computes at $8,624.71. To understand how Fried Frank got to such exorbitant rate, we need only to examine a few details of the application. The first four entries dated August 20, 2004, by four different lawyers, are described as "Reviewed Northwestern complaint" for a total of 4.7 hours at a charge of $2,468.50. The complaint is fourteen pages in length. The duplication never stopped, but in fact gets worse.

The firm used twenty-four lawyers or paralegals (not identified as to each person) on the defense with hourly rates ranging from $970/hour to $150/hour. On some days, lawyers billed fourteen to sixteen hours a day. As an example of over-lawyering, on January 10, 2005, eight lawyers submitted time charges totaling 95.4 hours for that day for a total fee request of $24,147.00. The next day, January 11, 2005, nine lawyers billed time totaling 83.3 hours at a charge of $29,728.50. One lawyer on that day billed 14.2 hours. Activity descriptions for those days, which are representative of the entire application, show numerous duplication such as "discovery efforts," "NOR trial efforts," "Review Fried Frank subpoena," and many intraoffice conferences listed repeatedly through the application as "team meeting."

The application contained twenty-one "REDACTED" entries. Numerous entries are "Review research results," "Research and Reviewing," "Review Research results and discovery status," etc. – all by different attorneys. One lawyer even billed one hour at $335/hour for work on Christmas Day for "Drafted response to interrogatories," which was continued the next day for six hours at $2,010.00. The top paid lawyer ($970/hour) expended $2,910.00 for "Efforts on behalf of client re: NOR litigation." That entry tells us nothing as to the activity. Another lawyer

12

at $540/hour spent 11.6 hours for a fee of $6,264.00 on "SJ papers" on January 26, 2005, which have never been filed. All in all, the application totally insufficient to determine the reasonableness and necessity of the legal activity which spanned only an eight month period.

The Blank Rome billing data is no better. Four lawyers worked on the case from August 20, 2004 through January 26, 2005. The billing statements clearly convince the Court that Blank Rome was a "review" firm of documents sent to it by Fried Frank, for over fifty entries are listed as reviewing and scanning documents, after which a number of entries are listed for "electronically filing" documents, at hourly rates ranging from $440/hour to $190/hour. The total hours expended were 46.3 hours, doing what can only be described as ministerial work. I find the charges unreasonable and unnecessary.

Finally, we come to the costs of $73,596.30. They are as follows:

Court reporting - $8,256.93
Telecommunications – Phone 22.05 copies 647.05
Courier service – 165.65
Computerized research – 10,776.74
Word processing – 1,994.74[2]
Duplicating - 43,124.29 (287,493 pages at $.15/page)
Transportation – Late night – 4,154.49
Working meals – 2,649.73
Secretarial and paralegal overtime – 1,546.25[3]
Temporary paralegals – 258.38

Rule 7054(b) provides that in an adversary proceeding a "[bankruptcy] court *may* allow

---

[2] Word processing expenses incurred in generating legal papers are not taxable as costs under 28 U.S.C. section 1920(3) as "printing." *El–Fadl v. Central Bank of Jordan*, 163 F.R.D. 389, 390 (D. D.C. 1995). The same is true for courier services, express mail, postage, telephone, telex and facsimile. *Id.* Legal research, whether computer generated or manually performed by use of digests or books, is considered part of an attorney's fees, not costs under 28 U.S.C. section 1920. *Id.* at 391.

[3] *In re Leonard Jed Co.*, 118 B.R. 339, 342 (Bankr. D. Md. 1990), holds reimbursement for secretarial overtime is overhead, and states "what reason is there to charge a client merely because routine services were rendered after normal business hours?" *Accord, In re Island Helicopter Corp.*, 53 B.R. 71, 73 (Bankr. E.D. N.Y. 1985).

13

costs to the prevailing party except when a statute . . . or these rules provides otherwise." (Emphasis added). Federal Rule of Civil Procedure 54(d), which makes an award of costs to the prevailing party mandatory in federal cases, is not incorporated in Rule 7054(b). *In re Celotex Corp.*, 251 B.R. 163, 165 (Bankr. M.D. Fla. 2000); *see, also, In re Gioioso*, 979 F.2d 956, 963 n.10 (3rd Cir. 1992) (noting courts have denied costs because of a complete absence of bad faith or frivolity or because the party seeking costs was not technically the prevailing party). It is clear an award of costs under Rule 7054(b) is discretionary. *Celotex*, 251 B.R. at 166-67.

Even if the Court's discretion is so moved to allow costs, 28 U.S.C. section 1920 presents the statutory guideline for items which are taxable as costs. That section provides allowable costs for: (1) fees of the clerk and marshal; (2) fees of court reporter and any part of the transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fee for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under Section 1923 of title 28; and (6) compensation of court appointed experts and interpreters.

I determine that the Defendants were not the prevailing party in this action because this case was dismissed with prejudice upon joint motion of each party, thereby terminating the litigation once and for all without trial on the merits.

Even if I were to hold that costs are allowable to the Defendants, the "expenses" sought by the Defendants in the sum of $73,996.30 are not allowable costs under 28 U.S.C. section 1920. The duplicating cost of $43,124.29 is not explained, and if I assume that it is computed at the allowable local rule rate of $.15 per page, it would translate into 287,749 pages of copy – a clearly exorbitant number considering no trial ever occurred, nor was one exhibit ever prepared and introduced into evidence. A reasonableness standard is inherent in award of costs under 28

14

U.S.C. section 1920, and this is particularly true where, to invoke the discretion of the court, the party asserting the cost must show the copies were "necessarily obtained" for use in the case or preparation of the defense. *Picture Patent Co. v. Universal Felson Mfg*, 232 F. 263 (D.C. N.Y. 1916) (noting that the word "necessarily" is limited to mean copies of papers essential to cause). There is absolutely no record presented by the Defendants to show the 287,749 copies were reasonably necessary. *Jones v. Unisys Corp.*, 54 F.3d 624, 633 (10th Cir. 1995) (holding that the District Court did not err in awarding only small portion of claimed costs upon finding they were not reasonably necessary).

As to court reporting for $8,256.93, where again I must make an assumption that these were deposition costs and thus may possibly be awarded under 28 U.S.C. section 1920(2), there is no record as to the fees of the court reporter or what part of the stenographic transcript was necessarily obtained for use in the defense of the case. Moreover, Judicial Conference rates for deposition transcripts apply to charges for transcripts ordered from official court reporter as well as those charges by private court reporter. *Cengr v. Fusibond Piping Systems, Inc*, 135 F.3d 445, 455-56 (7th Cir. 1998). There is no showing by the Defendants that these rates were even considered. The costs under 28 U.S.C. section 1920(2) are denied since there is no record to support the allowance of $8,256.93 without listing who, where, what for, when and what rate for each deponent. *Id.* at 456-57. Such state of the record only compounds the insufficiency of the Defendants' application, where the Defendants were not prevailing parties on the merits.

All other requests for costs for telecommunications, courier services, computerized research, word processing, transportation for late night and other exigencies, working meals, secretary and paralegal overtime, and temporary paralegals are likewise denied as beyond any allowable costs under 28 U.S.C. section 1920. *El-Fadl v. Central Bank of Jordan, supra.*

15

It is well established in *Renfro v. Draper*, 232 F.3d at 695, that as to reasonableness, the bankruptcy court shall limit its award of permissible costs itemized in 28 U.S.C. section 1920, and can only depart from that statute if an agreement between the parties was litigated and such agreement provides for all reasonable costs. Of course, no such agreement was involved in this adversary proceeding.

If the Defendants were the prevailing party, which they were not, such prevailing party must make a sufficient record to move the Court's discretion as the burden for entitlement for costs and expenses falls on the applicant. *Matter of Evangeline Refining Co.*, 890 F.2d 1312, 1326 (5th Cir. 1989). Moreover, each expense item must be properly documented with enough specificity to permit he court to evaluate the expense. *In re S.T.N. Enterprises*, 70 B.R. 822, 834 (Bankr. D. Vt. 1987); *see, also, Young v. Gelato, Inc.*, 94 B.R. 622, 625 (9th Cir. BAP 1988), *aff'd.*, 930 F.2d 26 (9th Cir. 1991) (Lack of adequate record docs not support necessity burden). In sum, the expense items are unreasonably high, not documented, and most fall beyond the express provisions of 28 U.S.C. section 1920. I exercise my discretion to deny all costs to Magten and express the admonition set forth in *Crawford Fitting Co. v. J.T. Gibbs, Inc.*, 482 U.S. 437 (1987) where the Court stated: "The comprehensive scope of [28 U.S.C. section 1920] and the particularity with which it is drafted, demonstrates to us that Congress meant to impose rigid controls on cost shifting in federal courts." *Id.* at 444. And after all is said, Federal Rule of Bankruptcy Procedure 1001 provides: "These rules shall be construed to secure the just, speedy and inexpensive determination of every case and proceeding."

## CONCLUSION

I determine the complaint filed by the Plaintiff against Magten and Embry was under colorable facts and rights in light of Magten/Embry membership on the Committee, which was,

16

through the Committee advisors, supplied non-public, confidential information that the Plaintiff had the right to assume was supplied to the Members. When discovery provides the burden of proof could not be met, the Plaintiff, together with the Defendants, filed a joint motion to dismiss the adversary proceeding with prejudice, leaving it for the Defendants to seek fees and costs. Therefore, the complaint was not filed in bad faith, nor for vexatious or harassment purpose, but rather to preserve the integrity of the reorganization process. Upon entry of the order granting the joint motion, neither party was a prevailing party. In sum, to repeat from *Westmoreland v. J.J. Case Co., supra*, the Plaintiff, joined by the Defendants, "made the commendable decision not to continue to litigate after it became apparent that it would not be able to meet its burden of proof."

Under these circumstances, the defendants are not entitled to an award of attorneys' fees under the American Rule where the action was dismissed with prejudice. There is no statutory provision for allowance of the attorneys' fees, and furthermore any award would be precluded because the applications are totally deficient and unreasonable. The same is true for an award of costs under 28 U.S.C. section 1920, which precludes such award.

**IT IS THEREFORE ORDERED** the Application of Defendants Magten/Embry for award of attorneys' fees and costs upon dismissal of this adversary proceeding with prejudice, is denied.

A separate Order shall be filed.

DATED this 6th day of June, 2005.

BY THE COURT

_____
HON. JOHN L. PETERSON
United States Bankruptcy Judge

17