**TAB 1**

LEXSEE 2002 US DIST LEXIS 10628



Analysis
As of: Dec 21, 2006

## DeKalb Genetics Corp., et al. vs. Pioneer Hi-Bred Int'l

### 96 C 50113

## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

### *2002 U.S. Dist. LEXIS 10628*

#### June 13, 2002, Decided
#### June 13, 2002, Filed, Date Docketed

**DISPOSITION:** [*1] Defendant's consolidated motion for costs and attorney's fees granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff corporation brought suit against defendant company and alleged patent infringement. The corporation's motion under Fed. R. Civ. P. 41(a)(2) to voluntarily dismiss all of its charges of infringement was granted. The company moved for costs and attorney's fees under Fed. R. Civ. P. 54(d) and *35 U.S.C.S. § 285.*

**OVERVIEW:** The first question the motion for costs and attorney's fees raised was who the "prevailing party" was in the two consolidated cases. The court found that the voluntarily dismissal with prejudice of all the corporation's charges of infringement conferred on the company "prevailing party" status under Fed. R. Civ. P. 54(d). The corporation argued instead that it was the "prevailing party" once the litigation between the parties was viewed in its entirety. The court found that it could not accept the corporation's "lost the battle but won the war" approach to determining who was the prevailing party. As the prevailing party, the company was entitled to its costs. With regard to the company's motion for attorney's fees, the court found that the cases were not the sort of "exceptional" cases that warranted an award of attorney's fees. The company had not shown by clear and convincing evidence that the corporation filed the patent infringement actions in bad faith so as to justify an

award of attorney's fees under *35 U.S.C.S. § 285.* The imposition of attorney's fees against the corporation in just the two cases ignored the reality of the much larger dispute between the parties.

**OUTCOME:** The company's motion for costs was granted and its motion for attorney's fees was denied.

**COUNSEL:** For DEKALB GENETICS CORP, plaintiff: James P. Devine, John James Holevas, Stephen E. Balogh, Williams & McCarthy, Ronald A. Barch, Cicero & France, Rockford, IL.

For DEKALB GENETICS CORP, plaintiff: Willem G. Schuurman, David L. Parker, Mark J. Rozman, Gary J. Sertich, Nicole Stafford, Arnold, White & Durkee, Austin, TX.

For DEKALB GENETICS CORP, plaintiff: Roderick B. Williams, Howrey, Simon, Arnold, & White, LLP, Houston, TX.

For DEKALB GENETICS CORP, plaintiff: Charles H. De La Garza, Arnold, white & Durkee, Minneapolis, MN.

For MONSANTO COMPANY, intervenor: Daniel James McGrail, Attorney at Law, Rockford, IL.

For PIONEER HI-BRED INTERNATIONAL, defendant: Michael F. O'Brien, McGreevy, Johnson & Williams, Rockford, IL.

For PIONEER HI-BRED INTERNATIONAL, defendant: Annette Michele McGarry, Wildman, Harrold, Allen & Dixon, Randall S. Rapp, Sharon R. Barner, Jeanne Marie Gills, Foley & Lardner, Chicago, IL.

For PIONEER HI-BRED INTERNATIONAL, [*2] defendant: Richard S. Florsheim, Foley & Lardner, Milwaukee, WI.

For PIONEER HI-BRED INTERNATIONAL, defendant: Eric H. Weisblatt, R. Danny Huntington, Regis E. Slutter, Burns, Doane, Swecker & Mathis, Alexandria, VA.

For PIONEER HI-BRED INTERNATIONAL, defendant: Stephen A. Bent, Foley & Lardner, Washington, DC.

For PIONEER HI-BRED INTERNATIONAL, counterclaimant: Sharon R. Barner, Foley & Lardner, Chicago, IL.

For PIONEER HI-BRED INTERNATIONAL, counterclaimant: Ronald M Wawrzyn, Richard S. Florsheim, Foley & Lardner, Milwaukee, WI.

For PIONEER HI-BRED INTERNATIONAL, counterclaimant: Stephen A. Bent, Foley & Lardner, Washington, DC.

For DEKALB GENETICS CORP, counter-defendant: James P. Devine, John James Holevas, Stephen E. Balogh, Williams & McCarthy, Ronald A. Barch, Cicero & France, Rockford, IL.

For DEKALB GENETICS CORP, counter-defendant: Willem G. Schuurman, Mark B. Wilson, David L. Parker, Mark J. Rozman, Arnold, White & Durkee, Austin, TX.

For DEKALB GENETICS CORP, counter-defendant: Keith B. Willhelm, Danny L. Williams, Roderick B. Williams, Howrey, Simon, Arnold, & White, LLP, Houston, TX.

JUDGES: Philip G. Reinhard.

OPINION BY: Philip G. Reinhard

OPINION: [*3]

## MEMORANDUM OPINION AND ORDER

This order addresses Pioneer's consolidated motion for costs and attorney's fees under *Federal Rule of Civil Procedure 54(d)* and *35 U.S.C. § 285* in case numbers 96 C 50113 and 96 C 50240. The first question this motion raises is who the "prevailing party" in these two consolidated cases is. On November 10, 1998, this court granted DeKalb's motion under Rule 41(a)(2) to voluntarily dismiss with prejudice all of its charges of infringement in these two cases and entered judgment accordingly. As the relatively scarce authority nearly unanimously indicates, such a voluntary dismissal with prejudice had the effect of conferring on Pioneer "prevailing party" status under Rule 54(d). See *Cantrell v. International Bhd. of Elec. Workers, 69 F.3d 456, 456, 458 (10th Cir. 1995)* (en banc); *Schwarz v. Folloder, 767 F.2d 125, 130 (5th Cir. 1985)*; see also *Zenith Ins. Co. v. Breslaw, 108 F.3d 205, 207 (9th Cir. 1997)* (per curiam), abrogated on other grounds by *Association of Mexican-Am. Educators v. California, 231 F.3d 572 (9th Cir. 2000); First Commodity Traders, Inc. v. Heinold Commodities, Inc., 766 F.2d 1007, 1015 (7th Cir. 1985);* [*4] 10 Daniel R. Coquillette, et al., *Moore's Federal Practice § 54.171*(3)(c)(iv) (3d ed. 2001); 10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2667, pp. 209-10 (3d ed. 1998). DeKalb does not at all question this authority but argues instead that it is really the "prevailing party" once the litigation between the parties is viewed "in its entirety." Referring to a settlement agreement resolving nine other related but separate cases filed in this court and involving the same parties, certain aspects of which were favorable to DeKalb, DeKalb claims it was the overall victor in the litigation between the two companies. Even assuming this characterization is accurate, the court simply cannot accept DeKalb's "lost the battle but won the war" approach to determining who is the prevailing party in the two, and only two, cases before it in the pending motion. The fact is that DeKalb voluntarily dismissed its infringement claims *in these two cases* with prejudice, leaving Pioneer the prevailing party for Rule 54(d) purposes *in these two cases.* The court thus finds Pioneer is entitled to its costs for cases 96 C 50113 and 96 C 50240. n1

> n1 That said, the court appreciates and shares DeKalb's concern about sorting out the costs related to these two cases from the other nine cases. For that reason Pioneer's costs are limited to those that were reasonable and necessary to just these two cases. In other words, Pioneer may not recover costs related *only* to cases *other* than 96 C 50113 or 96 C 50240. The parties are to try compromising on their own as to which costs are pertinent to these two cases. Pioneer shall file its Bill of Costs within twenty-one days from the date of this order; if no compromise is reached,

2002 U.S. Dist. LEXIS 10628, *

DeKalb shall file any objections thereto within ten days thereafter; and Pioneer shall file its response thereto within seven days thereafter.

[*5]

Turning to Pioneer's request for attorney's fees, the court assumes *arguendo* Pioneer is the prevailing party under *35 U.S.C. § 285*, and rejects DeKalb's argument that it is really the prevailing party, for the same reasons stated above. Even so, the court finds these are not the sort of "exceptional" cases to warrant an award of attorney's fees. See id. As the moving party, Pioneer bears the burden of proving by clear and convincing evidence that these are "exceptional cases" under § 285 because DeKalb pursued them in bad faith, engaged in vexatious or unjustified litigation, or filed frivolous suits. See *Reactive Metals & Alloys Corp. v. ESM, Inc., 769 F.2d 1578, 1582 (Fed. Cir. 1985);* see also *Hoffmann-La Roche Inc. v. Invamed Inc., 213 F.3d 1359, 1365 (Fed. Cir. 2000); Cambridge Prods., Ltd. v. Penn Nutrients, Inc., 962 F.2d 1048, 1051-51 (Fed. Cir. 1992).* This requires "proof of actual wrongful intent" or "gross negligence" -- i.e., that DeKalb "recklessly concluded that [Pioneer] infringed." *Machinery Corp. of Am. v. Gullfiber AB, 774 F.2d 467, 473 (Fed. Cir. 1985).*

Pioneer's [*6] essential argument here is that long before DeKalb filed these two actions it knew Pioneer's "protoplast uptake method of transformation" (a.k.a. the "T25 event") did not infringe, either literally or under the doctrine of equivalents, on the three DeKalb patents at issue in these cases (the '520, '880, and '877 patents), which used instead the method of "microprojectile bombardment." As evidence of this, Pioneer points to a declaration by Dr. Christopher Flick, DeKalb's Director of Research, and exhibits attached thereto, to show Dr. Flick (and therefore DeKalb) understood at least by May 1995 -- a year before these cases were filed -- how the T25 event worked and that it, not microprojectile bombardment, was used to create Pioneer's "PAT com products." It also offers excerpts of deposition testimony from various researchers in the area to show that the T25 event does not infringe on the microprojectile bombardment method. In response DeKalb refers to evidence in the record supporting its theory that the T25 event and microprojectile bombardment are legally equivalent. Although DeKalb's evidence is not particularly compelling, the court finds it does establish at a minimum that DeKalb's [*7] decision to file these two actions was not made in bad faith or completely lacking a factual foundation. It is true DeKalb has relied on carefully selected portions of depositions to support its equivalence argument, but Pioneer is equally guilty of the same thing in compiling its evidence that the two methods are not equivalent. The court has also carefully considered Pioneer's remaining arguments and evidence, including the trial testimony of Dr. Nicholas Everett in a related patent suit that was tried in Delaware and DeKalb's refusal to produce the opinion (if any) of the outside counsel it retained before filing suit, but finds they add little in proving the "exceptional" nature of these two cases. In short then, the court finds Pioneer has not shown by clear and convincing evidence that DeKalb filed these actions in bad faith so as to justify an award of attorney's fees under § 285.

Alternatively, even assuming these cases fall into the "exceptional" category, the court would nevertheless exercise its discretion not to award attorney's fees under § 285. See *Superior Fireplace Co. v. Majestic Prods. Co., 270 F.3d 1358, 1378 (Fed. Cir. 2001)* (stating that even [*8] if court finds case is exceptional under § 285, court may still exercise its discretion not to award fees). Besides the reasons stated in the previous paragraph, additional reasons weigh against an award of fees in these cases. In particular, although not relevant in determining who is a "prevailing party," the court finds it proper in determining whether to assess fees to view the litigation between these parties as a whole, rather than looking at these two cases in isolation. No less than eleven separate infringement or noninfringement cases have been filed in this court over the last six years, all involving DeKalb's and Pioneer's com product-related patents. These cases were especially complex and discovery-intensive. One of these cases eventually went to trial, ending in a hung jury. The parties also engaged in very extensive settlement discussions, which lead to the complete settlement of nine of these cases. Viewed in this broader context, imposing attorney's fees against DeKalb in just these two cases would ignore the reality of the entire and much larger dispute between these parties. With nine of the eleven cases already settled, the court does not see how fee shifting in [*9] the remaining two cases would serve any useful purpose as an "instrument of justice." Id.

For the reasons stated above, Pioneer's consolidated motion for costs and attorney's fees is granted in part and denied in part: Pioneer is awarded its costs in cases 96 C 50113 and 96 C 50240 but is denied its request for attorney's fees in those two cases.

Philip Reinhard

6/13/02

**TAB 2**

LEXSEE 2001 US DIST LEXIS 24044

Caution
As of: Dec 21, 2006

### LISE NICOLE DORFSMAN, et al., v. LAW SCHOOL ADMISSION COUNCIL, INC.

### CIVIL ACTION NO. 00-0306

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### *2001 U.S. Dist. LEXIS 24044*

### November 28, 2001, Decided

**DISPOSITION:** [*1] Plaintiffs' Motion for Voluntary Dismissal granted. Defendant's request that Court issue an Order recognizing Defendant's right to seek fees, costs and expenses associated with litigation denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff three individuals brought suit against defendant law school admissions council (LSAC) under the Americans with Disabilities Act, challenging the LSAC's policies and procedures for providing disability accommodations to students registered to take the law school admissions test. One individual withdrew soon after filing the complaint, another withdrew later, and the third settled. Plaintiffs moved for voluntary dismissal.

**OVERVIEW:** Plaintiffs conceded they had no standing to proceed with the current action. While LSAC did not oppose the dismissal of the pending action, it challenged that such a dismissal should have been with prejudice and should have precluded plaintiffs from seeking fees, costs and expenses associated with the litigation. The facts of the case clearly warranted dismissal with prejudice as plaintiffs conceded that they had no standing to proceed. Therefore, since there were no plaintiffs with standing and no class was certified, dismissal with prejudice was appropriate. LSAC did not demonstrate any exceptional circumstances warranting the imposition of fees and costs. One of the individuals voluntarily withdrew her cause of action. Accordingly, she did not prevail on any of the material issues presented in the case,

nor had she effectuated a legal change in her relationship with LSAC. The settling individual failed to achieve a judicially sanctioned change in the parties' legal relationship. Accordingly, she was not considered a "prevailing party" for the purposes of recovering attorney's fees.

**OUTCOME:** Plaintiffs' motion for voluntary dismissal was granted and the matter was dismissed with prejudice. The LSAC's request that the court issue an order recognizing its right to seek fees, costs and expenses associated with litigation was denied. The court further found that plaintiffs were precluded from seeking attorney's fees.

**COUNSEL:** For LISE NICOLE DORFSMAN, CIMA FATOMEH AMIRI. PLAINTIFFS: DAVID FERLEGER, DAVID FERLEGER, J.D., BALA CYNWYD, PA USA.

For LAW SCHOOL ADMISSIONS COUNCIL, INC., KIM DEMPSEY, DEFENDANTS: JOANNE D. SOMMER, EASTBURN & GRAY, DOYLESTOWN, PA USA.

For LAW SCHOOL ADMISSIONS COUNCIL, INC., KIM DEMPSEY, DEFENDANTS: JANE E. LEOPOLD-LEVENTHAL, EASTBURN & GRAY, P.C., DOYLESTOWN, PA USA.

**JUDGES:** HERBERT J. HUTTON, J.

**OPINION BY:** HERBERT J. HUTTON

## OPINION:

### MEMORANDUM AND ORDER

HUTTON, J.

November 28, 2001

Presently before the Court are Plaintiffs' Motion to Dismiss (Docket No. 73), Defendant's Reply to Plaintiffs' Motion to Voluntarily Dismiss Cause of Action (Docket No. 74), Plaintiffs' Response to Defendant's Reply to the Motion to Dismiss (Docket No. 75), and Defendant's Sur-Reply to Plaintiffs' Motion to Dismiss (Docket No. 76). For the reasons discussed below, the Court will dismiss the above matter with prejudice. In addition, the Court declines to issue an Order recognizing Defendant's [*2] right to seek fees, costs, and expenses incurred in this litigation. The Court further finds that Plaintiffs are precluded from seeking attorney's fees.

### I. BACKGROUND

Plaintiffs brought suit against the Defendant Law School Admissions Council ("LSAC") on January 18, 2000 under the American's with Disabilities Act ("ADA"). The suit challenged the LSAC's policies and procedures for providing disability accommodations to students registered to take the Law School Admissions Test ("LSAT"). The original complaint named three plaintiffs: Pearl De La Cruz, Lise Nicole Dorfsman, and Cima Fatomeh Amiri. The first named-plaintiff, Pearl De La Cruz, voluntarily withdrew from the litigation soon after the complaint was filed. On February 12, 2001, this Court approved a "Stipulation Regarding Cima Amiri" entered into by the parties and granting Plaintiff Amiri the accommodations she sought. n1

n1 A dispute continued to exist as to Plaintiff Amiri's rights to attorney's fees.

On May 31, 2001, Plaintiffs filed a [*3] Motion for Class Certification. The Court denied Plaintiffs' motion with leave to renew on August 9, 2001, giving Plaintiffs thirty days to substitute a new class representative with live claims. In addition, the Court postponed any decision regarding class certification until new representatives for the class were named. Prior to the Court's ruling on the motion for class certification, Plaintiff Lise Dorfsman withdrew from the litigation on June 29, 2001.

Plaintiffs then moved this Court for voluntary dismissal of the claim on September 5, 2001. In their Motion, Plaintiffs concede that Lise Nicole Dorfsman and Cima Fatomeh Amiri have no standing to proceed with the current action. See Pls.' Mot. to Dismiss at P 2. While

LSAC does not oppose the dismissal of the pending action, LSAC challenges that such a dismissal should be with prejudice and should preclude Plaintiffs from seeking fees, costs and expenses associated with the litigation. Furthermore, LSAC requests an order from this Court recognizing LSAC's right to seek fees, costs, and related expenses incurred in defending against the instant lawsuit.

### II. DISCUSSION

#### A. Voluntary Dismissal with Prejudice  [*4]

*Rule 41(a)(2) of the Federal Rules of Civil Procedure* provides that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. . . . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice." *Fed. R. Civ. P. 41(a)(2).* If a motion for dismissal under Rule 41(a)(2) fails to specify whether it requests dismissal with or without prejudice, the matter is left to the discretion of the court. *Spring City Corp. v. Am. Bldg. Co., 1999 U.S. Dist. LEXIS 19302, Civ. A. Nos. 97-8127, 98-105, 1999 WL 1212201, *2* (E.D. Pa. Dec. 17, 1999); see also Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2367 (1995). "A dismissal without prejudice is not a final adjudication on the merits; instead, it leaves the parties where they would have stood had the lawsuit never been brought." *Selas Corp. of Am. v. Wilshire Oil Co., 57 F.R.D. 3, 8 (E.D. Pa. 1974).* Conversely, a dismissal of an action with prejudice is "a complete adjudication of the issues presented by the pleadings and is a bar to further action between the parties." Id.

"A [*5] dismissal with prejudice may be granted 'where it would be inequitable or prejudicial to defendant to allow plaintiff to refile the action.'" *John T. v. Del. Co. Intermediate Unit, 2001 U.S. Dist. LEXIS 18254, Civ. A. No. 98-5781, 2001 WL 1391500,* at *4 (E.D. Pa. Nov. 7, 2001) (quoting *Chodorow v. Roswick, 160 F.R.D. 522, 523 (E.D. Pa. 1995)).* Courts generally consider four factors when considering whether to dismiss an action with prejudice: (1) whether a motion for summary judgment has been filed; (2) the extent of a defendant's efforts and expenses in preparing for trial; (3) the excessive expenses in defending a second action; and (4) insufficient explanation for dismissal by the plaintiff. *Horizon Unlimited, Inc. v. Richard Silva & SNA, Inc., 1999 U.S. Dist. LEXIS 13320, Civ. A. No. 97-7430, 1999 WL 675469,* at *5 (E.D. Pa. Aug. 31, 1999) (citing *Ellis v. Merrill Lynch & Co., 1989 U.S. Dist. LEXIS 14720, Civ. A. Nos. 86-2865, 86-3375, 1989 WL 149757,* *4 (E.D. Pa. Dec. 6,

1989)); see also *Spring City Corp., 1999 U.S. Dist. LEXIS 19302, 1999 WL 1212201,* \*2.

In the instant case, Defendant LSAC, while contesting the terms and conditions of dismissal, does not oppose Plaintiffs' motion to voluntarily dismiss the [\*6] case. However, LSAC argues that the dismissal of this litigation should be with prejudice. See Def.'s Reply to Pls.' Mot. at 4. While Plaintiffs' motion does not specify whether it requests dismissal with or without prejudice, upon reply, Plaintiffs clarified that they would not oppose dismissal with prejudice of "Ms. Dorfsman's personal claim as long as such a dismissal would not preclude a suit on new facts which arise thereafter . . ." Pls.' Resp. to Def.'s Mot. at I n.I.

The facts of this case clearly warrant dismissal of the cause of action with prejudice. Plaintiffs concede that the only named-plaintiffs, Lise Nicole Dorfsman and Cima Fatomeh Amiri, have no standing to proceed with the current action. See Pls.' Mot. to Dismiss at P 2. "Cima Fatomeh Amiri received all the substantive relief which she and her doctors sought through the Stipulation approved by the Court on February 12, 2001 . . . Plaintiff Lise Dorfsman seeks no personal relief from LSAC." Id. Therefore, the action could have been dismissed for lack of standing. In addition, there is no doubt that LSAC has exhausted significant time and resources in the defending the instant matter and preparing for [\*7] trial. The Docket Report details seventy-six filings since the institution of this action in January of 2000. Moreover, no motions for summary judgment have been filed.

Plaintiffs argue that dismissal with prejudice is inappropriate in the instant case because of Plaintiffs' unsuccessful attempt at class certification. See Pls.' Resp. to Def.'s Reply to Pls.' Mot. to Dismiss at 1-2. The Court denied Plaintiffs' request for class certification, granting them leave to renew if they could substitute a new class representative with live claims within thirty days. Rather than do so, Plaintiffs moved to dismiss the cause of action in its entirety. Accordingly, no class action or class has ever been certified.

"It is the actual certification of an action as a class action . . . which alone gives birth to 'class as jurisprudential entity,' changes the action from a mere individual suit with class allegations into a true class action . . . and provides that sharp line of demarcation between an individual action seeking to become a class action and an actual class action." *Shelton v. Pargo, Inc., 582 F.2d 1298, 1304 (4th Cir. 1978).* Moreover, "the possibility of prejudice [\*8] to

absent putative class members in the pre-certification context is that, unlike the situation in a certified class action, a 'pre-certification dismissal does not legally bind absent class members.'" *Larkin Gen. Hosp. v. Am. Tel. & Tel. Co., 93 F.R.D. 497, 501 (E.D. Pa. 1982).* Therefore, no possible prejudice to potential class members exists, and no notice of dismissal is necessary. See *id. at 503.* The instant suit was brought as an individual action, and while Plaintiffs sought class certification, such an action was denied until Plaintiffs could produce a named-plaintiff with a live claim against LSAC. Plaintiff has failed to do so. Therefore, since there are no Plaintiffs in the instant action with standing and no class has been certified, the Court grants Plaintiffs' Motion for Voluntary Dismissal, but concludes that, under the circumstances, dismissal with prejudice is appropriate.

### B. LSAC's Claim for Fees, Costs, and Expenses

LSAC seeks an order from the Court that "Defendant's right to seek fees, costs, and related expenses, as permitted under the law, is not in any way limited or curtailed as a result of Plaintiffs' voluntary [\*9] withdraw of this litigation." Def. Reply to Pls.' Mot. to Dismiss at P 5. The Court declines to issue such an order. Courts generally award costs and attorney's fees in cases where a voluntary dismissal has been granted without prejudice "to compensate the defendant for having incurred the expense of trial preparation without the benefit of a final determination of the controversy." *Davenport by Fowlkes v. Gerber Prod. Co., 1989 U.S. Dist. LEXIS 14557, Civ. A. No. 87-3198, 1989 WL 147550,* \*1 (E.D. Pa., Dec. 6, 1989); *John Evans Sons, Inc. v. Majik-Ironers, Inc., 95 F.R.D. 186, 191 (E.D. Pa. 1982); Citizens Sav. Asso. v. Franciscus, 120 F.R.D. 22, 24-25 (M.D. Pa. 1988)* ("The imposition of costs is not always a prerequisite for a voluntary dismissal without prejudice, although it is often necessary for the protection of the defendant, and the decision whether or not to impose costs and attorney's fees upon the plaintiff is within the discretion of the court."). If an action is dismissed with prejudice, however, the court lacks the power to grant attorney's fees, barring exceptional circumstances. *Horizon Unlimited, Inc. v. Richard Silva & SNA, Inc., 1999 U.S. Dist. LEXIS 13320, Civ. A. No. 97-7430, 1999 WL 675469,* [\*10] at \*2 (E.D. Pa. Aug. 31, 1999).

For the reasons articulated above, Plaintiffs' cause of action will be dismissed with prejudice. A dismissal with prejudice "in effect grants judgment in favor of defendant at the request of the plaintiff; defendants are in the same position they would have been in had the trial occurred, except they save the additional costs of litigation." *Horizon, 1999 U.S. Dist. LEXIS 13320, 1999 WL 675469,* at \*2. LSAC has not demonstrated any exceptional circumstances warranting the imposition of fees

and costs. Therefore, the Court declines to issue an Order recognizing Defendant's right to seek fees, costs, and expenses associated with defending the current action.

## C. Plaintiffs' Claim for Attorney's Fees, Costs, and Expenses

Finally, LSAC requests that Plaintiffs be precluded from asserting any claims for fees or costs associated with this litigation. Towards this end, LSAC further seeks to have paragraph four of the February 12, 2001 "Stipulation Regarding Cima Amiri" vacated. Paragraph four of the February 12, 2001 Stipulation states in relevant part that "neither party waives any right to claim or to oppose any such award of fees and expenses in connection [*11] with this Stipulation." Defendant contends that, pursuant to the Stipulation, Plaintiff Amiri is not a "prevailing party" entitled to attorney's fees under the ADA.

### 1. Prevailing Party -- the *Buckhannon* Standard

A plaintiff who is a "prevailing party" in an ADA action may be awarded reasonable attorney's fees, including litigation expenses and costs. See *42 U.S.C. § 12205* ("The court, . . . in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expense, and costs."). Plaintiff is entitled to reasonable attorney's fees if she is found to be a "prevailing party" for the purposes of the underlying statute. The United States Supreme Court recently addressed the issue of whether a plaintiff is properly to be considered a "prevailing party" for the purpose of recovering attorney's fees in *Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001)*.

In Buckhannon, the Supreme Court held that it would not award attorney's fees to a party whose lawsuit was dismissed as moot, even though it was [*12] likely that the lawsuit helped bring about the legislation that rendered the action moot. *Buckhannon, 121 S. Ct. at 1839.* The Supreme Court rejected the so-called "catalyst theory" of attorney's fees on the ground that it might permit an award "where there is no judicially sanctioned change in the legal relationship of the parties." *Id. 121 S. Ct. at 1840* (emphasis added). The Court noted that a "material alteration of the legal relationship of the parties" is necessary to permit an attorney's fee award. Id. (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93, 109 S. Ct. 1486, 103 L. Ed. 2d 866 (1989)).* Specifically, the Court listed two judicial outcomes under which a party may be considered "prevailing" for the purposes of awarding attorney's fees: (1) an enforceable judgment on the merits, or (2) a settlement agreement enforceable through a court-ordered consent decree. Id. The former provides the necessary foundation for a plaintiff's status as a prevailing

party because the plaintiff has received at least some relief based upon the merits of his or her claim. Id. The latter is acceptable, even without an [*13] admission of liability, because it is a "court-ordered change in the legal relationship" between the parties. *Id. 121 S. Ct. at 1839-41.*

As noted above, Plaintiff Dorfsman voluntarily withdrew her cause of action. As she sought no personal relief from LSAC, Plaintiff Dorfsman lacked standing to pursue the instant litigation. See Pls.' Mot. to Dismiss at P 2. Accordingly, she has not prevailed on any of the material issues presented in the case, nor has she effectuated a legal change in her relationship with LSAC. Therefore, Plaintiff Dorfsman is not a "prevailing party" and may not seek attorney's fees, costs, or expenses incurred in pursuing her claim. The issue thus becomes whether Plaintiff Cima Amiri, who settled her claims against LSAC, qualifies as a "prevailing party" under the standard promulgated in Buckhannon.

On February 12, 2001, this Court approved a "Stipulation Regarding Cima Amiri" that was entered into by the parties. The Stipulation afforded Plaintiff Amiri all of the accommodations she sought in taking the LSAT. LSAC contends, however, Plaintiff Amiri is not a prevailing party because she has failed to "secure a judgment on the merits or a court-ordered consent [*14] decree . . .'" Def.'s Reply to Pls.' Mot. to Dismiss at P 6 (quoting *Buckhannon, 121 S. Ct. at 1840).* Under the circumstances presented in the instant case, the Court agrees.

It is clear that Plaintiff Amiri, who voluntarily settled her lawsuit with LSAC, has not achieved a judgment on the merits, nor has she secured a court-ordered consent decree. Rather, the Court here is confronted with very situation that concerned the United States Supreme Court in Buckhannon - that is, a lawsuit that brought about a voluntary change in a defendant's conduct. Such a "voluntary change in conduct . . . lacks the necessary judicial imprimatur" for a plaintiff to be considered a prevailing party. *Buckhannon, 121 S. Ct. at 1840;* see also *County of Morris v. Nationalist Movement, 273 F.3d 527, Nos. 00-2621 & 00-3569, 2001 WL 1456461* (3d Cir. November 16, 2001) (characterizing a prevailing party under Buckhannon as "one who has been awarded some relief by the court"); *Ken-N.K., Inc. v. Vernon Twp., 2001 U.S. App. LEXIS 19453, No. 98-1871, 2001 WL 1006265* (6th Cir. Aug. 23, 2001) (slip opinion) ("Because [plaintiffs] obtained neither a judgment on the merits nor a consent [*15] decree with respect to their claims against [defendant], they cannot be considered 'prevailing parties . . .'"); *Crabill v. Trans Union, L.L.C., 259 F.3d 662, 667 (7th Cir. 2001)* ("The significance of the Buckhannon decision . . . [is] its insistence that a plaintiff must obtain formal judicial relief, and not

merely 'success,' in order to be deemed a prevailing or successful party under any attorneys' fee provision . . ."); *Griffin v. Steeltek, Inc., 261 F.3d 1026, 1029 (10th Cir. 2001)* (holding that a plaintiff who fails to secure a judgment on the merits or by court-ordered consent decree in a suit under the ADA, is not entitled to attorney's fees even if the pursuit of litigation has caused a desired and voluntary change in the defendant's conduct).

There is a distinction between consent decrees, in which there is a court-ordered change in the legal relationship between the parties, and private settlement agreements, which require no such judicial involvement. Under Buckhannon, private settlement agreements do not confer prevailing party status. See *Buckhannon, 121 S. Ct. at 1840 n.7.* In the instant, the parties [*16] reached the terms and conditions of the Stipulation without any intervention from this Court. Moreover, the Court in no way imposed or dictated the substantive provisions of the Stipulation at issue. Therefore, contrary to Buckhannon, Plaintiff Amiri has failed to achieved a judicially sanctioned change in the parties' legal relationship. Accordingly. Plaintiff Amiri may not be considered a "prevailing party" for the purposes of recovering attorney's fees.

An appropriate Order follows.

## ORDER

AND NOW, this 28th day of November, 2001, upon consideration of Plaintiffs' Motion to Dismiss (Docket No. 73), Defendant's Reply to Plaintiffs' Motion to Voluntarily Dismiss Cause of Action (Docket No. 74), Plaintiffs' Response to Defendant's Reply (Docket No. 75), and Defendant's Sur-Reply to Plaintiffs' Motion to Dismiss (Docket No. 76), IT IS HEREBY ORDERED that Plaintiffs' Motion for Voluntary Dismissal is **GRANTED**.

IT IS FURTHER ORDERED that Defendant's request that this Court issue an Order recognizing Defendant's right to seek fees, costs, and expenses associated with this litigation is **DENIED**.

IT IS FURTHER ORDERED that Plaintiffs are precluded from seeking [*17] fees, costs, and expenses associated with this litigation.

BY THE COURT:

HERBERT J. HUTTON, J.

# TAB 3

LEXSEE 2004 US DIST LEXIS 20822



Positive
As of: Dec 21, 2006

### IN RE: INACOM CORP., et al., Debtors, PRO-TEC SERVICES, LLC, Appellants, v. INACOM CORP., et al., Appellees.

### Chapter 11, Case No. 00-2426 (PJW), Civil Action No. 04-390-GMS

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

### *2004 U.S. Dist. LEXIS 20822*

### October 4, 2004, Decided
### October 4, 2004, Filed

**DISPOSITION:** Bankruptcy court's decision reversed and remanded.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant creditor challenged a decision of the United States Bankruptcy Court for the District of Delaware that denied the creditor's motion to reconsider the allowance of its claims against appellee debtor.

**OVERVIEW:** The creditor and a corporation were parties to a computer repair services agreement. The debtor purchased the corporation and the creditor continued to provide services under the agreement. When the debtor filed Chapter 11, the creditor filed a claim and the debtor objected. The bankruptcy disallowed the claims because the creditor's counsel did not respond to the objection. The creditor sought relief under *Fed. R. Civ. P. 60(b)*. The court reversed the ruling of the bankruptcy court, holding that considering the O'Brien factors, the debtor would not be prejudiced in that (1) the debtor was fully aware of the creditor's claim and thus would not be surprised; (2) because the debtor was still negotiating with other creditors, the value of many unsecured claims was unknown and thus any disputed claim was paid without regard to what other claims existed; (3) there was no evidence as to whether payment of the claim would jeopardize the success of the debtor's reorganization or that allowing the claim would cause a "flood" of motions. In view of the agreement of the parties, the court found that the creditor and its counsel acted in good faith.

**OUTCOME:** The court reversed the decision of the bankruptcy court.

**COUNSEL:** [*1] For Inacom Corp., Debtor: Christopher James Lhulier, Pachulski Stang Ziehl Young & Jones PC, Wilmington, DE, Duane David Werb, Werb & Sullivan, Wilmington, DE, E Lyle Kinley, Jr, Omaha, NE, Jean R Robertson, McDonald, Hopkins, Burke & Haber Co. LPA, Cleveland, OH, Kathleen Marshall DePhillips, Pachulski Stang Ziehl Young & Jones PC, Wilmington, DE, Laura Davis Jones, Pachulski Stang Ziehl Young & Jones, Wilmington, DE, Rosalie L. Spelman, Pachulski Stang Ziehl Young Jones, Wilmington, DE, Rosalie L. Spelman, Potter Anderson & Corroon LLP, Wilmington, DE, Sandra G McLamb, Pachulski Stang Ziehl Young Jones, Wilmington, DE.

For Tantara Transportation Group, Inc., Defendant: Daniel J. Anker, Wilmington, DE.

AQUA SYSTEMS USA, INC., Defendant, Pro Se.

For Sun MicroSystems, Inc., Defendant: Regina A. Iorii, Ashby & Geddes, Wilmington, DE.

For Ingram Micro, Inc., Defendant: James E. Huggett, Flaster Greenberg, Wilmington, DE, USA.

For Kingston Technology Company, Inc., Defendant: Rachel B. Mersky, Monzack & Monaco, P. A., Wilmington, DE, USA.

For The Computer Merchant, Ltd., Avantegarde Computer Services, Inc., Defendant: Charles J. Brown, Elzufon Austin Reardon [*2] Tarlov & Mondell, Wilmington, DE.

Joseph J. McMahon Jr., Office of the U.S. Trustee, U.S. Trustee.

For Blank Rome Comisky & McCauley, LLP, Creditor Committee: Bonnie Glantz Fatell, Blank Rome LLP, Wilmington, DE, Deborah Cirilla Sellis, Esq, Akin & Herron, PA, Wilmington, DE.

For Official Committee of Unsecured Creditors, Creditor Committee: William J. Burnett, Blank Rome LLP, Wilmington, DE.

For Statutory Committee of Unsecured Creditors, Creditor Committee: William J. Burnett, Blank Rome LLP, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Gregory M. Sleet

**OPINION:**

### MEMORANDUM

### I. INTRODUCTION

On June 16, 2000 (the "Petition Date"), Inacom Corp., *et al.* ("Inacom") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code. Pro-Tec Services, LLC ("Pro-Tec") filed a timely Proof of Claim on November 2, 2000. On June 13, 2001, Inacom filed its Fifth Omnibus Objection to Claims -- Objections to Claims filed Against Inacom, Inc. or Its Affiliates (the "Objection"). On July 13, 2001, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order disallowing [*3] Pro-Tec's claim pursuant to Inacom's Objection. Inacom's plan of liquidation was confirmed on May 23, 2003.

On April 2, 2004, Pro-Tec filed a motion to reconsider its claim. The motion was denied at a hearing before the Bankruptcy Court on April 20, 2004. Because the court agrees that Pro-Tec has made a satisfactory showing of excusable neglect, its motion to reconsider the allowance of its claims should have been granted by the Bankruptcy Court. Further, because the court disagrees with the Bankruptcy Court's analysis of *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 123 L. Ed. 2d 74, 113 S. Ct.*

*1489 (1993)*, as it applies to the facts of this case, the court will reverse the ruling of the Bankruptcy Court and remand the matter for further proceedings consistent with this opinion.

### II. STANDARD OF REVIEW

In reviewing a case on appeal, the district court reviews the Bankruptcy Court's legal determinations *de novo,* its factual findings for clear error, and its exercise of discretion for abuse. *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.) 188 F.3d 116, 122 (3d Cir. 1999).* A bankruptcy court abuses its discretion when its ruling is founded on [*4] an error of law or misapplication of law to the facts. *Id.* In determining whether an error exists, the bankruptcy court's application of the law to the facts is reviewed *de novo. Id.*

### III. BACKGROUND

The basic facts pertinent to Pro-Tec's motion to reconsider the allowance of its claims are not in dispute. On September 18, 1997, Pro-Tec and Vanstar Corporation ("Vanstar") were parties to a computer and communication repair services agreement (the "Agreement"). Subsequent to the execution of the Agreement, Inacom purchased Vanstar, and Pro-Tec continued to provide services to Inacom under the Agreement. From February 1999 to June 2000, Inacom incurred charges for services rendered by Pro-Tec under the Agreement. On June 16, 2000, Inacom filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the District of Delaware. On August 1, 2000, Inacom filed its Schedules of Assets and Liabilities (the "Schedules"). Pro-Tec was listed on Exhibit F-3 of Inacom's Schedules as a creditor holding unsecured non-priority claims in the amount of $ 195,823.20.

On November 2, 2000, Pro-Tec's counsel timely filed a Proof of Claim (the "Claim"), in the amount [*5] of $ 330,115.61, with Bankruptcy Services, Inc, ("B.S.I."), Inacom's claims agent. On November 6, 2000, B.S.I. stamped the Claim as received, timely, and numbered the Claim 6647. On June 13, 2001, Inacom filed its Objection. The Objection contests approximately 412 claims spread over 96 pages of exhibits. The exhibits are lettered A through H, with some exhibits containing multiple alphabetical listings of objections. Pro-Tec was listed on the first alphabetical list of Exhibit E to the Objection. The Objection contained a Proof of Service, indicating that it was served on Pro-Tec's counsel, William Sullivan, at his office address. Pro-Tec's counsel did not respond to the Objection. On July 13, 2001, the Bankruptcy Court entered an Order Disallowing Claims, Expunging Claims, Altering the Status of Claims, or Allowing the Claims in a Reduced Amount (the "Order").

On July 22, 2002, Inacom filed the Notice of Debtors Twenty-Ninth Amendment of Schedules (the "Twenty-Ninth Amendment"), seeking to amend the Claim from $ 195,823.20 to $ 0.00. On May 23, 2003, Inacom's Joint Plan of Liquidation (the "Plan") was confirmed. In February 2004, after Pro-Tec did not receive a distribution under [*6] the Plan (which was expected on or about January 30, 2004), Pro-Tec's counsel inquired into the status of distributions. After contacting B.S.I., Pro-Tec was advised of the July 13, 2001 Order disallowing the Claim. Accordingly, Pro-Tec filed its Motion for Reconsideration on April 2, 2004. A hearing on Pro-Tec's motion was held before the Bankruptcy Court on April 20, 2004. The Bankruptcy Court denied Pro-Tec's motion. On April 30, 2004, Pro-Tec appealed the decision.

## IV. DISCUSSION

As a result of the Bankcrupcty Court's July 13, 2001 Order, Pro-Tec's Claim in connection with the Agreement was disallowed. It is undisputed that Pro-Tec received the Objection but failed to respond prior to the July 13, 2001 Order, or prior to the May 23, 2003 confirmation of the Plan. Pro-Tec filed a motion for reconsideration pursuant to *11 U.S.C. 502(j)* and *Fed. R. Bankr. P. 3008*. *Section 502(j)* provides that "a claim that has been allowed or disallowed may be reconsidered for cause." Pro-Tec asserts that a motion for reconsideration based on a claim disallowed as a result of the claimant's failure to appear or to produce evidence is usually decided based on whether [*7] the claimant is able to show "excusable neglect." Pro-Tec, therefore, seeks relief from the July 13, 2001 Order under *Federal Rule of Civil Procedure Rule 60(b)*, made applicable to bankruptcy cases by *Bankruptcy Rule 9024*. *Rule 60(b)* states, in pertinent part, "on motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for mistake, inadvertence, or excusable neglect." The factors a court must consider when determining whether a party has failed to appear or to produce evidence because of excusable neglect were articulated by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 123 L. Ed. 2d 74, 113 S. Ct. 1489 (1993)*. The *Pioneer* factors were adopted and applied by the Third Circuit in *In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 125 (3d Cir. 1999)*. Pro-Tec asserts that its failure to respond to the Objection was the result of excusable neglect, and that the Bankruptcy Court made an inadequate excusable neglect analysis under *Pioneer*. As previously noted, the basic facts pertinent to Pro-Tec's motion are not in dispute. [*8] Thus, the court must review *de novo* whether the Bankruptcy Court engaged in a proper analysis under *Pioneer* to make its excusable neglect determination, and whether

the Bankruptcy Court abused its discretion in determining that there was no excusable neglect warranting reconsideration of Pro-Tec's claim.

## A. Did the Bankruptcy Court Engage in a Proper *Pioneer* Analysis?

Pro-Tec first argues that the Bankruptcy Court failed to review the totality of the circumstances surrounding Pro-Tec's failure to respond to the Objection and, therefore, failed to adequately apply *Pioneer's* standards for excusable neglect. The court will start with a brief review of *Pioneer* and the excusable neglect factors articulated in that case. In *Pioneer,* the Supreme Court determined that a Chapter 11 creditor was entitled to file its proof of claim after the bar date deadline because its failure to timely reply was the result of excusable neglect, within the meaning of *Bankruptcy Rule 9006(b)(1)*. The Court held that the determination of what type of neglect would be considered "excusable" was an equitable one "tak[ing] account of all relevant circumstances surrounding the party's [*9] omission." *Pioneer, 507 U.S. at 395*. The Court listed four factors to consider in making the excusable neglect determination: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* Under the facts of *Pioneer,* the Court held that the creditor's failure to timely file was inadvertent, and in good faith. There was no danger of prejudice to the debtor because the untimely claim was accounted for in the reorganization plan and was filed prior to the plan's effective date. Lastly, the court noted that notice of the bar date "was outside the ordinary course" because of its "inconspicuous placement" -- a single sentence in a document regarding a creditors' meeting -- which was not accompanied by a statement of significance and "left a 'dramatic ambiguity' in the notification." *Id. at 398*.

Pro-Tec argues that, while the Bankruptcy Court considered the reason for the delay, including whether it was within the reasonable control of Pro-Tec, and the potential [*10] prejudice to Inacom, it did not consider the other *Pioneer* factors. After reviewing the transcript from the April 20, 2004 hearing, the court cannot agree. In making its determination, the Bankruptcy Court made the following findings of fact: (1) overturning the Order would prejudice Inacom because allowing the claims would "open the floodgates to hundreds of these [reconsideration] applications being filed;" (2) allowing the delayed claim "would be a mistake at this very late stage of this case;" and (3) Pro-Tec's counsel was fully responsible for the delay in failing to file a response to the Objection. n1 Tr. at 35-36. Thus, the Bankruptcy Court considered the prejudice to the debtor, the length of the delay and its effect on judicial proceedings, and whether

the reason for the delay was in the reasonable control of the movant. The only *Pioneer* factor that the Bankruptcy Court did not consider was the good faith of Pro-Tec's counsel. Inacom, however, acknowledged Pro-Tec's good faith at the April 20, 2004 hearing, which meant that the Bankruptcy Court did not have to consider this factor. For the foregoing reasons, the court finds that the Bankruptcy Court engaged in a [*11] proper *Pioneer* analysis. n2

> n1 The Bankruptcy Court noted that Pro-Tec's "client's name and your [Pro-Tec's counsel's] name and address with the law firm is [the] first item on Page 11, it's the first Exhibit E in the batch. And I don't see how you could miss it." Tr. at 35:6-9.
>
> n2 In this section of its brief, Pro-Tec argues its counsel's diligence upon receiving omnibus objections to its other clients' claims. Pro-Tec also argues that the Bankruptcy Court's Local Rule 3007-1, implemented in September 2002, addresses the difficulties created by the large omnibus claim objections by limiting them to 150, but does not ameliorate the difficulties posed by omnibus objections filed before September 1, 2002 (Inacom's Objection was filed before September 1, 2002). The court will not address these arguments because they are not material to whether the Bankruptcy Court engaged in a proper *Pioneer* analysis.

**B. Did the Bankruptcy Court Abuse Its Discretion When It Determined There Was No Excusable Neglect? [*12]**

Pro-Tec next argues that the Bankruptcy Court abused its discretion in failing to find excusable neglect. In addressing this contention, the court will analyze each of the *Pioneer* factors in turn.

**1. Danger of Prejudice to the Debtor**

The Supreme Court in *Pioneer* noted that lack of any prejudice to the debtor weighs strongly in favor of permitting a tardy claim, but provided little guidance as to what prejudice actually is in the bankruptcy context. The United States Court of Appeals for the Third Circuit has recognized that "prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence." *In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 127 (3d Cir. 1999).* Under Third Circuit case law, *Pioneer* requires a detailed analysis of more than "whether the Plan set aside money to pay the claim at issue." *Id. at 126.* Thus, the relevant

factors for analysis of prejudice under *O'Brien* include: whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; whether the payment of the claim would force the return of amounts already [*13] paid out under the confirmed Plan or affect the distribution to creditors; whether payment of the claim would jeopardize the success of the debtor's reorganization; whether allowance of the claim would adversely impact the debt or actually or legally; and whether allowance of the claim would open the floodgates to other future claims. *Id. at 126-28.* Pro-Tec argues that none of the prejudice factors articulated in *O'Brien* serve as potential prejudice to Inacom.

With regard to the first *O'Brien* factor, the court cannot conclude that Inacom was surprised or caught unaware by the assertion of a claim that it had not anticipated. Inacom listed Pro-Tec as a creditor holding unsecured non-priority claims in the amount of $ 195,823.20 in the Schedules. Pro-Tec timely filed the Claim, which was stamped as received and numbered by Inacom's claims agent. The Claim remained scheduled for more than one year after it was disallowed by default, on July 13, 2001. In fact, the Claim remained scheduled by Inacom until it filed the Twenty-Ninth Amendment on July 22, 2002, which sought to amend Pro-Tec's scheduled Claim from $ 195,823.00 to $ 0.00. Clearly then, Inacom was aware [*14] of the assertion of the Claim.

The second *O'Brien* factor requires the court to consider whether the payment of the claim would force the return of amounts already paid out under the confirmed Plan or affect the distribution to creditors. Pro-Tec argues that the resolution of the Claim does not impact the recovery being paid to unsecured creditors because Inacom is still litigating the value of many of the unsecured claims. Pro-Tec alleges that unsecured creditors were advised in the Plan that their recovery was uncertain, and, based on the Plan, reconsideration of its Claim will not prejudice other creditors because no creditor will have to return any distribution it may have already received and the ultimate distribution to creditors under the Plan will vary. Inacom notes that the Plan states that "each holder of a Class 4(a) Allowed General Unsecured Claim shall receive such Holder's Pro Rata Share of Available Cash," (Plan at 13, D.I. 4757). However, as Pro-Tec points out, the Plan also states that the recovery of unsecured creditors is uncertain and may vary. Because every creditor is receiving its pro rata share of available amounts, allowing another claim will affect the [*15] distribution to each creditor holding an allowed claim. Pro-Tec argues, however, that Inacom is still litigating the value of many of the unsecured claims and does not know at this time which unsecured creditors will recover or what amount each creditor will recover.

Pro-Tec's argument is persuasive. It is not clear how many creditors will ultimately hold an allowed claim. In addition, the final distributions to creditors will vary based on the results of litigation and the claims resolution process. Moreover, Inacom was not required to allocate funds for each disputed claim under the Plan. n3 Thus, any disputed claim that is allowed is paid without regard to what other claims exist. Lastly, absent from the record is any evidence that Inacom will have to return amounts already paid out under the Plan. Based on these facts, the court finds that payment of the claim will not affect the distribution to creditors.

> n3 Pro-Tec urges that whether the plan set aside money to pay the claim at issue is a factor that the Third Circuit held should not be considered in evaluating potential prejudice. The court disagrees. The court in *O'Brien* stated that "*Pioneer* requires a more detailed analysis of prejudice which would account for more than whether the Plan set aside money to pay the claim at issue." *O'Brien, 188 F.3d at 126*. The Third Circuit, however, did not state that an analysis of prejudice should not include whether the Plan set aside money to pay the claim at issue as one of the factors to consider. Rather, the Third Circuit stated that it should not be the only factor that the Bankruptcy Court considers in determining whether there is potential prejudice to the debtor. The Third Circuit stated "the Bankruptcy Court's prejudice analysis seemed to hinge *solely* on the fact that by virtue of Manus's failure to respond to the Application, its claim was not accounted for in the funding of the plan. We believe that *Pioneer* requires a more detailed analysis which would account for more than whether the Plan set aside money to pay the claim at issue." *Id.* (emphasis added).

[*16]

The third *O'Brien* factor is whether payment of the claim would jeopardize the success of the debtor's reorganization. There is no evidence on the record as to whether payment of the claim would jeopardize the success of Inacom's reorganization. In addition, Pro-Tec and Inacom have not made arguments, nor has the Bankruptcy Court made any findings concerning this factor. Thus, the court will treat this consideration as a neutral factor in its analysis.

The fourth *O'Brien* factor is whether allowance of the claim would adversely impact the debtor actually or legally. Pro-Tec argues that there is no prejudice to Inacom created by the delay in litigating the disallowed

Claim because the inquiry to be performed in a reconsideration of the Claim is straightforward. Pro-Tec further argues that Inacom is currently reconsidering other creditors' claims. Finally, Pro-Tec asserts that Inacom scheduled its Claim at the outset of the case, a claim that remained scheduled for more than a year after the Bankruptcy Court entered the Order disallowing the Claim. Inacom could not explain why Pro-Tec was listed on the Twenty-Ninth Amendment when Pro-Tec's claim was disallowed a year earlier, [*17] negating the need to amend the schedule with respect to Pro-Tec. Tr. at 32:10-20. Because Pro-Tec was still listed on the Twenty-Ninth Amendment, Pro-Tec contends that Inacom ascribed some validity to its claim. n4 While this may be true, this fact is not relevant to the court's analysis of whether allowance of the claim would adversely impact the debtor actually or legally. Regardless, the court finds that Inacom has not alleged that payment of the Claim would adversely impact it. Rather, Inacom alleges only that one of the policies underlying the *Pioneer* analysis is the value of finality in judicial proceedings.

> n4 At the hearing in the Bankruptcy Court, Inacom argued that it was irrelevant that Pro-Tec was listed on its Twenty-Ninth Amendment. The Bankruptcy Court agreed, acknowledging that "the debtors' 29th amendment is confusing. But, quite frankly, that was a year "after the disallowance of this claim and I think it's essentially irrelevant to the issue of excusable neglect."

The Third Circuit has [*18] addressed Inacom's argument in contexts other than a bankruptcy proceeding. In *Feliciano v. Reliant Tooling Co., 691 F.2d 653 (3d Cir. 1982)*, the court held that "the cost of enforcing a judgment later vacated and the delay in realizing satisfaction on a claim 'rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgment.'" *Id. at 656-57*. In *O'Brien,* the court highlighted, with approval, its decision in *Feliciano,* stating that "prejudice is not merely the loss of an advantageous position, but must be something more closely tied to the merits of the issue." *O'Brien, 188 F.3d at 127*. Thus, the court finds that the value of finality in judicial proceedings is not sufficient for a finding of prejudice. In addition, there is no evidence in the record showing that payment of Pro-Tec's Claim would adversely impact Inacom or affect the finality of Inacom's judicial proceedings. To the contrary, as previously noted, Inacom is still litigating disputed claims. However, even were there such a showing, the court cannot discern a reason why the rationale of the Court of Appeals would be inapposite [*19] merely because the scene has shifted to the bankruptcy court. Under the circumstances of this case, the

court concludes that allowing the Claim would not ad-versely impact Inacom.

The final *O'Brien* Factor is whether allowance of the claim would open the floodgates to other future claims. The Bankruptcy Court determined that allowing Pro-Tec's Claim might subject Inacom to a large number of additional claims:

> I will observe that given the massive number of claims filed in this case and the equally massive number of objections that were filed with numerous exhibits at-tached to the objection, I really think that to allow this claim would potentially open the floodgates to hundreds of these appli-cations being filed. And I think that would be a mistake at this very late stage of this case.

Tr. at 35:22-36:3. The court cannot agree. There is no evidence in the record that allowing the Claim would cause a "flood" of motions. Although Inacom argues that it is inconceivable that at least a fraction of the creditors would not file motions for reconsideration if the appeal was granted, Inacom has not asserted that any other creditor whose claim was eliminated by default has [*20] filed a motion for reconsideration.

Considering all of the *O'Brien* factors, the court de-termines that Inacom would not be prejudiced by recon-sidering Pro-Tec's Claim. Inacom was not surprised by, or unaware of, the Claim. Inacom is still litigating the value of many of its claims, and still litigating claims objections. Moreover, Inacom has not shown through evidence in the record that it will be adversely impacted if Pro-Tec's claim is reconsidered. Finally, Inacom has not alleged that any other creditor whose motion was denied by default has filed a motion for reconsideration. The court, therefore, finds that there is no prejudice to Inacom.

### 2. Length of Delay and Potential Impact on Judi-cial Proceedings

The court next considers the length of the delay and its impact on the judicial proceedings. The Bankruptcy Court found that "it would be a mistake" to allow the Claim because the case was at "a very late stage." While the Bankruptcy Court considered the delay's effect on the judicial proceedings, it did not "consider the length of the delay in absolute terms." *O'Brien, 188 F.3d at 130*. In the present case, Inacom filed the Objection on June 13, 2001. Pro-Tec [*21] did not respond. The Order disal-lowing the Claim issued on July 13, 2001. Pro-Tec still

had not responded, Inacom's Twenty-Ninth Amendment was filed on July 22, 2002. Pro-Tec did not respond. n5 Inacom's Plan was confirmed on May 23, 2003, and, as of that time, there was still no response from Pro-Tec. Pro-Tec did not respond until February 2004, after it did not receive its expected distribution under the Plan. On April 2, 2004, Pro-Tec then filed its motion for reconsid-eration. Pro-Tec's motion was filed almost two years and ten months after the Objection, almost two years and nine months after the Order was served, and nine months after the Plan was confirmed. Pro-Tec argues that the length of the delay has no impact on the implementation of the Plan. Specifically, Pro-Tec asserts that Inacom is still litigating claims subject to the Objection and that creditors have been advised that distributions under the Plan are dependent on the claims resolution process. Pro-Tec also asserts that distributions to unsecured creditors are expected to occur between June 2003 and June 2008, and will be adjusted depending on Inacom's progress in resolving the claims. Lastly, Pro-Tec argues that [*22] Inacom is partly responsible for the delay because of the time it took for Inacom to move through the confirmation process. Inacom's Plan was confirmed almost three years after Inacom filed its petitions.

> n5 Pro-Tec alleges that the Twenty-Ninth Amendment was not served on its counsel.

Inacom argues that Pro-Tec's counsel's failure to re-spond, in and of itself, weighs in favor of denying the appeal. Inacom further argues that Pro-Tec's failure to respond after the Order warrants denying the appeal. In addition, Inacom argues that Pro-Tec should have at-tempted to contact Inacom to inquire about the Claim. Lastly, Inacom contends that the fact that it is still litigat-ing and negotiating claims indicates that reconsidering Pro-Tec's Claim will delay closure of the case. The court agrees with Pro-Tec and finds Inacom's arguments un-persuasive. Nowhere in *Pioneer* or *O'Brien,* do the Su-preme Court or the Third Circuit find that failure to re-spond, in and of itself, weighs in favor of denying the Claim. Additionally, [*23] there is no finding that the creditor must attempt to make contact with the debtor. When considering the delay's effect on the judicial pro-ceedings in absolute terms, as *O'Brien* instructs, the court concludes that this *Pioneer* factor weighs in favor of Pro-Tec because Inacom is still litigating disputed claims and distributions to creditors are based on Inacom's progress in resolving the claims.

### C. The Reason for the Delay

The Bankruptcy Court determined that the cause of the delay was in Pro-Tec's control, because it is undis-puted that Pro-Tec's counsel received the Objection and

read it, but missed the objection to Pro-Tec's Claim. The Bankruptcy Court found that Pro-Tec's neglect did not fall within the *Pioneer* standard for excusable neglect:

> In looking at this document, I think it would probably take maybe 15 or 20 minutes for an informed person to review the document to find out if any of its clients were affected by the objection. And as I pointed out, your client's name and your name and address with the law firm is first item on Page 11, it's the first Exhibit E in the batch. And I don't see how you could miss it. But apparently you did miss it - I don't [*24] say you, someone in your office did, or they didn't even look at the document. And so I don't think that that falls within the *Pioneer* standard for excusable neglect. Presumably it is neglect. Indeed, there's no basis for knowing what the young associate did, including the possibility that he lost the document before he ever looked at it or he just put it in a circular file and didn't look at it. Or that he was otherwise plain remiss in performing his duties.

Tr. at 35:3-17. It is clear in this case, that the delay was due to Pro-Tec's lack of care. However, the concept of excusable neglect clearly anticipates neglect on the part of the party seeking to be excused. *See Pioneer, 507 U.S. at 388*; *O'Brien, 188 F.3d at 128*. The court, therefore, must decide whether Pro-Tec's delay was excusable.

Pro-Tec urges the court to follow *Pioneer* and *O'Brien*, in which the Supreme Court and the Third Circuit held that the debtors' inadequate notice contributed to the creditors' delay. Pro-Tec argues that its delay in responding to the Objection was due in part to inadequate notice provided by Inacom. Pro-Tec asserts that Inacom's Objection contested [*25] approximately 412 claims spread over 96 pages plus exhibits A through H. Pro-Tec further asserts that the exhibits contained multiple lists, some of which were not in alphabetical order. Pro-Tec argues that this type of notice is ambiguous and that even though its counsel failed to find the objection to its Claim, Inacom is partly responsible, like the debtors in *Pioneer* and *O'Brien*. Inacom argues that Pro-Tec's comparison of the present case to the facts in *Pioneer* and *O'Brien* "misses the mark." The Bankruptcy Court recognized that there are multiple schedules within the various exhibits attached to the Objection, some of which were not in alphabetical order, but determined that Inacom's notice was adequate, noting that "your ['Pro-Tec's counsel's] client's name and your name and address with

the law firm is [the] first item on page 11, it is the first Exhibit E in the batch. And I don't see how you could miss it." Tr. at 35:6-9. The court agrees with the Bankruptcy Court and Inacom.

The notice that Inacom provided Pro-Tec is distinguishable from the notice provided by the debtors in both *Pioneer* and *O'Brien*. In *Pioneer*, the Supreme Court held that [*26] the debtor's notice was inadequate because the bar date was placed in a notice regarding a creditors' meeting "without any indication of the significance of the bar date." *Pioneer, 507 U.S. at 398*. In *O'Brien*, the debtor gave notice in an application that was twelve pages long, consisting of twenty-four paragraphs. The three important paragraphs, which would provide notice to the contracting parties, were buried in the middle of the document and did not list the relevant contracting parties' names or claims. *O'Brien, 188 F.3d at 129*. The present case is distinguishable from *Pioneer* and *O'Brien* because Inacom's notice was not inconspicuous. Inacom provided notice in its Fifth Omnibus Objection to Claims. Unlike *Pioneer*, in which the bar date appeared in a notice of a creditors' meeting, the title of Inacom's document, which included the word "objection," should have alerted Pro-Tec that its Claim may be affected. Furthermore, unlike *O'Brien*, in which the contracting parties' names and claims were not provided in the relevant document, Pro-Tec's name and address and its counsel's name and address is the first item on Page 11 of the [*27] first Exhibit E. The court agrees with the Bankruptcy Court that "it would probably take maybe 15 or 20 minutes for an informed person to review the document to find out if any of its clients were affected by the objection." n6 Tr. at 35:4-6. The court finds that this *Pioneer* factor weighs in favor of Inacom.

> n6 The court is not in accord, however, with the Bankruptcy Court's view that if the notice of objection to Pro-Tec's Claim had been on the second or third Exhibit E list, instead of the first, then it "might be excusable." Tr. at 26:3-6. This seems to suggest that Pro-Tec would have less responsibility for the delay if it had been in the middle of Exhibit E. However, as the Bankruptcy Court noted, "it would probably take maybe 15 to 20 minutes for an informed person to review the document to find out if any of its clients were affected by the objection." Tr. at 35:4-6. Thus, the court cannot see how Pro-Tec's inadvertence would be any more excusable if the notice had been on the second or third Exhibit E list.

[*28]

#### 4. Good Faith

The Bankruptcy court did not make any determination on the issue of whether Pro-Tec acted in good faith because Inacom acknowledged Pro-Tec's good faith at the April 20, 2004 hearing. In view of the agreement of the parties, the court finds that Pro-Tec and its counsel acted in good faith.

## V. CONCLUSION

In the present case, the court cannot say that the Bankruptcy Court failed to apply the *Pioneer* factors. In light of the Bankruptcy Court's consideration and weighing of the facts, the court concludes that the Bankruptcy Court engaged in a proper analysis under *Pioneer.* However, considering the *Pioneer* factors, the facts of the this case, and the equitable nature of excusable neglect, the court concludes that the Bankruptcy Court abused its discretion when it determined that Pro-Tec was not entitled to reconsideration of its Claim based upon excusable neglect. As the court in *Pioneer* observed, "the lack of any prejudice to the debtor or to the interests of efficient judicial administration, combined with . . . good faith . . . [of the appellant and its counsel], weigh strongly in favor of permitting the tardy claim." *Pioneer, 507 U.S. at 398.* [*29] In the present case, Pro-Tec has shown that there will be no prejudice to Inacom if its Claim is reconsidered, the delay's effect on judicial proceedings in absolute terms will not prejudice Inacom, and Pro-Tec has

acted in good faith. The only *Pioneer* factor that weighs against Pro-Tec is the reason for the delay, for which Pro-Tec was fully responsible.

The court, therefore, will reverse the Bankruptcy Court's ruling denying Pro-Tec reconsideration of its Claim and remand this case to the Bankruptcy Court for proceedings consistent with this opinion.

Dated: October 4, 2004

Gregory M. Sleet
UNITED STATES DISTRICT JUDGE

### ORDER

For the reasons stated in the court's Memorandum Opinion of this same date, IT IS HEREBY ORDERED that:

1. The April 20, 2004 decision of the Bankruptcy Court for the District of Delaware is REVERSED and REMANDED.

Dated: October 4, 2004

Gregory M. Sleet
UNITED STATES DISTRICT JUDGE

**TAB 4**

LEXSEE 2006 US DIST LEXIS 53103

**QUINCY JOHNSON, JONES, MYOTT, WILLIAMS, ACEVEDO, VAUGHN ARCHITECTS, INC., a Florida corporation f/k/a Quincy Johnson Associates Architects, Inc., Plaintiff, -vs- PRINGLE DEVELOPMENT INC., a Florida corporation, KEN KNORR, individually, Defendants**

Case No. 5:05-cv-37-Oc-10GRJ

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, OCALA DIVISION**

*2006 U.S. Dist. LEXIS 53103*

**August 1, 2006, Decided
August 1, 2006, Filed**

**COUNSEL:** [*1] For Quincy Johnson, Jones, Myott, Williams, Acevedo, Vaughn Architects, Inc., a Florida Corporation formerly known as Quincy Johnson Associates Architects, Inc., Plaintiff: James T. Ferrara, Sachs, Sax & Klein, P.A., Boca Raton, FL; Robert Rivas, Sachs Sax Klein (Tallahassee), Tallahassee, FL; Vanessa D. Sloat-Rogers, Gordon Hargrove & James, P.A., Fort Lauderdale, FL.

For Pringle Development, Inc., a Florida Corporation, Defendant: Paul E. DeHart, III, Hal K. Litchford, Litchford & Christopher, P.A., Orlando, FL.

For Ken Knorr, individually, Defendant: Christopher Charles Skambis, Jr., The Skambis Law Firm, Orlando, FL.

**JUDGES:** Wr. Terrell Hodges, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Wr. Terrell Hodges

**OPINION:**

### ORDER

This case is before the Court for consideration of Defendants Pringle Development, Inc. and Ken Knorr's Motion for an Award of Reasonable Attorneys' Fees and Related Non-taxable Expenses from Plaintiff (Doc. 21) and Plaintiffs Amended Motion for Court to Review Taxation of Costs and Deny Taxation of Some or All of Such Costs (Doc. 33). The motions are ripe for review and the Court concludes that the Defendants' motion is due to be denied and the Plaintiff's [*2] motion is due to be granted.

### Background

On January 10, 2005, the Plaintiff filed a Complaint in this Court, alleging eight claims against the Defendants, including three claims that the Defendants violated provisions of the Lanham Act, namely, *15 U.S.C. § § 1114, 1125(a) and 1125(c)*. The Defendants filed a timely Answer to the Complaint and began to conduct discovery. The Defendants did not, however, file a motion to dismiss, a motion for summary judgment, or any other substantive motion in this case other than their motion now before the Court. Further, the Plaintiff neither conducted discovery, nor filed any substantive motion in this case other than its motion now before the Court.

On December 21, 2005, the parties filed a Joint Stipulation for Dismissal with Prejudice pursuant to *Federal Rule of Civil Procedure 41 (a)(1)(ii)*. In the joint stipulation, the parties agreed that "Defendant Pringle Development, Inc. and Ken Knorr hereby reserve all rights to seek their attorneys' fees and costs incurred in connection with defending this action." Shortly after the parties' [*3] filing, the Court entered an Order dismissing the case pursuant to the parties' joint stipulation and directing the Clerk to enter judgment. The Clerk entered judgment dismissing the case with prejudice on January 4, 2006.

On January 18, 2006, the Defendants moved for attorneys' fees pursuant to *Federal Rule of Civil Procedure 54(d), Local Rule 4.18, 15 U.S.C. § 1117*, "and this Court's inherent power and authority." In their memorandum of law supporting their motion for attorneys' fees, the Defendants relied upon *§ 1117* as the legal basis for their proposed attorneys' fee award. *Section 1117* states that, in cases involving "a violation of any right to a reg-

istrant of a mark registered in the Patent and Trademark Office, a violation under *section 1125(a)* or *(d)* of this title. . . . The court in exceptional cases may award attorneys' fees to the prevailing party." While asserting - without citation to legal authority - that they are prevailing parties under *§ 1117*, the Defendants argued in their motion that they should receive attorneys' fees in this case because of the allegedly frivolous nature of the Plaintiff's Complaint. [*4] The Plaintiff responded that the Defendants are not prevailing parties under *§ 1117* and, alternatively, that this is not an "exceptional case" meriting attorneys' fees under that section.

On January 20, 2006, the Defendants filed a Bill of Costs, taxing as costs $ 2,843.51 against the Plaintiff. On March 2, 2006, the Plaintiff filed its motion, arguing that the Defendants were not entitled to costs in this case because they were not prevailing parties pursuant to *Federal Rule of Civil Procedure 54(d)(1)*. *Rule 54(d)(1)* states, in pertinent part, that, "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." The Defendants responded that they were, in fact, prevailing parties under *Rule 54(d)(1)* because the dismissal in this case was with prejudice.

**Discussion**

The threshold question before the Court, which in this case is the dispositive issue, is whether the Defendants are prevailing parties under *§ 1117* and *Rule 54(d)(1)*, where the parties entered into a joint stipulation for dismissal with prejudice pursuant to *Rule 42(a)(1)(ii)* without admission of liability or fault [*5] by any party.

Under the "American Rule" that prevails in our system of justice, it is the duty of each party, whether they win or lose, to bear their own attorneys' fees. n1 Congress may, however, alter the general rule by statutory language that permits a prevailing party to recover reasonable attorneys' fees. n2 *Section 1117* contains such fee-shifting language, and allows the prevailing party to recover attorneys' fees in certain exceptional Title 15 cases. *Rule 54(d)(2)* operates to provide costs not including attorneys' fees as a matter of course to prevailing parties. n3

n1 See *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res., 532 U.S. 598, 603, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001)* ("Under this American Rule, we follow a general practice of not awarding fees to a prevailing party absent explicit statutory authority.")

n2 See id.

n3 Because courts have interpreted the term of art "prevailing party" similarly in the context of *Rule 54(d)(1)* and statutory provisions allowing the recovery of attorneys' fees, and because only in their opposition to the Plaintiff's motion do the Defendants address the issue of whether they are the prevailing parties, the Court will address concurrently whether the Defendants are the prevailing party under *Rule 54(d)(1)* and *§ 1117*.

[*6]

The Supreme Court has explained that a prevailing party "is one who has been awarded some relief by the court." n4 Following the Supreme Court, the Eleventh Circuit articulated a two-prong test for determining whether a litigant is a prevailing party, finding that "there must be (1) a situation where a party has been awarded by the court at least some relief on the merits of his claim or (2) a judicial imprimatur on the change in the legal relationship between the parties." n5 Moreover, the Supreme Court has held that, "Respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." n6

n4 *Buckhannon, 532 U.S. at 604-05* (The Court stressed the need for "judicial imprimatur" or "judicial relief" and stated that prevailing party status can be found when there "is a court-ordered change [in a] legal relationship between [the plaintiff] and the defendant."); *Bryant v. MV Trans., Inc., 231 F.R.D. 480, 481-82 (E.D. Va. 2005)* ("Clearly, Buckhannon requires some role of the court in the resolution of an action in order to judicially determine who prevailed in that action."); see also *Peek-a-boo Lounge v. Manatee County, 2006 U.S. Dist. LEXIS 24567, 2006 WL 1151974, * 1 (M.D. Fla. April 28, 2006)* ("[I]n order to qualify as a 'prevailing party' under a fee shifting statute, a plaintiff must have obtained a court-ordered change in the legal relationship between the plaintiff and the defendant.") (citations omitted).

[*7]

n5 *Smalbein v. City of Daytona Beach, 353 F.3d 901, 905 (11th Cir. 2003)* (quoting *Buckhannon, 532 U.S. at 604-05*). The Eleventh Circuit explained that: "Thus, one can be a prevailing party, for example, under an enforceable

judgment on the merits or under a court-ordered consent decree. Either option constitutes a material alteration in the legal relationship of the parties. One may be a prevailing party through formal entry of a consent decree as to a private settlement agreement because the agreement has the necessary judicial approval and oversight to be considered an alteration in the legal relationship of the parties warranting an award of attorneys' fees. . . .") (citations omitted).

n6 *Hewitt v. Helms, 482 U.S. 755, 760, 107 S. Ct. 2672, 96 L. Ed. 2d 654 (1987)* (citing *Hanrahan v. Hampton, 446 U.S. 754, 757, 100 S. Ct. 1987, 64 L. Ed.2d 670 (1980))*.

Here, the parties entered into a joint stipulation of dismissal pursuant to *Rule 41 (a)(1)* without an admission or judicial determination and, thus, there is no prevailing [*8] party. n7 A joint stipulation of dismissal filed pursuant to *Rule 41(a)(1)* - with or without prejudice - is effective upon filing and requires no further action by the district court. n8 Actions taken by the Court or the Clerk relating to the dismissal that follow the filing of the joint stipulation do not affect its intended result. n9 Indeed, the Court has no power to deny a dismissal effectuated pursuant to *Rule 41(a)(1)*, nor may the Court condition such a dismissal. n10

n7 See *Bryant, 231 F.R.D. at 481* ("Under such circumstances, there is no judicial determination as to who is the prevailing party in the case. In fact, there is no determination of any kind as to who "won" the dispute. The parties could have agreed to dismiss for any number of reasons or benefits, other than because one party would have won on the merits if the case went to trial. Thus, neither litigant is the prevailing party."); see also *DeShiro v. Branch, 183 F.R.D. 281, 286 (M.D. Fla. 1998)* (finding that a litigant was not a prevailing party for purposes of a fee shifting statute because the claims at issue "were voluntarily dismissed pursuant to *Fed. R. Civ. P. 41(a)(1)*; thus the Court did not have the opportunity to address the merits of those claims").

[*9]

n8 See *Fed. R. Civ. P. 41(a)(1)*; *Meinecke v. H & R Block Income Tax Sch., 66 F.3d 77, 82 (5th Cir. 1995)* ("According to this Rule, such stipulations take effect when filed and do not require an order of the court. *Fed. R. Civ. P.*

*41(a)(1)(ii)*. Therefore, the district court's order approving the dismissal is of no consequence."); see also *Boran v. United Migrant Opportunity Srvcs., Inc., 99 Fed. Appx. 64, 67 (7th Cir. 2004)* ("A court order is not required to give effect to a *Rule 41(a)(1)* dismissal. A stipulation of dismissal terminates the case upon filing with the clerk. Judicial approval is not required and cannot be withheld.") (citations omitted). An order by the court that merely "approves" a pro forma stipulation of dismissal and directs the clerk to enter judgment is a ministerial order for the benefit of the clerk; it is not intended to adjudicate or otherwise affect the rights of the parties in any way.

n9 See *Matter of West Texas Marketing Corp., 12 F.3d 497, 501 (5th Cir. 1994)* ("[W]hen the parties voluntarily agreed to a dismissal, under *Federal Rule of Civil Procedure 41(a)(1)(ii)* and under the case law of this circuit, any further actions by the court were superfluous.") (citing *Williams v. Ezell, 531 F.2d 1261, 1263-64 (5th Cir. 1976))*.

[*10]

n10 See *Fed. R. Civ. P. 41(a)(1)(ii)*; see also *Williams, 531 F.2d at 1263-64* ("The court had no power or discretion to deny plaintiffs' right to dismiss [pursuant to *Rule 41 (a)(1)(i)*] or to attach any condition or burden to that right.").

The Defendants' only legal argument supporting their assertion that they are prevailing parties is in their opposition to the Plaintiffs motion to review costs. The Defendants' argument, however, is not well taken, because every authority cited by the Defendants involves a plaintiff's voluntary motion for dismissal pursuant to *Federal Rule of Civil Procedure 41 (a)(2)*. "*Rule 41 (a)(2)* operates in a way that is significantly different from *Rule 41 (a)(1)(ii)*." n11 Indeed, unlike a *Rule 41 (a)(1)(ii)* dismissal, a voluntary dismissal under *Rule 41 (a)(2)* requires a substantial role by the court for its effectuation: the plaintiff must move in writing to dismiss the action; the court must exercise discretion to approve or disapprove the motion; the court [*11] must decide whether to impose conditions on the moving party; and the dismissal is not valid unless the parties obtain a court order. n12 Thus, a *Rule 41(a)(2)* dismissal has the "judicial imprimatur" that a *Rule 41(a)(1)* dismissal lacks. n13

n11 *Bryant, 231 F.R.D. at 482*.

n12 See *Negron v. City of Miami Beach, 113 F.3d 1563, 1571 (11th Cir. 1997)* (*Rule 41 (a)(2)* motion "requires leave of the court and is subject to the court's discretion"); *Bryant, 231 F.R.D. at 482*.

n13 See *Buckhannon, 532 U.S. at 604-05*; *Bryant, 231 F.R.D. at 482*.

In addition, the Court does not agree with the Defendants' assertion that the language in the stipulation that purported to "reserve all rights to seek their attorneys' fees and costs" (emphasis supplied) allows them now to recover those sums. The Defendants' reservation of rights provided them with no new rights, but merely shielded from extinguishment any rights they may have [*12] had. Accordingly, the language in this stipulation has been given full effect because the Defendants have sought fees and costs; it has simply turned out that the Defendants never obtained the status of a prevailing party and never had the right to recover fees and costs pursuant to that status.

Finally, in their motion, the Defendants stress the alleged frivolousness of the Plaintiff's Complaint in an attempt to convince the Court not only of the exceptional nature of this case under *§ 1117*, but presumably also in an effort to have the Court exercise its inherent authority to provide an award of attorneys' fees in this case. n14 Key to the Defendants' argument is the alleged facial invalidity of four of the claims in the Complaint and the alleged gross factual deficiency of the other four claims. The Court, however, is not convinced from the very limited record in this case that the Plaintiff acted without cause in filing the Complaint or, indeed, that this case is exceptional under *§ 1117*. If half of the claims in the Complaint lacked any legal basis, it seems odd that the Defendants conducted one-year's worth of discovery on those claims rather than immediately moving to [*13] dismiss them. Moreover, the Defendants chose not to file motions for summary judgment and - to the Court's knowledge - chose not to negotiate recovery of their attorneys' fees and costs. The Defendant's cannot now seek to have the Court rule on the merits of their claims and declare them the prevailing party after choosing to agree

with the Plaintiff to a *Rule 41 (a)(1)(ii)* joint stipulation of dismissal of the case. Therefore, the Court declines to exercise its inherent authority to order an award of attorneys' fees.

> n14 Although the Defendants' motion purports to raise the Court's inherent authority to award attorneys' fees, it does not suggest why the Court should exercise its discretion in this case and, thus, the Court's analysis of this issue is appropriately limited.

## Conclusion

Accordingly, upon due consideration, it is Ordered that:

> (1) The Defendants' Motion for an Award of Reasonable Attorneys' Fees and Related Non-taxable Expenses from Plaintiff (Doc. 21) is DENIED in all respects;
>
> (2) [*14] The Defendants' request for oral argument is DENIED;
>
> (3) The Plaintiff's Amended Motion for Court to Review Taxation of Costs and Deny Taxation of Some or All of Such Costs (Doc. 33) is GRANTED;
>
> (4) The Defendants are DENIED the taxation of all costs specified in the Bill of Costs (Doc. 26);
>
> (5) The Clerk is directed to enter judgment accordingly and close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 1st day of August, 2006.

WR. TERRELL HODGES

**UNITED STATES DISTRICT JUDGE**

# TAB 5

LEXSEE 2006 US DIST LEXIS 24567


Analysis
As of: Dec 21, 2006

**PEEK-A-BOO LOUNGE OF BRADENTON, INC., et al., Plaintiffs, vs. MANATEE COUNTY, FLORIDA, Defendant.**

**Case No. 8:99-CV-2707-T-27EAJ**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION**

*2006 U.S. Dist. LEXIS 24567*

**April 28, 2006, Decided**

**PRIOR HISTORY:** *Peek-a-Boo Lounge of Bradenton, Inc. v. Manatee County, 337 F.3d 1251, 2003 U.S. App. LEXIS 14186 (11th Cir. Fla., 2003)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff lounge filed suit against defendant county, alleging that two ordinances concerning adult entertainment were unconstitutional. A grant of summary judgment that was entered for the county was reversed on appeal. In the meantime, the county adopted an ordinance that was more favorable to the lounge. The lounge sought attorneys' fees pursuant to 42 U.S.C.S. § 1988(b), and the county moved for summary judgment.

**OVERVIEW:** Although the lounge did not obtain judicial relief, it contended that it was entitled to attorneys' fees because the litigation it initiated was a catalyst that prompted the county to change the ordinances. The court disagreed. The United States Supreme Court eliminated the "catalyst theory" as a basis for the award of attorney's fees and held that in order to qualify as a "prevailing party" under a fee shifting statute, a plaintiff must have obtained a court-ordered change in the legal relationship between the plaintiff and the defendant. In the United States Court of Appeals for the Eleventh Circuit, this meant that there had to be a situation where a party was awarded by the court at least some relief on the merits of his claim or a judicial imprimatur on the change in the legal relationship between the parties. The lounge was not the "prevailing party" in this litigation. The reversal of the summary judgment in favor of the county did not find the ordinances to be void or unconstitutional; the lounge obtained nothing more than a reversal and a remand, which did not constitute a judicial imprimatur on the change in the parties' legal relationship or some relief on the merits.

**OUTCOME:** The court granted the county's motion for summary judgment, thereby denying the lounge's request for attorneys' fees. The court ordered the clerk to close the case.

**COUNSEL:** [*1] For Peek-A-Boo Lounge of Bradenton, Inc., a Florida corporation doing business as Peek-A-Boo Lounge, M.S. Entertainment, Inc., a Florida corporation doing business as Cleopatra's, Plaintiffs: Luke Charles Lirot, Luke Lirot, P.A., Tampa, FL; Jennifer Marie D'Angelo, D'Angelo Jennifer M., Tampa, FL.

For GT Management, Inc., a Florida corporation doing business as Paper Moon, Plaintiff: Jennifer Marie D'Angelo, D'Angelo Jennifer M., Tampa, FL; Luke Charles Lirot, Luke Lirot, P.A., Tampa, FL.

For Manatee County, Florida, a political subdivision of the State of Florida, Defendant: James A. Minix, Manatee County Attorney's Office, Bradenton, FL; Scott D. Bergthold, Law Office of Scott D. Bergthold, Chattanooga, TN.

**JUDGES:** JAMES D. WHITTEMORE, United States District Judge.

**OPINION BY:** JAMES D. WHITTEMORE

**OPINION:**

### ORDER

**BEFORE THE COURT** is Defendant Manatee County's Motion for Summary Judgment (Dkt. 166) and Plaintiffs' Response in Opposition (Dkt. 179). The Court heard oral argument on April 26, 2006. Upon consideration, Defendant Manatee County's Motion for Summary Judgment (Dkt. 166) is GRANTED and the Clerk is directed to enter judgment in favor of Manatee County, Florida. [*2]

#### Procedural History

Plaintiffs initiated this action challenging the constitutionality of two Manatee County ordinances, 98-46 and 99-18. Ultimately, this Court entered summary judgment in favor of Defendant. On appeal, the Eleventh Circuit reversed the summary judgment and remanded the case for further proceedings. *Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 337 F.3d 1251 (11th Cir. 2003), cert. denied, 541 U.S. 988, 124 S. Ct. 2016, 158 L. Ed. 2d 491 (2004).* Thereafter, Manatee County adopted a new ordinance, 05-21, which replaced 98-46 and exempted licensed adult entertainment businesses from ordinance 99-18. n1 Given this legislation, Plaintiffs were granted leave to file a Revised Second Amended Complaint to preserve their claim for attorney's fees as the prevailing party in the underlying action pursuant to *42 U.S.C. § 1988(b).* n2

> n1 Plaintiffs filed a second case challenging the constitutionality of ordinance 05-21. (Peek-A-Boo Lounge of Bradenton, Inc. et al. v. Manatee County, Florida -- Case No. 8:05-CV-1707-JDW-TBM, Middle District of Florida, Tampa)

[*3]

> n2 The enactment of Manatee County ordinance 05-21 effectively rendered Plaintiffs' constitutional challenges to ordinances 98-46 and 99-18 moot. The Revised Second Amended Complaint was accordingly filed to only to preserve Plaintiffs' claim to attorney's fees in light *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001),*

In their Revised Second Amended Complaint for Declaratory Judgment Awarding Attorneys' Fees, Plaintiffs seek a "declaratory judgment finding that Plaintiffs have successfully vindicated their rights, privileges and immunities under the Constitution of Florida and the United States and Title *42 U.S.C. § § 1983, 1985* and *1988,* having obtained the elimination of legislation that worked to deprive Plaintiffs of their constitutional rights . . ." (Dkt. 156, P10). Further, Plaintiffs seek a declaratory judgment that they are entitled to recover attorneys fees as "'prevailing parties,' since they were successful in eliminating the existence of [*4] Ordinance 98-46 . . ." and "also successful in eliminating the application of Ordinance 99-18..." (Id. at P15). n3 Given the enactment of ordinance 05-21, Plaintiffs contend that their litigation was the "catalyst" which prompted Manatee County to address the allegedly infirm ordinances, thereby entitling them to recover attorneys' fees as prevailing parties, notwithstanding that no judicial relief was obtained (Dkt. 156, PP7,8,15,57).

> n3 To the extent Plaintiffs seek to set forth an alternative claim for attorney's fees accrued prior to adoption of Ordinance 05-21 as damages, that claim is disingenuous. Plaintiffs have presented no legal authority or theory upon which attorney's fees could be claimed as an element of damages.

#### Discussion

The United States Supreme Court addressed entitlement to attorney's fees under the "prevailing party" standard in connection with the Fair Housing Amendments Act of 1988 (FHAA) (*42 U.S.C. § 3613(c)(2)*) and the Americans with Disabilities Act of [*5] 1990 (ADA) (*42 U.S.C. § 12205*). *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).* In *Buckhannon,* as Plaintiffs acknowledge, the Court effectively eliminated the "catalyst theory" as a basis for the award of attorney's fees and held that in order to qualify as a "prevailing party" under a fee shifting statute, a plaintiff must have obtained a "court-ordered change in the legal relationship between the plaintiff and the defendant." *Buckhannon, 532 U.S. at 604 (quoting, Texas State Teachers Ass'n v. Garland Independent School Dist., 489 U.S. 782, 109 S. Ct. 1486, 103 L. Ed. 2d 866 (1989)).* In this Circuit, "it is now established that in order to be considered a prevailing party under *§ 1988(b),* there must be a "court-ordered . . . 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Smalbein v.*

2006 U.S. Dist. LEXIS 24567, *

*City of Daytona Beach, 353 F.3d 901, 904-905 (11th Cir. 2003)*. Specifically, there must be

> (1) a situation where a party has been awarded by the court 'at least some relief on the merits of his claim,' or
>
> (2) [*6] a 'judicial *imprimatur* on the change' in the legal relationship between the parties

*Smalbein, 353 F.3d at 905*.

Acknowledging the holdings in *Buckhannon* and *Smalbein,* in their Revised Second Amended Complaint, Plaintiffs candidly allege that their Revised Second Amended Complaint was filed "for the sole purpose of attempting to change admittedly binding precedent" (Dkt. 156 at P1). Plaintiffs describe their Complaint as a "good faith attempt to change the limitations of *Buckhannon* (relative to the elimination of the 'catalyst theory' as a justified basis to award attorney's fees to Plaintiffs)" and "seeking to revive the 'catalyst theory' for the award of fees in civil rights cases . . ." (Dkt. 156, PP7,8). Given the holdings in *Buckhannon* and *Smalbein,* Plaintiffs' attempt to recover attorney's fees necessarily must fail. Defendant Manatee County's Motion for Summary Judgment (Dkt. 166) must therefore be granted.

Simply put, Plaintiffs are not the "prevailing parties" in this litigation. At most, they were successful in having the Eleventh Circuit reverse the Order granting summary judgment in favor of Defendant. The Eleventh Circuit [*7] did not, contrary to Plaintiffs' arguments, find ordinance 98-46 "to be void *ab initio*" (Dkt. 156, PP36,37). Likewise, the Eleventh Circuit's opinion did not declare ordinance 99-18 to be unconstitutional or void. Plaintiffs obtained nothing more than a reversal of a summary judgment order and a remand for further consideration. The reversal and remand does not constitute a judicial *imprimatur* on the change in the legal relationship between the parties or "some relief on the merits" of Plaintiffs' claims. Accordingly, Plaintiffs are not "prevailing parties" for purposes of recovering attorney's fees under *§ 1988(b)*.

There being no genuine issues of material fact. Defendant is entitled to summary judgment as a matter of law on this record. n4 Plaintiffs are not the "prevailing parties" in this matter. Their catalyst theory of recovery of attorney's fees has been rejected by the Supreme Court in *Buckhannon* and the Eleventh Circuit in *Smalbein* with respect to *42 U.S.C. § 1988(b)*. Accordingly, it is

> n4 In their response in opposition to Defendant's motion for oral argument. Plaintiffs asserted "at the very least, the presence of factual disputes that precludes a grant of a summary judgment as a matter of law to Defendant." (Dkt. 179 at p. 3, P6). In response to the Court's query during oral argument, Plaintiff's counsel explained that he was referring to the distinction between the procedural histories of these Plaintiffs and the Plaintiff in *Buckhannon,* rather than to any material issues of fact relevant to Defendant's motion for summary judgment. To the extent there are factual distinctions, they are not material to the issue before the Court.

[*8]

**ORDERED AND ADJUDGED** that Defendant Manatee County's Motion for Summary Judgment (Dkt. 166) is GRANTED. Plaintiffs' Revised Second Amended Complaint for Declaratory Judgment Awarding Attorney's Fees is DISMISSED. The Clerk shall enter judgment in favor of Defendant. The Court reserves jurisdiction to award taxable costs upon appropriate and timely application. All pending motions are DENIED as moot. The Clerk is directed to close this case.

**DONE AND ORDERED** in chambers this 28th day of April, 2006.

**JAMES D. WHITTEMORE**

**United States District Judge**

# **TAB 6**

LEXSEE 2003 US DIST LEXIS 20171



Positive
As of: Dec 21, 2006

**UNITED STATES OF AMERICA, Plaintiff, v. ESTATE OF WILLIAM T. ROGERS; GAYLE M. ROGERS; JAMES C. CALLAWAY, JR.; THE CHARITABLE HEALTHCARE FOUNDATION, INC. f/k/a SUPERIOR HOME HEALTH CARE OF CHATTANOOGA, INC.; and ALPHA MEDICAL, INC., Defendants.**

**No. 1:97-cv-461**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE**

*2003 U.S. Dist. LEXIS 20171*

**April 3, 2003, Decided**

**SUBSEQUENT HISTORY:** Affirmed by *United States v. Alpha Med., Inc., 2004 U.S. App. LEXIS 8521 (6th Cir. Mich., Apr. 28, 2004)*

**PRIOR HISTORY:** *United States v. Estate of Rogers, 2002 U.S. Dist. LEXIS 24282 (E.D. Tenn., Jan. 16, 2002)*

**DISPOSITION:** [*1] Defendant Alpha Medical's application for costs, attorney's fees and other expenses denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff United States' case against defendant company was voluntarily dismissed under *Fed. R. Civ. P. 41(a)(2)*. The company, claiming prevailing party status, applied for attorney's fees, costs, and other litigation expenses under *28 U.S.C.S. § § 1920* and *2412*; *Fed. R. Civ. P. 54*; and U.S. Dist. Ct., E.D. Tenn., R. 54.1.

**OVERVIEW:** Because the court's order dismissing the United States' claims against the company with prejudice, based on the United States' voluntary dismissal, was a judicially sanctioned material alteration in the legal relationship between the company and the United States, it was tantamount to a judgment on the merits and was sufficient to confer on the company prevailing party status for the purpose of awarding attorney's fees under

*28 U.S.C.S. § 2412*. But even though the company was technically a prevailing party, the court and declined to award the company costs and attorney's fees under *28 U.S.C.S. § 2412(a)(1)* and (d)(1)(A). Even though the United States voluntarily dismissed its claims against the company, its position in the litigation was substantially justified. In permitting the United States' claims to survive the company's pretrial motions to dismiss and for summary judgment, the court determined that the United States had a sufficient factual and legal basis to proceed to trial on its claims against the company. The United States voluntarily dismissed its claims only because it determined that the company lack sufficient funds to satisfy a damages award.

**OUTCOME:** The court denied the company's application for costs, attorney's fees, and other expenses.

**COUNSEL:** For United States of America, PLAINTIFF: Matthew T Morris, U S Department of Justice Office of U S Attorney, Knoxville, TN USA.

For United States of America, PLAINTIFF: Richard G Vartain, Polly A Dammann, U S Department of Justice Civil Division, Washington, DC USA.

For Gayle M Rogers, DEFENDANT: Donald J AHO, Miller & Martin, Chattanooga, TN USA.

For Gayle M Rogers, James C Callaway, Jr, DEFENDANTS: William W Taylor, III, Meredith E Cabe, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, LLP, Washington, DC USA.

For Gayle M Rogers, DEFENDANT: William H Jeffress, Niki Kuckes, Baker Botts LLP, Washington, DC USA.

For Charitable Healthcare Foundation, Inc, The FKA Superior Home Health Care of Chattanooga, Inc, DEFENDANT: John P Konvalinka, Grant, Konvalinka & Harrison, PC, Chattanooga, TN USA.

For William T Rogers, Estate of Estate, DEFENDANT: William H Jeffress, Niki Kuckes, Stephen M Silver, Baker Botts LLP, [*2] Washington, DC USA.

JUDGES: R. ALLAN EDGAR, CHIEF UNITED STATES DISTRICT JUDGE.

OPINION BY: R. ALLAN EDGAR

OPINION:

MEMORANDUM

On the first day of trial, prior to *voir dire* and jury selection, plaintiff United States of America announced in open court that it was voluntarily dismissing with prejudice all of its claims against defendant Alpha Medical, Inc. ("Alpha"). Alpha had no objection. The Court treated the plaintiff's statement as a motion for voluntary dismissal pursuant to *FED. R. CIV. P. 41(a)(2)* which was granted and the trial proceeded without Alpha. On March 8, 2002, the Court entered a post-trial order dismissing with prejudice all of the plaintiff's claims against Alpha. [Court File No. 385]. If a plaintiff moves under *Rule 41(a)(2)* to voluntarily dismiss its complaint with prejudice, the district court must grant the motion. *Smoot v. Fox, 340 F.2d 301, 303 (6th Cir. 1964)*; *York v. Ferris State University, 36 F. Supp.2d 976, 979 (W.D. Mich. 1998)*; 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2367 p. 318 n.3 (1995) ("WRIGHT & MILLER").

The matter presently [*3] before the Court is Alpha's application for attorney's fees, costs, and other litigation expenses filed pursuant to *28 U.S.C. § § 2412and 1920*, *FED. R. CIV. P. 54*, and E.D. TN. LR 54.1. [Court File No. 389]. Plaintiff opposes the application. [Court File Nos. 393, 399]. After reviewing the record, the Court concludes that Alpha's application will be DENIED.

*I. Costs Under 28 U.S.C. § 2412(a)(1)*

*28 U.S.C. § 2412(a)(1)* provides that costs may, in the Court's discretion, be awarded to the prevailing party in any civil action brought by the United States. Two issues must be resolved: (1) whether Alpha is a prevailing party; and (2) if Alpha is a prevailing party, whether the Court should exercise its discretion to award costs to Alpha. Alpha's application for costs under *28 U.S.C. § 2412(a)(1)* will be DENIED. Although Alpha is technically a prevailing party, the Court in its discretion declines to award any costs to Alpha under *§ 2412(a)(1)*.

*A. Alpha Is A Prevailing Party*

The government contends Alpha [*4] cannot recover its costs under *§ 2412(a)(1)* because Alpha is not a prevailing party. The government says its decision to voluntarily dismiss was not based on anything that Alpha presented to the Court or prevailed upon. Prior to trial, the Court denied virtually all of Alpha's motions to dismiss and for summary judgment. [Court File No. 234]. Alpha was dismissed from the case solely because the government made a motion for voluntary dismissal pursuant to *FED. R. CIV. P. 41(a)(2)*. The voluntary dismissal was not based on a dispositive motion or any evidence submitted by Alpha. According to the government, it chose to voluntarily dismiss its claims because Alpha lacked sufficient funds to satisfy a damage award. The government argues that the Court's dismissal order is not a judgment "on the merits" such that Alpha can be deemed the prevailing party.

The Court concludes that Alpha is a prevailing party. Federal courts have struggled to determine whether a defendant is the prevailing party when the plaintiff voluntarily dismisses the complaint with prejudice. This has posed an especially difficult question in federal civil rights suits where, [*5] as a matter of policy, costs and attorney's fees are only awarded to prevailing defendants in the most egregious cases of misconduct by the plaintiff. *Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 54 L. Ed. 2d 648, 98 S. Ct. 694 (1978)*; *Dean v. Riser, 240 F.3d 505 (5th Cir. 2001)*; *Roane v. City of Mansfield, 229 F.3d 1153 (Table, text at 2000 WL 1276745) (6th Cir. 2000)*; *Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers 26 F.3d 842 (8th Cir. 1994)*; *Espada v. Rosado, 2001 U.S. Dist. LEXIS 13511, 2001 WL 1020549 (S.D.N.Y. Sept. 5, 2001)*; *Easiley v. Norris, 107 F. Supp. 2d 1332 (N.D. Okla. 2000)*; *York v. Ferris State University, 36 F. Supp.2d 976 (W.D. Mich. 1998)*; *Hughes v. Unified Sch. Dist. 330, Wabaunsee County, 872 F. Supp. 882 (D. Kan. 1994)*. It is important to recognize that the instant case does not involve any claims or causes of action predicated on federal civil rights laws. This Court must determine what is the proper standard applicable to non-civil rights cases.

The term "prevailing party" is not defined in *28 U.S.C. § 2412*, except with regard to eminent domain proceedings [*6] under *§ 2412(d)(2)(H)* which is not applicable here. In the absence of a definition in *§ 2412*, the Court looks to the ordinary meaning of the term "prevailing party" as it is commonly defined and used by federal courts. The definition of what constitutes a prevailing party is often discussed in federal civil rights cases involving motions for attorney's fees under *42 U.S.C. § 1988*. Although the present case involves *28 U.S.C. § 2412* and it is not a federal civil rights action governed by *42 U.S.C. § 1988*, the analysis in *§ 1988* cases is instructive. As the Supreme Court explains in *Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 602-03, 149 L. Ed. 2d 855, 121 S. Ct. 1835 (2001)*, the term "prevailing party" is contained in numerous fee-shifting statutes and it must be construed as having a consistent meaning in federal statutes, unless otherwise indicated by Congress in the plain statutory language. *See Chambers v. Ohio Dept. of Human Services, 273 F.3d 690, 693 n.1 (6th Cir. 2001)*. When Congress enacted *28 U.S.C. § 2412*, it intended [*7] that "prevailing party" be construed consistently with the use and meaning of the phrase "prevailing party" in other federal fee-shifting statutes. *Heeren v. City of Jamestown, Ky., 39 F.3d 628, 631 (6th Cir. 1994)*; *Citizens Coalition for Block Grant Compliance, Inc., v. City of Euclid, 717 F.2d 964, 966 n.2 (6th Cir. 1983)*.

A prevailing party is one who has been awarded some relief on the merits by the court. *Buckhannon, 532 U.S. at 603-04*; *Farrar v. Hobby, 506 U.S. 103, 109-11, 121 L. Ed. 2d 494, 113 S. Ct. 566 (1992)*; *Hewitt v. Helms, 482 U.S. 755, 760, 96 L. Ed. 2d 654, 107 S. Ct. 2672 (1987)*; *Hanrahan v. Hampton, 446 U.S. 754, 758, 64 L. Ed. 2d 670, 100 S. Ct. 1987 (1980)*; *E.W. Grobbel Sons, Inc. v. N.L.R.B., 176 F.3d 875, 878 (6th Cir. 1999)*. An award of nominal damages suffices to make the plaintiff a prevailing party. *Buckhannon, 532 U.S. at 604*; *Farrar, 506 U.S. at 121*. In *Texas State Teachers Ass'n v. Garland Independent School Dist., 489 U.S. 782, 103 L. Ed. 2d 866, 109 S. Ct. 1486 (1989)*, the Supreme Court reasoned that to be considered a prevailing party within the meaning of *§ 1988*, "the plaintiff must be able to point to a resolution of [*8] the dispute which changes the legal relationship between itself and the defendant." *Id. at 792*. Consequently, the "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Id. at 792-93*. This point was reaffirmed in *Buckhannon, 532 U.S. at 604-05* (to prevail a party must obtain a judicially sanctioned change in the legal relationship of the parties). *See also Chambers, 273 F.3d at 691-93*; *Berger v. City of Mayfield, 265 F.3d 399, 406 (6th Cir. 2001)*.

A settlement agreement subject to judicial enforcement through a consent decree may serve as the basis for an award of cost and attorney's fees to the prevailing party. *Buckhannon, 532 U.S. at 604*; *Farrar, 506 U.S. at 111*; *Maher v. Gagne, 448 U.S. 122, 65 L. Ed. 2d 653, 100 S. Ct. 2570 (1980)*. Although a consent decree does not always include an admission of liability, it is a court-ordered change in the legal relationship between the plaintiff and defendant. *Buckhannon, 532 U.S. at 604*; *Texas State Teachers Ass'n, 489 U.S. at 792*; *Hewitt, 482 U.S. at 760-61.* [*9] Judgments on the merits and court-ordered consent decrees create the judicially sanctioned material alteration of the parties' legal relationship necessary to authorize an award of costs and attorney's fees. *Buckhannon, 532 U.S. at 604*; *Texas State Teachers Ass'n, 489 U.S. at 792-93*.

With this basic definition of "prevailing party" in mind, we turn to the task of determining whether the government's *Rule 41(a)(2)* voluntary dismissal of its complaint against Alpha with prejudice and the order of dismissal entered by this Court on March 8, 2002, serve to make Alpha a prevailing party for purposes of awarding costs and attorney's fees under *28 U.S.C. § 2412*.

Although the Sixth Circuit has not rendered a published decision directly on point, its unpublished opinion in *Roane, 229 F.3d 1153, 2000 WL 1276745*, provides some guidance. Review of *Roane* is complicated by the fact that each member of the three-judge appellate panel wrote a separate opinion. Plaintiff Donald Roane brought a federal civil rights action under *42 U.S.C. § 1983*. After settlement negotiations failed and the defendants filed a motion for [*10] summary judgment, plaintiff Roane moved to voluntarily dismiss the action pursuant to *FED. R. CIV. P. 41(a)(2)*. The district court granted the motion and dismissed the complaint with prejudice upon plaintiff Roane's oral consent. Defendants made a motion for attorney's fees under *42 U.S.C. § 1988* which was granted by the district court. The district court determined that the defendants were the prevailing parties based on the voluntary dismissal.

On appeal, Roane argued that no award of attorney's fees was justified under *§ 1988* because the suit had been voluntarily dismissed. The Sixth Circuit reversed the award of attorney's fees under *§ 1988*. Writing the majority opinion, Circuit Judge Clay reasoned *inter alia* that the defendants were not the prevailing parties because they "did not receive a favorable judicial determination on the merits ...." *Roane, 229 F.3d 1153, 2000 WL 1276745 at ** 2*. However, the other two circuit judges on the panel clearly disagreed with Judge Clay's analysis on this particular point. In a concurring opinion, Circuit Judge Jones said that by obtaining a voluntary dismissal of the plaintiff's [*11] complaint with prejudice, the defendant city was a prevailing party. *Roane, 229 F.3d*

*1153, 2000 WL 1276745 at ** 2-3* (Jones, J., concurring). In a dissenting opinion, Circuit Judge Batchelder also said the defendant city was a prevailing party. *Roane, 229 F.3d 1153, 2000 WL 1276745 at ** 3-6.* (Batchelder, J., dissenting). In sum, two out of three judges in *Roane* agreed that the plaintiff's voluntary dismissal of his complaint with prejudice made the defendant city the prevailing party. The position taken by Circuit Judges Jones and Batchelder in *Roane* is consistent with the majority rule expressed in other federal cases.

The majority of federal courts that have addressed the specific issue hold that where a plaintiff voluntarily dismisses the complaint with prejudice in a non-civil rights case, the defendant is the prevailing party for the purpose of awarding costs. *Zenith Ins. Co. v. Breslaw, 108 F.3d 205, 207 (9th Cir. 1997); Cantrell v. Int'l Bhd. of Elec. Workers, Local 2021, 69 F.3d 456, 458; Sheets v. Yamaha Motors Corp., U.S.A., 891 F.2d 533, 539 (5th Cir. 1990); Schwarz v. Folloder, 767 F.2d 125, 130 (5th Cir. 1985); Beer v. John Hancock Life Insurance Co., 211 F.R.D. 67, 70 (N.D.N.Y. 2002);* [*12] *Uniflow Mfg. Co. v. Superflow Mfg. Corp., 10 F.R.D. 589 (N.D. Ohio 1950);* 10 WRIGHT & MILLER § 2667, pp. 209-10 n. 14; *see also Kona Enterprises, Inc. v. Estate of Bishop, 229 F.3d 877, 889 (9th Cir. 2000).* This Court agrees with and follows the majority rule.

Numerous federal courts, including the Sixth Circuit, recognize that a plaintiff's voluntary dismissal of a complaint with prejudice pursuant to *FED. R. CIV. P. 41(a)* gives the defendant the full relief to which the defendant is legally entitled and is tantamount to a judgment on the merits. *Dean, 240 F.3d at 509; Catz v. Chalker, 142 F.3d 279, 287 (6th Cir. 1998), opinion amended on denial of rehearing, 243 F.3d 234 (6th Cir. 2001); Israel v. Carpenter, 120 F.3d 361, 365 (2nd Cir. 1997); Breslaw, 108 F.3d at 207; NBN Broadcasting, Inc. v. Sheridan Broadcasting Networks, Inc., 105 F.3d 72, 78 (2nd Cir. 1997); Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 345 (2nd Cir. 1995); Samuels v. Northern Telecom, Inc., 942 F.2d 834, 836 (2nd Cir. 1991);* [*13] *Harrison v. Edison Bros. Apparel Stores, Inc., 924 F.2d 530, 534 (4th Cir. 1991); Nemaizer v. Baker, 793 F.2d 58, 61 (2nd Cir. 1986); Schwarz, 767 F.2d at 130; Storey v. Cello Holdings, L.L.C., 182 F. Supp.2d 355, 361-62 (S.D.N.Y. 2002); Beer, 211 F.R.D. at 70.*

When a plaintiff voluntary dismisses a cause of action with prejudice, future litigation of that same cause of action is barred by the doctrine of *res judicata.* In *Smoot, 340 F.2d at 303,* the Sixth Circuit said that a plaintiff's voluntary dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to further action between the same parties, an obvious reference to the doctrine of *res judicata.*

"An adjudication in favor of the defendant, by court or jury, can rise no higher than this." *Id.* (collecting case citations). In other words, a plaintiff's voluntary dismissal of the complaint with prejudice constitutes a final adjudication in the defendant's favor. This is discussed by the Sixth Circuit in *Roane, 229 F.3d 1153, 2000 WL 1276745* (Jones, J., concurring, [*14] and Batchelder, J., dissenting). *See also Burpo v. Algoma Steel Corp., Ltd., 772 F.2d 905 (Table, text in 1985 WL 13565, *2 (6th Cir. Aug. 29, 1985)) ; Cream Top Creamery v. Dean Milk Co., 383 F.2d 358, 362 (6th Cir. 1967).* After reviewing Sixth Circuit precedent, this Court is convinced the Sixth Circuit follows the majority rule.

The order entered by this Court on March 8, 2002, dismissing the government's claims against Alpha with prejudice based on the government's *Rule 41(a)(2)* voluntary dismissal [Court File No. 385] is a judicially sanctioned material alteration in the legal relationship between Alpha and plaintiff United States. It is tantamount to a judgment on the merits and is sufficient to confer on Alpha the status of a prevailing party for the purpose of awarding costs and attorney's fees pursuant to *28 U.S.C. § 2412. United States v. 163.25 Acres of Land, 663 F. Supp. 1119 (W.D. Ky. 1987).*

### *B. Award Of Costs Not Justified*

Although Alpha is technically a prevailing party, this is an appropriate case for the Court to exercise its discretion under [*15] *28 U.S.C. § 2412(a)(1)* and decline to award costs to Alpha. The Court has examined the circumstances of this litigation and considered the proper context in which the government's *Rule 41(a)(2)* voluntary dismissal occurred. The government's decision to voluntarily dismiss was not based on anything that Alpha presented to the Court. Prior to trial, the Court denied virtually all of Alpha's motions to dismiss and for summary judgment. The voluntary dismissal was not motivated by a dispositive motion or any evidence submitted by Alpha. Instead, the government chose to voluntarily dismiss its claims because Alpha lacked sufficient funds to satisfy a damage award. The government made a good faith determination that further litigation against Alpha would not be worth the effort due to Alpha's lack of assets and financial resources.

In short, this is not a case where a calculating plaintiff has voluntarily dismissed a groundless or frivolous complaint in a strategic move to preclude entry of an adverse judgment on the merits and thereby seek to avoid the imposition of costs and attorney's fees. Based on the record, the Court cannot say that the government's claims [*16] against Alpha were groundless or frivolous. Voluntary dismissal occurred after the government's claims had survived Alpha's pretrial motions for dismissal and summary judgment. The voluntarily dismissal under *Rule*

*41(a)(2)* is essentially a gratuitous act on the government's part since it clearly was not caused or prompted by anything that Alpha said or did. Under these circumstances, common sense and logic dictate Alpha should not recover its costs from the federal government pursuant to *28 U.S.C. § 2412(a)(1)*.

## II. Attorney's Fees and Other Expenses Under 28 U.S.C. § 2412(d)(1)(A)

Under the "American Rule," parties are ordinarily required to bear their own attorney's fees. As a general rule, the federal courts do not award attorney's fees to a prevailing party absent explicit statutory authority permitting such awards or an enforceable contract. *Buckhannon, 532 U.S. at 602*; *Key Tronic Corp. v. United States, 511 U.S. 809, 819, 128 L. Ed. 2d 797, 114 S. Ct. 1960 (1994)*; *Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 44 L. Ed. 2d 141, 95 S. Ct. 1612 (1975)*; *Riddle v. Egensperger, 266 F.3d 542, 547 (6th Cir. 2001)*. [*17]

*28 U.S.C. § 2412(d)* is a fee-shifting statute. When Congress enacted *§ 2412(d)*, it waived the United States government's sovereign immunity and general statutory immunity from attorney's fee awards, and created a limited exception to the American Rule against awarding attorney's fees to prevailing parties. *Pierce v. Underwood, 487 U.S. 552, 575, 101 L. Ed. 2d 490, 108 S. Ct. 2541 (1988)* (Brennan, J., concurring); *Heeren, 39 F.3d at 630*. Because it is a waiver of sovereign immunity, *§ 2412(d)* is strictly and narrowly construed in favor of the United States.

*28 U.S.C. § 2412(d)(1)(A)* provides in relevant part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action. unless the court finds that the position of the United States was substantially justified [*18] or that special circumstances made an award unjust.

For Alpha to be entitled to an award of attorney's fees and other expenses from under *§ 2412(d)(1)(A)*, three essential elements must exist: (1) Alpha must be a prevailing party; (2) the government's position was not substantially justified; and (3) no special circumstances

make an award to Alpha unjust. *Commissioner, INS v. Jean, 496 U.S. 154, 158, 110 L. Ed. 2d 134, 110 S. Ct. 2316 (1990)*; *Anderson v. Commissioner of Social Security, 198 F.3d 244 (Table, text at 1999 WL 1045072, **3-4 (6th Cir. Nov. 12, 1999))* ; *United States v. S 515,060.42 in United States Currency, 152 F.3d 491, 506-07 (6th Cir. 1998)*.

As discussed *supra*, Alpha is a prevailing party for purposes of *28 U.S.C. § 2412*. However, the second element is not satisfied here. The Court finds that the government's position against Alpha was substantially justified. The government bears the burden of showing that its position was substantially justified. *United States v. True, 250 F.3d 410, 419 n.7 (6th Cir. 2001)*; *Crawford v. Sullivan, 935 F.2d 655, 658 (4th Cir. 1991)*. The government has [*19] met its burden in this case.

The term "substantially justified" is defined as meaning " 'justified in substance or in the main' -- that is, justified to a degree that could satisfy a reasonable person." *Pierce, 487 U.S. at 565*. To be substantially justified under *§ 2412(d)(1)(A)* means "more than merely undeserving of sanctions for frivolousness . . . ." *Pierce, 487 U.S. at 566*. The government's position can be justified even though it is not correct. A position can be substantially justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact. *Id at 566 n.2*; *Jean, 496 U.S. at 158 n.6*; *S 515,060.42 in United States Currency, 152 F.3d at 507*; *Heeren, 39 F.3d at 632*; *United States v. Real Property Located at 2323 Charms Road, 946 F.2d 437, 440 (6th Cir. 1991)*; *United States v. One 1985 Chevrolet Corvette, 914 F.2d 804, 808 (6th Cir. 1990)*; *Jankovich v. Bowen, 868 F.2d 867, 869 (6th Cir. 1989)*.

The mere fact that the government chose to voluntarily dismiss its claims against Alpha does not [*20] raise a presumption that the government's position lacked substantial justification. *Cf. Real Property Located at 2323 Charms Road, 946 F.2d at 440*. The Sixth Circuit has said that even if the federal government's position is ultimately found to be incorrect and it does not prevail, such an outcome does not necessarily lead to an award of attorney's fees under *§ 2412(d)(1)(A).S 515,060.42 in United States Currency, 152 F.3d at 507*.

This Court finds that the government's position and its claims against Alpha were substantially justified within the meaning of *28 U.S.C. § 2412(d)(1)(A)*. An objectively reasonable person could think the government's position against Alpha was correct because it had a reasonable basis in law and fact. A key factor in the Court's analysis is that the government's claims against Alpha survived Alpha's pretrial motions to dismiss and for summary judgment. The Court determined that the government had a sufficient factual and legal basis to

proceed to trial on its claims against Alpha. The Court has not changed its mind.

Accordingly, Alpha's application for attorney's fees and other expenses pursuant to *28 U.S.C. § 2412(d)* [*21] will be **DENIED**.

### III. Costs and Attorney's Fees Under FED. R. CIV. P. 54(d) and 28 U.S.C § 1920

In its application for costs and attorney's fees, Alpha cites *FED. R. CIV. P. 54* and *28 U.S.C. § 1920*. Alpha's application against the United States for costs, attorney's fees, and other expenses is governed by *28 U.S.C. § 2412*. Because the Court has determined that it will not award costs and attorney's fees to Alpha under *§ 2412*, any such claim asserted by Alpha under *Rule 54(d)* and *§ 1920* must be denied. *Rule 54(d)* does not provide a separate or alternative basis for awarding costs and attorney's fees against the United States government in this case beyond *28 U.S.C. § 2412*.

*Rule 54(d)(1)* provides that except when express provision is made either in a federal statute or the FEDERAL RULE OF CIVIL PROCEDURE, costs other than attorney's fees shall be allowed as of course to the prevailing party "unless the court directs otherwise." But costs against the United States "shall be imposed [*22] only to the extent permitted by law." The Court has determined that costs will not be awarded to Alpha under *28 U.S.C. § 2412(a)(1)*. Consequently, Alpha cannot recover its costs under *Rule 54(d)(1)* when its application

for costs pursuant to *28 U.S.C. § 2412(a)(1)* is being denied.

Likewise, Alpha's application for attorney's fees brought under *FED. R. CIV. P. 54(d)(2)* must be denied. The application for attorney's fees against the United States is governed by *28 U.S.C. § 2412(d)* and the Court has determined that no attorney's fees will be awarded to Alpha under *§ 2412(d)*. Alpha cannot recover attorney's fees under *Rule 54(d)(2)* when its application for attorney's fees pursuant to *§ 2412(d)* is being denied.

Accordingly, an order will enter denying Alpha's application.

R. ALLAN EDGAR

CHIEF UNITED STATES DISTRICT JUDGE

### ORDER

In accordance with the accompanying memorandum opinion, the application for costs, attorney's fees, and other expenses filed by defendant Alpha Medical Inc. pursuant to *28 U.S.C. § § 2412and 1920*, and *FED. R. CIV. P. 54* [*23] [Court File No. 389] is **DENIED.**

SO ORDERED.

ENTER: April 3, 2003

R. ALLAN EDGAR

CHIEF UNITED STATES DISTRICT JUDGE

# TAB 7

LEXSEE 1988 US DIST LEXIS 12107

**ANN R. WILLNER, Plaintiff, v. GENE BUDIG, et al., Defendants**

**Civil Action No. 85-2134-O**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS**

*1988 U.S. Dist. LEXIS 12107*

**October 14, 1988, Decided and Filed**

**COUNSEL:** [*1]

Ann R. Willner, Lawrence, Kansas, pro se

Clifford T. Mueller, McAnany, Van Cleave & Phillips, P.A., Lenexa, Kansas, Mary Beth Mudrick, Topeka, Kansas, J. Steven Pigg, Fisher, Patterson, Sayler & Smith, Topeka, Kansas, for Defendants

**OPINION BY:**

O'CONNOR

**OPINION:**

MEMORANDUM AND ORDER

EARL E. O'CONNOR, CHIEF UNITED STATES DISTRICT JUDGE

On August 11, 1986, the court dismissed plaintiff's case with prejudice and taxed costs to plaintiff. The clerk of the court assessed costs on August 22, 1988, in the amount of $ 2,100.10, which amount represents the costs of plaintiff's deposition. This matter is now before the court on plaintiff's motion for review and vacation of taxation of costs. Essentially, plaintiff contends that the court's taxing costs to her was improper; therefore, plaintiff's motion is more a motion for reconsideration of our August 11, 1988, Memorandum and Order than a motion for review of taxation of costs. As such, it is untimely. D. Kan. Rule 206 (f). Even if timely, however, plaintiff's motion would be denied.

The general rule is that "the court lacks power to allow costs, barring exceptional circumstances, if the dismissal is with prejudice." Mobile Power enterprises, *Inc. v. Power* [*2]   *Vac, Inc., 496 F.2d 1311, 1312 (10th Cir. 1974).* The court finds no difficulty concluding that this case presents exceptional circumstances waranting the imposition of costs. The record is replete with evidence of plaintiff's constant dilatory tactics. Therefore, the court finds the taxation of $ 2,100.10 in cost to be more than reasonable under the circumstances and also within the bounds of *28 U.S.C. § 1920.*

IT IS THEREFORE ORDERED that plaintiff's motion for review is denied. Plaintiff is directed to pay defendants $ 2,100.10 in cost within ten (10) days of the date of this order.

Dated this 14th day of October, 1988, at Kansas City, Kansas.