# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                    :      Chapter 11
                                          :
NORTHWESTERN CORPORATION,    :      Case No. Case No. 03-12872 (CGC)
                                          :
                        Debtor.           :      Objection deadline: October 31, 2003 at 4:00 p.m.
                                          :      Hearing date: November 6, 2003 at 10:30 a.m.
                                                         (only if objections filed)

## MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PERMITTING SECURITIES TRADING UPON ESTABLISHMENT OF AN ETHICAL WALL

The Official Committee of Unsecured Creditors (the "Committee") appointed in the

chapter 11 case of the above-captioned debtor and debtor in possession (the "Debtor") hereby

moves this Court (the "Motion") for entry of an order permitting members of the Committee,

including both those named below and each future member, if any, (the "Members") and their

"Affiliates"[1] to trade in the Securities (as defined below) of the Debtor and any non-debtor

affiliates of the Debtor (collectively, with the Debtors, the "NOR Group") upon the

establishment and implementation of "Ethical Walls"[2] and in accordance with the terms and

---

[1]    As used herein the term "Affiliate" means with respect to any entity, any other entity directly or indirectly controlling, controlled by, or under common control with such other entity. For the purpose of this definition, the term "control" (including, with correlative meanings, the terms "controlling," "controlled by," and "under common control with"), as used with respect to any entity, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such entity, whether through the ownership of voting securities, by contract or otherwise.

[2]    As used herein, the term "Ethical Wall" refers to procedures established by an organization such as a financial institution to isolate its trading activities from its activities as a member of an official creditors' committee. An Ethical Wall typically involves procedures inside the institution which both (i) comply with the requirements for insulating certain people from certain material nonpublic information and (ii) function without unnecessary disruption to the management and operation of the organization. To the extent necessary to achieve compliance, typical Ethical Wall arrangements consist of the following: staffing arrangements whereby the institution's personnel responsible for performing committee functions are different than the personnel responsible for performing trading functions; physical separation of the office and file spaces used by those personnel; establishment of procedures for securing committee-related files; establishment of separate telephone and facsimile lines for trading activities and committee activities; and special procedures for the delivery and posting of telephone messages.

conditions of the proposed form of order attached hereto.  In support of this Motion, the

Committee respectfully represents as follows:

## BACKGROUND

1.    On September 14, 2003 (the "Petition Date"), the Debtor filed a voluntary

petition for relief under chapter 11 of title 11 of the United States Code § 101 et seq. (the

"Bankruptcy Code") in the Bankruptcy Court for the District of Delaware (the "Delaware

Bankruptcy Court").  The Debtor continues to operate its businesses and manage its properties as

a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.    On September 30, 2003, the United States Trustee for the District of

Delaware (the "United States Trustee") conducted the organizational meeting of creditors at

which time the Committee was formed.  The United States Trustee officially appointed the

Committee by a Notice of Appointment dated October 1, 2003.  As of the date hereof, the

Committee consists of the following eight (8) Members:

> OCM Opportunities Fund IV, L.P. c/o Oaktree Capital Management, LLC
> Franklin Templeton Mutual Series Fund c/o Franklin Mutual Advisers, LLC
> The Bank of New York as Trustee
> Wilmington Trust Company as Trustee
> HSBC Bank USA
> Avenue Capital Management
> AG Capital Recovery Partners III, L.P. c/o Angelo Gordon & Co.
> Comanche Park, LLC

3.    After its formation, on September 30, 2003, the Committee retained Paul,

Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss") and the Bayard Firm as its co-counsel,

subject to this Court's approval.  The Committee has also selected, subject to this Court's

approval, Houlihan, Lokey, Howard & Zukin as its proposed financial advisors.

4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The matter is a core proceeding under 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought by this Motion are sections 105(a) and 1103(c) of the Bankruptcy Code.

## RELIEF REQUESTED

5.      By this Motion, the Committee moves for the entry of an arguably routine order in public-company chapter 11 cases determining that Members neither violate their duties as Members nor subject their claims to possible disallowance, subordination or other adverse treatment by trading in the stock, notes, bonds or debentures of any one or more members of the NOR Group. The order should also determine that the buying or selling of participations (collectively, all activities described herein, the "Transactions") in any of such debt obligations or any other claims against or interests in any one or more members of the NOR Group (collectively, the "Securities") (whether or not covered by Bankruptcy Rule 3001(e)) is not violative of Member duties. The term "securities" shall include "securities" within the meaning of applicable state or federal securities laws or both, during the pendency of this case. Members should be permitted to continue to engage in the Transactions as long as those Members establish and effectively implement Ethical Wall policies and procedures to prevent the misuse of any material non-public information that may be obtained through their activities as Members.

## ETHICAL WALL PROVISIONS

6.      Certain of the present Members are directly themselves (or are affiliated with) investment advisors or managers that provide investment-advisory services to institutional, pension, mutual fund and high net-worth clients and affiliated funds and accounts. These Members may buy and sell Securities and other financial assets for their own portfolios. As part of these regular business activities, the Members have duties to maximize returns for their clients or shareholders through the buying and selling of Securities and other financial assets. By this

3

Motion, the Members acknowledge that they have certain legal duties regarding material nonpublic information about the NOR Group. In addition, they acknowledge that trading in Securities by Members may implicate various federal laws limiting or attaching consequences to trading in Securities on the basis of material nonpublic information. If the Members are barred from trading Securities during the pendency of this case because of their service on the Committee, they risk the loss of potentially beneficial investment opportunities for their clients and themselves. Alternatively, if Members resign from the Committee, their clients' interests may be compromised by virtue of the Members taking a less active role in the reorganization process. As currently constituted, the Committee is representative of the general body of unsecured creditors.

      7.    Many institutions have faced the same dilemma with respect to committee memberships in other chapter 11 cases in recent years. To resolve this issue, bankruptcy courts have, with increasing regularity, permitted active members of official committees to trade in the securities of a debtor while incumbent. Such authorization, however, typically is conditioned on establishment of Ethical Walls.

      8.    A widely cited case that clearly articulates procedures for establishing Ethical Walls is <u>Federated Department Stores, Inc</u>. Bankr. No. 1-90-00130, 1991 WL 79143 at *1 (Bankr. S.D. Ohio Mar. 7, 1991) (the "Federated Order") (attached as Exhibit <u>A</u> hereto). In that case, Fidelity Management & Research Company ("Fidelity"), a member of an official bondholders' committee, moved for an order determining that it would not violate its duties as a committee member by trading in the debtors' securities if procedures were implemented to insulate its trading activities from its committee-related activities. Numerous parties, including the SEC, supported Fidelity's motion, and even the debtors responded that they were not

opposed to the requested relief. The SEC's memorandum in support of Fidelity's motion urged

the court to adopt the SEC's position that:

> consistent with the requirements of the federal securities laws and
> the bankruptcy laws, an entity that is engaged in the trading of
> securities as a regular part of its business and that has implemented
> procedures reasonably designed to prevent the transmission to its
> trading personnel of information obtained through service on an
> official committee ***is not precluded from serving on the committee
> and, at the same time, trading in the debtor's [sic] securities.***

SEC Memorandum at 7 (emphasis added). The SEC went on to point out that institutional

creditors, such as investment advisors and broker-dealers, "have skills and expertise that are

likely to be extremely valuable to committee" and concluded that there "is no legal impediment

to permitting the service of such entities on official committees." Id.

      9.    Fidelity's motion was granted. Judge Aug ordered that "Fidelity will not

be violating its fiduciary duties as a committee member and accordingly, will not be subjecting

its claims to possible disallowance, subordination, or other adverse treatment, by trading in the

securities of the Debtors . . . during the pendency of these Cases, provided that Fidelity employs

an appropriate information blocking device or '[Ethical] Wall . . . .'" Federated, 1991 WL 79143

at *1.

      10.    The Federated Order specified certain procedures for establishment of an

Ethical Wall, including:

(i)    written acknowledgment by personnel performing committee work that they
could receive nonpublic information and are aware of the Ethical Wall procedures
in effect;

(ii)    a prohibition on the sharing of nonpublic committee information with employees
that are not responsible for performing any committee-related functions (except
in-house legal counsel);

(iii)    creation of separate file space for committee work that is inaccessible to
employees that are not responsible for performing any committee-related
functions;

(iv)    restrictions on committee personnel's access to trading information; and

(v)    establishment of a compliance review process.  <u>See</u> <u>id.</u>

11.    In accordance with the SEC's suggestions, the Federated Order covered only those personnel of committee members engaged in the trading of securities as a regular part of their business.  <u>See</u> <u>id.</u> at *2.

12.    Since the entry of the Federated Order, numerous other bankruptcy courts, including the Delaware Bankruptcy Court, have recognized the importance of having institutional creditors participate on official committees and, based thereon, have entered orders permitting institutional members of official committees to trade the debtor's securities as long as Ethical Walls are implemented.  For example, in <u>In re NationsRent, Inc., et al.</u>, Case No. 01-11628 (PJW), the Delaware Bankruptcy Court entered an order (April 2, 2002) (the "NationsRent Order") permitting members of the debtor's official committee of unsecured creditors to trade the debtor's securities with the appropriate "policies and procedures set forth herein, such as the Ethical Wall," the terms of which were substantially identical to those set forth in the Federated Order.  Similarly, in the case of <u>Lernout & Hauspie Speech Products N.V.,</u> <u>et al.</u>, Case No. 91-803 (HSB), the Delaware Bankruptcy Court entered an order (November 15, 2001) (the "L&H Order") that permitted trading of the debtor's securities by members of the official unsecured creditor's committee that "establish, effectively implement, and strictly adhere to the policies and procedures set forth herein... the following information-blocking procedures." The terms of the L&H Order were substantially similar to the terms of the Federated Order and

the NationsRent Order.[3]

13.     The Committee believes that any current or future Members that engage in the business of trading Securities should not be precluded from trading in Securities of any member of the NOR Group during their tenure on the Committee.  As recognized by the SEC in Federated, the Members have resources and experience, including knowledge of the Debtors' business, industry and capital structure, that render them particularly valuable for official creditors' committee service.  In addition, because the Members are among the NOR Group's largest creditors (or representatives thereof), they have an incentive to pursue the Committee's work diligently toward the goal of promptly confirming a chapter 11 plan.

14.     Beyond any negative consequences it would have in this case, denial of the relief sought herein also would discourage large creditors with expertise and experience in reorganizations from joining creditors' committees in other cases, despite the presumption in the Bankruptcy Code that the committee shall "ordinarily" consist of the largest creditors.  See 11 U.S.C. § 1102(b)(1).  Creditors that perform investment advisory services, or who buy and sell Securities or other financial assets for their own account, simply should not be forced into the choice of serving on the Committee and risking the loss of beneficial investment opportunities for their clients or foregoing service and possibly compromising those same responsibilities by taking a less active role in the reorganization.

---

[3]    In addition, in orders dated October 19, 2000, September 21, 1999, and December 21, 1998, in the respective chapter 11 cases of GST Telecom, Inc., et al., Case No. 00-1982 (GMS), ICO Global Communications Services Inc., et al., Case No. 99-2933 (MFW), and Acme Metals Inc., Case No. 982179 (MFW), the Delaware Bankruptcy Court has permitted members of official creditors' committees to trade in the debtors' securities during the pendency of such cases provided that the committee members established and implemented Ethical Wall procedures (orders attached as Exhibit A hereto).

15.    Accordingly, the Committee seeks entry of an order that will permit a procedural mechanism for the authorized trading of Securities by the Members. There is no impediment in the federal securities laws or the Bankruptcy Code to the relief sought by the Committee. Indeed, for some time now, the SEC has recognized the value and legitimacy of Ethical Walls in the securities law context. As the Delaware Bankruptcy Court and other bankruptcy courts have repeatedly recognized, there is no reason why Ethical Wall procedures cannot be just as useful in the bankruptcy context.

16.    For the foregoing reasons, the Committee respectfully submits that the Members should be permitted to trade in the Securities during the pendency of these cases on the condition that such Members establish and effectively implement policies and procedures, such as an Ethical Wall, to prevent the misuse of material non-public information obtained by the Members in their official capacities.

## NOTICE

17.    No trustee or examiner has been appointed in this chapter 11 case. Notice of this Motion has been given to the Office of United States Trustee, counsel to the Debtor, counsel to the Debtor's pre-petition and post-petition secured lending groups, parties that have requested service pursuant to Fed. R. Bankr. P. 2002 in this case, and the SEC. The Committee submits that no further notice is required.

18.    The Committee is currently discussing the substance of the Motion with the Office of the United States Trustee.

## WAIVER OF MEMORANDUM OF LAW

19.    Because this Motion presents no novel issues of law, and the authorities relied upon by the Committee are set forth herein, the Committee waives its right to file a

memorandum in support of this Motion pursuant to D. Del. L.R. 7.1.2, except that the Committee

reserves the right to file a brief in reply to any objection or response to this Motion.

### NO PRIOR REQUEST

20.    No previous motion for the relief requested herein has been made to this

or any other court relative to this case.

### CONCLUSION

**WHEREFORE**, the Committee respectfully requests the entry of an order (the "Order"),

substantially in the form annexed as Exhibit B hereto, which provides that:

(i)    Members and their Affiliates may participate in any Transactions in the Securities pursuant to the conditions of the Order, and subject to the protections herein, without the necessity of filing a Bound-by-Order Notice;

(ii)    each party electing to avail itself, or its Affiliates, to the Order shall remain bound by the terms and conditions herein until such party files an Unbound-by-Order Notice. An Unbound-by-Order Notice filed by any Member of an Affiliated group shall be effective as to all members of such group. No Unbound-by-order Notice shall permit any entity to make any unlawful use of any material nonpublic information;

(iii)    that the provisions of the Order shall apply and inure to the benefit of all present Members as well as any entities that become members of the Committee including their successors and assigns, after the date hereof.

and grants any other relief that this Court deems just and appropriate under the circumstances.

Dated: October 17, 2003
        Wilmington, Delaware

                                    THE BAYARD FIRM



                                    Neil B. Glassman (No. 2087)
                                    Charlene Davis (No. 2336)
                                    Eric M. Sutty (No. 4007)
                                    222 Delaware Avenue, Suite 900
                                    P.O. Box 25130
                                    Wilmington, Delaware 19899
                                    (302) 655-5000

                                    -and-

                                    Alan W. Kornberg
                                    Marc F. Skapof
                                    Ephraim I. Diamond
                                    Talia Gil
                                    PAUL, WEISS, RIFKIND, WHARTON
                                      & GARRISON LLP
                                    1285 Avenue of the Americas
                                    New York, New York 10019-6064
                                    (212) 373-3000


                                    Proposed Counsel for the Official Committee of
                                    Unsecured Creditors

# EXHIBIT A

Service: Get by LEXSEE®
Citation: 1991 Bankr. LEXIS 288

1991 Bankr. LEXIS 288, *

IN THE MATTER OF FEDERATED DEPARTMENT STORES, INC., ALLIED STORES
CORPORATION, ET AL, Debtors

Consolidated Case No. 1-90-00130 Chapter 11, Document 3702

UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN
DIVISION

1991 Bankr. LEXIS 288

March 7, 1991, Filed

**CORE TERMS:** personnel, trading, non-public, blocking, nonpublic, subordination,
disallowance, subjecting, violating, pendency

**JUDGES:** [*1]

J. Vincent Aug, Jr., United States Bankruptcy Judge.

**OPINIONBY:** AUG

**OPINION:** ORDER PERMITTING SECURITIES TRADING IN CERTAIN CIRCUMSTANCES

Upon the Motion of Fidelity Management & Research Company, ("Fidelity"), a member of the
Official Bondholders' Committee (the "Committee") of Allied Stores Corporation ("Allied"), for
an order determining that Fidelity will not be violating its duties as a Committee member
(and accordingly will not be subjecting its claims to possible disallowance, subordination, or
other adverse treatment) by trading in securities of Allied, co-debtor Federated Department
Stores, Inc. ("Federated"), and Ralphs Grocery Company ("Ralphs"), a non-debtor, during
the pendency of the Allied and Federated Cases (the "Cases"), provided that Fidelity
establishes and effectively implements policies and procedures to prevent the misuse of
nonpublic information obtained through its activities as a Committee member; and this Court
having considered Fidelity's Motion and accompanying Memorandum of Law, setting forth the
information blocking devices Fidelity proposes to employ; the Memorandum of the Securities
and Exchange Commission; the Statement of the Securities Industry Association and  [*2]
Certain Members of the Council of Institutional Investors; the Joinder of Caywood-Christian
Capital Management; the Response of the Federated Bondholders Committee; the Response
of Debtors; and the Response of the United States Trustee; and Memorandum of the U.S.
Trustee opposing Fidelity's Motion (Doc. 3469); and the Court having concluded that the
motion should be granted; it is hereby

ORDERED, that Fidelity will not be violating its fiduciary duties as a committee member and
accordingly, will not be subjecting its claims to possible disallowance, subordination, or other
adverse treatment, by trading in securities of the Debtors and Ralphs during the pendency of
these Cases, provided that Fidelity employs an appropriate information blocking device or
"Chinese Wall" which is reasonably designed to prevent Fidelity trading personnel from
receiving any nonpublic committee information through Fidelity committee personnel and to
prevent Fidelity committee personnel from receiving information regarding Fidelity's trading
in securities of the Debtors or Ralphs in advance of such trades; and it is further

Case 1:05-cv-00548-JJF    Document 25-2    Filed 02/16/2007    Page 14 of 31

Get a Document - by Citation - 1991 Bankr. LEXIS 288    Page 2 of 2

ORDERED, that the "Chinese Wall" procedures to be employed by Fidelity if its wishes [*3] to trade in securities of the Debtors and Ralphs shall include the following information blocking procedures: (1) Fidelity shall have all personnel who will have access to nonpublic information in the bankruptcy proceeding ("committee personnel") execute a letter acknowledging that they may receive non-public information and that they are aware of the "Chinese Wall" procedures which are in effect with respect to the Debtors and Ralphs; (2) Fidelity committee personnel will share non-public Committee information with no other Fidelity employees (except the General Counsel for the purpose of rendering legal advice to committee personnel and who will not share such non-public committee information with other Fidelity employees); (3) Fidelity committee personnel will maintain all files containing non-public information generated from committee activities in cabinets inaccessible to other employees; (4) Fidelity committee personnel will receive no information regarding Fidelity's current securities trades in advance of such trades, except that committee personnel may receive reports on Fidelity's ownership of the securities represented by the Committee no more frequently than monthly; [*4] (5) Fidelity compliance department personnel shall review Fidelity's trades in securities of the Debtors and Ralphs to confirm that such trades were made in compliance with the "Chinese Wall" procedures and shall keep and maintain records of their review; provided, however, this Order is not intended to preclude the Court from taking any action it may deem appropriate in the event that it is determined that an actual breach of fiduciary duty has occurred because the procedures employed are not so effective or for reasons unrelated to Fidelity's ability to trade based upon the establishment of the procedures set forth in this Order; and it is further

ORDERED, that with respect to the Joinder of Caywood-Christian Capital Management and certain other members of the Committee, such joining parties shall be covered by this Order (i) only if they are engaged in the trading of securities as a regular part of their business, and (ii) such entity files with the Court a copy of the information blocking devices they propose to employ.

Dated: Cincinnati, Ohio
March 7, 1991
SO ORDERED:

Service: **Get by LEXSEE®**
Citation: **1991 Bankr. LEXIS 288**
View: Full
Date/Time: Thursday, October 9, 2003 - 9:42 AM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
🅘 - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **NATIONSRENT, INC.,** | ) | |
| **a Delaware corporation, et al.,** | ) | **Case No. 01-11628 (PJW)** |
| | ) | **Jointly Administered** |
| | ) | |
| Debtors. | ) | M.: # 317 |

### ORDER PERMITTING SECURITIES
### TRADING UPON ESTABLISHMENT OF ETHICAL WALL

Upon the motion dated February 28, 2002 (the "Motion"), of the Official Committee of Unsecured Creditors (the "Committee") of NationsRent, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") for an order permitting the Members[1] of the Committee to trade in the NR Group's Securities (as defined below) upon the establishment and implementation of Ethical Walls and in accordance with the terms and conditions of this Order; and due and proper notice of the Motion having been given; and no adverse interest being affected; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED, that the Motion is granted; and it is further

ORDERED, that any Member, acting in any capacity, shall not violate (and shall not be deemed to have violated) its fiduciary duties as a Committee member and, accordingly, will not subject its claims to possible disallowance, subordination, or other adverse treatment to the extent that such Member and/or its Affiliates (collectively, the "Ethical Wall Entity") trades

---

[1] Capitalized terms used herein and not otherwise defined have the meanings ascribed to them in the Motion.

in the stock, notes, bonds, or debentures of any one or more members of the NR Group, or participations in or derivatives, based upon or relating to, any of the debt obligations or other claims or equity interests of any one or more members of the NR Group (whether or not covered by Bankruptcy Rule 3001(e)), which constitute "securities" within the meaning of applicable state or federal securities laws or both (collectively, the "Securities") during the pendency of these cases, provided, however, such Ethical Wall Entity establishes, effectively implements, and strictly adheres to the policies and procedures set forth herein, such as the Ethical Wall (as defined in the Motion), to prevent the Ethical Wall Entity's trading personnel from the misuse of non-public information obtained through such Ethical Wall Entity's designated personnel's ("Committee Personnel") performance of Committee-related activities and to prevent Committee Personnel from receiving information regarding such Ethical Wall Entity's trading in Securities in advance of such trades; and it is further;

ORDERED, that the Ethical Wall procedures to be employed by an Ethical Wall Entity, if it wishes to trade in Securities, shall include the following information-blocking procedures: (1) the Ethical Wall Entity shall cause all Committee Personnel to execute a letter acknowledging that they may receive non-public information and that they are aware of this order and the Ethical Wall procedures which are in effect with respect to the Securities; (2) Committee Personnel will not share non-public Committee information with any other employees of such Ethical Wall Entity other than in compliance with the Ethical Wall procedures (except (a) senior management of such Ethical Wall Entity who, due to their duties and responsibilities, have a legitimate need to know such information, provided that such individuals (i) otherwise comply with the Ethical Wall, and (ii) use such information only in connection with their senior managerial responsibilities, and (b) regulators, auditors, and designated legal personnel for the purpose of rendering legal advice to Committee Personnel and who will not

share such non-public information generated from Committee activities with other employees and will keep such non-public information in files in accessible to other employees); (3) Committee Personnel will keep non-public information generated from Committee activities in files (including electronic files) inaccessible to other employees; (4) Committee Personnel will receive no information regarding the Ethical Wall Entity's trades in Securities in advance of such trades, except that Committee Personnel may receive the usual and customary internal and public reports showing the Ethical Wall Entity's purchases and sales and the amount and class of securities owned by such Ethical Wall Entity, including the Securities; and (5) the Ethical Wall Entity's compliance department personnel or internal counsel shall review from time to time the Ethical Wall procedures employed by the Ethical Wall Entity as necessary to ensure compliance with this Order and shall keep and maintain records of their review; provided, however, that this Order is not intended to preclude the Court from taking any action it may deem appropriate in the event that it is determined that an actual breach of fiduciary duty has occurred because the procedures employed have not been effective or for reasons unrelated to the fact of the Ethical Wall Entity's ability to trade based upon the establishment of the procedures set forth in this Order; and it is further

ORDERED, that this Order shall apply to an Ethical Wall Entity only if it is engaged in trading of Securities as a regular part of its business from the date of his or its appointment to the Committee; and it is further

ORDERED, that nothing set forth in the Motion or this Order shall constitute an admission by any party or a finding by this Court that debt obligations of the Debtors, whether arising under any credit agreements or otherwise, constitute "securities" for the purpose of the securities law; and it is further

ORDERED that this Court retains jurisdiction to construe and enforce the terms of this Order.

Dated: Wilmington, Delaware
April _2_, 2002

HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

FILED
JAMES J. WA ~~~~~

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

NOV 15 2001

U.S. BANKRUPTL        JRT
Chapter 11   CAMDEN, I.
CY
Case Nos. 00-4397 (JHW)   DEPUTY
through 00-4399 (JHW)

In re:

LERNOUT & HAUSPIE SPEECH
PRODUCTS N.V., et al.,

                              Debtors.

(Jointly Administered)

## ORDER PERMITTING SECURITIES
## TRADING IN CERTAIN CIRCUMSTANCES

Upon the application (the "Application") of the Official Committee of Unsecured

Creditors (the "Dictaphone Committee") of Dictaphone Corporation for an order permitting the

trading in the securities of Lernout & Hauspie Speech Products N.V. ("L&H") by members of

the Dictaphone Committee (each, a "Member" and collectively, the "Members") under the

circumstances specified therein, and due and proper notice of the Application having been given,

and after due deliberation, and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Application is granted in its entirety.

2.      Any Member, acting in any capacity, will not violate its fiduciary duties as

a Member and, accordingly, will not subject its claims to possible disallowance, subordination or

other adverse treatment, to the extent that such Member and/or its affiliates, acting in any

capacity, trades in L&H's stock, notes, bonds, debentures, participations in any of L&H's debt

obligations or other claims (collectively, the "Securities") during the pendency of these cases;

provided that, such Member establishes, effectively implements and strictly adheres to the

policies and procedures set forth herein to prevent the trading in the Securities on the basis of

CWTNYLIB1\587330.3

non-public information obtained through the Member's participation in Dictaphone Committee-related activities.

3. Each Member that wishes to trade in the Securities shall employ the following information-blocking procedures: (a) the Member shall cause all Member personnel with access to non-public information in the bankruptcy proceeding ("Dictaphone Committee Personnel") to execute a letter acknowledging that they may receive non-public information and that they are aware of this order and the information-blocking policies and procedures in effect with respect to the Securities; (b) Dictaphone Committee Personnel shall not share non-public Dictaphone Committee information with any other Member employee (except regulators, auditors, designated legal personnel for the purpose of rendering legal advice to Dictaphone Committee Personnel, and other Member personnel not involved in trading activities or portfolio decisions, all of whom may not share such non-public Dictaphone Committee information with any other Member employee); (c) Dictaphone Committee Personnel shall maintain all non-public information generated from Dictaphone Committee activities in files which are inaccessible to other employees of such Member; (d) Dictaphone Committee Personnel shall not receive any information regarding such Member's trades in Securities in advance of such trades other than the usual and customary internal and public reports showing the Member's purchases and sales and the amount and class of securities, including the Securities, owned by the Member; and (e) each Member's compliance department shall review from time to time the information blocking procedures to insure compliance with this Order and shall keep and maintain records of such review.

4. Each Member that wishes to trade in the Securities shall file with the Court an affidavit certifying that it has implemented the foregoing information-blocking procedures.

5.   This order shall not preclude the Court from taking any action it may deem appropriate in the event that it is determined that an actual breach of a Member's fiduciary duty has occurred as a result of a defect in, or the ineffectiveness of, the information blocking procedures or for reasons unrelated to the Member's ability to trade based upon the establishment of such procedures.

6.   This Order shall apply only to Members that are engaged in the trading of Securities as a regular part of their business.

Dated: Wilmington, Delaware
       ~~October~~ , 2001
       *Novel 15*

_____
UNITED STATES BANKRUPTCY JUDGE

3

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

IN RE:                                    )     Chapter 11
                                          )
ACME METALS INCORPORATED;                 )     Case No. 98-2179 (MFW)
ACME STEEL COMPANY,                       )
ACME PACKAGING COMPANY,                   )
ALPHA TUBE CORPORATION,                   )
ALABAMA METALLURGICAL                     )     (Jointly Administered)
CORPORATION, and ACME STEEL               )
COMPANY, INTERNATIONAL, INC.,             )
                                          )
            Debtors.                      )

## ORDER PERMITTING SECURITIES
## TRADING IN CERTAIN CIRCUMSTANCES

Upon the application of the Official Committee of
Unsecured Creditors (the "Committee") of Acme Metals Incorporated
and five of its direct and indirect subsidiaries (collectively,
the "Debtors") for an order permitting members of the Committee
to trade in the Debtors' securities in certain circumstances (the
"Application"), and due and proper notice of the Application
having been given, and after due deliberation, and sufficient
cause appearing therefor; it is

**ORDERED**, that any Committee member acting in any
capacity will not be violating its fiduciary duties as a
Committee member and, accordingly, will not subject its claims to
possible disallowance, subordination, or other adverse treatment,
to the extent that any such Committee member and/or its

756603v2

326

affiliates (the "Securities Trading Committee Member") trades in the Debtors' stock, notes, bonds, debentures, participations in any of the Debtors' debt obligations or other claims not covered by Bankruptcy Rule 3001(e) (collectively, the "Securities") during the pendency of these cases, _provided that,_ such Securities Trading Committee Member establishes, effectively implements and strictly adheres to policies and procedures, such as a Chinese Wall (as defined in the Application), to prevent the Securities Trading Committee Member's trading personnel from the misuse of non-public information obtained through the performance by such Securities Trading Committee Member's designated personnel ("Committee Personnel") of Committee-related activities and to prevent Committee Personnel from receiving information regarding such Securities Trading Committee Member's trading in Securities in advance of such trades; and it is further

ORDERED, that the Chinese Wall procedures to be employed by a Securities Trading Committee Member, if it wishes to trade in Securities, shall include the following information-blocking procedures; (i) the Securities Trading Committee Member shall cause all Committee Personnel to execute a letter acknowledging that they may receive non-public information and that they are aware of this order and the Chinese Wall procedures which are in effect with respect to the Securities; (ii)

756603v2

-2-

Committee Personnel will not share non-public Committee information with any other employees of such Securities Trading Committee Member (except regulators, auditors and designated legal personnel for the purpose of rendering legal advice to Committee Personnel and who will not share such non-public Committee information with other employees); (iii) Committee Personnel will keep non-public information generated from Committee activities in files inaccessible to other employees; (iv) Committee Personnel will receive no information regarding the Securities Trading Committee Member's trades in Securities in advance of such trades, except that Committee Personnel may receive the usual and customary internal and public reports showing the Securities Trading Committee Member's purchases and sales and the amount and class of securities owned by such Securities Trading Committee Member, including the Securities; and (v) the Securities Trading Committee Member's compliance department personnel shall review from time to time the Chinese Wall procedures employed by the Securities Trading Committee Member as necessary to insure compliance with this Order and shall keep and maintain records of their review; provided, however, that this Order is not intended to preclude the Court from taking any action it may deem appropriate in the event that it is determined than an actual breach of fiduciary duty has

-3-

occurred because the procedures employed have not been effective or for reasons unrelated to the fact of the Securities Trading Committee Member's ability to trade based upon the establishment of the procedures set forth in this Order; and it is further

ORDERED, that this Order shall apply to a Securities Trading Committee Member only if it is engaged in the trading of Securities as a regular part of its business.

Dated:    Wilmington, Delaware
          December 21 , 1998


                         _____
                         MARY F. WALRATH
                         UNITED STATES BANKRUPTCY JUDGE

**ORIGINAL**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------x
In re:                               :
                                     :        Chapter 11
                                     :
GST TELECOM, INC., et al.,           :        Case No. 00-1982 (GMS)
                                     :
                Debtors              :        Jointly Administered
                                     :
-------------------------------------------x
```

## ORDER PERMITTING SECURITIES TRADING
## UPON ESTABLISHMENT OF ETHICAL WALL

Upon the motion (the "Motion"), dated June 2, 2000, of the Official Committee of

Unsecured Creditors (the "Committee") of GST Telecommunications, Inc., et al. (collectively,

the "Debtors") for an order permitting members of the Committee to trade in the Debtors'

securities upon establishment of an Ethical Wall (as defined in the Motion), and due and proper

notice of the Motion having been given, and after due deliberation, and sufficient cause

appearing therefor, it is hereby

ORDERED, that any Committee member acting in any capacity will not be

violating its fiduciary duties as a Committee member and, accordingly, will not subject its claims

to possible disallowance, subordination, or other adverse treatment, if any such Committee

member and/or its affiliates (the "Trading Committee Member") trades in the Debtors' stock,

notes, bonds, debentures, or participations in any of the Debtors' debt obligations or other claims

not covered by Bankruptcy Rule 3001 (e) (collectively, the "Securities") during the pendency of

these cases, provided that such Trading Committee Member establishes, effectively implements

and strictly adheres to policies and procedures, such as an Ethical Wall, to prevent: (i) the

713

Trading Committee Member's trading personnel from the misuse of any non-public information obtained by such Trading Committee Member's designated representative(s) for Committee-related activities ("Committee Personnel"); and (ii) Committee Personnel from receiving information regarding such Trading Committee Member's trading in the Securities in advance of such trades; and it is further

ORDERED, that the Ethical Wall procedures to be employed by a Trading Committee Member, if it wishes to trade in the Securities, shall include the following information-blocking procedures: (i) the Trading Committee Member shall cause all Committee Personnel to execute a letter or other writing acknowledging that they may receive non-public information and that they are aware of this Order and the Ethical Wall procedures that are in effect with respect to the Securities; (ii) Committee Personnel will not share non-public Committee information with any other employees of such Trading Committing Member (except regulators, auditors and in-house legal personnel for the purpose of rendering regulatory, audit or legal advice, who will not share such non-public Committee information with trading personnel or other employees); (iii) Committee Personnel will keep non-public information generated from Committee activities in files that are inaccessible to other employees; (iv) Committee Personnel will receive no information regarding the Trading Committee Member's trades in the Securities in advance of such trades, except that Committee Personnel may receive the usual and customary internal and public reports showing the Trading Committee Member's purchases and sales and the amount and class of securities owned by such Trading Committee Member, including the Securities; and (v) the Trading Committee Member's compliance department personnel shall review from time to time the Ethical Wall procedures employed by the Trading Committee Member as necessary to ensure compliance with this Order and shall keep and maintain records

of their review; provided, however, that this Order is not intended to preclude the Court from

taking any action it may deem appropriate in the event that it is determined than an actual breach

of fiduciary duty has occurred because the procedures employed have not been effective or for

reasons unrelated to the relief granted in this Order; and it is further

ORDERED, that the provisions of this Order shall apply and inure to the benefit

of all present Committee members, as well as any entities that become members of the

Committee after the date hereof; and it is further

ORDERED, that this Order shall apply to a Trading Committee Member only if it

is engaged in the trading of securities as a regular part of its business.


Dated:    Wilmington, Delaware
          June 19, 2000


                                        _____
                                        UNITED STATES DISTRICT JUDGE


173750

                                        3

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

----------------------------------------x
                                        :
In re:                                  :
                                        :    Chapter 11
                                        :
ICO GLOBAL COMMUNICATIONS               :    Case No. 99-2933 (MFW)
SERVICES INC., et al.,                  :
                                        :    Jointly Administered
                    Debtors.            :
                                        :
----------------------------------------x

## ORDER PERMITTING SECURITIES TRADING
## UPON ESTABLISHMENT OF ETHICAL WALL

Upon the motion (the "Motion") of the Official Committee of Unsecured

Creditors (the "Committee") of ICO Communications Services Inc., et al. (collectively, the

"Debtors") for an order permitting members of the Committee to trade in the Debtors' securities

upon establishment of an Ethical Wall (as defined in the Motion), and due and proper notice of

the Motion having been given, and after due deliberation, and sufficient cause appearing

therefor, it is hereby

ORDERED, that any Committee member acting in any capacity will not be

violating its fiduciary duties as a Committee member and, accordingly, will not subject its claims

to possible disallowance, subordination, or other adverse treatment, to the extent that any such

Committee member and/or its affiliates (the "Trading Committee Member") trades in the

Debtors' stock, notes, bonds, debentures, participations in any of the Debtors' debt obligations or

other claims not covered by Bankruptcy Rule 3001 (e) (collectively, the "Securities") during the

pendency of these cases, provided that, such Trading Committee Member establishes, effectively

implements, and strictly adheres to policies and procedures, such as an Ethical Wall, to prevent

NY2:#4323383v2

74

the Trading Committee Member's trading personnel from the misuse of non-public information obtained through such Trading Committee Member's designated representative(s) for Committee-related activities ("Committee Personnel") and to prevent Committee Personnel from receiving information regarding such Trading Committee Member's trading in the Securities in advance of such trades; and it is further

ORDERED, that the Ethical Wall procedures to be employed by a Trading Committee Member, if it wishes to trade in the Securities, shall include the following information-blocking procedures: (i) the Trading Committee Member shall cause all Committee Personnel to execute a letter or other writing acknowledging that they may receive non-public information and that they are aware of this Order and the Ethical Wall procedures which are in effect with respect to the Securities; (ii) Committee Personnel will not share non-public Committee information with any other employees of such Trading Committing Member (except regulators, auditors and in-house legal personnel for the purpose of rendering regulatory, audit or legal advice, who will not share such non-public Committee information with trading personnel or other employees); (iii) Committee Personnel will keep non-public information generated from Committee activities in files that are inaccessible to other employees; (iv) Committee Personnel will receive no information regarding the Trading Committee Member's trades in the Securities in advance of such trades, except that Committee Personnel may receive the usual and customary internal and public reports showing the Trading Committee Member's purchases and sales and the amount and class of securities owned by such Trading Committee Member, including the Securities; and (v) the Trading Committee Member's compliance department personnel shall review from time to time the Ethical Wall procedures employed by the Trading Committee Member as necessary to ensure compliance with this Order and shall keep and maintain records

NY2:#4323383v2                                    2

of their review; provided, however, that this Order is not intended to preclude the Court from

taking any action it may deem appropriate in the event that it is determined than an actual breach

of fiduciary duty has occurred because the procedures employed have not been effective or for

reasons unrelated to the relief granted in this Order; and it is further

ORDERED, that the provisions of this Order shall apply and inure to the benefit

of entities that become members of the Committee after the date hereof; and it is further

ORDERED, that this Order shall apply to a Trading Committee Member only if it

is engaged in the trading of securities as a regular part of its business.


Dated: Wilmington, Delaware
        September 21, 1999


                            _____
                            UNITED STATES BANKRUPTCY JUDGE


cc: L. Jones, Esq.
    9/22/99


NY2:#4323383v2                          3


Movant to send copies to all
parties and file certificate
of service with the court.