# EXHIBIT 3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| NORTHWESTERN CORPORATION, | : Case No.  03-12872 (CGC) |
| | : |
| Debtor. | : |
| | : |
| | : |
| NORTHWESTERN CORPORATION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| MAGTEN ASSET MANAGEMENT | : Adv. No. _____ |
| CORPORATION, and TALTON R. EMBRY, | : |
| | : |
| Defendants. | : |
| | : |
| | : |

## COMPLAINT

NorthWestern Corporation, a Delaware corporation (**"NorthWestern,"** the

**"Debtor"** or the **"Plaintiff"**), by and through its undersigned counsel, for (i) its

complaint against Defendants Magten Asset Management Corporation (**"Magten"**) and

Talton R. Embry (**"Embry,"** together with Magten, the **"Defendants"**), and (ii) its

Objection to Claim Number 842 of Magten Asset Management Corporation (the

**"Objection"**), hereby alleges as follows:

### NATURE OF THE ACTION

1.       This is an action relating to the Defendants' misappropriation and use of

material, non-public, information in purchasing approximately 40% of the Debtor's

Series A 8.45% Quarterly Income Preferred Securities (the **"QUIPS"**).  As members of

the Official Committee of Unsecured Creditors (the **"Committee"**), the Defendants were

vested with legal, contractual, and fiduciary duties not to misappropriate non-public information for their own self interest. The Defendants willfully breached each of these duties in connection with their purchase of more than 100,000 QUIPS after becoming members of the Committee and receiving material, non-public information concerning the Debtor.

2.    By this adversary proceeding, the Debtor seeks damages and equitable relief relating to the Defendants' improper trading activity. In particular, the Debtor seeks damages (including disgorgement of any ill-gotten gains) to compensate itself and its creditors for the Defendants' breach of fiduciary duty, breach of contract, and violation of an express Court order prohibiting the very trading activity in which the Defendants engaged. Based upon the same inequitable and self interested conduct, the Debtor also objects to and seeks subordination of Magten's claim in this Chapter 11 case under Sections 502(b) and 510(c) of the Bankruptcy Code, respectively.

## PARTIES

3.    Plaintiff NorthWestern is a corporation organized under the laws of Delaware, having its principal place of business located in Sioux Falls, South Dakota.

4.    NorthWestern is a publicly traded Delaware corporation which was incorporated in 1923. NorthWestern and its direct and indirect non-NorthWestern subsidiaries comprise one of the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of the United States, serving approximately 608,000 customers throughout Montana, South Dakota and Nebraska.

5.      Defendant Magten is a corporation organized under the laws of Delaware, having its principal place of business located at 410 Park Avenue, 14th Floor, New York, New York 10022.

6.      Defendant Embry was at all relevant times the 100% owner and Chairman of Magten.  Other than Embry, Magten has only one employee, a secretary named Jean Colditz.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this Chapter 11 case and this Complaint are proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

8.      On September 14, 2003 (the **"Petition Date"**), NorthWestern filed its voluntary petition for relief under chapter 11 of The Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the **"Bankruptcy Code"**).  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, NorthWestern continues to operate its business and manage its properties as debtor-in-possession.

9.      No request has been made for the appointment of a trustee or examiner in this case.  The Committee was appointed by the Office of the United States Trustee on September 30, 2003.

10.     By Order dated October 10, 2003, this Court established January 15, 2004 at 5:00 p.m. (Pacific Standard Time) (the **"Bar Date"**) as the deadline for creditors to file proofs of claim for each claim they assert against the Debtor that arose before the Petition

Date.  Notice of the Bar Date was mailed to all known creditors of the Debtor and published in numerous regional and national newspapers.

11.    Magten filed Proof of Claim, designated claim number 842 by the Debtor's claims agent (the **"Magten Claim"**).  The Magten Claim asserts unliquidated claims against the Debtor's estate for:  (i) damages resulting from the alleged fraudulent transfer of the utility assets of NorthWestern Energy, LLC to the Debtor on November 15, 2002 (the **"Transfer"**); and (ii) the face amount of the QUIPS held by Magten as of the Petition Date.

12.    On or about November 6, 2003, this Court entered its Order Permitting Securities Trading Upon Establishment of Ethical Wall [Docket No. 257] (the **"Securities Trading Order"**).  The Securities Trading Order prohibits members of the Committee (present and future, each a **"Member"**) from trading in the securities of the Debtor and its affiliates, unless and until such Member establishes and implements an ethical wall (the **"Ethical Wall"**) in accordance with the terms and conditions of the Securities Trading Order, so as to prevent:

> (i) the Ethical Wall Entity's trading personnel from misusing any material non-public information obtained by such Ethical Wall Entity's designated representative(s) involved in Committee-related or reorganization-related activities (**"C/R Personnel"**); and

> (ii) C/R Personnel from receiving material non-public information regarding such Ethical Wall Entity's trading in the Securities in advance of such trades.  This Order does not preclude this Court from taking any action it deems appropriate in the event that an actual breach of fiduciary duty has occurred.

13.    Accordingly, to comply with the Securities Trading Order, Members of the Committee were required to establish an Ethical Wall before trading in the Securities.

14.    Upon request of the Defendants, by notice dated November 25, 2003, the
Office of the United States Trustee for the District of Delaware (the **"U.S. Trustee"**)
appointed Magten to the Committee.  Magten was represented on the committee by its
100% principal, Embry.

15.    Upon information and belief, upon appointment to the Committee or
shortly thereafter, the Defendants became aware of the Securities Trading Order.

16.    Upon information an belief, upon being appointed to the Committee,
Magten obtained possession of the Debtor's and the Committee's material, non-public
information.

17.    Once appointed to the Committee, Magten's fiduciary and other common
law duties precluded it from trading in the securities of the Debtor and its affiliates,
including without limitation, the QUIPS, except as provided in the Securities Trading
Order.

18.    On December 18, 2003, Embry, as Chairman of and on behalf of Magten,
executed a Confidentiality Agreement with Official Committee of Unsecured Creditors
(the **"Confidentiality Agreement"**).  Under the Confidentiality Agreement, the
Defendants agreed maintain confidential all nonpublic and proprietary information
provided by or to the Committee.

19.    By executing the Confidentiality Agreement, Embry as Chairman of and
on behalf of Magten, acknowledged that he was aware, and he would advise Magten's
representatives that the United States securities laws prohibit any person in receipt from
an issuer of material, non-public information from purchasing or selling or offering to
purchase or sell securities of the issuer or from communication of the information to any

- 5 -

other person under circumstances in which it is reasonably foreseeable that the person

would have been likely to purchase or sell securities.

20.     Defendants' understanding of the Securities Trading Order and the

Confidentiality Agreement was made clear when, on or about February 5, 2004, counsel

for Magten requested the U.S. Trustee's approval on a motion exempting Magten from

the Securities Trading Order (the **"Draft Motion"**).  The Draft Motion was never filed

with this Court and no order of this Court has been entered relieving Defendants

obligations under the Securities Trading Order.

21.     In the Draft Motion, Defendants admitted their understanding that they

were prohibited from trading in the Debtor's securities while members of the Committee

without establishing an Ethical Wall.  In their draft motion, Defendants asserted:

> Because of Magten's structure, it is impossible for Magten to comply with
> the precise terms of the Trading Order and trade through an Ethical Wall
> Entity without further clarification of the Trading Order.  Thus, by this
> Motion, Magten seeks an order clarifying the Trading Order so as to make
> it clear that if Magten uses the services of an independent third-party
> broker (the "Broker") who does not receive any confidential information
> regarding the Debtor and that has autonomy in making buy/sell decisions
> in executing trades in the securities of the Debtor and its affiliates, Magten
> will receive the protections afforded by the Order.

22.     Thereafter, on April 16, 2004, Magten and Law Debenture Company of

New York filed an adversary proceeding to avoid the transfer of assets of Clark Fork and

Blackfoot LLC (f/k/a NorthWestern Energy LLC) (**"Clark Fork"**) to the Debtor in

November 2002 pursuant to what is generally referred to as the "going flat" transaction

(the **"Magten Adversary Proceeding"**).

23.     The Magten Adversary Proceeding resulted in an inherent conflict

between the Defendants and the Committee.  Accordingly, in a letter dated May 6, 2004,

the Trustee removed Magten from the Committee stating the relief sought in the Magten

Adversary Proceeding "is inconsistent with Magten's . . . fiduciary duty to the

Committee's constituents, the general unsecured creditors of NorthWestern Corporation."

24.     After being expelled from the Committee, Magten was still bound by the

terms of Confidentiality Agreement and the Securities Trading Order, to the extent

Magten was still in possession of material, non-public information it had obtained while

serving as a Member of the Committee.

**DEFENDANTS PURCHASE THE DEBTOR'S QUIPS WHILE IN**
**POSSESSION OF THE DEBTOR'S NON-PUBLIC INFORMATION**

25.     Notwithstanding the Confidentiality Agreement in which they

acknowledged that use of the Debtor's non-public information constituted a potential

violation of the securities laws, and the Securities Trading Order, Embry caused Magten

to purchase over 123,000 of the Debtor's QUIPS and sell 3,800 of the Debtor's QUIPS in

a series of market transactions after joining the Committee.  Upon information and belief,

Defendants were in possession of and relied upon the Debtor's and the Committee's non-

public information when executing the securities transactions.

26.     Between November 25, 2003 and May 4, 2004—the dates within which

Defendants were Committee members, the Defendants purchased 28,540 of the Debtor's

QUIPS as follows:

|          |       |
|----------|-------|
| 12/01/03 | 4,300 |
| 12/01/03 | 1,000 |
| 12/01/03 |   500 |
| 12/01/03 | 1,000 |
| 12/01/03 | 1,100 |
| 12/01/03 | 1,400 |
| 12/01/03 | 1,800 |
| 12/01/03 | 3,500 |
| 12/01/03 | 1,000 |

| | |
|---|---|
| 12/03/03 | 2,440 |
| 12/03/03 | 1,000 |
| 12/03/03 | 1,000 |
| 12/05/03 | 7,500 |
| 01/21/04 | 1,000 |
| **Total** | 28,540 |

27.     Between November 25, 2003 and May 4, 2004—the dates within which Defendants were Committee members, the Defendants sold 3,800 of the Debtor's QUIPS as follows:

| | |
|---|---|
| 12/17/03 | 1,900 |
| 12/17/03 | 1,900 |
| **Total** | 3,800 |

28.     The Defendants' purchases of QUIPS accelerated immediately after May 4, 2004, when the Defendants purchased through July 8, 2004 an additional 95,000 of the Debtor's QUIPS as follows:

| | |
|---|---|
| 05/14/04 | 1,000 |
| 05/14/04 | 1,000 |
| 05/18/04 | 1,500 |
| 05/18/04 | 1,500 |
| 05/19/04 | 500 |
| 05/19/04 | 500 |
| 05/20/04 | 1,250 |
| 05/20/04 | 1,300 |
| 05/20/04 | 2,000 |
| 05/20/04 | 4,450 |
| 05/28/04 | 1,200 |
| 06/01/04 | 1,000 |
| 06/03/04 | 5,000 |
| 06/07/04 | 800 |
| 06/08/04 | 10,500 |
| 06/09/04 | 1,500 |
| 06/15/04 | 11,600 |
| 06/16/04 | 4,000 |
| 06/17/04 | 8,700 |
| 06/18/04 | 14,000 |
| 06/21/04 | 4,000 |

| | |
|---|---|
| 06/23/04 | 2,000 |
| 06/29/04 | 6,800 |
| 07/02/04 | 600 |
| 07/06/04 | 3,500 |
| 07/08/04 | 4,800 |
| **Total** | 95,000 |

29.    Upon information and belief, the Defendants remained in possession of, and relied upon, the Debtor's and the committee's non-public information with respect to some or all of these QUIPS purchases.  As a result of its purchases, Magten holds approximately 40% of outstanding QUIPS, and has filed a claim with regard to those QUIPS in this case.

30.    This adversary proceeding seeking subordination of Magten's claims, actual damages, equitable relief, and objecting to the Magten Claim follows.

## COUNT I

## BREACH OF FIDUCIARY DUTY

31.    Plaintiff repeats and realleges the allegations set forth in the Paragraphs 1 through 30 as though fully set forth herein.

32.    As members of the Committee, Defendants were vested with a fiduciary duty to all unsecured creditors, among other things, to act with due care, not to act in furtherance of their self-interests to the potential detriment of other creditors, to maintain confidentiality, and to guide their actions so as to safeguard the rights of minority as well as majority creditors.

33.    In addition, as members of the Committee, Defendants were obligated to comply with the Securities Trading Order.  The Securities Trading Order prohibited trading by Committee members, such as Defendants, while members of the Committee and in possession of non-public information without first establishing an Ethical Wall.

34.     In addition, as members of the Committee, Defendants were obligated to comply with the Confidentiality Agreement they signed, under which they confirmed their duty to keep confidential all non-public information obtained as part of the Committee.

35.     Upon information and belief, after being appointed to the Committee, and after receiving material, non-public information from the Debtor and the Committee, the Defendants purchased over 100,000 shares of the Debtor's QUIPS.

36.     The Defendants' trades willfully violated their fiduciary duty to other creditors as a matter of law, under the Confidentiality Agreement, and under the Securities Trading Order.

37.     The Defendants' willful violation of their fiduciary duties caused the Debtor, the Committee, and the creditors damages in an amount to be determined.

## COUNT II

## EQUITABLE SUBORDINATION PURSUANT TO 11 U.S.C. § 510(c)

38.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 37 as though fully set forth herein.

39.     The Defendants willfully violated their fiduciary duties, willfully violated the Securities Trading Order, willfully violated the Confidentiality Agreement, and potentially violated the federal securities laws when they purchased over 100,000 shares of the Debtor's QUIPS in market trades after receipt of the Committee's and the Debtor's non-public information.

40.     The Defendant's conduct in misappropriating and using the Committee's and the Debtor's non-public information for their self interests constitutes inequitable

conduct that caused injury to the Debtor, its creditors, and the Committee.  The maintenance and use of the non-public information also conferred upon the Defendants an unfair advantage over other creditors.

41.    Because of the actions described herein, the claims of Magten against the Debtor's estate should be equitably subordinated to the level of equity interests in the Debtor pursuant to section 510(c) of the Bankruptcy Code.

**COUNT III**

**OBJECTION TO THE MAGTEN CLAIM**

42.    Plaintiff repeats and realleges the allegations set forth in the paragraphs 1 through 41 above as though fully set forth herein.

43.    The Magten Claim asserts unliquidated claims against the Debtor's estate for:  (i) damages resulting from the alleged fraudulent transfer of the utility assets of NorthWestern Energy, LLC to the Debtor on November 15, 2002 (the **"Transfer"**); and (ii) the face amount of the QUIPS held by Magten as of the Petition Date.

44.    The Defendants violated their fiduciary duties, violated the Securities Trading Order, violated the Confidentiality Agreement, and potentially violated the federal securities laws when they purchased over 100,000 shares of the Debtor's QUIPS in market trades after receipt of the Committee's and the Debtor's non-public information.

45.    The Defendant's conduct in misappropriating and using the Committee's and the Debtor's non-public information for their self interests constitutes inequitable conduct that caused injury to the Debtor, its creditors, and the Committee.  The

maintenance and use of the non-public information also conferred upon the Defendants an unfair advantage over other creditors.

46.     Because of the actions described herein, the Magten Claim should be limited to the amount that Magten paid for the QUIPS.

## COUNT IV

## DAMAGES FOR VIOLATION OF THE SECURITIES TRADING ORDER

47.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 46 as though fully set forth herein.

48.     As members of the Committee, Defendants were obligated to comply with the Securities Trading Order.  The Securities Trading Order prohibited trading by Committee members, such as Defendants, while members of the Committee and in possession of non-public information without first establishing an Ethical Wall.

49.     Upon information and belief, while a Member of the Committee, the Defendants were furnished material, non-public information of the Committee and the Debtor.  The Defendants have retained possession, custody, and control over the non-public information.

50.     Upon information and belief, after receipt of the non-public information, and while in possession, custody, and control of such information, the Defendants purchased shares of the Debtor's QUIPS.

51.     Upon information and belief, the Defendants misappropriated and used the non-public information in determining to purchase some or all of the Debtor's securities.

52.     Upon information and belief, the Defendants, as members of the Committee, did not establish an Ethical Wall prior to trading in the Debtor's securities.

53.    The Defendants' trades in the Debtor's QUIPS while members of the Committee without first establishing an Ethical Wall violated the Securities Trading Order.

54.    The Defendants' violation of the Securities Trading Order caused the Debtor, the Committee, and the creditors damages in an amount to be determined. The Debtor is also entitled to an award of punitive damages.

## RESERVATION OF RIGHTS

55.    The Debtor reserves the right to amend, modify or supplement this Complaint and Objection and to object further to the Magten Claim on any and all additional factual or legal grounds, including if such claim is not reduced or disallowed as requested herein or if additional information regarding the disallowance or reduction of such claim is discovered upon further review thereof or through discovery pursuant to the applicable provisions of the Bankruptcy Rules.

56.    This Objection complies with Del. Bankr. L R 3007-1(e). No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, Plaintiff respectfully demands judgment against Defendants as follows:

A.    For actual damages in an amount to be determined at trial;

B.    Sustaining the Debtor's objection to the Magten Claim;

C.    Compelling Defendants to account for any and all profits obtained by reason of the misconduct alleged herein and the imposition of a constructive trust on such ill-gotten profits;

D.    Subordinating the Defendants' claims;

- 13 -

E      For Defendants' willfull conduct, punitive damages in an amount to be

determined at trial;

F.      For attorney's fees and costs; and

F.      Granting such other and further relief as the Court deems just and

appropriate.

Dated: Wilmington, Delaware
August 20, 2004

                                    GREENBERG TRAURIG, LLP

                                    _____
                                    Scott D. Cousins (No. 3079)
                                    William E. Chipman, Jr. (No. 3818)
                                    Paul D. Brown (No. 3903)
                                    The Brandywine Building
                                    1000 West Street, Suite 1540
                                    Wilmington, DE 19801
                                    Telephone: (302) 661-7000

                                    And

                                    Adam D. Cole
                                    GREENBERG TRAURIG, LLP
                                    885 Third Avenue
                                    New York, NY 10022
                                    Telephone: (212) 801-2100

                                    ***Counsel for the Debtor and
                                    Debtor-in-Possession***

- 14 -