# EXHIBIT 7

FILED

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE   2005 JAN 10  AM 11: 24

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .    Chapter 11

NORTHWESTERN CORPORATION,           .    Case No. 03-12872(JLP)

         Debtor.                    .
                                    .
                                    .
                                    .
. . . . . . . . . . . . . . . . . . . . . . . . . . .

NORTHWESTERN CORPORATION,           .

         Plaintiff,                 .

    v.                              .    Adversary No. 04-55051(JLP)
                                    .
MAGTEN ASSET MANAGEMENT             .
CORPORATION and TALTON R.           .
EMBRY,                              .    Jan. 7, 2005 (11:30 a.m.)
         Defendants.                .    (Wilmington)

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JOHN L. PETERSON
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

FORM FED-25    PENGAD • 1-800-631-6989



1            (This hearing was conducted in Wilmington with the

2   Judge and all participants joining in telephonically.)

3            THE COURT:  Mr. Chipman, are you there?

4            MR. CHIPMAN:  Yes, Your Honor, I'm here.

5            THE COURT:  Mr. Austin?

6            MR. AUSTIN:  Yes, Your Honor.

7            THE COURT:  Ms. Denniston?

8            MS. DENNISTON:  Yes, Your Honor.

9            THE COURT:  Mr. Battista?

10           MR. PACKEL:  Your Honor, this is Mr. Packel.  I'm

11  on for Mr. Battista.

12           THE COURT:  What's your last name?

13           MR. PACKEL:  Packel.

14           THE COURT:  All right.  Mr. Kaplan.

15           MR. KAPLAN:  I'm here, Your Honor.

16           THE COURT:  Thank you.  Mr. Sutty?

17           MR. SUTTY:  I'm here, Your Honor.

18           THE COURT:  And Mr. Alcott?

19           MR. ALCOTT:  Yes, I'm here, Your Honor.

20           THE COURT:  I really don't know where we're at on

21  this thing because of the withdrawal of the motion by

22  Northwestern for the protective order.  Evidently, from what

23  I've seen in the responsive pleadings from the defendant,

24  they're pursuing the matter in the Second Circuit in another

25  District of New York to quash the subpoena, and then I had

1  filed this morning a 97-page document by the Committee
2  seeking a protective order and an un-filed objection thereto
3  by the defendant.  Let me ask, first of all, Mr. Chipman --
4  Mr. Austin, do you want to proceed with the respective order
5  in this matter before this Court or --

6         MR. AUSTIN:  Your Honor, this is Jesse Austin.  I
7  will let Ms. Denniston address -- She's going to be speaking
8  on behalf of Northwestern issues today, so I'll let her
9  address it.

10        MS. DENNISTON:  Your Honor, this is Karol Denniston
11 for the record.  The motion for protective order was
12 initially filed in your Court because Paul Hastings
13 erroneously believed it had been issued out of the Delaware
14 Bankruptcy Court.  When we discovered that it had been issued
15 out of the Southern District of New York, we withdrew the
16 papers and refiled the motion for protective order in the
17 Southern District of New York.  Conceptually, Your Honor, I
18 have no problem proceeding on this motion though I do have
19 concerns given the case law that we cited in the papers we
20 filed yesterday that the Court from which a subpoena is
21 issued is the court that must quash it.  So that was the
22 reason that Paul Hastings withdrew and refiled because that
23 was the issuing court.

24        THE COURT:  I agree that there's been a subpoena
25 issued out of the Southern District of New York, but as I go

4

1    through the subpoena and the attachment to the subpoena, I
2    kind of took it as a request for a deposition with a subpoena
3    duces tecum, and that's why I thought that it was a
4    jurisdictional matter for this Court.

5         MS. DENNISTON:  With that, Your Honor, we don't
6    have any problem with proceeding with the motion.  We can
7    certainly refile it with the Bankruptcy Court and would ask
8    that that be noted on the record as the result coming out of
9    this hearing.

10        THE COURT:  All right.  I go through the subpoena,
11   and I've got -- and the objection thereto -- let me suggest
12   what I think and then you, counsel, you can respond.  First
13   of all, I think the subpoena is too broad.  It gives the
14   defendant the opportunity to examine into matters that have
15   nothing to do with Magten or Mr. Embry appearance and duty on
16   that Committee between November the 26th of 2003 and May the
17   6th of 2004.  It seems to me that the subpoena -- the
18   protective order should be granted in that part, that it
19   should be all of the documentation -- all of the conversation
20   to the communications that were made to Mr. Embry by a
21   representative of Northwestern should be restricted to that
22   period.  The second thing is that they want a confidentiality
23   agreement.  I don't know why they want -- that kind of throws
24   me because if Paul Hastings was the interface committee, and
25   they were the ones that were giving this confidential non-

public disclosure information to the Committee members, there
is no privilege as far as I'm concerned.  There is a
privilege to Paul Hastings for any conversations,
communications that they had with Northwestern that led to
that disclosure of that information to the Committee, and as
to those matters, I think the privilege is proper.  But
anything that they've done, and I assume it was Paul Hastings
that interfaced with the Committee.  I don't know that for a
fact, but if it was, then Paul Hastings is going to have to
divulge what they gave to this Committee or to --
particularly, to the defendant, and that's not a privileged
communication.  So, I don't understand why there has to be a
confidentiality agreement relative to that matter unless some
of these non-public disclosure statements have never been
made public.

          MS. DENNISTON:  Your Honor, this is Karol
Denniston.  Would it be appropriate for me to respond to
those first two points?

          THE COURT:  Oh, yeah.

          MS. DENNISTON:  As to the first point, Your Honor,
the need for a protective order, I'm going to take that first
or the need for a confidentiality agreement.  The debtor
throughout the case did provide confidential information to
the Committee and its advisors that has not been made public.
This consists of a number of drafts of financial projections

1  and refinings.  There was a fair amount of negotiation and

2  there's a significant amount of draft information that has

3  been produced throughout the life of this case that the

4  Committee had access to that needs to remain confidential.

5  THE COURT:  Are we going to close the trial then?

6  MS. DENNISTON:  No, that would not be our intent,

7  Your Honor.  I think that we just need to manage the process

8  of producing the information and manage what is introduced as

9  evidence, but at this point, as we understand Magten's

10  request for production, they want all confidential

11  information that the debtor produced to the Committee and

12  that would include this pool of information, and I think the

13  parties can work out appropriate stipulations as to how this

14  information is supposed to be used at trial in terms of

15  protecting the confidential nature.  That is the first set of

16  confidential information.  There is a second set that the

17  debtor is much more focused on preserving confidentiality and

18  that includes the communications that the debtor received of

19  indications of interest from third parties interested in

20  acquiring or buying business pieces of the debtor's business

21  where the business is an operating concern.  That information

22  is subject to third-party protective or third-party

23  confidentiality agreements as between Northwestern and those

24  parties.  That information has to be managed on a

25  confidential basis because of the debtor's ongoing obligation

1   and confidentiality to those third parties that may be

2   indications of interest or the offers.  So there's two layers

3   here.  I think that the first layer can be fairly easily

4   managed because those documents have been pursued with a

5   confidentiality agreement that makes it clear that those

6   documents can be used for the purpose of this case and

7   nothing more and not disclosed to parties outside the case.

8   I think the second one is one that we're going to need to

9   take care of how and when or if those actual documents

10  themselves were introduced into evidence.  Since with that,

11  as to the confidentiality issue altogether, there was a

12  confidentiality or the remains of a confidentiality agreement

13  as between Northwestern and the Committee, it has been the

14  debtor's practice and procedure throughout this case to

15  request a confidentiality agreement from parties reviewing

16  documents, particularly those that were drafts in nature and

17  that did not unnecessarily or unduly hamper anybody at trial

18  on the confirmation of the case.  So that's the issue with

19  the confidentiality agreement.  That being said, I would

20  advise the Court that through negotiation with Fried, Frank

21  that we do have a stipulation that is very close to being

22  acceptable to the debtor, and I think that the agreement as

23  it now stands is that the debtor will be producing its

24  documents on Monday, pursuant to the local Delaware rule to

25  Fried, Frank, Magten's counsel, while we continue to finalize

the stipulation that can be presented to this Court.  So, I
don't think that the confidentiality issue in and of itself
remains as glaring as it was when the papers were initially
filed, and with that, I mean, I think that kind of addresses
confidentiality.  As to Paul Hastings and the subpoenas
served on Paul Hastings for a deposition and documents, there
are two big picture issues, Your Honor.  One is that we would
concur with the Court's analysis that there are confidential
communications that would be subject to the attorney/client
privilege.

THE COURT:  All you have to do is assert them at
the depositions.

MS. DENNISTON:  I understand that, Your Honor, but
here's the issue:  We don't believe and I think there is a
misunderstanding as to how the confidential communication
information was relayed to the Creditors Committee.  It did
not come through Paul Hastings.  It came through
representatives of the debtor's senior management, and we are
producing on Monday the same information that Paul Hastings
would have access to.  It's that same pool of information
that senior management at Northwestern made available to the
Committee, individual Committee members, and its financial
advisors.  That information was not provided by Paul
Hastings.  It was provided through Northwestern's management,
and the e-mails and documents being produced will show that.

There are no separate documents that would indicate the Paul

Hastings had any communications pursuant to which it provided

confidential communications to the Committee or its advisors

that don't involve a Northwestern management person.  So it's

Paul Hastings' position that the subpoena itself is unduly

burdensome because it requires production of the very same

information that's being produced on Monday.  We have said as

much in the objections and in the papers we filed with the

Court yesterday.  There are no other documents, and there are

no other communications because whenever business

information, which is the bulk of the confidential

information, it's primarily financial and operating

information, it always involves distributions with the

Northwestern management team responsible for this case.

THE COURT:  Mr. Kaplan.

MS. STEINGARD:  This is Ms. Steingard, Your Honor,

from Fried, Frank with Mr. Kaplan.  I would like to respond

to Ms. Denniston.  The thrust of the debtor's claims here are

that somehow both through Northwestern and its advisors,

there was information that was confidential dumped into the

Committee and the Committee's advisors and somehow that

information reached Mr. Embry.  If we look at responses to

interrogatories that have been provided by Northwestern to us

yesterday, a number of categories of information were clearly

provided by Paul Hastings to the Committee such as

1  information concerning the status and negotiation of

2  mediations regarding McGreevey.  This is something listed in

3  response to questions posed by defense.  These are

4  Northwestern interrogatory responses that purport to list the

5  information they claim was confidential that the defendants

6  had when the trades occurred.  So there was those

7  negotiations, information relating to the stipulation among

8  the debtor Atlantic Richfield and the United States on behalf

9  of the Environmental Protection Agency, information related

10 to the Securities & Exchange Commission investigation, status

11 of negotiations and mediation regarding Northwestern

12 Securities litigation case number class actions and

13 derivative litigation.  This is the kind of information that

14 the Committee received from Paul Hastings and not from

15 management of Northwestern.  In addition, there are

16 substantial -- there's substantial lists of damages that

17 involve fees and costs of Paul Hastings that again are

18 included in responses by Northwest to the interrogatories

19 posed by defendants.  So, Northwest itself has put Paul

20 Hastings in the midst of this by saying that these kinds of

21 information provided by Paul Hastings to the Committee and

22 these fees are an integral part of this matter.  And that's

23 why we ask for this information, and, alternatively, Your

24 Honor, we spoke with Paul Hastings and offered them the

25 opportunity to give us an affidavit that says that Paul

1    Hastings has concluded that it did not provide confidential

2    information to the Committee and, you know, was not involved

3    in the transfer or, you know, the delivery of confidential

4    information to Mr. Embry.  All we did was ask for that, and

5    the answer was no.  So we did give Paul Hastings an

6    alternative, Your Honor.  So, we can get the affidavit if

7    that is something Paul Hastings is still interested in doing,

8    certainly, it's still on the table from our point of view, or

9    we can go forward with the discovery as it has been permitted

10   by Your Honor, that would be fine with us.

11            THE COURT:  Well, the deposition is set for January

12   11th?

13            MS. STEINGARD:  Yes, Your Honor, it is, and, but --

14            THE COURT:  Could you go ahead with that?

15            MS. STEINGARD:  Well, it's hard to do that, Your

16   Honor, because we haven't received documents.

17            THE COURT:  Well, when do you want to reset it?

18            MS. STEINGARD:  Well -- And part of the difficulty

19   with that, Your Honor, is because as you see there are -- and

20   as all the parties have complained -- and if I could complain

21   about this, I would also.  There are really a lot of

22   depositions going to happen, not because we want them but

23   because the depositions reflect the potential witness list

24   that is now included also in the response to the

25   interrogatory.  So, if we were going to delay a week or so,

1  so that Paul Hastings could produce the documents and we

2  could look at them, we would be beyond, unfortunately now,

3  the January 21st cutoff.  So, you know, we would -- And we

4  have depositions starting on Monday or Tuesday, some one a

5  day and some two a day, until the cutoff, is the problem.

6  So, we could try to fit it in.  We could work on a Saturday

7  or a Sunday to do it, after we give them a week, if that's a

8  reasonable time, to produce the documents, or we could try to

9  push things out a week or so at the end of the schedule.

10          MS. DENNISTON:  Your Honor, this is Karol

11  Denniston.  If I could make a proffer to the Court at this

12  time I think it would be appropriate and useful.

13          THE COURT:  Go ahead.

14          MS. DENNISTON:  Being the attorney primarily

15  responsible for gathering documents responsive to all the

16  requests, I've been the person that has reviewed the

17  responses in connection with the determination that there's

18  nothing in any of the Paul Hastings' files responsive to the

19  requests that aren't being produced on Monday.  So, I want to

20  be clear here that there are no other documents that can be

21  produced other than what's being produced on Monday.  Paul

22  Hastings does not have in its file any documents that are not

23  being produced in connection with the Northwestern's

24  production.  That would be point number one.  Point number

25  two, with the limited exception of a meeting with the counsel

1   for the debtor and the counsel for the Committee about the

2   SEC investigation.  All of the other items that Ms. Steingard

3   described that are in Northwestern's interrogatory responses

4   involved a representative from Northwestern on the telephone

5   or in connection with when the information was conveyed to

6   the Committee, and those people have been identified with the

7   exception of Northwestern's general counsel, Tom Knapp, who

8   is the person that was involved in communicating or updating

9   various, you know, Committee members when asked about pieces

10  of litigation.  So, on one level, Your Honor, this is a

11  little bit of a tempest in a teapot, and I think that we

12  attempted in our motion for protective order to identify

13  those cases so that it's inappropriate to subpoena counsel

14  and ask for production of documents from counsel without

15  first looking at the plan's response.

16        MS. STEINGARD:  All right.

17        MS. DENNISTON:  Over and above that by going

18  through to make sure that there is no separate set of

19  documents that can be produced.

20        THE COURT:  All right.  Let me interject something

21  here.  When I first got into this case and I wrapped up this

22  docket and looked at it, and I determined that something had

23  to be happening between the parties because I didn't see

24  where there was any plans by the counsel for the parties with

25  Rule 26(f), and that just triggered the scheduling order that

I put out.  There hasn't been any response, any filed at
least on the docket by the attorneys of record on their
attempt in good faith to propose a discovery plan, and that
hasn't been filed within fourteen days after you're supposed
to have your mandatory comments and there was no meeting, as
I understand it now.  And so, you're all swimming around back
there at this late time wondering what to hell to do with the
discovery.  So, I'm not too sympathetic about any extensions
of time, and I'll tell you I'm not going to extend the time
for the trial in this case.  It's going to go on the 7th, and
I don't know how long it's going to take, but I'll tell you
what I've done, I've got two days set forth for the 7th and
the 8th.  I've got other matters, omnibus hearings on the
9th, and I've got two days, the 10th and the 11th where we
could -- if we aren't concluded in the first two days.  But
you're going to have to arrange -- It sounds to me as though
the documentation is going to be presented in a timely
manner, and you can take the deposition of a representative
of Paul Hastings, and I've still got this matter with the
Committee, but that could go forward.  If you need a few more
days to reschedule that, we'll do that now.

        MS. STEINGARD:  Yeah.  Well, I think that we do
since it is on for Tuesday, Your Honor.  We're not receiving
the documents till Tuesday, and Northwest has indicated that
they're going to deliver thirty boxes of documents.  We

1    initially had wanted the documents the end of December, and

2    because of the protective order initially requested by

3    Northwest, we received no documents the 30th of December.

4    We're not receiving documents until Tuesday, and so given the

5    fact that at that point receiving thirty boxes I don't think

6    that we can depose Paul Hastings the same day and have that

7    be productive.

8            THE COURT:  I'm not --

9            MS. STEINGARD:  Yeah.

10           THE COURT:  Take another week.

11           MS. STEINGARD:  Okay, so we will -- We will

12   schedule Paul Hastings.  Karol will talk, you and I will

13   talk, and we'll put it on, you know, we'll do three

14   depositions or something one day the next week.

15           MS. DENNISTON:  I think what I'd like to do though

16   is to just make a record Bonnie to be sure that the facts are

17   accurate.  First of all, we're producing on Monday --

18           MS. STEINGARD:  No, you were producing --

19           MS. DENNISTON:  -- documents are due under the

20   rules not the earlier date requested by Magten.  Secondly, I

21   think it would be productive for us to agree to have a meet

22   and confer after that production has occurred because we are

23   providing you with an index, a number of those documents we

24   know that you will have seen, and you won't need to take

25   copies of because they're pleadings on file with the

Bankruptcy Court.  That being said, I think after you have

had a chance to look at the index, the scope of the

production, it may be productive at that point for us to talk

about whether or not we can reach an acceptable stipulation.

MS. STEINGARD:  Right.  Okay, Karol, I understand

what you said, and I understand that you want to get the

facts straight and let me see if I can do that as well,

although I really don't think we should be burdening the

Court with this.  The arrangement that has been made is that

there will be thirty boxes delivered to Fried, Frank on

Tuesday.

MS. DENNISTON:  That's not accurate, Bonnie, there

will be --

MS. STEINGARD:  That arrangement --

THE COURT:  It should be on the 10th, that's a

Monday.

MS. STEINGARD:  Right.

MS. DENNISTON:  And we are making the documents

available for review on Monday, and we have agreed to copy

whatever you would like copies of.

MS. STEINGARD:  Karol, Gary has a different

arrangement, and we can talk about this on line -- off line,

but we're not getting documents as far as I understand until

Tuesday.  In any case, there are thirty boxes of it, and we

have to go through it and deposing you on Tuesday would not

1    be possible.  We're happy to meet and confer later in the

2    week.

3            THE COURT:  Well, I hope it's all material because

4    --

5            MS. STEINGARD:  Well, Your Honor --

6            THE COURT:  What it comes down to as I read this

7    complaint and the denials that were made in the --

8            MS. STEINGARD:  Right, and you know --

9            THE COURT:  About what Mr. Embry had found out --

10           MS. STEINGARD:  Right.

11           THE COURT:  -- too, and what he used --

12           MS. STEINGARD:  Right.

13           THE COURT:  -- and if he gets on the stand and he

14   says, I never saw that.

15           MS. STEINGARD:  Right, and the problem is, Your

16   Honor, that the allegations here are about data dumps made by

17   the debtor to Committee counsel and data dumps made by the

18   debtor to Committee financial advisors, some of, you know --

19   and not given any directly to Mr. Embry and the Committee

20   here has now said that they don't want to be deposed to sort

21   of tell us what they think they gave to Mr. Embry.

22           THE COURT:  Yeah, I just got that in this morning.

23           MS. STEINGARD:  Right, and in terms of potential

24   witnesses that have been listed by Northwest, every member of

25   the Committee is included.

1       THE COURT:  If they're going to be deposed --

2       MS. STEINGARD:  And the Committee's financial

3  advisors have been included, the Committee counsel has been

4  included, all of these as potential witnesses in these

5  interrogatories.

6       THE COURT:  I'm not telling you that you're not

7  going to have the opportunity to depose these people.

8       MR. ALCOTT:  Your Honor, if I may be heard.  It's

9  Mark Alcott representing the Committee, and if it's

10  appropriate now to discuss our motion, I'd be happy to do it.

11       THE COURT:  All right.  Is that all right, counsel

12  for Magten?  Will you take up that matter now too?

13       MS. STEINGARD:  Yes, Your Honor.

14       THE COURT:  Having an order helps, but it did come

15  in to me and I have read it over.  There might be a proposal

16  here that a lot of those matters can be taken care of by

17  affidavit.

18       MR. ALCOTT:  Well, that --

19       MS. STEINGARD:  That has -- Judge --

20       MR. ALCOTT:  I think I have the floor, counsel.

21       THE COURT:  Go ahead.

22       MR. ALCOTT:  That proposal's been made in the

23  abstract, but the reality is that the affidavit that was

24  tendered to us, like the subpoenas themselves, is

25  extraordinarily overbroad to the point of being over the top.

1    It goes way beyond anything that they represent in their
2    papers here or that they could possibly request.  I mean,
3    they want us to aver in an affidavit that no one from each of
4    the institutions had any conversation with the defendant
5    concerning Northwestern.  They want us to swear that at no
6    time anyone at each of these institutions provided the
7    defendant any information concerning Northwestern, and they
8    want us to represent that the institution was satisfied that
9    Northwestern's disclosure statement contains sufficient
10   information for a creditor to make a fully informed decision
11   whether to accept or reject Northwestern's plan of
12   reorganization.  I'm reading from the affidavit they tendered
13   to us.  That's got nothing to do with this case.  It's got
14   nothing to do with these subpoenas.  So, they're now rapidly
15   trying to blue-pencil and scale down these extraordinarily
16   broad subpoenas that they've served, but the fact is that
17   their seeking really irrelevant information, duplicative,
18   from multiple parties from each of the nine former members or
19   seven former members of the Committee plus the Committee's
20   counsel plus the Committee's financial advisor, and --

21             THE COURT:  Well, those people have been listed as
22   witnesses.

23             MR. ALCOTT:  Well, I don't believe they've been
24   listed by witnesses, but not by us certainly.

25             THE COURT:  But you're not a party.  They're listed

1    by Northwestern; is that correct?

2    MS. STEINGARD:  They're listed by Northwestern as

3    witnesses, Your Honor, each of them.

4    MR. ALCOTT:  They have not been listed as -- I

5    don't think the time for listing witnesses has --

6    THE COURT:  No, but they've been listed as

7    potential witnesses in the answer to interrogatories; is that

8    right?

9    MR. ALCOTT:  No.  As I understand it, the

10   defendants are taking the position based on what's in the

11   interrogatories that they're potential witnesses.  So it's a

12   bootstrap operation here.

13   MS. DENNISTON:  Your Honor, this is Karol

14   Denniston.  I'd like to just be heard briefly on that point

15   so the record is clear.  Northwestern did identify all of

16   those individuals as potential witnesses in its interrogatory

17   responses.

18   MS. STEINGARD:  Yes.  And, Your Honor, we didn't

19   receive any modifications of the affidavit from Paul Weiss

20   that they would find acceptable, and with respect . . .

21   (break in taping) allegation or the statement that we would

22   like in the affidavit concerning that the Committee member

23   pursuant to his duties review the disclosure statement so

24   that the material information that Committee member was aware

25   of was disclosed is because a large number of the trades that

1  occurred here that the Committee -- excuse me, that the

2  debtor's complaining of, occurred after the disclosure

3  statement and plan was filed.

4  THE COURT:  I understand that.

5  MS. STEINGARD:  And so that's why we want the

6  Committee member to say, sure, as they understood it, all of

7  that was disclosed, all material information --

8  THE COURT:  I don't understand why a Committee

9  member would have to give an opinion on that issue.

10  MR. AUSTIN:  I have an order from the Court that

11  says the disclosure statement didn't obtain adequate

12  information.

13  MS. STEINGARD:  Well, okay -- well, then Jesse,

14  thank you -- well, not adequate, but all material information

15  that the Creditors Committee was aware of as representatives

16  --

17  THE COURT:  (Microphone not recording.)

18  MR. ALCOTT:  (Microphone not recording.)

19  THE COURT:  Hold it, hold it.  Why don't we

20  simplify this by having each of the Committee members sign

21  their own affidavit as to what contact it had with the

22  defendant, Embry, and what they told him and by date as much

23  as they can.

24  MR. ALCOTT:  Well, we're certainly prepared to do

25  that.

1      THE COURT:  And that should more than cover -- If

2   you're not satisfied with that, and those affidavits should

3   be prepared promptly, if you're not satisfied with that, I'll

4   let you take their depositions on those affidavits sometime

5   the week of the 21st or the 28th.

6      MS. STEINGARD:  Thank you very much, Your Honor,

7   that would be satisfactory.

8      MR. ALCOTT:  A reasonable resolution, Your Honor.

9      THE COURT:  Okay with you, Mr. Sutty, and --

10      MR. SUTTY:  Yes, Your Honor.  I believe my co-

11   counsel was addressing this issue, thank you.

12      THE COURT:  Is that satisfactory?

13      MS. STEINGARD:  Yes, Your Honor, but we still have

14   -- you know, from our point of view the deposition of the

15   Committee's advisors still needs to go forward.

16      UNIDENTIFIED SPEAKER:  I don't see why.  It's

17   completely duplicative.

18      THE COURT:  But, if they want it, they can have it.

19      UNIDENTIFIED SPEAKER:  Well, Judge, respectfully,

20   I mean --

21      THE COURT:  How many advisors are there?

22      UNIDENTIFIED SPEAKER:  -- the advisor's knowledge

23   is duplicate -- two advisors, by the way, the financial

24   advisor and counsel, and this information is completely

25   duplicative of what we're going to be providing in the

1    affidavit, and I don't know why --

2            THE COURT:  That may be, but I'm not going to

3    restrict them that much.

4            THE CLERK:  Excuse me, Judge --

5            THE COURT:  But -- This shouldn't --

6            THE CLERK:  This is Nancy --

7            THE COURT:  The substance of the deposition is only

8    toward the time that Mr. Embry was on the Committee and has

9    to do with his attendance on Committee and what he did with

10   the Committee and not anything else.

11           THE CLERK:  Judge Peterson --

12           THE COURT:  Yes.

13           THE CLERK:  This is Nancy in Delaware.  The

14   parties, except for Ms. Denniston, are not identifying

15   themselves and it's being really difficult for the ECCRO.

16           THE COURT:  Okay.

17           THE CLERK:  Thank you.

18           THE COURT:  When you speak, tell us who you are,

19   please.  All right, can we get this settled then.  The

20   affidavits by the Committee members will be supplied within

21   five days.  The deposition of the advisors will go forward

22   only on the issues of what the advisors had contact with Mr.

23   Embry.  In other words, the time frame would be from November

24   the 26th to May the 6th.

25           MR. ALCOTT:  Your Honor, even with respect to that

1  as so narrowed, could we in the first instance --

2          THE CLERK:  Sir, can you give your name, please.

3          MR. ALCOTT:  It's Mark Alcott of Paul Weiss

4  representing the Committee.  With respect to the advisors,

5  Your Honor, as you've now defined the scope of the disclosure

6  to be made by the advisors and we have the advisors do that

7  in the first instance, also by affidavit, then only if there

8  was some need for follow-up to have their depositions taken.

9          THE COURT:  When can you have the affidavits by the

10  advisors?

11          MR. ALCOTT:  Within the --

12          MS. STEINGARD:  Your Honor, this is Ms. Steingard.

13  If I could just briefly be heard on that.

14          THE COURT:  Let Mr. Alcott finish.

15          MS. STEINGARD:  Okay.

16          MR. ALCOTT:  We can certainly provide that within

17  one week from today.

18          THE COURT:  All right, by the 14th.

19          MR. ALCOTT:  Yes.

20          THE COURT:  All right, and when do you have the

21  depositions noticed up?

22          MS. STEINGARD:  Your Honor, the deposition of

23  Houlihan is for the 18th, and the deposition of Paul Weiss --

24  I'm just looking at the schedule here.  I'm not seeing where

25  -- I'm sorry, is the 19th.  But, you know, part of the issue

here, Your Honor, is that the allegation is that Northwestern

provided substantial information both to Paul Weiss and to

Houlihan and that Paul Weiss and Houlihan distributed that

information to the Committee at Committee meetings and

otherwise.  So it has to be more than just contacts that Mr.

Kornberg or someone else from Paul Weiss or those at Houlihan

say they had with Mr. Embry.  We have to be permitted to get

information about what confidential information concerning

Northwest, if any, Houlihan or Paul Weiss provided to the

Committee at Committee meetings or to Embry directly on other

occasions.

THE COURT:  It seems to me that what -- Was Embry

at every Committee meeting?

MS. STEINGARD:  No.

THE COURT:  Then why would they want to submit an

affidavit that they supplied certain information to Committee

members Embry was not present at.

MR. AUSTIN:  Your Honor, this is Jess Austin.  It

is our understanding that -- speaking on behalf of

Northwestern, that to the extent Mr. Embry was not at a

Committee meeting a representative of Mr. Embry was at that

Committee meeting either from his company or as an attorney

from Fried, Frank representing Mr. Embry.

MR. ALCOTT:  And, Your Honor, Mark Alcott, again,

for the Committee.  Therefore, Mr. Embry, either firstly or

1  through his representative has all the information that's

2  just been requested.

3  THE COURT:  I don't know that, and they have the

4  opportunity and the right to take the deposition of any

5  proposed or potential witness, and I'm not going to get in a

6  situation here where we come up to the trial and they say,

7  We've got a surprise.  So they're going to be allowed -- So,

8  get those affidavits by the 14th, and then counsel, you can

9  take their deposition, and if you need some more time through

10  the week of the 28th, I'll allow that.

11  MS. STEINGARD:  Okay, thank you, Your Honor.

12  THE COURT:  For the advisors.

13  MS. STEINGARD:  Thank you, Your Honor.

14  THE COURT:  Does that take care of all this

15  discovery matter?

16  MS. STEINGARD:  Yes, Your Honor, from our point of

17  view.  This is Ms. Steingard from Fried, Frank.  From our

18  point of view you have dealt with all the issues that were

19  presented.

20  THE COURT:  I need a couple of questions here by

21  counsel.  What is the status of the withdraw of reference

22  motion?

23  MS. STEINGARD:  As far as we understand -- This is

24  Ms. Steingard.

25  THE COURT:  On this case.

1          MS. STEINGARD:  Right.  This is Ms. Steingard

2     again.  As far as we understand, nothing has occurred.  We

3     have heard nothing about that.

4          THE COURT:  Okay.  And what do you anticipate on

5     the length of trial?

6          MS. STEINGARD:  Because we don't know what --

7          THE COURT:  Give me plaintiff first, let me --

8          MR. AUSTIN:  Your Honor, this is Jess Austin on

9     behalf of Northwestern.  We think this entire trial can be

10    done within two days.

11         THE COURT:  All right.

12         MR. AUSTIN:  The issue is, we will be able to frame

13    the issues fairly narrowly, we believe.

14         THE COURT:  All right.  Counsel for the defendant?

15         MS. STEINGARD:  You know, I think --

16         THE COURT:  I'm trying to get an estimate here so I

17    can -- I've got some other matters that week, and I'd like to

18    know how I can schedule them.

19         MS. STEINGARD:  Right.  I think that a third day

20    may be necessary, Your Honor, I'm not sure.

21         THE COURT:  All right.  Now, here's the trial

22    schedule so you can just -- By the way, I'm going to do two

23    things.  I'm going to update the -- advance the pretrial

24    order.  I had it set for February the 2nd.  I'd like that

25    filed by February the 1st, and the reason is that I'm going

1   to have a telephone conference on that pretrial order on

2   February the 4th.  Okay?

3           MS. STEINGARD:  Yes, Your Honor.

4           THE COURT:  If there's anything that we have to

5   straighten out, I hope that's in my hand up here by the 2nd

6   or that you have it on the docket by the 1st, and then we'll

7   have the pretrial conference on the 4th.  Give your names to

8   Nancy who's going to appear, and on the 7th we'll start the

9   trial at 9 a.m.

10          MS. STEINGARD:  Thank you, Your Honor.

11          THE COURT:  Now --

12          MS. STEINGARD:  Also we have a date, Your Honor,

13   for pretrial motions.

14          THE COURT:  That date is firm.  I want those by the

15   27th.

16          MS. STEINGARD:  Yes, Your Honor.

17          THE COURT:  And as far as the trial is concerned,

18   we're going to take about a fifteen minute break in the

19   morning.  We'll take an hour break for the lunch, and a

20   fifteen minute break in the afternoon, and we'll go from 9 to

21   5 or 5:30.  So, have the witnesses there ready to go.  All

22   right?  Any objection to that?

23          UNIDENTIFIED SPEAKER:  Not at all, Your Honor.

24          MS. STEINGARD:  None, Your Honor.

25          THE COURT:  And then you'll all have an opportunity

1  after the evidence is in to submit your proposed findings of

2  fact and any memorandums.  All right?

3          MS. STEINGARD:  Okay.

4          THE COURT:  Well, thank you all for appearing.  I

5  hope we get it straightened out and use your professionalism

6  in doing so.

7          THE CLERK:  Judge, this is Nancy again.  Did you

8  want to set a time on February 4th for that pretrial

9  conference?

10          THE COURT:  Let's do it -- What's convenient for

11  you parties back there?

12          UNIDENTIFIED SPEAKER:  We're on the East coast,

13  Your Honor, so whatever is convenient for you.

14          THE COURT:  How about 9:30.  Is this all right for

15  11:30 for you people back there?

16          UNIDENTIFIED SPEAKER:  Eleven-thirty Eastern time

17  is fine.

18          THE COURT:  All right.  Nine-thirty your time,

19  11:30 Eastern time.

20          MS. STEINGARD:  It's 11:30 Eastern.

21          THE COURT:  Yeah.

22          MS. STEINGARD:  Okay.

23          THE COURT:  Thank you very much, counsel.  I

24  appreciate your efforts.

25          UNIDENTIFIED SPEAKER:  Thank you.

1            MS. STEINGARD:  Thank you, Your Honor.

2            UNIDENTIFIED SPEAKER:  Thank you.

3            (Whereupon at 12:04 p.m. the hearing in this matter

4 was concluded for this date.)

5

6

7

8

9

10

11            I, Elaine M. Ryan, approved transcriber for the

12 United States Courts, certify that the foregoing is a correct

13 transcript from the electronic sound recording of the

14 proceedings in the above-entitled matter.

15

16      *Elaine M. Ryan*               1-10-05

     Elaine M. Ryan

17      2801 Faulkland Road

     Wilmington, DE 19808

18      (302) 683-0221

19

20

21

22

23

24

25