# EXHIBIT 8

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| ) | |
| NORTHWESTERN CORPORATION, | ) Case No. 03-12872 (JLP) |
| ) | |
| Debtor. | ) Objection Deadline: March 2, 2005 @ 5:00 p.m. |
| ) | Hearing Date: March 8, 2005 @ 9:30 a.m. |

**JOINT MOTION OF MAGTEN ASSET MANAGEMENT
CORPORATION AND LAW DEBENTURE TRUST COMPANY OF
NEW YORK AS INDENTURE TRUSTEE FOR ORDER PURSUANT
TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE APPROVING A SETTLEMENT BETWEEN
NORTHWESTERN CORPORATION, MAGTEN ASSET
MANAGEMENT CORPORATION, AND LAW DEBENTURE TRUST
COMPANY OF NEW YORK**

Magten Asset Management Corporation ("Magten") and Law Debenture Trust

Company of New York as Indenture Trustee and Guarantee Trustee (the " Indenture Trustee"

and together with Magten, the "Movants"), respectfully submit this joint motion (the "Motion")

for entry of an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure

approving the settlement (the "Settlement Agreement") among NorthWestern Corporation

("NorthWestern"), Magten and the Indenture Trustee (NorthWestern, Magten and the Indenture

Trustee are collectively referred to herein as the "Parties") regarding the compromise and

settlement of all pending and threatened claims, causes of actions, appeals and disputes among

the Parties.  In support of the Motion, the Movants respectfully state as follows:

### Preliminary Statement

1.       Throughout NorthWestern's chapter 11 case, Magten has continuously asserted

that the holders of the Series A 8.45% Quarterly Income Preferred Securities (the "QUIPS") are

victims of a scheme orchestrated by NorthWestern to defraud the creditors of Clark Fork and

1

120087.01600/40150964v1

Blackfoot LLC, NorthWestern's subsidiary, by transferring to NorthWestern certain electric, natural gas and propane utility assets for inadequate consideration at a time when NorthWestern was insolvent and was not financially capable of performing its obligations under the indenture governing the QUIPS (the "Transfer"). In April 2004, after this Court granted Magten and the Indenture Trustee relief from the automatic stay to commence an adversary proceeding, Magten and the Indenture Trustee filed a complaint against NorthWestern seeking to avoid the fraudulent transfer of the utility assets (the "Fraudulent Conveyance Proceeding").

2.      The Fraudulent Conveyance Proceeding has been the central issue in NorthWestern's reorganization. Counsel to NorthWestern asserted that the Fraudulent Conveyance Proceeding is the "penultimate piece of litigation" and counsel to the Official Committee of Unsecured Creditors, and now counsel to the Plan Committee, represented to this Court that the Fraudulent Conveyance Proceeding is "at the heart of this case." See Declaration of Gary L. Kaplan filed contemporaneously herewith (the "Kaplan Declaration") Exh. A. pp. 6 and 81. Moreover, NorthWestern has disclosed in its filings with the Securities and Exchange Commission (the "SEC") that the "litigation could adversely affect [NorthWestern's] business, results of operations and financial condition and [its] ability to continue normal operations." See Kaplan Declaration Exh. B at p. 52.

3.      The Fraudulent Conveyance Proceeding has spawned numerous additional causes of action and proceedings and resulted in a contentious chapter 11 case. These causes of action and proceedings include (i) Magten's objection to and appeal from the order confirming the Second Amended and Restated Plan of Reorganization (the "Plan"); (ii) Magten's objection to and appeal from the order approving the Memorandum of Understanding with respect to the settlement of the securities class action; (iii) Magten's motion to disqualify Paul, Hastings,

2

Janofsky & Walker LLP ("Paul Hastings") as general bankruptcy counsel to NorthWestern and its appeal from the denial of that motion; (iv) Magten's suit against the officers of Clark Fork and Blackfoot LLC ("Clark Fork") for breach of their fiduciary duties with respect to the fraudulent transfer of the Montana utility assets that was commenced in the United States District Court for the District of Montana; (v) Magten's suit against Paul Hastings for aiding and abetting the fraudulent transfer that is pending before the United States District Court for the District of Delaware; (vi) NorthWestern's adversary proceeding against Magten and Talton Embry to reduce or subordinate Magten's claim as a result of Magten's trading activity (the "Magten Adversary"); (vii) Magten's motion to withdraw the reference from the Bankruptcy Court to the District Court as to the Fraudulent Conveyance Proceeding and the Magten Adversary; (viii) Magten's objection to the final fee application of Paul Hastings; and (ix) NorthWestern's objections to payment of the Indenture Trustee's fees. All of these various claims and causes of action not only put NorthWestern and certain of its officers and advisors at risk of substantial liability, and put NorthWestern at risk that its plan of reorganization may be unwound, but also will inevitably lead to months and even years of expensive and time consuming litigation.

4.      In January 2005, during the course of discovery in connection with the Magten Adversary, counsel to NorthWestern approached counsel to Magten and suggested that counsel to Magten make a settlement proposal that included (i) payment to non-accepting holders of QUIPS of amounts in excess of the amount provided to such holders in the Plan; (ii) payment of the fees of the Indenture Trustee; and (iii) payment of fees to Magten for its substantial efforts on behalf of the holders of the QUIPS. Following the submission of a proposal, the Parties engaged in arms length negotiation over a two-week period and during that time reached an agreement that would resolve all outstanding claims and litigations. On January 27, 2005, the Parties

3

reached an agreement in principle, the terms of which were reduced to writing in the Settlement Agreement dated as of January 27, 2005 and executed by the Parties on February 9, 2005,that was drafted by NorthWestern.[1]  The Settlement Agreement by its own terms was "binding upon and inure[d] to the benefit of the Parties." See Kaplan Declaration at Exh. C.

5.    As discussed in greater detail below, the settlement provides substantial benefits to NorthWestern, its estate and all of its creditors.  The settlement will resolve approximately ten suits, appeals and objections and will prevent future litigation.  The settlement fairly compromises the significant litigation risk facing all of the parties, by providing a recovery to the holders of the QUIPS that is greater than that which was provided for in NorthWestern's Chapter 11 plan, but that is significantly less than the QUIPS holders would receive if they succeed in some, let alone all of the litigation instituted on their behalf.

6.    After the Settlement Agreement was executed by all of the parties, NorthWestern informed both the Court and the public of the Settlement Agreement, by among other things, (i) filing a notice with the Court canceling the upcoming trial in the Magten Adversary as a result of the Settlement, (See Kaplan Declaration at Exh. D), (ii) sending a letter to the mediator assigned to mediate the pending district court appeals stating that the parties to the appeals have reached a global settlement and, thus, there is no need to proceed with mediation, (See Kaplan Declaration at Exh. E), (iii) issuing a press release entitled "NorthWestern Settles Litigation and Bankruptcy Claims with Magten Asset Management and Law Debenture" that disclosed the general terms of the Settlement, (See Kaplan Declaration at Exh. F), and (iv) stated to the Court at the status

---

[1]    The Settlement Agreement is comprised of two agreements: (i) an agreement between NorthWestern, Magten, and the Trustee (the "Settlement") setting forth the general terms of the agreement in principle reached with respect to the compromise and settlement of all pending and threatened claims, causes of action, appeals and disputes among the Parties, and (ii) a letter agreement (the "Distribution Letter") between Magten and the Trustee contemplated by the Settlement Agreement setting forth the terms of the allocation of the stock and warrants to be distributed to the holders of the QUIPS pursuant to the terms of the Settlement.  A copy of the Distribution Letter was sent to NorthWestern shortly after its execution.

4

conference held on February 10, 2005 that the Settlement is in the best interest of the estate (See Kaplan Declaration at Exh. A at pp. 5-15). Although NorthWestern later repudiated the Settlement Agreement and subsequently determined not to file a motion seeking approval of the Settlement Agreement, since the Settlement Agreement is a binding contract among NorthWestern, Magten and the Indenture Trustee, by this Motion, the Movants seek entry of an order approving the Settlement Agreement.

## Background

7.      On September 14, 2003, NorthWestern filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code.

8.      NorthWestern is a publicly traded Delaware corporation that was incorporated in 1923. NorthWestern, together with its direct and indirect non-debtor subsidiaries, comprise one of the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of the United States, serving approximately 608,000 customers throughout Montana, South Dakota and Nebraska.

9.      The Indenture Trustee is a limited purpose trust company organized under the laws of New York and is the successor trustee to the Bank of New York under the Indenture governing the QUIPS.

10.     On August 31, 2004, NorthWestern filed the Plan and disclosure statement in support of the Plan. Over the objections of Magten, the Indenture Trustee and NorthWestern's equity holders, on October 19, 2004, the Court entered an order confirming the Plan (the "Confirmation Order"). The effective date of the plan was November 1, 2004.

5

A.    Ongoing Litigation and Causes of Action

11.    On April 16, 2004, after this Court granted Magten and the Indenture Trustee

relief from the automatic stay, Magten, together with the Indenture Trustee, filed a complaint

against NorthWestern in the Bankruptcy Court on behalf of the holders of the QUIPS seeking to

set aside the fraudulent conveyance of the Montana utility assets. The Fraudulent Conveyance

Proceeding contends that Northwestern wrongfully appropriated certain assets of a subsidiary

and that the holders of the QUIPS (as direct creditors of that subsidiary as well as NorthWestern)

had the right to have their claims paid in full before those assets could be made available to

satisfy the claims of NorthWestern's other creditors.

12.    On May 14, 2004, NorthWestern filed a motion to dismiss the Fraudulent

Conveyance Proceeding. Following completion of briefing, on August 20, 2004, the Court,

denied NorthWestern's motion to dismiss.

13.    On October 4, 2004, Magten filed an amended complaint in the Fraudulent

Conveyance Proceeding. Then, on November 17, 2004, Magten filed a motion to withdraw the

reference with respect to the Fraudulent Conveyance Proceeding (the "Withdrawal Motion") in

the District Court of Delaware (the "District Court"). The Withdrawal Motion is currently

pending in the District Court and the Bankruptcy Court has stayed the Fraudulent Conveyance

Proceeding pending a decision on the Withdrawal Motion.

14.    Following the commencement of the Fraudulent Conveyance Proceeding, Magten

has pursued numerous claims and causes of action arising from or related to the Transfer,

including:

- On April 19, 2004, Magten filed a complaint in the United States District Court for
  the District of Montana against the officers and directors of Clark Fork,
  NorthWestern's subsidiary, for breach of their fiduciary duties in fraudulently
  transferring the Montana utility assets to NorthWestern for inadequate consideration

6

at a time when NorthWestern was insolvent. The defendants filed a motion for summary judgment, and on January 27, 2005, the same day the Settlement Agreement was reached, the Montana district court denied defendants summary judgment motion.[2]

- On May 20, 2004, Magten filed a complaint against Paul, Hastings in Montana state court, for breach of its duties to Clark Fork and Clark Fork's creditors in connection with its involvement in the fraudulent conveyance of the Montana utility assets. The proceeding has been removed to federal court and is currently pending in the District Court.

- On June 18, 2004, Magten filed a motion seeking to disqualify Paul Hastings as bankruptcy counsel to NorthWestern due to Paul Hastings conflict of interest and lack of disinterestedness as a result of its involvement in the fraudulent transfer. The Court denied the motion, as well as Magten's subsequent motion for reconsideration. Magten appealed the Court's decision and the appeal is currently pending in the District Court. The District Court has assigned the appeal to a mediator.

- On October 26, 2004, Magten filed a motion with the United States District Court for the District of Delaware seeking to stay the Confirmation Order pending an appeal. The District Court denied the motion and Magten has appealed the Confirmation Order (the "Confirmation Appeal") as well as and the Order approving the Memorandum of Understanding (the "MOU Appeal"). Both the Confirmation Appeal and the MOU Appeal are pending in the District Court and have been assigned by the District Court to a mediator.

- On January 3, 2005, Magten filed an objection to the final fee application of Paul Hastings as a result of Paul Hastings' conflict of interest and lack of disinterestedness as a result of its involvement in the fraudulent transfer of the Montana utility assets.

- Additionally, as a result of Magten's and the Indenture Trustee's efforts, NorthWestern filed an action against Magten and its principal, Talton Embry, and objected to the payment of the Indenture Trustee's fees and expenses. Specifically, On August 20, 2004, NorthWestern initiated an adversary proceeding against Magten and its principal, Talton Embry, seeking damages and equitable relief relating to Magten's trading activities regarding the QUIPS. On November 2, 2004, the Court held a status conference with respect to both the Fraudulent Conveyance Proceeding and the Magten Adversary. At that status conference, the Court stayed the Fraudulent Conveyance Proceeding and set forth an expedited discovery schedule for the Magten Adversary with a trial date of February 7, 2005.

- On January 3, 2005, NorthWestern filed an objection to the Indenture Trustee's request for payment of fees and reimbursement of expenses.

---

[2] Ironically, Magten received this decision after the settlement was reached among the parties. As a result of this decision, Magten's litigation position improved significantly.

B.    The Settlement Agreement

15.    In the course of conducting discovery for the trial in the Magten Adversary,

NorthWestern and Magten had a "meet and confer" at the end of which NorthWestern, through

its counsel, solicited Magten to make an offer to settle all pending claims and causes of actions.

In response, Magten submitted an initial settlement proposal to NorthWestern that NorthWestern

took under advisement.

16.    Thereafter, two weeks of extensive settlement discussions ensued, and on January

27, 2005, the Parties reached an agreement in principal concerning the settlement of the claims

of NorthWestern, the Indenture Trustee, Magten and the holders of the QUIPS that did not

accept NorthWestern's Plan.[3]  NorthWestern drafted the Settlement Agreement, put it in final

form, obtained executed copies of the Settlement Agreement from the Parties, and on February

10, 2005, presented the terms of the settlement to the Court.  At the same time, Magten and the

Indenture Trustee executed the Distribution Letter, which provides for the distribution of the

stock and warrants pursuant to the Settlement Agreement.  See Kaplan Declaration at Exh. G.

C.    NorthWestern's Efforts to Withdraw from the Settlement Agreement

17.    After the Settlement Agreement was presented to this court and made public

through the issuance by NorthWestern of a press release, NorthWestern received a letter from

one of its large shareholders objecting to the terms of the settlement.  In addition, counsel to the

Plan Committee also objected to the terms of the settlement.[4]  The Settlement Agreement, which

---

[3]    By way of background, under the Plan, holders of the QUIPS were placed in Class 8(b) and the QUIPS
holders were given the option of either (i) receiving a $.15 recovery in stock and warrants in full
satisfaction of all their claims against NorthWestern, including the release of their claims in the fraudulent
conveyance litigation, or (ii) receiving no recovery under the Plan and retain their right to pursue the
fraudulent conveyance litigation with any recovery to be treated as a Class 9 claim.

[4]    Magten understands that the Plan Committee is currently comprised of one entity, Wilmington Trust
Company ("Wilmington"), indenture trustee for the TOPrS.  Harbert Distressed Investment Master Fund,
Ltd. ("Harbert") was the largest holder of the TOPrS and throughout NorthWestern's chapter 11 case,

8

was drafted by counsel to NorthWestern is clear that "the Settlement outlined herein shall be binding upon and inure to the benefit of the respective successors and assigns of each of the parties hereto." See Kaplan Declaration Exh. C.  Nevertheless, on February 16, 2004, NorthWestern elected to disavow the Settlement Agreement and advised Magten and the Indenture Trustee by letter that it would not honor the terms of the Settlement Agreement. See Kaplan Declaration at Exh. H.

18.    On February 17, 2005, Magten sent a letter to chambers requesting a chambers conference to obtain guidance from the Court as to whether Magten should seek approval of the settlement or whether it should sue NorthWestern and others for their role in connection with NorthWestern's wrongful breach of the Settlement Agreement. See Kaplan Declaration at Exh. I.  In addition, Magten also sent a letter to NorthWestern on February 18, 2005, informing NorthWestern that (i) the Settlement Agreement was binding on all parties and that NorthWestern's attempts to avoid its obligations under the Settlement Agreement were wrongful, and (ii) its public disclosure suggesting that it had the unilateral right to withdraw the settlement was misleading. See Kaplan Declaration at Exh. J.  Thereafter, the Court informed the parties that a motion seeking approval of the Settlement Agreement should be filed and that the Court would hear the motion at the next omnibus hearing.  Accordingly, by this Motion, Magten and the Indenture Trustee seek entry of an order approving the terms of the Settlement Agreement.

---

Wilmington and Harbert worked together on all litigation endeavors.  The so-called "objection" to the settlement by the Plan Committee is nothing more than an echo of Harbert's dissatisfaction with the settlement, which Harbert has also made publicly known by sending a letter to NorthWestern and filing that letter with the SEC.  See Kaplan Declaration at Exh. H.  Magten further understands that counsel to the Plan Committee was in formed of the terms of the settlement in advance of NorthWestern's execution of the Settlement Agreement and voiced no objection to the settlement.  Moreover, the Plan Committee does not have the right to veto the settlement.  Rather, pursuant to Section 7.9 of the Plan, the Plan Committee has the right to object to any settlement that provides for an allowed claim in excess of than $100,001, but the Plan does not require the approval of the Plan Committee as condition precedent to settling claims.

9

## Jurisdiction

19.     The Bankruptcy Court has jurisdiction over this matter as a core proceeding under 28 U.S.C. §§1334(b) and 157(b).  The relief requested herein is predicated on Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Venue in this district is proper pursuant to 28 U.S.C. §§1408 and 1409.

## Relief Requested

20.     Pursuant to Bankruptcy Rule 9019, the Movants respectfully request that the Court enter an order substantially in the form attached hereto as Exhibit 1, that, among other things, (i) approves the Settlement Agreement; (ii) directs NorthWestern to comply with its terms and (iii) directs NorthWestern to pay all fees and expenses incurred by Magten and the Indenture Trustee in pursuing this Motion.

21.     As discussed more fully below, the Settlement Agreement provides numerous present and future benefits to NorthWestern.  The salient terms the Settlement Agreement are as follows:[5]

- NorthWestern will distribute to the Indenture Trustee for its own benefit and on behalf of Magten and the non-accepting Class 8(b) QUIPS holders the 382,732 shares of common stock at the reorganization plan value of $20.00 per share ("Plan Value") and the 710,449 warrants not yet distributed to Class 8(b) claimants that would have been distributed to Magten and the non-accepting Class 8(b) QUIPS holders had they accepted NorthWestern's confirmed Plan.

- NorthWestern will distribute to the Indenture Trustee for its own benefit and on behalf of Magten and the other non-accepting Class 8(b) QUIPS holders (a) those shares of common stock of reorganized NorthWestern set aside for such QUIPS holders in the reserve established pursuant to that certain Stipulation and Order Establishing a Disputed Claim Reserve entered as Docket #2298 on November 1, 2004, which stock has a Plan Value of $17.1 million, plus (b) an additional $300,000 of common stock of reorganized NorthWestern at Plan Value, which additional stock

---

[5]     To the extent that this Motion and the terms of the Settlement Agreement are inconsistent, the terms of the Settlement Agreement shall control.

will be distributed from the general reserves set aside in Class 9 for pending litigation claims.

- All agreed distributions shall be: (i) made to the Indenture Trustee promptly upon approval by the Bankruptcy Court of the Settlement Agreement, but in any event no later than 15 business days following entry of such Order, provided that the making of such distributions pursuant to the Stipulation and Order and this Settlement are not stayed by Order of a court following an appeal, if any, of the Stipulation and Order; and (ii) subject to the Charging Lien of the Indenture Trustee as ratified by the Plan and the Order confirming the Plan. Nothing in the Settlement Agreement shall impair the rights given the Indenture Trustee to seek satisfaction of its fees and expenses and those of its counsel from any and all distributions made pursuant to the Settlement Agreement and/or the Plan.

- All fees and expenses, including but not limited to attorneys fees and costs, incurred by the Indenture Trustee on behalf of itself and the holders of QUIPS through the date of entry of an order approving the Settlement Agreement will be paid from the sale, disposition or liquidation of common stock and/or warrants to be distributed above. The Parties agree that the Indenture Trustee shall have the right to sell into the public market that portion of the common stock and/or warrants distributed to the Indenture Trustee on behalf of QUIPS holders, whether such distribution is through the Plan or the Settlement Agreement, to the extent necessary to pay its fees and expenses and those of its counsel.

- The fees and expenses of Magten shall be paid from distributions made pursuant to this Settlement on account of the non-accepting Class 8(b) QUIPS holders in an amount and in a manner as may be agreed to between Magten and the Indenture Trustee.

- All of the Parties will mutually release between and among each other any and all claims and causes of action (specifically including third party actions initiated by Magten and actions instituted against Magten and Talton Embry), whether or not threatened or pending from the beginning of time through the date of any order approving the Settlement Agreement as entered by the United States Bankruptcy Court for the District of Delaware, and will dismiss with prejudice all pending litigation and appeals and withdraw with prejudice pending objections to various claims, and will not file any claims or objections or lawsuits in the future relating to arising out of or from the allegations made or that could have been made in any of the ten matters referenced on Schedule 1 of the Settlement Agreement.

- The common stock received pursuant to the Settlement Agreement will be distributed in the following manner:

  o First, to distribute to the Indenture Trustee that number of shares of common stock which when sold on the public market are sufficient, in the sole but reasonable discretion of the Indenture Trustee, to pay in full (i) all of the fees, costs and expenses which it has incurred in connection with the Bankruptcy

11

Proceeding; (ii) the fees, costs and expenses associated with the liquidation of such shares; and (iii) a reasonable reserve to be agreed upon by Magten and the Indenture Trustee;

o  Second, to distribute to Magten 255,000 shares as payment in full for all of the fees, costs and expenses, and the effort and risk which Magten has incurred in connection with the bankruptcy proceeding;

o  Third, to distribute to the holders of the QUIPS in accordance with the terms of the Letter Agreement.

### Applicable Authority

22.  Bankruptcy Rule 9019 provides, in relevant part, as follows:

> (a) Compromise. On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the debtor, and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

23.  The Movants believe and as made clear by NorthWestern's public statements and presentation to this Court, NorthWestern believes that (i) an order approving the Settlement Agreement is in the best interests of NorthWestern, its estate, its creditors and its shareholders, (ii) the Settlement Agreement is fair and reasonable and strikes an appropriate compromise of the various claims and actions, and (iii) if the Settlement Agreement is not approved, expensive and time-consuming litigation will occur and NorthWestern may be forced to unwind the Plan.

A.  The Settlement Agreement is Fair and Equitable and is in the Best Interest of the Estate

24.  The Settlement Agreement provides for a compromise and settlement of numerous claims, causes of actions, objections and appeals. Rule 9019(a) of the Bankruptcy Rules grants the Court broad authority to approve a compromise and settlement. Bankruptcy Rule 9019. See, e.g., In re Sherman Homes, Inc., 28 B.R., 176, 177 (Bankr. D. Me. 1983).

12

25.    The Supreme Court has held that in order to approve a compromise or settlement a court must find the settlement fair and equitable. TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424, 88 S. Ct. 1157, 1163 (1968); See e.g., In re Ionosphere Clubs, Inc., 156 B.R. 414 (S.D.N.Y. 1993), aff'd 17 F.3d 600 (2d Cir. 1994); In re Fugazy, 150 B.R. 103 (Bankr. S.D.N.Y. 1993). In order to reach a decision, the Court must be apprised "of all facts necessary for an intelligent and objective opinion" of whether the claim will be successful, the likely expense, length and the degree of complexity of the litigation, the potential difficulties of collecting on a judgment "and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." TMT Trailer Ferry, 390 U.S. at 424-425.

26.    A settlement should be approved unless it "fall[s] below the lowest point in the range of reasonableness." In re Teltronics Servs., Inc., 762 F.2d 185, 189 (2d Cir. 1985). Settlements and compromises are generally favored in bankruptcy because it "expedites the administration of a bankruptcy estate." In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004). Moreover, when approving a settlement, "the court does not have to be convinced that that settlement is the best possible compromise...rather, the court must only conclude that the compromise or settlement falls within the reasonable range of litigation possibilities. Id. at 330; see also Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1993) (the responsibility of the bankruptcy judge is not to decide the numerous questions of law and fact "but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness'"). In determining the fairness, reasonableness and adequacy of a proposed settlement agreement the Court should generally consider the following factors:

a.    The probability of success in litigation;

13

b.  The difficulties, if any, to be encountered in collecting any judgment rendered;

c.  The complexity of the litigation involved and the expense, inconvenience and delay necessarily attendant to it; and

d.  The paramount interest of the creditors with proper deference to their reasonable views in the premises.

In re Pennsylvania Truck Lines, Inc., 150 B.R. 595, 598 (E.D. Pa. 1992), aff'd, 8 F.3d 812 (3d Cir. 1993); see also Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995) (recognizing applicability of factors set forth above).

27.  Additionally, the Court should consider the fair and reasonable course of action for NorthWestern's estate giving consideration to the interest of creditors and the avoidance of burdening the estate with undue waste or needless or fruitless litigation. In re Del Grosso, 106 B.R. 165, 167-168 (Bankr. N.D.Ill. 1989) (citations omitted). See, also In re United Shipping Company, 1989 Bankr. LEXIS 2775, at *15 (Bankr. D. Minn. Feb. 16, 1989) ("the purpose of a compromise under Rule 9019 is to allow the debtor and the creditor to avoid the expenses and burdens associated with litigating sharply contested and dubious claims."); In re Culmtech, Ltd., 118 B.R. 237, 238 (Bankr. N.D. Ohio 1990); In re Bell & Beckwith, 93 B.R. 569, 575-75 (Bankr. N.D. Ohio 1988).

28.  The Movants respectfully submit that the Settlement Agreement falls well within the range of reasonableness. In consideration of all of the factors to be weighed in approving a settlement, and in light of the extensive litigation to ensue in the absence of approval of the Settlement Agreement, the Settlement Agreement is fair and equitable and falls well above the lowest level of reasonableness and, therefore, should be approved pursuant to Rule 9019.

29.  Absent a settlement, the numerous claims and causes of action initiated by Magten and the Indenture Trustee would continue at substantial cost to all parties involved and

14

delay NorthWestern's efforts to put the chapter 11 cases behind it.  In addition, continuance of
these lawsuits subjects NorthWestern and each of its creditors and equity holders to the risk that
(i) the Plan will be unwound, (ii) certain valuable utility assets (around which NorthWestern has
based its entire reorganization) will be returned to Clark Fork; (iii) the order approving the
settlement embodied in the Memorandum of Understanding will be overturned; and (iv)
Northwestern may be required to pay to Magten and the holders of the QUIPS cash in excess of
$50 million.

30.     Moreover, if the Settlement Agreement is not approved, the result will be
needless, time consuming, expensive, and uncertain litigation due to the complexity of the
outstanding litigations, particularly the Fraudulent Conveyance Proceeding.  Without the benefits
of such a settlement, NorthWestern will be exposed to continuous litigation in various courts and
jurisdictions with no end in sight.  The Settlement Agreement provides NorthWestern with a
benefit above and beyond what could be achieved through litigating all outstanding causes of
action by providing for a consensual agreement among the Parties that will benefit
NorthWestern, its estate, its creditors and its shareholders.  As NorthWestern's president and
Chief Executive officer recognized, "[w]e believe this settlement is in the best interest of the
Company and its shareholders as it removes the uncertainty associated with this protracted legal
dispute that, if continued, would have resulted in significant cost to the Company."  See Kaplan
Declaration at Exh. F.

31.     The Settlement provides for the holders of the QUIPS to receive more than they
would have received had they simply accepted the Plan, but provides them with substantially less
than they could receive if they are successful in the Fraudulent Conveyance Proceeding and other
litigations.  Specifically, under the Settlement Agreement, the holders of the QUIPS will receive

15

1,252,732 shares of common stock at the reorganization plan value of $20 per share and  (i.e.,
shares worth approximately $25 million at the reorganization value) and (b) warrants to purchase
an additional 710,449 shares of common stock.  Absent the Settlement, if Magten and the
Indenture Trustee are successful in their litigation, the QUIPS could receive in excess of $50
million in cash plus the fees and expenses incurred by the Indenture Trustee.

        B.     The Settlement Agreement is Binding and Enforceable

     32.    On February 16, 2005, NorthWestern notified the Movants of its intention not to
seek Court approval of the Settlement Agreement and not to proceed with the settlement.
Thereafter, less than one week after NorthWestern issued its initial press release and presented
the Settlement Agreement to the Court, NorthWestern attempted to walk away from the
Settlement Agreement; a settlement that it had initiated and consistently pursued, supported and
endorsed.

     33.    NorthWestern then issued a second press release announcing that because it is not
proceeding with the Settlement Agreement, NorthWestern will be (i) canceling the warrants not
distributed to the non-accepting Class 8(b) holders and (ii) distributing to classes 7 and 9 the
stock that was not distributed to non-accepting Class 8(b) creditors.  See Kaplan Declaration at
Exh. K.  The purported basis for NorthWestern's decision not to go forward with the Settlement
Agreement and distribute the securities that are the subject of that agreement to other
constituencies is the complaints asserted by Harbert, a former creditor and current shareholder of
NorthWestern.  These objections, however, do not give NorthWestern the right to release itself
from its obligations under the Settlement Agreement -- if NorthWestern's current shareholders or
other parties in interest oppose the Settlement Agreement, they are free to object to a motion
seeking approval of the settlement.  Now, because of NorthWestern's refusal to seek Court

16

approval of the Settlement Agreement, and because the Settlement Agreement is a valid, binding and enforceable contract, the Movants have filed the instant Motion without the support of NorthWestern.

34.    By the terms of the Settlement Agreement and NorthWestern's statements in its initial press release and its filings with and representations to this Court, there can be no doubt that a binding contract was executed by each of the Parties containing all of the material terms of the Settlement Agreement and that settlement is in the best interests of NorthWestern. Moreover, as noted above, the Settlement Agreement itself plainly states that the "Settlement shall be binding upon" the Parties. See Kaplan Declaration Exh. C. In entering the Settlement Agreement, NorthWestern has induced the Movants to suspend its litigation efforts and convinced the Court to adjourn the trial that was scheduled to begin on February 7, 2005. In addition to the harm and delay caused by this suspension, by publicly seeking to avoid the Settlement Agreement and refusing to bring this Motion, Northwestern and its officers and directors are not only breaching NorthWestern's contractual obligations under the Settlement Agreement, but are also about to cause irreparable harm to Magten and the other QUIPS holders by dissipating the currency that is to be paid to Magten and the other QUIPS holders by unilaterally cancelling warrants and distributing stock that, as contemplated under the Settlement Agreement, belong to the holders of the QUIPS. As a result of this breach and wrongful conduct, Magten and the holders of the QUIPS hold liable NorthWestern, the members of its board of directors, its management, its shareholders and all other parties that induced and facilitated the breach of the Settlement Agreement and the conversion of the stock and warrants that are to be distributed to the holders of the QUIPS pursuant to the Settlement Agreement. In

17

that regard, by withdrawing its support of the Settlement Agreement the litigation exposure and

potential liabilities of NorthWestern have increased.

35.    NorthWestern's position that it has the right to "walk away" from the settlement

that it negotiated, executed and presented to the Court is unfounded and is contrary to law. The

Third Circuit Court of Appeals has repeatedly held that settlement agreements should be treated

as contracts and when parties enter into a settlement agreement, they enter into a contract. D.R.

by M.R. v. East Brunswick Bd. of Educ., 109 F.3d 896, 901 (3d Cir. 1997); See also, Halderman

v. Pennhurst State Sch. & Hosp., 901 F.2d 311, 318 (3d Cir. 1990) (construing a final settlement

agreement as a contract); Loppert v. Windsortech, Inc., 2004 Del. Ch. LEXIS 121 * 5 (Del. Ch.,

June 25, 2004)("a settlement agreement is enforceable as a contract").

36.    Moreover, Delaware law is clear that "a contract 'comes into existence if a

reasonable person would conclude, based on the objective manifestations of assent and the

surrounding circumstances, that the parties intended to be bound by their agreement on all

essential terms.'" Leonard v. University of Delaware, 204 F.Supp.2d 784, 787 (D. Del. May 24,

2002) (citing Intellisource Group, Inc. v. Williams, 1999 U.S. Dist. LEXIS 12446 (D. Del.,

1999) (citations omitted)); See also, Loppert, 2004 Del. Ch. LEXIS 121 * 5 (a contract is formed

when "a reasonable negotiator in the position of one asserting the existence of a contract would

have concluded, in that setting, that the agreement reached constituted agreement on all of the

terms that the parties themselves regarded as essential and thus that that agreement concluded the

negotiations"). "In other words, an enforceable contract exists if the parties have reached a

definite agreement on all essential terms." Leonard, 204 F.Supp. 2d. at 787.

37.    Bankruptcy Courts have adopted this line of reasoning, holding that an agreement

by a debtor to compromise litigation should also be binding upon all parties to the agreement.

"The absence of court approval does not mean that the parties did not agree to the settlement. It only means that the court has not yet approved it." United Shipping, 1989 Bankr. LEXIS 2775 at *15. In fact, "a debtor can be compelled to file a motion to approve the settlement even if the debtor has changed its mind." 10 Collier on Bankruptcy, ¶9019.02 (15th Ed. 1996). Absent actual or constructive fraud, which has not occurred here, settlement agreements are binding pending bankruptcy court approval. See In re Lyons Transportation Lines, Inc., 163 B.R. 474, 476 (Bankr. W.D. Pa. 1994). See also In re Tidewater Group, Inc., 8 B.R. 930, 933 (Bankr. N.D. Ga. 1981) ("an agreement by a debtor-in-possession to compromise litigation should also be binding upon all parties to the agreement pending a Court determination as to whether or not to approve the agreement."); In re Frye, 216 B.R. 166, 174 (Bankr. E.D.Va. 1997) (holding that it would be inequitable to allow a party to an otherwise enforceable agreement to "revoke an offer after it had been accepted merely because the court had not yet heard the motion to approve the compromise of the claim."); In re Cotton, 136 B.R. 888, 890 (M.D. Ga. 1992); rev'd on other grounds, 992 F.2d 311 (11th Cir. 1993) ("debtor's agreement to compromise is binding upon all parties to the agreement pending court approval of the agreement").

38.    Here, by the terms of the Settlement Agreement, NorthWestern's subsequent statements in its press release, and its filings with and representations to this Court, there can be no doubt that a binding contract was executed by each of the parties containing all of the material terms of the Settlement.[6]  NorthWestern has publicly acknowledged that its only reason for failing to move forward with the Settlement Agreement is the objections asserted by its controlling shareholder, "Our decision [to cancel the settlement] was strictly based on the objections and we will no longer pursue it because several parties planned to object in court."

---

[6]    The Movants hereby reserve the right to submit a memorandum of law in support of the Motion addressing the enforceability of the Settlement Agreement and all other issues in connection with the Motion.

See Kaplan Declaration at Exh. L. Accordingly, upon the filing of a 9019 motion, creditors have the opportunity to object and, as previously explained, it is up to the court to determine the reasonableness of the settlement – not the debtor.

39.     NorthWestern has already informed the Court and the public that the settlement is in the best interests of the estate. It is undisputed that the Settlement Agreement was negotiated in good faith. Therefore, NorthWestern should be required to honor the Settlement Agreement they solicited, negotiated, drafted and executed. In addition, NorthWestern is required to proceed to seek Court approval, and at that time creditors may have the opportunity to object based on valid grounds. Because NorthWestern has not sought approval of the Settlement Agreement, the Movants seek to have the Court approve the Settlement Agreement because it is plainly in the best interest of all parties. Lastly, because NorthWestern's conduct in refusing to honor the terms of the Settlement Agreement is wrongful and vexatious, NorthWestern should be obligated to pay all fees and expenses incurred by the Movants in seeking approval of the Settlement Agreement. See Leonard v. Univ. of Del., 204 F. Supp. 2d 784, 789 (D. Del. 2002) (awarding costs to defendants for enforcing the terms of a settlement agreement when plaintiff attempted to avoid his obligations under that agreement).

### Notice

40.     The Movants have provided notice of this Motion to: (i) the Office of the United States Trustee; (ii) Paul, Weiss, Rifkind, Wharton & Garrison LLP as counsel to the Official Committee of Unsecured Creditors and the Plan Committee; (iii) the sole registered holder of the QUIPS, Cede & Co., and those holders of the QUIPS holding by and through Cede & Co. as participants; and (iv) all other parties that have requested notice in NorthWestern's chapter 11 case pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, and

the likelihood that such notice will effectively reach all parties likely to want to be heard on this matter Magten submits that no other or further notice is required.[7]

### No Prior Request

41.     No request for the relief sought herein has been previously made to this or any other court.

### Conclusion

WHEREFORE, Magten and the Indenture Trustee respectfully request entry of an order, substantially in the form of Exhibit 1 attached to this Motion, approving the Settlement Agreement, directing NorthWestern to pay the costs and expenses incurred in enforcing the terms of the settlement and granting such other and further relief as is just and proper.

Dated:  Wilmington, Delaware
       February 22, 2005

BLANK ROME LLP

Elio Battista, Jr. (DE No. 3814)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:  (302) 425-6400
Facsimile:  (302) 425-6464

- and -

FRIED, FRANK, HARRIS, SHRIVER &
      JACOBSON LLP
Bonnie Steingart
Gary Kaplan
One New York Plaza
New York, NY 10004
Telephone:  (212) 859-8000
Facsimile:  (212) 859-4000

Counsel for Magten Asset Management
      Corporation

---

[7] Magten and the Indenture Trustee currently intend to publish notice of the Motion in one or more newspapers to ensure that all effected parties receive notice.

120087.01600/40150964v1

- and -

SMITH, KATZENSTEIN & FURLOW, LLP


*/s/ Kathleen M. Miller*
Kathleen M. Miller (I.D. No. 2898)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE  19899
Telephone: (302) 652-8400
Facsimile:  (302) 652-8405

- and -

NIXON PEABODY LLP
Amanda D. Darwin (BBO No. 547654)
John V. Snellings (BBO No. 548791)
Lee Harrington (DE 4046)
100 Summer Street
Boston, MA  02110
Telephone: (617) 345-1000
Facsimile:  (617) 345-1300

Counsel for Law Debenture Trust Company of New York

120087.01600/40150964v1

# EXHIBIT "1"

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | Case No. 03-12872 (JLP) |
| | ) | |
| Debtor. | ) | Re: Dkt. No. _____ |

**ORDER PURSUANT TO BANKRUPTCY RULE 9019 APPROVING SETTLEMENT BETWEEN THE DEBTOR, MAGTEN ASSET MANAGEMENT CORPORATION AND LAW DEBENTURE TRUST COMPANY OF NEW YORK, INDENTURE TRUSTEE**

Upon the motion (the "Motion") of Magten Asset Management Corporation ("Magten") and Law Debenture Trust Company of New York ("Law Debenture"), in its capacity as indenture trustee (the "Indenture Trustee") for the holders of the QUIPS (as defined in the Motion) for an order pursuant to Bankruptcy Rule 9019 approving a settlement (the "Settlement") between NorthWestern Corporation ("NorthWestern" or the "Debtor"), Magten, and the Indenture Trustee (collectively the "Parties") as evidenced by that certain agreement dated as of January 27, 2005 between the Parties and that certain letter agreement dated February 8, 2005 between Magten and the Indenture Trustee (the "Distribution Letter");

And the Court having held a hearing on the Motion on March 8, 2005;

And it appearing that the relief requested by the Motion is in the best interests of the Debtor, its estate and its creditors;

And it appearing that good and sufficient notice of the Motion has been given to: (i) the Office of the United States Trustee; (ii) Paul, Weiss, Rifkind, Wharton & Garrison LLP as counsel to the Official Committee of Unsecured Creditors and the Plan Committee; (iii) the sole

registered holder of the QUIPS, Cede & Co., and those holders of the QUIPS holding by and through Cede & Co. as participants; and (iv) all other parties who have filed a notice of appearance in these chapter 11 cases;

And it appearing that such notice is likely to reach in a timely manner all parties in this Chapter 11 case or in the affected litigation who are likely to have input concerning the appropriateness of the settlement that is the subject of the Motion;

And it appearing that the terms of the compromise and settlement as set forth in the Settlement are fair, reasonable and enforceable under applicable law;

NOW THEREFORE, the Court hereby FINDS as follows:

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334;

This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O);

The notice of this Motion that has been provided is adequate under the circumstances and this Court, in accordance with Rules 9019(a) and 2002(a)(3) of the Federal Rules of Bankruptcy Procedure and no further notice need be provided;

During the course of NorthWestern's chapter 11 case, the Parties have been involved in multiple, significant and complex litigation arising out of or relating to the prepetition transfer (the "Transfer") by Clark Fork and Blackfoot LLC of its substantially all of its assets to NorthWestern; including, but not limited to those claims, contested matters and litigations described on Exhibit 1 attached hereto;

One of the actions between the parties is the adversary proceeding commenced by Magten and Law Debenture, as trustee, seeking to set aside the Transfer as a fraudulent conveyance, captioned, as Magten Asset Management Corporation and Law Debenture Trust

- 2 -

Company of New York, Plaintiffs v. NorthWestern Corporation; Defendant, Case Number 04-53324 (the "Fraudulent Conveyance Litigation"). That litigation is currently stayed pending a final determination with respect to the Confirmation Appeal (as defined below);

In addition, following a lengthy, contested confirmation hearing, Magten appealed from the Order confirming the Plan (the "Confirmation Appeal"). That appeal is currently pending before the United States District Court for the District of Delaware, and has been assigned to mediation in accordance with the standing order of the District Court regarding appeals;

Magten has also appealed the Order approving the Memorandum of Understanding (the "MOU") with respect to settlement of the securities class action case (the "MOU Appeal"). That appeal is also currently pending before the United States District Court for the District of Delaware, and has also been referred for mediation;

The Fraudulent Conveyance Litigation, the Confirmation Appeal and the MOU Appeal will (i) require NorthWestern to incur substantial cost and expense, (ii) require NorthWestern's management and professionals to spend significant time and effort focusing on litigation efforts, (iii) expose the reorganized Debtor and the Debtor's estate to the risk that the Order confirming the plan of reorganization (as approved by this Court the "Plan") and the order approving the settlement embodied in the MOU will be overturned (iv) cause substantial cost, expense and delay NorthWestern's efforts to put the chapter 11 cases behind it, and (v) may result in Northwestern being required to pay to Magten and the holders of the QUIPS cash in excess of $50 million;

- 3 -

Absent approval of the Settlement by this Court, the litigation set forth on Exhibit 1 would continue unabated at significant expense to the estate and all parties involved;

The Settlement was negotiated at arms length and is fair, equitable and reasonable and is in the best interests of the Debtor's estate, the Debtor's creditors, the holders of the QUIPS, and all parties in interest;

The Indenture Trustee, in entering into the Settlement on behalf of the holders of the QUIPS, has acted prudently and exercised its fiduciary duty with all reasonable care and business judgment;

The Settlement constitutes a binding contract between the Parties as the Parties reached a definite agreement on all essential terms of the Settlement;

The Settlement was not conditioned upon NorthWestern obtaining the consent of its shareholders, former creditors or the Plan Committee or there being no need to modify or amend the Plan;

The Settlement can be effectuated without filing an amendment to the Plan, as NorthWestern has sufficient stock in the claims reserve, authorized but un-issued stock and cash to provide the holders of the QUIPS with the economic equivalent to the recovery they would have received were the stock and warrants described in the Settlement Agreement actually provided to the holders of the QUIPS;

The refusal of NorthWestern to honor its obligations under to the Settlement was vexatious and wrongful and will itself give rise to additional and costly litigation. As a result, NorthWestern should bear all of the costs and expenses incurred by Magten and Law Debenture

- 4 -

in enforcing the terms of the Settlement, bringing the Motion, and for all of the notice of the Motion as provided for in the Scheduling Order previously entered by this Court;

In pursuing the various litigations along with the other claims and actions described on Exhibit 1, Magten undertook significant financial risk in order to ensure that the rights of all of the holders of the QUIPS were protected and to ensure that the holders of the QUIPS received a fair return on their investment; accordingly, the payment to Magten of 255,000 shares of stock at the Plan Value (as defined below) is fair and appropriate; and

The release of the Parties from all liability, whether present, past, or future, from any and all causes of action relating to arising out of or from the allegations made or that could have been made in any of the matters identified on Exhibit 1 hereto, is being granted for good and adequate consideration.

ACCORDINGLY, after due deliberation, and sufficient cause appearing therefore, it is hereby

ORDERED that the Motion is hereby approved in all respects; and it is further

ORDERED that all objections to the Motion are overruled in their entirety for the reasons set forth on the record at the hearing on the Motion held on March 8, 2005;

ORDERED that the Debtor is hereby authorized and directed to perform each and every term of the Settlement in accordance with its terms and this Order, and it is further

ORDERED that in accordance with the terms of the Settlement, NorthWestern shall cause to be distributed to the Indenture Trustee promptly upon entry of this Order, but in no event later than 15 business days following the entry of this Order, for its own benefit and on behalf of Magten and the non-accepting Class 8(b) QUIPS holders (a) 1,252,732 shares of

- 5 -

common stock at the reorganization plan value of $20 per share ("Plan Value") and (b) warrants to purchase an additional 710,449 shares of common stock (the "Warrants") which shall have the same terms and conditions as the Warrants issued pursuant to Section 4.8 (a)(ii) of the Plan and shall be subject to the Warrant Agreement described in Section 4.7(c) of the Plan; and it is further

ORDERED that upon the receipt of the distribution contemplated by this Order, consistent with the Agreement between the Indenture Trustee and Magten, the Indenture Trustee shall distribute the common stock as follows:

- *First,* to the Indenture Trustee that number of shares of common stock which when sold on the public market are sufficient, in the sole but reasonable discretion of the Indenture Trustee, to pay in full (i) all of the fees, costs and expenses which it has incurred in connection with the Bankruptcy Proceeding; (ii) the fees, costs and expenses associated with the liquidation of such shares; and (iii) a reasonable reserve to be agreed upon by Magten and the Trustee;

- *Second,* to Magten 255,000 shares as payment in full for all of the fees, costs and expenses, and the effort and risk which Magten has incurred in connection with the Bankruptcy Proceeding;

- *Third,* to the holders of the QUIPS as more particularly described in the Distribution Letter attached hereto as Exhibit 2; and it is further

ORDERED that as of the date of the entry of this Order, in consideration for and as part of the Settlement and for other valuable consideration, NorthWestern, Magten, Talton R. Embry, Law Debenture, individually and as Indenture Trustee and each of their respective

- 6 -

parents, subsidiaries, affiliates, officers, directors, or any of their former or present stockholders,

members, employees, advisors, attorneys, financial advisors, accountants, auditors, agents or

professionals shall be forever released from any and all known and unknown claims and causes

of action of any nature whether threatened or pending from the beginning of time through the

date of the entry of this Order relating to, arising out of or in connection with the allegations

made, or that could have been made by any person or entity in any of the matters referenced

herein or otherwise identified on Exhibit 1 hereto; and it is further

ORDERED that the Parties shall promptly dismiss with prejudice all pending

litigation and appeals and withdraw with prejudice pending objections to various claims as set

forth on Exhibit 1 hereto; and it is further

ORDERED that subject to the terms of the Settlement, all distributions shall be

made subject to the Charging Lien of the Indenture Trustee as ratified by the Plan and Order

confirming the Plan; and it is further

ORDERED that all fees and expenses incurred by the Indenture Trustee and by

Magten on behalf of themselves and the holders of the QUIPS through the date of the entry of

this Order shall be paid from the sale, disposition or liquidation of common stock and/or

warrants to be distributed to Magten and other holders of class 8(b) claims pursuant to this Order;

provided, however, that all fees and expenses incurred by Magten and the Indenture Trustee in

pursuing this Motion and enforcing the terms of the Settlement shall be paid in cash in full by

NorthWestern Corporation within three business days of one or more invoice(s) for such fees and

expenses being sent to NorthWestern; and it is further

- 7 -

ORDERED that the Indenture Trustee shall have the right to sell into the public market that portion of the common stock and/or warrants distributed to the Indenture Trustee on behalf of QUIPS holders, whether such distribution is through the Plan or the Settlement pursuant to this Order, to the extent necessary to pay its fees and expenses and those of its counsel; and it is further;

ORDERED that NorthWestern shall pay to the Indenture Trustee those fees and expenses which may be incurred by the Indenture Trustee in the course of the distribution to the holders of the QUIPS the securities available for distribution pursuant to the Plan, the Settlement and this Order within three business days of receipt of an invoice requesting the same; and it is further

ORDERED that each and every term of the Settlement is enforceable in this Court and this Court shall retain jurisdiction for all disputes that may arise in the future with respect thereto; and it is further

ORDERED that this entry shall be a binding Final Order and, absent a stay of this Order granted by a court of competent jurisdiction, NorthWestern shall comply with all of the terms of this Order notwithstanding the pendency of any appeal from this order.


Dated: March _____, 2005
     Wilmington, Delaware

_____
HONORABLE JOHN L. PETERSON
United States Bankruptcy Judge

- 8 -

# EXHIBIT "1"

## Exhibit 1

1.  Magten's appeal of the Order confirming NorthWestern's Second Amended and Restated Plan of Reorganization:

    NorthWestern Corporation, Debtor; Magten Asset management Corp., Appellant; The Official Committee of Unsecured Creditors, Creditor v. NorthWestern Corporation, Appellee; US Trustee v. Exit Finance Banks, Movant *(Case #04-CV-1389 in the US District Court of Delaware)*.

2.  Magten's appeal of the Order approving the Memorandum of Understanding with respect to settlement of the securities class action case:

    NorthWestern Corporation, Debtor; Magten Asset management Corp., Appellant; v. NorthWestern Corporation, Appellee *(Case #04-CV-1508 in the US District Court of Delaware)*.

3.  Magten's appeal of the Order denying its motion to disqualify Paul Hastings as general bankruptcy counsel to NorthWestern:

    Magten Asset Management Corporation, Appellant; v. Paul Hastings Janofsky & Walker LLP, Appellee *(Case #04-CV-1279 in the US District Court of Delaware)*.

4.  Magten and Law Debenture adversary proceeding seeking to set aside the going flat transaction as a fraudulent conveyance:

    Magten Asset Management Corporation; Law Debenture Trust Company of New York, Plaintiff v. NorthWestern Corporation; Official Committee of Unsecured Creditors, Defendant *(Case #04-53324 in the U.S. Bankruptcy Court District of Delaware)*.

5.  Magten's action against Mike Hanson and other officers of Clark Fork and Blackfoot LLC for breach of fiduciary duty with respect to the going flat transaction:

    Magten Asset Management Corporation, Plaintiff v. Mike J. Hanson, Jack D. Haffey, Ernie J. Kindt and Ellen M. Senechal, Defendants *(Case #04-CV-00026 in the US District Court of Montana, Butte Division)*.

6.  Magten's action against Paul Hastings for aiding and abetting the going flat transaction"

    Magten Asset Management, Plaintiff v. Paul Hastings Janofsky & Walker LLP, Defendant *(Case #04-CV-1256 in the US District Court of Delaware)*.

- 1 -

7.  NorthWestern's adversary proceeding against Magten and Talton R. Embry seeking either to reduce Magten's claims to the price it paid for the QUIPS securities or to subordinate its claims based on the allegation that Magten improperly used material, non-public information after Magten became a member of the Official Committee of Unsecured Creditors:

    NorthWestern Corporation, Plaintiff v. Magten Asset Management Corporation and Talton R. Embry, Defendant *(Case #04-55051-CGC in the US Bankruptcy Court District of Delaware)*.

8.  Magten's motion to withdraw the reference from the Bankruptcy Court to the District Court as to items 4 and 7 above.

9.  Magten's objection to the final fee application filed by Paul Hastings:

    Magten Asset Management Corporation's Objection to Final Fee Application of Paul Hastings Janofsky & Walter LLP *(Docket No. 2527)*.

10. NorthWestern's objections to payment on indenture trustee fees and attorneys fees and costs incurred by Law Debenture of New York LLC in its capacity as successor trustee for the QUIPS:

    Objection Of The Debtor To The Request Of Law Debenture Trust Company Of New York For Payment Of Fees And Reimbursement Of Expenses Pursuant To The Debtor's Plan Of Reorganization And Applicable Trust Indenture *(Docket No. 2522)*.

489907

- 2 -

120087.01600/40150961v1

# EXHIBIT "2"

# FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

One New York Plaza
New York, NY 10004-1980
Tel: 212.859.8000
Fax: 212.859.4000
www.friedfrank.com

February 8, 2005

Amanda Darwin, Esq.
John V. Snellings, Esq.
Nixon Peabody LLP
100 Summer Street
Boston, Massachusetts  02110

Re:    **Northwestern Corporation -**
       **Bankruptcy Case No. 03-12872 (CGC) (the "Bankruptcy Proceeding")**

Dear John and Amanda:

Reference is made to the following:

(a)    a certain Indenture, dated as of November 1, 1996, by and between The Montana Power Company, a Montana corporation ("**Montana Power**") and The Bank of New York, as indenture trustee, pursuant to which Montana Power issued certain 8.45% Junior Subordinated Debentures (the "**Debentures**") (said Indenture, as amended from time to time, the "**Indenture**"), and under which Law Debenture Trust Company of New York now serves as successor Indenture Trustee (when acting in such capacity, the "**Indenture Trustee**");

(b)    a certain Amended and Restated Trust Agreement, dated as of November 1, 1996 (the "**Trust Agreement**"), by and among Montana Power, The Bank of New York as property trustee and others named therein, pursuant to which Montana Power Capital I, a Delaware statutory business trust, issued certain 8.45% Cumulative Quarterly Income Preferred Securities, Series A (the "**QUIPS**") and under which Law Debenture Trust Company of New York now serves as successor Property Trustee thereunder (when acting in such capacity, the "**Property Trustee**") (the Indenture Trustee, the Property Trustee and Law Debenture Trust Company of New York are hereinafter sometimes referred to collectively as the "**Trustee**"); and

(c)    a certain letter agreement, dated of even date herewith (the "**Settlement Agreement**"), to be executed by and among Northwestern Corporation, a Delaware corporation (the "**Debtor**"), the Indenture Trustee and Magten Asset Management Corp. for itself and its managed accounts,

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

Law Debenture Trust Company of New York
February 8, 2005
Page 2

"**Magten**")(the Debtor, the Indenture Trustee and Magten are hereinafter sometimes referred to collectively as the "**Parties**"), in the form attached hereto as **Appendix A**, which sets forth the terms and conditions of the settlement of all pending and threatened litigation and other actions among the Parties.

All capitalized terms not defined herein but defined in the Settlement Agreement shall have the meanings given to such terms in the Settlement Agreement.

This letter confirms the allocation of the stock and warrants to be distributed to the holders of the QUIPS pursuant to the terms of the Settlement Agreement. This letter is for settlement purposes only and is governed by Rule 408 of the Federal Rules of Evidence and any and all other rules and statutory provisions governing the non-disclosure of settlement discussions. Nothing herein shall be considered an admission of liability by any party and this letter shall not be referred to by any party for any purpose other than in connection with our settlement discussions.

To date, the Debtor has distributed to the Trustee 136,965 shares of common stock (the "**Option 1 Stock Distribution**") and 254,241 warrants on account of those Class 8(b) claimants who chose Option 1 under the Debtor's plan of reorganization plan (the "**Plan**"). Under the terms and conditions of the Settlement Agreement, the Debtor is to distribute to the Trustee an additional 382,732 shares of common stock (the "**Option 2A Stock Distribution**") (at the reorganization plan value (the "**Plan Value**") of approximately $20.00 per share) and an additional 710,449 warrants not yet distributed to Class 8(b) claimants that would have been distributed to such holders had they accepted the Plan. The Debtor is also to distribute to the Trustee 870,000 shares of common stock having a Plan Value of $17,400,000.00 (the "**Option 2B Stock Distribution**"). The sum of the Option 1 Stock Distribution, the Option 2A Stock Distribution and the Option 2B Stock Distribution is hereinafter referred to as the "**Total Stock Distribution.**"

Magten is the current beneficial owner and holder of at least Forty and 00/100 Percent (40.00%) of all of the issued and outstanding QUIPS, and is the holder of a majority of the issued and outstanding QUIPS that have selected, or have been deemed to have selected, Option 2 under the Plan.

     1.    Magten and the Trustee have agreed that the shares of common stock making up the Total Stock Distribution which the Trustee has received or is to receive from the Debtor pursuant to the provisions of the Plan and the Settlement Agreement will be distributed in the following manner:

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

Law Debenture Trust Company of New York
February 8, 2005
Page 3

    1.1.    *First,* to distribute to the Trustee (the "**Trustee Distribution**") that number of shares of common stock which when sold on the public market are sufficient, in the sole but reasonable discretion of the Trustee, to pay in full (i) all of the fees, costs and expenses which it has incurred in connection with the Bankruptcy Proceeding; (ii) the fees, costs and expenses associated with the liquidation of such shares; and (iii) a reasonable reserve to be agreed upon by Magten and the Trustee;

    1.2.    *Second,* to distribute to Magten 255,000 shares (the "**Magten Distribution**") as payment in full for all of the fees, costs and expenses, and the effort and risk which Magten has incurred in connection with the Bankruptcy Proceeding;

    1.3.    *Third,* to distribute on a pro rata basis to those holders who elected (or are deemed to have elected) Option 1 under the Plan the Option 1 Portion (as defined in Section 4 hereof);

    1.4.    *Fourth*, to distribute on a pro rata basis to those holders who elected (or are deemed to have elected) Option 2 under the Plan the Option 2 Portion (as defined in Section 4 hereof); and

    1.5.    *Fifth, to* distribute the warrants which pursuant to the provisions of the Plan and the Settlement Agreement the Trustee has received or is to receive from the Debtor to all Class 8(b) QUIPS holders on a pro rata basis based on QUIPS shares held by such holders.

    2.    For purposes hereof, the following terms shall have meanings given to such terms as set forth below:

    "**Option 1 Ratio**" means the ratio equal to the Option 1 Stock Distribution divided by the sum of the Total Stock Distribution less the Magten Distribution.

    "**Option 2A Ratio**" means the ratio equal to the Option 2A Stock Distribution divided by the sum of the Total Stock Distribution less the Magten Distribution.

    "**Option 2B Ratio**" means the ratio equal to sum of the Option 2B Stock Distribution less the Magten Distribution divided by the sum of the Total Stock Distribution less the Magten Distribution.

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

Law Debenture Trust Company of New York
February 8, 2005
Page 4

"**Remaining Shares**" means that number of shares which is equal to the Total Stock Distribution minus the sum of the Magten Distribution plus the Trustee Distribution.

"**Option 1 Portion**" means that number of shares which is equal to the Remaining Shares multiplied by the Option 1 Ratio.

"**Option 2 Portion**" means that number of shares which is equal to the sum of (a) the Remaining Shares multiplied by the Option 2A Ratio plus (b) the Remaining Shares multiplied by the Option 2B Ratio.

3.    The following is an example of the manner by which such shares of common stock are to be distributed, and is given solely for purposes of illustration. The numbers set forth in the example are based on the number of shares expected from the Debtor as a result of various distributions that have been made or are expected to be made at this time, but will be adjusted based on the actual number of shares which the Trustee receives from the Debtor. The Trustee Distribution is also an assumed number used for illustrative purposes only, as the amount of the Trustee Distribution will be calculated as set forth in paragraph 1.1 hereof.

| No. | Name | No. of Shares | Percentage |
|---|---|---|---|
| 1. | Trustee Distribution | 70,000 | N/A |
| 2. | Magten Distribution | 255,000 | N/A |
| 3. | Option 1 Portion | 128,509 | 12.07% |
| 4. | Option 2 Portion | 936,188 | 87.93% |
| | Total Stock Distribution: | 1,389,697 | 100.00% |

As set forth in the Settlement Agreement, the Settlement described therein and herein will be implemented by way of a motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure seeking approval for a compromise and settlement. Such motion, the proposed order in connection therewith (the "Settlement Order"), and any notices sent to the Class 8( b) QUIPS holders and other parties-in-interest will (i) provide as broad language as possible regarding the release by the Class 8(b) QUIPS holders of all claims and causes of action that they may have against the Parties hereto (including without limitation, the Trustee) and (ii) be in form and substance satisfactory to Magten and the Trustee. Magten and Trustee agree that the broad releases to be included in the Settlement Order are a central, nonseverable component of the Settlement Agreement and this letter agreement, and in the event that either party is not

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

Law Debenture Trust Company of New York
February 8, 2005
Page 5

reasonably satisfied with the scope of such releases, neither party will be bound by the terms set forth herein. If any portion of such release language is not in a form and substance acceptable to the Trustee in its sole but reasonable discretion, the Trustee reserves the right to request that Magten indemnify the Trustee and each of its past, present and future officers, directors, stockholders, agents, attorneys, and employees on such terms as the Trustee may require, but nothing herein shall obligate Magten to provide such indemnification.

Sincerely,

*Bonnie Steingart*

Bonnie Steingart
Fried, Frank, Harris Shriver & Jacobson LLP
One New York Plaza
New York, New York  10004
(Tel) 212-859-8004
(Fax) 212-859-8585

Counsel for Magten Asset Management
Corporation

**ACCEPTED**
**BY THE UNDERSIGNED:**

Counsel for Law Debenture Trust
Company of New York on behalf
of itself and its capacity as Indenture Trustee

Amanda Darwin
John V. Snellings
Nixon Peabody LLP
100 Summer Street
Boston, Massachusetts  02110
(Tel) 617-345-1201
(Fax) 617-947-1732