# EXHIBIT 9

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | Bankruptcy Case No. 03-12872 (JLP) |
| | ) | |
| Reorganized Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 04-55051 (JLP) |
| | ) | |
| v. | ) | |
| | ) | |
| MAGTEN ASSET MANAGEMENT CORPORATION, and TALTON R. EMBRY, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION and LAW DEBENTURE TRUST COMPANY OF NEW YORK, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 04-53324 (JLP) |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**JOINT MOTION (I) FOR ORDER ALLOWING THE DEBTOR TO DISMISS ITS COMPLAINT AGAINST MAGTEN ASSET MANAGEMENT CORPORATION AND TALTON R. EMBRY, WITH PREJUDICE, PURSUANT TO RULE 7041(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND RULE 41(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE, AND (II) FOR LEAVE TO AMEND ANSWER AND AFFIRMATIVE DEFENSES AND TO WITHDRAW COUNTERCLAIMS TO FIRST AMENDED COMPLAINT TO AVOID THE TRANSFER OF <u>ASSETS OF CLARK FORK AND BLACKFOOT LLC</u>**

COMES NOW NorthWestern Corporation (**"NorthWestern"** or the **"Debtor"**), by and through its undersigned counsel, and hereby files its Motion (I) for Order Allowing the Debtor to Dismiss Its Complaint Against Magten Asset Management Corporation and Talton R. Embry, With Prejudice, Pursuant to Rule 7041(a) of the Federal Rules of Bankruptcy Procedure and Rule 41(a) of the Federal Rules of Civil Procedure, and (II) for Leave to Amend Answer and Affirmative Defenses and to Withdraw Its Counterclaims to First Amended Complaint to Avoid the Transfer of Assets of Clark Fork and Blackfoot LLC (the **"Motion"**), and in support thereof respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this Chapter 11 case and the Motion are proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      NorthWestern was incorporated in 1923 and is a publicly traded Delaware corporation.  NorthWestern and its direct and indirect energy subsidiaries comprise one of the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of the United States, serving approximately 608,000 customers throughout Montana, South Dakota and Nebraska.  The Debtor, a transmission and distribution regulated utility entity, has generated and distributed electricity in South Dakota and has distributed natural gas in South Dakota and Nebraska through its energy division, NorthWestern Energy, since the Debtor's formation in 1923.

3.      On September 14, 2003 (the **"Petition Date"**), NorthWestern filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On September 30, 2003, the Office of the United States Trustee for the District of Delaware (the **"Trustee"**) appointed the official committee of unsecured creditors in the Debtor's bankruptcy proceeding (the **"Committee"**).

4.      On October 8, 2004, the Court entered an oral ruling confirming the Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the **"Plan"**), and on October 19, 2004, the Court entered the final Order Confirming the Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code. The effective date of the Debtor's Plan was November 1, 2004.

5.      Talton R. Embry (**"Embry"**) was at all relevant times the 100% owner and Chairman of Magten Asset Management Corporation (**"Magten"** and together with Embry, collectively, the **"Defendants"**), and Magten is a corporation organized under the laws of Delaware, having its principal place of business at 410 Park Avenue, 14th Floor, New York, New York 10022.

6.      Magten filed a proof of claim which was designated claim number 842 by the Debtor's claims agent (the **"Magten Claim"**).[1]   The Magten Claim asserts unliquidated claims against the Debtor's estate for: (i) the face amount of the approximately 40% of the Debtor's Series A 8.45% Quarterly Income Preferred Securities (**"QUIPS"**) that were held by Magten as of the Petition Date; and (ii) damages

---

[1] A copy of the Magten Claim is attached hereto as <u>Exhibit A</u>. Through the discovery process it became clear that Magten did not own all of the securities referred to in its proof of claim on its own behalf, but rather that such securities were held in accounts managed by Magten for others. To date, Magten has not filed a statement pursuant to Federal Rule of Bankruptcy Procedure 2019, as required by such rule.

resulting from the alleged fraudulent transfer of the utility assets of NorthWestern Energy, LLC to NorthWestern on November 15, 2002 (the **"QUIPS Litigation Claim"**).

7.      On or about November 6, 2003, this Court entered its Order Permitting Securities Trading Upon Establishment of Ethical Wall (the **"Securities Trading Order"**). The Securities Trading Order prohibits members of the Committee (present and future, each a **"Member"**) from trading in the securities of the Debtor and its affiliates, unless and until such Member establishes and implements an ethical wall (the **"Ethical Wall"**) in accordance with the terms and conditions of the Securities Trading Order.

8.      Upon request of Magten, and by notice dated November 25, 2003, the Trustee appointed Magten to the Committee. Magten was represented on the Committee by its 100% principal, Embry.

9.      Once appointed to the Committee, Magten's fiduciary and other common law duties precluded it from trading in the securities of the Debtor and its affiliates, including, without limitation, the QUIPS, except as provided in the Securities Trading Order, which permitted limited trading upon establishment of an Ethical Wall. Magten, however, could not establish an Ethical Wall because it is 100% owned by Embry.

10.      On December 18, 2003, Embry, as Chairman of, and on behalf of, Magten, executed a Confidentiality Agreement with the Committee (the **"Confidentiality Agreement"**). Under the Confidentiality Agreement, the Defendants agreed to maintain as confidential all non-public and proprietary information provided by or to the Committee. In addition, on December 18, 2003, Embry, as Chairman of, and on behalf of, Magten, also executed a confidentiality agreement with the Debtor, pursuant to which

the Defendants agreed to maintain as confidential all non-public and proprietary information provided by the Debtor.

**The NorthWestern Adversary Proceeding**

11.    On or about August 20, 2004, the Debtor filed a complaint against Magten and Embry, thereby commencing the adversary proceeding styled as NorthWestern Corporation v. Magten Asset Management Corporation and Talton R. Embry [Adv. Pro. No. 04-55051-JLP] (the **"NorthWestern Adversary Proceeding"**). The NorthWestern Adversary Proceeding sought subordination of Magten's claims, actual damages and equitable relief, and objected to the Magten Claim, based on Magten's alleged improper trading of the QUIPS while serving as a Member of the Committee.

12.    In the Complaint, the Debtor expressly reserved the right to amend, modify or supplement the Complaint and to object further to the Magten Claim on any and all additional factual or legal grounds.[2]

13.    On or about September 28, 2004, the Defendants filed the Motion of Magten Asset Management and Talton R. Embry to Dismiss the Complaint of NorthWestern Corporation For Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the **"Motion to Dismiss"**) in the NorthWestern Adversary Proceeding.

14.    On November 4, 2004, the Court entered a Scheduling Order that set a discovery cut-of date of January 21, 2005, and scheduled trial to commence on February 7, 2005.

---

[2] *See* Complaint, ¶ 55.

15.    On November 8, 2004, the Court entered an order denying the Motion to Dismiss.

16.    In addition, on or about November 17, 2004, Magten, joined by Law Debenture Trust Company of New York (**"Law Debenture"**), filed a Motion and Memorandum in Support of Motion for Stay of Adversary Proceeding Pending Resolution of Motion to Withdraw the Reference to Bankruptcy Court (the **"Motion for Stay"**).

17.    On December 12, 2004, the Court entered an order denying the Motion for Stay as it relates to the NorthWestern Adversary Proceeding.

18.    The parties entered into settlement discussions and proposed settlement terms were negotiated.    The Plan Committee, and Class 7 holders of claims as represented by Harbert Distressed Investment Master Fund, Ltd., have vehemently objected to the proposed settlement.

19.    In reviewing information obtained during the discovery process from the Committee's advisors, Members and Magten, the Debtor has determined that while it can prove that the Debtor provided material non-public information to the Committee's advisors, the discovery produced by the Committee does not clearly establish what information was conveyed to the Members.    As a result, it no longer makes economic sense for the Debtor to continue the NorthWestern Adversary Proceeding.[3]

---

[3] Discovery was not completed, as a result of the proposed settlement. However, documents produced by the Committee's advisors do not identify what material, non-public confidential information was provided to the Members or when such information was provided.

**The Magten Adversary Proceeding**

20.     On April 16, 2004, Magten and Law Debenture filed their Complaint (the "**Magten Complaint**") [Adv. Pro. Dkt. No. 1] to Avoid the Transfer of Assets of Clark Fork and Blackfoot LLC (f/k/a NorthWestern Energy, LLC) to NorthWestern Corporation, thereby commencing the adversary proceeding styled as <u>Magten Asset Management Corporation & Law Debenture Trust Company of New York v. NorthWestern Corporation</u> [Adv. Pro. No. 04-53324-JLP] (the "**Magten Adversary Proceeding**").

21.     The Magten Complaint sought, <u>inter alia</u>, to avoid the transfer of assets of Clark Fork and Blackfoot LLC (f/k/a NorthWestern Energy) pursuant to what has been referred to in the Debtor's bankruptcy proceedings generally as the "going flat" transaction.

22.     On or about October 4, 2004, Magten and Law Debenture filed their First Amended Complaint to Avoid the Transfer of Assets of Clark Fork and Blackfoot LLC (f/k/a NorthWestern Energy, LLC) (the "**Amended Magten Complaint**") [Adv. Pro. Dkt. No. 27].

23.     Adjudication of the Magten Adversary Proceeding will essentially serve as a proceeding to determine the validity of the QUIPS Litigation Claim asserted in the Magten Claim, wherein Magten asserts that it is entitled to damages resulting from the alleged fraudulent transfer of the utility assets of NorthWestern Energy, LLC to NorthWestern on November 15, 2002.

24.    On or about November 19, 2004, NorthWestern filed its Answer, Affirmative Defenses and Counterclaims to the Amended Magten Complaint (the **"NorthWestern Answer"**) [Adv. Pro. Dkt. No. 41].

25.    The Debtor's objection to the Magten Claim (the **"Objection"**) is set forth in Count III of the counterclaims in the NorthWestern Answer. The Objection includes both an objection to the QUIPS Litigation Claim[4] as well as an objection to the Magten Claim based on alleged violations of the Securities Trading Order and Confidentiality Agreement.

26.    The Debtor expressly reserved the right to amend, modify or supplement its counterclaims and to further object to the Magten Claim on any and all additional factual or legal grounds.[5]

## SUMMARY OF RELIEF REQUESTED

27.    After reviewing the evidence obtained during discovery and considering the litigation costs to the bankruptcy estate, the Debtor has determined that as a result of its review of the documents produced by the Committee's advisors, it is no longer cost effective to pursue the NorthWestern Adversary Proceeding because the records do not establish when or what material, non-public information the Committee's advisors disclosed to the Committee. The Debtor seeks an order from this Court allowing the Debtor to voluntarily dismiss the NorthWestern Adversary Proceeding, **with prejudice**, pursuant to Rule 7041(a)(2) of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**) and Fed. R. Civ. P. 41(a)(2), with each party to bear its own fees and costs.

---

[4] *See* NorthWestern Answer, ¶ 42.

[5] *See* NorthWestern Answer, ¶¶ 41-45, 54.

NY55/434737.3

28.    Further, the Debtor seeks an order granting the Debtor leave to amend the NorthWestern Answer in the Magten Adversary Proceeding and to withdraw its counterclaims asserted therein, while preserving the Objection to the QUIPS Litigation Claim contained in paragraph 42 of the NorthWestern Answer and the Debtor's right to amend or modify the NorthWestern Answer with respect to the Objection to the QUIPS Litigation Claim.

## BASIS FOR RELIEF

### A.  Dismissal of the NorthWestern Adversary Proceeding Will Not Result in Prejudice to the Defendants

29.    The Debtor filed the NorthWestern Adversary Proceeding based on its good faith belief that the Defendants had engaged in inappropriate, and possibly illegal, trading of the Debtor's QUIPS based on confidential, non-public, information about the Debtor that the Defendants allegedly received as a Member of the Committee.

30.    This Court denied the Motion to Dismiss finding that the Debtor had alleged causes of action under F. R. Civ. P. 12(b)(6), made applicable to adversary proceeding by Bankruptcy Rule 7012(b).[6]  After assessing the evidence produced by the Committee's advisors, Members and Magten, the Debtor has determined that it is no longer cost effective to pursue the subordination claims asserted in the NorthWestern Adversary Proceeding because the documents produced by the Committee's advisors fail to identify when and what material, non-public information provided by the Debtor to the Committee's advisors was communicated by the Committee's advisors to the Members.

---

[6] *See* Order entered on November 8, 2004 in the NorthWestern Adversary Proceeding [Adv. Pro. Dkt. No. 15].

NY55/434737.3

As a result, the Debtor seeks to voluntarily dismiss the NorthWestern Adversary Proceeding, **with prejudice,** pursuant to Bankruptcy Rule 7041(a)(2).

31.    Pursuant to Fed. R. Civ. P. 41(a)(2), made applicable to adversary proceedings by Bankruptcy Rule 7041(a)(2), when a defendant has filed an answer to a complaint, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." Bankruptcy Rule 7041(a)(2); Fed. R. Civ. P. 41(a)(2).

32.    "Courts generally agree that Rule 41(a)(2) motions should be allowed unless defendant will suffer some prejudice other than the mere prospect of a second lawsuit," and the Third Circuit endorses a liberal view toward granting Rule 41(a)(2) dismissals. *See DuToit v. Strategic Minerals Corp.*, 136 F.R.D. 82 (D. Del. 1991); *Reach & Assoc., P.C. v. Dencer*, No. CIV.A. 02-1355, 2004 WL 253487, at *1, 2 (D. Del. Feb. 9, 2004) (citations omitted); *In re Paoli RR. Yard PCB Litig.*, 916 F.2d 829, 863 (3d Cir. 1990).[7]

33.    Further, "[t]he purpose of Rule 41(a)(2) is to prevent [voluntary] dismissals that prejudice an opposing party and to permit the court to impose curative conditions it deems necessary," and, "[o]rdinarily, a court should grant a Rule 41(a)(2) dismissal unless the defendant will suffer plain legal prejudice." *Reach & Assoc., P.C.*, 2004 WL 253487, at *1; *Spring City Corp. v. American Bldgs. Co.*, Nos. CIV.A. 97-8127, 98-105, 1999 WL 1212201, at *1 (E.D. Pa. Dec. 17, 1999).

34.    When determining whether a party will suffer prejudice, the court should consider " 1) 'any excessive and duplicative expense of a second litigation; 2) the effort

---

[7] *See also Westinghouse Elec. Corp. v. United Elec. Radio & Mach. Workers*, 194 F.2d 770, 771 (3d Cir. 1952), *cert. denied*, 343 U.S. 966 (1952); *Ockert v. Union Barge Line Corp.*, 190 F.2d 303 (3d Cir. 1951).

and expense incurred by a defendant in preparing for trial; 3) the extent to which the pending litigation has progressed; and 4) the claimant's diligence in moving to dismiss.'" *See Reach*, 2004 WL 253487, at *1 (quoting *Spring City*, 1999 WL 1212201, at *1).

35.    After assessing the discovery evidence produced by the Committee's advisors, Members and Magten, the Debtor has determined that it is not in the best interest of the Debtor's estate to pursue the NorthWestern Adversary Proceeding.

36.    Because the Debtor seeks approval to dismiss the Adversary Proceeding with prejudice, the Defendants cannot be prejudiced in any way by costs as well as further litigation of the claims and causes of action asserted in the NorthWestern Adversary Proceeding as the Debtor, upon review of the evidence before it, has concluded that dismissal with prejudice is appropriate so as to fully and finally adjudicate the claims and causes set forth in the NorthWestern Adversary Proceeding.

37.    As a result, the Defendants cannot possibly be prejudiced and the relief requested is wholly appropriate.

## B.  Granting Leave to Amend the NorthWestern Answer Will Not Prejudice Magten or Law Debenture in Any Way

38.    While dismissing the NorthWestern Adversary Proceeding with prejudice is of importance to both the Debtor and the Defendants, so as to eliminate additional expense and finally adjudicate the claims set forth therein, the Debtor is cognizant of the need to amend the NorthWestern Answer in the Magten Adversary Proceeding to be consistent with the request for dismissal with prejudice and to preserve the Debtor's claim objection to the QUIPS Litigation Claim.

39.    Federal Rule of Civil Procedure 15(a), made applicable to adversary proceedings by Bankruptcy Rule 7015(a), mandates that leave to amend a pleading "shall

be [granted] freely when justice so requires," and that "motions to amend pleadings

should be liberally granted." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (citing

*Adams v. Gould Inc.*, 739 F.2d 858, 867-68 (3d Cir. 1984)).

40.    Further, the Supreme Court has stated:

> In the absence of any apparent or declared reason - - such
> as undue delay, bad faith or dilatory motive on the part of
> the movant, repeated failure to cure deficiencies by
> amendments previously allowed, undue prejudice to the
> opposing party by virtue of allowance of the amendment,
> futility of the amendment, etc. - - the leave sought should
> ... be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

41.    In addition, the Third Circuit "has often held that, absent undue or

substantial prejudice, an amendment should be allowed under Rule 15(a) unless 'denial

[can] be grounded in bad faith or dilatory motive, *truly undue or unexplained delay*,

repeated failure to cure deficiency by amendments previously allowed or futility of

amendment.'" *Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173 (3d Cir. 1994)

(quoting *Bechtel v. Robinson*, 886 F.2d 644, 652-53 (3d Cir. 1989) (emphasis in original).

42.    The burden is placed firmly on the party opposing the amendment to prove

that it will be unfairly prejudiced.   This is a "heavier burden than merely claiming

prejudice, [the party opposing the amendment] must show that it was unfairly

disadvantaged or deprived of the opportunity to present facts or evidence which it would

have offered had the [movant's] amendments been timely." *Heyl & Patterson Int'l Inc.*

*v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981);

*Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000).

43.    The Debtor is seeking leave to amend the NorthWestern Answer in order

to withdraw the counterclaims, other than its Objection to the QUIPS Litigation Claim,

asserted therein that are identical to the claims that the Debtor seeks to have dismissed in the NorthWestern Adversary Proceeding.

44.    The Debtor's proposed First Amended Answer, Affirmative Defenses and Withdrawal of Counterclaims to First Amended Complaint does not contain any additional answers, affirmative defenses or counterclaims beyond those alleged in the NorthWestern Answer, thus, neither Magten nor Law Debenture will be prejudiced or burdened if leave is granted.[8]

45.    The Debtor's request for leave is not grounded in bad faith or dilatory motive, and the proposed amendments to the NorthWestern Answer will not result in undue or unexplained delay to either Magten or Law Debenture.

46.    Magten and Law Debenture will not be disadvantaged, prejudiced or burdened if leave is granted to the Debtor to amend the NorthWestern Answer.

## REQUEST FOR RELIEF

47.    Based on the foregoing, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto, (i) allowing the Debtor to voluntarily dismiss the NorthWestern Adversary Proceeding, <u>with prejudice</u>, pursuant to Bankruptcy Rule 7041(a)(2) and Fed. R. Civ. P. 41(a)(2), with each party to bear its own fees and costs, (ii) permitting the Debtor to amend the NorthWestern Answer in the Magten Adversary Proceeding to delete the counterclaims asserted therein, while preserving the Debtor's Objection to the QUIPS Litigation Claim therein,[9] and (iii)

---

[8] A copy of the Debtor's proposed First Amended Answer, Affirmative Defenses and Withdrawal of Counterclaims to First Amended Complaint is attached hereto as <u>Exhibit B</u>. In addition, a copy of the NorthWestern Answer is attached hereto as <u>Exhibit C</u>. A blackline copy of the proposed amended answer comparing it to the NorthWestern Answer is attached hereto as <u>Exhibit D</u>.

[9] *See* NorthWestern Answer, ¶ 42.

preserving the Debtor's right to amend or modify the Objection in the NorthWestern Answer.[10]

## NOTICE

48.    Notice of this Motion has been provided to: (i) the Trustee, (ii) counsel for the Plan Committee, (iii) counsel for Law Debenture, (iv) counsel for Embry, and (v) counsel for Magten.   In light of the nature of the relief requested herein, the Debtor submits that no other or further notice of the Motion is required.

## NO PRIOR REQUEST

49.    No prior request for the relief sought herein has been made to this or any other Court.

[CONCLUDED ON NEXT PAGE]

---

[10] *See* Complaint ¶ 55, wherein the Debtor expressly reserved the right to amend, modify or supplement the Complaint and Objection and to object further to the Magten Claim on any and all additional factual or legal grounds.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting the relief requested herein, substantially in the form attached hereto, or in such other form that the Court may deem appropriate based on the foregoing.

Dated: February 24, 2005

NORTHWESTERN
CORPORATION

By its attorneys,

GREENBERG TRAURIG, LLP

By: _____

Scott D. Cousins (No. 3079)
William E. Chipman, Jr. (No. 3818)
Dennis A. Meloro (No. 4435)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801
(302) 661-7000 (telephone)

- and -

Jesse H. Austin, III, Esquire
Karol K. Denniston, Esquire
PAUL, HASTINGS, JANOFSKY
& WALKER LLP
600 Peachtree Street, N.E., 24th Floor
Atlanta, GA 30308
(404) 815-2400 (telephone)

***CO-COUNSEL FOR REORGANIZED
DEBTOR***

- 15 -

# **EXHIBIT A**

See Attached

# 842

Form B10 (Official Form 10) (12/03)

## United States Bankruptcy Court for the District of Delaware

**PROOF OF CLAIM**

| Name of Debtor | Case Number |
|---|---|
| NorthWestern Corporation | 03-12872 (CGC) |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
Magten Asset Management Corp.

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where notices should be sent:
Magten Asset Management Corp.      Fried, Frank, Harris, Shriver & Jacobson LLP
410 Park Avenue                    One New York Plaza
New York, NY 10022      - and -    New York, New York 10004
Tel: (212) 813-0900                Tel: (212) 859-8000
Attn: Talton Embry                 Attn: Brad Eric Scheler, Esq.
                                   Gary Kaplan, Esq.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor.

Check here ☐ replaces ☐ amends a previously filed claim, dated: _____
if this claim

**1. Basis for Claim:**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other _____ See attached Addendum

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last four digits of SS #: _____
Unpaid compensations for services performed
from _____ to _____
(date)                  (date)

**2. Date Debt Was Incurred:**
See attached Addendum

**3. If court judgment, date obtained:** _____

**4. Total Amount of Claim at Time Case Filed:** $ _See attached Addendum_ _____ _____ _____ _See attached Addendum_
(unsecured)          (secured)          (priority)          (Total)
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other
Value of Collateral: $_____
Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Nonpriority Claims** $ _See attached Addendum_
☒ Check this box: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $_____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,650)* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier -- 11 U.S.C. § 507(a)(3)
☐ Contributions to an employee benefit plan -- 11 U.S.C. § 507(a)(4)
☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use -- 11 U.S.C. § 507(a)(6)
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child -- 11 U.S.C. § 507(a)(7)
☐ Taxes or penalties owed to governmental units -- 11 U.S.C. § 507(a)(8)
☐ Other -- Specify applicable paragraph of 11 U.S.C. § 507(a) (___)
* Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

RECEIVED

JAN 14 2004

KURTZMAN CARSON

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
|---|---|
| January 13, 2004 | Magten Asset Management Corp.<br><br>By: _____<br>Talton Embry<br>Chairman |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



03128720401140000000000172

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------------x
                                                  :
In re:                                            :        Chapter 11
                                                  :
Northwestern Corporation,                         :
                                                  :        Case No. 03-12872 (CGC)
                                 Debtor.          :
                                                  :
                                                  :
-------------------------------------------------------------------x
```

ADDENDUM TO PROOF OF
CLAIM OF MAGTEN ASSET MANAGEMENT CORP.

Talton Embry, Chairman of Magten Asset Management Corp. ("Magten"), whose business address and mailing address is 410 Park Avenue, New York, NY 10022, says:

      1.      I, Talton Embry, am the Chairman of Magten. I am authorized to execute this proof of claim on behalf of Magten.

      2.      Magten holds in excess of 33% of the Series A 8.45% Cumulative Quarterly Income Preferred Securities ("Preferred Securities") issued by Montana Power Capital I ("Montana Capital"). Montana Capital is a business trust, which exists for the sole purpose of issuing the common securities and the Preferred Securities (together the "Trust Securities") and investing the proceeds in the Junior Subordinated Interest Debentures 8.45% Series due 2036 ("Junior Debentures"), that were issued by The Montana Power Company ("Montana Power"). Montana Power owns all the common securities of Montana Capital, which represents 3% of the aggregate liquidation amount of the Trust Securities and is also the owner of all of the beneficial interests represented by the Trust Securities. In addition, Montana Power guaranteed payment of the Preferred Securities.

      3.      In a series of transactions, detailed in sections 4 to 6 below, Montana Power was merged into the above captioned debtor and debtor in possession ("NWC") and NWC

assumed Montana Power's obligations under the Junior Debentures and the guarantee of the Preferred Securities.

4.    On September 29, 2000, Montana Power entered into a Unit Purchase Agreement with NWC, whereby NWC agreed to purchase The Montana Power, LLC ("Montana Power, LLC"), which would hold the assets, liabilities and other commitments related to Montana Power's electric utility businesses.

5.    On February 13, 2002, Montana Power merged into Montana Power, LLC, with Montana Power, LLC as the surviving entity. On February 15, 2002, Montana Power, LLC was acquired by NWC for $602 million in cash and the assumption of $488 million of debt. Montana Power, LLC remained a subsidiary of NWC and on March 19, 2002, Montana Power, LLC was renamed NorthWestern Energy, LLC ("NorthWestern Energy").

6.    On November 15, 2002, NorthWestern Energy transferred (the "Transfer") its utility assets and operations to NWC, which, in turn, assumed certain of the liabilities and guarantees of NorthWestern Energy pursuant to that certain Asset and Stock Transfer Agreement by and between NorthWestern Energy (formerly known as Montana Power, LLC) and NWC (the "Transfer Agreement"). NorthWestern Energy was subsequently renamed Clark Fork and Blackfoot LLC ("Clark Fork") on November 20, 2002. In August 2002, in connection with the Transfer, NWC assumed joint and several liability with NorthWestern Energy (now Clark Fork) for the debt originally issued by Montana Power, thereby making certain NorthWestern Energy creditors also creditors of NWC. Following the Transfer, NWC operated the former Montana Power business as part of the NorthWestern Energy Division of NWC. The Transfer resulted in the outstanding NorthWestern Energy debt (most of which originated with Montana Power) being treated *pari passu* with the like-kind (but more substantial amount of) NWC's debt.

7.    On September 14, 2003, NWC filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code.

- 2 -

8.      Under Montana law, MCA §§ 31-2-326 - 31-2-342, a transfer may be avoided if, among other things, the action is brought within two years after the transfer was made, and the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor.  Alternatively, a transfer may be avoided if the debtor received less than reasonably equivalent value and either (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond its ability to pay as the debts became due.

9.      Pursuant to MCA § 31-2-333(2), in determining actual intent to hinder, delay, or defraud any creditor, consideration may be given, among other factors, to whether: the transfer was to an insider; before the transfer was made, the debtor had been sued; the transfer was of substantially all the debtor's assets; and the value of the consideration received by the debtor was reasonably equivalent to the value of the assets transferred.

10.     When these factors are considered in the context of the Transfer, it appears that the Transfer was made with actual intent to hinder, delay, or defraud the Preferred Securities' holders.  First, the transferee, NWC, is the parent and in control of NorthWestern Energy, and thus qualifies as "insider" under Montana law.  Second, before the transfer was made, NorthWestern Energy had several suits pending against it and incurred a $67 million obligation on account of the Junior Debentures.  Third, the transfer was of substantially all NorthWestern Energy's assets.  Finally, in accordance with to the Transfer Agreement, in exchange for the transfer of substantially all of NorthWestern Energy's assets to NWC, NWC assumed the liabilities of NorthWestern Energy.  The assets that NWC received were the assets of Montana Power, which was a viable, profitable utility business.  Since the value of those assets is substantially higher than the relatively small amount of liabilities assumed, NorthWestern Energy did not receive reasonably equivalent value for the Transfer.  Thus, the

- 3 -

Transfer was made with actual intent to hinder, delay, or defraud the Preferred Securities' holders.

11.     Additionally, NorthWestern Energy did not receive reasonably equivalent value for the Transfer, and NorthWestern Energy either engaged in a transaction for which its remaining assets were unreasonably small in relation to the transaction, or intended to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay as they became due. Clark Fork, the remaining entity, was left only with the Milltown Dam and corresponding environmental liabilities as a result of the Transfer, despite the fact that it was still liable (on a joint and several basis with NWC) for the Montana Power obligations. The assets that remained in Clark Fork after the Transfer were insufficient to pay the debts owed by Clark Fork or continue the operation of the Milltown Dam.

12.     Magten holds a claim against NWC, as the recipient of fraudulent transfer under Montana law, for the damages associated with the fraudulent transfer described above.

13.     Therefore, Magten holds a claim against NWC for the face amount of the Preferred Securities held by Magten.

14.     Because all of the documents supporting Magten's claim are in NWC's possession and are voluminous, they have not been attached hereto.

15.     No judgment has been rendered on this claim.

16.     No part of the claim asserted herein has been paid.

17.     This claim is not subject to any setoff or counterclaim.

18.     Magten does not waive any right to any security held by or for it or any right to claim specific assets or any right or rights of action that Magten has or may have against NWC or any other person or persons.

19.     Nothing in this claim should limit the right of Magten to assert other remedies, including seeking the imposition of a constructive trust, and Magten expressly reserves such rights.

- 4 -

20.    Magten expressly reserves the right to amend and/or supplement this proof of claim in any respect.

21.    In filing this proof of claim, Magten does not submit itself to the jurisdiction of this Court for any purpose other than with respect to such claim.

## ALL NOTICES AND DISTRIBUTIONS WITH RESPECT TO THIS CLAIM SHOULD BE SENT TO:

> Fried, Frank, Harris, Shriver & Jacobson LLP
> Attorneys for Magten Asset Management Corp.
> One New York Plaza
> New York, New York 10004
> Attn:  Brad Eric Scheler, Esq.
>          Gary Kaplan, Esq.

With a copy to:

> Magten Asset Management Corp.
> 410 Park Avenue
> New York, NY 10022
> Tel: (212) 813-0900
> Attn: Talton Embry

---

**PENALTY FOR PRESENTING A FRAUDULENT CLAIM:**
Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3623.

454735

- 5 -

## **EXHIBIT B**

See Attached

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NORTHWESTERN CORPORATION,<br><br>    Reorganized Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 11<br><br>Case No. 03-12872 (JLP) |
| MAGTEN ASSET MANAGEMENT<br>CORPORATION, and LAW DEBENTURE<br>TRUST COMPANY OF NEW YORK,<br><br>    Plaintiff,<br><br>    v.<br><br>NORTHWESTERN CORPORATION,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Adv. No. 04-53324 (JLP) |

## AMENDED ANSWER, AFFIRMATIVE DEFENSES AND WITHDRAWAL OF COUNTERCLAIMS TO FIRST AMENDED COMPLAINT, OTHER THAN OBJECTION TO THE QUIPS LITIGATION CLAIM (AS DEFINED HEREIN)

NorthWestern Corporation, a Delaware corporation ("**NorthWestern**" or the "**Defendant**"), by and through its undersigned counsel, hereby files its Amended Answer and Affirmative Defenses to the First Amended Complaint to Avoid the Transfer of Assets of Clark Fork and Blackfoot LLC (F/K/A NorthWestern Energy LLC) to NorthWestern Corporation (the "**Complaint**"), filed by Magten Asset Management Corporation ("**Magten**") and Law Debenture Trust Company of New York ("**Law Debenture**," and together with Magten, the "**Plaintiffs**"), pursuant to Federal Rule of Bankruptcy Procedure 7012 and in conformity with Form 20 of the Federal Rules of Civil Procedure, and hereby states in paragraph order in response to the specific allegations of Plaintiffs' Complaint as follows:

1.      NorthWestern specifically denies that it received, in fraudulent conveyance, substantially all of the assets of its wholly owned subsidiary, Clark Fork and Blackfoot LLC (f/k/a NorthWestern Energy LLC) (**"Clark Fork"**). NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 1, and therefore denies same and demands strict proof thereof.

2.      NorthWestern admits that at the time of the transfer of the assets of Clark Fork to NorthWestern, NorthWestern was the sole member of Clark Fork. NorthWestern admits that certain assets and liabilities of Clark Fork were transferred to the Debtor as part of the "going flat" transaction. NorthWestern admits that it did file a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 14, 2003. NorthWestern denies the remaining allegations contained in paragraph 2.

3.      The allegations set forth in Paragraph 3 constitute legal conclusions to which no answer is required.

4.      The allegations set forth in Paragraph 4 constitute legal conclusions to which no answer is required.

5.      On November 3, 2004, NorthWestern filed a motion to dismiss the First Cause of Action in the Complaint (the **"PUHCA Count"**) and certain requested relief contained therein (the "**Requested Relief**") on the basis that these issues were overruled by this Court in the context of NorthWestern's Confirmation Hearing and are now barred by the doctrines of *res judicata* and law of the case [Docket No. 28 and 29] (the "**Motion to Dismiss**"). The allegations set forth in Paragraph 5 constitute facts in support of the precluded PUCHA Count and are not relevant to a determination of this adversary proceeding. By answering this Complaint, NorthWestern does not intend to waive any of the relief requested in the Motion to Dismiss, and

expressly reserves all of its rights pertaining thereto. Without waiving any of its rights in the Motion to Dismiss, NorthWestern admits that on February 12, 2002 it filed, in good faith, an exemption application (the "**Application**") under the Public Utility Holding Company Act of 1935, 15 U.S.C. §79a, *et seq.* ("**PUHCA**"). NorthWestern denies the remaining allegations contained in paragraph 5 and refers to the Application for its terms.

      6.    Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies that before the Second Supplemental Indenture or Third Supplemental Indenture were issued the Debtor's predominant business was focused on its profitable utility operations and was, therefore, ineligible for a PUCHA exception. NorthWestern denies the remaining allegations contained in paragraph 6, and refers to the Debtor's public statements, public filings, including SEC filings, and documents related to the transaction for their contents.

      7.    Without waiving any of its rights in the Motion to Dismiss, the allegations set forth in Paragraph 7 constitute legal conclusions to which no answer is required.

      8.    Without waiving any of its rights in the Motion to Dismiss, NorthWestern states that to the extent that paragraph 8 of the Complaint states a legal conclusion, no responsive pleading is required and to the extent that paragraph 8 of the Complaint states a factual conclusion, Defendant is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 8, and therefore denies same and demands strict proof thereof. By way of further response, it is specifically denied that the Application was not filed in good faith.

      9.    Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies the allegations in paragraph 9 as the Complaint speaks for itself.

## JURISDICTION AND VENUE

10.    The allegations set forth in Paragraph 10 constitute legal conclusions to which no answer is required.

11.    The allegations set forth in Paragraph 11 constitute legal conclusions to which no answer is required.

12.    The allegations set forth in Paragraph 12 constitute legal conclusions to which no answer is required.

## THE PARTIES

13.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 13, and therefore denies same and demands strict proof thereof.

14.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 14, and therefore denies same and demands strict proof thereof.

15.    NorthWestern denies the allegations in paragraph 15 as the Trust and the Indenture governing the Junior Debentures speak for themselves.

16.    NorthWestern denies the allegations in paragraph 16 as the Indenture governing the Junior Debentures speaks for itself.

17.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 17, and therefore denies same and demands strict proof thereof.

18.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 18, and therefore denies same and demands strict proof thereof.

19.    Admitted.

20.    Admitted.

21.    Admitted, however, the Debtor's Plan of Reorganization became effective on November 1, 2004, and therefore, NorthWestern is no longer a debtor in possession.

22.    Admitted.

## BACKGROUND

### The Montana Power Company

23.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 23, and therefore denies same and demands strict proof thereof.

24.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 24, and therefore denies same and demands strict proof thereof.

25.    NorthWestern denies the allegations in paragraph 25 as the Indenture speaks for itself.

26.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 26, and therefore denies same and refers to the Trust Agreement for its contents.

27.    NorthWestern denies the allegations in paragraph 27 as the Trust Agreement speaks for itself.

28.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 28, and therefore denies same and refers to the Trust Agreement for its terms.

29.     NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 29, and therefore denies same and refers to the Trust Agreement for its terms.

30.     NorthWestern denies the allegations in paragraph 30 as the Indenture governing the Junior Debentures speaks for itself.

31.     NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 31, and therefore denies same and refers to the Guarantee Agreement for its terms.

32.     NorthWestern denies the allegations in paragraph 32 as the Indenture, the Trust Agreement, the Expense Agreement and the Guarantee Agreement speak for themselves.

**The Sale of the Montana Power Company's Utility Assets & the PUHCA Application**

33.     NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 33, and therefore denies same and demands strict proof thereof.

34.     NorthWestern admits that Montana Power entered into the Unit Purchase Agreement with NorthWestern.  NorthWestern denies the remaining allegations contained in paragraph 34, and refers to the documents related to the transaction for their contents.

35.     It is admitted that on February 13, 2002, not February 1, 2002, MPC merged all of its assets into MPLLC.

36.     Without waiving any of its rights in the Motion to Dismiss, NorthWestern admits the allegations contained in paragraph 36.

37.     NorthWestern admits that on February 15, 2002, NorthWestern purchased all unit interests of MPLLC.  NorthWestern denies the remaining allegations contained in paragraph 37, and refers to the documents related to the transaction for their contents.

38.     NorthWestern admits that MPLLC became a wholly owned subsidiary of NorthWestern.  NorthWestern denies the remaining allegations contained in paragraph 38, and refers to the documents related to the transaction for their contents.

39.     Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies the allegations in paragraph 39 as the Application speaks for itself.

40.     Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies the allegations in paragraph 40 as the Application, the Debtor's public statements, public filings, including SEC filings, and documents related to the transaction speak for themselves.

41.     Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies the allegations in paragraph 41 as the Application, the Debtor's public statements, public filings, including SEC filings, and documents related to the transaction speak for themselves.

42.     Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies the allegations in paragraph 42 as the NorthWestern Corporation 8-K filed February 7, 2002 speaks for itself.

43.     Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies the allegations in paragraph 43 as the Debtor's 2001 Annual Shareholder's Report and the Application speak for themselves.

44.     NorthWestern admits that MPLLC entered into the First Supplemental Indenture on February 13, 2002.  NorthWestern denies the remaining allegations contained in paragraph 44, and refers to the First Supplemental Indenture for its terms.

45.    NorthWestern denies the allegations contained in paragraph 45 in that the letter agreement and Guarantee Agreement speak for themselves.

46.    NorthWestern denies the allegations contained in paragraph 46, and refers to the documents related to the transaction for their contents.

47.    Admitted.

48.    NorthWestern admits that it entered into the Second Supplemental Indenture on August 13, 2002. NorthWestern denies the remaining allegations contained in paragraph 48, and refers to the Second Supplemental Indenture for its terms.

49.    NorthWestern admits that NorthWestern, NorthWestern Energy and The Bank of New York, as Trustee, executed the Amendment to Guaranty Agreement dated as of August 13, 2002. NorthWestern denies the remaining allegations contained in paragraph 49, and refers to the Amendment to Guaranty Agreement for its terms.

50.    NorthWestern denies the allegations contained in paragraph 50, and refers to the letter agreement for its terms.

51.    The allegations set forth in Paragraph 51 constitute legal conclusions to which no answer is required.

**The Transfer**

52.    NorthWestern admits that on or about November 15, 2002, NorthWestern Energy and NorthWestern entered into an Asset and Stock Transfer Agreement dated as of November 15, 2002, pursuant to which certain property and assets of NorthWestern Energy were transferred to NorthWestern, and NorthWestern assumed substantially all of the liabilities of NorthWestern Energy. The Debtor further admits that NorthWestern Energy retained the Milltown Dam that operates under a license that expires in 2007. NorthWestern denies the

remaining allegations contained in paragraph 52, and refers to the documents related to the transaction for their contents.

53.    The allegations set forth in the last sentence of Paragraph 53 constitute legal conclusions to which no answer is required.    NorthWestern denies the remaining allegations contained in paragraph 53.

54.    NorthWestern admits that it funds certain costs and expenses associated with the operation of the Milltown Dam.    The remaining allegations set forth in the Paragraph 54 constitute legal conclusions to which no answer is required.

55.    NorthWestern admits that on or about November 15, 2002, as part of the transfer of assets, NorthWestern and The Bank of New York, as Trustee, entered into the Third Supplemental Indenture.    NorthWestern denies the remaining allegations contained in paragraph 55, and refers to the Third Supplemental Indenture for its terms.

56.    NorthWestern denies the allegations contained in paragraph 56, and refers to the Guarantee Assumption Agreement for its terms.

57.    NorthWestern denies the allegations contained in paragraph 57, and refers to the Trust Assumption Agreement for its terms.

58.    Admitted.

59.    Admitted.

## The Debtor's Fraudulent Financial Statements and Subsequent chapter 11 Filing

60.    NorthWestern admits that on or about April 16, 2003, the Debtor reported its financial results for the fiscal year ended ("FYE") 2002 and that these filings included a restatement of the previously unaudited quarterly results for the first three quarters of FYE 2002.

NorthWestern denies the remaining allegations contained in paragraph 60, and refers to the reported financial results for its terms.

        61.    Admitted.

        62.    Admitted.

        63.    NorthWestern admits that on the petition date it filed the "Clark Fork Motion" and disclosed the existence of the "Support Agreement". NorthWestern denies the remaining allegations contained in paragraph 63, and refers to the Clark Fork Motion for its terms.

        64.    NorthWestern admits that it received approval to pay up to $370,000 per month on behalf of Clark Fork in connection with the Support Agreement. NorthWestern denies the remaining allegations contained in paragraph 64, and refers to the Clark Fork Motion and Support Agreement for their terms.

**The Debtor's Attempt to Release Clark Fork**

        65.    NorthWestern denies the allegations contained in paragraph 65 and refers to the Indenture for its terms.

        66.    NorthWestern denies the allegations contained in paragraph 66 and refers to the Third Supplemental Indenture for its terms.

        67.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 67 and therefore denies same and demands strict proof thereof.

        68.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 68 and therefore denies same and refers to the Third Supplemental Indenture for its terms.

69.     The allegations set forth in Paragraph 69 constitute legal conclusions to which no answer is required.

## FIRST CAUSE OF ACTION

### (A declaration that all Documents Executed in Furtherance of the Transfer are Void)

70.     Debtor repeats and incorporates herein each of the answers set forth in paragraphs 1 through 69 above.

71.     Without waiving any of its rights in the Motion to Dismiss, the allegations set forth in Paragraph 71 constitute legal conclusions to which no answer is required.

72.     Without waiving any of its rights in the Motion to Dismiss, the allegations set forth in Paragraph 72 constitute legal conclusions to which no answer is required.

73.     Without waiving any of its rights in the Motion to Dismiss, it is specifically denied that the Application was not filed in good faith.  In addition, the allegations set forth in Paragraph 73 constitute legal conclusions to which no answer is required.

74.     Without waiving any of its rights in the Motion to Dismiss, it is specifically denied that the Application was not filed in good faith.  In addition, the allegations set forth in Paragraph 74 constitute legal conclusions to which no answer is required.

75.     Without waiving any of its rights in the Motion to Dismiss, it is specifically denied that the Application was not filed in good faith.  In addition, the allegations set forth in Paragraph 75 constitute legal conclusions to which no answer is required.

## SECOND CAUSE OF ACTION

### (The Transfer was Fraudulent Under Montana Law Because of an Actual Intent to Hinder, Delay, or Defraud Creditors)

76.     Debtor repeats and incorporates herein each of the answers set forth in paragraphs 1 through 75 above.

77.    The allegations set forth in Paragraph 77 constitute legal conclusions to which no answer is required.

78.    The allegations set forth in Paragraph 78 constitute legal conclusions to which no answer is required.

79.    NorthWestern admits that the QUIPS holders are subordinated creditors of the Debtor.  NorthWestern specifically denies that the QUIPS holders are creditors of Clark Fork by operation of the Guarantee Agreement and the Indenture.

80.    NorthWestern admits that it is the parent of Clark Fork.  The remaining allegations set forth in Paragraph 80 constitute legal conclusions to which no answer is required.

81.    NorthWestern admits that the value of the assets transferred from Clark Fork to the Debtor were valued between $1.15 billion and $1.4 billion.  The remaining allegations set forth in Paragraph 81 are denied as the Debtor's public statements, public filings, including SEC filings, and documents related to the transaction speak for themselves.

82.    The allegations set forth in Paragraph 82 constitute legal conclusions to which no answer is required.

83.    The allegations set forth in Paragraph 83 constitute legal conclusions to which no answer is required.

84.    The allegations set forth in Paragraph 84 constitute legal conclusions to which no answer is required.

## THIRD CAUSE OF ACTION

### (The Transfer was Fraudulent as a Constructive Fraud Which Rendered Clark Fork Insolvent)

85-89.  On May 14, 2004, NorthWestern filed its Motion and Supporting Brief, to Dismiss the Complaint of Magten Asset Management Corporation and Law Debenture Trust

Company of New York for Failure to State a Claim Upon Which Relief Can Be Granted (the "**Motion**") [Docket No. 5]. On August 20, 2004, the Court issued its Under Advisement Decision re: Motion to Dismiss (the "**Opinion**") granting in part and denying in part the Motion. Pursuant to the Court's ruling at the November 3, 2004 omnibus hearing in NorthWestern's bankruptcy case, the allegations set forth in Paragraphs 85-89 were dismissed by this Court in the Opinion and therefore no answer is required.

## FOURTH CAUSE OF ACTION

### (The Transfer was Fraudulent as a Constructive Fraud Because it Rendered Clark Fork Undercapitalized)

90-94. On May 14, 2004, NorthWestern filed its Motion and Supporting Brief, to Dismiss the Complaint of Magten Asset Management Corporation and Law Debenture Trust Company of New York for Failure to State a Claim Upon Which Relief Can Be Granted (the "**Motion**") [Docket No. 5]. On August 20, 2004, the Court issued its Under Advisement Decision re: Motion to Dismiss (the "**Opinion**") granting in part and denying in part the Motion. Pursuant to the Court's ruling at the November 3, 2004 omnibus hearing in NorthWestern's bankruptcy case, the allegations set forth in Paragraphs 90-94 were dismissed by this Court in the Opinion and therefore no answer is required.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

95.    Debtor repeats and incorporates herein each of the answers set forth in paragraphs 1 through 94 above

96.    Admitted.

97.    The allegations set forth in Paragraph 97 constitute legal conclusions to which no answer is required.

98.    NorthWestern states that to the extent that paragraph 98 of the Complaint states legal conclusions, no responsive pleading is required and to the extent that paragraph 98 of the Complaint states factual conclusions, NorthWestern denies the allegations contained in paragraph 98 as the Debtor's public statements, public filings, including SEC filings, and documents related to the transaction speak for themselves.

99.    NorthWestern states that to the extent that paragraph 99 of the Complaint states legal conclusions, no responsive pleading is required and to the extent that paragraph 99 of the Complaint states factual conclusions, NorthWestern denies the allegations contained in paragraph 99 as the Debtor's public statements, public filings, including SEC filings, and documents related to the transaction speak for themselves.

100.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 100, and therefore denies same and demands strict proof thereof.

101.    NorthWestern admits that the Junior Debentures were subordinated obligations to the other debt owed by Montana Power and upon the assumption of liabilities by the Debtor, were junior to the Debtor's senior debt. The remainder of the allegations set forth in Paragraph 101 constitute legal conclusions to which no answer is required.

## AFFIRMATIVE DEFENSES

NorthWestern asserts the following affirmative defenses without assuming any burden of proof on issues where Plaintiffs bear such burdens:

## FIRST AFFIRMATIVE DEFENSE

The complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, by the applicable statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, under the doctrines of waiver, estoppel and laches.

### FOURTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, because the plaintiffs lack standing to assert some or all of the claims asserted in the complaint.

### FIFTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, because the plaintiffs do not have the legal authority to bring an action on behalf of a class of Clark Fork's creditors.

### SIXTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, because the plaintiffs are not or never were creditors of Clark Fork.

### SEVENTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, because the plaintiffs cannot prove reliance to the extent that the transaction at issue was publicly disclosed and/or completed before the securities that are the alleged basis for their claims were purchased.

### EIGHTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, by the doctrines of assumption of the risk and comparative negligence.

### NINTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, by the doctrine of unclean hands.

### TENTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, because the actions of the defendant were not the cause of the plaintiff's alleged losses.

### ELEVENTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, by the doctrines of avoidable consequences and mitigation of damages.

### TWELFTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, because the plaintiff's claimed injuries and resulting damages were not reasonably foreseeable by the defendant.

### THIRTEENTH AFFIRMATIVE DEFENSE

NorthWestern reserves the right to plead or withdraw such further affirmative defenses which are found to be applicable or inapplicable to the facts of this case.

WHEREFORE, Defendant respectfully requests (a) judgment dismissing the Complaint with prejudice or (b) upon trial of this matter, judgment denying all relief requested by the Plaintiffs and granting Defendant attorney's fees and costs in defending against Plaintiffs' Complaint and such other and further relief as this Court deems just and equitable.

### COUNTERCLAIMS

NorthWestern (hereinafter, the **"Debtor"** or the **"Counterclaim-Plaintiff"**), by and through its undersigned counsel, for (i) its counterclaims (**"Counterclaims"**) against

counterclaim Defendant Magten Asset Management Corporation (hereinafter, **"Magten"** or the

**"Counterclaim-Defendant"**), hereby alleges as follows:

## PARTIES

1.      Counterclaim-Plaintiff NorthWestern is a corporation organized under the

laws of Delaware, having its principal place of business located in Sioux Falls, South Dakota.

2.      NorthWestern is a publicly traded Delaware corporation which was

incorporated in 1923. NorthWestern and its direct and indirect non-NorthWestern subsidiaries

comprise one of the largest providers of electricity and natural gas in the upper Midwest and

Northwest regions of the United States, serving approximately 608,000 customers throughout

Montana, South Dakota and Nebraska.

3.      Counterclaim-Defendant Magten is a corporation organized under the laws

of Delaware, having its principal place of business located at 410 Park Avenue, 14th Floor, New

York, New York 10022.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue

of this Chapter 11 case and these Counterclaims are proper before this Court pursuant to 28

U.S.C. §§ 1408 and 1409.

## BACKGROUND

5.      On September 14, 2003 (the **"Petition Date"**), NorthWestern filed its

voluntary petition for relief under chapter 11 of The Bankruptcy Reform Act of 1978, as codified

in title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the **"Bankruptcy Code"**).

6.      No request has been made for the appointment of a trustee or examiner in this case. The Committee was appointed by the Office of the United States Trustee on September 30, 2003.

7.      By Order dated October 10, 2003, this Court established January 15, 2004 at 5:00 p.m. (Pacific Standard Time) (the **"Bar Date"**) as the deadline for creditors to file proofs of claim for each claim they assert against the Debtor that arose before the Petition Date. Notice of the Bar Date was mailed to all known creditors of the Debtor and published in numerous regional and national newspapers.

8.      Magten filed a Proof of Claim, designated claim number 842 by the Debtor's claims agent (the **"Magten Claim"**). The Magten Claim asserts unliquidated claims against the Debtor's estate for: (i) damages resulting from the alleged fraudulent transfer of the utility assets of NorthWestern Energy, LLC to the Debtor on November 15, 2002 (the **"QUIPS Litigation Claim"**); and (ii) the face amount of the QUIPS held by Magten as of the Petition Date.

## [COUNT III]

## <u>OBJECTION TO THE MAGTEN CLAIM</u>

1.      The Debtor repeats and realleges the answers set forth in paragraphs 1 through 101 above, and First through Thirteenth Affirmative Defenses above, as though fully set forth herein.

2.      The Magten Claim asserts unliquidated claims against the Debtor's estate for: (i) the QUIPS Litigation Claim; and (ii) the face amount of the QUIPS held by Magten as of the Petition Date.

3.      As set forth in the answer and affirmative defenses herein, the QUIPS Litigation Claim should be disallowed in its entirety.

## **RESERVATION OF RIGHTS**

4.    The Debtor reserves the right to amend, modify or supplement its Counterclaims and to object further to the Magten Claim on any and all additional factual or legal grounds, including if such claim is not reduced or disallowed as requested herein or if additional information regarding the disallowance or reduction of such claim is discovered upon further review thereof or through discovery pursuant to the applicable provisions of the Bankruptcy Rules.

WHEREFORE, Plaintiff respectfully demands judgment against Magten as follows:

A.    For actual damages in an amount to be determined at trial;

B.    Sustaining the Debtor's objection to the Magten Claim; and

[CONCLUDED ON NEXT PAGE]

C.    Granting such other and further relief as the Court deems just and

appropriate.


Dated: February __, 2005

NORTHWESTERN CORPORATION

By its attorneys,

GREENBERG TRAURIG, LLP

By: _____

Scott D. Cousins (No. 3079)
Victoria W. Counihan (No. 3488)
William E. Chipman, Jr. (No. 3818)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801
(302) 661-7000 (telephone)

- and -

Jesse H. Austin, III, Esquire
Karol K. Denniston, Esquire
PAUL, HASTINGS, JANOFSKY
& WALKER LLP
600 Peachtree Street, N.E., 24th Floor
Atlanta, GA 30308
(404) 815-2400 (telephone)

*CO-COUNSEL FOR REORGANIZED
DEBTOR/DEFENDANT*

**<u>EXHIBIT C</u>**

See Attached

NY55/434737.3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| NORTHWESTERN CORPORATION, | : Case No. 03-12872 (JLP) |
| | : |
| Reorganized Debtor. | : |
| | : |
| | : |
| | : |
| MAGTEN ASSET MANAGEMENT | : |
| CORPORATION and LAW DEBENTURE TRUST | : |
| COMPANY OF NEW YORK, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : Adv. No. 04-53324 (JLP) |
| | : |
| NORTHWESTERN CORPORATION, | : |
| | : |
| Defendant. | : |

### ANSWER, AFFIRMATIVE
### DEFENSES AND COUNTERCLAIMS TO FIRST AMENDED COMPLAINT

NorthWestern Corporation, a Delaware corporation (**"NorthWestern"** or the **"Defendant"**), by and through its undersigned counsel, hereby files its Answer, Affirmative Defenses and Counterclaims to the First Amended Complaint to Avoid the Transfer of Assets of Clark Fork and Blackfoot LLC (F/K/A NorthWestern Energy LLC) to NorthWestern Corporation (the **"Complaint"**), filed by Magten Asset Management Corporation (**"Magten"**) and Law Debenture Trust Company of New York (**"Law Debenture,"** and together with Magten, the **"Plaintiffs"**), pursuant to Federal Rule of Bankruptcy Procedure 7012 and in conformity with Form 20 of the Federal Rules of Civil Procedure, and hereby state in paragraph order in response to the specific allegations of Plaintiffs' Complaint as follows:

1.    NorthWestern specifically denies that it received, in fraudulent conveyance, substantially all of the assets of its wholly owned subsidiary, Clark Fork. NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 1, and therefore denies same and demands strict proof thereof.

2.    NorthWestern admits that at the time of the transfer of the assets of Clark Fork to NorthWestern, NorthWestern was the sole member of Clark Fork. NorthWestern admits that certain assets and liabilities of Clark Fork were transferred to the Debtor as part of the "going flat" transaction. NorthWestern admits that it did file a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 14, 2003. NorthWestern denies the remaining allegations contained in paragraph 2.

3.    The allegations set forth in Paragraph 3 constitute legal conclusions to which no answer is required.

4.    The allegations set forth in Paragraph 4 constitute legal conclusions to which no answer is required.

5.    On November 3, 2004, NorthWestern filed a motion to dismiss the First Cause of Action in the Complaint (the **"PUHCA Count"**) and certain requested relief contained therein (the **"Requested Relief"**) on the basis that these issues were overruled by this Court in the context of NorthWestern's Confirmation Hearing and are now barred by the doctrines of *res judicata* and law of the case [Docket No. 28 and 29] (the **"Motion to Dismiss"**). The allegations set forth in Paragraph 5 constitute facts in support of the precluded PUCHA Count and are not relevant to a determination of this adversary proceeding. By answering this Complaint, NorthWestern does not intend to waive any of the relief requested in the Motion to Dismiss, and

2

expressly reserves all of its rights pertaining thereto. Without waiving any of its rights in the Motion to Dismiss, NorthWestern admits that on February 12, 2002 it filed, in good faith, an exemption application (the **"Application"**) under the Public Utility Holding Company Act of 1935, 15 U.S.C. §79a, *et seq.* (**"PUHCA"**). NorthWestern denies the remaining allegations contained in paragraph 5 and refers to the Application for its terms.

6.    Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies that before the Second Supplemental Indenture or Third Supplemental Indenture were issued the Debtor's predominant business was focused on its profitable utility operations and was, therefore, ineligible for a PUCHA exception. NorthWestern denies the remaining allegations contained in paragraph 6, and refers to the Debtor's public statements, public filings, including SEC filings, and documents related to the transaction for their contents.

7.    Without waiving any of its rights in the Motion to Dismiss, the allegations set forth in Paragraph 7 constitute legal conclusions to which no answer is required.

8.    Without waiving any of its rights in the Motion to Dismiss, NorthWestern states that to the extent that paragraph 8 of the Complaint states a legal conclusion, no responsive pleading is required and to the extent that paragraph 8 of the Complaint states a factual conclusion, Defendant is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 8, and therefore denies same and demands strict proof thereof. By way of further response, it is specifically denied that the Application was not filed in good faith.

9.    Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies the allegations in paragraph 9 as the Complaint speaks for itself.

3

## JURISDICTION AND VENUE

10.    The allegations set forth in Paragraph 10 constitute legal conclusions to which no answer is required.

11.    The allegations set forth in Paragraph 11 constitute legal conclusions to which no answer is required.

12.    The allegations set forth in Paragraph 12 constitute legal conclusions to which no answer is required.

## THE PARTIES

13.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 13, and therefore denies same and demands strict proof thereof.

14.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 14, and therefore denies same and demands strict proof thereof.

15.    NorthWestern denies the allegations in paragraph 15 as the Trust and the Indenture governing the Junior Debentures speak for themselves.

16.    NorthWestern denies the allegations in paragraph 16 as the Indenture governing the Junior Debentures speaks for itself.

17.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 17, and therefore denies same and demands strict proof thereof.

18.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 18, and therefore denies same and demands strict proof thereof.

4

19.    Admitted.

20.    Admitted.

21.    Admitted, however, the Debtor's Plan of Reorganization became effective on November 1, 2004, and therefore, NorthWestern is no longer a debtor in possession.

22.    Admitted.

## BACKGROUND

### The Montana Power Company

23.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 23, and therefore denies same and demands strict proof thereof.

24.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 24, and therefore denies same and demands strict proof thereof.

25.    NorthWestern denies the allegations in paragraph 25 as the Indenture speaks for itself.

26.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 26, and therefore denies same and refers to the Trust Agreement for its contents.

27.    NorthWestern denies the allegations in paragraph 27 as the Trust Agreement speaks for itself.

28.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 28, and therefore denies same and refers to the Trust Agreement for its terms.

5

29.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 29, and therefore denies same and refers to the Trust Agreement for its terms.

30.    NorthWestern denies the allegations in paragraph 30 as the Indenture governing the Junior Debentures speaks for itself.

31.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 31, and therefore denies same and refers to the Guarantee Agreement for its terms.

32.    NorthWestern denies the allegations in paragraph 32 as the Indenture, the Trust Agreement, the Expense Agreement and the Guarantee Agreement speak for themselves.

**The Sale of the Montana Power Company's Utility Assets & the PUHCA Application**

33.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 33, and therefore denies same and demands strict proof thereof.

34.    NorthWestern admits that Montana Power entered into the Unit Purchase Agreement with NorthWestern. NorthWestern denies the remaining allegations contained in paragraph 34, and refers to the documents related to the transaction for their contents.

35.    It is admitted that on February 13, 2002, not February 1, 2002, MPC merged all of its assets into MPLLC.

36.    Without waiving any of its rights in the Motion to Dismiss, NorthWestern admits the allegations contained in paragraph 36.

37.    NorthWestern admits that on February 15, 2002, NorthWestern purchased all unit interests of MPLLC. NorthWestern denies the remaining allegations contained in paragraph 37, and refers to the documents related to the transaction for their contents.

38.    NorthWestern admits that MPLLC became a wholly owned subsidiary of NorthWestern. NorthWestern denies the remaining allegations contained in paragraph 38, and refers to the documents related to the transaction for their contents.

39.    Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies the allegations in paragraph 39 as the Application speaks for itself.

40.    Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies the allegations in paragraph 40 as the Application, the Debtor's public statements, public filings, including SEC filings, and documents related to the transaction speak for themselves.

41.    Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies the allegations in paragraph 41 as the Application, the Debtor's public statements, public filings, including SEC filings, and documents related to the transaction speak for themselves.

42.    Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies the allegations in paragraph 42 as the NorthWestern Corporation 8-K filed February 7, 2002 speaks for itself.

43.    Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies the allegations in paragraph 43 as the Debtor's 2001 Annual Shareholder's Report and the Application speak for themselves.

44.    NorthWestern admits that MPLLC entered into the First Supplemental Indenture on February 13, 2002. NorthWestern denies the remaining allegations contained in paragraph 44, and refers to the First Supplemental Indenture for its terms.

7

45.    NorthWestern denies the allegations contained in paragraph 45 in that the letter agreement and Guarantee Agreement speak for themselves.

46.    NorthWestern denies the allegations contained in paragraph 46, and refers to the documents related to the transaction for their contents.

47.    Admitted.

48.    NorthWestern admits that it entered into the Second Supplemental Indenture on August 13, 2002. NorthWestern denies the remaining allegations contained in paragraph 48, and refers to the Second Supplemental Indenture for its terms.

49.    NorthWestern admits that NorthWestern, NorthWestern Energy and The Bank of New York, as Trustee, executed the Amendment to Guaranty Agreement dated as of August 13, 2002. NorthWestern denies the remaining allegations contained in paragraph 49, and refers to the Amendment to Guaranty Agreement for its terms.

50.    NorthWestern denies the allegations contained in paragraph 50, and refers to the letter agreement for its terms.

51.    The allegations set forth in Paragraph 51 constitute legal conclusions to which no answer is required.

**The Transfer**

52.    NorthWestern admits that on or about November 15, 2002, NorthWestern Energy and NorthWestern entered into an Asset and Stock Transfer Agreement dated as of November 15, 2002, pursuant to which certain property and assets of NorthWestern Energy were transferred to NorthWestern, and NorthWestern assumed substantially all of the liabilities of NorthWestern Energy. The Debtor further admits that NorthWestern Energy retained the Milltown Dam that operates under a license that expires in 2007. NorthWestern denies the

8

remaining allegations contained in paragraph 52, and refers to the documents related to the transaction for their contents.

53.    The allegations set forth in the last sentence of Paragraph 53 constitute legal conclusions to which no answer is required.    NorthWestern denies the remaining allegations contained in paragraph 53.

54.    NorthWestern admits that it funds certain costs and expenses associated with the operation of the Milltown Dam. The remaining allegations set forth in the Paragraph 54 constitute legal conclusions to which no answer is required.

55.    NorthWestern admits that on or about November 15, 2002, as part of the transfer of assets, NorthWestern and The Bank of New York, as Trustee, entered into the Third Supplemental Indenture. NorthWestern denies the remaining allegations contained in paragraph 55, and refers to the Third Supplemental Indenture for its terms.

56.    NorthWestern denies the allegations contained in paragraph 56, and refers to the Guarantee Assumption Agreement for its terms.

57.    NorthWestern denies the allegations contained in paragraph 57, and refers to the Trust Assumption Agreement for its terms.

58.    Admitted.

59.    Admitted.

## The Debtor's Fraudulent Financial Statements and Subsequent chapter 11 Filing

60.    NorthWestern admits that on or about April 16, 2003, the Debtor reported its financial results for the fiscal year ended ("**FYE**") 2002 and that these filings included a restatement of the previously unaudited quarterly results for the first three quarters of FYE 2002.

9

NorthWestern denies the remaining allegations contained in paragraph 60, and refers to the reported financial results for its terms.

        61.     Admitted.

        62.     Admitted.

        63.     NorthWestern admits that on the petition date it filed the "Clark Fork Motion" and disclosed the existence of the "Support Agreement". NorthWestern denies the remaining allegations contained in paragraph 63, and refers to the Clark Fork Motion for its terms.

        64.     NorthWestern admits that it received approval to pay up to $370,000 per month on behalf of Clark Fork in connection with the Support Agreement. NorthWestern denies the remaining allegations contained in paragraph 64, and refers to the Clark Fork Motion and Support Agreement for their terms.

**The Debtor's Attempt to Release Clark Fork**

        65.     NorthWestern denies the allegations contained in paragraph 65 and refers to the Indenture for its terms.

        66.     NorthWestern denies the allegations contained in paragraph 66 and refers to the Third Supplemental Indenture for its terms.

        67.     NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 67 and therefore denies same and demands strict proof thereof.

        68.     NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 68 and therefore denies same and refers to the Third Supplemental Indenture for its terms.

10

69.     The allegations set forth in Paragraph 69 constitute legal conclusions to which no answer is required.

## FIRST CAUSE OF ACTION

### (A declaration that all Documents Executed in Furtherance of the Transfer are Void)

70.     Debtor repeats and incorporates herein each of the answers set forth in paragraphs 1 through 69 above.

71.     Without waiving any of its rights in the Motion to Dismiss, the allegations set forth in Paragraph 71 constitute legal conclusions to which no answer is required.

72.     Without waiving any of its rights in the Motion to Dismiss, the allegations set forth in Paragraph 72 constitute legal conclusions to which no answer is required.

73.     Without waiving any of its rights in the Motion to Dismiss, it is specifically denied that the Application was not filed in good faith.  In addition, the allegations set forth in Paragraph 73 constitute legal conclusions to which no answer is required.

74.     Without waiving any of its rights in the Motion to Dismiss, it is specifically denied that the Application was not filed in good faith.  In addition, the allegations set forth in Paragraph 74 constitute legal conclusions to which no answer is required.

75.     Without waiving any of its rights in the Motion to Dismiss, it is specifically denied that the Application was not filed in good faith.  In addition, the allegations set forth in Paragraph 75 constitute legal conclusions to which no answer is required.

## SECOND CAUSE OF ACTION

### (The Transfer was Fraudulent Under Montana Law Because of an Actual Intent to Hinder, Delay, or Defraud Creditors)

76.     Debtor repeats and incorporates herein each of the answers set forth in paragraphs 1 through 75 above.

11

77.    The allegations set forth in Paragraph 77 constitute legal conclusions to which no answer is required.

78.    The allegations set forth in Paragraph 78 constitute legal conclusions to which no answer is required.

79.    NorthWestern admits that the QUIPS holders are subordinated creditors of the Debtor.  NorthWestern specifically denies that the QUIPS holders are creditors of Clark Fork by operation of the Guarantee Agreement and the Indenture.

80.    NorthWestern admits that it is the parent of Clark Fork.  The remaining allegations set forth in Paragraph 80 constitute legal conclusions to which no answer is required.

81.    NorthWestern admits that the value of the assets transferred from Clark Fork to the Debtor were valued between $1.15 billion and $1.4 billion.  The remaining allegations set forth in Paragraph 81 are denied as the Debtor's public statements, public filings, including SEC filings, and documents related to the transaction speak for themselves.

82.    The allegations set forth in Paragraph 82 constitute legal conclusions to which no answer is required.

83.    The allegations set forth in Paragraph 83 constitute legal conclusions to which no answer is required.

84.    The allegations set forth in Paragraph 84 constitute legal conclusions to which no answer is required.

## THIRD CAUSE OF ACTION

### (The Transfer was Fraudulent as a Constructive Fraud Which Rendered Clark Fork Insolvent)

85-89. On May 14, 2004, Northwestern filed its Motion and Supporting Brief, to Dismiss the Complaint of Magten Asset Management Corporation and Law Debenture Trust

Company of New York for Failure to State a Claim Upon Which Relief Can Be Granted (the **"Motion"**) [Docket No. 5]. On August 20, 2004, the Court issued its Under Advisement Decision re: Motion to Dismiss (the **"Opinion"**) granting in part and denying in part the Motion. Pursuant to the Court's ruling at the November 3, 2004 omnibus hearing in NorthWestern's bankruptcy case, the allegations set forth in Paragraphs 85-89 were dismissed by this Court in the Opinion and therefore no answer is required.

### FOURTH CAUSE OF ACTION

#### (The Transfer was Fraudulent as a Constructive Fraud Because it Rendered Clark Fork Undercapitalized)

90-94. On May 14, 2004, Northwestern filed its Motion and Supporting Brief, to Dismiss the Complaint of Magten Asset Management Corporation and Law Debenture Trust Company of New York for Failure to State a Claim Upon Which Relief Can Be Granted (the **"Motion"**) [Docket No. 5]. On August 20, 2004, the Court issued its Under Advisement Decision re: Motion to Dismiss (the **"Opinion"**) granting in part and denying in part the Motion. Pursuant to the Court's ruling at the November 3, 2004 omnibus hearing in NorthWestern's bankruptcy case, the allegations set forth in Paragraphs 90-94 were dismissed by this Court in the Opinion and therefore no answer is required.

### FIFTH CAUSE OF ACTION

#### (Unjust Enrichment)

95.    Debtor repeats and incorporates herein each of the answers set forth in paragraphs 1 through 94 above

96.    Admitted.

97.    The allegations set forth in Paragraph 97 constitute legal conclusions to which no answer is required.

13

98.    NorthWestern states that to the extent that paragraph 98 of the Complaint states legal conclusions, no responsive pleading is required and to the extent that paragraph 98 of the Complaint states factual conclusions, NorthWestern denies the allegations contained in paragraph 98 as the Debtor's public statements, public filings, including SEC filings, and documents related to the transaction speak for themselves.

99.    NorthWestern states that to the extent that paragraph 99 of the Complaint states legal conclusions, no responsive pleading is required and to the extent that paragraph 99 of the Complaint states factual conclusions, NorthWestern denies the allegations contained in paragraph 99 as the Debtor's public statements, public filings, including SEC filings, and documents related to the transaction speak for themselves.

100.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 100, and therefore denies same and demands strict proof thereof.

101.    NorthWestern admits that the Junior Debentures were subordinated obligations to the other debt owed by Montana Power and upon the assumption of liabilities by the Debtor, were junior to the Debtor's senior debt. The remainder of the allegations set forth in Paragraph 101 constitute legal conclusions to which no answer is required.

## AFFIRMATIVE DEFENSES

NorthWestern asserts the following affirmative defenses without assuming any burden of proof on issues where Plaintiffs bear such burdens:

## FIRST AFFIRMATIVE DEFENSE

The complaint fails to state a claim upon which relief can be granted.

14

## SECOND AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, by the applicable statute of limitations.

## THIRD AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, under the doctrines of waiver, estoppel and laches.

## FOURTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, because the plaintiffs lack standing to assert some or all of the claims asserted in the complaint.

## FIFTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, because the plaintiffs do not have the legal authority to bring an action on behalf of a class of Clark Fork's creditors.

## SIXTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, because the plaintiffs are not or never were creditors of Clark Fork.

## SEVENTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, because the plaintiffs cannot prove reliance to the extent that the transaction at issue was publicly disclosed and/or completed before the securities that are the alleged basis for their claims were purchased.

## EIGHTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, by the doctrines of assumption of the risk and comparative negligence.

15

### NINTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, by the doctrine of unclean hands.

### TENTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, because the actions of the defendant were not the cause of the plaintiff's alleged losses.

### ELEVENTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, by the doctrines of avoidable consequences and mitigation of damages.

### TWELFTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, because the plaintiff's claimed injuries and resulting damages were not reasonably foreseeable by the defendant.

### THIRTEENTH AFFIRMATIVE DEFENSE

NorthWestern reserves the right to plead or withdraw such further affirmative defenses which are found to be applicable or inapplicable to the facts of this case.

WHEREFORE, Defendant respectfully requests (a) judgment dismissing the Complaint with prejudice or (b) upon trial of this matter, judgment denying all relief requested by the Plaintiffs and granting Defendant attorney's fees and costs in defending against Plaintiffs' Complaint and such other and further relief as this Court deems just and equitable.

### COUNTERCLAIMS

NorthWestern (hereinafter, the **"Debtor"** or the **"Counterclaim-Plaintiff"**), by and through its undersigned counsel, for (i) its counterclaims (**"Counterclaims"**) against

16

counterclaim Defendant Magten Asset Management Corporation (hereinafter, **"Magten"** or the **"Counterclaim-Defendant"**), hereby alleges as follows:

## NATURE OF THE ACTION

1.      This is an action relating to the Counterclaim-Defendant's misappropriation and use of material, non-public, information in purchasing approximately 40% of the Debtor's Series A 8.45% Quarterly Income Preferred Securities (the **"QUIPS"**). As a member of the Official Committee of Unsecured Creditors (the **"Committee"**), the Defendant was vested with legal, contractual, and fiduciary duties not to misappropriate non-public information for its own self interest. The Counterclaim-Defendant willfully breached each of these duties in connection with its purchase of more than 100,000 QUIPS after becoming a member of the Committee and receiving material, non-public information concerning the Debtor.

2.      By these Counterclaims, the Debtor seeks damages and equitable relief relating to the Counterclaim-Defendant's improper trading activity. In particular, the Debtor seeks damages (including disgorgement of any ill-gotten gains) to compensate itself and its creditors for the Counterclaim-Defendant's breach of fiduciary duty, breach of contract, and violation of an express Court order prohibiting the very trading activity in which the Counterclaim-Defendant engaged. Based upon the same inequitable and self interested conduct, the Debtor also objects to and seeks subordination of Magten's claim in this Chapter 11 case under Sections 502(b) and 510(c) of the Bankruptcy Code, respectively.

## PARTIES

3.      Counterclaim-Plaintiff NorthWestern is a corporation organized under the laws of Delaware, having its principal place of business located in Sioux Falls, South Dakota.

4.      NorthWestern is a publicly traded Delaware corporation which was incorporated in 1923. NorthWestern and its direct and indirect non-NorthWestern subsidiaries

17

comprise one of the largest providers of electricity and natural gas in the upper Midwest and

Northwest regions of the United States, serving approximately 608,000 customers throughout

Montana, South Dakota and Nebraska.

       5.     Counterclaim-Defendant Magten is a corporation organized under the laws

of Delaware, having its principal place of business located at 410 Park Avenue, 14th Floor, New

York, New York 10022.

### JURISDICTION AND VENUE

       6.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue

of this Chapter 11 case and these Counterclaims are proper before this Court pursuant to 28

U.S.C. §§ 1408 and 1409.

### BACKGROUND

       7.     On September 14, 2003 (the **"Petition Date"**), NorthWestern filed its

voluntary petition for relief under chapter 11 of The Bankruptcy Reform Act of 1978, as codified

in title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the **"Bankruptcy Code"**).

       8.     No request has been made for the appointment of a trustee or examiner in

this case. The Committee was appointed by the Office of the United States Trustee on

September 30, 2003.

       9.     By Order dated October 10, 2003, this Court established January 15, 2004

at 5:00 p.m. (Pacific Standard Time) (the **"Bar Date"**) as the deadline for creditors to file proofs

of claim for each claim they assert against the Debtor that arose before the Petition Date. Notice

of the Bar Date was mailed to all known creditors of the Debtor and published in numerous

regional and national newspapers.

10.    Magten filed a Proof of Claim, designated claim number 842 by the Debtor's claims agent (the **"Magten Claim"**).  The Magten Claim asserts unliquidated claims against the Debtor's estate for:  (i) damages resulting from the alleged fraudulent transfer of the utility assets of NorthWestern Energy, LLC to the Debtor on November 15, 2002 (the **"Transfer"**); and (ii) the face amount of the QUIPS held by Magten as of the Petition Date.

11.    On or about November 6, 2003, this Court entered its Order Permitting Securities Trading Upon Establishment of Ethical Wall [Docket No. 257] (the **"Securities Trading Order"**).  The Securities Trading Order prohibits members of the Committee (present and future, each a **"Member"**) from trading in the securities of the Debtor and its affiliates, unless and until such Member establishes and implements an ethical wall (the **"Ethical Wall"**) in accordance with the terms and conditions of the Securities Trading Order, so as to prevent:

> (i) the Ethical Wall Entity's trading personnel from misusing any material non-public information obtained by such Ethical Wall Entity's designated representative(s) involved in Committee-related or reorganization-related activities (**"C/R Personnel"**); and
>
> (ii) C/R Personnel from receiving material non-public information regarding such Ethical Wall Entity's trading in the Securities in advance of such trades.  This Order does not preclude this Court from taking any action it deems appropriate in the event that an actual breach of fiduciary duty has occurred.

12.    Accordingly, to comply with the Securities Trading Order, Members of the Committee were required to establish an Ethical Wall before trading in the Securities.

13.    Upon request of Magten, by notice dated November 25, 2003, the Office of the United States Trustee for the District of Delaware (the **"U.S. Trustee"**) appointed Magten to the Committee.  Magten was represented on the committee by its 100% principal, Mr. Talton Embry (**"Embry"**).

19

14.     Upon information and belief, upon appointment to the Committee or shortly thereafter, Magten became aware of the Securities Trading Order.

15.     Upon information an belief, upon being appointed to the Committee, Magten obtained possession of the Debtor's and the Committee's material, non-public information.

16.     Once appointed to the Committee, Magten's fiduciary and other common law duties precluded it from trading in the securities of the Debtor and its affiliates, including without limitation, the QUIPS, except as provided in the Securities Trading Order.

17.     On December 18, 2003, Embry, as Chairman of and on behalf of Magten, executed a Confidentiality Agreement with Official Committee of Unsecured Creditors (the **"Confidentiality Agreement"**).  Under the Confidentiality Agreement, Magten agreed to maintain confidential all nonpublic and proprietary information provided by or to the Committee.

18.     By executing the Confidentiality Agreement, Embry as Chairman of and on behalf of Magten, acknowledged that he was aware, and he would advise Magten's representatives that the United States securities laws prohibit any person in receipt from an issuer of material, non-public information from purchasing or selling or offering to purchase or sell securities of the issuer or from communication of the information to any other person under circumstances in which it is reasonably foreseeable that the person would have been likely to purchase or sell securities.

19.     Magten's understanding of the Securities Trading Order and the Confidentiality Agreement was made clear when, on or about February 5, 2004, counsel for Magten requested the U.S. Trustee's approval on a motion exempting Magten from the Securities Trading Order (the **"Draft Motion"**).  The Draft Motion was never filed with this

20

Court and no order of this Court has been entered relieving Magten of its obligations under the Securities Trading Order.

20.    In the Draft Motion, Magten admitted its understanding that it was prohibited from trading in the Debtor's securities while a member of the Committee without establishing an Ethical Wall. In its draft motion, Magten asserted:

> Because of Magten's structure, it is impossible for Magten to comply with the precise terms of the Trading Order and trade through an Ethical Wall Entity without further clarification of the Trading Order. Thus, by this Motion, Magten seeks an order clarifying the Trading Order so as to make it clear that if Magten uses the services of an independent third-party broker (the "Broker") who does not receive any confidential information regarding the Debtor and that has autonomy in making buy/sell decisions in executing trades in the securities of the Debtor and its affiliates, Magten will receive the protections afforded by the Order.

21.    Thereafter, on April 16, 2004, Magten and Law Debenture filed the above captioned adversary proceeding to avoid the transfer of assets of Clark Fork and Blackfoot LLC (f/k/a NorthWestern Energy LLC) (**"Clark Fork"**) to the Debtor in November 2002 pursuant to what is generally referred to as the "going flat" transaction (the **"Magten Adversary Proceeding"**).

22.    The Magten Adversary Proceeding resulted in an inherent conflict between the Magten and the Committee. Accordingly, in a letter dated May 6, 2004, the Trustee removed Magten from the Committee stating the relief sought in the Magten Adversary Proceeding "is inconsistent with Magten's . . . fiduciary duty to the Committee's constituents, the general unsecured creditors of NorthWestern Corporation."

23.    After being expelled from the Committee, Magten was still bound by the terms of Confidentiality Agreement and the Securities Trading Order, to the extent Magten was

still in possession of material, non-public information it had obtained while serving as a Member of the Committee.

### MAGTEN'S PURCHASES OF THE DEBTOR'S QUIPS WHILE IN POSSESSION OF THE DEBTOR'S NON-PUBLIC INFORMATION

24.    Notwithstanding the Confidentiality Agreement in which Magten acknowledged that use of the Debtor's non-public information constituted a potential violation of the securities laws, and the Securities Trading Order, Embry caused Magten to purchase over 123,000 of the Debtor's QUIPS and sell 3,800 of the Debtor's QUIPS in a series of market transactions after joining the Committee. Upon information and belief, Magten was in possession of and relied upon the Debtor's and the Committee's non-public information when executing the securities transactions.

25.    Between November 25, 2003 and May 4, 2004—the dates within which Magten was a Committee member, Magten purchased 28,540 of the Debtor's QUIPS as follows:

| | |
|---|---|
| 12/01/03 | 4,300 |
| 12/01/03 | 1,000 |
| 12/01/03 | 500 |
| 12/01/03 | 1,000 |
| 12/01/03 | 1,100 |
| 12/01/03 | 1,400 |
| 12/01/03 | 1,800 |
| 12/01/03 | 3,500 |
| 12/01/03 | 1,000 |
| 12/03/03 | 2,440 |
| 12/03/03 | 1,000 |
| 12/03/03 | 1,000 |
| 12/05/03 | 7,500 |
| 01/21/04 | 1,000 |
| **Total** | 28,540 |

26.    Between November 25, 2003 and May 4, 2004—the dates within which Magten was a Committee member, Magten sold 3,800 of the Debtor's QUIPS as follows:

| | |
|---|---|
| 12/17/03 | 1,900 |

|        |       |
|--------|-------|
| 12/17/03 | 1,900 |
| **Total** | 3,800 |

27.    The Magten's purchases of QUIPS accelerated immediately after May 4, 2004, when Magten purchased through July 8, 2004 an additional 95,000 of the Debtor's QUIPS as follows:

|          |        |
|----------|--------|
| 05/14/04 | 1,000  |
| 05/14/04 | 1,000  |
| 05/18/04 | 1,500  |
| 05/18/04 | 1,500  |
| 05/19/04 | 500    |
| 05/19/04 | 500    |
| 05/20/04 | 1,250  |
| 05/20/04 | 1,300  |
| 05/20/04 | 2,000  |
| 05/20/04 | 4,450  |
| 05/28/04 | 1,200  |
| 06/01/04 | 1,000  |
| 06/03/04 | 5,000  |
| 06/07/04 | 800    |
| 06/08/04 | 10,500 |
| 06/09/04 | 1,500  |
| 06/15/04 | 11,600 |
| 06/16/04 | 4,000  |
| 06/17/04 | 8,700  |
| 06/18/04 | 14,000 |
| 06/21/04 | 4,000  |
| 06/23/04 | 2,000  |
| 06/29/04 | 6,800  |
| 07/02/04 | 600    |
| 07/06/04 | 3,500  |
| 07/08/04 | 4,800  |
| **Total** | 95,000 |

28.    Upon information and belief, Magten remained in possession of, and relied upon, the Debtor's and the Committee's non-public information with respect to some or all

23

of these QUIPS purchases. As a result of its purchases, Magten holds approximately 40% of outstanding QUIPS, and has filed a claim with regard to those QUIPS in this case.

29.     These Counterclaims seek subordination of Magten's claims, actual damages, equitable relief and object to Magten's Claim as follows.

## COUNT I

## BREACH OF FIDUCIARY DUTY

30.     Plaintiff repeats and realleges the allegations set forth in the Paragraphs 1 through 29 as though fully set forth herein.

31.     As members of the Committee, Magten was vested with a fiduciary duty to all unsecured creditors, among other things, to act with due care, not to act in furtherance of its self-interests to the potential detriment of other creditors, to maintain confidentiality, and to guide its actions so as to safeguard the rights of minority as well as majority creditors.

32.     In addition, as members of the Committee, Magten was obligated to comply with the Securities Trading Order. The Securities Trading Order prohibited trading by Committee members, such as Magten, while a member of the Committee and in possession of non-public information without first establishing an Ethical Wall.

33.     In addition, as members of the Committee, Magten was obligated to comply with the Confidentiality Agreement it signed, under which Magten confirmed its duty to keep confidential all non-public information obtained as a member of the Committee.

34.     Upon information and belief, after being appointed to the Committee, and after receiving material, non-public information from the Debtor and the Committee, Magten purchased over 100,000 shares of the Debtor's QUIPS.

35.     Magten's trades willfully violated its fiduciary duty to other creditors as a matter of law, under the Confidentiality Agreement, and under the Securities Trading Order.

24

36.    Magten's willful violation of its fiduciary duties caused the Debtor, the Committee, and the creditors damages in an amount to be determined.

## COUNT II

## EQUITABLE SUBORDINATION PURSUANT TO 11 U.S.C. § 510(c)

37.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 36 as though fully set forth herein.

38.    Magten willfully violated its fiduciary duties, willfully violated the Securities Trading Order, willfully violated the Confidentiality Agreement, and potentially violated the federal securities laws when it purchased over 100,000 shares of the Debtor's QUIPS in market trades after receipt of the Committee's and the Debtor's non-public information.

39.    Magten's conduct in misappropriating and using the Committee's and the Debtor's non-public information for its self interests constitutes inequitable conduct that caused injury to the Debtor, its creditors, and the Committee.  The maintenance and use of the non-public information also conferred upon Magten an unfair advantage over other creditors.

40.    Because of the actions described herein, the claims of Magten against the Debtor's estate should be equitably subordinated to the level of equity interests in the Debtor pursuant to section 510(c) of the Bankruptcy Code.

## COUNT III

## OBJECTION TO THE MAGTEN CLAIM

41.    Plaintiff repeats and realleges the allegations set forth in the paragraphs 1 through 40 above as though fully set forth herein.

25

42.     The Magten Claim asserts unliquidated claims against the Debtor's estate for: (i) damages resulting from the alleged fraudulent transfer of the utility assets of NorthWestern Energy, LLC to the Debtor on November 15, 2002 (the **"Transfer"**); and (ii) the face amount of the QUIPS held by Magten as of the Petition Date.

43.     Magten violated its fiduciary duties, violated the Securities Trading Order, violated the Confidentiality Agreement, and potentially violated the federal securities laws when they purchased over 100,000 shares of the Debtor's QUIPS in market trades after receipt of the Committee's and the Debtor's non-public information.

44.     Magten's conduct in misappropriating and using the Committee's and the Debtor's non-public information for its self interest constitutes inequitable conduct that caused injury to the Debtor, its creditors, and the Committee. The maintenance and use of the non-public information also conferred upon Magten an unfair advantage over other creditors.

45.     Because of the actions described herein, the Magten Claim should be limited to the amount that Magten paid for the QUIPS.

## COUNT IV

## DAMAGES FOR VIOLATION OF THE SECURITIES TRADING ORDER

46.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 45 as though fully set forth herein.

47.     As a member of the Committee, Magten was obligated to comply with the Securities Trading Order. The Securities Trading Order prohibited trading by Committee members, such as Magten, while a member of the Committee and in possession of non-public information without first establishing an Ethical Wall.

26

48.     Upon information and belief, while a Member of the Committee, Magten was furnished material, non-public information of the Committee and the Debtor. Magten has retained possession, custody, and control over the non-public information.

49.     Upon information and belief, after receipt of the non-public information, and while in possession, custody, and control of such information, Magten purchased shares of the Debtor's QUIPS.

50.     Upon information and belief, Magten misappropriated and used the non-public information in determining to purchase some or all of the Debtor's securities.

51.     Upon information and belief, Magten, as a member of the Committee, did not establish an Ethical Wall prior to trading in the Debtor's securities.

52.     Magten's trades in the Debtor's QUIPS while a member of the Committee without first establishing an Ethical Wall violated the Securities Trading Order.

53.     Magten's violation of the Securities Trading Order caused the Debtor, the Committee, and the creditors damages in an amount to be determined. The Debtor is also entitled to an award of punitive damages.

## RESERVATION OF RIGHTS

54.     The Debtor reserves the right to amend, modify or supplement these Counterclaims and to object further to the Magten Claim on any and all additional factual or legal grounds, including if such claim is not reduced or disallowed as requested herein or if additional information regarding the disallowance or reduction of such claim is discovered upon further review thereof or through discovery pursuant to the applicable provisions of the Bankruptcy Rules.

WHEREFORE, Plaintiff respectfully demands judgment against Magten as follows:

A.    For actual damages in an amount to be determined at trial;

B.    Sustaining the Debtor's objection to the Magten Claim;

C.    Compelling Magten to account for any and all profits obtained by reason of the misconduct alleged herein and the imposition of a constructive trust on such ill-gotten profits;

D.    Subordinating Magten's claims;

E     For Magten's willful conduct, punitive damages in an amount to be determined at trial;

F.    For attorney's fees and costs; and

F.    Granting such other and further relief as the Court deems just and appropriate.

Dated: November 19, 2004          Respectfully submitted,
       Wilmington, Delaware

                                  GREENBERG TRAURIG, LLP

                                  Scott D. Cousins (No. 3079)
                                  William E. Chipman, Jr. (No. 3818)
                                  Paul D. Brown (No. 3903)
                                  The Brandywine Building
                                  1000 West Street, Suite 1540
                                  Wilmington, DE 19801
                                  Telephone: (302) 661-7000

                                       - and -

                                  Adam D. Cole
                                  GREENBERG TRAURIG, LLP
                                  885 Third Avenue
                                  New York, New York 10022
                                  Telephone: (212) 848-1000

                                  Counsel for NorthWestern Corporation

28

**EXHIBIT D**

See Attached

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
|  | Case No. 03-12872 (JLP) |
| NORTHWESTERN CORPORATION, |  |
| Reorganized Debtor. |  |
| MAGTEN ASSET MANAGEMENT CORPORATION, and LAW DEBENTURE TRUST COMPANY OF NEW YORK, | Adv. No. 04-53324 (JLP) |
| ~~Plaintiffs,~~ |  |
| <u>Plaintiff,</u> |  |
| v. |  |
| NORTHWESTERN CORPORATION, |  |
| Defendant. |  |

**<u>AMENDED</u> ANSWER, AFFIRMATIVE DEFENSES AND <u>WITHDRAWAL OF</u> COUNTERCLAIMS TO FIRST AMENDED COMPLAINT<u>, OTHER THAN OBJECTION TO THE QUIPS LITIGATION CLAIM (AS DEFINED HEREIN)</u>**

NorthWestern Corporation, a Delaware corporation ("**NorthWestern**" or the "**Defendant**"), by and through its undersigned counsel, hereby files its Amended Answer, and Affirmative Defenses and Counterclaims to the First Amended Complaint to Avoid the Transfer of Assets of Clark Fork and Blackfoot LLC (F/K/A NorthWestern Energy LLC) to NorthWestern Corporation (the "**Complaint**"), filed by Magten Asset Management Corporation ("**Magten**") and Law Debenture Trust Company of New York ("**Law Debenture**," and together with Magten, the "**Plaintiffs**"), pursuant to Federal Rule of Bankruptcy Procedure 7012 and in conformity with Form 20 of the Federal Rules of Civil Procedure, and hereby statestates in paragraph order in response to the specific allegations of Plaintiffs' Complaint as follows:

1.    1.    NorthWestern specifically denies that it received, in fraudulent conveyance, substantially all of the assets of its wholly owned subsidiary, Clark Fork and Blackfoot LLC (f/k/a NorthWestern Energy LLC) ("**Clark Fork**").  NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 1, and therefore denies same and demands strict proof thereof.

2.    2.    NorthWestern admits that at the time of the transfer of the assets of Clark Fork to NorthWestern, NorthWestern was the sole member of Clark Fork.  NorthWestern admits that certain assets and liabilities of Clark Fork were transferred to the Debtor as part of the "going flat" transaction.  NorthWestern admits that it did file a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 14, 2003.  NorthWestern denies the remaining allegations contained in paragraph 2.

3.    3.    The allegations set forth in Paragraph 3 constitute legal conclusions to which no answer is required.

4.    4.    The allegations set forth in Paragraph 4 constitute legal conclusions to which no answer is required.

5.    5.    On November 3, 2004, NorthWestern filed a motion to dismiss the First Cause of Action in the Complaint (the "**PUHCA Count**") and certain requested relief contained therein (the "**Requested Relief**") on the basis that these issues were overruled by this Court in the context of NorthWestern's Confirmation Hearing and are now barred by the doctrines of *res judicata* and law of the case [Docket No. 28 and 29] (the "**Motion to Dismiss**"). The allegations set forth in Paragraph 5 constitute facts in support of the precluded PUCHA Count and are not relevant to a determination of this adversary proceeding. By answering this Complaint, NorthWestern does not intend to waive any of the relief requested in the Motion to Dismiss, and expressly reserves all of its rights pertaining thereto. Without waiving any of its rights in the Motion to Dismiss, NorthWestern admits that on February 12, 2002 it filed, in good faith, an exemption application (the "**Application**") under the Public Utility Holding Company Act of 1935, 15 U.S.C. §79a, *et seq.* ("**PUHCA**"). NorthWestern denies the remaining allegations contained in paragraph 5 and refers to the Application for its terms.

6.    6.    Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies that before the Second Supplemental Indenture or Third Supplemental Indenture were issued the Debtor's predominant business was focused on its profitable utility operations and was, therefore, ineligible for a PUCHA exception. NorthWestern denies the remaining allegations contained in paragraph 6, and refers to the Debtor's public statements, public filings, including SEC filings, and documents related to the transaction for their contents.

7.    7.    Without waiving any of its rights in the Motion to Dismiss, the allegations set forth in Paragraph 7 constitute legal conclusions to which no answer is required.

8.    8.    Without waiving any of its rights in the Motion to Dismiss, NorthWestern states that to the extent that paragraph 8 of the Complaint states a legal conclusion, no responsive pleading is required and to the extent that paragraph 8 of the Complaint states a factual conclusion, Defendant is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 8, and therefore denies same and demands strict proof thereof.  By way of further response, it is specifically denied that the Application was not filed in good faith.

9.    9.    Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies the allegations in paragraph 9 as the Complaint speaks for itself.

## JURISDICTION AND VENUE

10.    10.    The allegations set forth in Paragraph 10 constitute legal conclusions to which no answer is required.

11.    11.    The allegations set forth in Paragraph 11 constitute legal conclusions to which no answer is required.

12.    12.    The allegations set forth in Paragraph 12 constitute legal conclusions to which no answer is required.

## THE PARTIES

13.    13.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 13, and therefore denies same and demands strict proof thereof.

14.    14.    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 14, and therefore denies same and demands strict proof thereof.

15.    ~~15.~~    NorthWestern denies the allegations in paragraph 15 as the Trust and the Indenture governing the Junior Debentures speak for themselves.

16.    ~~16.~~    NorthWestern denies the allegations in paragraph 16 as the Indenture governing the Junior Debentures speaks for itself.

17.    ~~17.~~    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 17, and therefore denies same and demands strict proof thereof.

18.    ~~18.~~    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 18, and therefore denies same and demands strict proof thereof.

19.    ~~19.~~    Admitted.

20.    ~~20.~~    Admitted.

21.    ~~21.~~    Admitted, however, the Debtor's Plan of Reorganization became effective on November 1, 2004, and therefore, NorthWestern is no longer a debtor in possession.

22.    ~~22.~~    Admitted.

## BACKGROUND

### The Montana Power Company

23.    ~~23.~~    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 23, and therefore denies same and demands strict proof thereof.

24.    ~~24.~~    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 24, and therefore denies same and demands strict proof thereof.

25.    ~~25.~~    NorthWestern denies the allegations in paragraph 25 as the Indenture speaks for itself.

26.    ~~26.~~    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 26, and therefore denies same and refers to the Trust Agreement for its contents.

27.    ~~27.~~    NorthWestern denies the allegations in paragraph 27 as the Trust Agreement speaks for itself.

28.    ~~28.~~    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 28, and therefore denies same and refers to the Trust Agreement for its terms.

29.    ~~29.~~    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 29, and therefore denies same and refers to the Trust Agreement for its terms.

30.    ~~30.~~    NorthWestern denies the allegations in paragraph 30 as the Indenture governing the Junior Debentures speaks for itself.

31.    ~~31.~~    NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 31, and therefore denies same and refers to the Guarantee Agreement for its terms.

32.    ~~32.~~    NorthWestern denies the allegations in paragraph 32 as the Indenture, the Trust Agreement, the Expense Agreement and the Guarantee Agreement speak for themselves.

**The Sale of the Montana Power Company's Utility Assets & the PUHCA Application**

33.    ~~33.~~ NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 33, and therefore denies same and demands strict proof thereof.

34.    ~~34.~~ NorthWestern admits that Montana Power entered into the Unit Purchase Agreement with NorthWestern. NorthWestern denies the remaining allegations contained in paragraph 34, and refers to the documents related to the transaction for their contents.

35.    ~~35.~~ It is admitted that on February 13, 2002, not February 1, 2002, MPC merged all of its assets into MPLLC.

36.    ~~36.~~ Without waiving any of its rights in the Motion to Dismiss, NorthWestern admits the allegations contained in paragraph 36.

37.    ~~37.~~ NorthWestern admits that on February 15, 2002, NorthWestern purchased all unit interests of MPLLC. NorthWestern denies the remaining allegations contained in paragraph 37, and refers to the documents related to the transaction for their contents.

38.    ~~38.~~ NorthWestern admits that MPLLC became a wholly owned subsidiary of NorthWestern. NorthWestern denies the remaining allegations contained in paragraph 38, and refers to the documents related to the transaction for their contents.

39.    ~~39.~~ Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies the allegations in paragraph 39 as the Application speaks for itself.

40.    ~~40.~~ Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies the allegations in paragraph 40 as the Application, the Debtor's public statements, public filings, including SEC filings, and documents related to the transaction speak for themselves.

41.    41.    Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies the allegations in paragraph 41 as the Application, the Debtor's public statements, public filings, including SEC filings, and documents related to the transaction speak for themselves.

42.    42.    Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies the allegations in paragraph 42 as the NorthWestern Corporation 8-K filed February 7, 2002 speaks for itself.

43.    43.    Without waiving any of its rights in the Motion to Dismiss, NorthWestern denies the allegations in paragraph 43 as the Debtor's 2001 Annual Shareholder's Report and the Application speak for themselves.

44.    44.    NorthWestern admits that MPLLC entered into the First Supplemental Indenture on February 13, 2002.  NorthWestern denies the remaining allegations contained in paragraph 44, and refers to the First Supplemental Indenture for its terms.

45.    45.    NorthWestern denies the allegations contained in paragraph 45 in that the letter agreement and Guarantee Agreement speak for themselves.

46.    46.    NorthWestern denies the allegations contained in paragraph 46, and refers to the documents related to the transaction for their contents.

47.    47.    Admitted.

48.    48.    NorthWestern admits that it entered into the Second Supplemental Indenture on August 13, 2002.  NorthWestern denies the remaining allegations contained in paragraph 48, and refers to the Second Supplemental Indenture for its terms.

49.    49.    NorthWestern admits that NorthWestern, NorthWestern Energy and The Bank of New York, as Trustee, executed the Amendment to Guaranty Agreement dated as of

August 13, 2002. NorthWestern denies the remaining allegations contained in paragraph 49, and refers to the Amendment to Guaranty Agreement for its terms.

50.    50.    NorthWestern denies the allegations contained in paragraph 50, and refers to the letter agreement for its terms.

51.    51.    The allegations set forth in Paragraph 51 constitute legal conclusions to which no answer is required.

**The Transfer**

52.    52.    NorthWestern admits that on or about November 15, 2002, NorthWestern Energy and NorthWestern entered into an Asset and Stock Transfer Agreement dated as of November 15, 2002, pursuant to which certain property and assets of NorthWestern Energy were transferred to NorthWestern, and NorthWestern assumed substantially all of the liabilities of NorthWestern Energy.  The Debtor further admits that NorthWestern Energy retained the Milltown Dam that operates under a license that expires in 2007.  NorthWestern denies the remaining allegations contained in paragraph 52, and refers to the documents related to the transaction for their contents.

53.    53.    The allegations set forth in the last sentence of Paragraph 53 constitute legal conclusions to which no answer is required.  NorthWestern denies the remaining allegations contained in paragraph 53.

54.    54.    NorthWestern admits that it funds certain costs and expenses associated with the operation of the Milltown Dam.  The remaining allegations set forth in the Paragraph 54 constitute legal conclusions to which no answer is required.

55.    55.    NorthWestern admits that on or about November 15, 2002, as part of the transfer of assets, NorthWestern and The Bank of New York, as Trustee, entered into the

Third Supplemental Indenture. NorthWestern denies the remaining allegations contained in paragraph 55, and refers to the Third Supplemental Indenture for its terms.

56.    56. NorthWestern denies the allegations contained in paragraph 56, and refers to the Guarantee Assumption Agreement for its terms.

57.    57. NorthWestern denies the allegations contained in paragraph 57, and refers to the Trust Assumption Agreement for its terms.

58.    58. Admitted.

59.    59. Admitted.

**The Debtor's Fraudulent Financial Statements and Subsequent chapter 11 Filing**

60.    60. NorthWestern admits that on or about April 16, 2003, the Debtor reported its financial results for the fiscal year ended ("**FYE**") 2002 and that these filings included a restatement of the previously unaudited quarterly results for the first three quarters of FYE 2002. NorthWestern denies the remaining allegations contained in paragraph 60, and refers to the reported financial results for its terms.

61.    61. Admitted.

62.    62. Admitted.

63.    63. NorthWestern admits that on the petition date it filed the "Clark Fork Motion" and disclosed the existence of the "Support Agreement". NorthWestern denies the remaining allegations contained in paragraph 63, and refers to the Clark Fork Motion for its terms.

64.    64. NorthWestern admits that it received approval to pay up to $370,000 per month on behalf of Clark Fork in connection with the Support Agreement. NorthWestern

denies the remaining allegations contained in paragraph 64, and refers to the Clark Fork Motion and Support Agreement for their terms.

**The Debtor's Attempt to Release Clark Fork**

65.    65.  NorthWestern denies the allegations contained in paragraph 65 and refers to the Indenture for its terms.

66.    66.  NorthWestern denies the allegations contained in paragraph 66 and refers to the Third Supplemental Indenture for its terms.

67.    67.  NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 67 and therefore denies same and demands strict proof thereof.

68.    68.  NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 68 and therefore denies same and refers to the Third Supplemental Indenture for its terms.

69.    69.  The allegations set forth in Paragraph 69 constitute legal conclusions to which no answer is required.

## FIRST CAUSE OF ACTION

### (A declaration that all Documents Executed in Furtherance of the Transfer are Void)

70.    70.  Debtor repeats and incorporates herein each of the answers set forth in paragraphs 1 through 69 above.

71.    71.  Without waiving any of its rights in the Motion to Dismiss, the allegations set forth in Paragraph 71 constitute legal conclusions to which no answer is required.

72.    72.  Without waiving any of its rights in the Motion to Dismiss, the allegations set forth in Paragraph 72 constitute legal conclusions to which no answer is required.

73.    ~~73.~~    Without waiving any of its rights in the Motion to Dismiss, it is specifically denied that the Application was not filed in good faith.  In addition, the allegations set forth in Paragraph 73 constitute legal conclusions to which no answer is required.

74.    ~~74.~~    Without waiving any of its rights in the Motion to Dismiss, it is specifically denied that the Application was not filed in good faith.  In addition, the allegations set forth in Paragraph 74 constitute legal conclusions to which no answer is required.

75.    ~~75.~~    Without waiving any of its rights in the Motion to Dismiss, it is specifically denied that the Application was not filed in good faith.  In addition, the allegations set forth in Paragraph 75 constitute legal conclusions to which no answer is required.

## SECOND CAUSE OF ACTION

### (The Transfer was Fraudulent Under Montana Law Because of an Actual Intent to Hinder, Delay, or Defraud Creditors)

76.    ~~76.~~    Debtor repeats and incorporates herein each of the answers set forth in paragraphs 1 through 75 above.

77.    ~~77.~~    The allegations set forth in Paragraph 77 constitute legal conclusions to which no answer is required.

78.    ~~78.~~    The allegations set forth in Paragraph 78 constitute legal conclusions to which no answer is required.

79.    ~~79.~~    NorthWestern admits that the QUIPS holders are subordinated creditors of the Debtor.  NorthWestern specifically denies that the QUIPS holders are creditors of Clark Fork by operation of the Guarantee Agreement and the Indenture.

80.    ~~80.~~    NorthWestern admits that it is the parent of Clark Fork.  The remaining allegations set forth in Paragraph 80 constitute legal conclusions to which no answer is required.

81.     81.  NorthWestern admits that the value of the assets transferred from Clark Fork to the Debtor were valued between $1.15 billion and $1.4 billion. The remaining allegations set forth in Paragraph 81 are denied as the Debtor's public statements, public filings, including SEC filings, and documents related to the transaction speak for themselves.

82.     82.  The allegations set forth in Paragraph 82 constitute legal conclusions to which no answer is required.

83.     83.  The allegations set forth in Paragraph 83 constitute legal conclusions to which no answer is required.

84.     84.  The allegations set forth in Paragraph 84 constitute legal conclusions to which no answer is required.

## THIRD CAUSE OF ACTION

### (The Transfer was Fraudulent as a Constructive Fraud Which Rendered Clark Fork Insolvent)

85-89.     On May 14, 2004, ~~Northwestern~~NorthWestern filed its Motion and Supporting Brief, to Dismiss the Complaint of Magten Asset Management Corporation and Law Debenture Trust Company of New York for Failure to State a Claim Upon Which Relief Can Be Granted (the "**Motion**") [Docket No. 5]. On August 20, 2004, the Court issued its Under Advisement Decision re: Motion to Dismiss (the "**Opinion**") granting in part and denying in part the Motion. Pursuant to the Court's ruling at the November 3, 2004 omnibus hearing in NorthWestern's bankruptcy case, the allegations set forth in Paragraphs 85-89 were dismissed by this Court in the Opinion and therefore no answer is required.

## FOURTH CAUSE OF ACTION

### (The Transfer was Fraudulent as a Constructive Fraud Because it Rendered Clark Fork Undercapitalized)

90-94.    On May 14, 2004, ~~Northwestern~~NorthWestern filed its Motion and Supporting Brief, to Dismiss the Complaint of Magten Asset Management Corporation and Law Debenture Trust Company of New York for Failure to State a Claim Upon Which Relief Can Be Granted (the "**Motion**") [Docket No. 5].  On August 20, 2004, the Court issued its Under Advisement Decision re: Motion to Dismiss (the "**Opinion**") granting in part and denying in part the Motion.  Pursuant to the Court's ruling at the November 3, 2004 omnibus hearing in NorthWestern's bankruptcy case, the allegations set forth in Paragraphs 90-94 were dismissed by this Court in the Opinion and therefore no answer is required.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

95.    ~~95.~~  Debtor repeats and incorporates herein each of the answers set forth in paragraphs 1 through 94 above

96.    ~~96.~~  Admitted.

97.    ~~97.~~  The allegations set forth in Paragraph 97 constitute legal conclusions to which no answer is required.

98.    ~~98.~~  NorthWestern states that to the extent that paragraph 98 of the Complaint states legal conclusions, no responsive pleading is required and to the extent that paragraph 98 of the Complaint states factual conclusions, NorthWestern denies the allegations contained in paragraph 98 as the Debtor's public statements, public filings, including SEC filings, and documents related to the transaction speak for themselves.

99.    ~~99.~~  NorthWestern states that to the extent that paragraph 99 of the Complaint states legal conclusions, no responsive pleading is required and to the extent that paragraph 99 of the Complaint states factual conclusions, NorthWestern denies the allegations

contained in paragraph 99 as the Debtor's public statements, public filings, including SEC filings, and documents related to the transaction speak for themselves.

100.    ~~100.~~ NorthWestern is without sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in paragraph 100, and therefore denies same and demands strict proof thereof.

101.    ~~101.~~ NorthWestern admits that the Junior Debentures were subordinated obligations to the other debt owed by Montana Power and upon the assumption of liabilities by the Debtor, were junior to the Debtor's senior debt. The remainder of the allegations set forth in Paragraph 101 constitute legal conclusions to which no answer is required.

## AFFIRMATIVE DEFENSES

NorthWestern asserts the following affirmative defenses without assuming any burden of proof on issues where Plaintiffs bear such burdens:

## FIRST AFFIRMATIVE DEFENSE

The complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, by the applicable statute of limitations.

## THIRD AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, under the doctrines of waiver, estoppel and laches.

## FOURTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, because the plaintiffs lack standing to assert some or all of the claims asserted in the complaint.

## FIFTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, because the plaintiffs do not have the legal authority to bring an action on behalf of a class of Clark Fork's creditors.

## SIXTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, because the plaintiffs are not or never were creditors of Clark Fork.

## SEVENTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, because the plaintiffs cannot prove reliance to the extent that the transaction at issue was publicly disclosed and/or completed before the securities that are the alleged basis for their claims were purchased.

## EIGHTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, by the doctrines of assumption of the risk and comparative negligence.

## NINTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, by the doctrine of unclean hands.

## TENTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, because the actions of the defendant were not the cause of the plaintiff's alleged losses.

## ELEVENTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, by the doctrines of avoidable consequences and mitigation of damages.

## TWELFTH AFFIRMATIVE DEFENSE

The claims asserted in the complaint are barred, in whole or in part, because the plaintiff's claimed injuries and resulting damages were not reasonably foreseeable by the defendant.

## THIRTEENTH AFFIRMATIVE DEFENSE

NorthWestern reserves the right to plead or withdraw such further affirmative defenses which are found to be applicable or inapplicable to the facts of this case.

WHEREFORE, Defendant respectfully requests (a) judgment dismissing the Complaint with prejudice or (b) upon trial of this matter, judgment denying all relief requested by the Plaintiffs and granting Defendant attorney's fees and costs in defending against Plaintiffs' Complaint and such other and further relief as this Court deems just and equitable.

## COUNTERCLAIMS

NorthWestern (hereinafter, the **"Debtor"** or the **"Counterclaim-Plaintiff"**), by and through its undersigned counsel, for (i) its counterclaims (**"Counterclaims"**) against counterclaim Defendant Magten Asset Management Corporation (hereinafter, **"Magten"** or the **"Counterclaim-Defendant"**), hereby alleges as follows:

## ~~NATURE OF THE ACTION~~

~~1.    This is an action relating to the Counterclaim-Defendant's misappropriation and use of material, non-public, information in purchasing approximately 40% of the Debtor's Series A 8.45% Quarterly Income Preferred Securities (the **"QUIPS"**). As a member of the Official Committee of Unsecured Creditors (the **"Committee"**), the Defendant was vested with legal, contractual, and fiduciary duties not to misappropriate non-public information for its own self interest. The Counterclaim-Defendant willfully breached each of these duties in connection~~

~~with its purchase of more than 100,000 QUIPS after becoming a member of the Committee and~~

~~receiving material, non-public information concerning the Debtor.~~

~~2.    By these Counterclaims, the Debtor seeks damages and equitable relief~~

~~relating to the Counterclaim-Defendant's improper trading activity. In particular, the Debtor~~

~~seeks damages (including disgorgement of any ill-gotten gains) to compensate itself and its~~

~~creditors for the Counterclaim-Defendant's breach of fiduciary duty, breach of contract, and~~

~~violation of an express Court order prohibiting the very trading activity in which the~~

~~Counterclaim-Defendant engaged. Based upon the same inequitable and self-interested conduct,~~

~~the Debtor also objects to and seeks subordination of Magten's claim in this Chapter 11 case~~

~~under Sections 502(b) and 510(c) of the Bankruptcy Code, respectively.~~

## PARTIES

1.    ~~3.~~ Counterclaim-Plaintiff NorthWestern is a corporation organized under the laws of Delaware, having its principal place of business located in Sioux Falls, South Dakota.

2.    ~~4.~~ NorthWestern is a publicly traded Delaware corporation which was incorporated in 1923. NorthWestern and its direct and indirect non-NorthWestern subsidiaries comprise one of the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of the United States, serving approximately 608,000 customers throughout Montana, South Dakota and Nebraska.

3.    ~~5.~~ Counterclaim-Defendant Magten is a corporation organized under the laws of Delaware, having its principal place of business located at 410 Park Avenue, 14th Floor, New York, New York 10022.

## JURISDICTION AND VENUE

4.    6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this Chapter 11 case and these Counterclaims are proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

5.    7. On September 14, 2003 (the **"Petition Date"**), NorthWestern filed its voluntary petition for relief under chapter 11 of The Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the **"Bankruptcy Code"**).

6.    8. No request has been made for the appointment of a trustee or examiner in this case. The Committee was appointed by the Office of the United States Trustee on September 30, 2003.

7.    9. By Order dated October 10, 2003, this Court established January 15, 2004 at 5:00 p.m. (Pacific Standard Time) (the **"Bar Date"**) as the deadline for creditors to file proofs of claim for each claim they assert against the Debtor that arose before the Petition Date. Notice of the Bar Date was mailed to all known creditors of the Debtor and published in numerous regional and national newspapers.

8.    10. Magten filed a Proof of Claim, designated claim number 842 by the Debtor's claims agent (the **"Magten Claim"**). The Magten Claim asserts unliquidated claims against the Debtor's estate for: (i) damages resulting from the alleged fraudulent transfer of the utility assets of NorthWestern Energy, LLC to the Debtor on November 15, 2002 (the **"Transfer QUIPS Litigation Claim"**); and (ii) the face amount of the QUIPS held by Magten as of the Petition Date.

11. On or about November 6, 2003, this Court entered its Order Permitting Securities Trading Upon Establishment of Ethical Wall [Docket No. 257] (the "**Securities Trading Order**"). The Securities Trading Order prohibits members of the Committee (present and future, each a "**Member**") from trading in the securities of the Debtor and its affiliates, unless and until such Member establishes and implements an ethical wall (the "**Ethical Wall**") in accordance with the terms and conditions of the Securities Trading Order, so as to prevent:

(i) the Ethical Wall Entity's trading personnel from misusing any material non-public information obtained by such Ethical Wall Entity's designated representative(s) involved in Committee-related or reorganization-related activities ("**C/R Personnel**"); and

(ii) C/R Personnel from receiving material non-public information regarding such Ethical Wall Entity's trading in the Securities in advance of such trades. This Order does not preclude this Court from taking any action it deems appropriate in the event that an actual breach of fiduciary duty has occurred.

12. Accordingly, to comply with the Securities Trading Order, Members of the Committee were required to establish an Ethical Wall before trading in the Securities.

13. Upon request of Magten, by notice dated November 25, 2003, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed Magten to the Committee. Magten was represented on the committee by its 100% principal, Mr. Talton Embry ("**Embry**").

14. Upon information and belief, upon appointment to the Committee or shortly thereafter, Magten became aware of the Securities Trading Order.

15. Upon information an belief, upon being appointed to the Committee, Magten obtained possession of the Debtor's and the Committee's material, non-public information.

16.    Once appointed to the Committee, Magten's fiduciary and other common law duties precluded it from trading in the securities of the Debtor and its affiliates, including without limitation, the QUIPS, except as provided in the Securities Trading Order.

17.    On December 18, 2003, Embry, as Chairman of and on behalf of Magten, executed a Confidentiality Agreement with Official Committee of Unsecured Creditors (the **"Confidentiality Agreement"**).  Under the Confidentiality Agreement, Magten agreed to maintain confidential all nonpublic and proprietary information provided by or to the Committee.

18.    By executing the Confidentiality Agreement, Embry as Chairman of and on behalf of Magten, acknowledged that he was aware, and he would advise Magten's representatives that the United States securities laws prohibit any person in receipt from an issuer of material, non-public information from purchasing or selling or offering to purchase or sell securities of the issuer or from communication of the information to any other person under circumstances in which it is reasonably foreseeable that the person would have been likely to purchase or sell securities.

19.    Magten's understanding of the Securities Trading Order and the Confidentiality Agreement was made clear when, on or about February 5, 2004, counsel for Magten requested the U.S. Trustee's approval on a motion exempting Magten from the Securities Trading Order (the **"Draft Motion"**).  The Draft Motion was never filed with this Court and no order of this Court has been entered relieving Magten of its obligations under the Securities Trading Order.

20.    In the Draft Motion, Magten admitted its understanding that it was prohibited from trading in the Debtor's securities while a member of the Committee without establishing an Ethical Wall.  In its draft motion, Magten asserted:

Because of Magten's structure, it is impossible for Magten to comply with the precise terms of the Trading Order and trade through an Ethical Wall Entity without further clarification of the Trading Order. Thus, by this Motion, Magten seeks an order clarifying the Trading Order so as to make it clear that if Magten uses the services of an independent third-party broker (the "Broker") who does not receive any confidential information regarding the Debtor and that has autonomy in making buy/sell decisions in executing trades in the securities of the Debtor and its affiliates, Magten will receive the protections afforded by the Order.

21.    Thereafter, on April 16, 2004, Magten and Law Debenture filed the above-captioned adversary proceeding to avoid the transfer of assets of Clark Fork and Blackfoot LLC (f/k/a NorthWestern Energy LLC) ("**Clark Fork**") to the Debtor in November 2002 pursuant to what is generally referred to as the "going flat" transaction (the "**Magten Adversary Proceeding**").

22.    The Magten Adversary Proceeding resulted in an inherent conflict between the Magten and the Committee. Accordingly, in a letter dated May 6, 2004, the Trustee removed Magten from the Committee stating the relief sought in the Magten Adversary Proceeding "is inconsistent with Magten's . . . fiduciary duty to the Committee's constituents, the general unsecured creditors of NorthWestern Corporation."

23.    After being expelled from the Committee, Magten was still bound by the terms of Confidentiality Agreement and the Securities Trading Order, to the extent Magten was still in possession of material, non-public information it had obtained while serving as a Member of the Committee.

### MAGTEN'S PURCHASES OF THE DEBTOR'S QUIPS WHILE IN POSSESSION OF THE DEBTOR'S NON-PUBLIC INFORMATION

24.    Notwithstanding the Confidentiality Agreement in which Magten acknowledged that use of the Debtor's non-public information constituted a potential violation of the securities laws, and the Securities Trading Order, Embry caused Magten to purchase over

123,000 of the Debtor's QUIPS and sell 3,800 of the Debtor's QUIPS in a series of market transactions after joining the Committee. Upon information and belief, Magten was in possession of and relied upon the Debtor's and the Committee's non-public information when executing the securities transactions.

25.    Between November 25, 2003 and May 4, 2004 — the dates within which Magten was a Committee member, Magten purchased 28,540 of the Debtor's QUIPS as follows:

| | |
|---|---|
| 12/01/03 | 4,300 |
| 12/01/03 | 1,000 |
| 12/01/03 | 500 |
| 12/01/03 | 1,000 |
| 12/01/03 | 1,100 |
| 12/01/03 | 1,400 |
| 12/01/03 | 1,800 |
| 12/01/03 | 3,500 |
| 12/01/03 | 1,000 |
| 12/03/03 | 2,440 |
| 12/03/03 | 1,000 |
| 12/03/03 | 1,000 |
| 12/05/03 | 7,500 |
| 01/21/04 | 1,000 |
| **Total** | 28,540 |

26.    Between November 25, 2003 and May 4, 2004 — the dates within which Magten was a Committee member, Magten sold 3,800 of the Debtor's QUIPS as follows:

| | |
|---|---|
| 12/17/03 | 1,900 |
| 12/17/03 | 1,900 |
| **Total** | 3,800 |

27.    The Magten's purchases of QUIPS accelerated immediately after May 4, 2004, when Magten purchased through July 8, 2004 an additional 95,000 of the Debtor's QUIPS as follows:

| | |
|---|---|
| 05/14/04 | 1,000 |
| 05/14/04 | 1,000 |

| | |
|---|---|
| 05/18/04 | 1,500 |
| 05/18/04 | 1,500 |
| 05/19/04 | 500 |
| 05/19/04 | 500 |
| 05/20/04 | 1,250 |
| 05/20/04 | 1,300 |
| 05/20/04 | 2,000 |
| 05/20/04 | 4,450 |
| 05/28/04 | 1,200 |
| 06/01/04 | 1,000 |
| 06/03/04 | 5,000 |
| 06/07/04 | 800 |
| 06/08/04 | 10,500 |
| 06/09/04 | 1,500 |
| 06/15/04 | 11,600 |
| 06/16/04 | 4,000 |
| 06/17/04 | 8,700 |
| 06/18/04 | 14,000 |
| 06/21/04 | 4,000 |
| 06/23/04 | 2,000 |
| 06/29/04 | 6,800 |
| 07/02/04 | 600 |
| 07/06/04 | 3,500 |
| 07/08/04 | 4,800 |
| **Total** | 95,000 |

28.    Upon information and belief, Magten remained in possession of, and relied upon, the Debtor's and the Committee's non-public information with respect to some or all of these QUIPS purchases.  As a result of its purchases, Magten holds approximately 40% of outstanding QUIPS, and has filed a claim with regard to those QUIPS in this case.

29.    These Counterclaims seek subordination of Magten's claims, actual damages, equitable relief and object to Magten's Claim as follows.

## COUNT I

## BREACH OF FIDUCIARY DUTY

30.    Plaintiff repeats and realleges the allegations set forth in the Paragraphs 1 through 29 as though fully set forth herein.

31.    As members of the Committee, Magten was vested with a fiduciary duty to all unsecured creditors, among other things, to act with due care, not to act in furtherance of its self-interests to the potential detriment of other creditors, to maintain confidentiality, and to guide its actions so as to safeguard the rights of minority as well as majority creditors.

32.    In addition, as members of the Committee, Magten was obligated to comply with the Securities Trading Order. The Securities Trading Order prohibited trading by Committee members, such as Magten, while a member of the Committee and in possession of non-public information without first establishing an Ethical Wall.

33.    In addition, as members of the Committee, Magten was obligated to comply with the Confidentiality Agreement it signed, under which Magten confirmed its duty to keep confidential all non-public information obtained as a member of the Committee.

34.    Upon information and belief, after being appointed to the Committee, and after receiving material, non-public information from the Debtor and the Committee, Magten purchased over 100,000 shares of the Debtor's QUIPS.

35.    Magten's trades willfully violated its fiduciary duty to other creditors as a matter of law, under the Confidentiality Agreement, and under the Securities Trading Order.

36.    Magten's willful violation of its fiduciary duties caused the Debtor, the Committee, and the creditors damages in an amount to be determined.

### COUNT II

### EQUITABLE SUBORDINATION PURSUANT TO 11 U.S.C. § 510(e)

37.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 36 as though fully set forth herein.

38. ~~Magten willfully violated its fiduciary duties, willfully violated the Securities Trading Order, willfully violated the Confidentiality Agreement, and potentially violated the federal securities laws when it purchased over 100,000 shares of the Debtor's QUIPS in market trades after receipt of the Committee's and the Debtor's non-public information.~~

39. ~~Magten's conduct in misappropriating and using the Committee's and the Debtor's non-public information for its self interests constitutes inequitable conduct that caused injury to the Debtor, its creditors, and the Committee. The maintenance and use of the non-public information also conferred upon Magten an unfair advantage over other creditors.~~

40. ~~Because of the actions described herein, the claims of Magten against the Debtor's estate should be equitably subordinated to the level of equity interests in the Debtor pursuant to section 510(c) of the Bankruptcy Code.~~

### [COUNT III]

### OBJECTION TO THE MAGTEN CLAIM

1. ~~41. Plaintiff~~The Debtor repeats and realleges the ~~allegations~~answers set forth in ~~the~~ paragraphs 1 through ~~40 above~~101 above, and First through Thirteenth Affirmative Defenses above, as though fully set forth herein.

2. ~~42.~~ The Magten Claim asserts unliquidated claims against the Debtor's estate for: (i) ~~damages resulting from the alleged fraudulent transfer of the utility assets of NorthWestern Energy, LLC to the Debtor on November 15, 2002 (the **"Transfer"**)~~the QUIPS Litigation Claim; and (ii) the face amount of the QUIPS held by Magten as of the Petition Date.

43. ~~Magten violated its fiduciary duties, violated the Securities Trading Order, violated the Confidentiality Agreement, and potentially violated the federal securities laws when~~

they purchased over 100,000 shares of the Debtor's QUIPS in market trades after receipt of the Committee's and the Debtor's non-public information.

44. Magten's conduct in misappropriating and using the Committee's and the Debtor's non-public information for its self interest constitutes inequitable conduct that caused injury to the Debtor, its creditors, and the Committee. The maintenance and use of the non-public information also conferred upon Magten an unfair advantage over other creditors.

3. 45. Because of the actions described herein, the Magten Claim should be limited to the amount that Magten paid for the QUIPS.

### COUNT IV

### DAMAGES FOR VIOLATION OF THE SECURITIES TRADING ORDER

46. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 45 as though fully set forth herein.

47. As a member of the Committee, Magten was obligated to comply with the Securities Trading Order. The Securities Trading Order prohibited trading by Committee members, such as Magten, while a member of the Committee and in possession of non-public information without first establishing an Ethical Wall.

48. Upon information and belief, while a Member of the Committee, Magten was furnished material, non-public information of the Committee and the Debtor. Magten has retained possession, custody, and control over the non-public information.

49. Upon information and belief, after receipt of the non-public information, and while in possession, custody, and control of such information, Magten purchased shares of the Debtor's QUIPS.

50.   Upon information and belief, Magten misappropriated and used the non-public information in determining to purchase some or all of the Debtor's securities.

51.   Upon information and belief, Magten, as a member of the Committee, did not establish an Ethical Wall prior to trading in the Debtor's securities.

52.   Magten's trades in the Debtor's QUIPS while a member of the Committee without first establishing an Ethical Wall violated the Securities Trading Order.

53.   Magten's violation of the Securities Trading Order caused the Debtor, the Committee, and the creditors damages in an amount to be determined. The Debtor is also entitled to an award of punitive damages. As set forth in the answer and affirmative defenses herein, the QUIPS Litigation Claim should be disallowed in its entirety.

## **RESERVATION OF RIGHTS**

4.   54. The Debtor reserves the right to amend, modify or supplement these its Counterclaims and to object further to the Magten Claim on any and all additional factual or legal grounds, including if such claim is not reduced or disallowed as requested herein or if additional information regarding the disallowance or reduction of such claim is discovered upon further review thereof or through discovery pursuant to the applicable provisions of the Bankruptcy Rules.

WHEREFORE, Plaintiff respectfully demands judgment against Magten as follows:

A.   For actual damages in an amount to be determined at trial;

B.   Sustaining the Debtor's objection to the Magten Claim; and

## [CONCLUDED ON NEXT PAGE]

C.    ~~Compelling Magten to account for any and all profits obtained by reason of the misconduct alleged herein and the imposition of a constructive trust on such ill-gotten profits;~~

~~D.    Subordinating Magten's claims;~~

~~E.    For Magten's willful conduct, punitive damages in an amount to be determined at trial;~~

~~F.    For attorney's fees and costs; and F.~~  Granting such other and further relief as the Court deems just and                                        appropriate.

~~Dated: November 19, 2004~~                    ~~Respectfully submitted,~~
~~Wilmington,~~
~~Delaware~~                         -
                                    ~~GREENBERG TRAURIG, LLP~~

                                    _____
                                    ~~Scott D. Cousins (No. 3079)~~
                                    ~~William E. Chipman, Jr. (No. 3818)~~
                                    ~~Paul D. Brown (No. 3903)~~
                                    ~~The Brandywine Building~~
                                    ~~1000 West Street, Suite 1540~~
                                    ~~Wilmington, DE 19801~~
                                    ~~Telephone: (302) 661-7000~~

- and -

~~Adam D. Cole~~
~~GREENBERG TRAURIG, LLP~~
~~885 Third Avenue~~
~~New York, New York 10022~~
~~Telephone: (212) 848-1000~~

~~Counsel for NorthWestern Corporation~~

Dated: February ___, 2005

NORTHWESTERN CORPORATION

By its attorneys,

GREENBERG TRAURIG, LLP

By: _____
　　　　Scott D. Cousins (No. 3079)
　　　　Victoria W. Counihan (No. 3488)
　　　　William E. Chipman, Jr. (No. 3818)
　　　　The Brandywine Building
　　　　1000 West Street, Suite 1540
　　　　Wilmington, DE 19801
　　　　(302) 661-7000 (telephone)

　　　　　　- and -

Jesse H. Austin, III, Esquire
Karol K. Denniston, Esquire
PAUL, HASTINGS, JANOFSKY
& WALKER LLP
600 Peachtree Street, N.E., 24th Floor
Atlanta, GA 30308
(404) 815-2400 (telephone)

*CO-COUNSEL FOR REORGANIZED*
*DEBTOR/DEFENDANT*

31

Document comparison done by DeltaView on Thursday, February 24, 2005 16:22:50

| Input: | |
|---|---|
| Document 1 | pcdocs://del_xp/122353/46 |
| Document 2 | pcdocs://del_xp/132978/1 |
| Rendering set | Standard |

| Legend: |  |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | Count |
|---|---|
| Insertions | 66 |
| Deletions | 306 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 374 |