# EXHIBIT 10

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NORTHWESTERN CORPORATION,<br><br>Debtor. | Chapter 11<br><br>Case No. 03-12872 (JLP) |
| MAGTEN ASSET MANAGEMENT CORPORATION<br>& LAW DEBENTURE TRUST COMPANY OF NEW YORK,<br>Plaintiffs,<br>v.<br><br>NORTHWESTERN CORPORATION,<br><br>Defendant. | Adv. No. 04-53324 (JLP) |
| NORTHWESTERN CORPORATION,<br><br>Plaintiff,<br>v.<br><br>MAGTEN ASSET MANAGEMENT CORPORATION,<br>Defendant. | Adv. No. 04-55051 (JLP) |

**LIMITED OBJECTION OF MAGTEN ASSET MANAGEMENT CORPORATION
AND TALTON R. EMBRY TO THE JOINT MOTION (I) FOR ORDER ALLOWING
THE DEBTOR TO DISMISS ITS COMPLAINT AGAINST MAGTEN ASSET
MANAGEMENT CORPORATION AND TALTON R. EMBRY, WITH PREJUDICE,
PURSUANT TO RULE 7041(a) OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE AND RULE 41(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE,
AND (II) FOR LEAVE TO AMEND ANSWER AND AFFIRMATIVE DEFENSES AND
TO WITHDRAW COUNTERCLAIMS TO FIRST AMENDED COMPLAINT TO
AVOID THE TRANSFER OF ASSETS OF CLARK FORK AND BLACKFOOT LLC
[ADV. DOCKET NOS. 63 & 89]**

Magten Asset Management Corporation ("Magten") by and through its undersigned counsel, submits this limited objection (the "Limited Objection") to the motion (the "Motion") for order allowing NorthWestern Corporation ("NorthWestern") to dismiss its complaint against

1

Magten and Talton R. Embry ("Embry", together with Magten, the "Defendants"), with prejudice, pursuant to Rule 7041(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 41(a) of the Federal Rules of Civil Procedure, and (ii) for leave to amend answer and affirmative defenses and to withdraw counterclaims to first amended complaint to avoid the transfer of assets of Clark Fork and Blackfoot LLC, and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      By its Motion, NorthWestern is seeking an order allowing it to voluntarily dismiss the adversary proceeding it commenced against Magten and Embry (the "NorthWestern Adversary Proceeding"). While Magten does not object to the withdrawal of the NorthWestern Adversary Proceeding with prejudice, Magten objects to the provision of the proposed order that provides for "each party bear to its own fees." Because the NorthWestern Adversary Proceeding was commenced for the sole purpose of harassing Magten and its principal, Mr. Embry, Magten and Mr. Embry request that the order dismissing the complaint in the NorthWestern Adversary Proceeding preserve Magten's rights to pursue all fees and expenses incurred by Magten and Mr. Embry in defending against, and preparing for, the adversary proceeding.[1]

2.      From the outset, it has been apparent that the allegations in the complaint (the "Complaint") were baseless and wholly without merit. Nearly all of the allegations were asserted "upon information and belief," even though NorthWestern knew what information it provided to the Official Committee of Unsecured Creditors (the "Committee") and it could easily have ascertained what, if any, confidential information NorthWestern or the Committee provided

---

[1]      As this Court is aware, on February 22, 2005, Magten and the Indenture Trustee filed a joint motion for an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure approving a settlement between NorthWestern, Magten and the Indenture Trustee (the "9019 Motion"). In the event that this Court approves the 9019 Motion, Magten will withdraw this Limited Objection as the equity distribution being made to Magten pursuant to the terms of the settlement is intended to compensate Magten for fees, costs and risks incurred by Magten in defending this frivolous litigation.

2

to the Defendants. As the original source of any confidential information provided to the Defendants, NorthWestern had the burden of identifying the material non-public information upon which the Defendants are said to have traded. Instead, NorthWestern plead its allegations "upon information and belief" and took no steps during the discovery process to learn the truth of its allegations.

3.      Despite alleging that the Committee and its advisors provided material non-public information to Magten, after filing the Complaint, NorthWestern never sought any documentary or testimonial discovery from the Committee or its professionals. NorthWestern took no action to ensure that it received the Committee's documents and postponed the deposition of Mr. Embry on numerous occasion so as to avoid and delay the trial process. It was only through Magten's discovery efforts to subpoena and depose the Committee's professionals and the individual Committee members that NorthWestern learned that its allegations lacked merit. Likewise, when the Committee's professionals refused to provide documents responsive to Magten's subpoenas, NorthWestern made no effort to challenge the assertion of privilege. NorthWestern's lack of a reasonable basis to bring its Complaint combined with its discovery efforts and lack of prosecution, shows that the NorthWestern Adversary Proceeding was commenced simply as a harassment tactic designed to punish a vocal, objecting creditor that was vigorously pursuing its rights and remedies against the Debtor.

4.      As a result of NorthWestern's vexatious conduct, the Defendants respectfully request that the order dismissing the Complaint preserve Defendants' rights to seek attorneys' fees and costs incurred in connection with the NorthWestern Adversary Proceeding.

120087.01600/40151367v1

## BACKGROUND

5.    As this Court is familiar with the facts of the NorthWestern Adversary Proceeding and the procedural history leading up to the scheduled trial date of February 7, 2005, Magten will not burden the Court by restating the comprehensive background of the case. Rather, set forth below are the pertinent facts with respect to the Limited Objection.

6.    On August 20, 2004, NorthWestern initiated the NorthWestern Adversary Proceeding against the Defendants, seeking damages and equitable relief relating the Defendants' trading activities regarding the QUIPS. The primary allegation in the Complaint is that the Defendants traded QUIPS while members of the Committee and that NorthWestern alleged, on information and belief, that Magten had material, non-public information when it made the trades in question.

7.    On September 28, 2004, Magten filed the Motion to Dismiss arguing, among other things, that the Complaint is meritless as evidenced by the fact that the Complaint was plead "upon information and belief," and included a declaration of Mr. Embry declaring that he had no material, non-public information prior to attending Magten's first Committee meeting. NorthWestern filed a reply on October 26, 2004, arguing that it requires discovery from the Committee to prove the allegations in the Complaint.

8.    On November 2, 2004, the Court held a status conference with respect to both the fraudulent conveyance litigation and the NorthWestern Adversary Proceeding. At that status conference, the Court stayed the fraudulent conveyance proceeding and set forth an expedited discovery schedule for the NorthWestern Adversary Proceeding with a trial date of February 7, 2005.

4

9.    Thereafter, on November 8, 2004, the Court entered an order denying the Motion to Dismiss wherein the Court explained that NorthWestern should have an opportunity to offer evidence in support of its claims.

10.    In conducting discovery in the NorthWestern Adversary Proceeding, the Defendants served document requests and deposition notices on NorthWestern and served subpoenas on the following: (i) NorthWestern's counsel; (ii) NorthWestern's financial advisor; (iii) counsel to the Committee; (iv) financial advisor to the Committee; and (v) eight individual members of the Committee who served on the Committee during Magten's membership.

11.    The only discovery conducted by NorthWestern in connection with the NorthWestern Adversary was the service of a document request and deposition notice on the Defendants and the service of subpoenas on certain of Magten's brokers that handled various purchases of QUIPS made by Magten.

12.    Although the Court's decision denying the Motion to Dismiss provided NorthWestern with the opportunity to conduct extensive discovery to prove the allegations in its Complaint, NorthWestern took no action during the course of discovery to obtain the relevant information from the Committee. While NorthWestern served its discovery requests before Defendants served their discovery requests, NorthWestern chose not to seek discovery from the Committee or its members despite the fact that the allegations in the Complaint wholly relied upon what, if any, material information Defendants received from the Committee.

13.    Both NorthWestern and the Committee refused to comply with the subpoenas served by Magten and filed separate motions seeking protective orders from the Court. In response to both NorthWestern's and the Committee's refusal to comply with discovery demands, on January 27, 2005, the Court held a teleconference at Magten's request in order to

5

resolve discovery disputes and compel both NorthWestern and the Committee to provide documents responsive to Magten's subpoenas.

14.    Even after the Court ordered the Committee to comply with the subpoenas, the Committee continued its refusal to provide responsive documents by asserting claims of privilege and NorthWestern made no effort to challenge the Committee's assertion of privilege. At Magten's request, the Court held another teleconference on January 20, 2005 to determine issues of Committee privilege.

15.    In the course of conducting discovery for the trial, NorthWestern solicited Magten to make an offer to settle all pending claims and causes of actions.    In response, Magten submitted an initial settlement proposal to NorthWestern that NorthWestern took under advisement.    After two weeks of extensive settlement discussions, on January 27, 2005, the parties reached an agreement in principal concerning the settlement of the claims of NorthWestern, the Indenture Trustee, Magten and the holders of the QUIPS that did not accept NorthWestern's Plan.    NorthWestern drafted the settlement agreement, put it in final form, obtained executed copies of the settlement agreement from the parties, and on February 10, 2005, presented the terms of the settlement to the Court.

16.    As a result of the of the settlement reached between the parties, NorthWestern, filed a notice with the Court canceling the trial in the NorthWestern Adversary Proceeding.

17.    However, after the trial date was cancelled and the settlement agreement was presented to this court and made public through the issuance by NorthWestern of a press release, on February 16, 2004, NorthWestern elected to disavow the binding settlement agreement and

6

advised Magten and the Indenture Trustee by letter that it would not honor the terms of the agreement.[2]

18.    At the direction of the Court, on February 22, 2005, Magten and the Indenture Trustee filed the 9019 Motion, seeking approval of the settlement.

## LIMITED OBJECTION

19.    By its motion, the Debtor is seeking to withdraw the Complaint with prejudice pursuant to Bankruptcy Rule 7041(a)(2), and has requested that each party bear its own fees and costs. See Motion at ¶ 27.   The Defendants submit this Limited Objection because Defendants should be permitted to seek to have NorthWestern pay the fees and expenses incurred by the Defendants as a result of NorthWestern's vexatious conduct and obvious harassment of the Defendants in filing the frivolous Complaint.

20.    Rule 41(a)(2) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Bankruptcy Rule 7041, provides:

> an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems just and proper.

Fed. R. Civ. P. 41(a)(2).

21.    Pursuant to Bankruptcy Rule 7041, NorthWestern's request for a dismissal of the NorthWestern Adversary Proceeding should be conditioned upon "such terms that it deems just and proper," including the award of fees and costs to Defendants. See In re Mizrahi, 179 B.R. 322 (Bankr. M.D. Fla 1995) (in dismissing the complaint with prejudice, the court allowed the defendants to pursue an award of fees and costs). "While costs are not always required as a condition for a voluntary dismissal, it is usually considered necessary for the protection of the defendant." Peifer v. Royal Bank of Canada, 121 F.R.D. 39, 41 (D. Pa., 1986)(citing Puerto Rico Maritime Shipping Authority v. Leith, 668 F.2d 46, 51 (1st Cir. 1981)). Cf. Colombrito v.

---

[2]    In addition to filing a meritless Complaint, NorthWestern's attempt to breach the settlement is a further example of NorthWestern's vexatious conduct.

Kelly, 764 F.2d 122, 133-134 (2d Cir., 1985)(citations omitted) (when a lawsuit is voluntarily dismissed with prejudice under Fed. R. Civ. P. 41(a)(2), courts have founds that awarding attorney's fees may be appropriate (i) when there is independent statutory authority for such an award or (ii) under exceptional circumstances); Dorfsman v. Law Sch. Admission Council, Inc., 2001 U.S. Dist. LEXIS 24044, *9-10 (D. Pa. 2001) (citations omitted)(holding that when an action is dismissed with prejudice, a court may award attorney's fees under exceptional circumstances); 28 U.S.C.1927 (an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct").

22.    Prior to commencing the adversary, NorthWestern had obtained documents from Magten concerning its trades in the QUIPS. Their information made it clear that Magten made no trades from the time it attended its first committee meeting until after Magten was no longer on the Committee and NorthWestern had filed its plan and disclosure statement with the Court and its quarterly report with the Securities and Exchange Commission. In light of the facts, NorthWestern should have undertaken a minimal pretrial investigation to determine whether there was any material, non-public information in Magten's possession when it traded. Instead of requesting such information from the Committee and its professionals, NorthWestern filed a baseless complaint to harass Magten.

23.    After filing a Complaint with unsubstantiated allegations, NorthWestern chose to ignore Defendants' sworn statements in its declaration in support of the Motion to Dismiss, that "as of December 17, 2003, Magten was not in possession of any material, non-public information regarding the Debtor and its operations." See Exhibit 1 attached hereto, at ¶ 5. Thereafter, during the course of discovery, NorthWestern (i) failed to subpoena the Committee or its professionals, and (ii) objected to producing documents in response to Defendants requests.

24.    It was only through Magten's discovery efforts that NorthWestern learned what information the Committee's professionals provided to its members. See Motion at ¶19.

8

Magten, not NorthWestern, deposed the Committee's professionals and sought to compel the Committee to comply with the subpoenas and ask the Court to waive the Committee's privilege. As a plaintiff filing a complaint "upon information and belief," it was NorthWestern's burden to take such actions and not the Defendants. Nevertheless, NorthWestern did little to prosecute it claims.

25.    NorthWestern's conduct in filing a complaint on "information and belief" and then its lack of diligence in discovery makes it patently obvious that the NorthWestern Adversary Proceeding was brought in bad faith, for oppressive purposes. NorthWestern's actions in pursuing a frivolous litigation resulted in needless waste of time and expense for all parties involved. As a result, Defendants should have the right to seek fees and expenses incurred in defending against the allegations in the Complaint.

## CONCLUSION

*WHEREFORE*, Magten respectfully requests entry of an order, substantially in the form of Exhibit 2 attached hereto, preserving Defendants rights to seek fees and costs incurred in connection with the NorthWestern Adversary Proceeding, and granting such other relief as this Court deems just and proper.

Dated: March 7, 2005

BLANK ROME LLP

Mark J. Packel (DE No. 4048)
Elio Battista, Jr. (DE No. 3814)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 425-6400
Facsimile:    (302) 425-6464

-and -

9

**FRIED, FRANK, HARRIS, SHRIVER &**
**JACOBSON LLP**
Bonnie Steingart
Gary L. Kaplan
One New York Plaza
New York, NY 10004
Telephone:     (212) 859-8000
Facsimile:      (212) 859-4000

Counsel for Magten Asset Management
Corporation

10

**EXHIBIT 1**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| NORTHWESTERN CORPORATION, | : | Case No. 03-12872 (CGC) |
| Debtor. | : | |
| | : | |
| NORTHWESTERN CORPORATION, | : | |
| Plaintiff, | : | Adv. No. 04-55051 (CGC) |
| v. | : | |
| MAGTEN ASSET MANAGEMENT CORPORATION, and TALTON R. EMBRY | : | |
| Defendants. | : | |

## DECLARATION OF TALTON R. EMBRY IN SUPPORT OF THE MOTION OF MAGTEN ASSET MANAGEMENT CORPORATION AND TALTON R. EMBRY TO DISMISS THE COMPLAINT OF NORTHWESTERN CORPORATION FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

TALTON EMBRY declares as follows:

1.     I am the principal and managing director of Magten Asset Management Corporation ("Magten"). I submit this declaration (the "Declaration") in support of the motion (the "Motion") of Magten Asset Management Corporation ("Magten") and Talton R. Embry to dismiss the above captioned complaint of Northwestern Corporation (the "Debtor") for failure to state a claim up on which relief can be granted.

2.     All facts set forth in this Declaration are based on my personal knowledge, upon my review of relevant documents, or on my opinion based upon my experience and knowledge

1

of the above captioned chapter 11 case. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this Declaration.

3.    Magten began acquiring shares of the QUIPS[1] in April 2003. As of the Petition Date, Magten held 801,200 shares of QUIPS and as of the date of this Declaration, Magten holds 1,244,061 shares of QUIPS.

4.    On or about November 25, 2003, I was informed that the Office of the United States Trustee appointed Magten to the Official Committee of Unsecured Creditors (the "Committee"). After having been informed of Magten's appointment to the Committee, but prior to attending any Committee meetings and prior to receiving any substantive information from the Committee or the Debtor concerning the Debtor or its operations, Magten executed 3 transactions for shares of QUIPS between December 1, 2003 and December 5, 2003, which were allocated over a variety of accounts. The sum total of shares of QUIPS acquired by Magten between December 1, 2003 and December 5, 2003 was 27,540.[2]

5.    Between December 5, 2003 and December 17, 2003, Magten did not execute any trades of QUIPS. During that period, Magten was informed that a Committee meeting had been scheduled for December 18, 2003. As of December 17, 2003, Magten was not in possession of any material, non-public information regarding the Debtor and its operations. However, Magten was concerned that as a result of any non-public information it may receive at the December 18, 2003 Committee meeting Magten would become restricted from trading in the Debtor's securities after that time. Accordingly, on December 17, 2003, a day prior to its initial

---

[1]    All capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.
[2]    The Debtor, in its Complaint, incorrectly indicates that Magten traded 28,540 shares of QUIPS while it was a member of the Committee because the Debtor double counts the 1000 QUIPS shares purchased on December 1, 2003 by counting the January 21, 2004 transaction as a separate purchase. The correct amount of QUIPS shares traded by Magten during the time it was on the Committee was 27,540.

participation in Committee meeting and a day prior to receiving non-public information from the Debtor, Magten sold 1,900 shares of QUIPS for a client account.[3]  This sale was made in order to honor the client's standing request to withdraw funds on a monthly basis and the recognition that future withdrawal requests would most likely not be able to be met through the sale of the Debtor's securities.

6.     On December 17, 2003, Magten received a copy of the Committee By-Laws by email from counsel to the Committee. A copy of the By-Laws is attached to this Declaration as Exhibit A.  Although Magten was officially appointed to the Committee on November 25, 2003, Magten did not receive any substantive information from the Committee concerning the Debtor or its operations prior to the December 18, 2003 Committee meeting.

7.     On December 18, 2003, I, as representative of Magten, attended my first Committee meeting.  As I have previously indicated, with the exception of a copy of the Committee's By-Laws, the December 18, 2003 Committee meeting was the first time that Magten received any information from the Committee or the Debtor concerning the Debtor or its operations.  In light of the fact that Magten obtained information concerning the Debtor and its operations at the December 18, 2003 Committee meeting, Magten ceased trading the QUIPS at that time.

8.     Due to the fact that Magten only has one employee, Magten believed that it would not be able to comply with the terms of the Trading Order entered by the Bankruptcy Court. Because Magten wanted the opportunity to be able to trade in the QUIPS and obtain the same

---

[3]     In reviewing the Debtor's Complaint, it appears that the Debtor has mistakenly counted the December 17, 2003 sale of 1,900 shares of QUIPS twice, thereby alleging improper sales of 3,800 shares. A careful examination of Magten's trading records produced to the Debtor shows that the front side and the back side of one trading slip is on two separate pages, and both sheets are referring to the same 1,900 share trade. A copy of Magten's December 17, 2003 trading record is attached to this Declaration as Exhibit B.

3

protections that the other members of the Committee received under the existing Trading Order, in or around January 2004, I endeavored, through counsel, to seek a consensual agreement with the Debtor, the Committee and the United States Trustee modifying the terms of the Trading Order. However, after garnering the support of the Debtor and the Committee, the United States Trustee would not support any such application. In light of the United States Trustee's position, Magten chose not to pursue the issue further. Accordingly, Magten continued its moratorium on trading in the Debtor's securities.

9.    In or about January 2004, I executed on behalf of Magten a Confidentiality Agreement in connection with Magten's membership on the Committee.[4] An execution copy of the Confidentiality Agreement is attached to this Declaration as Exhibit C.

10.    On March 11, 2004 the Debtor filed its plan and disclosure statement, which the Debtor stated contained all material information concerning the Debtor and its operations. In April 2004, both the Debtor and the Committee wrote letters to the United States Trustee requesting the removal of Magten from the Committee. By letter dated May 6, 2004, Magten was informed by the United States Trustee that it had been removed from the Committee.

11.    Following Magten's removal from the Committee on May 6, 2004, I resumed trading shares of QUIPS on behalf of Magten on May 14, 2004. Because all material information regarding the Debtor was publicized in the Debtor's plan and disclosure statement previously filed with the Court and because Magten was no longer a member of the Committee, Magten was no longer restricted from trading in the Debtor's securities. Beginning on May 14, 2004, with the purchase of 2,000 shares, through the date of the Complaint, Magten purchased 95,000 shares of QUIPS.

---

4    Although the Confidentiality Agreement is dated December 18, 2003, it was not circulated to the Committee for execution until January 2004.

12.    On July 27, 2004, I was deposed by the Debtor in connection with Magten's objection to confirmation of the Debtor's First Amended Plan of Reorganization.  At my deposition I was asked questions concerning Magten's trading, however, neither the notice of deposition nor the first request for the production of documents served by the Debtor requested records of or information concerning my purchases and sales of the QUIPS.  Consequently, in preparing for my deposition, I did not review Magten's trading records.  As such, when answering questions concerning Magten's trading activity, I was confused and, as a result, following the deposition, I reviewed Magten's trading records to refresh my recollection.  I subsequently submitted a correction to my deposition testimony in which I set forth my best recollection regarding a transaction for 1000 shares of QUIPS that was "booked" on January 21, 2004 (the "January 2004 Trade").  My corrected testimony explained that the January 2004 Trade was the result of a misunderstanding I had with a broker, Richard Fels of Tradition Asiel.

13.    After I submitted the correction to my deposition testimony, I spent more time reviewing Magten's *internal* trading records in response to the Debtor's supplemental request for documents.  Upon review of Magten's internal trading records, which were subsequently produced to the Debtor, I noticed a notation on an internal trading record for January 21, 2004.  A copy of the December 3, 2003 and January 21, 2004 internal trading records are attached to this Declaration as Exhibit D.  The notation indicated that there was no purchase of 1,000 shares on January 21, 2004, merely the "rebooking" of part of a trade made on December 3, 2003.  On December 3, 2003, Magten had purchased 4,440 shares from Richard Fels at Tradition Asiel.  In January 2004, an account reconciliation of our statements against the statements of our securities custodian, Bear Stearns & Co., revealed that 1,000 of the 4,440 shares purchased on December 3, 2003 were never delivered to Bear Stearns for a Magten account in which I hold a beneficial

interest. As the trade was now "stale," meaning that Bear Stearns needed new instructions to take in the 1,000 shares, I instructed Richard Fels of Tradition Asiel to cancel the original December 3, 2003 delivery instructions and have the securities delivered to a different Magten account in which I have a beneficial interest. Consistent with my instructions to Mr. Fels, my assistant, Ms. Jean Colditz, instructed Owen Lynch at Bear Stearns to take delivery of the shares in the correct account. Ms. Colditz also instructed Mr. Lynch to cancel any previously issued instructions to place the shares in a different Magten account. In turn, Ms. Colditz reconciled Magten's internal records to reflect this transaction. Although Ms. Colditz's communication with Bear Stearns regarding the booking error was not produced to the Debtor because I only came across it after the filing of the Complaint, her communication appropriately informed Bear Stearns of the error and authorized Bear Stearns to receive the securities into the correct account. A copy of the communication to Bear Stearns is attached to this Declaration as Exhibit E.

14.     Because Magten is actively engaged in the business of trading securities for its clients I do not remember the nature of the circumstances surrounding every trade. Therefore, although I did not originally recall the circumstances regarding the January 2004 Trade, the notations on Magten's trading records (which were produced to the Debtor in August 2004) clearly indicate that the January 2004 Trade was simply the reconciliation and completion of the December 3, 2003 purchase of 4,440 QUIPS shares. In fact, other than working with Bear Stearns and the broker to correct the delivery instructions for the 1000 undelivered shares from the December 3, 2003 purchase, Magten did not take any further action with reference to these shares subsequent to December 3, 2003. Thus, the January 21, 2004 trade was actually executed contemporaneously with the trades that were executed in December 2003, at a time when Magten did not possess any material non-public information

6

15.    Therefore, at no point during the five months that Magten was a member of the Committee or during the months following Magten's removal from the Committee did Magten trade in the Debtor's securities with material, non-public information.

I declare under the penalty of perjury that the above statements are true and correct.

Dated:  New York, New York
        September 28, 2004

By: _____
    Talton Embry

**EXHIBIT 2**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | )   Chapter 11 |
| | ) |
| NORTHWESTERN CORPORATION, | )   Case No. 03-12872 (JLP) |
| | ) |
| Debtor. | ) |
| _____ | ) |
| MAGTEN ASSET MANAGEMENT CORPORATION | ) |
| & LAW DEBENTURE TRUST COMPANY OF NEW | ) |
| YORK, | ) |
|     Plaintiffs, | ) |
| v. | )   Adv. No. 04-53324 (JLP) |
| | ) |
| NORTHWESTERN CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |
| NORTHWESTERN CORPORATION, | ) |
| | ) |
|     Plaintiff, | ) |
| v. | )   Adv. No. 04-55051 (JLP) |
| | ) |
| MAGTEN ASSET MANAGEMENT CORPORATION, | ) |
|     Defendant. | ) |
| _____ | ) |

**ORDER GRANTING JOINT MOTION (1) FOR ORDER ALLOWING THE DEBTOR TO DISMISS ITS COMPLAINT AGAINST MAGTEN ASSET MANAGEMENT CORPORATION AND TALTON R. EMBRY, WITH PREJUDICE, PURSUANT TO RULE 7041(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND RULE 41(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE, AND (II) FOR LEAVE TO AMEND ANSWER AND AFFIRMATIVE DEFENSES AND TO WITHDRAW COUNTERCLAIMS TO FIRST AMENDED COMPLAINT TO AVOID THE TRANSFER OF ASSETS OF CLARK FORK AND BLACKFOOT LLC**

UPON, the Motion (the **"Motion"**) of the above-captioned reorganized debtor (the

**"Debtor"**), (I) for Order Allowing the Debtor to Dismiss Its Complaint Against Magten Asset

Management Corporation (**"Magten"**) and Talton R. Embry (**"Embry,"** together with Magten,

1

the **"Defendants"**), With Prejudice, Pursuant to Rule 7041 (a) of the Federal Rules of Bankruptcy Procedure and Rule 41 (a) of the Federal Rules of Civil Procedure, and (11) for Leave to Amend Answer and Affirmative Defenses and to Withdraw Its Counterclaims to First Amended Complaint to Avoid the Transfer of Assets of Clark Fork and Blackfoot *LLC;* and it appearing that the Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334 and that it is a core matter pursuant to 28 U.S.C. § 157(b)(2); and the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors and other parties-in-interest; and it appearing that due notice of the Motion has been provided and that no other or further notice need be given; and sufficient cause appearing therefore; it is hereby

 **ORDERED,** that the Motion is granted as modified by this Order; and it is further

 **ORDERED,** that the NorthWestern Adversary Proceeding[1] is hereby dismissed, with prejudice, pursuant to Bankruptcy Rule 7041(a)(2) and Fed. R. Civ. P. 41(a)(2); and it is further

 **ORDERED,** that nothing shall prejudice Defendants' rights to pursue an award for fees and costs incurred in connection with the NorthWestern Adversary Proceeding; and it is further

 **ORDERED,** that the Debtor is hereby granted leave to amend the NorthWestern Answer in the Magten Adversary Proceeding to delete the counterclaims asserted therein, while preserving the Debtor's Objection to the QUIPS Litigation Claim therein; and it is further

 **ORDERED,** that within five (5) days of entry of the instant order the Debtor shall file with the Bankruptcy Court and serve upon the Defendants in accordance with Bankruptcy Rule 7004(b) the Debtor's First Amended Answer, Affirmative Defenses and Withdrawal of Counterclaims to First Amended Complaint in the form annexed to the Motion as Exhibit B; and it is further

 **ORDERED,** that the Debtor shall have the right to amend or modify the Objection in the NorthWestern Answer; and it is further

---

[1]   Any capitalized term not otherwise defined in this order shall have meaning ascribed to such term in the Motion.

2

      **ORDERED**, that this Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: _____. 2005
      Wilmington, Delaware

                                        _____
                                        Honorable John L. Peterson
                                        United States Bankruptcy Judge

3