# EXHIBIT 13

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| | ) | Case No. 03-12872 (JLP) |
| NORTHWESTERN CORPORATION, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 04-55051 (JLP) |
| MAGTEN ASSET MANAGEMENT CORPORATION | ) | |
| AND TALTON R. EMBRY | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MOTION OF MAGTEN ASSET MANAGEMENT CORPORATION AND TALTON R. EMBRY PURSUANT TO RULE 7041(A) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR THE PAYMENT OF FEES AND EXPENSES INCURRED

Magten Asset Management Corporation ("Magten") and Talton R. Embry ("Embry", together with Magten, the "Defendants"), by and through their undersigned counsel, submit this motion (the "Motion") for an order, pursuant to Rule 7041(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 41(a) of the Federal Rules of Civil Procedure, awarding Defendants' fees and costs incurred in connection with the adversary proceeding filed by NorthWestern Corporation ("NorthWestern") against Defendants, and respectfully state as follows:

### INTRODUCTION

1.     By this Motion, the Defendants request that the Court award to the Defendants the fees and expenses they incurred in defending themselves against the allegations in the complaint

1

filed by NorthWestern against Magten and Mr. Embry (the "NorthWestern Adversary Proceeding").

2.    As has been clear from before the complaint (the "Complaint") was ever filed, the NorthWestern Adversary Proceeding was a frivolous suit commenced for the sole purpose of harassing Magten and its principal, Mr. Embry. The Complaint alleged that by trading in the QUIPS, the defendants misused material, non-public information provided by NorthWestern to the Official Committee of Unsecured Creditors (the "Committee") and its members. Prior to filing the Complaint, through discovery requested in connection with confirmation of NorthWestern's plan of reorganization (the "Plan"), NorthWestern obtained a copy of Magten's trading records for the QUIPS. Thus, prior to commencing the NorthWestern Adversary Proceeding, NorthWestern knew that Magten had ceased trading the QUIPS before attending its first Committee meeting and did not resume trading until Magten was no longer a member of the Committee and NorthWestern had already filed its Plan, disclosure statement and its 10K and 10Q, which disclosed all material information concerning NorthWestern. Moreover, prior to filing the Complaint, NorthWestern knew what information it provided to the Committee and could easily have ascertained what, if any, confidential information NorthWestern or the Committee provided to the Defendants. Yet, NorthWestern chose not to make any inquiries whatsoever and instead simply filed the Complaint "upon information and belief." See Declaration of Gary L. Kaplan filed contemporaneously herewith (the "Kaplan Decl.") Exh. A, pp. 120-121.

3.    Despite alleging that the Committee and its advisors provided material non-public information to Defendants, after filing the Complaint, NorthWestern never sought any documentary or testimonial discovery from the Committee or its professionals. Instead, in light

2

of NorthWestern's use of innuendo and "information and belief" to wrongfully besmirch Magten and Mr. Embry, Defendants sought discovery from NorthWestern and the Committee because NorthWestern's inaction and damaging allegations required Magten and Mr. Embry to prove their innocence. Adding insult to injury, when Defendants sought discovery from NorthWestern and the Committee, both parties resisted the discovery demands and NorthWestern, once again, failed to take any steps to support the allegations it had made on "information and belief." Likewise, when the members of the Committee and the Committee's professionals refused to provide documents responsive to Defendants' subpoenas, NorthWestern made no effort to challenge the assertion of privilege, but rather Defendants sought this Court's intervention to obtain the necessary information. It was only through Defendants' discovery efforts to subpoena and depose the Committee's professionals and the individual Committee members that the facts concerning what information the Committee provided to Defendants were made known.

4.    On January 27, 2005, less than ten days before the trial date, when discovery had been substantially completed, when Defendants had already completed the pre-trial brief due that day, and when trial preparation was well under way, the parties reached an agreement on the settlement of all outstanding claims and causes of actions. NorthWestern subsequently disavowed the settlement, and knowing that it had filed a frivolous Complaint and had no evidence to substantiate its allegations, filed a motion seeking to withdraw the Complaint with prejudice. NorthWestern's withdrawal of the Complaint, however, was long overdue as Defendants had already incurred $710,524.00[1] in fees and $73,596.30 in costs as a result of NorthWestern's Complaint and dilatory tactics.

---

[1]    Counsels' fees include the total time incurred by Fried, Frank, Harris, Shriver & Jacobson LLP and the time incurred by Blank Rome LLP in connection with the NorthWestern Adversary. Moreover, this amount has been voluntary reduced by counsel.

3

5.    Time and time again, NorthWestern's conduct substantially increased Defendants' expenses incurred in connection with the NorthWestern Adversary Proceeding. NorthWestern's conduct in making wrongful allegations against Magten and Mr. Embry without fulfilling the corresponding responsibility of proving those allegations, placed Defendants in the position of having to take on the burden of conducting nearly all discovery and investigation in order to move the adversary proceeding forward and to clear the Defendants' names. NorthWestern's conduct caused Defendants to undertake substantial amount of discovery that should have been borne by NorthWestern. Defendants' costs were further increased due to NorthWestern's and the Committee's continuous resistance to Defendants' discovery efforts. As a result of NorthWestern's vexatious conduct, the Defendants respectfully request that the Court award the Defendants fees in the amount of $710,524.00 and costs in the amount of $73,596.30, incurred in connection with the NorthWestern Adversary Proceeding. See Kaplan Decl. Exhs. Z, AA and BB.

## BACKGROUND

6.    On September 14, 2003, NorthWestern filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code.

7.    NorthWestern is a publicly traded Delaware corporation that was incorporated in 1923. NorthWestern, together with its direct and indirect non-debtor subsidiaries, comprise one of the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of the United States, serving approximately 608,000 customers throughout Montana, South Dakota and Nebraska.

4

8.    Magten is a holder of the QUIPS issued by Montana Power Capital I (the "Trust"). The Trust is a business trust established pursuant to the Delaware Business Trust Act. The sole assets of the Trust are the 8.45% Junior Subordinated Debentures due 2036.

9.    On August 20, 2004, NorthWestern commenced the NorthWestern Adversary Proceeding against the Defendants, seeking damages and equitable relief relating to the Defendants' trading activities regarding the QUIPS. The primary allegation in the Complaint is that the Defendants traded QUIPS while members of the Committee and that NorthWestern alleged, on information and belief, that Defendants had material, non-public information when it made the trades in question. See Kaplan Decl. Exh. B.

10.    On September 28, 2004, Defendants filed its motion to dismiss (the "Motion to Dismiss") in which they noted, among other things, that there was no factual basis to the allegations in the Complaint. See Kaplan Decl. Exh. C. With the Motion to Dismiss, Defendants included a declaration (the "Declaration") of Mr. Embry in which Mr. Embry declared that he had no material, non-public information prior to attending its first Committee meeting and resumed trading only after Magten was no longer a member of the Committee and NorthWestern had disclosed all material information. See Kaplan Decl. Exh. D. NorthWestern opposed the Motion to Dismiss on the grounds that it required discovery from the Committee to prove the allegations in the Complaint. See Kaplan Decl. Exh. E, p.12.

11.    On November 2, 2004, the Court held a status conference with respect to both the fraudulent conveyance litigation and the NorthWestern Adversary Proceeding. At that status conference, the Court stayed the fraudulent conveyance proceeding and set forth an expedited discovery schedule for the NorthWestern Adversary Proceeding with a trial date of February 7, 2005.

12.     Thereafter, on November 8, 2004, the Court entered an order denying the Motion to Dismiss on the grounds that NorthWestern should have an opportunity to offer evidence in support of its claims. See Kaplan Decl. Exh. F.

13.     On November 29, 2004, Defendants filed their answer and affirmative defenses to the Complaint, denying the allegations set forth in the Complaint. See Kaplan Decl. Exh. G.

14.     Despite NorthWestern's assertion in its opposition to the Motion to Dismiss that the discovery was necessary for it to prove its case and its identification of the Committee and the Committee's professionals as having knowledge concerning the information allegedly provided to Defendants, the only discovery conducted by NorthWestern in connection with the NorthWestern Adversary was the service of a document request and deposition notice on the Defendants, the service of a subpoena served on Fried Frank and the service of subpoenas on certain of Magten's brokers that handled various purchases of QUIPS made by Magten. See Kaplan Decl. Exh. H.  In fact, the only information sought from Magten's brokers were documents reflecting when Magten had purchased and sold securities – information NorthWestern had in its possession before it even filed the Complaint.

15.     The Defendants, in conducting discovery in the NorthWestern Adversary Proceeding on behalf of both itself and NorthWestern, sought documentary and testimonial evidence from (i) NorthWestern; (ii) NorthWestern's counsel; (iii) NorthWestern's financial advisor; (iv) counsel to the Committee; (v) financial advisor to the Committee; and (vi) eight individual members of the Committee who served on the Committee during Magten's membership[2].  See Kaplan Decl. Exh. I.  Each of these persons and entities were identified by

---

[2]     The members of the Committee upon which Magten served subpoenas were: (i) Avenue Capital Management; (ii) Wilmington Trust Company; (iii) Oaktree Capital Management, LLC; (iv) HSBC Bank

NorthWestern in its interrogatory responses ("NorthWestern's Interrogatory Responses"), as persons and entities having knowledge regarding the allegations made by NorthWestern in the Complaint. See Kaplan Decl. Exh. J.

16.    In spite of the fact that NorthWestern made allegations of wrongdoing against both Magten and Mr. Embry based on "information and belief," (i) NorthWestern took no action during the course of discovery to obtain the relevant information from the Committee, and (ii) NorthWestern chose not to seek discovery from the members of the Committee or its professionals. This failure to seek discovery reveals the true harassing and vexatious purpose of the Complaint because the allegations in the Complaint wholly relied upon the assertion that material, non-public information was provided to Defendants by the Committee.

17.    Because NorthWestern did not seek discovery from the Committee, in order to defend themselves against the baseless allegations in the Complaint, the Defendants were burdened with proving their innocence of the malicious charges and, thus, Defendants sought discovery from the Committee and its professionals.

18.    In addition to the Committee and its professionals, the Defendants sought discovery from NorthWestern and NorthWestern's counsel, Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings").[3]  Instead of complying with the discovery requests, NorthWestern filed a motion for a protective order and Paul Hastings filed a motion to quash the subpoenas and for a protective order in the bankruptcy court. See Kaplan Decl. Exhs. K and L, respectively.  Even though this Court had jurisdiction to hear Paul Hastings motion to quash, on the eve of the return date of Paul Hastings own motion, Paul Hastings withdrew its motion to quash only to refile it in

---

USA (v) The Bank of New York; (vi) Angelo, Gordon & Co. (vii) Comanche Park, LLC, and (viii) Franklin Templeton Mutual Series Fund.

[3]    In NorthWestern's Interrogatory Responses, NorthWestern identified individuals from both Paul Hastings and NorthWestern as persons with knowledge of the material, non-public information allegedly provided to Defendants.

the district court for the Southern District of New York. See Kaplan Decl. Exh. M. The tactics taken by NorthWestern and its counsel only served to frustrate the discovery process and cause unnecessary expense and delay.

19.    As a result of NorthWestern's and Paul Hastings' refusal to comply with discovery demands, Defendants filed objections seeking to compel the parties to comply with the subpoenas (see Kaplan Decl. Exhs. N and O) and filed a motion for an expedited teleconference with the Court. See Kaplan Decl. Exh. P.  At Defendants' request, the Court scheduled a teleconference for January 7, 2005 to resolve the discovery disputes.  On January 6, 2005, the evening prior to the scheduled teleconference, the members of the Committee and the Committee's professionals, filed motions seeking protective orders from the Court, refusing to comply with the subpoenas served by Defendants and.  See Kaplan Decl. Exh. Q.  On January 7, 2005, prior to the teleconference with the Court, the Defendants submitted an objection to the Committee's motion for a protective order. See Kaplan Decl. Exh. R.

20.    At the teleconference on January 7, 2005, after hearing the discovery disputes raised by all parties, and after being informed that the disclosure sought by Magten was from individuals and entities identified in NorthWestern's Interrogatory Responses as those with knowledge of the allegations, the Court compelled the Committee, the Committee's professionals, NorthWestern and Paul Hastings to provide the documents and testimony requested by Defendants.

21.    Notwithstanding the Court's order that the Committee comply with the subpoenas, the Committee continued its refusal to provide responsive documents by asserting claims of privilege and NorthWestern made no effort to challenge the Committee's assertion of privilege.  In light of the expedited trial schedule, Defendants, by letter to the Court, requested

8

that the Court resolve the outstanding discovery disputes. See Kaplan Decl. Exh. S.   At

Defendants' request, the Court held another teleconference on January 20, 2005 to determine

issues of Committee privilege.[4]  At the teleconference, the Court ordered the Committee and its

professionals to produce all responsive documents.

22.    Ultimately, after the Court resolved the discovery issues, the Defendants, (and not

NorthWestern), took the depositions of the Committee's professionals and dealt with the

Committee to ensure it received satisfactory information from its members.

23.    During the course of conducting discovery for the trial, NorthWestern solicited

Magten to make an offer to settle all pending claims and causes of actions.  While the parties

engaged in settlement discussions, Magten insisted that discovery continue until an agreement in

principle was reached.  In fact, on more than one occasion, NorthWestern asked Magten if it

would agree to adjourn the trial date while the parties negotiated a potential settlement and

Magten refused and sought to continue discovery until the parties had reached a final negotiated

agreement.  Despite Magten's refusal to stay the trial, at the January 20, 2005 teleconference

with the Court, NorthWestern informed the Court that the parties had begun settlement

discussions and requested that the Court adjourn the trial date.  The Court refused, however, to

grant NorthWestern's request and instructed the parties that the trial date will go forward as

scheduled unless the parties reach an agreement in principle.  Notwithstanding the Court's

decision, NorthWestern was dilatory in its efforts to schedule the deposition of Mr. Embry and

continued to delay Mr. Embry's deposition until the date that pre-trial motions were due – ten

days before the trial was scheduled to commence.

---

[4]    Although NorthWestern had also submitted a letter to the Court requesting that the Court address certain
discovery issues, NorthWestern's letter was sent to the Court's chambers only after the Court had agreed to
hear the parties at Magten's request. See Kaplan Decl. Exh. T.

9

24.    Ultimately, after two weeks of extensive settlement discussions, on January 27, 2005, the parties reached an agreement in principal concerning the settlement of the claims of NorthWestern, the Indenture Trustee, Magten and the holders of the QUIPS that did not accept NorthWestern's Plan. As a result of the settlement reached between the parties, NorthWestern filed a notice with the Court canceling the trial in the NorthWestern Adversary Proceeding. See Kaplan Decl. Exh. U.

25.    After the trial date was cancelled and the settlement agreement was presented to this court on February 16, 2004, NorthWestern advised Magten and the Indenture Trustee by letter that it would not honor the terms of the agreement.

26.    At the direction of the Court, on February 22, 2005, Magten and the Indenture Trustee filed the 9019 Motion (the "9019 Motion"), seeking approval of the settlement. NorthWestern, the Plan Committee and ad hoc committee of class 7 debtholders objected to the 9019 Motion. By order, dated March 10, 2005, the Court denied the 9019 Motion. See Kaplan Decl. Exh. V.

27.    On February 25, 2005, NorthWestern filed a motion seeking to withdraw the Complaint with prejudice pursuant to Bankruptcy Rule 7041(a)(2) ("Motion to Withdraw"), and requested that each party bear its own fees and costs. See Kaplan Decl. Exh. W. In its Motion to Withdraw, NorthWestern in essence admitted that it cannot substantiate the allegations set forth in the Complaint. See Kaplan Decl. Exh. W, ¶19.

28.    On March 7, 2005, Defendants filed a limited objection to the Motion to Withdraw, requesting that the Court preserve its rights to seek fees and costs incurred in connection with the NorthWestern Adversary Proceeding in light of NorthWestern's bad faith filing. See Kaplan Decl. Exh. X.

10

29.     On March 9, 2005, the Court entered an order dismissing the Complaint with

prejudice and preserved Defendants' rights to seek fees and costs. See Kaplan Decl. Exh. Y.

## JURISDICTION AND VENUE

30.     The Bankruptcy Court has jurisdiction over this matter as a core proceeding under

28 U.S.C. §§1334(b) and 157(b)(2). The relief requested herein is predicated on Rule 7041 of

the Bankruptcy Rules. Venue in this district is proper pursuant to 28 U.S.C. §§1408 and 1409.

## RELIEF REQUESTED

31.     By this Motion, the Defendants request that the Court order NorthWestern to pay

fees in the amount of $710,524.00 and costs in the amount of $73,596.30 incurred by the

Defendants as a result of NorthWestern's vexatious conduct and obvious harassment of the

Defendants in filing the frivolous Complaint.

## APPLICABLE AUTHORITY

32.     Rule 41(a)(2) of the Federal Rules of Civil Procedure, made applicable to

adversary proceedings pursuant to Bankruptcy Rule 7041, provides:

> an action shall not be dismissed at the plaintiff's instance save
> upon order of the court and upon such terms and conditions as the
> court deems just and proper.

Fed. R. Civ. P. 41(a)(2)(emphasis added).

33.     Pursuant to Bankruptcy Rule 7041, the Court has the authority to dismiss the

NorthWestern Adversary Proceeding upon "such terms that it deems just and proper," including

the award of fees and costs to Defendants. See In re Mizrahi, 179 B.R. 322 (Bankr. M.D. Fla.

1995) (in dismissing the complaint with prejudice, the court allowed the defendants to pursue an

award of fees and costs). "While costs are not always required as a condition for a voluntary

11

dismissal, it is usually considered necessary for the protection of the defendant." Peifer v.

Royal Bank of Canada, 121 F.R.D. 39, 41 (M.D. Pa. 1986) (citing Puerto Rico Maritime

Shipping Authority v. Leith, 668 F.2d 46, 51 (1st Cir. 1981)). When a complaint is dismissed

with prejudice, courts have reasoned that "'because a dismissal with prejudice is tantamount to a

judgment on the merits, the defendant ... is clearly the prevailing party and should ordinarily be

entitled to costs.'" Beer v. John Hancock Life Ins. Co., 211 F.R.D. 67, 70 (N.D.N.Y. 2002)

(quoting Schwarz v. Folloder, 767 F.2d 125, 130 (5th Cir. 1985)) See also Zenith Ins. Co. v.

Breslaw, 108 F.3d 205 (9th Cir. 1997) (defendant in such a situation is a prevailing party);

Cantrell v. Int'l Bhd. of Elec. Workers, Local 2021, 69 F.3d 456, 458 (10th Cir. 1995) (en banc);

Gambocz v. Yelencsics, 468 F.2d 837, 840 (3d Cir. 1972) (citing Lawlor v. National Screen

Service Corp., 349 U.S. 322, 327, 75 S. Ct. 865 (1955) ("dismissal with prejudice constitutes an

adjudication of the merits as fully and completely as if the order had been entered after trial");

McKenna v. Ferreira, Civ. No. 92-4991, 1996 U.S. Dist. LEXIS 17935 (D. Pa., Dec. 5, 1996)

("a dismissal with prejudice is the functional equivalent of a judgment on the merits")

Surprise v. GTE Serv. Corp., 202 F.R.D. 79, 81 (D. Conn. 2000)). Rule 54 of the Federal Rules

of Civil Procedure provide that "costs other than attorneys' fees shall be allowed as of course to

the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1). It is well

established that Rule 54 creates a presumption that the court will award costs to the prevailing

party. See Cantrell v. International Bhd. of Elec. Workers, Local 2021, 69 F.3d 456, 458-459

(10th Cir. 1995) (citing Serna v. Manzano, 616 F.2d 1165, 1167 (10th Cir. 1980)); see also In re

San Juan Dupont Plaza Hotel Fire Litig., 994 F.2d 956, 962 (1st Cir. 1993) (under Rule 54(d)

"awarding costs to a prevailing party is the norm"); 10 Wright and Miller Civil 3d §2668 at 232

(1998)(" the court is not likely to exercise its discretion to deny costs to the prevailing party in

12

the absence of a persuasive reason for doing so"). Accordingly, because the dismissal of the Complaint with prejudice places Defendants in the position of a "prevailing party," costs should be awarded to Defendants.

34.    While the "American Rule" provides that each party bear its own fees incurred in litigating, the recognized exception to the American Rule allows a court to award fees when an unfounded action is brought or maintained "in bad faith, vexatiously, wantonly, or for oppressive reasons." 6 James Wm. Moore et al., Moore's Federal Practice ¶ 54.171[2][c] (3d ed. 2004). See also Chambers v. NASCO, 501 U.S. 32, 45-46, 111 S. Ct. 2123 (1991) ("a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'")(citations omitted). See also 28 U.S.C. 1927 (an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct"). In fact, for "dominating reasons of justice," a court has an inherent power to award fees where the "litigation is false, unjust, vexatious, wanton or oppressive, or where it is unnecessary and groundless or conducted in bad faith or with fraudulent intent." Lawrence v. Fuld, 32 F.R.D. 329, 332 (D. Md. 1963).

35.    Accordingly, when a lawsuit is voluntarily dismissed with prejudice under Fed. R. Civ. P. 41(a)(2), courts have found that awarding attorney's fees may be appropriate (i) when there is independent statutory authority for such an award or (ii) under exceptional circumstances. See Colombrito v. Kelly, 764 F.2d 122, 133-134 (2d Cir., 1985)(citations omitted); see also Dorfsman v. Law Sch. Admission Council, Inc., No. 00-0306, 2001 U.S. Dist. LEXIS 24044, *9-10 (E.D. Pa. Nov. 28, 2001) (citations omitted)(holding that when an action is dismissed with prejudice, a court may award attorney's fees under exceptional circumstances).

13

Likewise, this Court has the inherent power to require NorthWestern to pay for its bad faith conduct by compensating Defendants for its time and efforts in defending itself against the harassing allegations in the Complaint.

36.    NorthWestern will undoubtedly argue that because it sought to dismiss the Complaint with prejudice, Defendants have been freed of the risk of relitigation of the issues, and therefore Defendants suffer no prejudice so as to allow them to recover their fees and expenses.  This argument, however, ignores the fact that the Complaint was filed in bad faith for the purpose of obtaining leverage against the Defendants and forcing Defendants to incur substantial fees in defending the frivolous action.  Because the litigation was wanton and oppressive and conducted in bad faith, exceptional circumstances exist so as to warrant an award of Defendants' fees and costs.  See e.g., Wilner v. Budig, No. 85-2134-O, 1988 U.S. Dist. LEXIS 12107 (D. Kan. Oct. 14, 1988) (upon dismissing plaintiff's complaint with prejudice, the court found "no difficulty concluding that this case presents exceptional circumstances warranting the imposition of costs [because] the record is replete with evidence of plaintiff's constant dilatory tactics.").

37.    As noted above, prior to commencing the adversary proceeding, NorthWestern had obtained documents from Magten concerning its trades in the QUIPS.  That information made it clear that Magten made no trades from the time it attended its first committee meeting until after Magten was no longer on the Committee and NorthWestern had filed its plan and disclosure statement with the Court and its quarterly report with the Securities and Exchange Commission.  Nevertheless, NorthWestern never undertook even a minimal pretrial investigation to determine whether there was any material, non-public information in Magten's possession when it traded and instead filed a Complaint based on "information and belief".  The

14

Debtor had plenty of opportunity to seek discovery from the Committee throughout the Chapter 11 case (as it did from Magten – prior to filing the Complaint) or through the Federal Bankruptcy Rule 2004 process – in order to verify its allegations. Instead of requesting such information from the Committee and its professionals, NorthWestern commenced a harassing lawsuit.

38.     Aside from NorthWestern's neglect to investigate its claims against Magten and Mr. Embry prior to filing the Complaint, after filing the Complaint with unsubstantiated allegations, NorthWestern chose to ignore Defendants' sworn statements in its Declaration declaring that Defendants had no material, non-public information when it purchased the QUIPS. In fact, Mr. Embry explicitly stated in his declaration that "as of December 17, 2003, Magten was not in possession of any material, non-public information regarding the Debtor and its operations" and that Magten only resumed trading on May 14, 2004, "[b]ecause all material information regarding the Debtor was publicized in the Debtor's plan and disclosure statement previously filed with the Court and because Magten was no longer a member of the Committee, Magten was no longer restricted from trading in the Debtor's securities." See Kaplan Decl. Exh. D at ¶ 5 and ¶ 11.

39.     Moreover, while the Complaint named Mr. Embry as a separate defendant, the Complaint failed to provide any basis to hold Mr. Embry liable for any of the allegations therein. Mr. Embry, as the principal of Magten, never personally held claims against NorthWestern, and therefore it was ridiculous for NorthWestern to seek to equitably subordinate claims that did not exist. Importantly, NorthWestern ignored the fact that Mr. Embry never engaged in any trading of NorthWestern's securities on his own behalf nor was Mr. Embry a

15

member of the Committee in his individual capacity.  NorthWestern baseless allegations against

Mr. Embry further added to Defendants' cost and expense in defending the frivolous suit.

40.    Northwestern's purpose in filing the Complaint was obviously tactical: to punish

Magten for pursuing the fraudulent conveyance proceeding.  Accordingly:

- NorthWestern filed its Complaint based on "information and belief" and then never sought any discovery based on the allegations of wrongdoing asserted in the Complaint;

- NorthWestern, in its opposition to the Motion to Dismiss, stated that it needed to conduct discovery to prove its allegations, yet, the only information it sought through discovery concerned Magten's trades of QUIPS – information NorthWestern had prior to filing the Complaint;

- In response to interrogatories served by Defendants, NorthWestern identified a number of persons and entities that provided confidential information to Defendants, but NorthWestern never sought to obtain any information from those persons or entities in order to prove the truth of its allegations;

- Michael Hanson, the Chief Operating Officer of NorthWestern, testified that prior to filing the Complaint neither he, nor anyone at NorthWestern made any efforts to determine what, if any, material, non-public information Defendants had at the time its traded the QUIPS.  See Kaplan Decl. Exh. A, pp.120-121.  This is especially egregious in light of the fact that NorthWestern's Chief Executive Officer certified, under penalty of perjury, that NorthWestern's 10K and 10Q contained all material financial information; and

- NorthWestern and Paul Hastings moved to quash subpoenas issued by Defendants in spite of the fact that those subpoenas sought information identified in NorthWestern's Interrogatory Responses, and Paul Hastings' vexatious conduct was further amplified by its attempt to remove its motion to quash from this Court's jurisdiction without valid reason.

41.    As noted above, throughout the course of discovery NorthWestern and its counsel

incessantly fought the Defendants on discovery matters and failed to subpoena the Committee or

its professionals to obtain the necessary information to prove its allegations.  As such, it was

only through Defendants' discovery efforts that NorthWestern learned what information the

Committee's professionals provided to its members.  See Kaplan Decl. Exh. W, ¶19.  The

Defendants were persistent in ensuring that both the Committee and NorthWestern did not

16

thwart the discovery process. Accordingly, the Defendants, not NorthWestern, deposed the Committee's professionals and sought to compel the Committee to comply with the subpoenas and ask the Court to waive the Committee's privilege. As a plaintiff filing a complaint "upon information and belief," it was NorthWestern's burden to take such actions and not the Defendants. Nevertheless, NorthWestern did little to prosecute it claims.

42.    NorthWestern's pattern of vexatious behavior and failure to assume accountability for its improper actions is rampant in this case. NorthWestern's conduct in filing a complaint on "information and belief" and then its lack of diligence in discovery makes it patently obvious that the NorthWestern Adversary Proceeding was brought in bad faith, for oppressive purposes. NorthWestern's dilatory discovery tactics and failure to take the responsibility of proving its allegations, forced the Defendants to shoulder the burden of discovery and undertake substantial investigation to obtain the information that NorthWestern should have sought. Accordingly, NorthWestern's actions in pursuing a frivolous litigation and lack of action in conducting discovery caused Defendants to incur substantial costs and resulted in needless waste of time and expense for all parties involved. As a result, NorthWestern should be required to pay all of Defendants' fees and expenses incurred in defending itself against what is clearly a bad faith attempt to harass an objecting creditor.

17

## **Conclusion**

Wherefore, Defendants respectfully request entry of an order, substantially in the form of Exhibit 1 attached hereto, awarding Defendants fees in the amount of $710,524.00 and costs in the amount of $73,596.30 incurred in connection with the NorthWestern Adversary Proceeding, and granting such other relief as this Court deems just and proper.

Dated: Wilmington, Delaware
      March 22, 2005

                                        BLANK ROME LLP

                                        Mark J. Packel (DE No. 4048)
                                        Elio Battista, Jr. (DE No. 3814)
                                        1201 Market Street, Suite 800
                                        Wilmington, DE 19801
                                        Telephone:  (302) 425-6400
                                        Facsimile:  (302) 425-6464

                                            -and –

                                        FRIED, FRANK, HARRIS, SHRIVER &
                                                  JACOBSON LLP
                                          Bonnie Steingart, Esq.
                                          Gary L. Kaplan, Esq.
                                          One New York Plaza
                                          New York, NY 10004
                                          Telephone:  (212) 859-8000
                                          Facsimile:  (212) 859-4000

                                        Counsel for Magten Asset Management
                                        Corporation

120087.01600/40151800v1

**EXHIBIT 1**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | Case No. 03-12872 (JLP) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 04-55051 (JLP) |
| | ) | |
| MAGTEN ASSET MANAGEMENT CORPORATION | ) | |
| and TALTON R. EMBRY, | ) | |
| Defendants. | ) | |

**ORDER GRANTING MOTION OF MAGTEN ASSET MANAGEMENT
CORPORATION AND TALTON R. EMBRY PURSUANT TO RULE 7041(A) OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR THE
PAYMENT OF FEES AND EXPENSES INCURRED**

UPON the motion (the "Motion") of Magten Asset Management Corporation

("Magten") and Talton R. Embry ("Embry", together with Magten, the "Defendants") for an

order pursuant to Rule 7041(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and Rule 41(a) of the Federal Rules of Civil Procedure, awarding Defendants' fees and

costs incurred in connection with the adversary proceeding filed by NorthWestern Corporation

("NorthWestern") against Defendants; and it appearing that the Court has jurisdiction over the

Motion pursuant to 28 U.S.C. § 1334 and this matter is a core matter pursuant to 28 U.S.C. §

157(b)(2); and it appearing that due notice of the Motion has been provided and that no other or

further notice need be given; and the Court having reviewed the Motion and any responses and

objections to the Motion;

**NOW THEREFORE,** the Court hereby **FINDS** as follows:

Pursuant to Bankruptcy Rule 7041 the Court has authority to condition the dismissal of an adversary proceeding on "terms and conditions which the court deems proper";

Upon a voluntary dismissal of a complaint with prejudice, the award of fees and costs are appropriate under exceptional circumstances; and

Due to Northwestern's dilatory tactics and vexatious conduct, exceptional circumstances exist in this matter so as to warrant the award of fees and costs.

**ACCORDINGLY,** after due deliberation, and sufficient cause appearing therefore, it is hereby

**ORDERED,** that the Motion is **GRANTED,** and all objections to the Motion are overruled; and it is further

**ORDERED,** that the Defendants are awarded fees in the amount of $710,524.00 and costs in the amount of $73,596.30 (the "Fees and Costs") incurred by Defendants in connection with the NorthWestern Adversary Proceeding; and it is further

**ORDERED,** that NorthWestern should pay the Defendants the Fees and Costs in cash within three business days of entry of this Order.

Dated: Wilmington, Delaware
          April __, 2005

                                        _____
                                        Honorable John L. Peterson
                                        United States Bankruptcy Judge