# EXHIBIT 14

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 03-12872 (JLP) |
| NORTHWESTERN CORPORATION, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 04-55051 (JLP) |
| v. | ) | |
| MAGTEN ASSET MANAGEMENT CORPORATION | ) | |
| AND TALTON R. EMBRY | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF GARY L. KAPLAN

I, GARY L. KAPLAN, hereby declare as follows:

1.     I am an attorney with the firm of Fried, Frank, Harris, Shriver & Jacobson LLP
("Fried Frank"), counsel to Magten Asset Management Corporation ("Magten") and Talton R.
Embry ("Embry", together with Magten, the "Defendants") in connection with the above
captioned chapter 11 case and adversary proceeding.  I submit this declaration in support of
Defendants' motion (the "Motion") for an order pursuant to Rule 7041(a) of the Federal Rules of
Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 41(a) of the Federal Rules of Civil
Procedure, awarding Defendants' fees and costs incurred in connection with the adversary
proceeding filed by NorthWestern Corporation ("NorthWestern") against Defendants.

2.     Since October 2003, I have been involved in all aspects of Fried Frank's
representation of Magten, a claimant in NorthWestern chapter 11 case, and a Defendant in the
above captioned adversary.  All facts set forth in this Declaration are based on my personal
knowledge, upon my review of relevant documents, or on my opinion based on my experience

and knowledge of this case.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.  I am authorized to submit this declaration.

3.      Magten is a holder of the QUIPS issued by Montana Power Capital I (the "Trust").  The Trust is a business trust established pursuant to the Delaware Business Trust Act.  The sole assets of the Trust are the 8.45% Junior Subordinated Debentures due 2036.

4.      Prior to filing the Complaint,[1] through discovery requested in connection with confirmation of NorthWestern's plan of reorganization (the "Plan"), Magten provided NorthWestern with a copy of Magten's trading records for the QUIPS, showing Magten's trades of QUIPS from April 2003 through early July 2004.  Thus, prior to commencing the NorthWestern Adversary Proceeding, NorthWestern had copies of trading records showing that Magten had ceased trading the QUIPS before attending its first Committee meeting and did not resume trading until Magten was no longer a member of the Committee and NorthWestern had already filed its Plan, disclosure statement and public financial statements.  Moreover, prior to filing the Complaint, NorthWestern knew what information it provided to the Committee and could easily have ascertained what, if any, confidential information NorthWestern or the Committee provided to the Defendants.  Additionally, Michael Hanson, NorthWestern's Chief Operating Officer, testified in his deposition that prior to filing the Complaint NorthWestern did not make any inquiries or take any action to determine what, if any, material, non-public information the Committee provided to Magten.  Attached as Exhibit A is a true and correct copy of the relevant pages of the deposition transcript of Michael J. Hanson, dated January 14, 2005.

5.      On August 20, 2004, NorthWestern commenced the NorthWestern Adversary Proceeding against the Defendants, seeking damages and equitable relief relating to the Defendants' trading activities regarding the QUIPS.  The primary allegation in the Complaint is that the Defendants traded QUIPS while members of the Committee and that NorthWestern alleged, on information and belief, that Defendants had material, non-public information when it

---

[1]      All capitalized terms not defined herein shall the meaning ascribed to them in the Motion.

made the trades in question. Attached hereto as Exhibit B is a true and correct copy of the Complaint, entered on the docket on August 20, 2004.

6.      On September 28, 2004, Defendants filed its motion to dismiss the Complaint (the "Motion to Dismiss") in which they noted, among other things, that there was no factual basis to the allegations in the Complaint. Attached hereto as Exhibit C is a true and correct copy of the Motion to Dismiss, entered on the docket on September 28, 2004. With the Motion to Dismiss, Defendants included a declaration (the "Declaration") of Mr. Embry in which Mr. Embry declared that he had no material, non-public information prior to attending its first Committee meeting and resumed trading only after Magten was no longer a member of the Committee and NorthWestern had disclosed all material information. Attached hereto as Exhibit D is a true and correct copy of the Declaration, entered on the docket on September 28, 2004.

7.      NorthWestern opposed the Motion to Dismiss on the grounds that it required discovery from the Committee to prove the allegations in the Complaint. Attached hereto as Exhibit E is a true and correct copy of NorthWestern's Brief in Support of its Opposition to Defendants Motion to Dismiss, entered on the docket on October 26, 2004.

8.      On November 2, 2004, the Court held a status conference with respect to both the fraudulent conveyance litigation and the NorthWestern Adversary Proceeding. At that status conference, the Court stayed the fraudulent conveyance proceeding and set forth an expedited discovery schedule for the NorthWestern Adversary Proceeding with a trial date of February 7, 2005.

9.      On November 8, 2004, the Court entered an order denying the Motion to Dismiss on the grounds that NorthWestern should have an opportunity to offer evidence in support of its claims. Attached hereto as Exhibit F is a true and correct copy of the Court's order denying Defendants' Motion to Dismiss, entered on the docket on November 8, 2004.

10.     On November 29, 2004, Defendants filed their answer and affirmative defenses to the Complaint, denying the allegations set forth in the Complaint. Attached hereto as Exhibit G is a true and correct copy of Defendants' answer to the Complaint, entered on the docket on

November 29, 2005.

11.    Despite NorthWestern's assertion in its opposition to the Motion to Dismiss that the discovery was necessary for it to prove its case and its identification of the Committee and the Committee's professionals as having knowledge concerning the information allegedly provided to Defendants, the only discovery conducted by NorthWestern in connection with the NorthWestern Adversary was the service of a document request and deposition notice on the Defendants, the service of a subpoena served on Fried Frank and the service of subpoenas on certain of Magten's brokers that handled various purchases of QUIPS made by Magten. Attached hereto as Exhibit H are true and correct copies of the notices of services for each of the subpoenas served by NorthWestern in connection with discovery in the NorthWestern Adversary Proceeding.  The only information NorthWestern sought from Magten's brokers were documents reflecting when Magten had purchased and sold the QUIPS – information Magten provided to NorthWestern before the Complaint was filed.

12.    In conducting discovery in the NorthWestern Adversary Proceeding, the Defendants sought documentary and testimonial evidence from (i) NorthWestern; (ii) NorthWestern's counsel; (iii) NorthWestern's financial advisor; (iv) counsel to the Committee; (v) financial advisor to the Committee; and (vi) eight individual members of the Committee who served on the Committee during Magten's membership[2]. Attached hereto as Exhibit I are true and correct copies of the notices of services for each of the subpoenas served by Defendants in connection with discovery in the NorthWestern Adversary Proceeding.  Each of the persons and entities subpoenaed by Defendants were subsequently identified by NorthWestern in its interrogatory responses ("NorthWestern's Interrogatory Responses") as persons and entities having knowledge regarding the allegations made by NorthWestern in the Complaint.  Attached hereto as Exhibit J is a true and correct copy of NorthWestern's responses to Defendants'

---

[2]    The members of the Committee upon which Magten served subpoenas were: (i) Avenue Capital Management; (ii) Wilmington Trust Company; (iii) Oaktree Capital Management, LLC; (iv) HSBC Bank USA (v) The Bank of New York; (vi) Angelo, Gordon & Co. (vii) Comanche Park, LLC, and (viii) Franklin Templeton Mutual Series Fund.

interrogatories, dated January 6, 2005.

13.    Because NorthWestern did not seek discovery from the Committee, in order to defend themselves against the baseless allegations in the Complaint, the Defendants sought discovery from the Committee and its professionals.

14.    In addition to the Committee and its professionals, the Defendants sought discovery from NorthWestern and NorthWestern's counsel, Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings").   Instead of complying with the discovery requests, NorthWestern filed a motion for a protective order and Paul Hastings filed a motion to quash the subpoenas and for a protective order in the bankruptcy court. Attached hereto as Exhibits K and L, respectively, are true and correct copies of NorthWestern's Motion for a Protective Order and Paul Hastings Motion to Quash Subpoena and for Protective Order, entered on the docket on December 30, 2004.   Even though this Court had jurisdiction to hear Paul Hastings motion to quash, Paul Hastings withdrew its motion to quash only to refile it in the district court for the Southern District of New York. Attached hereto as Exhibit M is a true and correct copy of Paul Hastings' motion for protective order filed in district court in Southern District of New York.

15.    As a result of NorthWestern's and Paul Hastings' refusal to comply with discovery demands, Defendants filed objections seeking to compel the parties to comply with the subpoenas. Attached hereto as Exhibits N and O, respectively, are true and correct copies of Defendants' Objection to Motion by NorthWestern Corporation for Protective Order, entered on the docket on January 4, 2005, and Defendants' Supplemental Objection to Motion by NorthWestern Corporation for Protective Order and Response to (i) Motion by Paul, Hastings, Janofsky & Walker LLP to Quash Subpoena and for Protective Order and (ii) Withdrawal of Motion by Paul, Hastings, Janofsky & Walker LLP to Quash Subpoena and for Protective Order, entered on the docket on January 5, 2005.   In addition, Defendants filed a motion seeking an expedited teleconference with the Court. Attached hereto as Exhibit P is a true and correct copy of Defendants' Motion for an Expedited Teleconference on the Motion of NorthWestern Corporation for Protective Order, entered on the docket on January 4, 2005.

16.     At Defendants' request, the Court scheduled a teleconference for January 7, 2005 to resolve the discovery disputes. On January 6, 2005, the evening prior to the scheduled teleconference, the members of the Committee and the Committee's professionals, filed motions seeking protective orders from the Court, refusing to comply with the subpoenas served by Defendants. Attached hereto as Exhibit Q is a true and correct copy of the Committee's Motion for a Protective Order, entered on the docket on January 6, 2005. On January 7, 2005, prior to the teleconference with the Court, the Defendants submitted an objection to the Committee's motion for a protective order. Attached hereto as Exhibit R is a true and correct copy of Defendants' Objection to Motion by the Committee for a Protective Order.

17.     At the teleconference on January 7, 2005, after hearing the discovery disputes raised by all parties, and after being informed that the disclosure sought by Magten was from individuals and entities identified in NorthWestern's Interrogatory Responses as those with knowledge of the allegations, the Court compelled the Committee, the Committee's professionals, NorthWestern and Paul Hastings to provide the documents and testimony requested by Defendants.

18.     Notwithstanding the Court's order that the Committee comply with the subpoenas, the Committee continued its refusal to provide responsive documents by asserting claims of privilege and NorthWestern made no effort to challenge the Committee's assertion of privilege. Rather, Defendants engaged in correspondence with the Committee's counsel both by phone and through letters, in an effort to obtain the subpoenaed information.

19.     On January 14, 2005, by letter to the Court, Defendants requested that the Court resolve the outstanding discovery disputes. Attached hereto as Exhibit S is a true and correct copy of a letter from Elio Battista, Esq., co-counsel to Defendants, to the Hon. John L. Peterson, dated January 14, 2005, as well as all attachments provided with the letter. At Defendants' request, the Court held another teleconference on January 20, 2005 to determine issues of Committee privilege. Although NorthWestern had also submitted a letter to the Court requesting that the Court address certain discovery issues, NorthWestern's letter was sent to the Court's

chambers only after the Court had agreed to hear the parties at Magten's request. Attached hereto as Exhibit T is a true and correct copy of a letter from Scott D. Cousins, co-counsel to NorthWestern, to the Hon. John L. Peterson, dated January 20, 2005.

20.    At the teleconference held on January 20, 2005, the Court ordered the Committee and its professionals to produce all responsive documents. Ultimately, after the Court resolved the discovery issues, the Defendants, (and not NorthWestern), took the depositions of the Committee's professionals and corresponded with the Committee to ensure it received the information from its members.

21.    During the course of conducting discovery for the trial, NorthWestern solicited Magten to make an offer to settle all pending claims and causes of actions. While the parties engaged in settlement discussions, Magten insisted that discovery continue until an agreement in principle was reached. In fact, on more than one occasion, NorthWestern asked Magten if it would agree to adjourn the trial date while the parties negotiated a potential settlement and Magten refused until the parties had reached a final negotiated agreement. Despite Magten's refusal to stay the trial, at the January 20, 2005 teleconference with the Court, NorthWestern informed the Court that the parties had begun settlement discussions and requested that the Court adjourn the trial date. The Court refused, however, to grant NorthWestern's request and instructed the parties that the trial date will go forward as scheduled unless the parties reach an agreement in principle.

22.    Ultimately, after two weeks of extensive settlement discussions, on January 27, 2005, the parties reached an agreement in principal concerning the settlement of the claims of NorthWestern, the Indenture Trustee, Magten and the holders of the QUIPS that did not accept NorthWestern's Plan. As a result of the settlement reached between the parties, NorthWestern filed a notice with the Court canceling the trial in the NorthWestern Adversary Proceeding. Attached hereto as Exhibit U is a true and correct copy of the notice canceling the trial in the Adversary Proceeding, entered on the docket on January 31, 2005.

23.    After the trial date was cancelled and the settlement agreement was presented to

this court on February 16, 2004, NorthWestern advised Magten and the Indenture Trustee by letter that it would not honor the terms of the agreement.

24.    At the direction of the Court, on February 22, 2005, Magten and the Indenture Trustee filed the 9019 Motion (the "9019 Motion"), seeking approval of the settlement. NorthWestern, the Plan Committee and ad hoc committee of class 7 debtholders objected to the 9019 Motion. By order, dated March 10, 2005, the Court denied the 9019 Motion. Attached hereto as Exhibit V is a true and correct copy of the Order denying the 9019 Motion, entered on the docket on March 10, 2005.

25.    On February 25, 2005, NorthWestern filed a motion seeking to withdraw the Complaint with prejudice pursuant to Bankruptcy Rule 7041(a)(2) ("Motion to Withdraw"), and requested that each party bear its own fees and costs. In its Motion to Withdraw, NorthWestern in essence admitted that it cannot substantiate the allegations set forth in the Complaint. Attached hereto as Exhibit W is a true and correct copy of NorthWestern's Motion to Withdraw, entered on the docket on February 25, 2005.

26.    On March 7, 2005, Defendants filed a limited objection to the Motion to Withdraw, requesting that the Court preserve its rights to seek fees and costs incurred in connection with the NorthWestern Adversary Proceeding in light of NorthWestern's bad faith filing. Attached hereto as Exhibit X is a true and correct copy of Defendants' Limited Objection to the Motion to Withdraw, entered on the docket on March 7, 2005.

27.    On March 9, 2005, the Court entered an order dismissing the Complaint with prejudice and preserved Defendants' rights to seek fees and costs. Attached hereto as Exhibit Y is a true and correct copy of the Order Allowing the Debtor to Dismiss its Complaint Against Magten Asset Management Corporation and Talton R. Embry, With Prejudice, entered on the docket on March 9, 2005.

28.    Based of my review of Fried Frank's time records relating to the litigation of the NorthWestern Adversary Proceeding, Fried Frank incurred fees in the amount of $698,602.00 and costs in the amount of $73,596.30, net of voluntary reductions for non-compensable and

duplicative services.  Fried Frank's services included, among other things: (i) research and drafting the Motion to Dismiss; (ii) drafting an answer to the Complaint; (iii) drafting subpoenas and document demands, (iv) preparing for numerous depositions; (v) taking depositions; (vi) preparing the client for depositions; (vii) drafting objections to motions to quash; (viii) reviewing documents produced by NorthWestern, members of the Committee, and others, (ix) preparing multiple document production; (x) research and drafting a motion for summary judgment; and (xi) preparing for trial.  Attached as Exhibit Z are Fried Frank's detailed time entries for fees incurred in connection with the NorthWestern Adversary Proceedings.  Time entries containing privileged and confidential information relating to the litigation have been redacted.  In addition, Fried Frank incurred costs for, among other things, (i) court reporting; (ii) computerized research; (iii) duplicating, (iv) meals and (v) transportation.  Attached as Exhibit AA is a summary of Fried Frank's costs incurred in connection with the NorthWestern Adversary Proceeding.

29.     In addition, I have been informed by Blank Rome LLP, co-counsel to Defendants, that they have incurred fees in the amount of $11,922.00 in connection with the NorthWestern Adversary Proceeding.  Attached as Exhibit BB are Blank Rome's detailed time entries for fees incurred in connection with the NorthWestern Adversary Proceedings.


I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 22, 2005

                                        /s/ Gary L. Kaplan
                                        Gary L. Kaplan

492119

120087.01600/40151801v1

**EXHIBIT A**

1

```
 1
 2      IN THE UNITED STATES BANKRUPTCY COURT
 3      FOR THE DISTRICT OF DELAWARE
 4      -------------------------------------------x
        In Re:
 5
        NORTHWESTERN CORPORATION,
 6
                                    Debtor.
 7
        Chapter 11 Case No. 03-12872 (JLP)
 8      -------------------------------------------x
 9      NORTHWESTERN CORPORATION,
10                                  Plaintiff,
11                  -against-
12      MAGTEN ASSET MANAGEMENT CORPORATION, and
        TALTON R. EMBRY,
13
                                    Defendants.
14
        Adv. No. 04-55051 (JLP)
15      -------------------------------------------x
                         One New York Plaza
16                       New York, New York
17                       January 14, 2005
                         9:45 a.m.
18
19              Deposition of MICHAEL J. HANSON,
        held at the offices of Fried, Frank,
20      Harris, Shriver & Jacobson, New York,
        New York, pursuant to Rule 30(b)(6),
21      before Joyce G. Abeles, a Notary Public
        of the State of New York.
22
23
                ELLEN GRAUER COURT REPORTING CO.
24              133 East 58th Street, 12th Floor
                  New York, New York 10022
25                     212-750-6434
                       Ref:  76270
```

120

```
 1                    Hanson
 2    Mr. Embry prior to December 18th?
 3              MR. BROWN:  Bonnie, can we just
 4         clarify --
 5         Q.   Did anyone from NorthWestern ask?
 6              MR. AUSTIN:  If he knows, he can
 7         answer.
 8              MR. BROWN:  This is not a
 9         30(b)(6).  This is confined to his
10         personal knowledge.
11              MS. STEINGART:  He's not a
12         30(b)(6)?
13              MR. AUSTIN:  I don't think --
14              MS. STEINGART:  This is not a
15         30(b)(6)?
16              MR. AUSTIN:  I don't know.
17              MS. STEINGART:  We asked for a
18         witness for a plaintiff and you
19         designated Mr. Hanson.
20              MR. AUSTIN:  We designated Mr.
21         Hanson.
22              MS. STEINGART:  We didn't ask for
23         Mr. Hanson.  So Mr. Hanson is testifying
24         on behalf of NorthWestern.
25         Q.    Did NorthWestern make any inquiry
```

121

```
 1                    Hanson
 2     of any representative of the committee about
 3     whether they gave Mr. Embry one piece of
 4     confidential information before December
 5     18th, do you know if that inquiry was made?
 6         A.    We did not --
 7              MR. AUSTIN:  Object to the extent
 8         it calls for disclosure of
 9         attorney-client communications.
10         A.    We did not ask, to my knowledge,
11     the representatives of the creditor
12     committee to confirm that they distributed
13     each piece of information to the individual
14     members.  They represented to us on
15     occasions that we talked about earlier
16     today, that they had shared information
17     with, "The creditor committee."  I have no
18     reason to believe that it did not include
19     all of its members, but we didn't ask them.
20              MR. AUSTIN:  Can we take a break?
21              MS. STEINGART:  Of course.  It's
22         12:30.
23              (Time noted:  12:30 p.m.)
24
25
```

**<u>EXHIBIT B</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| NORTHWESTERN CORPORATION, | : Case No. 03-12872 (CGC) |
| | : |
| Debtor. | : |
| | : |
| | : |
| | : |
| NORTHWESTERN CORPORATION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| MAGTEN ASSET MANAGEMENT | : Adv. No. _____ |
| CORPORATION, and TALTON R. EMBRY, | : |
| | : |
| Defendants. | : |
| | : |
| | : |

## COMPLAINT

NorthWestern Corporation, a Delaware corporation (**"NorthWestern,"** the **"Debtor"** or the **"Plaintiff"**), by and through its undersigned counsel, for (i) its complaint against Defendants Magten Asset Management Corporation (**"Magten"**) and Talton R. Embry (**"Embry,"** together with Magten, the **"Defendants"**), and (ii) its Objection to Claim Number 842 of Magten Asset Management Corporation (the **"Objection"**), hereby alleges as follows:

## NATURE OF THE ACTION

1.      This is an action relating to the Defendants' misappropriation and use of material, non-public, information in purchasing approximately 40% of the Debtor's Series A 8.45% Quarterly Income Preferred Securities (the **"QUIPS"**). As members of the Official Committee of Unsecured Creditors (the **"Committee"**), the Defendants were

vested with legal, contractual, and fiduciary duties not to misappropriate non-public information for their own self interest. The Defendants willfully breached each of these duties in connection with their purchase of more than 100,000 QUIPS after becoming members of the Committee and receiving material, non-public information concerning the Debtor.

2.      By this adversary proceeding, the Debtor seeks damages and equitable relief relating to the Defendants' improper trading activity. In particular, the Debtor seeks damages (including disgorgement of any ill-gotten gains) to compensate itself and its creditors for the Defendants' breach of fiduciary duty, breach of contract, and violation of an express Court order prohibiting the very trading activity in which the Defendants engaged. Based upon the same inequitable and self interested conduct, the Debtor also objects to and seeks subordination of Magten's claim in this Chapter 11 case under Sections 502(b) and 510(c) of the Bankruptcy Code, respectively.

## PARTIES

3.      Plaintiff NorthWestern is a corporation organized under the laws of Delaware, having its principal place of business located in Sioux Falls, South Dakota.

4.      NorthWestern is a publicly traded Delaware corporation which was incorporated in 1923. NorthWestern and its direct and indirect non-NorthWestern subsidiaries comprise one of the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of the United States, serving approximately 608,000 customers throughout Montana, South Dakota and Nebraska.

- 2 -

5.    Defendant Magten is a corporation organized under the laws of Delaware, having its principal place of business located at 410 Park Avenue, 14th Floor, New York, New York 10022.

6.    Defendant Embry was at all relevant times the 100% owner and Chairman of Magten. Other than Embry, Magten has only one employee, a secretary named Jean Colditz.

**JURISDICTION AND VENUE**

7.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this Chapter 11 case and this Complaint are proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

8.    On September 14, 2003 (the **"Petition Date"**), NorthWestern filed its voluntary petition for relief under chapter 11 of The Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the **"Bankruptcy Code"**). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, NorthWestern continues to operate its business and manage its properties as debtor-in-possession.

9.    No request has been made for the appointment of a trustee or examiner in this case. The Committee was appointed by the Office of the United States Trustee on September 30, 2003.

10.    By Order dated October 10, 2003, this Court established January 15, 2004 at 5:00 p.m. (Pacific Standard Time) (the **"Bar Date"**) as the deadline for creditors to file proofs of claim for each claim they assert against the Debtor that arose before the Petition

- 3 -

Date. Notice of the Bar Date was mailed to all known creditors of the Debtor and

published in numerous regional and national newspapers.

      11.     Magten filed Proof of Claim, designated claim number 842 by the

Debtor's claims agent (the **"Magten Claim"**). The Magten Claim asserts unliquidated

claims against the Debtor's estate for: (i) damages resulting from the alleged fraudulent

transfer of the utility assets of NorthWestern Energy, LLC to the Debtor on November

15, 2002 (the **"Transfer"**); and (ii) the face amount of the QUIPS held by Magten as of

the Petition Date.

      12.     On or about November 6, 2003, this Court entered its Order Permitting

Securities Trading Upon Establishment of Ethical Wall [Docket No. 257] (the

**"Securities Trading Order"**). The Securities Trading Order prohibits members of the

Committee (present and future, each a **"Member"**) from trading in the securities of the

Debtor and its affiliates, unless and until such Member establishes and implements an

ethical wall (the **"Ethical Wall"**) in accordance with the terms and conditions of the

Securities Trading Order, so as to prevent:

> (i) the Ethical Wall Entity's trading personnel from misusing any material
> non-public information obtained by such Ethical Wall Entity's designated
> representative(s) involved in Committee-related or reorganization-related
> activities (**"C/R Personnel"**); and

> (ii) C/R Personnel from receiving material non-public information
> regarding such Ethical Wall Entity's trading in the Securities in advance
> of such trades. This Order does not preclude this Court from taking any
> action it deems appropriate in the event that an actual breach of fiduciary
> duty has occurred.

      13.     Accordingly, to comply with the Securities Trading Order, Members of

the Committee were required to establish an Ethical Wall before trading in the Securities.

14.    Upon request of the Defendants, by notice dated November 25, 2003, the Office of the United States Trustee for the District of Delaware (the **"U.S. Trustee"**) appointed Magten to the Committee. Magten was represented on the committee by its 100% principal, Embry.

15.    Upon information and belief, upon appointment to the Committee or shortly thereafter, the Defendants became aware of the Securities Trading Order.

16.    Upon information an belief, upon being appointed to the Committee, Magten obtained possession of the Debtor's and the Committee's material, non-public information.

17.    Once appointed to the Committee, Magten's fiduciary and other common law duties precluded it from trading in the securities of the Debtor and its affiliates, including without limitation, the QUIPS, except as provided in the Securities Trading Order.

18.    On December 18, 2003, Embry, as Chairman of and on behalf of Magten, executed a Confidentiality Agreement with Official Committee of Unsecured Creditors (the **"Confidentiality Agreement"**). Under the Confidentiality Agreement, the Defendants agreed maintain confidential all nonpublic and proprietary information provided by or to the Committee.

19.    By executing the Confidentiality Agreement, Embry as Chairman of and on behalf of Magten, acknowledged that he was aware, and he would advise Magten's representatives that the United States securities laws prohibit any person in receipt from an issuer of material, non-public information from purchasing or selling or offering to purchase or sell securities of the issuer or from communication of the information to any

- 5 -

other person under circumstances in which it is reasonably foreseeable that the person

would have been likely to purchase or sell securities.

20.     Defendants' understanding of the Securities Trading Order and the

Confidentiality Agreement was made clear when, on or about February 5, 2004, counsel

for Magten requested the U.S. Trustee's approval on a motion exempting Magten from

the Securities Trading Order (the **"Draft Motion"**).  The Draft Motion was never filed

with this Court and no order of this Court has been entered relieving Defendants

obligations under the Securities Trading Order.

21.     In the Draft Motion, Defendants admitted their understanding that they

were prohibited from trading in the Debtor's securities while members of the Committee

without establishing an Ethical Wall.  In their draft motion, Defendants asserted:

> Because of Magten's structure, it is impossible for Magten to comply with
> the precise terms of the Trading Order and trade through an Ethical Wall
> Entity without further clarification of the Trading Order.  Thus, by this
> Motion, Magten seeks an order clarifying the Trading Order so as to make
> it clear that if Magten uses the services of an independent third-party
> broker (the "Broker") who does not receive any confidential information
> regarding the Debtor and that has autonomy in making buy/sell decisions
> in executing trades in the securities of the Debtor and its affiliates, Magten
> will receive the protections afforded by the Order.

22.     Thereafter, on April 16, 2004, Magten and Law Debenture Company of

New York filed an adversary proceeding to avoid the transfer of assets of Clark Fork and

Blackfoot LLC (f/k/a NorthWestern Energy LLC) (**"Clark Fork"**) to the Debtor in

November 2002 pursuant to what is generally referred to as the "going flat" transaction

(the **"Magten Adversary Proceeding"**).

23.     The Magten Adversary Proceeding resulted in an inherent conflict

between the Defendants and the Committee.  Accordingly, in a letter dated May 6, 2004,

the Trustee removed Magten from the Committee stating the relief sought in the Magten
Adversary Proceeding "is inconsistent with Magten's . . . fiduciary duty to the
Committee's constituents, the general unsecured creditors of NorthWestern Corporation."

24.     After being expelled from the Committee, Magten was still bound by the
terms of Confidentiality Agreement and the Securities Trading Order, to the extent
Magten was still in possession of material, non-public information it had obtained while
serving as a Member of the Committee.

### DEFENDANTS PURCHASE THE DEBTOR'S QUIPS WHILE IN POSSESSION OF THE DEBTOR'S NON-PUBLIC INFORMATION

25.     Notwithstanding the Confidentiality Agreement in which they
acknowledged that use of the Debtor's non-public information constituted a potential
violation of the securities laws, and the Securities Trading Order, Embry caused Magten
to purchase over 123,000 of the Debtor's QUIPS and sell 3,800 of the Debtor's QUIPS in
a series of market transactions after joining the Committee.  Upon information and belief,
Defendants were in possession of and relied upon the Debtor's and the Committee's non-
public information when executing the securities transactions.

26.     Between November 25, 2003 and May 4, 2004—the dates within which
Defendants were Committee members, the Defendants purchased 28,540 of the Debtor's
QUIPS as follows:

| | |
|---|---|
| 12/01/03 | 4,300 |
| 12/01/03 | 1,000 |
| 12/01/03 | 500 |
| 12/01/03 | 1,000 |
| 12/01/03 | 1,100 |
| 12/01/03 | 1,400 |
| 12/01/03 | 1,800 |
| 12/01/03 | 3,500 |
| 12/01/03 | 1,000 |

|          |        |
|----------|--------|
| 12/03/03 | 2,440  |
| 12/03/03 | 1,000  |
| 12/03/03 | 1,000  |
| 12/05/03 | 7,500  |
| 01/21/04 | 1,000  |
| **Total** | 28,540 |

27.    Between November 25, 2003 and May 4, 2004—the dates within which Defendants were Committee members, the Defendants sold 3,800 of the Debtor's QUIPS as follows:

|          |       |
|----------|-------|
| 12/17/03 | 1,900 |
| 12/17/03 | 1,900 |
| **Total** | 3,800 |

28.    The Defendants' purchases of QUIPS accelerated immediately after May 4, 2004, when the Defendants purchased through July 8, 2004 an additional 95,000 of the Debtor's QUIPS as follows:

|          |        |
|----------|--------|
| 05/14/04 | 1,000  |
| 05/14/04 | 1,000  |
| 05/18/04 | 1,500  |
| 05/18/04 | 1,500  |
| 05/19/04 | 500    |
| 05/19/04 | 500    |
| 05/20/04 | 1,250  |
| 05/20/04 | 1,300  |
| 05/20/04 | 2,000  |
| 05/20/04 | 4,450  |
| 05/28/04 | 1,200  |
| 06/01/04 | 1,000  |
| 06/03/04 | 5,000  |
| 06/07/04 | 800    |
| 06/08/04 | 10,500 |
| 06/09/04 | 1,500  |
| 06/15/04 | 11,600 |
| 06/16/04 | 4,000  |
| 06/17/04 | 8,700  |
| 06/18/04 | 14,000 |
| 06/21/04 | 4,000  |

- 8 -

| | |
|---|---|
| 06/23/04 | 2,000 |
| 06/29/04 | 6,800 |
| 07/02/04 | 600 |
| 07/06/04 | 3,500 |
| 07/08/04 | 4,800 |
| **Total** | 95,000 |

29.     Upon information and belief, the Defendants remained in possession of, and relied upon, the Debtor's and the committee's non-public information with respect to some or all of these QUIPS purchases. As a result of its purchases, Magten holds approximately 40% of outstanding QUIPS, and has filed a claim with regard to those QUIPS in this case.

30.     This adversary proceeding seeking subordination of Magten's claims, actual damages, equitable relief, and objecting to the Magten Claim follows.

## COUNT I

## BREACH OF FIDUCIARY DUTY

31.     Plaintiff repeats and realleges the allegations set forth in the Paragraphs 1 through 30 as though fully set forth herein.

32.     As members of the Committee, Defendants were vested with a fiduciary duty to all unsecured creditors, among other things, to act with due care, not to act in furtherance of their self-interests to the potential detriment of other creditors, to maintain confidentiality, and to guide their actions so as to safeguard the rights of minority as well as majority creditors.

33.     In addition, as members of the Committee, Defendants were obligated to comply with the Securities Trading Order. The Securities Trading Order prohibited trading by Committee members, such as Defendants, while members of the Committee and in possession of non-public information without first establishing an Ethical Wall.

- 9 -

34.     In addition, as members of the Committee, Defendants were obligated to comply with the Confidentiality Agreement they signed, under which they confirmed their duty to keep confidential all non-public information obtained as part of the Committee.

35.     Upon information and belief, after being appointed to the Committee, and after receiving material, non-public information from the Debtor and the Committee, the Defendants purchased over 100,000 shares of the Debtor's QUIPS.

36.     The Defendants' trades willfully violated their fiduciary duty to other creditors as a matter of law, under the Confidentiality Agreement, and under the Securities Trading Order.

37.     The Defendants' willful violation of their fiduciary duties caused the Debtor, the Committee, and the creditors damages in an amount to be determined.

## COUNT II

## EQUITABLE SUBORDINATION PURSUANT TO 11 U.S.C. § 510(c)

38.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 37 as though fully set forth herein.

39.     The Defendants willfully violated their fiduciary duties, willfully violated the Securities Trading Order, willfully violated the Confidentiality Agreement, and potentially violated the federal securities laws when they purchased over 100,000 shares of the Debtor's QUIPS in market trades after receipt of the Committee's and the Debtor's non-public information.

40.     The Defendant's conduct in misappropriating and using the Committee's and the Debtor's non-public information for their self interests constitutes inequitable

conduct that caused injury to the Debtor, its creditors, and the Committee. The maintenance and use of the non-public information also conferred upon the Defendants an unfair advantage over other creditors.

41.     Because of the actions described herein, the claims of Magten against the Debtor's estate should be equitably subordinated to the level of equity interests in the Debtor pursuant to section 510(c) of the Bankruptcy Code.

## COUNT III

## OBJECTION TO THE MAGTEN CLAIM

42.     Plaintiff repeats and realleges the allegations set forth in the paragraphs 1 through 41 above as though fully set forth herein.

43.     The Magten Claim asserts unliquidated claims against the Debtor's estate for: (i) damages resulting from the alleged fraudulent transfer of the utility assets of NorthWestern Energy, LLC to the Debtor on November 15, 2002 (the **"Transfer"**); and (ii) the face amount of the QUIPS held by Magten as of the Petition Date.

44.     The Defendants violated their fiduciary duties, violated the Securities Trading Order, violated the Confidentiality Agreement, and potentially violated the federal securities laws when they purchased over 100,000 shares of the Debtor's QUIPS in market trades after receipt of the Committee's and the Debtor's non-public information.

45.     The Defendant's conduct in misappropriating and using the Committee's and the Debtor's non-public information for their self interests constitutes inequitable conduct that caused injury to the Debtor, its creditors, and the Committee. The

maintenance and use of the non-public information also conferred upon the Defendants an unfair advantage over other creditors.

46.     Because of the actions described herein, the Magten Claim should be limited to the amount that Magten paid for the QUIPS.

## COUNT IV

## DAMAGES FOR VIOLATION OF THE SECURITIES TRADING ORDER

47.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 46 as though fully set forth herein.

48.     As members of the Committee, Defendants were obligated to comply with the Securities Trading Order.  The Securities Trading Order prohibited trading by Committee members, such as Defendants, while members of the Committee and in possession of non-public information without first establishing an Ethical Wall.

49.     Upon information and belief, while a Member of the Committee, the Defendants were furnished material, non-public information of the Committee and the Debtor.  The Defendants have retained possession, custody, and control over the non-public information.

50.     Upon information and belief, after receipt of the non-public information, and while in possession, custody, and control of such information, the Defendants purchased shares of the Debtor's QUIPS.

51.     Upon information and belief, the Defendants misappropriated and used the non-public information in determining to purchase some or all of the Debtor's securities.

52.     Upon information and belief, the Defendants, as members of the Committee, did not establish an Ethical Wall prior to trading in the Debtor's securities.

53.     The Defendants' trades in the Debtor's QUIPS while members of the Committee without first establishing an Ethical Wall violated the Securities Trading Order.

54.     The Defendants' violation of the Securities Trading Order caused the Debtor, the Committee, and the creditors damages in an amount to be determined. The Debtor is also entitled to an award of punitive damages.

### RESERVATION OF RIGHTS

55.     The Debtor reserves the right to amend, modify or supplement this Complaint and Objection and to object further to the Magten Claim on any and all additional factual or legal grounds, including if such claim is not reduced or disallowed as requested herein or if additional information regarding the disallowance or reduction of such claim is discovered upon further review thereof or through discovery pursuant to the applicable provisions of the Bankruptcy Rules.

56.     This Objection complies with Del. Bankr. L R  3007-1(e).  No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, Plaintiff respectfully demands judgment against Defendants as follows:

A.     For actual damages in an amount to be determined at trial;

B.     Sustaining the Debtor's objection to the Magten Claim;

C.     Compelling Defendants to account for any and all profits obtained by reason of the misconduct alleged herein and the imposition of a constructive trust on such ill-gotten profits;

D.     Subordinating the Defendants' claims;

- 13 -

E      For Defendants' willfull conduct, punitive damages in an amount to be determined at trial;

F.     For attorney's fees and costs; and

F.     Granting such other and further relief as the Court deems just and appropriate.

Dated: Wilmington, Delaware
August 20, 2004

GREENBERG TRAURIG, LLP

Scott D. Cousins (No. 3079)
William E. Chipman, Jr. (No. 3818)
Paul D. Brown (No. 3903)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801
Telephone: (302) 661-7000

And

Adam D. Cole
GREENBERG TRAURIG, LLP
885 Third Avenue
New York, NY 10022
Telephone: (212) 801-2100

**Counsel for the Debtor and
Debtor-in-Possession**

- 14 -