**<u>EXHIBIT E</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| NORTHWESTERN CORPORATION, | : Case No. 03-12872 (CGC) |
| Debtor. | : |
| | : |
| | : |
| | : |
| NORTHWESTERN CORPORATION, | : |
| Plaintiff, | : |
| v. | : |
| MAGTEN ASSET MANAGEMENT | : Adv. No. 04-55051 (CGC) |
| CORPORATION, and TALTON R. EMBRY, | : |
| Defendants. | : |
| | : |

## MEMORANDUM OF LAW OF NORTHWESTERN
## CORPORATION IN OPPOSITION TO MOTION TO DISMISS

GREENBERG TRAURIG, LLP
Scott D. Cousins
William E. Chipman, Jr.
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, Delaware 19801
Telephone: (302) 661-7000

GREENBERG TRAURIG, LLP
Adam D. Cole
885 Third Avenue
New York, New York 10022
Telephone: (212) 801-2100

*Attorneys for Debtor NorthWestern Corporation*

## TABLE OF CONTENTS

Table of Authorities ................................................................................................... iii

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 2

    The Parties ............................................................................................................... 2

    The Securities Trading Order ................................................................................... 2

    Magten's Assumption Fiduciary Responsibilities .................................................. 3

    Magten's Purchase The Debtor's QUIPs While In Possession Of
        Non-Public Information .................................................................................... 5

    Magten Is Removed From The Creditors Committee And
        Continues Its Inequitable Conduct .................................................................... 5

    The Present Adversary Proceeding .......................................................................... 6

ARGUMENT ................................................................................................................ 7

I.   THE ADVERSARY COMPLAINT SATISFIES THE PLEADING REQUIREMENTS OF
    THE FEDERAL RULES OF CIVIL PROCEDURE AND SHOULD THEREFORE BE
    SUSTAINED ........................................................................................................... 7

    A.   The Standards Applicable To Magten's Motion ......................................... 7

    B.   The Adversary Complaint Satisfies Rule 8(a) Because It
          Provides Magten With Fair Notice Of The Claims ................................. 8

    C.   Magten's Reliance Upon A Declaration To Disagree With Factual Allegations In
          The Adversary Complaint Is Improper .............................................. 12

II.  THE ADVERSARY COMPLAINT STATES CLAIMS FOR DAMAGES AND
    EQUITABLE SUBORDINATION AND SHOULD THEREFORE BE SUSTAINED ........ 13

    A.   The Adversary Complaint Sufficiently Notifies Magten Of Its Inequitable
          Conduct .................................................................................... 14

    B.   Magten's Violations Of The Securities Trading Order And
          The Confidentiality Agreement Constitute Inequitable
          Conduct .................................................................................... 18

**TABLE OF CONTENTS CONT.**

III. EQUITABLE SUBORDINATION AND DAMAGES ARE
    APPROPRIATE REMEDIES.................................................................................... 20

CONCLUSION.................................................................................................................... 24

## TABLE OF AUTHORITIES

**Federal Cases**

Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808
(3d Cir. 1990)................................................................................................................. 10

Citicorp Venture Capital, Ltd. v. Committee of Creditors (In re Papercraft Corp.),
160 F.3d 982 (3d Cir. 1998)................................................ 15, 16, 17, 18, 19, 21, 22, 23, 24

Citicorp Venture Capital, Ltd. v. Committee of Creditors, 323 F.3d 228 (3d Cir.
2002) ................................................................................................................................ 16, 20

Conley v. Gibson, 355 U.S. 41 (1957)................................................................................. 8, 14

In re Enron Corp., 2004 WL 2165348 (Bankr. S.D.N.Y.  Sept. 23, 2004)............................... 8, 11

In re Life Service Systems, Inc., 279 B.R. 504 (W.D. Pa. 2002) ................................................. 16

In re Martin, 91 F.3d 389 (3d Cir. 1996) ................................................................................... 22

In re Metiom, Inc., 301 B.R. 634 (Bankr. S.D.N.Y. 2003)........................................................ 9, 11

In re Mid-American Waste Systems, Inc., 284 B.R. 53 (Bankr. D. Del. 2002) .................... 21, 23

In re Papercraft Corp., 187 B.R. 486 (W.D. Pa. 1995) ............................................................. 17, 18

In re Teltronics Servs., Inc., 29 B.R. 139 (Bankr.E.D.N.Y.1983) ........................................... 20, 21

Langadinos v. American Airlines, Inc. 199 F.3d 68 (1st Cir. 2000) ............................................ 11

Manufacturers Trust Co. v. Becker, 338 U.S. 304 (1949) ........................................................... 18

Nami v. Fauver, 82 F.3d 63 (3d Cir. 1996)................................................................................. 14

Official Committee of Unsecured Creditors of Cybergenics Corp., 330 F.3d 548
(3d Cir. 2003)................................................................................................................... 22

O'Neil v. Q.L.C.R.I., Inc., 750 F. Supp. 551 (D.R.I. 1990)........................................................ 20

Perington Wholesale, Inc. v. Burger King Corp., 631 F.2d 1369 (10th Cir. 1979)..................... 12

Pinker v. Roche Holdings Ltd., 292 F.3d 361 (3d Cir. 2002)....................................................... 8

## TABLE OF AUTHORITIES

Static Control Components, Inc. v. Darkprint Imaging, Inc., 135 F. Supp. 2d 722 (M.D.N.C. 2001) .................................................................................................. 12

Swierkiewicz v. Sorema, 534 U.S. 506 (2002) ......................................................... 9, 10

U.S. v. O'Hagan, 521 U.S. 642 (1997) .......................................................................... 24

Walton v. Morgan Stanley & Co. Inc., 623 F.2d 796 (2d Cir. 1980) ............................ 24

Zakutansky v. Bionetics Corp., 806 F. Supp. 1362 (N.D. Ill. 1992) ............................. 12

**State Cases**

Brophy v. Cities Service Co., 70 A.2d 5, 246 (Del. Ch. 1949) ...................................... 24

St. James Recreation, LLC v. Rieger Opportunity Partners, LLC, 2003 WL 22659875 (Del. Ch.) ....................................................................................... 24

Stonington Partners, Inc. v. Lernout & Houspie Speech Products, N.V., 2002 WL 31439767 (Del. Ch.) ....................................................................................... 24

T.V. Spano Bldg. Corp. v. Wilson, 584 A.2d 523 (Del. Super. Ct. 1990) .................... 24

**Federal Statutes**

28 U.S.C. § 1746(1) ....................................................................................................... 14

### INTRODUCTION

This adversary proceeding relates to the systematic attempt by Defendants Magten Asset Management Corporation ("Magten") and Talton R. Embry ("Embry") to "hold up" the Debtor, NorthWestern Corporation ("NorthWestern" or the "Debtor"), and its Official Committee of Unsecured Creditors (the "Creditors Committee"), by doing everything they could to block, delay, and increase costs of the Debtor's reorganization. Magten, while a member of the Creditors Committee, a fiduciary, and privy to non-public financial and strategic information, secretly purchased at a discount over 120,000 of the Debtor's Series A 8.45% Quarterly Income Preferred Securities (the "QUIPS"). Magten and Embry made these purchase to obtain an unfair and inequitable "blocking position" in the Debtor's Chapter 11 case for their own self-interest, to influence negotiations, and ultimately to hinder the Debtor's and Committee's attempts at a rapid reorganization. Through its attempts to block and delay, Magten and Embry sought to force the Debtor and the Committee to forego value to Magten and Embry, when none was otherwise warranted, to the detriment of other creditors.

By this adversary proceeding, the Debtor seeks damages and equitable relief (including disgorgement of ill-gotten gains) to compensate itself and its creditors for the Defendants' unfair advantage, breach of fiduciary duty, breach of contract, and violation of an express Court order prohibiting the very trading activity in which the Defendants engaged. Based upon the same inequitable and self-interested conduct, the Debtor also objects to and seeks subordination of Magten's claim in this Chapter 11 case under Sections 502(b) and 510(c) of the Bankruptcy Code, respectively.

Without regard for the settled standards under which a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure Federal is to be resolved, the relevant Third

Circuit precedent supporting subordination of their claims, or the relevant state law prohibiting their QUIPs trades, the Defendants contend that the Adversary Complaint fails to state a claim. The Defendants are wrong. As demonstrated below, the Defendants' trades in the Debtor's QUIPs combined with their other related actions in this Chapter 11 case constitute the very nature of actions that warrant equitable subordination and disgorgement of ill-gotten gains. For these reasons, and as demonstrated in further detail below, Defendants' motion to dismiss should be denied.

## FACTUAL BACKGROUND

The following facts set forth in the Adversary Complaint are assumed true for purposes of the present motion to dismiss.

### The Parties

Plaintiff and Debtor NorthWestern is a publicly traded Delaware corporation incorporated in 1923. (Adversary Complaint ¶ 4.) NorthWestern and its direct and indirect non-Debtor subsidiaries comprise one of the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of the United States. (Id.) NorthWestern serves approximately 608,000 customers throughout Montana, South Dakota, and Nebraska. (Id.)

Magten is a Delaware corporation with its principal place of business in New York. (Id. ¶ 5.) Defendant Embry is Magten's principal owner and its Chairman. (Id. ¶ 6.) Other than Embry, Magten has only one employee, a secretary named Jean Colditz. (Id.)

### The Securities Trading Order

On September 14, 2003 NorthWestern filed its voluntary petition for relief under Chapter 11 of Bankruptcy Code. Thereafter, NorthWestern continued to operate its business and

manage its properties as debtor-in-possession. (Id. ¶ 8.) On September 30, 2003, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors. (Id. ¶ 9.)

On or about November 6, 2003, this Court entered an Order Permitting Securities Trading Upon Establishment of Ethical Wall (the "Securities Trading Order") recognizing the fiduciary duties of Creditors Committee members, and declaring the circumstances under which Creditors Committee members would be permitted to trade in the Debtor's securities. (Id. ¶ 12.) The Securities Trading Order prohibited Creditors Committee members from trading in the securities of the Debtor and its affiliates, unless members implemented an "ethical wall" to prevent:

> (i) the Ethical Wall Entity's trading personnel from misusing any material non-public information obtained by such Ethical Wall Entity's designated representative(s) involved in Committee-related or reorganization-related activities ("C/R Personnel"); and

> (ii) C/R Personnel from receiving material non-public information regarding such Ethical Wall Entity's trading in the Securities in advance of such trades. This Order does not preclude this Court from taking any action it deems appropriate in the event that an actual breach of fiduciary duty has occurred.

Accordingly, to comply with the Securities Trading Order, Creditors Committee members were required to establish an "Ethical Wall" before trading in the Debtor's securities. (Id. ¶ 13.)

**Magten's Assumption Fiduciary Responsibilities**

As an owner of QUIPs, and upon its request, Magten was appointed to the Creditors Committee on November 25, 2003. (Id. ¶ 14.) Magten was represented on the Creditors Committee by Defendant Embry, who is Magten's principal and 100% owner. (Id.) Upon information and belief, upon appointment to the Creditors Committee or shortly thereafter, the Defendants became aware of the Securities Trading Order. Moreover, once appointed to the Creditors Committee, Magten's fiduciary and other common law duties precluded it from trading

in the Debtor's securities for an inequitable purpose and except as provided in the Securities Trading Order.

The Complaint alleges that upon being appointed to the Committee, Magten obtained possession of the Debtor's and the Creditors Committee's material, non-public information concerning NorthWestern and its reorganization prospects. (Adversary Complaint ¶ 16.) In addition, on December 18, 2003, Magten executed a Confidentiality Agreement with Official Committee of Unsecured Creditors (the "Confidentiality Agreement") under which it agreed to maintain the confidentiality of all nonpublic and proprietary information provided by or to the Creditors Committee. (Id. ¶ 18.) As with most Creditors Committees in major Chapter 11 cases, and consistent with the purpose of the Confidentiality Agreement, the Debtor has information and belief that Magten received material, non-public information concerning the Debtor during the course of its membership on the Creditors Committee. (Id. ¶ 16.)

Defendants' understanding of their obligations under the Securities Trading Order and the Confidentiality Agreement was made clear when, on or about February 5, 2004, counsel for Magten requested the United States Trustee's approval on a motion exempting Magten from the Securities Trading Order (the "Draft Motion"). In the Draft Motion, Defendants confirmed their awareness of the Securities Trading Order and their understanding that they were prohibited from trading in the Debtor's securities while members of the Creditors Committee without establishing an Ethical Wall. Accordingly, they sought relief from the order:

> Because of Magten's structure, it is impossible for Magten to comply with the precise terms of the Trading Order and trade through an Ethical Wall Entity without further clarification of the Trading Order. Thus, by this Motion, Magten seeks an order clarifying the Trading Order so as to make it clear that if Magten uses the services of an independent third-party broker (the "Broker") who does not receive any confidential information regarding the Debtor and that has autonomy in making buy/sell decisions in executing trades in the securities of the

Debtor and its affiliates, Magten will receive the protections afforded by the Order.  (Id. ¶ 20.)

## Magten's Purchase The Debtor's QUIPs While In Possession Of Non-Public Information

Notwithstanding the Confidentiality Agreement in which they acknowledged that use of the Debtor's non-public information constituted a potential violation of the securities laws, and the Securities Trading Order, Embry caused Magten to purchase over 123,000 of the Debtor's QUIPS and sell 1,900 of the Debtor's QUIPS in a series of open market transactions after joining the Creditors Committee.  (Id. ¶ 25.)  Between November 25, 2003 and May 4, 2004—the dates within which Defendants were Creditors Committee members, Magten purchased 27,540 and sold 1,900 of the Debtor's QUIPS.  (Id. ¶ 26-27.)   The Defendants' purchases of QUIPS accelerated immediately after May 4, 2004, when the Defendants purchased through July 8, 2004 an additional 95,000 of the Debtor's QUIPS.   (Id. ¶ 28.)

The Adversary Complaint asserts upon information and belief that Defendants were in possession of and relied upon the Debtor's and the Committee's non-public information when executing some or all of the QUIPS purchases.  (Id. ¶ 29.)  As a result of its purchases, Magten holds approximately 40% of outstanding QUIPS, and a "blocking position" in Class 8(b) of the Debtor's Plan.  Indeed, and as demonstrated during the Confirmation Hearing on the Debtor's Plan, Class 8(b) is the only creditor constituency that voted to reject the Plan.

## Magten Is Removed From The Creditors Committee And Continues Its Inequitable Conduct

Magten filed a Proof of Claim designated claim number 842 by the Debtor's claims agent.  (Id. ¶ 11.)  Magten's Proof of Claim asserted unliquidated claims against the Debtor's estate to recover the full value of the QUIPs it held with interest, and damages resulting from the alleged fraudulent transfer of the utility assets of NorthWestern Energy, LLC to the

Debtor on November 15, 2002. (Id.)  Thereafter, on April 16, 2004, Magten filed an adversary proceeding to avoid the transfer of assets of Clark Fork and Blackfoot LLC (f/k/a NorthWestern Energy LLC) to the Debtor in November 2002 pursuant to what is generally referred to as the "going flat" transaction.

Magten's adversary proceeding resulted in an inherent conflict between Magten and the Creditors Committee, as Magten was seeking to profit on its own QUIPs at the expense of other unsecured creditors.  Accordingly, on May 6, 2004, the Trustee removed Magten from the Creditors Committee stating the relief sought in the Magten's adversary proceeding "is inconsistent with Magten's . . . fiduciary duty to the Committee's constituents, the general unsecured creditors of NorthWestern Corporation." (Id. ¶ 23.)

After being expelled from the Committee, Magten was still bound by the terms of Confidentiality Agreement and the Securities Trading Order to the extent Magten was still in possession of material, non-public information it had obtained while serving as a Creditors Committee member.  (Id. ¶ 24.)  Magten purchased 95,000 QUIPs in the weeks and months after being expelled from the Creditors Committee in open market transactions.  (Id. ¶ 28.)

**The Present Adversary Proceeding**

This adversary proceeding seeking subordination of Magten's claims, actual damages, equitable relief, and objecting to the Magten Claim followed.  The Adversary Complaint  states that by their violating fiduciary duty to other creditors to act with due care, not to act in furtherance of their self-interests to the potential detriment of other creditors, to maintain confidentiality, and to guide their actions so as to safeguard the rights of minority as well as majority creditors, Defendants caused damages to both the Debtor and other creditors.

The Defendants' unfair and inequitable actions included violations of the Securities Trading Order, Confidentiality Agreement, and both federal and state laws.

Defendants now move to dismiss the Adversary Complaint. For the reasons set forth below, the Defendants' motion is baseless and should be denied.

## ARGUMENT

I.   **THE ADVERSARY COMPLAINT SATISFIES THE PLEADING REQUIREMENTS OF THE FEDERAL RULES OF CIVIL PROCEDURE AND SHOULD THEREFORE BE SUSTAINED**

A.   **The Standards Applicable To Magten's Motion**

Before dismissal of the Adversary Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be considered, Magten is required to establish "beyond doubt" that the Debtor "can prove no set of facts in support of [its]claims which would entitle [it] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (emphasis added). In determining whether Magten has met its heavy burden, the Court is required to "accept all factual allegations as true, "construe the complaint in the light most favorable to the plaintiff, and determine whether, "under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002). Thus, the Court's inquiry is "not whether [the Debtor] will ultimately prevail in a trial on the merits, but whether [it] should be afforded an opportunity to offer evidence in support of [its] claims." Id. at 374.

In considering Magten's motion to dismiss, the Court should also bear in mind the applicable pleading burden under Rule 8(a) of the Federal Rules of Civil Procedure—the pleading Rule applicable to adversary complaints seeking equitable subordination, as Magten concedes. (Magten Motion ¶¶ 22-23.) See In re Enron Corp., NO. 01 B 16034(AJG), 03-9266 A, 2004 WL 2165348 at *5 (Bankr. S.D.N.Y. Sept. 23, 2004) (equitable subordination claim

sustained under Rule 8(a) because the "Complaint provides a summary of the allegations against [the defendant] and identifies the particular transactions at issue. [The Defendant] has fair notice of the claims."); In re Metiom, Inc., 301 B.R. 634 (Bankr. S.D.N.Y. 2003) (equitable subordination claim provided "sufficient notice" under "Fed. R. Civ. P. 8(a)"). The United States Supreme Court has made it clear that Rule 8(a) does "'not require a claimant to set out in detail the facts upon which he bases his claim.'" Swierkiewicz v. Sorema, 534 U.S. 506, 512 (2002) (quoting Conley, 355 U.S. at 47). Rather, Rule 8(a) mandates the Adversary Complaint provide "a short and plain statement of the claim showing that the [Debtor] is entitled to relief"—that is, provide "'the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Id. (See Magten Motion ¶ 22.)

### B. The Adversary Complaint Satisfies Rule 8(a) Because It Provides Magten With Fair Notice Of The Claims

The Adversary Complaint satisfies the requirements of Rule 8(a) and the standards declared by the Supreme Court because it provides Magten "fair notice" of the basis for the Debtor's claims. At its core, the Adversary Complaint asserts that Magten used its membership on the Creditors Committee to misappropriate material, non-public, information for its self-interest, and to the detriment of the Debtor and the creditors for whom it acted as a fiduciary.[1] (Adversary Complaint ¶¶ 1-37.) In particular, Magten used its confidential status both during and after its membership on the Creditors Committee to purchase over 120,000 of the Debtor's QUIPs. (Id. ¶ 25.)

---

[1] Without benefit of discovery, the Debtor is unable at present to allege that Magten's actions constituted actionable fraud. Should discovery provide the relevant evidence to support a fraud claim, the Debtor will move to amend its pleadings at that time.

Magten's purpose in purchasing the Debtor's QUIPs was to assert a position of influence over the reorganization negotiations by obtaining a "blocking position" to any Class 8(b) approval of the Debtor's Plan. (Id. ¶ 2.) Given that Magten made its QUIPs purchases in the public markets (Id. ¶ 25, 39, 44), and subject to further discovery, it is unlikely that Magten informed the sellers of the QUIPs of its position on the Creditors Committee, the non-public information to which it was privy, or its plan to obtain a control premium and blocking position from its purchases. As demonstrated in the Plan confirmation proceedings in the Debtor's Chapter 11 case, despite the fact that the QUIPS holders overwhelmingly voted in favor of the Plan in number, Magten's actions diluted the voting rights of other QUIPs holders, resulting in Class 8(b) being the only class to vote to reject the Debtor's Plan.[2]

Magten's actions were exacerbated by the fact that they were directly contrary to the express order of this Court. Contrary to the terms of the Court's Securities Trading Order, Magten purchased the Debtor's QUIPs without first establishing an "Ethical Wall." (Adversary Complaint ¶ 12.) Magten was well aware of the Court's Securities Trading Order—entered to establish the limited circumstances under which a Creditors Committee member could trade in the Debtor's securities—but disregarded the order because, it believed, it could not comply with its terms. (Id. ¶¶ 20-21.) Of course Magten could have complied by either not becoming a Creditors Committee member, or by simply not trading in the Debtor's securities after becoming

---

[2]   See Order Confirming Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, entered October 19, 2004 (the **"Confirmation Order"**) [Docket No. 2237]. In considering a Rule 12(b)(6) motion, this Court considers the allegations of the Complaint but may also consider matters of public record and items appearing in the record of this case. See Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

a member.  With knowledge of its options, and actions, Magten instead chose to violate the order.

Magten does not contest that it has received "fair notice of what the plaintiff's claim is and the grounds upon which it rests"; indeed, Magten summarized the circumstances, allegations, and relief sought in the Adversary Complaint in its Motion with ease.  (See Magten Motion at 1-2.)  Rather, Magten argues that the Adversary Complaint is somehow deficient because it is based upon the Debtor's "information and belief," and that the matters alleged are within the Debtor's "knowledge or control."  (Magten Motion 23-24.)  Magten's understanding of the pleading standards under the Federal Rules as well as the facts within the Debtor's "knowledge or control" is misplaced.

The Federal Rules of Civil Procedure expressly authorize allegations of fact that, although not known to be true, are "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . likely to have evidentiary support after reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b) (emphasis added); accord Langadinos v. American Airlines, Inc. 199 F.3d 68, 73 (1st Cir. 2000) (vacating dismissal, the court ruled that "a plaintiff can make allegations either on the basis of personal knowledge or on 'information and belief'").  The only exception to information and notice pleadings is in cases—such as fraud or mistake—where the more burdensome pleading standards of Rule 9(b) replace the more liberal requirements of Rule 8(a).  Langadinos, 199 F.3d at 73.  The present adversary proceeding seeks equitable subordination and related damages, claims which, as demonstrated above, fall with the confines of Rule 8(a).  Enron, supra, 2004 WL 2165348 at *5; Metiom, 301 B.R. at 642.

Magten contends based upon <u>Static Control Components, Inc. v. Darkprint Imaging, Inc.</u>, 135 F. Supp. 2d 722 (M.D.N.C. 2001) and <u>Perington Wholesale, Inc. v. Burger King Corp.</u>, 631 F.2d 1369 (10th Cir. 1979) that pleading upon "information and belief" is only permissible when the facts are "within the defendants knowledge or control." (Magten Motion ¶ 24.)  In neither case did the court limit the federal pleading rules in the fashion Magten suggests; the court in <u>Static Control</u> upheld a misappropriation claim based upon the plaintiff's information and belief, and even referred to <u>Perington</u> for its ruling that "pleading on information and belief 'fits well with the spirit of the rules.'" <u>Static Control</u>, 135 F. Supp. 2d at 728 & n.6, <u>quoting Perington</u>, 631 F.2d at 1372.  Indeed, contrary to Magten's assertion, "even apart from facts" within the knowledge of the defendants "there may be perfectly good reasons to support the filing of a lawsuit based on information rather than buttoned-down knowledge." <u>Zakutansky v. Bionetics Corp.</u>, 806 F. Supp. 1362, 1363-64 (N.D. Ill. 1992).  As the court in <u>Zakutansky</u> explained, "if a plaintiff has alleged something on information and belief that could have been learned by prefiling inquiry and that proves to be true in fact, no defendant can complain – and if it turns out that the allegation is false, that does not impair the validity of the pleading . . . ." <u>Id.</u>

In any event, Magten is mistaken that the allegations alleged upon information and belief in the Adversary Complaint were within the Debtor's exclusive "knowledge and control."  Each of the allegations to which Magten points as troublesome refers to information Magten obtained from, and during its tenure as a member of, the Creditors Committee[3]:

> 16.  Upon information and belief, <u>upon being appointed to the Committee</u>, Magten obtained possession of the Debtor's <u>and the Committee's</u> material, non-public information.

---

[3]  The Debtor does know what material non-public information was provided to counsel to the Committee and when; however, the Debtor does not know at this time when and how this information was disseminated to Committee members.

29. Upon information and belief, the Defendants remained in possession of, and relied upon, the Debtor's and the Committee's non-public information with respect to some or all of these QUIPs purchases.

49. Upon information and belief, while a Member of the Committee, the Defendants were furnished material, non-public information of the Committee and the debtor. The Defendants have retained possession, custody, and control over the non-public information.

(Magten Motion ¶ 23 [emphasis added].)  Because the Debtor is neither a member of the Creditors Committee—indeed, it is adverse—and is not party to the communications among, and the information exchanged by, the Creditors Committee and its members, the information upon which these allegations are based is decidedly not within the Debtor's knowledge or control. The information is within the Creditor Committee's and Magten's knowledge or control, and will only be confirmed and proven upon further discovery—precisely the litigation structure Rule 8(a) was enacted to promote.

### C.   Magten's Reliance Upon A Declaration To Disagree With Factual Allegations In The Adversary Complaint Is Improper

Magten next concedes its understanding and notice of the Debtor's claims by attempting to contest the evidentiary basis for the claims through an invalid declaration of Defendant Embry. The so-called "Declaration" contests the allegations set forth in the Adversary Complaint by pleading that Magten was not in possession of non-public information at the time of its purchases of the Debtor's QUIPs. (Magten Motion 34-46.) The Embry Declaration, however, should be stricken, and its assertions rejected, at this point in the present proceeding for two reasons.

The so-called Declaration is, in the first instance, invalid on its face. Before an unsworn declaration may be used in this and other Federal Courts, Section 1746 of the Judicial Code requires the assertions be subscribed "as true under penalty of perjury" and in substantially

the following form: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date)." 28 U.S.C. § 1746(1). Defendant Embry failed to subscribe to his unsworn statement under penalty of perjury, and therefore his "Declaration" is invalid on its face.

      More importantly, the Declaration attempts to introduce purported "evidence" that is beyond the four corners of the Adversary Complaint. It bears repeating that Magten's burden on the present motion is to establish "beyond doubt" that the Debtor "can prove no set of facts in support of [its]claims which would entitle [it] to relief" assuming "all factual allegations as true." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Evidence in the form of affidavits submitted to contest allegations in the Adversary Complaint must be disregarded. Nami v. Fauver, 82 F.3d 63, 69 (3d Cir. 1996). Indeed, the nature of non-public information in Magten's possession at the time of each purchase, and the extent to which it relied upon such information in connection with each purchase, remain questions of fact to be resolved at trial where Defendant Embry will be subject to cross examination.

* * * *

      In short, the Adversary Complaint meets the pleading requirements of Rule 8(a), and adequately notifies Magten of the Debtor's claim and the grounds upon which it rests. Magten's motion, accordingly, should be denied for this reason alone.

## II.    THE ADVERSARY COMPLAINT STATES CLAIMS FOR DAMAGES AND EQUITABLE SUBORDINATION AND SHOULD THEREFORE BE SUSTAINED

      Assuming the facts alleged true, and according the Debtor all reasonable inferences as required under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Adversary Complaint states claims for damages and for "equitable subordination" under Section 510(c) of the Bankruptcy Code. Equitable subordination is warranted where, as here, (1) the

DEL-SRV01\125322v09

claimant engaged in "some type of inequitable conduct," (2) the misconduct resulted in "injury to creditors or conferred an unfair advantage on the claimant," and (3) "not inconsistent with the provisions of the bankruptcy code." Citicorp Venture Capital, Ltd. v. Committee of Creditors (In re Papercraft Corp.), 160 F.3d 982, 986-87 (3d Cir. 1998) ("Papercraft"). Under the standards set forth in Papercraft—the "paradigm case of inequitable conduct" supporting equitable subordination (id. at 987)—the Adversary Complaint more than adequately states a claim for equitable subordination.

**A.      The Adversary Complaint Sufficiently
           Notifies Magten Of Its Inequitable Conduct**

In Papercraft, the defendant purchased more than $60 million in pre-petition unsecured debentures from third parties at a discount while a fiduciary of the debtor and its creditors, and while in possession of non-public information.[4] As a result of its debenture purchases equaling approximately 40% of the outstanding unsecured debt, and motivated by a self-interest to profit, the defendant obtained a "blocking position" with respect to votes by unsecured creditors to approve the debtor's plan of reorganization. The defendant did not obtain approval from the creditors committee before purchasing the debentures, did not disclose its position as a fiduciary to selling noteholders, and did not disclose the purpose of its substantial debenture purchases to secure a position of influence over reorganization negotiations. 160 F.3d at 988-990.

---

[4] The defendant was a fiduciary of Papercraft's creditors by virtue of its membership on Papercraft's board of directors. Papercraft, 160 F.3d at 987. Papercraft applies equally where, as here, the defendant's fiduciary duty to creditors arises from its membership on an official committee of unsecured creditors. E.g., In re Life Service Systems, Inc., 279 B.R. 504 (W.D. Pa. 2002) (relying upon Papercraft, the upheld the trustee's claim and awarded damages against committee member for breach of fiduciary duty and inequitable actions).

In affirming the findings of the bankruptcy court and the district court on appeal, the Third Circuit held that the facts "reflect[ed] ample inequitable conduct to support a subordination remedy." Id. at 987. The Third Circuit pointed to three facts, any one of which the court held was a basis for subordination:

> the Papercraft notes (1) were purchased for the dual purpose of making a profit for [the defendant] on the notes and of being able to influence the reorganization in its own self interest, (2) were purchased with the benefit of non-public information acquired as a fiduciary, and (3) were acquired without disclosure of its purchasing plans to the bankruptcy court, the Papercraft board, the Committee, or the selling note holders.

Id. at 988; see id. (the defendant's "failure to disclose its identity to note sellers" or its "purchasing plans" constituted "inequitable conduct"); see In re Life Service Systems, Inc., 279 B.R. 504 (W.D. Pa. 2002) ("A committee member violates [its fiduciary duty] by taking action that furthers its own self-interest to the potential detriment of those whom they represent."). Moreover, the court declared that the appropriate remedy for the defendant's actions, "[a]t a minimum," should "deprive [the defendant] of its profit on the purchase of the notes." Papercraft, 160 F.3d at 991. The bankruptcy court, district court, and Third Circuit ultimately approved subordination of the defendant's claim well in excess of its profit on the notes. Citicorp Venture Capital, Ltd. v. Committee of Creditors, 323 F.3d 228, 233-34 (3d Cir. 2002).

Although not identical, Magten's actions in the present Adversary Proceeding mirror those found as "ample inequitable conduct" upon which subordination was appropriately based in the "paradigm" Papercraft case. 160 F.3d at 987. As in Papercraft, the Adversary Complaint asserts that Magten was a member of the Creditors Committee at the time it purchased the Debtors' QUIPS, and when, upon information and belief, it was in possession of non-public information. (Adversary Complaint ¶¶ 26, 25, 29, 35.) As a result of its purchases,

and as with the defendant in Papercraft, Magten owns approximately 40% of the Debtor's

QUIPs—a position it used to block approval of the Debtor's Plan by other Class 8(b) members

who voted in support of the Debtor's Plan, and to influence Plan structure and negotiations for its

self-interest and profit.  Finally, Magten did not obtain approval to purchase the QUIPs, since it

failed to sign the Securities Trading Order, and it is reasonable to infer from the open market

nature of its QUIPs purchases that Magten did not notify the QUIPs sellers of its status,

information, and purpose before purchasing the QUIPs.  (Id. ¶ 21, 26, 27, 28.)  Under Papercraft,

the Adversary Complaint states a claim.

Perhaps most indefensible is the uncontested fact that Magten was well-aware of

its obligations and trading limitations as a Creditors Committee member, but chose to ignore its

responsibilities nonetheless.  Magten knew of the Securities Trading Order and its requirement

that an "Ethical Wall" be established prior to trading in the Debtor's securities.  (Adversary

Complaint ¶¶ 21.)  Moreover, Magten cannot dispute its knowledge of the guidelines set forth in

Papercraft, for Magten was a party in the Papercraft case, purchased Papercraft securities as a

member of the creditors committee, and was ultimately forced to enter a settlement of its claims

by which it agreed to receive no more than its cost at the time of distribution under the plan.  In

re Papercraft Corp., 187 B.R. 486, 492 n.1 (W.D. Pa. 1995).[5]  In short, Magten's actions

---

[5] The bankruptcy court explained Magten's actions as follows:

constitute the very inequitable conduct upon which subordination and related relief is warranted under Papercraft.

Purportedly relying upon Papercraft, Magten argues that the Adversary Complaint should be dismissed because the Third Circuit "rejected" a "*per se* prohibition on trading in the securities of the Debtor while serving on a creditors' committee." (Magten Motion ¶ 26.) The Third Circuit in Papercraft declared the opposite. The Third Circuit held that "we need not, and do not resolve the issue here" and that the "authority is arguably to the contrary"—namely the United States Supreme Court's decision in Manufacturers Trust Co. v. Becker, 338 U.S. 304, 313-14 (1949). 160 F.3d at 988 & n.3.[6] Moreover, as with the defendant in Papercraft, Magten's inequitable conduct extends well-beyond that of innocently purchasing QUIPs while a member of the Creditors Committee rendering establishment of a *per se* rule unnecessary here. Id. at 998 n.3 (determining it unnecessary to resolve whether there exists a *per se* trading

---

On or about May 23, 1991, while it was a member of the creditors' committee, Magten purchased, on behalf of clients, approximately $3.8 million in Second Priority Notes from Oppenheimer & Co. for approximately $379,000. Oppenheimer was a member of the Informal Committee and acknowledged in writing that it knew Magten was the purchaser. Magten also made other offers to purchase Papercraft notes, again on behalf of clients. In January, 1991, Magten entered into a settlement agreement by which it agreed to receive no more than its cost of these claims at the time of distribution under the plan. Magten disclosed to those entities from which it purchased notes its position with the committee and the bankruptcy. Unlike CVC, Magten had disclosed its identity and connection with Debtor. Furthermore, Magten was not buying notes for its own account, as was CVC, but for accounts of its customers.

In re Papercraft Corp., 187 B.R. 486, 492 n.1 (W.D. Pa. 1995).

[6] In Becker, the Supreme Court observed that "if it is clear that a fiduciary may ordinarily purchase debt claims in fair transactions during the solvency of the corporation, the lower federal courts seem agreed that he cannot purchase after judicial proceedings for the relief of a debtor are expected or have begun." 338 U.S. at 313-14.

prohibition "in light of the findings of the bankruptcy court" of inequitable conduct).[7]  Stated

another way, the Debtor does not request the Court recognize a *per se* bankruptcy rule against

trading in the Debtor's securities since Magten's inequitable conduct as a whole constitutes

"ample inequitable conduct to support a subordination remedy." Id. at 987.[8]

In short, Magten's inequitable actions similar to those of the defendant in

Papercraft as alleged in the Adversary Complaint and herein state a claim for relief under Section

510(c) of the Bankruptcy Code.  Magten's motion to dismiss, accordingly, should be denied for

this reason alone.

### B.    Magten's Violations Of The Securities Trading Order And The Confidentiality Agreement Constitute Inequitable Conduct

Magten next contends that it was not obligated to follow the Securities Trading

Order and Confidentiality Agreement, and therefore its actions in violation of those instruments

---

[7] Indeed, Magten's entire reading of Papercraft is confused.  (Magten Motion ¶ 26.) Magten contends that the bankruptcy court "applied a *per se* rule that when a claim is purchased by an insider at a discount without adequate disclosure to the debtor and creditors such claim will be limited."  (Magten Motion ¶ 26.)  In fact, the bankruptcy court applied a rule that an inequitable purchase of the debtor's securities limits the purchaser's claim in the debtor's chapter 11 case *per se* to the purchase price paid for the securities—thus eliminating any profit. Papercraft, 160 F.3d at 990.  The Third Circuit rejected the bankruptcy court's *per se* rule, and declared that under the Section 510(c) of the Bankruptcy Code, subordinating the defendant's claim to the extent of its purchase price and depriving the defendant of its profit was the "minimum" remedy, and remanded for consideration "further subordination." Id. at 991.

[8] For the same reason, Magten's reference to the position of the Securities and Exchange Commission is misplaced.  (Magten Motion ¶ 25.)  The Debtor's claims are based upon Magten's inequitable conduct as a whole.  In any event, the SEC has made it clear that trading in a chapter 11 debtor's securities while a member of a statutory committee is permissible under the Securities laws where "the member is an entity that is engaged in the trading of securities as a regular part of its business and has implemented procedures reasonably designed to prevent the transmission to trading personnel of information obtained through service on the official. S.E.C. Release No. CR - 392, 52 S.E.C. Docket 1958, 1992 WL 308084; see Kaplan Dec., Exh. "E". Here, Magten failed to follow the "procedures" established by the Court in its Securities Trading Order and therefore acted contrary to the mandate of the SEC.  Moreover, the legal basis for the Debtor's claims here is Section 510(c) of the Bankruptcy Code, not the Securities laws.

are irrelevant. (Magten Motion ¶ 29.) The purpose of the Securities Trading Order and

Confidentiality Agreement were to enable Creditors Committee members to obtain and create

non-public information to assist in their representation of creditors at large, while permitting

them to trade in the Debtor's securities under fair and very limited circumstances. (See

Adversary Complaint ¶ 12.) Violation of the Securities Trading Order and Confidentiality

Agreement constitute acts in bad faith and unfairness that, along with Magten's other inequitable

conduct, provide a basis for equitable subordination. See, e.g., O'Neil v. Q.L.C.R.I., Inc., 750 F.

Supp. 551, 555-56 (D.R.I. 1990) (the court may "fashion[] relief" in the form of equitable

subordination for the defendants violation of an environmental order). Indeed, the Third Circuit

acknowledged the flexibility and breath of circumstances under which equitable subordination is

warranted in its decision after remand in Papercraft:

> "The remedy of equitable subordination must remain <u>sufficiently</u>
> <u>flexible to deal with manifest injustice resulting from the violation</u>
> <u>of the rules of fair play</u> . . . where ingenuity spawns unprecedented
> vagaries of unfairness, [bankruptcy courts] should not decline to
> recognize their marks, nor hesitate to turn the twilight for
> [offending claimants] into a new dawn for other creditors."

Citicorp Venture Capital, Ltd. v. Committee of Creditors, 323 F.3d 228, 234 (3d Cir. 2003),

quoting In re Teltronics Servs., Inc., 29 B.R. 139, 172 (Bankr. E.D.N.Y.1983) (emphasis added).

Perhaps realizing that a violation of the Securities Trading Order and

Confidentiality Agreement would constitute a basis for equitable subordination, Magten

contends that its trades were appropriate because they did not violate securities laws. (Magten

Motion ¶¶ 28-36.) The Securities Trading Order, however, does not require a violation of the

securities laws to violate the order. The Securities Trading Order is an "Order permitting

Members (present and future, if any) to trade in the NOR Group's Securities <u>upon the</u>

<u>establishment and implementation of Ethical Walls and in accordance with the terms and</u>

conditions of this Order." [Kaplan Declaration, Exh. C at 1 [emphasis added].) The Securities

Trading Order further states that Creditors Committee members "may participate" in securities

transactions "pursuant to the conditions herein," including the establishment of an Ethical Wall.

(Id.) By contrast, the order does not "permit[]" Creditors Committee members to trade in the

Debtor's securities without an Ethical Wall.

      Magten concedes that it traded in the Debtor's QUIPs while a member of the

Creditors Committee. (Magten Motion ¶¶ 8-9.) Magten also concedes that it failed to, and could

not comply with, the Securities Trading Order at the time of its trades. (Id. ¶¶ 33-34.)

Accordingly, Magten violated the Securities Trading Order when it purchased the Debtor's

QUIPs while a member of the Creditors Committee, or at a minimum, its actions constitute

inequitable action.

*  *  *  *

      In sum, the adversary complaint states claims for damages and equitable

subordination and should therefore be sustained.

## III.    EQUITABLE SUBORDINATION AND DAMAGES ARE APPROPRIATE REMEDIES

      Magten next asserts that equitable subordination is inappropriate because the

Debtor suffered no harm. (Magten Motion ¶ 49.) Harm to the Debtor (or for that matter, the

creditors), however, is not the sole test. In Papercraft, the Third Circuit confirmed that equitable

subordination is an appropriate remedy when there is proof of "injury to the creditors" or where

the defendant's actions "conferred an unfair advantage on the claimant." Citicorp Venture

Capital, Ltd. v. Committee of Creditors (In re Papercraft Corp.), 160 F.3d 982, 986 (3d Cir.

1998); accord In re Mid-American Waste Systems, Inc., 284 B.R. 53, 71 (Bankr. D. Del. 2002)

("Under the second prong of the traditional equitable subordination analysis, the Court must

determine whether the claimant's inequitable conduct either (i) created some unfair advantage for the claimant or (ii) harmed the debtor or its creditors. This standard is stated in the disjunctive so only either unfair advantage or harm must be established.").[9]

The unfair advantages the defendant obtained through its inequitable actions in Papercraft are similar to those Magten obtained through its actions here. As the Third Circuit detailed, the unfair advantages supporting subordination included:

- "[S]elling noteholders were deprived of the ability to make a fully informed decision to sell their claims." 160 F.3d at 989. Because Magten purchased its QUIPs in open market trades (Adversary Complaint ¶ 26-28), it is reasonable to infer that Magten did not disclose its position, information, or plans to selling QUIP holders. Accordingly, selling QUIP holders were deprived of the ability of making a fully informed decision to sell their QUIPs.

- The defendant's "purchased claims secured a position of influence over the reorganization negotiations." 160 F.3d at 989. Magten used its 40% "blocking position" to prevent acceptance of the Debtor's Plan by Class 8(b) and to influence the entire course and cost to the Debtor of these proceedings.

- The defendant's actions "created a conflict of interest which jeopardized its ability to make decisions in the best interest of the company, free from its competing profit motive." 160 F.3d at 989. Magten's actions created a conflict of interest, which was borne out by Magten's abandonment of other creditors through commencement of an adversary proceeding to deprive other creditors and the Debtor of estate value, and using procedural machinations (such as a motion to disqualify counsel on the eve of confirmation) to increase costs and pressure. All of Magten's actions were in pursuit of its competing profit motive.

---

[9] Thus, Magten's assertion that it was a fiduciary of creditors as opposed to the Debtor is besides the point. (Magten Motion ¶ 48.) The ultimate issue at trial will be whether Magten's inequitable actions provided an "unfair advantage." Moreover, the Debtor has a duty to protect creditors and preserve estate assets for all constituencies, and therefore has standing to seek equitable subordination of Magten's claims for the benefit of all creditors. See Official Committee of Unsecured Creditors of Cybergenics Corp., 330 F.3d 548, 573 (3d Cir. 2003); In re Martin, 91 F.3d 389, 394 (3d Cir. 1996).

Thus, to suggest—as does Magten—that its claims "cannot" be "equitably subordinate[d]" because the Debtor "suffered no harm" is not only contrary to the law, but Papercraft dictates that equitable subordination of Magten's claims would be an appropriate remedy.

In any event, the Debtor has suffered harm or is entitled to damages from Magten's inequitable actions in, at least, two respects. First, Magten's actions in using its blocking position to prevent acceptance of the Debtor's Plan by Class 8(b), and its associated objections and procedural machinations caused delay and increased cost to the Debtor and its creditors. Papercraft identified similar injury as a basis for equitable subordination. 160 F.3d at 990 (injury caused, in part, by defendants "associated objections to the [debtor's] plan resulted in confirmation delay that inflicted substantial injury on Papercraft's non-selling shareholders."). See also Mid-American, 284 B.R. at 53 ("An injury to the debtor caused by a claimant's inequitable conduct in reasonable proximity to bankruptcy or while the corporation is in financial distress decreases the likelihood of the recovery of claims by general creditors, and thus injures them.").

Second, the Adversary Complaint alleges that Magten received non-public information that originated from the Debtor and the Creditors Committee, and, while in possession of the information, traded in the Debtor's securities. (Adversary Complaint at ¶ 35.) Should the Debtor succeed in establishing that Magten remained in possession of the non-public information at the time of its purchase of the Debtor's securities, Magten will have misappropriated the information (constituting estate property) for its own self-interest. Misappropriation of non-public information in this regard not only entitles the Debtor and Creditors Committee to disgorgement of Magten's profits, but may also constitute illegal activity warranting further subordination. See Brophy v. Cities Service Co., 70 A.2d 5, 246 (Del. Ch.

1949); see Walton v. Morgan Stanley & Co. Inc., 623 F.2d 796, 798 (2d Cir. 1980) (a breach of

fiduciary duty actionable irrespective of injury); U.S. v. O'Hagan, 521 U.S. 642, 650 (1997)

(misappropriation of inside information in connection with a securities purchase or sale

constitutes a criminal violation of the securities laws).[10]  Indeed, subordination to the extent of

the defendant's profit from its purchase of the debtor's debentures was only the starting point in

the remedy found warranted by the Third Circuit in Papercraft, 160 F.3d at 991 ("At a minimum,

the remedy here should deprive [defendant] of its profit on the purchase of the notes.").

Liability relating to misappropriation of the Debtor's and the Creditors

Committee's non-public information extends to Defendant Embry.  As the sole shareholder,

principal, and investment-related employee of Magten, Embry directed Magten's trades in the

Debtor's QUIPs while in possession of non-public information.  To the extent his actions in

directing Magten resulted in ill-gotten gains, Embry is equally liable for the same tortious and

illegal activity. See T.V. Spano Bldg. Corp. v. Wilson, 584 A.2d 523, 530-31 (Del. Super. Ct.

1990), aff'd sub nom., T.V. Spano Bldg. Corp. v. Dep't. of Natural Res. and Envtl. Control, 628

A.2d 53, 61 (Del. 1993) (corporate officers are liable for their tortious conduct even though they

were acting officially for the corporation in committing tort).   Accord St. James Recreation,

LLC v. Rieger Opportunity Partners, LLC, 2003 WL 22659875, at *6 (Del. Ch.); Stonington

Partners, Inc. v. Lernout & Houspie Speech Products, N.V., 2002 WL 31439767, at *8 (Del.

Ch.).

---

[10] Magten fails to consider applicable state law permitting disgorgement when it attempts to pigeon-hole the Debtor's claims into a theory of securities fraud. (Magten Motion ¶ 50, n. 12.)  The Debtor has not, as of yet, asserted a claim for securities fraud, but as the Supreme Court in O'Hagen made clear, misappropriation of a company's non-public information may provide the foundation for a violation of the federal securities laws. 521 U.S. 642 (1997).  Should discovery provide the necessary evidence to establish securities fraud by Magten, as directed by Embry, the Debtor will move to amend the Adversary Complaint at that time.

In sum, the Adversary Complaint states a claim for damages and equitable subordination, and therefore should be sustained.

## CONCLUSION

For all the foregoing reasons, the Defendants' motion to dismiss should be denied.

Dated: Wilmington, Delaware
       October 26, 2004

                                    GREENBERG TRAURIG, LLP


                                    Scott D. Cousins (No. 3079)
                                    William E. Chipman, Jr. (No. 3818)
                                    The Brandywine Building
                                    1000 West Street, Suite 1540
                                    Wilmington, DE 19801
                                    Telephone: (302) 661-7000

                                    -and-

                                    Adam D. Cole
                                    GREENBERG TRAURIG, LLP
                                    885 Third Avenue
                                    New York, NY 10022
                                    Telephone: (212) 801-2100

                                    *Counsel for the Debtor and
                                    Debtor-in-Possession*

DEL-SRV01\125322v09

-24-