**<u>EXHIBIT K</u>**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NORTHWESTERN CORPORATION, | Bankruptcy Case No. 03-12872 (JLP) |
| Debtor. | |

| | |
|---|---|
| In re: | |
| NORTHWESTERN CORPORATION, | |
| Plaintiff, | Adv. No. 04-55051 (JLP) |
| v. | |
| MAGTEN ASSET MANAGEMENT CORPORATION, and TALTON R. EMBRY, | |
| Defendants. | |

**MOTION BY DEBTOR FOR PROTECTIVE ORDER PURSUANT
TO RULE 7026(c) OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE AND RULE 26(c) OF THE
FEDERAL RULES OF CIVIL PROCEDURE**

COMES NOW NorthWestern Corporation (**"NorthWestern"** or the **"Debtor"**) and Paul, Hastings, Janofsky & Walker LLP (**"Paul Hastings"**), by and through the undersigned counsel, and hereby files this Motion for Protective Order (the **"Motion"**), pursuant to Rule 7026(c) of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**) and Rule 26(c) of the Federal Rules of Civil Procedure, with respect to the Discovery Requests (as those terms are defined herein) of Magten Asset Management Corporation (**"Magten"**) and Talton R. Embry (**"Embry,"** together with Magten, the **"Defendants"**) that have been served on NorthWestern, Paul Hastings and various third-parties, and respectfully shows the Court as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

Venue of this Chapter 11 case and Motion are proper before this Court pursuant to 28

U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      NorthWestern was incorporated in 1923 and is a publicly traded Delaware

corporation.  NorthWestern and its direct and indirect energy subsidiaries comprise one

of the largest providers of electricity and natural gas in the upper Midwest and Northwest

regions of the United States, serving approximately 608,000 customers throughout

Montana, South Dakota and Nebraska.  The Debtor, a transmission and distribution

regulated utility entity, has generated and distributed electricity in South Dakota and has

distributed natural gas in South Dakota and Nebraska through its energy division,

NorthWestern Energy, since the Debtor's formation in 1923.

3.      On September 14, 2003 (the **"Petition Date"**), NorthWestern filed a

voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the **"Chapter 11**

**Case"**).  In the Chapter 11 Case, the Office of the United States Trustee appointed the

Official Committee of Unsecured Creditors in the Debtor's bankruptcy proceeding (the

"**Committee**") on September 30, 2003.

4.      On October 8, 2004, the Court entered an Oral Ruling Confirming the

Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the

Bankruptcy Code, and on October 19, 2004, the Court entered its final Order Confirming

the Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of

the Bankruptcy Code (the **"Confirmation Order"**).  The effective date (the **"Effective**

- 2 -

**Date")** of the Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code was November 1, 2004.

5.    Embry was at all relevant times the 100% owner and Chairman of Magten, and Magten is a corporation organized under the laws of Delaware, having its principal place of business located at 410 Park Avenue, 14th Floor, New York, New York 10022.

6.    Magten filed a Proof of Claim, designated claim number 842 by the Debtor's claims agent (the **"Magten Claim"**).  The Magten Claim asserts unliquidated claims against the Debtor's Estate for: (i) damages resulting from the alleged fraudulent transfer of the utility assets of NorthWestern Energy, LLC to NorthWestern on November 15, 2002 (the **"Transfer"**); and (ii) the face amount of the approximately 40% of the Debtor's Series A 8.45% Quarterly Income Preferred Securities (the **"QUIPS"**) that were held by Magten as of the Petition Date.

7.    On or about November 6, 2003, this Court entered its Order Permitting Securities Trading Upon Establishment of Ethical Wall (the **"Securities Trading Order"**).  The Securities Trading Order prohibits members of the Committee (present and future, each a **"Member"**) from trading in the securities of the Debtor and its affiliates, unless and until such Member establishes and implements an ethical wall (the **"Ethical Wall"**) in accordance with the terms and conditions of the Securities Trading Order.

8.    Upon request of the Defendants, and by notice dated November 25, 2003, the Office of the United States Trustee for the District of Delaware (the **"Trustee"**) appointed Magten to the Committee.  Magten was represented on the Committee by its 100% principal, Embry, and by its legal counsel Fried, Frank, Shriver & Jacobson LLP (**"Fried Frank"**).

- 3 -

9.    Upon information and belief, upon appointment to the Committee or shortly thereafter, the Defendants and their legal counsel, Fried Frank, became aware of the Securities Trading Order, prepared a motion that was never filed seeking to modify the Securities Trading Order, and received material, non-public, information the Debtor provided to the Committee.

10.    Once appointed to the Committee, Magten's fiduciary and other common law duties precluded it from trading in the securities of the Debtor and its affiliates, including, without limitation, the QUIPS, except as provided in the Securities Trading Order, which permitted limited trading upon establishment of an Ethical Wall. Magten, however, could not establish an Ethical Wall because it is 100% owned by Embry.

11.    On December 18, 2003, Embry, as Chairman of, and on behalf of, Magten, executed a Confidentiality Agreement with Official Committee of Unsecured Creditors (the **"Confidentiality Agreement"**).    Under the Confidentiality Agreement, the Defendants agreed to maintain as confidential all non-public and proprietary information provided by or to the Committee.

12.    Thereafter, on April 16, 2004, Magten and Law Debenture Trust Company of New York (**"Law Debenture"**) filed an adversary proceeding to avoid the transfer of assets of Clark Fork and Blackfoot LLC (f/k/a NorthWestern Energy, LLC) (**"Clark Fork"**) to the Debtor in November 2002, pursuant to what is generally referred to as the "going flat" transaction (the **"Magten Adversary Proceeding"**).

13.    The Magten Adversary Proceeding resulted in an inherent conflict between the Defendants and the Committee. Accordingly, in a letter dated May 6, 2004, the Trustee removed Magten from the Committee, stating that the relief sought in the

Magten Adversary Proceeding "is inconsistent with Magten's . . . fiduciary duty to the Committee's constituents, the general unsecured creditors of NorthWestern Corporation."

14.     After being expelled from the Committee, Magten remained bound by the terms of the Confidentiality Agreement and the Securities Trading Order, to the extent Magten was still in possession of material, non-public, information it had obtained while serving as a Member of the Committee.

15.     Notwithstanding the Confidentiality Agreement in which the Defendants acknowledged that use of the Debtor's non-public information constituted a potential violation of the securities laws, and the Securities Trading Order, Embry caused Magten to purchase over 123,000 of the Debtor's QUIPS and sell 3,800 of the Debtor's QUIPS in a series of market transactions after joining the Committee. Upon information and belief, Defendants were in possession of, and relied upon, the Debtor's and the Committee's non-public information when executing the securities transactions.

16.     Thereafter, on or about August 20, 2004, the Debtor filed this adversary proceeding (the **"Adversary Proceeding"**) seeking subordination of Magten's claims, actual damages and equitable relief, and objecting to the Magten Claim, based on Magten's improper trading of the QUIPS, as set forth above.

17.     On or about September 28, 2004, the Defendants filed the Motion of Magten Asset Management and Talton R. Embry to Dismiss the Complaint of NorthWestern Corporation For Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the **"Motion to Dismiss"**) in the Adversary Proceeding, and on November 8, 2004, this Court entered an Order denying the Motion to Dismiss.

18.     In addition, on or about November 17, 2004, Magten, joined by Law Debenture, filed a Motion and Memorandum in Support of Motion for Stay of Adversary Proceeding Pending Resolution of Motion to Withdraw the Reference to Bankruptcy Court (the **"Motion for Stay"**), and on December 12, 2004, the Court entered an Order denying the Motion for Stay as it relates to the Adversary Proceeding.

19.     On December 10, 2004, the Defendants served their First Request for Production of Documents to NorthWestern Corporation on the Debtor (the **"NOR Production Request"**), and on December 14, 2004, the Defendants served on the Debtor (i) their Notice of Deposition Pursuant to Rules 7030 and 9016 of the Federal Rules of Bankruptcy Procedure and Rule 30(b)(6) of the Federal Rules of Civil Procedure (the **"NOR Deposition Notice"**), and (ii) Magten Asset Management Corporation and Talton Embry's First Set of Interrogatories to NorthWestern Corporation (the **"NOR Interrogatories"**).

20.     On December 14, 2004, the Defendants also served a Subpoena in the Adversary Proceeding on Paul Hastings (the **"PHJW Subpoena,"** collectively with the NOR Production Request, the NOR Deposition Notice, and the NOR Interrogatories, the **"NOR Discovery Requests"**).

21.     In addition to the NOR Discovery Requests, Magten served ten (10) other parties with discovery requests (collectively, with the NOR Discovery Requests, the **"Discovery Requests"**), seeking substantially similar information from each party that was served with such requests.[1]

---

[1] Paul Hastings, by a separate motion filed contemporaneously herewith, has moved for a protective order and to quash the PHJW Subpoena in its entirety.

## SUMMARY OF RELIEF REQUESTED

22.     The Debtor seeks a protective order from this Court that would relieve the Debtor of having to respond to the NOR Production Request by December 30, 2004, as the Debtor should have thirty (30) days to respond to such requests, or until January 10, 2004, under Bankruptcy Rules 7034(b) and 9006(a).

23.     The Debtor seeks a protective order from this Court that would relieve the Debtor and other third parties from the burden of producing any and all documents already in the possession of Magten or its legal counsel, Fried Frank, previously produced to Magten and/or Fried Frank and/or made available to Magten and/or Fried Frank during the time it was a Member of the Committee.

24.     The Debtor further seeks a protective order from this Court requiring the Defendants to execute an acceptable confidentiality agreement to the extent the Defendants seek confidential, non-public, information that is either already located or will be produced in the Document Inspection Room (as defined below).

25.     If the Court does not enter a protective order requiring the Defendants to execute an acceptable confidentiality agreement, the Debtor seeks a protective order from this court mandating that the Defendants shall treat as confidential all confidential, non-public, information that may be made available to them by the Debtor, including, without limitation, all information relating to Debtor's business, business plans, financial projections, products, practices, markets, condition (financial or otherwise), operating procedures, financial information, assets, properties, liabilities, results of operations, prospects, valuations and company; provided however that the failure of any information to be so marked shall not exclude it from the protections set forth herein if the nature of the information or the circumstances of its disclosure were such that the Defendants should reasonably have known that the information being disclosed was confidential.

- 7 -

## BASIS FOR RELIEF

<u>The Defendant's Discovery Request Does Not Comply with Bankruptcy Rule 7034</u>

26.     According to the Defendant's First Request for Production of Documents to NorthWestern Corporation, served on the Debtor on December 10, 2004, the Defendants contend that the Debtor must comply with such request no later than December 30, 2004.  Pursuant to Bankruptcy Rule 7034(b), however, "the party upon whom the [document production] request is served shall serve a written response within <u>30 days after the service of the request</u>." (emphasis added).

27.     Accordingly, the Debtor seeks a protective order providing that the Debtor shall have until thirty days after service of the request, or January 10, 2005, to respond to the Defendant's First Request for Production of Documents to NorthWestern Corporation.[2]

<u>The Requested Discovery Has Either Been Provided or Made Available to Defendants</u>

28.     In connection with the Adversary Proceeding, the Defendants served incredibly vast amounts of Discovery Requests on the Debtor and other third parties, including Members of the Committee, seeking, for the most part, production of all information provided to the Committee and made available to Magten and its legal counsel, Fried Frank, during Magten's tenure on the Committee.

29.     The scope of the Discovery Requests, when taken as a whole, is unduly burdensome and wholly unreasonable because the Defendants seek discovery of the same information they and their legal counsel, Fried Frank, received as Members of the Committee.  These numerous Discovery Requests are clearly designed to recreate all of

---

[2] Although the 30 day period in which the Debtor must respond to the Discovery Requests technically expires on January 9, 2004, because that deadline falls on a Sunday, it shall be tolled to the following Monday, January 10, 2004, pursuant to Bankruptcy Rule 9006(a).

- 8 -

the information provided to the Committee.   The Discovery Requests include the following:

| DATE OF SERVICE | DISCOVERY | PARTY SERVED |
|---|---|---|
| 12/14/2004 | Notice of Deposition Pursuant to Rules 7030 and 9016 of the Federal Rules of Bankruptcy Procedure and Rule 30(b)(6) of the Federal Rules of Civil Procedure | NorthWestern Corporation |
| 12/14/2004 | Magten Asset Management Corporation and Talton Embry's First Set of Interrogatories to NorthWestern Corporation | NorthWestern Corporation |
| 12/13/2004 | Subpoena to Paul, Hastings, Janofsky & Walker LLP (Deposition/Document Production) | Paul, Hastings, Janofsky & Walker LLP |
| 12/13/2004 | Subpoena to OCM Opportunities Fund, IV, L.P. (Deposition/Document Production) | OCM Opportunities Fund, IV, L.P. |
| 12/13/2004 | Subpoena to Houlihan Lokey Howard & Zukin (Deposition/Document Production) | Houlihan Lokey Howard & Zukin |
| 12/13/2004 | Subpoena to Lazard Freres & Co. LLC (Deposition/Document Production) | Lazard Freres & Co. LLC |
| 12/13/2004 | Subpoena to Paul, Weiss, Rifkind, Wharton & Garrison LLP   (Deposition/Document Production) | Paul, Weiss, Rifkind, Wharton & Garrison LLP |
| 12/13/2004 | Subpoena to Franklin Templeton Mutual Series Fund (Deposition/Document | Franklin Templeton Mutual Series Fund |

| DATE OF SERVICE | DISCOVERY | PARTY SERVED |
|---|---|---|
| | Production) | |
| 12/13/2004 | Subpoena to The Bank of New York (Deposition/Document Production) | The Bank of New York |
| 12/13/2004 | Subpoena to HSBC Bank USA (Deposition/Document Production) | HSBC Bank USA |
| 12/13/2004 | Subpoena to AG Capital Recovery Partners III, L.P. (Deposition/Document Production) | AG Capital Recovery Partners III, L.P. c/o Angelo Gordon & Co. |
| 12/13/2004 | Subpoena to Avenue Capital Management (Deposition/Document Production) | Avenue Capital Management |

<u>Magten's Access to Information and Documents as a Member of the Committee</u>

30.    Through the Discovery Requests, the Defendants seek to require NorthWestern, Paul Hastings and other third parties to provide information that was either already provided or readily available to Magten and their legal counsel, Fried Frank. The Adversary Proceeding is based on allegations that Magten traded securities of the Debtor while in possession of material, confidential, information. It is undisputed that Magten and its legal counsel, Fried Frank, had access to all confidential, non-public, information provided to the Committee and discussed during all Committee meetings and calls, through its principal Embry and/or its legal advisors, Fried Frank.

31.    If the Defendants and/or their legal counsel, Fried Frank, did not maintain a record of what was discussed or provided during their time on the Committee, the burden of producing all such information again should not fall on the Debtor and/or the

third parties on which the Discovery Requests were served to recreate all of the information provided to the Committee and made available to Magten and its legal advisors, Fried Frank.

32.    Pursuant to Bankruptcy Rule 7026(b)(2), discovery methods otherwise permitted "shall be limited by a court if it determines that: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." *See Bayer AG v. Betachem, Inc.,* 173 F.3d 188, 191 (3d Cir. 1999); *Gargiulo v. MGI Communications, LP,* Civ.A. No. 91-3885, 1992 WL 22242, at *2 (E.D. Pa. 1992) (applying Fed. R. Civ. P. 26(b)).

33.    Accordingly, the Debtor is seeking a protective order from this Court that would: (i) relieve the Debtor and other third parties from the burden of producing any and all materials that were made available to the Defendants and their legal advisors, Fried Frank, during their time as Members of the Committee; and (ii) limit the scope of production to the material, non-public, information NorthWestern provided to the Committee during the time period Magten sat on the Committee and to production of material, non-public, information NorthWestern provided to Fried Frank, Magten's legal advisors, pursuant to settlement discussions in connection with the Debtor's harshly contested confirmation proceedings.

Prior Production

34.    In addition, and in connection with discovery related to Plan confirmation, the Debtor has maintained a central document inspection room (the **"Document Inspection Room"**) at Paul, Hastings, Janofsky & Walker LLP's New York office,

located at 75 East 55th Street, New York, New York 10022, that has been available for inspection since April 23, 2004.[3]

Need for Confidentiality

35.    The Debtor has made the Document Inspection Room available to parties requesting documents upon execution of a confidentiality agreement.  Despite its refusal to execute a confidentiality agreement, Fried Frank, Magten's legal counsel, was granted access to the Document Inspection Room in July 2004 in connection with Magten's objections to the confirmation of the Debtor's plan of reorganization.  NorthWestern continues to be a publicly traded company and, as such, a confidentiality agreement is both necessary and appropriate.[4]  This remains true even post-confirmation, as at least one group of documents responsive to the Discovery Requests remains non-public and subject to confidentiality agreements between the Debtor and third parties.  Moreover, many documents responsive to the Discovery Requests remain non-public and subject to confidentiality agreements, and the Debtor and third parties should not be forced to disclose such documents while the Defendants refuse to enter into a mutually acceptable confidentiality agreement.

---

[3] The following is a sample of the categories of documents that have been available in the Document Inspection Room since April 23, 2004: (i) NorthWestern Corporation Financial and Valuation Documents; (ii) NorthWestern Corporation Financial Forecasts and Operating Plans; (iii) Miscellaneous QF Contracts; (iv) Documents Related to NorthWestern's Sale of Expanets; (v) Miscellaneous Correspondence Related to NorthWestern's Chapter 11 Bankruptcy; (vi) Miscellaneous Benchmarking Studies and Related Documents; (vii) Lazard Presentations and Valuations; (viii) Miscellaneous Sale Proposal Letters; and (ix) Miscellaneous PHJW PUHCA Documents.

[4] A true and correct copy of correspondence with counsel to the Defendants, dated July 18, 2004, wherein the Debtor offered to make requested documents available for inspection upon the execution of a confidentiality agreement is attached hereto as Exhibit A.  A true and correct copy of correspondence with counsel to the Defendants, dated December 21, 2004, wherein the Debtor again offered to make requested documents available for inspection upon the execution of a confidentiality agreement is attached hereto as Exhibit B.  See, Affidavit of Karol K. Denniston in Support of the Joint Motion by Debtor and Paul, Hastngs, Janofsky & Walker LLP for Protective Order Pursuant to Rule 7026(c) of the Federal Rules of Bankruptcy Procedure and Rule 26(c) of the Federal Rules of Civil Procedure, filed with the Court contemporaneously herewith.

Protective Order for All Confidential, Non-Public, Information Produced

36.    If the Court orders the Debtor to produce confidential, non-public, information, and the Defendants continue to refuse to enter into a confidentiality agreement with the Debtor, the Debtor respectfully requests that the Court enter a protective order mandating that: (i) all confidential, non-public, information be held in confidence and not disclosed to third-parties or other parties in interest; (ii) any use of such information be limited to this Adversary Proceeding; and (iii) prior notice be given to the Debtor of the Defendants' intention to introduce confidential documents as evidence, so the Debtor can take steps to comply with its obligations under various third party confidentiality agreements.

## NOTICE

37.    Notice of this Motion has been provided to: (i) the Office of the United States Trustee, (ii) counsel for the Official Committee of Unsecured Creditors, (iii) counsel for Law Debenture, and (iv) counsel for the Defendants. In light of the nature of the relief requested herein, Paul Hastings submits that no other or further notice of the Motion is required.

## NO PRIOR REQUEST

38.    No prior request for the relief sought herein has been made to this or any other Court.

[CONCLUDED ON NEXT PAGE]

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter a protective

order substantially in the form annexed hereto, or in such other form that the court may

deem appropriate based on the forgoing.

Dated:  December 30, 2004
       Wilmington, Delaware

PAUL, HASTINGS, JANOFSKY &
    WALKER LLP

Jesse H. Austin, III
Karol K. Denniston
600 Peachtree Street
Suite 2400
Atlanta, GA 30308
Telephone: (404) 815-2400

- and -

Respectfully submitted,

GREENBERG TRAURIG, LLP

Scott D. Cousins (No. 3079)
William E. Chipman, Jr. (No. 3818)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801
Telephone: (302) 661-7000

*Co-Counsel for NorthWestern Corporation*

- 14 -

**<u>EXHIBIT A</u>**

(See Attached)

ATL/1081179.2

 Message



## Chayavadhanangkur, C. Carolyn

| | |
|---|---|
| **From:** | Denniston, Karol K. |
| **Sent:** | Sunday, July 18, 2004 10:53 AM |
| **To:** | 'nadrijo@friedfrank.com' |
| **Cc:** | 'Chipmanw@gtlaw.com'; 'Counlhanv@gtlaw.com'; Austin, Jesse; Chayavadhanangkur, C. Carolyn |
| **Subject:** | RE: NOR - Confidentiality Agreement |

A bit of background may be of assistance.

It is the Debtor's position that, as a publicly traded company and one that has continued to report to the SEC during the tendency of this bankruptcy proceeding, that the standard form confidentiality agreement is appropriate. Without exception, we have requested and obtained a confidentiality agreement from all parties accessing the document inspection room established in New York because material nonpublic information is being produced for inspection in response to a number of discovery requests. Moreover, when requested the Debtor has executed confidentiality agreements for those producing documents to the Debtor.

The Debtor is cognizant of the fact that various debt instruments continue to trade and as a result, must insist upon the confidentiality agreement being executed. It is not the Debtor's intention to preclude the use of any of the documents being produced as evidence during the confirmation hearing and/or discovery leading there to.

If you have specific requests for changes to the form of the standard confidentiality agreement, please let me know. If a telephone call to discuss this further would be helpful, please feel free to give me a call. It is our hope that we can amicably resolve this issue without the need to seek a protective order from Judge Case.

Best regards,

Karol K. Denniston

---

Karol K. Denniston, Of Counsel | Paul, Hastings, Janofsky & Walker LLP | 600 Peachtree Street, N.E., Suite 2400, Atlanta, GA 30308 | direct: 404 815 2347| main: 404 815 2400 | direct fax: 404 685 5347

karolkdenniston@paulhastings.com|www.paulhastings.com

> -----Original Message-----
> **From:** Chayavadhanangkur, C. Carolyn
> **Sent:** Friday, July 16, 2004 6:09 PM
> **To:** 'nadrijo@friedfrank.com'
> **Cc:** Denniston, Karol K.; 'Chipmanw@gtlaw.com'; 'Counlhanv@gtlaw.com'
> **Subject:** NOR - Confidentiality Agreement
>
> Please find attached the proposed confidentiality agreement. I understand that you may have some concerns regarding the confidentiality agreement. Per my voicemail, if you still have concerns we can set up a time to discuss these issues with you on Monday.
>
> Thanks,
> Keri

essage                                                                    Page 2 of 2

Carolyn (Keri) Chayavadhanangkur, Associate| Paul, Hastings, Janofsky & Walker LLP | 600 Peachtree Street,
N.E., Suite 2400, Atlanta, GA 30308 | direct: 404 815 2192 | main: 404 815 2400 | direct fax: 404 685
5192 | carolynchayavadhanangkur@paulhastings.com | www.paulhastings.com

12/21/2004

**<u>EXHIBIT B</u>**

(See Attached)

- 13 -

# Paul Hastings
ATTORNEYS

Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Street, N.E. • Twenty-Fourth Floor • Atlanta, GA 30308
telephone 404 815 2400 • facsimile 404 815 2424 • www.paulhastings.com

Atlanta
Beijing
Brussels
Hong Kong
London
Los Angeles
New York
Orange County
Paris
San Diego
San Francisco
Shanghai
Stamford
Tokyo
Washington, D.C.

(404) 815-2347
karolkdenniston@paulhastings.com

December 21, 2004                                                    38910.00006

Bonnie Steingart
Fried, Frank, Harris, Shriver & Jacobson, LLP
One New York Plaza
New York, New York 10004

Re:    In re NorthWestern Corp. (the "Debtor" or "NorthWestern"), Case No. 03-
       12872, U.S. Bankruptcy Court for the District of Delaware

Dear Bonnie:

The Debtor has received Defendants' First Request for Production of Documents to
NorthWestern Corporation dated December 10, 2004, Notice of Deposition Pursuant to
Rules 7030 and 9016 of the Federal Rules of Bankruptcy Procedure and Rule 30(b)(6) of
the Federal Rules of Civil Procedure, and Magten Asset Management Corporation and
Talton Embry's First Set of Interrogatories to NorthWestern Corporation (collectively,
the "NOR Discovery Requests") in connection with the NorthWestern Corp. v. Magten
Asset Management Corp., Adv. Pro. 04-55051. Paul, Hastings, Janofsky & Walker LLP
("Paul Hastings") has received the Subpoena in an Adversary Proceeding dated December
13, 2004 which included a notice of deposition and a request for documents (collectively
with the NOR Discovery Requests, the "Discovery Requests").

As stated on the record and in numerous communications, since April 2004, the Debtor
has made its document inspection room (the "Document Inspection Room") at the office
of Paul, Hastings, Janofsky & Walker LLP in New York, New York available to parties
requesting documents, including representatives of Magten Asset Management Corp.
("Magten"), upon execution of a confidentiality agreement. Enclosed is a copy of the
form of confidentiality agreement.

Because NorthWestern continues to be a publicly traded company, the confidentiality
agreement is both necessary and appropriate. This is particularly true, even post-
confirmation, as one group of documents responsive to Magten's Discovery Requests
remains non-public and subject to confidentiality agreements between the Debtor and
various third parties. Further, without exception, the Debtor has requested and obtained
a confidentiality agreement from all parties accessing the Document Inspection Room in
connection with discovery and/or due diligence requests.

ATL/1079884.1

**Paul**Hastings
ATTORNEYS

Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Street, N.E. • Twenty-Fourth Floor • Atlanta, GA 30308
telephone 404 815 2400 • facsimile 404 815 2424 • www.paulhastings.com

Bonnie Steingart
December 21, 2004
Page 2

In the event that a mutually acceptable confidentiality agreement is not executed,
NorthWestern will be left with no choice but to seek a protective order. We would like to
avoid this legal exercise if at all possible.

While NorthWestern and Paul Hastings are gathering responsive documents, production
will not be possible until an acceptable confidentiality agreement has been executed or a
protective order entered.

Should you wish to discuss this further, please give me a call.

Best regards,

Karol K. Denniston

Karol K. Denniston
Of Counsel

cc:    Gary Kaplan

ATL/1079884.1

Bonnie Steingart
December 21, 2004
Page 3


bcc:    Tom Knapp
        Jesse H. Austin, III
        Scott Cousins
        Adam Cole
        William Chipman, Jr.

ATL/1079884.1

## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (this "Agreement"), dated December ___, 2004, is by and between NorthWestern Corporation, a Delaware corporation (including its affiliates, subsidiaries, officers, employees, directors and financial and legal advisors, collectively the "Company"), and Fried, Frank, Harris, Shriver & Jacobson, LLP, as counsel to Magten Asset Management Corporation (individually and collectively, as the context requires, the "Recipient" or "Receiving Party").

## RECITALS

WHEREAS, the Company has filed for relief under Chapter 11 of the Bankruptcy Code styled as Case No. 03-12872, United States Bankruptcy Court for the (District of Delaware) (the "Bankruptcy Case");

WHEREAS, Receiving Party is counsel to Magten Asset Management Corporation with respect to the Bankruptcy Case;

WHEREAS, the Receiving Party desires to obtain confidential and non-public financial related information from the Company pertaining to the Company's acts, conduct, property, liabilities, the operation of the Company's business and other matters relevant to the administration of the Company's estate in the Bankruptcy Case, or to the formulation of a plan of reorganization; and

WHEREAS, in furtherance of the foregoing, the parties hereto have agreed for the Company to provide to Receiving Party the Confidential Information (as defined below).

NOW, THEREFORE, in consideration of the promises and mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1.    Nature of Confidentiality Agreement. The parties hereto acknowledge that the Company may provide or disclose Confidential Information to Receiving Party, and desire that this Agreement govern each party's rights and obligations with respect thereto. For purposes of this Agreement, the Company shall be deemed to be the "Disclosing Party" with respect to any Confidential Information that it has provided or disclosed or may provide or disclose, directly or indirectly, to the Receiving Party. The Receiving Party shall be deemed to have received the Confidential Information disclosed to it or to any of its employees, consultants, attorneys or agents granted access to the Confidential Information pursuant to Section 4(a) and shall be responsible for the compliance or non-compliance by such employees, consultants, attorneys or agents with the terms and conditions of this Agreement.

2.    Confidential Information. For purposes of this Agreement, the term "Confidential Information" shall mean all information prominently identified and designated by the Disclosing Party as "Confidential Information" that is or has been provided or disclosed, directly or indirectly, and whether verbal or written, by Disclosing Party to Receiving Party, including, without limitation, all information relating to Disclosing Party's business, business plans, financial projections, products, practices, markets, condition (financial or otherwise), operating procedures, financial information, assets, properties, liabilities, results of operations, prospects,

ATL/1047325.2

valuations and company personnel; provided however that the failure of any information to be so marked shall not exclude it from the protections set forth herein if the nature of the information or the circumstances of its disclosure were such that the Receiving Party should reasonably have known that the information being disclosed was Confidential Information; provided further that the Disclosing Party's designation of materials as "Confidential Information" shall not prejudice the ability of the Receiving Party to request those materials through discovery processes in proceedings other than those governed by this agreement.

3.     Confidentiality. Receiving Party recognizes and acknowledges that it shall have access to certain Confidential Information, all of which is of substantial value. Receiving Party shall treat as confidential all Confidential Information that may be disclosed or made available to it by Disclosing Party. Except as set forth in Section 5 hereof, Receiving Party shall maintain the confidentiality of and shall not disclose any Confidential Information to any third party without Disclosing Party's prior written consent, which may be withheld in Disclosing Party's sole discretion. Without limiting Receiving Party's obligations hereunder, Receiving Party shall use at least that standard of care with respect to the Confidential Information as it affords to its own proprietary or confidential information of like kind and character, but in no event shall Receiving Party use less than reasonable care. Receiving Party shall not use any Confidential Information except as and to the extent necessary for the Bankruptcy Case.

4.     Access to Information.

　　　(a)     Receiving Party shall limit access to Confidential Information to only those of its employees (or to its attorneys or consultants who have assumed the same confidentiality obligations by reading and signing, as an original, a reproduced copy of this Agreement) who reasonably require such for the aforesaid purpose and who are obligated to treat such as confidential in the same manner and to the same extent as herein provided, whether or not said employees or consultants remain in the employment of Receiving Party. Receiving Party shall be responsible for any breach of this Agreement by its employees, consultants, attorneys or agents.

　　　(b)     All requests and communications concerning the Confidential Information shall be coordinated through or addressed to Disclosing Party's financial advisors or bankruptcy counsel, or such other individuals as may be designated in writing by Disclosing Party to cooperate with Receiving Party in Receiving Party's evaluation of the Confidential Information.

5.     Disclosure. Nothing contained herein shall in any way restrict or impair Receiving Party's right to use, disclose or otherwise deal with any information or data which:

　　　(a)     At the time of the disclosure is generally available to the public or thereafter becomes generally available to the public, by publication or otherwise, through no act or omission of Receiving Party or its employees or consultants;

　　　(b)     Receiving Party can show by competent evidence was received by it as a matter of lawful right from a third party who did not acquire it from Disclosing Party or any of its affiliates under an obligation of confidence and that without breach of any obligation Receiving Party is free to disclose to others; or

　　　(c)     Receiving Party can show by competent evidence was independently developed by Receiving Party without use of or reference to any Confidential Information.

If Receiving Party or its Representatives on behalf of Receiving Party decides to file or submit publicly in the Bankruptcy Case any Confidential Information, the Receiving Party shall: (i) provide the Company with notice of such intention three (3) business days prior to the filing or submission of such Confidential Information; or (ii) make an appropriate application directly in the Bankruptcy Case to file such a submission under seal. If the Company requests in writing, within three (3) days of receipt of the notice described in clause 5(i) above, that the Confidential Information be filed under seal, such Confidential Information shall not be filed until the Company or Receiving Party has filed a motion in the Bankruptcy Case seeking an order directing that such materials, information or papers be filed under seal. Upon the entry of an order authorizing the filing of such Confidential Information under seal, the Receiving Party or its Representatives on behalf of the Receiving Party may file the Confidential Information which shall plainly state on the first page of any bound or stapled document "Confidential – Filed under Seal" and shall be filed under seal and kept under seal until further order entered in the Bankruptcy Case so long as is permitted. In the event that the Company requests that the Confidential Information be ordered filed under seal, the Company shall cooperate with the Recipient so as to ensure that applicable procedural deadlines are extended sufficiently to accommodate the Company's request without prejudice to the Recipient.

6.    <u>Term; Termination of Obligation</u>. This Agreement shall terminate and be of no further force or effect one year following the effective date of any reorganization plan confirmed in the Bankruptcy Case unless earlier terminated by the parties hereto; provided, however, that the Receiving Party's obligation to maintain the confidentiality of the information shall continue, unless such obligation is terminated earlier by the Bankruptcy Court upon the motion of either party, for three years following the termination of this Agreement and provided further that the Receiving Party's obligation to maintain the confidentiality of any information that qualifies as a trade secret under applicable law shall continue until that information no longer qualifies as a trade secret through no fault of Receiving Party.

7.    <u>Intellectual Property; Disclaimer</u>. Nothing contained in this Agreement shall be construed to grant Receiving Party any express or implied rights in respect of Disclosing Party's Confidential Information, trademarks, patents or other proprietary intellectual property. Disclosing Party does not grant hereby, expressly or by implication, any license or right under any patent or trademark now or hereafter owned or controlled by Disclosing Party or its affiliates covering the Confidential Information. Disclosing Party retains the right to determine, in its sole discretion, what information it wishes to make available to the Receiving Party, and neither Disclosing Party nor its representatives make any representation or warranty (express or implied) concerning the completeness or accuracy of the Confidential Information provided hereunder which is provided "AS IS". Representations with respect to the information, if any, will be made under a separate agreement.

8.    <u>Securities Law; Privilege; Legally Required Disclosure</u>.

    (a)    Securities Laws. The Receiving Party acknowledges that it is aware, and that it will advise its representatives who are informed as to the matters that are the subject of this Agreement, that the United States securities laws prohibit any person who has received from an issuer material, non-public information concerning the matters that are the subject of this Agreement from purchasing or selling or offering to purchase or sell securities of such issuer or from communication of such information to any other person under circumstances in which it is reasonably foreseeable that such person is likely to purchase or sell such securities.

(b)     Privilege.  To the extent that any Confidential Information may include materials subject to the attorney-client privilege, Disclosing Party is not waiving and will not be deemed to have waived or diminished its attorney work-product protections, attorney-client privileges or similar protections and privileges as a result of disclosing any Confidential Information (including Confidential Information related to pending or threatened litigation), regardless of whether Disclosing Party has asserted or is or may be entitled to assert such privileges and protections. The parties (i) share a common legal and commercial interest in all such Confidential Information that is subject to such privileges and protections; (ii) are or may become joint defendants in proceedings to which such Confidential Information covered by such protections and privileges relates; and (iii) intend that such privileges and protections remain intact should either party become subject to any actual or threatened proceeding to which such Confidential Information covered by such protections and privileges relates. In furtherance of the foregoing, the Receiving Party shall not claim or contend, in proceedings involving either party, that Disclosing Party waived its attorney work-product protections, attorney-client privileges or similar protections and privileges with respect to any information, documents or other material not disclosed to the Receiving Party due to Disclosing Party disclosing Confidential Information (including Confidential Information related to pending or threatened litigation) to the Receiving Party.

(c)     Legally Required Disclosure.  If the Receiving Party or any representative is requested or required to disclose any Confidential Information pursuant to a subpoena, court order, civil investigative demand or similar judicial process or other oral or written request issued by a court of competent jurisdiction or by a federal, state or local governmental or regulatory body, or by law or regulation (individually or collectively, a "Legal Requirement"), such Receiving Party or its legal advisors shall provide the Disclosing Party with prompt written notice of the existence, terms, and circumstances of such Legal Requirement. Disclosing Party may waive compliance with the provisions of this Agreement. At the request of the Disclosing Party, the Receiving Party shall provide reasonable assistance to Disclosing Party in any effort it may undertake to seek an appropriate protective order or other appropriate remedy.  If, in the absence of a protective order or other remedy or the receipt of a waiver by Disclosing Party, the Receiving Party's legal advisors are nonetheless legally compelled to disclose the Confidential Information, the Receiving Party's legal advisors may, without legal liability hereunder, disclose only that portion of the Confidential Information which they are required to disclose, provided that the Receiving Party's legal advisors shall exercise their commercially reasonable efforts to preserve the confidentiality of the Confidential Information.

9.     Notices.  All notices required to be given hereunder shall be sent by certified mail, return receipt requested, postage pre-paid, and addressed to:

If to The Company:

NorthWestern Corporation
125 S. Dakota Avenue
Sioux Falls, South Dakota 57104
Attn: Eric R. Jacobsen, Esq.
Fax: (605) 978-2963

With a copy to:

Paul, Hastings, Janofsky & Walker LLP
Suite 2400
600 Peachtree Street
Atlanta, Georgia 30308
Attn: Jesse H. Austin, III, Esq.
Attn: Karol K. Denniston, Esq.
Fax: (404) 815-2424

If to Receiving Party:

Fried, Frank, Harris, Shriver & Jacobsen LLP
One New York Plaza
New York, New York 10004
Attn:_____
Fax: (212) 859-4000

or to such other person or address as such party may have specified in a notice duly given as provided herein. Such notice shall be deemed to have been given as of the date of transmission or delivery, as the case may be. For information purposes, but not for legal effect, notices may be sent by facsimile transmission, e-mail or other electronic means.

10.    Injunctive Relief. Receiving Party acknowledges that the breach of this Agreement would cause Disclosing Party to suffer irreparable harm, and agrees that legal damages would not be a sufficient remedy for any breach of this Agreement by Receiving Party. Accordingly, Receiving Party consents to injunctive or other appropriate equitable relief in the Bankruptcy Case, including specific performance, upon the institution of legal proceedings by Disclosing Party, and waives any requirement of a bond or other surety in connection therewith. Such remedy shall not be deemed to be the exclusive remedy for any such breach of this Agreement, but shall be in addition to all other remedies available at law or in equity.

11.    Return or Destruction of Confidential Information. If the Receiving Party ceases to use the Confidential Information, then (a) the Receiving Party (i) shall promptly deliver to the Disclosing Party all documents or other materials disclosed by the Disclosing Party to the Receiving Party constituting Confidential Information, together with all copies and summaries thereof in the possession or under the control of the Receiving Party and (ii) will destroy materials generated by the Receiving Party that include or refer to any part of the Confidential Information including any underlying assumptions set forth in the Confidential Information, without retaining a copy of any such material or (b) alternatively, if the Disclosing Party requests or gives his prior written consent to the Receiving Party's request, the Receiving Party will destroy all documents or other materials constituting Confidential Information in the possession or under the control of the Receiving Party. Any such destruction pursuant to the foregoing must be certified by an authorized officer of the Receiving Party in writing to the Disclosing Party (and such certification shall include a list of the destroyed materials).

12.    Governing Law; Enforcement Cost. This Agreement and the rights of the parties hereto shall be governed by and interpreted in accordance with the laws of the State of Delaware, without regard to or application of its conflict of laws principles. The Receiving Party agrees that if it is held by any court of competent jurisdiction to be in violation, breach or

ATL/1047325.2                                    5

nonperformance of any of the terms of this Agreement, then it will promptly pay to the Disclosing Party all costs of such action or suit, including reasonable attorneys' fees.

Protective Order. This Agreement is subject to that certain Stipulated Order Embodying the Confidentiality Agreement entered in the Bankruptcy Case on January 14, 2004. Pursuant to the order any party to a confidentiality agreement entered in connection with the Bankruptcy Case shall maintain confidentiality of and, except as otherwise provided herein, shall not disclose any confidential information to any third party without the Debtor's prior written consent.

13.    Severability. If any provision of this Agreement or its application shall be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of all other applications of that provision, and of all other provisions and applications hereof, shall not in any way be affected or impaired. If any court shall determine that any provision of this Agreement is in any way unenforceable, such provision shall be reduced to whatever extent is necessary to make such provision enforceable.

14.    Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one and the same instrument.

15.    Headings. The headings in this Agreement have been included solely for ease of reference and shall not be considered in the interpretation or construction of this Agreement.

16.    Amendment, Waiver. No amendment to this Agreement shall be enforceable unless in writing and signed by the party against whom enforcement is sought. No waiver or failure to insist upon strict compliance with any obligation, covenant, agreement or condition of this Agreement shall operate as a waiver of, or an estoppel with respect to, any subsequent or other failure.

17.    Entire Agreement . This Agreement represents the entire agreement of the parties hereto with respect to the subject matter hereof and supersedes all prior or contemporaneous written or oral agreements, negotiations, correspondence, undertakings and communications between such parties respecting such subject matter.

18.    Assignment. This Agreement may not be assigned by either party without the prior written consent of the other party, which may be withheld in such party's sole discretion.

19.    Benefit and Binding Effect. Except as otherwise specifically provided in this Agreement, this Agreement shall be binding upon and shall inure to the benefit of the parties to this Agreement, and their successors and permitted assigns.

[SIGNATURES ON NEXT PAGE]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

THE COMPANY:                NORTHWESTERN CORPORATION

By: _____
Name: _____
Title: _____

Receiving Party:           FRIED, FRANK, HARRIS, SHRIVER & JACOBSEN LLP

By: _____
Name: _____
Title: _____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| NORTHWESTERN CORPORATION, ) | Bankruptcy Case No. 03-12872 (JLP) |
| ) | |
| Debtor. ) | |
| | |
| In re: ) | |
| ) | |
| NORTHWESTERN CORPORATION, ) | |
| ) | |
| Plaintiff, ) | Adv. No. 04-55051 (JLP) |
| ) | |
| v. ) | |
| ) | |
| MAGTEN ASSET MANAGEMENT ) | |
| CORPORATION, and TALTON R. EMBRY, ) | |
| ) | |
| Defendants. | |

## ORDER GRANTING MOTION BY DEBTOR FOR PROTECTIVE ORDER PURSUANT TO RULE 7026(c) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND RULE 26(c) OF THE FEDERAL RULES OF CIVIL PROCEDURE

UPON, the Motion (the **"Motion"**)[1] of the above-captioned reorganized debtor

(the **"Debtor"**), For Protective Order Pursuant to Rule 7026(c) of the Federal Rules of

Bankruptcy Procedure and Rule 26(c) of the Federal Rules of Civil Procedure with

respect to the Discovery Requests of Magten Asset Management Corporation

(**"Magten"**) and Talton R. Embry (**"Embry,"** together with Magten, the **"Defendants"**)

that have been served on NorthWestern, Paul Hastings and various third-parties; and it

---

[1] Any capitalized term not otherwise defined in this order shall have meaning ascribed to such term in the Motion.

appearing that the Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334

and that it is a core matter pursuant to 28 U.S.C. § 157(b)(2); and the Court having

determined that the relief requested in the Motion is in the best interests of the Debtor, its

estate, its creditors and other parties-in-interest; and it appearing that due notice of the

Motion has been provided and that no other or further notice need be given; and

sufficient cause appearing therefore; it is hereby

     **ORDERED**, that the Motion is granted; and it is further

     **ORDERED**, that the Debtor shall have until January 10, 2004 to respond to the

Defendant's First Request for the Production of Documents to NorthWestern

Corporation, served on the Debtor by the Defendants; and it is further

     **ORDERED**, that the Debtor and other third parties shall not be required to

produce any and all documents already in the possession of Magten or its legal counsel,

Fried Frank, previously produced to Magten and/or made available to Magten during the

time it was a Member of the Committee; and it is further

     **ORDERED,** that the Defendants shall execute an acceptable confidentiality

agreement with the Debtor to the extent the Defendants seek confidential, non-public,

information from the Debtor; and it is further;

     **ORDERED,** that, in the event the Debtor and Defendants cannot agree on the

form of an acceptable confidentiality agreement, the Defendants shall treat as confidential

all confidential, non-public, information that may be made available to them by the

Debtor; and it is further

[CONCLUDED ON NEXT PAGE]

ATL/1080844.4

**ORDERED,** that this Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: January ___, 2005
            Wilmington, Delaware


_____
Honorable John L. Peterson
United States Bankruptcy Judge

- 3 -

ATL/1080844.4