# EXHIBIT N

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NORTHWESTERN CORPORATION, | : | Case No. 03-12872 (JLP) |
| | : | |
| Debtor. | : | |
| | : | |
| | | |
| NORTHWESTERN CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Adv. No. 04-55051 (JLP) |
| | : | |
| MAGTEN ASSET MANAGEMENT | : | |
| CORPORATION, and TALTON R. EMBRY | : | |
| | : | |
| Defendants. | : | |
| | : | |

## OBJECTION OF MAGTEN ASSET MANAGEMENT CORPORATION AND TALTON R. EMBRY TO MOTION BY NORTHWESTERN CORPORATION FOR PROTECTIVE ORDER [ADV. DKT. NO. 62]

Magten Asset Management Corporation (*"Magten"*) and Talton R. Embry (together with Magten, the *"Defendants"*) by and through their undersigned counsel, file this objection (the *"Objection"*) to the Motion by Debtor for Protective Order Pursuant to Rule 7026(c) of the Federal Rules of Bankruptcy Procedure and Rule 26(c) of the Federal Rules of Civil Procedure (the *"Motion"*).  In support of their Objection, Defendants respectfully state as follows:

## PRELIMINARY STATEMENT

1.      In this adversary proceeding (the *"Adversary Proceeding"*), NorthWestern Corporation (the *"Debtor"*) as plaintiff, has accused the Defendants of purchasing QUIPS based on material, non-public information.  The Debtor has steadfastly failed to allege – and now refuses to provide discovery – as to

      i.      what non-public information Defendants had,

      ii.     when Defendants got that information, and

      iii.    why such information was material to the purchase of QUIPS.

It cannot be disputed that all of the Defendants' purchases of QUIPS occurred prior to Defendants' attendance at any meetings of the official committee of unsecured creditors of the Debtor (the *"Committee"*) and then after Defendants were removed from the Committee.  It is also undisputed that from the outset of the Debtor's chapter proceeding and at every step in the process, the Debtor and its professionals and the Committee and its professionals insisted that the QUIPS were out of the money.  The Defendants are, thus, completely in the dark about what non-public information the Debtor thinks Defendants had, when Defendants received it and why such information would be material, or indeed, even relevant to the purchase of QUIPS.

2.      By its Motion, the Debtor is making a mockery of the discovery process by further obscuring rather than producing in an honest, straightforward manner documents or information that shows what information the Debtor claims Defendants had, when Defendants received it and why it is material to the purchase of the QUIPS. The crux of the Complaint (as defined below) is that in the period prior to attending a meeting of the Committee and then in the period after Magten was removed from the Committee, the Defendants traded in the QUIPS using material, non-public information.

- 2 -

The Debtor's complaint initiating this adversary proceeding (the *"Complaint"*) was entirely devoid of any facts concerning what information the Debtor believes the Defendants misused – and now the Debtor is seeking to prevent the Defendants from obtaining that information through discovery.

3.    The Defendants did not possess any material, non-public information when trading in the QUIPS.  To expedite discovery, the Defendants served narrow discovery demands seeking documents and deposition testimony from appropriate parties to try to understand what material, non-public information the Debtor believes was provided to Defendants.  The Debtor, however, is stonewalling and will not provide that information to Defendants.

4.    As this Court is aware, there is a very limited period of time to conduct discovery, as the Court has established January 21, 2005 as the discovery cut-off.  The Debtor has sought eight depositions, including those of Magten, Mr. Embry, and various brokers that were historically used by Magten in the purchase and sale of the QUIPS.  The Defendants have noticed thirteen depositions, including the Debtor, the Debtor's advisors, the Committee, the Committee's advisors and the Committee's members.  The first deposition is scheduled to be taken by the Debtor on January 5, 2005 and by the Defendants on January 11, 2005.  It is essential that the Debtor provide its documents sufficiently in advance of the scheduled depositions so that the Defendants can adequately prepare for such depositions.  Otherwise, Defendants will be left with no choice but to depose each of the deponents twice, which will increase the time and cost for all parties involved and which will be extremely difficult, if not impossible to accomplish by the January 21 discovery cut-off.

5.     Therefore, for these reasons and for the reasons set forth below, the Motion should be denied.

## STATEMENT OF FACTS

6.     On September 14, 2003 the Debtor filed a voluntary petition relief under chapter 11 of title 11 of the United States Code.

7.     On September 30, 2003 the Office of the United States Trustee appointed the members of the Committee of the estate of the Debtor. On November 25, 2003, the Office of the United States Trustee appointed Magten to the Committee.

8.     On April 16, 2004, Magten, together with Law Debenture Trust Company of New York as Indenture Trustee for the QUIPS initiated an adversary proceeding against the Debtor seeking to avoid the transfer of substantially all of the assets of Clark Fork and Blackfoot LLC to the Debtor in November 2002 (the *"Fraudulent Transfer Adversary Proceeding"*).

9.     On May 6, 2004, after Magten initiated an adversary proceeding against the Debtor, the Office of the United States Trustee removed Magten from the Committee.

10.     On August 20, 2004, the Debtor initiated this Adversary Proceeding against the Defendants, seeking damages and equitable relief related to the Defendants' trading activities regarding the QUIPS. The Complaint wholly relies on the allegation that the Defendants traded QUIPS while members of the Committee. A copy of the Complaint is attached hereto as Exhibit "A".

11.     On September 28, 2004, Defendants filed a motion to dismiss the Complaint. The Debtor filed its opposition to the Motion to Dismiss (the *"Debtor's Opposition"*) on October 26, 2004. A copy of the Debtor's Opposition is attached hereto as Exhibit "B". After the issues were fully briefed by both sides, on November 8, 2004,

this Court entered an order denying Defendant's motion to dismiss on the basis that there were numerous factual contentions in dispute between both parties.

12.     On November 3, 2004, this Court entered a scheduling order (the *"Scheduling Order"*) establishing that discovery be concluded by January 21, 2005.

13.     On November 17, 2004, Magten and Law Debenture filed a motion for the withdrawal of the reference from the Bankruptcy Court (the *"Withdrawal Motion"*) and a motion to stay both this Adversary Proceeding and the Fraudulent Transfer Adversary Proceeding pending the resolution of the Withdrawal Motion (the *"Stay Motion"*).

14.     On or about November 23, 2004, the Debtor served (i) its First Set of Interrogatories to Magten (the *"NOR Interrogatories"*) and (ii) its First Set of Requests for Production to Magten (the *"NOR Document Demand"*, and together with the NOR Interrogatories, the *"NOR Discovery Requests"*).

15.     On November 29, 2004, Defendants filed their answer to the Complaint and asserted affirmative defenses therein.

16.     In addition to the NOR Discovery Requests, Debtor has served subpoenas in the Adversary Proceeding (i) Tradition Asiel Securities, Inc., (ii) the Bank of New York Company, Inc.,[1] (iii) Merrill Lynch & Co., Inc., (iv) Bear Stearns Companies, Inc., (v) Oscar Gruss & Son, Incorporated, and (vi) Capital Institution Service.

17.     On December 7, 2004, this Court entered an order staying the Fraudulent Transfer Adversary Proceeding but directing this Adversary Proceeding to proceed toward its anticipated February 7, 2004 trial date (the *"Stay Order"*).

---

[1] This subpoena was subsequently withdrawn by the Debtor on December 28, 2004.

18.    On December 10, 2004, the Defendants served their First Request for Production of Documents on the Debtor (the *"Magten Document Demand"*), and on December 14, 2004, the Defendants served (i) Notice of Deposition pursuant to Rules 7030 and 9016 of the Federal Rules of Bankruptcy Procedure on the Debtor (the *"Magten Deposition Notice"*) and (ii) the Defendants' First Set of Interrogatories to NorthWestern Corporation on the Debtor (the *"Magten Interrogatories"* and together with the Magten Document Demand, and the Magten Deposition Notice, the *"Magten Discovery Requests"*).

19.    In addition to the Magten Discovery Requests, in an effort to ascertain precisely what alleged material, non-public information serves as the basis for the Complaint, the Defendants have served subpoenas on the Debtor's financial advisor, the Debtor's attorney, the members of the Committee that served with Magten and the Committee's professionals (collectively, the *"Magten Subpoenas"*).

20.    On December 29, 2004, Defendants served their responses to the NOR Interrogatories and produced documents responsive to the NOR Document Demand in accordance with an agreed-upon deadline.

I.    THE DEBTOR MUST RESPOND TO THE MAGTEN DISCOVERY REQUESTS

21.    The Debtor asserts that it does not have to provide Defendants with any information because (i) such information may have been previously been provided to Defendants during their tenure on the Committee (Motion at ¶¶ 30-31), and (ii) a document inspection room was established in connection with the confirmation of the Debtor's chapter 11 plan, at Paul, Hastings, Janofsky & Walker LLP's (*"Paul Hastings"*) New York offices (Motion at ¶ 34).

22.    As to the first assertion, the issue is when the information was provided and what was provided.  The Debtor should be compelled to provide discovery as to these matters or face preclusion.  <u>See</u> <u>Ware v. Rodale Press, Inc.</u>, 322 F.2d 218, 222 (3d Cir. 2003) (excluding evidence of damages and dismissing complaint where plaintiff had repeatedly refused to provide information related to damages, where providing such on the eve of trial, prejudiced the defendant by  "impeding [the defendant's] ability to prepare effectively a full and complete trial strategy."); <u>Broomes v. Schmidt</u>, 1996 U.S. Dist. LEXIS 18521 at *7 (E. D. Pa.  December 13, 1996) (dismissing plaintiff's claim because plaintiff's refusal to comply with discovery resulted in "the inability to obtain basic and essential information from and about plaintiff [and] clearly prejudices defendant in defending against and obtaining a prompt and fair resolution of plaintiff's claim.").

23.    Defendants cannot imagine what information the Debtor claims was non-public or material or when it was received and cannot mount a defense to the allegations in the Complaint unless the Debtor provides the information it believes the Defendants possessed when trading in QUIPS as requested by the Magten Discovery Requests.  In pursuing the Adversary Proceeding, the Debtor must prove that Defendants violated their fiduciary duty to creditors by trading in QUIPS while in possession of material, non-public information.  The Magten Discovery Requests were designed to elicit the facts upon which the Debtor purports to rely in bringing the Complaint so that the Defendants may prepare an adequate defense for trial.

24.    In the Complaint, the Debtor alleges "upon information and belief" that it provided Magten and/or Mr. Embry with material, non-public information – but provides no further detail about the alleged information possessed and relied upon by Defendants. Specifically, the following allegations, among others are made "upon information and belief":

> 16.  Upon information and belief, upon being appointed to the Committee, Magten obtained possession of the Debtor's and the Committee's material, non-public information.
>
> 29.  Upon information and belief, the Defendants remained in possession of, and relied upon, the Debtor's and the Committee's non-public information with respect to some or all of these QUIPS purchases.
>
> 49.  Upon information and belief, while a Member of the Committee, the Defendants were furnished material, non-public information of the Committee and the Debtor.  The Defendants have retained possession, custody, and control over the non-public information.

25.    Thereafter, in defending the Complaint against charges that it lacked sufficient factual detail, the Debtor stated that the allegations "will only be confirmed and proven upon further discovery." Debtor's Opposition at 11-12.  Now the time for such discovery has come and the Debtor is again attempting to avoid disclosing to the Defendants the alleged facts that support the allegations made in the Complaint.

26.    Without the disclosure of such information, as sought by the Magten Discovery Requests, it is impossible for the Defendants to understand what information the Debtor is referring to in the Complaint.  In order to be able to construct a defense, Defendants are entitled to know (i) what information the Debtor alleges was provided to the Defendants, (ii) when such information was provided, and (iii) why the information is relevant to both the Debtor and the transactions in question.  This will be the burden

facing the Debtor at trial – and is one that cannot be sustained by making baseless allegations in the Complaint and then intentionally refusing to provide the Defendants with information responsive to reasonable discovery attempts.[2]

27.    "The general purpose of discovery is to remove surprise from trial preparation so that parties may obtain the evidence necessary to evaluate and resolve their dispute." 6-26 Moore's Federal Practice - Civil § 26.02 (2004). "Discovery is also calculated to reduce surprise at trial by educating the parties as to the value of their claims and defenses." Id. Despite the value of pre-trial discovery, and its necessity in this case given the absence of substantive information in the Complaint, the Debtor has continually and systematically refused to provide Defendants with *any* information or documents that purportedly serve as the factual underpinnings for the Complaint – and the trial in the Adversary Proceeding is schedule to begin in a little over one month. It is simply nonsensical for the Debtor to sue the Defendants, to fail to tell the Defendants what information it believes was misused and then to assert that the Defendants should sift through thousands of irrelevant documents to try to ascertain which of these documents the Debtor believes were (i) given to the Defendants; (ii) material and non-public; and (iii) used by the Defendants.

---

[2] It is ridiculous for the Debtor to assert, as it does in paragraph 31 of the Motion, that "if the Defendants and/or their legal counsel, Fried Frank, did not maintain a record of what was discussed of provided during their time on the Committee, the burden of producing all such information again should not fall on the Debtor. . ." Without more specific objections to the Magten Document Demand, it is inappropriate for the Debtor to simply refuse to produce responsive materials on this basis. See 7-34 Moore's Federal Practice - Civil § 34.13 (2004) ("A party asserting the redundancy of requests must specifically refer to documents already produced or describe the relevant search already performed to demonstrate that a request is in fact unreasonably cumulative or duplicative.") (citing Alexander v. FBI, 194 F.R.D. 299, 302 (D.D.C. 2000)). Moreover, the Debtor, as the plaintiff in the Adversary Proceeding, bears the burden of proving its case at trial and of responding to the Magten Discovery Requests – not the other way around. The Defendants do not bear the burden of scrutinizing their own records to determine what facts the Defendants think may serve as the basis for the Debtor's Complaint.

28.    As to the Debtor's second assertion that a document inspection room at Paul Hastings' offices is an adequate response to the Magten Document Demand, this response is both insulting and inappropriate. It is disingenuous for the Debtor to argue, as it now does, that a document inspection room that holds tens of thousands of documents culled in response to discovery demands served in connection with the confirmation of the Debtor's chapter 11 plan, is responsive to the Magten Discovery Requests. Federal Rule of Civil Procedure 34(b), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7034, requires that "a party who produces documents for inspection shall produce them as they are kept in the usual coarse of business or shall organize and label them to correspond with the categories in the request." Fed. R. Civ. P. 34(b). This provision "clearly prohibits a party from simply producing a mass of responsive documents in bulk," such as that proposed by the Debtor's 'invitation' to visit the document inspection room. 7-34 Moore's Federal Practice - Civil § 34.14 (2004). The document inspection room was established in April 2004, four months before the Complaint was filed, in anticipation of a contested confirmation process and the discovery requests that would be served in connection therewith. The Debtor, as the plaintiff in this Adversary Proceeding, has the burden of producing documents and information responsive to the limited scope of the Magten Discovery Requests.

II.    THE DISCOVERY DEADLINE IN THE MAGTEN DOCUMENT DEMAND WAS APPROPRIATE

29.    Magten filed the Stay Motion on November 17, 2004, when neither the Defendants nor the Debtor had served any discovery demands in connection with either this Adversary Proceeding or the Fraudulent Transfer Adversary Proceeding. On

December 10, 2004, just three days after the Stay Order was entered directing that this Adversary Proceeding continue in accordance with the Scheduling Order, the Defendants served the Magten Document Demand and shortly thereafter served the Magten Deposition Notice, the Magten Interrogatories, and the Magten Subpoenas.

30.     The Scheduling Order anticipates an expedited discovery process and establishes a discovery cut-off of January 21, 2005.  In light of this, the Magten Document Demand gave the Debtor twenty (20) days to comply with the demand.  As the plaintiff in this Adversary Proceeding the Debtor has the burden of proof and presumably compiled and examined *some* relevant documents before filing the Complaint – at a minimum these documents should have been ready for production to the Defendants by December 30, 2004, the date specified in the Magten Document Demand.

31.     If the Defendants do not receive documents and other information with sufficient time to review and synthesize the information provided, the Defendants will be left with no choice but to depose certain entities twice -- once in accordance with the Magten Subpoenas and once after the information responsive to the Magten Discovery Requests has been provided and synthesized – at considerable loss of time and money to all entities involved.   This Court has the power to approve of the shortening or lengthening of the Debtor's response time.  See 7-34 Moore's Federal Practice - Civil § 34.13 (2004) ("The court has the power to shorten or lengthen the 30-day time period for a response to a request for production, and the parties may agree in writing to a shorter or longer time, subject to Rule 29.").   In light of the expedited discovery schedule contemplated by the Scheduling Order, and the substantial costs and delays that will result if the Defendants do not receive timely responses to the Magten Discovery

Requests, Defendants respectfully request that the Motion be denied and that this Court direct the Debtor to produce all responsive, non-privileged documents to the Defendants forthwith.

III.   DEFENDANTS ARE WILLING TO ENTER INTO AN APPROPRIATE CONFIDENTIALITY AGREEMENT

32.   The Motion also seeks the entry of a protective order because of the need to keep certain items confidential.  This is a red herring, however, and could have been avoided had the Debtor simply conferred with Defendants' counsel.  Defendants are willing to enter into a confidentiality agreement, and on December 30, 2004, Defendants sent a letter to the Debtor's counsel and to Paul Hastings' counsel with a proposed draft confidentiality stipulation attached.  A copy of that letter and draft confidentiality agreement (the *"Proposed Confidentiality Agreement"*) is attached hereto as Exhibit "C". The Proposed Confidentiality Agreement addresses all of the Debtor's purported concerns expressed in the Motion, such as (i) non-disclosure of confidential information, (ii) limiting the use of confidential information to the Adversary Proceeding and (iii) established procedures for notice of intent to use confidential information at trial. Therefore, Defendants request that the Motion be denied and that this Court enter a confidentiality order governing discovery in this Adversary Proceeding substantially in the form attached hereto as Exhibit "D".

**WHEREFORE**, the Defendants respectfully request that (i) this Court deny the Motion and direct the Debtor to comply with the Magten Discovery Requests, (ii) enter a confidentiality order governing discovery in this case substantially in the form attached hereto as Exhibit D, and (iii) grant Defendants such other relief as may be just and proper.

Dated: January 4, 2005

**BLANK ROME LLP**

Mark J. Packel (DE No. 4048)
Elio Battista, Jr. (DE No. 3814)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 425-6400
Facsimile:    (302) 425-6464

- and -

**FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP**
Bonnie Steingart
Gary L. Kaplan
One New York Plaza
New York, NY 10004
Telephone:    (212) 859-8000
Facsimile:    (212) 859-4000

Counsel for Magten Asset Management
Corporation and Talton R. Embry

# EXHIBIT "A"

| (Rev. 8/87)    ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | Adversary Proceeding Number (Court Use Only) |
|---|---|

| PLAINTIFF<br><br>NORTHWESTERN CORPORATION | DEFENDANTS<br><br>MAGTEN ASSET MANAGEMENT CORPORATION and TALTON R. EMBRY |
|---|---|
| ATTORNEYS (Firm, Address and Telephone No.)<br><br>Scott D. Cousins, Esq.<br>William E. Chipman, Jr., Esq.<br>Greenberg Traurig, LLP<br>1000 West Street, Suite 1540<br>Wilmington, DE 19801<br>Telephone: (302) 661-7000    Facsimile: (302) 661-7360<br><br>Adam Cole, Esq.<br>Greenberg Traurig LLP<br>885 Third Avenue<br>New York, NY 10166<br>Telephone: (212) 801-9200    Facsimile: (212) 801-6400 | ATTORNEYS  (If Known)<br><br>Bonnie Steingart, Esq.<br>Gary Kaplan, Esq.<br>Fried Frank Harris Shriver & Jacobson LLP<br>One New York Place<br>New York, NY  10004<br>Telephone: (212) 859-8000  Facsimile: (212) 859-4000<br><br>William J. Burnett, Esquire<br>Blank Rome LLP<br>1201 Market Street, Suite 800<br>Wilmington, DE  19801<br>Telephone: (302) 425-6400 Facsimile: (302) 425-6464 |

| CAUSE OF ACTION (Write A Brief Statement Of Cause Of Action, Including All U.S. Statutes Involved)<br>Defendants' misappropriation and use of material, non-public information in purchasing approximately 40% of the Debtor's Series A 8.45% Quarterly Income Preferred Securities. |
|---|

NATURE OF SUIT

(Check the one most appropriate box only.)

| [ X ] 454 To Recover Money or Property<br>[ ] 435    To Determine Validity, Priority, or Extent of a Lien or Other Interest in Property<br>[ ] 458    To obtain approval for the sale of both the interest of the estate and of a co-owner in property<br>[ ] 424    To object or to revoke a discharge 11 U.S.C. § 727 | [ ] 455    To revoke an order of confirmation of a Chap. 11 or Chap. 13 Plan<br>[ ] 426    To determine the dischargeability of a debt 11 U.S.C. § 523<br>[ ] 434    To obtain an injunction or other equitable relief<br>[ X ] 457 To subordinate any allowed claim or interest except where such subordination is provided in a plan | [ ] 456 To obtain a declaratory judgment relating to any of foregoing causes of action<br>[ ] 459    To determine a claim or cause of action removed to a bankruptcy court<br>[ ] 498    Other (specify) |
|---|---|---|

| ORIGIN OF PROCEEDINGS (Check one box only.) | [X] 1 Original Proceeding | [ ] 2 Removed Proceeding | [ ] 4 Reinstated or Reopened | [ ] 5 Transferred from Another Bankruptcy Court | [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 |
|---|---|---|---|---|---|

| DEMAND | NEAREST THOUSAND<br>$ TBD | OTHER RELIEF SOUGHT<br>Objection to and subordination of Defendants' proof of claim | [ ] JURY DEMAND<br>No |
|---|---|---|---|

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES |
|---|

| NAME OF DEBTOR<br><br>NORTHWESTERN CORPORATION | | BANKRUPTCY CASE NO.<br><br>03-12872 |
|---|---|---|
| DISTRICT IN WHICH CASE IS PENDING<br>DELAWARE | DIVISIONAL OFFICE | NAME OF JUDGE<br>The Honorable Charles G. Case |

| RELATED ADVERSARY PROCEEDING (IF ANY) |
|---|

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |

| FILING FEE<br>(Check One Box Only)    [X] Fee Attached  [ ] Fee Not Required    [ ] Fee Is Deferred |
|---|

| DATE<br>August 20, 2004 | PRINT NAME<br>William E. Chipman, Jr. | SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|---|---|

B-104
(Rev. 8/87)

24717-1/sdc/adversarycover.doc

## ADVERSARY PROCEEDING COVER SHEET (Reverse Side)

This cover sheet must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney) and submitted to the Clerk of the court upon the filing of a complaint initiating an adversary proceeding.

The cover sheet and the information contained on it *do not* replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. This form is required for the use of the clerk of the court to initiate the docket sheet and to prepare necessary indices and statistical records. A separate cover sheet must be submitted to the clerk of the court for each complaint filed. The form is largely self explanatory.

**Parties.** The names of the parties to the adversary proceeding *exactly* as they appear on the complaint. Give the names and addresses of the attorneys if known. Following the hearing "Party," check the appropriate box indicating whether the United States is a party named in the complaint. If the plaintiff is *pro se*, that is, not represented by an attorney, check the box labeled "no attorney."

**Cause of Action.** Give a brief description of the cause of action including all federal statutes involved. For example, "Complaint seeking damages for failure to disclose information, Consumer Credit Protection Act, 15 U.S.C. §§ 1601 et seq.," or "Complaint by trustee to avoid a transfer of property by the debtor, 11 U.S.C. § 544."

**Nature of Suit.** Place an "X" in the appropriate box. Only one box should be checked. If the cause fits more than one category of suit, select the most definitive.

**Origin of Proceedings.** Check the appropriate box to indicate the origin of the case:

1.  Original Proceeding.
2.  Removed from a State or District Court.
3.  Reinstated or Reopened.
4.  Transferred from Another Bankruptcy Court.

**Demand.** On the next line, state the dollar amount demanded in the complaint in thousands of dollars. For $1,000 enter "1," for $10,000 enter "10," for $100,000 enter "100," if $1,000,000, enter "1000." If $10,000,000 or more, enter "9999." If the amount is less than $1,000, enter "0001." If no monetary demand is made, enter "XXXX." If the plaintiff is seeking non-monetary relief, state the relief sought, such as injunction or foreclosure of a mortgage.

**Bankruptcy Case In Which This Adversary Proceeding Arises.** Enter the name of the debtor and the docket number of the bankruptcy case from which the proceeding now being filed arose. Beneath, enter the district and divisional office where the case was filed, and the name of the presiding judge.

**Related Adversary Proceedings.** State the names of the parties and the six digit adversary proceeding number from any adversary proceeding concerning the same two parties or the same property currently pending in any bankruptcy court. On the next line, enter the district where the related case is pending, and the name of the presiding judge.

**Filing Fee.** Check one box. The fee must be paid upon filing unless the plaintiff meets one of the following exceptions. The fee is not required if the plaintiff is the United States government or the debtor. If the plaintiff is the trustee or a debtor in possession, and there are no liquid funds in the estate, the filing fee may be deferred until there are funds in the estate. (In the event no funds are ever recovered for the estate, there will be no fee). There is no fee for adding a party after the adversary proceeding has been commenced.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the right of the last line of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is *pro se*, that is, not represented by an attorney, the plaintiff must sign.

The name of the signatory must be printed in the box to the left of the signature. The date of the signing must be indicated in the box on the far left of the last line.

24717-1/sdc/adversarycover.doc

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NORTHWESTERN CORPORATION, | : | Case No. 03-12872 (CGC) |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |
| NORTHWESTERN CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MAGTEN ASSET MANAGEMENT | : | Adv. No. _____ |
| CORPORATION, and TALTON R. EMBRY, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## COMPLAINT

NorthWestern Corporation, a Delaware corporation (**"NorthWestern,"** the

**"Debtor"** or the **"Plaintiff"**), by and through its undersigned counsel, for (i) its

complaint against Defendants Magten Asset Management Corporation (**"Magten"**) and

Talton R. Embry (**"Embry,"** together with Magten, the **"Defendants"**), and (ii) its

Objection to Claim Number 842 of Magten Asset Management Corporation (the

**"Objection"**), hereby alleges as follows:

## NATURE OF THE ACTION

1.     This is an action relating to the Defendants' misappropriation and use of

material, non-public, information in purchasing approximately 40% of the Debtor's

Series A 8.45% Quarterly Income Preferred Securities (the **"QUIPS"**).  As members of

the Official Committee of Unsecured Creditors (the **"Committee"**), the Defendants were

vested with legal, contractual, and fiduciary duties not to misappropriate non-public information for their own self interest. The Defendants willfully breached each of these duties in connection with their purchase of more than 100,000 QUIPS after becoming members of the Committee and receiving material, non-public information concerning the Debtor.

2.      By this adversary proceeding, the Debtor seeks damages and equitable relief relating to the Defendants' improper trading activity. In particular, the Debtor seeks damages (including disgorgement of any ill-gotten gains) to compensate itself and its creditors for the Defendants' breach of fiduciary duty, breach of contract, and violation of an express Court order prohibiting the very trading activity in which the Defendants engaged. Based upon the same inequitable and self interested conduct, the Debtor also objects to and seeks subordination of Magten's claim in this Chapter 11 case under Sections 502(b) and 510(c) of the Bankruptcy Code, respectively.

## PARTIES

3.      Plaintiff NorthWestern is a corporation organized under the laws of Delaware, having its principal place of business located in Sioux Falls, South Dakota.

4.      NorthWestern is a publicly traded Delaware corporation which was incorporated in 1923. NorthWestern and its direct and indirect non-NorthWestern subsidiaries comprise one of the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of the United States, serving approximately 608,000 customers throughout Montana, South Dakota and Nebraska.

5.    Defendant Magten is a corporation organized under the laws of Delaware, having its principal place of business located at 410 Park Avenue, 14th Floor, New York, New York 10022.

6.    Defendant Embry was at all relevant times the 100% owner and Chairman of Magten. Other than Embry, Magten has only one employee, a secretary named Jean Colditz.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this Chapter 11 case and this Complaint are proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

8.    On September 14, 2003 (the **"Petition Date"**), NorthWestern filed its voluntary petition for relief under chapter 11 of The Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the **"Bankruptcy Code"**). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, NorthWestern continues to operate its business and manage its properties as debtor-in-possession.

9.    No request has been made for the appointment of a trustee or examiner in this case. The Committee was appointed by the Office of the United States Trustee on September 30, 2003.

10.    By Order dated October 10, 2003, this Court established January 15, 2004 at 5:00 p.m. (Pacific Standard Time) (the **"Bar Date"**) as the deadline for creditors to file proofs of claim for each claim they assert against the Debtor that arose before the Petition

Date. Notice of the Bar Date was mailed to all known creditors of the Debtor and

published in numerous regional and national newspapers.

11.    Magten filed Proof of Claim, designated claim number 842 by the

Debtor's claims agent (the **"Magten Claim"**). The Magten Claim asserts unliquidated

claims against the Debtor's estate for:  (i) damages resulting from the alleged fraudulent

transfer of the utility assets of NorthWestern Energy, LLC to the Debtor on November

15, 2002 (the **"Transfer"**); and (ii) the face amount of the QUIPS held by Magten as of

the Petition Date.

12.    On or about November 6, 2003, this Court entered its Order Permitting

Securities Trading Upon Establishment of Ethical Wall [Docket No. 257] (the

**"Securities Trading Order"**). The Securities Trading Order prohibits members of the

Committee (present and future, each a **"Member"**) from trading in the securities of the

Debtor and its affiliates, unless and until such Member establishes and implements an

ethical wall (the **"Ethical Wall"**) in accordance with the terms and conditions of the

Securities Trading Order, so as to prevent:

> (i) the Ethical Wall Entity's trading personnel from misusing any material
> non-public information obtained by such Ethical Wall Entity's designated
> representative(s) involved in Committee-related or reorganization-related
> activities (**"C/R Personnel"**); and
>
> (ii) C/R Personnel from receiving material non-public information
> regarding such Ethical Wall Entity's trading in the Securities in advance
> of such trades.  This Order does not preclude this Court from taking any
> action it deems appropriate in the event that an actual breach of fiduciary
> duty has occurred.

13.    Accordingly, to comply with the Securities Trading Order, Members of

the Committee were required to establish an Ethical Wall before trading in the Securities.

14.     Upon request of the Defendants, by notice dated November 25, 2003, the Office of the United States Trustee for the District of Delaware (the **"U.S. Trustee"**) appointed Magten to the Committee.  Magten was represented on the committee by its 100% principal, Embry.

15.     Upon information and belief, upon appointment to the Committee or shortly thereafter, the Defendants became aware of the Securities Trading Order.

16.     Upon information an belief, upon being appointed to the Committee, Magten obtained possession of the Debtor's and the Committee's material, non-public information.

17.     Once appointed to the Committee, Magten's fiduciary and other common law duties precluded it from trading in the securities of the Debtor and its affiliates, including without limitation, the QUIPS, except as provided in the Securities Trading Order.

18.     On December 18, 2003, Embry, as Chairman of and on behalf of Magten, executed a Confidentiality Agreement with Official Committee of Unsecured Creditors (the **"Confidentiality Agreement"**).  Under the Confidentiality Agreement, the Defendants agreed maintain confidential all nonpublic and proprietary information provided by or to the Committee.

19.     By executing the Confidentiality Agreement, Embry as Chairman of and on behalf of Magten, acknowledged that he was aware, and he would advise Magten's representatives that the United States securities laws prohibit any person in receipt from an issuer of material, non-public information from purchasing or selling or offering to purchase or sell securities of the issuer or from communication of the information to any

- 5 -

other person under circumstances in which it is reasonably foreseeable that the person would have been likely to purchase or sell securities.

20.     Defendants' understanding of the Securities Trading Order and the Confidentiality Agreement was made clear when, on or about February 5, 2004, counsel for Magten requested the U.S. Trustee's approval on a motion exempting Magten from the Securities Trading Order (the **"Draft Motion"**). The Draft Motion was never filed with this Court and no order of this Court has been entered relieving Defendants obligations under the Securities Trading Order.

21.     In the Draft Motion, Defendants admitted their understanding that they were prohibited from trading in the Debtor's securities while members of the Committee without establishing an Ethical Wall. In their draft motion, Defendants asserted:

> Because of Magten's structure, it is impossible for Magten to comply with the precise terms of the Trading Order and trade through an Ethical Wall Entity without further clarification of the Trading Order. Thus, by this Motion, Magten seeks an order clarifying the Trading Order so as to make it clear that if Magten uses the services of an independent third-party broker (the "Broker") who does not receive any confidential information regarding the Debtor and that has autonomy in making buy/sell decisions in executing trades in the securities of the Debtor and its affiliates, Magten will receive the protections afforded by the Order.

22.     Thereafter, on April 16, 2004, Magten and Law Debenture Company of New York filed an adversary proceeding to avoid the transfer of assets of Clark Fork and Blackfoot LLC (f/k/a NorthWestern Energy LLC) (**"Clark Fork"**) to the Debtor in November 2002 pursuant to what is generally referred to as the "going flat" transaction (the **"Magten Adversary Proceeding"**).

23.     The Magten Adversary Proceeding resulted in an inherent conflict between the Defendants and the Committee. Accordingly, in a letter dated May 6, 2004,

- 6 -

the Trustee removed Magten from the Committee stating the relief sought in the Magten

Adversary Proceeding "is inconsistent with Magten's . . . fiduciary duty to the

Committee's constituents, the general unsecured creditors of NorthWestern Corporation."

    24.    After being expelled from the Committee, Magten was still bound by the

terms of Confidentiality Agreement and the Securities Trading Order, to the extent

Magten was still in possession of material, non-public information it had obtained while

serving as a Member of the Committee.

### DEFENDANTS PURCHASE THE DEBTOR'S QUIPS WHILE IN POSSESSION OF THE DEBTOR'S NON-PUBLIC INFORMATION

    25.    Notwithstanding the Confidentiality Agreement in which they

acknowledged that use of the Debtor's non-public information constituted a potential

violation of the securities laws, and the Securities Trading Order, Embry caused Magten

to purchase over 123,000 of the Debtor's QUIPS and sell 3,800 of the Debtor's QUIPS in

a series of market transactions after joining the Committee. Upon information and belief,

Defendants were in possession of and relied upon the Debtor's and the Committee's non-

public information when executing the securities transactions.

    26.    Between November 25, 2003 and May 4, 2004—the dates within which

Defendants were Committee members, the Defendants purchased 28,540 of the Debtor's

QUIPS as follows:

| | |
|---|---|
| 12/01/03 | 4,300 |
| 12/01/03 | 1,000 |
| 12/01/03 | 500 |
| 12/01/03 | 1,000 |
| 12/01/03 | 1,100 |
| 12/01/03 | 1,400 |
| 12/01/03 | 1,800 |
| 12/01/03 | 3,500 |
| 12/01/03 | 1,000 |

- 7 -

| | |
|---|---|
| 12/03/03 | 2,440 |
| 12/03/03 | 1,000 |
| 12/03/03 | 1,000 |
| 12/05/03 | 7,500 |
| 01/21/04 | 1,000 |
| **Total** | 28,540 |

27.     Between November 25, 2003 and May 4, 2004—the dates within which

Defendants were Committee members, the Defendants sold 3,800 of the Debtor's QUIPS

as follows:

| | |
|---|---|
| 12/17/03 | 1,900 |
| 12/17/03 | 1,900 |
| **Total** | 3,800 |

28.     The Defendants' purchases of QUIPS accelerated immediately after May

4, 2004, when the Defendants purchased through July 8, 2004 an additional 95,000 of the

Debtor's QUIPS as follows:

| | |
|---|---|
| 05/14/04 | 1,000 |
| 05/14/04 | 1,000 |
| 05/18/04 | 1,500 |
| 05/18/04 | 1,500 |
| 05/19/04 | 500 |
| 05/19/04 | 500 |
| 05/20/04 | 1,250 |
| 05/20/04 | 1,300 |
| 05/20/04 | 2,000 |
| 05/20/04 | 4,450 |
| 05/28/04 | 1,200 |
| 06/01/04 | 1,000 |
| 06/03/04 | 5,000 |
| 06/07/04 | 800 |
| 06/08/04 | 10,500 |
| 06/09/04 | 1,500 |
| 06/15/04 | 11,600 |
| 06/16/04 | 4,000 |
| 06/17/04 | 8,700 |
| 06/18/04 | 14,000 |
| 06/21/04 | 4,000 |

| | |
|---|---|
| 06/23/04 | 2,000 |
| 06/29/04 | 6,800 |
| 07/02/04 | 600 |
| 07/06/04 | 3,500 |
| 07/08/04 | 4,800 |
| **Total** | 95,000 |

29.    Upon information and belief, the Defendants remained in possession of, and relied upon, the Debtor's and the committee's non-public information with respect to some or all of these QUIPS purchases.  As a result of its purchases, Magten holds approximately 40% of outstanding QUIPS, and has filed a claim with regard to those QUIPS in this case.

30.    This adversary proceeding seeking subordination of Magten's claims, actual damages, equitable relief, and objecting to the Magten Claim follows.

## COUNT I

## BREACH OF FIDUCIARY DUTY

31.    Plaintiff repeats and realleges the allegations set forth in the Paragraphs 1 through 30 as though fully set forth herein.

32.    As members of the Committee, Defendants were vested with a fiduciary duty to all unsecured creditors, among other things, to act with due care, not to act in furtherance of their self-interests to the potential detriment of other creditors, to maintain confidentiality, and to guide their actions so as to safeguard the rights of minority as well as majority creditors.

33.    In addition, as members of the Committee, Defendants were obligated to comply with the Securities Trading Order.  The Securities Trading Order prohibited trading by Committee members, such as Defendants, while members of the Committee and in possession of non-public information without first establishing an Ethical Wall.

- 9 -

34.     In addition, as members of the Committee, Defendants were obligated to comply with the Confidentiality Agreement they signed, under which they confirmed their duty to keep confidential all non-public information obtained as part of the Committee.

35.     Upon information and belief, after being appointed to the Committee, and after receiving material, non-public information from the Debtor and the Committee, the Defendants purchased over 100,000 shares of the Debtor's QUIPS.

36.     The Defendants' trades willfully violated their fiduciary duty to other creditors as a matter of law, under the Confidentiality Agreement, and under the Securities Trading Order.

37.     The Defendants' willful violation of their fiduciary duties caused the Debtor, the Committee, and the creditors damages in an amount to be determined.

## COUNT II

## EQUITABLE SUBORDINATION PURSUANT TO 11 U.S.C. § 510(c)

38.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 37 as though fully set forth herein.

39.     The Defendants willfully violated their fiduciary duties, willfully violated the Securities Trading Order, willfully violated the Confidentiality Agreement, and potentially violated the federal securities laws when they purchased over 100,000 shares of the Debtor's QUIPS in market trades after receipt of the Committee's and the Debtor's non-public information.

40.     The Defendant's conduct in misappropriating and using the Committee's and the Debtor's non-public information for their self interests constitutes inequitable

conduct that caused injury to the Debtor, its creditors, and the Committee. The maintenance and use of the non-public information also conferred upon the Defendants an unfair advantage over other creditors.

41.    Because of the actions described herein, the claims of Magten against the Debtor's estate should be equitably subordinated to the level of equity interests in the Debtor pursuant to section 510(c) of the Bankruptcy Code.

<u>**COUNT III**</u>

<u>**OBJECTION TO THE MAGTEN CLAIM**</u>

42.    Plaintiff repeats and realleges the allegations set forth in the paragraphs 1 through 41 above as though fully set forth herein.

43.    The Magten Claim asserts unliquidated claims against the Debtor's estate for: (i) damages resulting from the alleged fraudulent transfer of the utility assets of NorthWestern Energy, LLC to the Debtor on November 15, 2002 (the **"Transfer"**); and (ii) the face amount of the QUIPS held by Magten as of the Petition Date.

44.    The Defendants violated their fiduciary duties, violated the Securities Trading Order, violated the Confidentiality Agreement, and potentially violated the federal securities laws when they purchased over 100,000 shares of the Debtor's QUIPS in market trades after receipt of the Committee's and the Debtor's non-public information.

45.    The Defendant's conduct in misappropriating and using the Committee's and the Debtor's non-public information for their self interests constitutes inequitable conduct that caused injury to the Debtor, its creditors, and the Committee. The

maintenance and use of the non-public information also conferred upon the Defendants

an unfair advantage over other creditors.

46.    Because of the actions described herein, the Magten Claim should be

limited to the amount that Magten paid for the QUIPS.

## COUNT IV

## DAMAGES FOR VIOLATION OF THE SECURITIES TRADING ORDER

47.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1

through 46 as though fully set forth herein.

48.    As members of the Committee, Defendants were obligated to comply with

the Securities Trading Order.  The Securities Trading Order prohibited trading by

Committee members, such as Defendants, while members of the Committee and in

possession of non-public information without first establishing an Ethical Wall.

49.    Upon information and belief, while a Member of the Committee, the

Defendants were furnished material, non-public information of the Committee and the

Debtor.  The Defendants have retained possession, custody, and control over the non-

public information.

50.    Upon information and belief, after receipt of the non-public information,

and while in possession, custody, and control of such information, the Defendants

purchased shares of the Debtor's QUIPS.

51.    Upon information and belief, the Defendants misappropriated and used the

non-public information in determining to purchase some or all of the Debtor's securities.

52.    Upon information and belief, the Defendants, as members of the

Committee, did not establish an Ethical Wall prior to trading in the Debtor's securities.

- 12 -

53.     The Defendants' trades in the Debtor's QUIPS while members of the Committee without first establishing an Ethical Wall violated the Securities Trading Order.

54.     The Defendants' violation of the Securities Trading Order caused the Debtor, the Committee, and the creditors damages in an amount to be determined. The Debtor is also entitled to an award of punitive damages.

## **RESERVATION OF RIGHTS**

55.     The Debtor reserves the right to amend, modify or supplement this Complaint and Objection and to object further to the Magten Claim on any and all additional factual or legal grounds, including if such claim is not reduced or disallowed as requested herein or if additional information regarding the disallowance or reduction of such claim is discovered upon further review thereof or through discovery pursuant to the applicable provisions of the Bankruptcy Rules.

56.     This Objection complies with Del. Bankr. L R 3007-1(e).  No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, Plaintiff respectfully demands judgment against Defendants as follows:

A.     For actual damages in an amount to be determined at trial;

B.     Sustaining the Debtor's objection to the Magten Claim;

C.     Compelling Defendants to account for any and all profits obtained by reason of the misconduct alleged herein and the imposition of a constructive trust on such ill-gotten profits;

D.     Subordinating the Defendants' claims;

- 13 -

E    For Defendants' willfull conduct, punitive damages in an amount to be

determined at trial;

F.    For attorney's fees and costs; and

F.    Granting such other and further relief as the Court deems just and

appropriate.

Dated: Wilmington, Delaware
August 20, 2004

                              GREENBERG TRAURIG, LLP

                              Scott D. Cousins (No. 3079)
                              William E. Chipman, Jr. (No. 3818)
                              Paul D. Brown (No. 3903)
                              The Brandywine Building
                              1000 West Street, Suite 1540
                              Wilmington, DE 19801
                              Telephone: (302) 661-7000

                              And

                              Adam D. Cole
                              GREENBERG TRAURIG, LLP
                              885 Third Avenue
                              New York, NY 10022
                              Telephone: (212) 801-2100

                              *Counsel for the Debtor and
                              Debtor-in-Possession*

- 14 -

# EXHIBIT "B"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NORTHWESTERN CORPORATION, | : | Case No. 03-12872 (CGC) |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |
| NORTHWESTERN CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MAGTEN ASSET MANAGEMENT | : | Adv. No. 04-55051 (CGC) |
| CORPORATION, and TALTON R. EMBRY, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| . | : | |

MEMORANDUM OF LAW OF NORTHWESTERN
CORPORATION IN OPPOSITION TO MOTION TO DISMISS

GREENBERG TRAURIG, LLP
Scott D. Cousins
William E. Chipman, Jr.
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, Delaware 19801
Telephone: (302) 661-7000

GREENBERG TRAURIG, LLP
Adam D. Cole
885 Third Avenue
New York, New York 10022
Telephone: (212) 801-2100

*Attorneys for Debtor NorthWestern Corporation*

DEL-SRV01\125322v09

**TABLE OF CONTENTS**

Table of Authorities .................................................................................................... iii

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ......................................................................................... 2

    The Parties ............................................................................................................ 2

    The Securities Trading Order ................................................................................. 2

    Magten's Assumption Fiduciary Responsibilities .................................................. 3

    Magten's Purchase The Debtor's QUIPs While In Possession Of
        Non-Public Information ..................................................................................... 5

    Magten Is Removed From The Creditors Committee And
        Continues Its Inequitable Conduct ................................................................... 5

    The Present Adversary Proceeding ......................................................................... 6

ARGUMENT ............................................................................................................... 7

I.   THE ADVERSARY COMPLAINT SATISFIES THE PLEADING REQUIREMENTS OF
    THE FEDERAL RULES OF CIVIL PROCEDURE AND SHOULD THEREFORE BE
    SUSTAINED ........................................................................................................ 7

    A.   The Standards Applicable To Magten's Motion ........................................... 7

    B.   The Adversary Complaint Satisfies Rule 8(a) Because It
         Provides Magten With Fair Notice Of The Claims ................................... 8

    C.   Magten's Reliance Upon A Declaration To Disagree With Factual Allegations In
         The Adversary Complaint Is Improper .................................................. 12

II.  THE ADVERSARY COMPLAINT STATES CLAIMS FOR DAMAGES AND
    EQUITABLE SUBORDINATION AND SHOULD THEREFORE BE SUSTAINED ........ 13

    A.   The Adversary Complaint Sufficiently Notifies Magten Of Its Inequitable
         Conduct ............................................................................................... 14

    B.   Magten's Violations Of The Securities Trading Order And
         The Confidentiality Agreement Constitute Inequitable
         Conduct ............................................................................................... 18

**TABLE OF CONTENTS CONT.**

III. EQUITABLE SUBORDINATION AND DAMAGES ARE
     APPROPRIATE REMEDIES.................................................................. 20

CONCLUSION........................................................................................ 24

# TABLE OF AUTHORITIES

**Federal Cases**

Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808
(3d Cir. 1990)............................................................................................................... 10

Citicorp Venture Capital, Ltd. v. Committee of Creditors (In re Papercraft Corp.),
160 F.3d 982 (3d Cir. 1998)............................................. 15, 16, 17, 18, 19, 21, 22, 23, 24

Citicorp Venture Capital, Ltd. v. Committee of Creditors, 323 F.3d 228 (3d Cir.
2002) ..................................................................................................................... 16, 20

Conley v. Gibson, 355 U.S. 41 (1957)............................................................................... 8, 14

In re Enron Corp., 2004 WL 2165348 (Bankr. S.D.N.Y. Sept. 23, 2004)............................... 8, 11

In re Life Service Systems, Inc., 279 B.R. 504 (W.D. Pa. 2002) .................................................. 16

In re Martin, 91 F.3d 389 (3d Cir. 1996) ................................................................................ 22

In re Metiom, Inc., 301 B.R. 634 (Bankr. S.D.N.Y. 2003)......................................................... 9, 11

In re Mid-American Waste Systems, Inc., 284 B.R. 53 (Bankr. D. Del. 2002) ..................... 21, 23

In re Papercraft Corp., 187 B.R. 486 (W.D. Pa. 1995) .......................................................... 17, 18

In re Teltronics Servs., Inc., 29 B.R. 139 (Bankr.E.D.N.Y.1983) ........................................... 20, 21

Langadinos v. American Airlines, Inc. 199 F.3d 68 (1st Cir. 2000) ............................................. 11

Manufacturers Trust Co. v. Becker, 338 U.S. 304 (1949) .......................................................... 18

Nami v. Fauver, 82 F.3d 63 (3d Cir. 1996)............................................................................... 14

Official Committee of Unsecured Creditors of Cybergenics Corp., 330 F.3d 548
(3d Cir. 2003)............................................................................................................. 22

O'Neil v. Q.L.C.R.I., Inc., 750 F. Supp. 551 (D.R.I. 1990) ......................................................... 20

Perington Wholesale, Inc. v. Burger King Corp., 631 F.2d 1369 (10th Cir. 1979)...................... 12

Pinker v. Roche Holdings Ltd., 292 F.3d 361 (3d Cir. 2002)........................................................ 8

## TABLE OF AUTHORITIES

Static Control Components, Inc. v. Darkprint Imaging, Inc., 135 F. Supp. 2d 722
(M.D.N.C. 2001) ................................................................................................ 12

Swierkiewicz v. Sorema, 534 U.S. 506 (2002) ........................................................ 9, 10

U.S. v. O'Hagan, 521 U.S. 642 (1997) ......................................................................... 24

Walton v. Morgan Stanley & Co. Inc., 623 F.2d 796 (2d Cir. 1980) ............................ 24

Zakutansky v. Bionetics Corp., 806 F. Supp. 1362 (N.D. Ill. 1992) ............................ 12

**State Cases**

Brophy v. Cities Service Co., 70 A.2d 5, 246 (Del. Ch. 1949) ..................................... 24

St. James Recreation, LLC v. Rieger Opportunity Partners, LLC, 2003
WL 22659875 (Del. Ch.) ................................................................................... 24

Stonington Partners, Inc. v. Lernout & Houspie Speech Products, N.V., 2002
WL 31439767 (Del. Ch.) ................................................................................... 24

T.V. Spano Bldg. Corp. v. Wilson, 584 A.2d 523 (Del. Super. Ct. 1990) .................... 24

**Federal Statutes**

28 U.S.C. § 1746(1) ....................................................................................................... 14

# INTRODUCTION

This adversary proceeding relates to the systematic attempt by Defendants Magten Asset Management Corporation ("Magten") and Talton R. Embry ("Embry") to "hold up" the Debtor, NorthWestern Corporation ("NorthWestern" or the "Debtor"), and its Official Committee of Unsecured Creditors (the "Creditors Committee"), by doing everything they could to block, delay, and increase costs of the Debtor's reorganization. Magten, while a member of the Creditors Committee, a fiduciary, and privy to non-public financial and strategic information, secretly purchased at a discount over 120,000 of the Debtor's Series A 8.45% Quarterly Income Preferred Securities (the "QUIPS"). Magten and Embry made these purchase to obtain an unfair and inequitable "blocking position" in the Debtor's Chapter 11 case for their own self-interest, to influence negotiations, and ultimately to hinder the Debtor's and Committee's attempts at a rapid reorganization. Through its attempts to block and delay, Magten and Embry sought to force the Debtor and the Committee to forego value to Magten and Embry, when none was otherwise warranted, to the detriment of other creditors.

By this adversary proceeding, the Debtor seeks damages and equitable relief (including disgorgement of ill-gotten gains) to compensate itself and its creditors for the Defendants' unfair advantage, breach of fiduciary duty, breach of contract, and violation of an express Court order prohibiting the very trading activity in which the Defendants engaged. Based upon the same inequitable and self-interested conduct, the Debtor also objects to and seeks subordination of Magten's claim in this Chapter 11 case under Sections 502(b) and 510(c) of the Bankruptcy Code, respectively.

Without regard for the settled standards under which a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure Federal is to be resolved, the relevant Third

Circuit precedent supporting subordination of their claims, or the relevant state law prohibiting their QUIPs trades, the Defendants contend that the Adversary Complaint fails to state a claim. The Defendants are wrong. As demonstrated below, the Defendants' trades in the Debtor's QUIPs combined with their other related actions in this Chapter 11 case constitute the very nature of actions that warrant equitable subordination and disgorgement of ill-gotten gains. For these reasons, and as demonstrated in further detail below, Defendants' motion to dismiss should be denied.

## FACTUAL BACKGROUND

The following facts set forth in the Adversary Complaint are assumed true for purposes of the present motion to dismiss.

### The Parties

Plaintiff and Debtor NorthWestern is a publicly traded Delaware corporation incorporated in 1923. (Adversary Complaint ¶ 4.) NorthWestern and its direct and indirect non-Debtor subsidiaries comprise one of the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of the United States. (Id.) NorthWestern serves approximately 608,000 customers throughout Montana, South Dakota, and Nebraska. (Id.)

Magten is a Delaware corporation with its principal place of business in New York. (Id. ¶ 5.) Defendant Embry is Magten's principal owner and its Chairman. (Id. ¶ 6.) Other than Embry, Magten has only one employee, a secretary named Jean Colditz. (Id.)

### The Securities Trading Order

On September 14, 2003 NorthWestern filed its voluntary petition for relief under Chapter 11 of Bankruptcy Code. Thereafter, NorthWestern continued to operate its business and

manage its properties as debtor-in-possession. (Id. ¶ 8.) On September 30, 2003, the Office of

the United States Trustee appointed the Official Committee of Unsecured Creditors. (Id. ¶ 9.)

On or about November 6, 2003, this Court entered an Order Permitting Securities

Trading Upon Establishment of Ethical Wall (the "Securities Trading Order") recognizing the

fiduciary duties of Creditors Committee members, and declaring the circumstances under which

Creditors Committee members would be permitted to trade in the Debtor's securities. (Id. ¶ 12.)

The Securities Trading Order prohibited Creditors Committee members from trading in the

securities of the Debtor and its affiliates, unless members implemented an "ethical wall" to

prevent:

> (i) the Ethical Wall Entity's trading personnel from misusing any material non-public information obtained by such Ethical Wall Entity's designated representative(s) involved in Committee-related or reorganization-related activities ("C/R Personnel"); and

> (ii) C/R Personnel from receiving material non-public information regarding such Ethical Wall Entity's trading in the Securities in advance of such trades. This Order does not preclude this Court from taking any action it deems appropriate in the event that an actual breach of fiduciary duty has occurred.

Accordingly, to comply with the Securities Trading Order, Creditors Committee members were

required to establish an "Ethical Wall" before trading in the Debtor's securities. (Id. ¶ 13.)

**Magten's Assumption Fiduciary Responsibilities**

As an owner of QUIPs, and upon its request, Magten was appointed to the

Creditors Committee on November 25, 2003. (Id. ¶ 14.) Magten was represented on the

Creditors Committee by Defendant Embry, who is Magten's principal and 100% owner. (Id.)

Upon information and belief, upon appointment to the Creditors Committee or shortly thereafter,

the Defendants became aware of the Securities Trading Order. Moreover, once appointed to the

Creditors Committee, Magten's fiduciary and other common law duties precluded it from trading

in the Debtor's securities for an inequitable purpose and except as provided in the Securities Trading Order.

The Complaint alleges that upon being appointed to the Committee, Magten obtained possession of the Debtor's and the Creditors Committee's material, non-public information concerning NorthWestern and its reorganization prospects. (Adversary Complaint ¶ 16.) In addition, on December 18, 2003, Magten executed a Confidentiality Agreement with Official Committee of Unsecured Creditors (the "Confidentiality Agreement") under which it agreed to maintain the confidentiality of all nonpublic and proprietary information provided by or to the Creditors Committee. (Id. ¶ 18.) As with most Creditors Committees in major Chapter 11 cases, and consistent with the purpose of the Confidentiality Agreement, the Debtor has information and belief that Magten received material, non-public information concerning the Debtor during the course of its membership on the Creditors Committee. (Id. ¶ 16.)

Defendants' understanding of their obligations under the Securities Trading Order and the Confidentiality Agreement was made clear when, on or about February 5, 2004, counsel for Magten requested the United States Trustee's approval on a motion exempting Magten from the Securities Trading Order (the "Draft Motion"). In the Draft Motion, Defendants confirmed their awareness of the Securities Trading Order and their understanding that they were prohibited from trading in the Debtor's securities while members of the Creditors Committee without establishing an Ethical Wall. Accordingly, they sought relief from the order:

> Because of Magten's structure, it is impossible for Magten to comply with the precise terms of the Trading Order and trade through an Ethical Wall Entity without further clarification of the Trading Order. Thus, by this Motion, Magten seeks an order clarifying the Trading Order so as to make it clear that if Magten uses the services of an independent third-party broker (the "Broker") who does not receive any confidential information regarding the Debtor and that has autonomy in making buy/sell decisions in executing trades in the securities of the

Debtor and its affiliates, Magten will receive the protections afforded by the Order.  (Id. ¶ 20.)

## Magten's Purchase The Debtor's QUIPs While In Possession Of Non-Public Information

Notwithstanding the Confidentiality Agreement in which they acknowledged that use of the Debtor's non-public information constituted a potential violation of the securities laws, and the Securities Trading Order, Embry caused Magten to purchase over 123,000 of the Debtor's QUIPS and sell 1,900 of the Debtor's QUIPS in a series of open market transactions after joining the Creditors Committee.  (Id. ¶ 25.)  Between November 25, 2003 and May 4, 2004—the dates within which Defendants were Creditors Committee members, Magten purchased 27,540 and sold 1,900 of the Debtor's QUIPS.  (Id. ¶ 26-27.)  The Defendants' purchases of QUIPS accelerated immediately after May 4, 2004, when the Defendants purchased through July 8, 2004 an additional 95,000 of the Debtor's QUIPS.  (Id. ¶ 28.)

The Adversary Complaint asserts upon information and belief that Defendants were in possession of and relied upon the Debtor's and the Committee's non-public information when executing some or all of the QUIPS purchases.  (Id. ¶ 29.)  As a result of its purchases, Magten holds approximately 40% of outstanding QUIPS, and a "blocking position" in Class 8(b) of the Debtor's Plan.  Indeed, and as demonstrated during the Confirmation Hearing on the Debtor's Plan, Class 8(b) is the only creditor constituency that voted to reject the Plan.

## Magten Is Removed From The Creditors Committee And Continues Its Inequitable Conduct

Magten filed a Proof of Claim designated claim number 842 by the Debtor's claims agent.  (Id. ¶ 11.)  Magten's Proof of Claim asserted unliquidated claims against the Debtor's estate to recover the full value of the QUIPs it held with interest, and damages resulting from the alleged fraudulent transfer of the utility assets of NorthWestern Energy, LLC to the

Debtor on November 15, 2002. (Id.) Thereafter, on April 16, 2004, Magten filed an adversary proceeding to avoid the transfer of assets of Clark Fork and Blackfoot LLC (f/k/a NorthWestern Energy LLC) to the Debtor in November 2002 pursuant to what is generally referred to as the "going flat" transaction.

Magten's adversary proceeding resulted in an inherent conflict between Magten and the Creditors Committee, as Magten was seeking to profit on its own QUIPs at the expense of other unsecured creditors. Accordingly, on May 6, 2004, the Trustee removed Magten from the Creditors Committee stating the relief sought in the Magten's adversary proceeding "is inconsistent with Magten's . . . fiduciary duty to the Committee's constituents, the general unsecured creditors of NorthWestern Corporation." (Id. ¶ 23.)

After being expelled from the Committee, Magten was still bound by the terms of Confidentiality Agreement and the Securities Trading Order to the extent Magten was still in possession of material, non-public information it had obtained while serving as a Creditors Committee member. (Id. ¶ 24.) Magten purchased 95,000 QUIPs in the weeks and months after being expelled from the Creditors Committee in open market transactions. (Id. ¶ 28.)

**The Present Adversary Proceeding**

This adversary proceeding seeking subordination of Magten's claims, actual damages, equitable relief, and objecting to the Magten Claim followed. The Adversary Complaint states that by their violating fiduciary duty to other creditors to act with due care, not to act in furtherance of their self-interests to the potential detriment of other creditors, to maintain confidentiality, and to guide their actions so as to safeguard the rights of minority as well as majority creditors, Defendants caused damages to both the Debtor and other creditors.

DEL-SRV01\125322v09                                          -6-

The Defendants' unfair and inequitable actions included violations of the Securities Trading Order, Confidentiality Agreement, and both federal and state laws.

Defendants now move to dismiss the Adversary Complaint. For the reasons set forth below, the Defendants' motion is baseless and should be denied.

## ARGUMENT

I.    **THE ADVERSARY COMPLAINT SATISFIES THE PLEADING REQUIREMENTS OF THE FEDERAL RULES OF CIVIL PROCEDURE AND SHOULD THEREFORE BE SUSTAINED**

A.    **The Standards Applicable To Magten's Motion**

Before dismissal of the Adversary Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be considered, Magten is required to establish "beyond doubt" that the Debtor "can prove no set of facts in support of [its]claims which would entitle [it] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (emphasis added). In determining whether Magten has met its heavy burden, the Court is required to "accept all factual allegations as true, "construe the complaint in the light most favorable to the plaintiff, and determine whether, "under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002). Thus, the Court's inquiry is "not whether [the Debtor] will ultimately prevail in a trial on the merits, but whether [it] should be afforded an opportunity to offer evidence in support of [its] claims." Id. at 374.

In considering Magten's motion to dismiss, the Court should also bear in mind the applicable pleading burden under Rule 8(a) of the Federal Rules of Civil Procedure—the pleading Rule applicable to adversary complaints seeking equitable subordination, as Magten concedes. (Magten Motion ¶¶ 22-23.) See In re Enron Corp., NO. 01 B 16034(AJG), 03-9266 A, 2004 WL 2165348 at *5 (Bankr. S.D.N.Y. Sept. 23, 2004) (equitable subordination claim

sustained under Rule 8(a) because the "Complaint provides a summary of the allegations against

[the defendant] and identifies the particular transactions at issue. [The Defendant] has fair notice

of the claims."); In re Metiom, Inc., 301 B.R. 634 (Bankr. S.D.N.Y. 2003) (equitable

subordination claim provided "sufficient notice" under "Fed. R. Civ. P. 8(a)"). The United

States Supreme Court has made it clear that Rule 8(a) does "'not require a claimant to set out in

detail the facts upon which he bases his claim.'" Swierkiewicz v. Sorema, 534 U.S. 506, 512

(2002) (quoting Conley, 355 U.S. at 47). Rather, Rule 8(a) mandates the Adversary Complaint

provide "a short and plain statement of the claim showing that the [Debtor] is entitled to

relief"—that is, provide "'the defendant fair notice of what the plaintiff's claim is and the

grounds upon which it rests.'" Id. (See Magten Motion ¶ 22.)

B.     **The Adversary Complaint Satisfies Rule 8(a)**
       **Because It Provides Magten With Fair Notice Of The Claims**

     The Adversary Complaint satisfies the requirements of Rule 8(a) and the

standards declared by the Supreme Court because it provides Magten "fair notice" of the basis

for the Debtor's claims. At its core, the Adversary Complaint asserts that Magten used its

membership on the Creditors Committee to misappropriate material, non-public, information for

its self-interest, and to the detriment of the Debtor and the creditors for whom it acted as a

fiduciary.[1] (Adversary Complaint ¶¶ 1-37.) In particular, Magten used its confidential status

both during and after its membership on the Creditors Committee to purchase over 120,000 of

the Debtor's QUIPs. (Id. ¶ 25.)

---

   [1] Without benefit of discovery, the Debtor is unable at present to allege that Magten's
actions constituted actionable fraud. Should discovery provide the relevant evidence to support a
fraud claim, the Debtor will move to amend its pleadings at that time.

Magten's purpose in purchasing the Debtor's QUIPs was to assert a position of influence over the reorganization negotiations by obtaining a "blocking position" to any Class 8(b) approval of the Debtor's Plan. (Id. ¶ 2.) Given that Magten made its QUIPs purchases in the public markets (Id. ¶ 25, 39, 44), and subject to further discovery, it is unlikely that Magten informed the sellers of the QUIPs of its position on the Creditors Committee, the non-public information to which it was privy, or its plan to obtain a control premium and blocking position from its purchases. As demonstrated in the Plan confirmation proceedings in the Debtor's Chapter 11 case, despite the fact that the QUIPS holders overwhelmingly voted in favor of the Plan in number, Magten's actions diluted the voting rights of other QUIPs holders, resulting in Class 8(b) being the only class to vote to reject the Debtor's Plan.[2]

Magten's actions were exacerbated by the fact that they were directly contrary to the express order of this Court. Contrary to the terms of the Court's Securities Trading Order, Magten purchased the Debtor's QUIPs without first establishing an "Ethical Wall." (Adversary Complaint ¶ 12.) Magten was well aware of the Court's Securities Trading Order—entered to establish the limited circumstances under which a Creditors Committee member could trade in the Debtor's securities—but disregarded the order because, it believed, it could not comply with its terms. (Id. ¶¶ 20-21.) Of course Magten could have complied by either not becoming a Creditors Committee member, or by simply not trading in the Debtor's securities after becoming

---

[2]  See Order Confirming Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, entered October 19, 2004 (the **"Confirmation Order"**) [Docket No. 2237]. In considering a Rule 12(b)(6) motion, this Court considers the allegations of the Complaint but may also consider matters of public record and items appearing in the record of this case. See Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

a member. With knowledge of its options, and actions, Magten instead chose to violate the order.

Magten does not contest that it has received "fair notice of what the plaintiff's claim is and the grounds upon which it rests"; indeed, Magten summarized the circumstances, allegations, and relief sought in the Adversary Complaint in its Motion with ease. (See Magten Motion at 1-2.) Rather, Magten argues that the Adversary Complaint is somehow deficient because it is based upon the Debtor's "information and belief," and that the matters alleged are within the Debtor's "knowledge or control." (Magten Motion 23-24.) Magten's understanding of the pleading standards under the Federal Rules as well as the facts within the Debtor's "knowledge or control" is misplaced.

The Federal Rules of Civil Procedure expressly authorize allegations of fact that, although not known to be true, are "to the best of the person's <u>knowledge, information, and belief,</u> formed after an inquiry reasonable under the circumstances . . . likely to have evidentiary support after reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b) (emphasis added); <u>accord</u> <u>Langadinos v. American Airlines, Inc</u>. 199 F.3d 68, 73 (1st Cir. 2000) (vacating dismissal, the court ruled that "a plaintiff can make allegations either on the basis of personal knowledge or on 'information and belief'"). The only exception to information and notice pleadings is in cases—such as fraud or mistake—where the more burdensome pleading standards of Rule 9(b) replace the more liberal requirements of Rule 8(a). <u>Langadinos,</u> 199 F.3d at 73. The present adversary proceeding seeks equitable subordination and related damages, claims which, as demonstrated above, fall with the confines of Rule 8(a). <u>Enron,</u> <u>supra,</u> 2004 WL 2165348 at *5; <u>Metiom,</u> 301 B.R. at 642.

Magten contends based upon <u>Static Control Components, Inc. v. Darkprint Imaging, Inc.</u>, 135 F. Supp. 2d 722 (M.D.N.C. 2001) and <u>Perington Wholesale, Inc. v. Burger King Corp.</u>, 631 F.2d 1369 (10th Cir. 1979) that pleading upon "information and belief" is only permissible when the facts are "within the defendants knowledge or control." (Magten Motion ¶ 24.)  In neither case did the court limit the federal pleading rules in the fashion Magten suggests; the court in <u>Static Control</u> upheld a misappropriation claim based upon the plaintiff's information and belief, and even referred to <u>Perington</u> for its ruling that "pleading on information and belief 'fits well with the spirit of the rules.'"  <u>Static Control</u>, 135 F. Supp. 2d at 728 & n.6, quoting <u>Perington</u>, 631 F.2d at 1372.  Indeed, contrary to Magten's assertion, "even apart from facts" within the knowledge of the defendants "there may be perfectly good reasons to support the filing of a lawsuit based on information rather than buttoned-down knowledge."  <u>Zakutansky v. Bionetics Corp.</u>, 806 F. Supp. 1362, 1363-64 (N.D. Ill. 1992).  As the court in <u>Zakutansky</u> explained, "if a plaintiff has alleged something on information and belief that could have been learned by prefiling inquiry and that proves to be true in fact, no defendant can complain – and if it turns out that the allegation is false, that does not impair the validity of the pleading . . . ."  <u>Id.</u>

In any event, Magten is mistaken that the allegations alleged upon information and belief in the Adversary Complaint were within the Debtor's exclusive "knowledge and control."  Each of the allegations to which Magten points as troublesome refers to information Magten obtained from, and during its tenure as a member of, the Creditors Committee[3]:

> 16. Upon information and belief, <u>upon being appointed to the Committee</u>, Magten obtained possession of the Debtor's <u>and the Committee's</u> material, non-public information.

---

[3] The Debtor does know what material non-public information was provided to counsel to the Committee and when; however, the Debtor does not know at this time when and how this information was disseminated to Committee members.

29. Upon information and belief, the Defendants remained in possession of, and relied upon, the Debtor's <u>and the Committee's</u> non-public information with respect to some or all of these QUIPs purchases.

49. Upon information and belief, <u>while a Member of the Committee</u>, the Defendants were furnished material, non-public information of the Committee and the debtor. The Defendants have retained possession, custody, and control over the non-public information.

(Magten Motion ¶ 23 [emphasis added].) Because the Debtor is neither a member of the Creditors Committee—indeed, it is adverse—and is not party to the communications among, and the information exchanged by, the Creditors Committee and its members, the information upon which these allegations are based is decidedly <u>not</u> within the Debtor's knowledge or control. The information is within the Creditor Committee's and Magten's knowledge or control, and will only be confirmed and proven upon further discovery—precisely the litigation structure Rule 8(a) was enacted to promote.

C.    **Magten's Reliance Upon A Declaration To Disagree With Factual Allegations In The Adversary Complaint Is Improper**

Magten next concedes its understanding and notice of the Debtor's claims by attempting to contest the evidentiary basis for the claims through an invalid declaration of Defendant Embry. The so-called "Declaration" contests the allegations set forth in the Adversary Complaint by pleading that Magten was not in possession of non-public information at the time of its purchases of the Debtor's QUIPs. (Magten Motion 34-46.) The Embry Declaration, however, should be stricken, and its assertions rejected, at this point in the present proceeding for two reasons.

The so-called Declaration is, in the first instance, invalid on its face. Before an unsworn declaration may be used in this and other Federal Courts, Section 1746 of the Judicial Code requires the assertions be subscribed "as true under penalty of perjury" and in substantially

the following form: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date)." 28 U.S.C. § 1746(1). Defendant Embry failed to subscribe to his unsworn statement under penalty of perjury, and therefore his "Declaration" is invalid on its face.

More importantly, the Declaration attempts to introduce purported "evidence" that is beyond the four corners of the Adversary Complaint. It bears repeating that Magten's burden on the present motion is to establish "beyond doubt" that the Debtor "can prove no set of facts in support of [its]claims which would entitle [it] to relief" assuming "all factual allegations as true." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Evidence in the form of affidavits submitted to contest allegations in the Adversary Complaint must be disregarded. Nami v. Fauver, 82 F.3d 63, 69 (3d Cir. 1996). Indeed, the nature of non-public information in Magten's possession at the time of each purchase, and the extent to which it relied upon such information in connection with each purchase, remain questions of fact to be resolved at trial where Defendant Embry will be subject to cross examination.

\* \* \* \*

In short, the Adversary Complaint meets the pleading requirements of Rule 8(a), and adequately notifies Magten of the Debtor's claim and the grounds upon which it rests. Magten's motion, accordingly, should be denied for this reason alone.

## II.    THE ADVERSARY COMPLAINT STATES CLAIMS FOR DAMAGES AND EQUITABLE SUBORDINATION AND SHOULD THEREFORE BE SUSTAINED

Assuming the facts alleged true, and according the Debtor all reasonable inferences as required under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Adversary Complaint states claims for damages and for "equitable subordination" under Section 510(c) of the Bankruptcy Code. Equitable subordination is warranted where, as here, (1) the

DEL-SRV01\125322v09

claimant engaged in "some type of inequitable conduct," (2) the misconduct resulted in "injury

to creditors or conferred an unfair advantage on the claimant," and (3) "not inconsistent with the

provisions of the bankruptcy code." Citicorp Venture Capital, Ltd. v. Committee of Creditors

(In re Papercraft Corp.), 160 F.3d 982, 986-87 (3d Cir. 1998) ("Papercraft"). Under the

standards set forth in Papercraft—the "paradigm case of inequitable conduct" supporting

equitable subordination (id. at 987)—the Adversary Complaint more than adequately states a

claim for equitable subordination.

    A.    **The Adversary Complaint Sufficiently**
            **Notifies Magten Of Its Inequitable Conduct**

        In Papercraft, the defendant purchased more than $60 million in pre-petition

unsecured debentures from third parties at a discount while a fiduciary of the debtor and its

creditors, and while in possession of non-public information.[4] As a result of its debenture

purchases equaling approximately 40% of the outstanding unsecured debt, and motivated by a

self-interest to profit, the defendant obtained a "blocking position" with respect to votes by

unsecured creditors to approve the debtor's plan of reorganization. The defendant did not obtain

approval from the creditors committee before purchasing the debentures, did not disclose its

position as a fiduciary to selling noteholders, and did not disclose the purpose of its substantial

debenture purchases to secure a position of influence over reorganization negotiations. 160 F.3d

at 988-990.

---

[4] The defendant was a fiduciary of Papercraft's creditors by virtue of its membership on
Papercraft's board of directors. Papercraft, 160 F.3d at 987. Papercraft applies equally where, as
here, the defendant's fiduciary duty to creditors arises from its membership on an official
committee of unsecured creditors. E.g., In re Life Service Systems, Inc., 279 B.R. 504 (W.D. Pa.
2002) (relying upon Papercraft, the upheld the trustee's claim and awarded damages against
committee member for breach of fiduciary duty and inequitable actions).

In affirming the findings of the bankruptcy court and the district court on appeal, the Third Circuit held that the facts "reflect[ed] ample inequitable conduct to support a subordination remedy." Id. at 987.  The Third Circuit pointed to three facts, any one of which the court held was a basis for subordination:

> the Papercraft notes (1) were purchased for the dual purpose of
> making a profit for [the defendant] on the notes and of being able
> to influence the reorganization in its own self interest, (2) were
> purchased with the benefit of non-public information acquired as a
> fiduciary, and (3) were acquired without disclosure of its
> purchasing plans to the bankruptcy court, the Papercraft board, the
> Committee, or the selling note holders.

Id. at 988; see id. (the defendant's "failure to disclose its identity to note sellers" or its "purchasing plans" constituted "inequitable conduct"); see In re Life Service Systems, Inc., 279 B.R. 504 (W.D. Pa. 2002) ("A committee member violates [its fiduciary duty] by taking action that furthers its own self-interest to the potential detriment of those whom they represent."). Moreover, the court declared that the appropriate remedy for the defendant's actions, "[a]t a minimum," should "deprive [the defendant] of its profit on the purchase of the notes." Papercraft, 160 F.3d at 991.  The bankruptcy court, district court, and Third Circuit ultimately approved subordination of the defendant's claim well in excess of its profit on the notes. Citicorp Venture Capital, Ltd. v. Committee of Creditors, 323 F.3d 228, 233-34 (3d Cir. 2002).

Although not identical, Magten's actions in the present Adversary Proceeding mirror those found as "ample inequitable conduct" upon which subordination was appropriately based in the "paradigm" Papercraft case.  160 F.3d at 987.  As in Papercraft, the Adversary Complaint asserts that Magten was a member of the Creditors Committee at the time it purchased the Debtors' QUIPS, and when, upon information and belief, it was in possession of non-public information.  (Adversary Complaint ¶¶ 26, 25, 29, 35.)  As a result of its purchases,

and as with the defendant in <u>Papercraft</u>, Magten owns approximately 40% of the Debtor's QUIPs—a position it used to block approval of the Debtor's Plan by other Class 8(b) members who voted in support of the Debtor's Plan, and to influence Plan structure and negotiations for its self-interest and profit. Finally, Magten did not obtain approval to purchase the QUIPs, since it failed to sign the Securities Trading Order, and it is reasonable to infer from the open market nature of its QUIPs purchases that Magten did not notify the QUIPs sellers of its status, information, and purpose before purchasing the QUIPs. (<u>Id.</u> ¶ 21, 26, 27, 28.) Under <u>Papercraft</u>, the Adversary Complaint states a claim.

Perhaps most indefensible is the uncontested fact that Magten was well-aware of its obligations and trading limitations as a Creditors Committee member, but chose to ignore its responsibilities nonetheless. Magten knew of the Securities Trading Order and its requirement that an "Ethical Wall" be established <u>prior</u> to trading in the Debtor's securities. (Adversary Complaint ¶¶ 21.) Moreover, Magten cannot dispute its knowledge of the guidelines set forth in <u>Papercraft</u>, for <u>Magten was a party in the Papercraft case, purchased Papercraft securities as a member of the creditors committee, and was ultimately forced to enter a settlement of its claims by which it agreed to receive no more than its cost at the time of distribution under the plan. In re Papercraft Corp.</u>, 187 B.R. 486, 492 n.1 (W.D. Pa. 1995).[5] In short, Magten's actions

---

[5] The bankruptcy court explained Magten's actions as follows:

constitute the very inequitable conduct upon which subordination and related relief is warranted under Papercraft.

Purportedly relying upon Papercraft, Magten argues that the Adversary Complaint should be dismissed because the Third Circuit "rejected" a "*per se* prohibition on trading in the securities of the Debtor while serving on a creditors' committee." (Magten Motion ¶ 26.) The Third Circuit in Papercraft declared the opposite. The Third Circuit held that "we need not, and do not resolve the issue here" and that the "authority is arguably to the contrary"—namely the United States Supreme Court's decision in Manufacturers Trust Co. v. Becker, 338 U.S. 304, 313-14 (1949). 160 F.3d at 988 & n.3.[6] Moreover, as with the defendant in Papercraft, Magten's inequitable conduct extends well-beyond that of innocently purchasing QUIPs while a member of the Creditors Committee rendering establishment of a *per se* rule unnecessary here. Id. at 998 n.3 (determining it unnecessary to resolve whether there exists a *per se* trading

---

On or about May 23, 1991, while it was a member of the creditors' committee, Magten purchased, on behalf of clients, approximately $3.8 million in Second Priority Notes from Oppenheimer & Co. for approximately $379,000. Oppenheimer was a member of the Informal Committee and acknowledged in writing that it knew Magten was the purchaser. Magten also made other offers to purchase Papercraft notes, again on behalf of clients. In January, 1991, Magten entered into a settlement agreement by which it agreed to receive no more than its cost of these claims at the time of distribution under the plan. Magten disclosed to those entities from which it purchased notes its position with the committee and the bankruptcy. Unlike CVC, Magten had disclosed its identity and connection with Debtor. Furthermore, Magten was not buying notes for its own account, as was CVC, but for accounts of its customers.

In re Papercraft Corp., 187 B.R. 486, 492 n.1 (W.D. Pa. 1995).

[6] In Becker, the Supreme Court observed that "if it is clear that a fiduciary may ordinarily purchase debt claims in fair transactions during the solvency of the corporation, the lower federal courts seem agreed that he cannot purchase after judicial proceedings for the relief of a debtor are expected or have begun." 338 U.S. at 313-14.

prohibition "in light of the findings of the bankruptcy court" of inequitable conduct).[7]  Stated

another way, the Debtor does not request the Court recognize a *per se* bankruptcy rule against

trading in the Debtor's securities since Magten's inequitable conduct as a whole constitutes

"ample inequitable conduct to support a subordination remedy." Id. at 987.[8]

        In short, Magten's inequitable actions similar to those of the defendant in

Papercraft as alleged in the Adversary Complaint and herein state a claim for relief under Section

510(c) of the Bankruptcy Code.  Magten's motion to dismiss, accordingly, should be denied for

this reason alone.

    **B.**    **Magten's Violations Of The Securities Trading Order And The
Confidentiality Agreement Constitute Inequitable Conduct**

        Magten next contends that it was not obligated to follow the Securities Trading

Order and Confidentiality Agreement, and therefore its actions in violation of those instruments

---

[7] Indeed, Magten's entire reading of Papercraft is confused.  (Magten Motion ¶ 26.)
Magten contends that the bankruptcy court "applied a *per se* rule that when a claim is purchased
by an insider at a discount without adequate disclosure to the debtor and creditors such claim will
be limited."  (Magten Motion ¶ 26.)  In fact, the bankruptcy court applied a rule that an
inequitable purchase of the debtor's securities limits the purchaser's claim in the debtor's chapter
11 case *per se* to the purchase price paid for the securities—thus eliminating any profit.
Papercraft, 160 F.3d at 990.  The Third Circuit rejected the bankruptcy court's *per se* rule, and
declared that under the Section 510(c) of the Bankruptcy Code, subordinating the defendant's
claim to the extent of its purchase price and depriving the defendant of its profit was the
"minimum" remedy, and remanded for consideration "further subordination." Id. at 991.

[8] For the same reason, Magten's reference to the position of the Securities and Exchange
Commission is misplaced.  (Magten Motion ¶ 25.)  The Debtor's claims are based upon
Magten's inequitable conduct as a whole.  In any event, the SEC has made it clear that trading in
a chapter 11 debtor's securities while a member of a statutory committee is permissible under the
Securities laws where "the member is an entity that is engaged in the trading of securities as a
regular part of its business and has implemented procedures reasonably designed to prevent the
transmission to trading personnel of information obtained through service on the official. S.E.C.
Release No. CR - 392, 52 S.E.C. Docket 1958, 1992 WL 308084; see Kaplan Dec., Exh. "E".
Here, Magten failed to follow the "procedures" established by the Court in its Securities Trading
Order and therefore acted contrary to the mandate of the SEC.  Moreover, the legal basis for the
Debtor's claims here is Section 510(c) of the Bankruptcy Code, not the Securities laws.

are irrelevant. (Magten Motion ¶ 29.) The purpose of the Securities Trading Order and

Confidentiality Agreement were to enable Creditors Committee members to obtain and create

non-public information to assist in their representation of creditors at large, while permitting

them to trade in the Debtor's securities under fair and very limited circumstances. (See

Adversary Complaint ¶ 12.) Violation of the Securities Trading Order and Confidentiality

Agreement constitute acts in bad faith and unfairness that, along with Magten's other inequitable

conduct, provide a basis for equitable subordination. See, e.g., O'Neil v. Q.L.C.R.I., Inc., 750 F.

Supp. 551, 555-56 (D.R.I. 1990) (the court may "fashion[] relief" in the form of equitable

subordination for the defendants violation of an environmental order). Indeed, the Third Circuit

acknowledged the flexibility and breath of circumstances under which equitable subordination is

warranted in its decision after remand in Papercraft:

> "The remedy of equitable subordination must remain sufficiently
> flexible to deal with manifest injustice resulting from the violation
> of the rules of fair play . . . where ingenuity spawns unprecedented
> vagaries of unfairness, [bankruptcy courts] should not decline to
> recognize their marks, nor hesitate to turn the twilight for
> [offending claimants] into a new dawn for other creditors."

Citicorp Venture Capital, Ltd. v. Committee of Creditors, 323 F.3d 228, 234 (3d Cir. 2003),

quoting In re Teltronics Servs., Inc., 29 B.R. 139, 172 (Bankr. E.D.N.Y.1983) (emphasis added).

Perhaps realizing that a violation of the Securities Trading Order and

Confidentiality Agreement would constitute a basis for equitable subordination, Magten

contends that its trades were appropriate because they did not violate securities laws. (Magten

Motion ¶¶ 28-36.) The Securities Trading Order, however, does not require a violation of the

securities laws to violate the order. The Securities Trading Order is an "Order permitting

Members (present and future, if any) to trade in the NOR Group's Securities upon the

establishment and implementation of Ethical Walls and in accordance with the terms and

conditions of this Order." [Kaplan Declaration, Exh. C at 1 [emphasis added].)  The Securities

Trading Order further states that Creditors Committee members "may participate" in securities

transactions "pursuant to the conditions herein," including the establishment of an Ethical Wall.

(Id.)  By contrast, the order does not "permit[]" Creditors Committee members to trade in the

Debtor's securities without an Ethical Wall.

Magten concedes that it traded in the Debtor's QUIPs while a member of the

Creditors Committee. (Magten Motion ¶¶ 8-9.) Magten also concedes that it failed to, and could

not comply with, the Securities Trading Order at the time of its trades.  (Id. ¶¶ 33-34.)

Accordingly, Magten violated the Securities Trading Order when it purchased the Debtor's

QUIPs while a member of the Creditors Committee, or at a minimum, its actions constitute

inequitable action.

*  *  *  *

In sum, the adversary complaint states claims for damages and equitable

subordination and should therefore be sustained.

### III.  EQUITABLE SUBORDINATION AND DAMAGES ARE APPROPRIATE REMEDIES

Magten next asserts that equitable subordination is inappropriate because the

Debtor suffered no harm.  (Magten Motion ¶ 49.)  Harm to the Debtor (or for that matter, the

creditors), however, is not the sole test.  In Papercraft, the Third Circuit confirmed that equitable

subordination is an appropriate remedy when there is proof of "injury to the creditors" or where

the defendant's actions "conferred an unfair advantage on the claimant."  Citicorp Venture

Capital, Ltd. v. Committee of Creditors (In re Papercraft Corp.), 160 F.3d 982, 986 (3d Cir.

1998); accord In re Mid-American Waste Systems, Inc., 284 B.R. 53, 71 (Bankr. D. Del. 2002)

("Under the second prong of the traditional equitable subordination analysis, the Court must

determine whether the claimant's inequitable conduct either (i) created some unfair advantage for the claimant or (ii) harmed the debtor or its creditors. This standard is stated in the disjunctive so only either unfair advantage or harm must be established.").[9]

The unfair advantages the defendant obtained through its inequitable actions in Papercraft are similar to those Magten obtained through its actions here. As the Third Circuit detailed, the unfair advantages supporting subordination included:

- "[S]elling noteholders were deprived of the ability to make a fully informed decision to sell their claims." 160 F.3d at 989. Because Magten purchased its QUIPs in open market trades (Adversary Complaint ¶ 26-28), it is reasonable to infer that Magten did not disclose its position, information, or plans to selling QUIP holders. Accordingly, selling QUIP holders were deprived of the ability of making a fully informed decision to sell their QUIPs.

- The defendant's "purchased claims secured a position of influence over the reorganization negotiations." 160 F.3d at 989. Magten used its 40% "blocking position" to prevent acceptance of the Debtor's Plan by Class 8(b) and to influence the entire course and cost to the Debtor of these proceedings.

- The defendant's actions "created a conflict of interest which jeopardized its ability to make decisions in the best interest of the company, free from its competing profit motive." 160 F.3d at 989. Magten's actions created a conflict of interest, which was borne out by Magten's abandonment of other creditors through commencement of an adversary proceeding to deprive other creditors and the Debtor of estate value, and using procedural machinations (such as a motion to disqualify counsel on the eve of confirmation) to increase costs and pressure. All of Magten's actions were in pursuit of its competing profit motive.

---

[9] Thus, Magten's assertion that it was a fiduciary of creditors as opposed to the Debtor is besides the point. (Magten Motion ¶ 48.) The ultimate issue at trial will be whether Magten's inequitable actions provided an "unfair advantage." Moreover, the Debtor has a duty to protect creditors and preserve estate assets for all constituencies, and therefore has standing to seek equitable subordination of Magten's claims for the benefit of all creditors. See Official Committee of Unsecured Creditors of Cybergenics Corp., 330 F.3d 548, 573 (3d Cir. 2003); In re Martin, 91 F.3d 389, 394 (3d Cir. 1996).

Thus, to suggest—as does Magten—that its claims "cannot" be "equitably subordinate[d]" because the Debtor "suffered no harm" is not only contrary to the law, but <u>Papercraft</u> dictates that equitable subordination of Magten's claims would be an appropriate remedy.

   In any event, the Debtor has suffered harm or is entitled to damages from Magten's inequitable actions in, at least, two respects. <u>First</u>, Magten's actions in using its blocking position to prevent acceptance of the Debtor's Plan by Class 8(b), and its associated objections and procedural machinations caused delay and increased cost to the Debtor and its creditors. <u>Papercraft</u> identified similar injury as a basis for equitable subordination. 160 F.3d at 990 (injury caused, in part, by defendants "associated objections to the [debtor's] plan resulted in confirmation delay that inflicted substantial injury on Papercraft's non-selling shareholders."). <u>See also</u> <u>Mid-American</u>, 284 B.R. at 53 ("An injury to the debtor caused by a claimant's inequitable conduct in reasonable proximity to bankruptcy or while the corporation is in financial distress decreases the likelihood of the recovery of claims by general creditors, and thus injures them.").

   <u>Second</u>, the Adversary Complaint alleges that Magten received non-public information that originated from the Debtor and the Creditors Committee, and, while in possession of the information, traded in the Debtor's securities. (Adversary Complaint at ¶ 35.) Should the Debtor succeed in establishing that Magten remained in possession of the non-public information at the time of its purchase of the Debtor's securities, Magten will have misappropriated the information (constituting estate property) for its own self-interest. Misappropriation of non-public information in this regard not only entitles the Debtor and Creditors Committee to disgorgement of Magten's profits, but may also constitute illegal activity warranting further subordination. <u>See</u> <u>Brophy v. Cities Service Co.</u>, 70 A.2d 5, 246 (Del. Ch.

1949); see Walton v. Morgan Stanley & Co. Inc., 623 F.2d 796, 798 (2d Cir. 1980) (a breach of

fiduciary duty actionable irrespective of injury); U.S. v. O'Hagan, 521 U.S. 642, 650 (1997)

(misappropriation of inside information in connection with a securities purchase or sale

constitutes a criminal violation of the securities laws).[10]  Indeed, subordination to the extent of

the defendant's profit from its purchase of the debtor's debentures was only the starting point in

the remedy found warranted by the Third Circuit in Papercraft, 160 F.3d at 991 ("At a minimum,

the remedy here should deprive [defendant] of its profit on the purchase of the notes.").

　　　　Liability relating to misappropriation of the Debtor's and the Creditors

Committee's non-public information extends to Defendant Embry.  As the sole shareholder,

principal, and investment-related employee of Magten, Embry directed Magten's trades in the

Debtor's QUIPs while in possession of non-public information.  To the extent his actions in

directing Magten resulted in ill-gotten gains, Embry is equally liable for the same tortious and

illegal activity. See T.V. Spano Bldg. Corp. v. Wilson, 584 A.2d 523, 530-31 (Del. Super. Ct.

1990), aff'd sub nom., T.V. Spano Bldg. Corp. v. Dep't. of Natural Res. and Envtl. Control, 628

A.2d 53, 61 (Del. 1993) (corporate officers are liable for their tortious conduct even though they

were acting officially for the corporation in committing tort).   Accord St. James Recreation,

LLC v. Rieger Opportunity Partners, LLC, 2003 WL 22659875, at *6 (Del. Ch.); Stonington

Partners, Inc. v. Lernout & Houspie Speech Products, N.V., 2002 WL 31439767, at *8 (Del.

Ch.).

---

　　　　[10] Magten fails to consider applicable state law permitting disgorgement when it attempts
to pigeon-hole the Debtor's claims into a theory of securities fraud.  (Magten Motion ¶ 50, n.
12.)  The Debtor has not, as of yet, asserted a claim for securities fraud, but as the Supreme
Court in O'Hagen made clear, misappropriation of a company's non-public information may
provide the foundation for a violation of the federal securities laws. 521 U.S. 642 (1997).  Should
discovery provide the necessary evidence to establish securities fraud by Magten, as directed by
Embry, the Debtor will move to amend the Adversary Complaint at that time.

In sum, the Adversary Complaint states a claim for damages and equitable

subordination, and therefore should be sustained.

## CONCLUSION

For all the foregoing reasons, the Defendants' motion to dismiss should be denied.

Dated: Wilmington, Delaware
      October 26, 2004

                              GREENBERG TRAURIG, LLP


                              Scott D. Cousins (No. 3079)
                              William E. Chipman, Jr. (No. 3818)
                              The Brandywine Building
                              1000 West Street, Suite 1540
                              Wilmington, DE 19801
                              Telephone: (302) 661-7000

                              -and-

                              Adam D. Cole
                              GREENBERG TRAURIG, LLP
                              885 Third Avenue
                              New York, NY 10022
                              Telephone: (212) 801-2100

                              *Counsel for the Debtor and
                              Debtor-in-Possession*

# EXHIBIT "C"

**Fried, Frank, Harris, Shriver & Jacobson LLP**
One New York Plaza
New York, NY 10004-1980
Tel: 212.859.8000
Fax: 212.859.4000
www.friedfrank.com

Direct Line: 212.859.8812
Fax: 212.859.8583
kaplaga@ffhsj.com

December 30, 2004



<u>By Facsimile</u>

Karol K. Denniston, Esq.                    David L. Finger, Esq.
Paul, Hastings, Janofsky & Walker LLP       Finger & Slanina, LLC
600 Peachtree Street                        One Commerce Center
Twenty-Fourth Floor                         1201 Orange Street, Suite 725
Atlanta, GA 30308                           Wilmington, DE 19801-1115

     Re:    In re NorthWestern Corp. ("NorthWestern") Case No. 03-12872;
            <u>United States Bankruptcy Court for the District of Delaware</u>

Dear Karol and David:

     We have received Karol's letter dated December 21, 2004 and the response (the "Response") of Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings") to the discovery requests served by Magten Asset Management Corporation ("Magten") and Talton R. Embry (together with Magten, the "Defendants") in connection with <u>NorthWestern Corp. v. Magten Asset Management Corp.</u>, Adv. Pro. 04-55051 (the "Adversary Proceeding").

     In Karol's letter, she requested that Defendants execute a confidentiality agreement governing the documents to be produced by NorthWestern and Paul Hastings. In that regard, attached hereto is a draft stipulation and order governing the production and use of documents in the Adversary Proceeding. Until a satisfactory stipulation or other confidentiality agreement is executed, Defendants intend to produce documents in accordance with Local Rule 26.2 of the United States District Court for the District of Delaware, and expect NorthWestern and Paul Hastings to do the same.

     Furthermore, both Karol's letter and Paul Hastings' Response state that responsive documents may be in the data inspection room and that Fried Frank may review the documents in that room. As you know, the data room was established in April 2004 for the purpose of responding to various document demands served on NorthWestern in connection with confirmation of NorthWestern's plan. Directing the Defendants to a document inspection room created four months prior to the commencement of this Adversary Proceeding is not a good faith response and cannot be

A Delaware Limited Liability Partnership
New York • Washington • Los Angeles • London • Paris

Fried, Frank, Harris, Shriver & Jacobson LLP

Karol K. Denniston                                    December 30, 2004
David L. Finger                                        Page 2

considered responsive to the discovery requests served in connection with Adversary
Proceeding. This is especially true given the dramatic differences in scope and focus
between the documents sought in connection with the Adversary Proceeding and those
sought in connection with confirmation of NorthWestern's plan. Please confirm in
writing by Monday, January 3, 2005 that NorthWestern and Paul Hastings will be
producing all non-privileged, responsive documents or Defendants will seek to compel
their productions.

     Moreover, Paul Hastings' Response takes the position that all documents
responsive to the Defendant's discovery requests in the possession of Paul Hastings are
privileged. A number of the requests call for communications with parties other than
NorthWestern. In light of these requests, it is simply untenable for Paul Hastings to
make such a broad assertion of privilege. Paul Hastings' refusal to produce a single
document in response to the request is part of a consistent pattern by NorthWestern and
its counsel to refuse to provide the Defendants with any information regarding the basis
for the allegations contained in the Complaint.

     In addition to being abusive, Paul Hastings' Response failed to comply with
Federal Rule of Civil Procedure 45(d)(2). Pursuant to FRCP 45(d)(2), made applicable
to the Adversary Proceeding by Bankruptcy Rule 9016, "When information subject to a
subpoena is withheld on a claim that is privileged. . .the claim shall be made expressly
and shall be supported by a description of the nature of the documents,
communications, or thinks not produced that is sufficient to enable the demanding party
to contest the claim." In light of this, to the extent that there are documents for which
Paul Hastings can validly assert a privilege, Paul Hastings must produce a privilege log
together with all responsive documents no later than Tuesday, January 4, 2005 at 10:00
a.m. as required by the subpoena or we will seek appropriate relief from the Bankruptcy
Court.

     If you have any questions, please call me.

                                                   Sincerely,

                                                   Gary Kaplan

GK:mc

cc:   Bonnie Steingart, Esq.
      Adam Cole, Esq.
      William Chipman, Jr., Esq.
      Elio Battista, Jr., Esq.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
------------------------------------------------------x
In re:                                       :
                                             :
NORTHWESTERN CORPORATION,                    :        Chapter 11
                                             :        Case No. 03-12872 (JLP)
                                             :
            Reorganized Debtor.              :
------------------------------------------------------x
NORTHWESTERN CORPORATION,                    :
                                             :
            Plaintiff,                       :        Adv. No. 04-55051 (JLP)
                                             :
        -v-                                  :
                                             :
MAGTEN ASSET MANAGEMENT CORPORATION,         :
                                             :
            Defendant                        :
------------------------------------------------------x
```

IT IS HEREBY STIPULATED AND AGREED by the undersigned counsel for: Northwestern Corporation, Talton R. Embry and Magten Asset Management Corporation (each a "Party" and collectively, the "Parties"), subject to the approval of the Court, as follows:

　　　　1.　　　　This Stipulation and Order (the "Order") shall govern the designation and handling of documents and information, including deposition testimony, produced or provided by a Party to the other Party in the above-captioned adversary proceeding (the "Litigation").

　　　　2.　　　　As used herein, "Confidential Information" shall include any discovery materials designated by counsel for a Party as "Confidential" to the extent that counsel believes in good faith that such materials contain confidential or proprietary information. Confidential Information shall include such materials and any information derived therefrom or referring thereto.

3.    As used herein, "Highly Confidential Information" shall include any discovery material designated by counsel for a Party as "Highly Confidential" or "Attorney Eyes Only" to the extent that counsel believes in good faith that such materials contain particularly highly sensitive business or financial information, such as, for example, business plans or forecasts, cost or pricing information, sales volume or revenue information, profit margin information, marketing plans or strategy, the identity of current or potential customers or suppliers or the like. Highly Confidential Information shall include such materials and any information derived therefrom or referring thereto.

4.    A party may disclose Confidential information only to the following categories of persons:

(a)    Nonparty experts or consultants retained in good faith to assist counsel in this Litigation; provided that such expert or consultant is provided with a copy of this Order and agrees, in writing, to be bound thereby with respect to the treatment of Confidential Information;

(b)    In-house or outside counsel for any party to this Litigation, provided that such counsel is provided with a copy of this Order and agrees, in writing, to be bound thereby with respect to the treatment of Confidential Information;

(c)    Persons who have been noticed for depositions or subpoenaed for trial testimony and who (i) have been provided with notice that the information being disclosed is Confidential Information, (ii) have been provided with a copy of this Order, and (iii) have been informed upon the record of such testimony that Confidential Information is being disclosed to them pursuant to this Order;

(d)    Court reporters, stenographers or video operators at depositions, court or arbitral proceedings at which Confidential Information is disclosed;

2

(e)    Clerical and data processing personnel involved in the production, reproduction, organizing, filing, coding, cataloging, converting, storing, retrieving and review of Confidential Information, to the extent reasonably necessary to assist the Parties or their counsel with respect to the Litigation;

(f)    Officers, directors and employees of Parties; and

(g)    Any other person designated by the Court upon such terms as the Court may deem proper.

5.    Highly Confidential Information may be disclosed to the categories of persons identified in and pursuant to the subparagraphs (a)-(e) and (g) of paragraph 4.  In no event, however, may any Party's officer, director or employee of a Party (other than in-house counsel) be shown or given access to Highly Confidential Information.  It is understood, however, that a Party may give advice and opinions to his or her client based on his or her evaluation of Highly Confidential Information, only for the purposes of this Litigation, provided that such rendering of advice and opinions shall not directly or indirectly reveal the content of such information.

6.    A Party may designate information as Confidential Information or Highly Confidential Information by marking or stamping documents (of the first page of a multi-page document provided that the document is securely bound) or other information "Confidential", "Highly Confidential" or "Attorney Eyes Only" or by informing recipients in writing of its confidential designation.  The recipient shall treat print-outs of any computer data so designated as Confidential Information or Highly Confidential Information in accordance with the terms of this Order.  Failure to designate materials as Confidential Information or Highly Confidential Information at the time of their production may be remedied by supplemental written notice, and

3

upon receiving such supplemental notice, the receiving Party shall thereafter treat the designated materials in accordance with the terms of this Order.

7.    A Party may, on the record of a deposition or within five (5) business days after receipt of each volume of transcript of such deposition, designate any portion or portions of such transcript, including exhibits, as Confidential Information or Highly Confidential Information under the terms of this Order.  Until such time period expires, the entire volume of deposition transcripts shall be treated as Confidential Information unless otherwise specified in writing or on the record of the deposition.  All copies of deposition transcripts that contain information or material designated as Confidential Information or Highly Confidential Information shall be prominently marked "Confidential", "Highly Confidential" or "Attorney Eyes Only" on the cover thereof, and, if filed with the Court, the portions of such transcripts so designated shall be filed under seal or the equivalent.

8.    If any Party objects to the designation of any discovery materials as Confidential Information or Highly Confidential Information or seeks to use such materials other than as permitted by this Order, the objecting Party shall so state by letter to counsel for the designating Party.  Any objecting Party and the designating Party shall promptly confer, in good faith, to resolve any dispute concerning the designation and treatment of information as Confidential Information or Highly Confidential Information pursuant to the terms of this Order. In the event that any objecting and the designating part are unable to resolve any dispute concerning treatment of information as Confidential Information or Highly Confidential Information, the designating Party shall, if it wishes to adhere to its designation, give written notice of its adherence to the designation within three (3) business days of receipt of a notice contesting such designation.  Thereafter, upon not less than five (5) days notice, any objecting

4

Party contesting such designation may, upon motion made to the Court on notice to all parties seek an order from the Court directing that such information shall not be treated as Confidential Information or Highly Confidential Information pursuant to this Order. Pending determination of such motion, any information previously designated as Confidential Information or Highly Confidential Information shall continue to be treated in accordance with its original designation.

9.    Subject to the Local Rules of this Court and any other procedures that may be established or that govern this Litigation, Confidential Information or Highly Confidential Information may be offered into evidence at any hearing in open court in this Litigation provided that the Parties be given sufficient advance notice so as to allow for any Party to apply for any order that the evidence be reviewed in camera or under other conditions to prevent its disclosure.

10.    This Order shall have no effect on the admissibility or discoverability of any Confidential Information or Highly Confidential Information.

11.    The Parties intend that this order bar production of Confidential Information and Highly Confidential Information to third parties, and production of Highly Confidential Information to in-house counsel to Party or to his or her client, to the maximum extent permitted by law. Any party served with a subpoena or other notice compelling the production of Confidential Information or Highly Confidential Information shall give prompt written notice sufficiently in advance of the requested production date to the producing Party so as to allow for an opportunity to object to production.

12.    If a Party inadvertently produces Confidential Information or Highly Confidential Information without marking it as such, it may be disclosed to others until the

5

receiving Party reasonable becomes aware of the error. As soon as the receiving Party becomes aware of the inadvertent production, the information must be treated as if it had been timely designated under this Order, and the receiving Party must endeavor in good faith to obtain all copies of the document which it distributed or disclosed to persons not authorized to access such information, as well as any copies made by such persons.

13.    This Order has no effect upon, and its scope shall not extend to, a Party's use of its own Confidential Information or Highly Confidential Information for any purpose.

14.    Nothing herein shall prevent or prejudice a Party from seeking additional or greater protection with respect to the use or disclosure of Confidential Information or Highly Confidential Information in connection with any hearing or other proceeding in the Litigation or otherwise.

15.    The Parties agree to seek approval of the Court with respect to this Order. Notwithstanding the pendency of approval by the Court, this Order shall become effective among the Parties immediately upon its execution. If approval by the Court is ultimately denied, no Party shall treat any Confidential Information or Highly Confidential Information produced prior to that time other than as provided for herein.

16.    In the event that counsel for any Party determines to file with the Court any pleadings, motions, briefs or other papers that contain, discuss or otherwise disclose the substance of Confidential Information or Highly Confidential Information, the Parties shall endeavor to cooperate and file such pleadings, motions, briefs or other papers with a request to file under seal or with an equivalent request.

6

17.    If a Party inadvertently produces a document that it later discovers or in good faith asserts to be a privileged document (including work product), the production of that document shall not be deemed to constitute to waiver of any applicable privileges. As soon as the producing Party becomes aware of the inadvertent production, the producing Party must immediately provide written notification to the receiving Party of the inadvertent production and request the return or confirmed destruction of the privileged materials. Within five (5) days after notice, the receiving Party shall return or confirm destruction of all such materials, including any summaries or references thereof. Such return or confirmation of destruction shall not preclude the receiving Party from seeking to compel production of the materials for reasons other than its inadvertent production and shall not constitute an admission by the receiving Party that the materials were, in fact, privileged in any way.

18.    Documents or other information provided to the parties in this Litigation by a non-party pursuant to a subpoena or otherwise shall be subject to this Order.

19.    Notwithstanding any other provision of this Order, documents and information, including deposition testimony, produced or provided by any Party or non-party in this Litigation shall be used solely for purposes of this Litigation.

20.    This Order may be executed in counterparts.

7

Dated:   January __, 2005

>
> Mark J. Packel (DE No. 4048)
> Elio Battista, Jr. (DE No. 3814)
> Blank Rome LLP
> 1201 Market Street, Suite 800
> Wilmington, DE 19801
> Telephone:   (302) 425-6400
> Facsimile:   (302) 425-6464
>
>                   -and –
>
> Bonnie Steingart, Esq.
> Gary L. Kaplan, Esq.
> One New York Plaza
> New York, NY 10004
> Telephone:  (212) 859-8000
> Facsimile:  (212) 859-4000
>
> Counsel for Magten Asset Management
>       Corporation and Talton R. Embry

Dated:   January __, 2005

>
> Scott D. Cousins
> Greenberg Traurig, LLP
> The Brandywine Building
> 1000 West Street; Suite 1540
> Wilmington, DE 19801
> Telephone:   (302) 661-7000
>
>
> Counsel for NorthWestern Corporation

SO ORDERED

_____
United States Bankruptcy Judge

Dated:

8

# EXHIBIT "D"

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
In re:                                          :
                                                :
NORTHWESTERN CORPORATION,                        :        Chapter 11
                                                :        Case No. 03-12872 (JLP)
                                                :
            Reorganized Debtor.                  :
------------------------------------------------------------ x
NORTHWESTERN CORPORATION,                        :
                                                :
            Plaintiff,                           :        Adv. No. 04-55051 (JLP)
                                                :
            -v-                                  :
                                                :
MAGTEN ASSET MANAGEMENT CORPORATION,             :
                                                :
            Defendant                            :
------------------------------------------------------------ x
```

## ORDER GOVERNING PRODUCTION AND USE OF
## CONFIDENTIAL INFORMATION

NorthWestern Corporation having filed a motion for Protective Order Pursuant to Rule 7026(c) of the Federal Rules of Bankruptcy Procedure and Rule 26(c) of the Federal Rules of Civil Procedure (the *"Motion"*) seeking, among other things, to maintain the confidentiality of certain documents to be produced in discovery; and Magten Asset Management Corporation and Talton R. Embry (the *"Defendants"*) having filed an objection to the Motion wherein Defendants requested that this Order Governing Production and Use of Confidential Information be entered by the Court;

And it appearing that the Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 1334 and that this matter is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A);

And it appearing that there is sufficient cause to grant the relief requested; it is hereby **ORDERED** that:

1.      This Order (the *"Order"*) shall govern the designation and handling of documents and information, including deposition testimony, produced or provided by NorthWestern Corporation, Talton R. Embry, and Magten Asset Management Corporation (each a "Party" and collectively, the "Parties") or by any person (as such term is defined in 11 U.S.C. §101 (41), a "Person") in the above-captioned adversary proceeding (the *"Litigation"*).

2.      As used herein, "Confidential Information" shall include any discovery materials designated by counsel for a Person as "Confidential" to the extent that counsel believes in good faith that such materials contain confidential or proprietary information.    Confidential Information shall include such materials and any information derived therefrom or referring thereto.

3.      As used herein, "Highly Confidential Information" shall include any discovery material designated by counsel for a Person as "Highly Confidential" or "Attorney Eyes Only" to the extent that counsel believes in good faith that such materials contain particularly highly sensitive business or financial information, such as, for example, business plans or forecasts, cost or pricing information, sales volume or revenue information, profit margin information, marketing plans or strategy, the identity of current or potential customers or suppliers or the like. Highly Confidential Information shall include such materials and any information derived therefrom or referring thereto.

4.      A recipient of Confidential Information may disclose Confidential information only to the following categories of Persons:

> (a)      Nonparty experts or consultants retained in good faith to assist counsel in this Litigation; provided that such expert or consultant is provided with a copy of this Order and agrees, in writing, to be bound thereby with respect to the treatment of Confidential Information;

2

(b)    In-house or outside counsel for any party to this Litigation, provided that such counsel is provided with a copy of this Order and agrees, in writing, to be bound thereby with respect to the treatment of Confidential Information;

(c)    Persons who have been noticed for depositions or subpoenaed for trial testimony and who (i) have been provided with notice that the information being disclosed is Confidential Information, (ii) have been provided with a copy of this Order, and (iii) have been informed upon the record of such testimony that Confidential Information is being disclosed to them pursuant to this Order;

(d)    Court reporters, stenographers or video operators at depositions, court or arbitral proceedings at which Confidential Information is disclosed;

(e)    Clerical and data processing personnel involved in the production, reproduction, organizing, filing, coding, cataloging, converting, storing, retrieving and review of Confidential Information, to the extent reasonably necessary to assist the Parties or their counsel with respect to the Litigation;

(f)    Officers, directors and employees of Parties; and

(g)    Any other Person designated by the Court upon such terms as the Court may deem proper.

5.    Highly Confidential Information may be disclosed to the categories of Persons identified in and pursuant to the subparagraphs (a)-(e) and (g) of paragraph 4. In no event, however, may any Party's officer, director or employee (other than in-house counsel) be shown or given access to Highly Confidential Information. It is understood, however, that counsel for a Party may give advice and opinions to his or her client based on his or her evaluation of Highly Confidential Information, only for the purposes of this Litigation, provided that such rendering of advice and opinions shall not directly or indirectly reveal the content of such information.

6.    A Person may designate information as Confidential Information or Highly Confidential Information by marking or stamping documents (of the first page of a multi-page document provided that the document is securely bound) or other information "Confidential", "Highly Confidential" or "Attorney Eyes Only" or by informing recipients in writing of its confidential designation. The recipient shall treat print-outs of any computer data so designated

3

as Confidential Information or Highly Confidential Information in accordance with the terms of this Order. Failure to designate materials as Confidential Information or Highly Confidential Information at the time of their production may be remedied by supplemental written notice, and upon receiving such supplemental notice, the receiving Person shall thereafter treat the designated materials in accordance with the terms of this Order.

7.      A Person may, on the record of a deposition or within five (5) business days after receipt of each volume of transcript of such deposition, designate any portion or portions of such transcript, including exhibits, as Confidential Information or Highly Confidential Information under the terms of this Order. Until such time period expires, the entire volume of deposition transcripts shall be treated as Confidential Information unless otherwise specified in writing or on the record of the deposition. All copies of deposition transcripts that contain information or material designated as Confidential Information or Highly Confidential Information shall be prominently marked "Confidential", "Highly Confidential" or "Attorney Eyes Only" on the cover thereof, and, if filed with the Court, the portions of such transcripts so designated shall be filed under seal or the equivalent.

8.      If any Party objects to the designation of any discovery materials as Confidential Information or Highly Confidential Information or seeks to use such materials other than as permitted by this Order, the objecting Party shall so state by letter to counsel for the designating Person. Any objecting Party and the designating Person shall promptly confer, in good faith, to resolve any dispute concerning the designation and treatment of information as Confidential Information or Highly Confidential Information pursuant to the terms of this Order. In the event that any objecting Party and the designating Person are unable to resolve any dispute concerning treatment of information as Confidential Information or Highly Confidential Information, the

4

designating Person shall, if it wishes to adhere to its designation, give written notice of its adherence to the designation within three (3) business days of receipt of a notice contesting such designation. Thereafter, upon not less than five (5) days notice, any objecting Party contesting such designation may, upon motion made to the Court on notice to all Parties seek an order from the Court directing that such information shall not be treated as Confidential Information or Highly Confidential Information pursuant to this Order. Pending determination of such motion, any information previously designated as Confidential Information or Highly Confidential Information shall continue to be treated in accordance with its original designation.

9.     Subject to the Local Rules of this Court and any o ther procedures that may be established or that govern this Litigation, Confidential Information or Highly Confidential Information may be offered into evidence at any hearing in open court in this Litigation provided that the Parties be given sufficient advance notice so as to allow for any Party to apply for any order that the evidence be reviewed in camera or under other conditions to prevent its disclosure.

10.     This Order shall have no effect on the admissibility or discoverability of any Confidential Information or Highly Confidential Information.

11.     The Parties intend that this order bar production of Confidential Information and Highly Confidential Information to third parties, and production of Highly Confidential Information to in-house counsel to a Party or to his or her client, to the maximum extent permitted by law. Any Person served with a subpoena or other notice compelling the production of Confidential Information or Highly Confidential Information shall give prompt written notice sufficiently in advance of the requested production date to the producing Person so as to allow for an opportunity to object to production.

5

12.    If a Person inadvertently produces Confidential Information or Highly Confidential Information without marking it as such, it may be disclosed to others until the receiving Party reasonably becomes aware of the error.  As soon as the receiving Party becomes aware of the inadvertent production, the information must be treated as if it had been timely designated under this Order, and the receiving Party must endeavor in good faith to obtain all copies of the document which it distributed or disclosed to Persons not authorized to access such information, as well as any copies made by such Persons.

13.    This Order has no effect upon, and its scope shall not extend to, a Party's use of its own Confidential Information or Highly Confidential Information for any purpose.

14.    Nothing herein shall prevent or prejudice a Person from seeking additional or greater protection with respect to the use or disclosure of Confidential Information or Highly Confidential Information in connection with any hearing or other proceeding in the Litigation or otherwise.

15.    In the event that counsel for any Party determines to file with the Court any pleadings, motions, briefs or other papers that contain, discuss or otherwise disclose the substance of Confidential Information or Highly Confidential Information, the Parties shall endeavor to cooperate and file such pleadings, motions, briefs or other papers with a request to file under seal or with an equivalent request.

16.    If a Person inadvertently produces a document that it later discovers or in good faith asserts to be a privileged document (including work product), the production of that document shall not be deemed to constitute to waiver of any applicable privileges.  As soon as the producing Person becomes aware of the inadvertent production, the producing Person must immediately provide written notification to the receiving Party of the inadvertent production and

6

request the return or confirmed destruction of the privileged materials. Within five (5) days after notice, the receiving Party shall return or confirm destruction of all such materials, including any summaries or references thereof. Such return or confirmation of destruction shall not preclude the receiving Party from seeking to compel production of the materials for reasons other than its inadvertent production and shall not constitute an admission by the receiving Party that the materials were, in fact, privileged in any way.

17.    For avoidance of doubt, documents or other information provided to Parties in this Litigation by a Person pursuant to a subpoena or otherwise shall be subject to this Order.

18.    Notwithstanding any other provision of this Order, documents and information, including deposition testimony, produced or provided by any Person in this Litigation shall be used solely for purposes of this Litigation.

Dated: January _____, 2005

_____
HONORABLE JOHN L. PETERSON
United States Bankruptcy Court

120087.01600/40148964v1

## CERTIFICATE OF SERVICE

I, *Elio Battista, Jr.*, certify that I am not less than 18 years of age, and that on January 4, 2005, I caused service of the attached *Objection of Magten Asset Management Corporation and Talton R. Embry to Motion by NorthWestern Corporation for Protective Order* to be made on the parties listed below as indicated.

Under penalty of perjury, I declare that the foregoing is true and correct.

Elio Battista, Jr.

**BY HAND DELIVERY**

Scott D. Cousins, Esquire
William E. Chipman, Jr., Esquire
*Greenberg Traurig, LLP*
1000 West Street, Suite 1540
Wilmington, DE 19801

**BY FACSIMILE & 1ST CLASS MAIL**

Jesse Austin, Esquire
Karol K. Denniston, Esquire
*Paul Hastings Janofsky & Walker LLP*
600 Peachtree Road, N.E.
Atlanta, GA 30308
(404) 815-2400; (404) 815-2424