**<u>EXHIBIT S</u>**



BLANK ROME LLP
COUNSELORS AT LAW

Phone:     302-425-6424
Fax:       302-425-6464
Email:     battista@blankrome.com

January 14, 2005

## VIA ELECTRONIC MAIL DELIVERY

The Honorable John L. Peterson
United States Bankruptcy Court
824 Market Street
Wilmington, DE 19801

> Re:    *Northwestern Corporation Magten Asset Management Corporation, et al.*
>        Adv. Pro. No. 04-55051 (JLP)

Dear Judge Peterson:

Counsel for Magten Asset Management Corp. ("Magten") has been attempting since yesterday to contact Your Honor's scheduling clerk in Delaware to schedule a telephonic hearing and has been unsuccessful. Consequently, Magten submits this letter and respectfully requests that the Court schedule an emergency telephonic hearing today to address certain discovery disputes, identified below, which remain unresolved notwithstanding the January 7, 2005 telephonic hearing held before Your Honor.

Among the items addressed by Your Honor during the January 7th hearing was the Official Committee of Unsecured Creditors' (the "Committee") motion for a protective order. During the hearing, Your Honor made it clear that the former members of the Committee were to submit affidavits to counsel for Magten by Wednesday, January 12, 2005. None of the former members of the Committee have provided such affidavits. Magten hereby requests that Your Honor address the former members of the Committee's failure to submit the aforementioned affidavits.

In addition, Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss") counsel to the Committee has refused (and has refused on behalf of Houlihan Lokey and the former members of the Committee) to produce a substantial number of the documents that were provided to the members of the Committee by the Committee's advisors and any communications among members of the Committee based upon the assertion that all such documents and communications are privileged. Paul Weiss has also directed Magten and Fried



The Honorable John L. Peterson
January 14, 2005
Page 2


Frank Harris Shriver & Jacoboson LLP not to produce documents identified by Paul Weiss as privileged. Magten hereby requests that Your Honor resolve the privilege issues raised by Paul Weiss.

Magten is scheduled to be deposed on Monday, January 17, 2005 (a Federal Holiday). Absent a resolution of the privilege issue, it is Magten's understanding that at the deposition, Paul Weiss may seek to prevent Magten from testifying with respect to numerous items. Given the timing of the deposition, Magten requests that the Court resolve any privilege issues prior to the deposition so as to avoid the unnecessary burden of Magten being deposed twice on the same issues.

Attached for Your Honor's reference are copies of correspondence between counsel for Magten and Paul Weiss relating to this discovery dispute.

As always, I am available at the Court's convenience.

Respectfully submitted,

Elio Battista, Jr.

EB:jep
cc:    Alan W. Kornberg, Esq. (via e-mail w/enclosures)
        Neil B. Glassman, Esq. (via e-mail w/enclosures)
        Scott D. Cousins, Esq. (via e-mail w/enclosures)
        William E. Chipman, Jr., Esq. (via e-mail w/enclosures)
        Jesse H. Austin, III, Esq. (via e-mail w/enclosures)
        Karol K. Denniston, Esq. (via e-mail w/enclosures)
        Gary L. Kaplan, Esq. (via e-mail w/enclosures)

**Fried, Frank, Harris, Shriver & Jacobson LLP**
One New York Plaza
New York, NY 10004-1980
Tel: 212.859.8000
Fax: 212.859.4000
www.friedfrank.com

# F A X   C O V E R   S H E E T

FRIED FRANK

**Date:**              January 14, 2005

**From:**              Gary Kaplan

**Sender's Phone:**    212.859.8812

**Sender's Fax:**      212-859-8583

**Sender's Email:**    kaplaga@ffhsj.com

**Number of Pages** (including cover sheet):          4

| Recipient | Company | Fax | Phone |
|---|---|---|---|
| James G. Wheaton, Esq. | Paul, Weiss, Rifkind, Wharton | 212-492-0713 | 212-373-3713 |
| Mark Alcott | Paul, Weiss, Rifkind, Wharton | 212-373-2826 | 212-373-3179 |
| Talton Embry | Magten Asset Management | 212-813-9058 | 212-813-0900 |
| Mark Packel | Wharton & Garrison LLP | 302-428-5115 | 302-425-6429 |
| Elio Battista | Blank Rome LLP | 302-425-6464 | 302-425-6424 |

**Comments:**

If you have any problems receiving this transmission, please contact us at 212.859.8362.

**Confidentiality Notice:**
The information contained in this facsimile message may be legally privileged and confidential. It is intended only for the use of the addressee named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original message to us at the address above via the United States Postal Service. We will reimburse any costs you incur in notifying us and returning the message to us. Thank you.

A Delaware Limited Liability Partnership
New York • Washington • Los Angeles • London • Paris • Frankfurt

**Fried, Frank, Harris, Shriver & Jacobson LLP**
One New York Plaza
New York, NY 10004-1980
Tel: 212.859.8000
Fax: 212.859.4000
www.friedfrank.com

Direct Line: 212.859.8812
Fax: 212.859.8583
kaplaga@ffhsj.com

January 14, 2005



*By Facsimile*
James G. Wheaton, Esq.
Paul, Weiss, Rifkind, Wharton
& Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-3990

Re:     NorthWestern Corporation v. Magten Asset Management Corporation
        and Talton R. Embry, Adv. No. 04-55051

Dear James:

I am writing to address your failure to provide the affidavits of each of the members of the Committee by January 12, 2005 as required by Judge Peterson and to respond to your letter dated January 12, 2005. Both the statements in the letter and your failure to timely provide the affidavits show blatant contempt for the Judge's order and for your obligations under the Federal Rules of Civil Procedure. Your actions leave us no choice but to seek the intervention of Judge Peterson.

With respect to the subpoenas served on the former members of the Committee, during the January 7, 2005 telephonic hearing, Judge Peterson made it clear that the members of the Committee are to submit affidavits to Fried Frank and that "the affidavits by the Committee members will be supplied within five days." See Transcript of January 7, 2005 Hearing at p. 23, a copy of which is attached for your convenience. As a result of your tardiness and dilatory tactics, we have no choice but to take the depositions of all of the former members of the Committee. Additionally, we intend to seek costs and fees incurred in taking these depositions, as they are necessitated by your blatant disregard of the Court's oral ruling.

The depositions will be taken on the following schedule:

| Party | Date and Time | Location |
|---|---|---|
| AG Capital Recovery Partners III, L.P | January 21, 2005 at 10:00 a.m. | Offices of Fried Frank, New York, NY |
| Avenue Capital Management | January 19, 2005 at 2:00 p.m. | Offices of Fried Frank, New York, NY |

A Delaware Limited Liability Partnership
New York • Washington • Los Angeles • London • Paris

Fried, Frank, Harris, Shriver & Jacobson LLP

January 14, 2005
Page 2

| Comanche Park, LLC | January 25, 2005 at 10:00 a.m. | A&W Office Services, The Grand Building, Billings, MT |
| Franklin Templeton Mutual Series Funds | January 24, 2005 at 1:00 pm. | Offices of Fried Frank, New York, NY |
| HSBC Bank USA | January 25, 2005 at 10:00 a.m. | Offices of Fried Frank, New York, NY |
| OCM Opportunities Funds, IV, L.P. | January 20, 2005 at 10:00 a.m. | Offices of Fried Frank, Los Angeles, CA |
| Wilmington Trust Company | January 24, 2005 at 10:00 a.m. | Offices of Blank Rome, Wilmington, DE |

We also intend to take the deposition if Paul Weiss on January 19, 2005 at 10:00 a.m. and Houlihan Lokey on January 18, 2005 at 10:00 a.m. in accordance with the terms of the subpoenas served by Magten. Both depositions will take place at Fried Frank's offices.

In addition to failing to timely provide the affidavits of the members of the Committee, your January 12th letter once again directed us not to produce any documents that Paul Weiss previously identified as privileged. As we have stated before on numerous occasions, Paul Weiss' blanket assertion of the attorney client privilege over nearly every document sent to or from the members of the Committee and the Committee's advisors is simply unsupported by the law and has resulted in unnecessary cost and a delay. We intend to seek a determination from Judge Peterson with regard to whether the documents in question are privileged in the very near term.

Lastly, while you have previously taken the position that Paul Weiss will not produce any documents that it has reviewed as its role as legal advisor to the Committee, your January 12th letter suggested that Paul Weiss has determined to produce documents. While we would welcome your compliance with the subpoena, though belated, to the extent your delay in producing requires Magten to depose NorthWestern's representative a second time, we will seek to recover from you the costs incurred as a result of your delay.

Sincerely,

Gary L. Kaplan

**Fried, Frank, Harris, Shriver & Jacobson LLP**

January 14, 2005
Page 3

cc:    Bonnie Steingart, Esq.
       Alan W. Kornberg, Esq.
       Mark Alcott, Esq.
       Mark Packel, Esq.
       Elio Battista, Esq.

Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004-1980
Tel: 212.859.8000
Fax: 212.859.4000
www.friedfrank.com

# FAX COVER SHEET

**Date:** January 14, 2005
**From:** Gary Kaplan
**Sender's Phone:** 212.859.8812
**Sender's Fax:** 212-859-8583
**Sender's Email:** kaplaga@ffhsj.com
**Number of Pages** (including cover sheet):    4

FRIED FRANK

| Recipient | Company | Fax | Phone |
|---|---|---|---|
| James G. Wheaton, Esq. | Paul, Weiss, Rifkind, Wharton | 212-492-0713 | 212-373-3713 |
| Mark Alcott | Paul, Weiss, Rifkind, Wharton | 212-373-2826 | 212-373-3179 |
| Talton Embry | Magten Asset Management | 212-813-9058 | 212-813-0900 |
| Mark Packel | Wharton & Garrison LLP | 302-428-5115 | 302-425-6429 |
| Elio Battista | Blank Rome LLP | 302-425-6464 | 302-425-6424 |

**Comments:**

If you have any problems receiving this transmission, please contact us at 212.859.8362.

Confidentiality Notice:
The information contained in this facsimile message may be legally privileged and confidential. It is intended only for the use of the addressee named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original message to us at the address above via the United States Postal Service. We will reimburse any costs you incur in notifying us and returning the message to us. Thank you.

A Delaware Limited Liability Partnership
New York • Washington • Los Angeles • London • Paris • Frankfurt

# Group Send Report

```
Date & Time: Jan-14-2005  11:04am
Tel line  : +859 8583
Machine ID : 23C FFHS&J LLP
```

Job number                 :   908

Date & Time                :   Jan-14 10:54am

Number of pages            :   004

Start time                 :   Jan-14 10:54am

End time                   :   Jan-14 11:04am

Successful numbers

 Fax numbers

  ☎94920713
  ☎93732826
  ☎98139058
  ☎913024285115
  ☎913024256464

Unsuccessful numbers                                                    Pages sent

**Fried, Frank, Harris, Shriver & Jacobson LLP**
One New York Plaza
New York, NY 10004-1980
Tel: 212.859.8000
Fax: 212.859.4000
www.friedfrank.com

Direct Line: 212.859.8812
Fax: 212.859.8583
kaplaga@ffhsj.com

January 11, 2005



*By Facsimile and Overnight Mail*

Alan W. Kornberg, Esq.
Mark Alcott, Esq.
Paul, Weiss, Rifkind, Wharton
& Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-3990

Re:    NorthWestern Corporation v. Magten Asset Management Corporation
and Talton R. Embry, Adv. No. 04-55051

Dear Alan and Mark:

As know, prior to producing any documents to NorthWestern
Corporation ("NorthWestern") in the above referenced adversary proceeding, we
permitted Paul Weiss to review Magten's proposed document production to ensure that
no privileged documents would be produced. In that regard, on December 29, 2004,
attorneys from Paul Weiss reviewed the proposed document production and directed us
not to produce a significant number of documents on the grounds that they are protected
from disclosure by the attorney client privilege or the work product doctrine. We have
subsequently reviewed the documents for which Paul Weiss has asserted a privilege
and, based upon that review, it is clear that Paul Weiss made no assessment about
whether the documents are in fact protected by the attorney client privilege or whether
the privileged portions of any of the documents could be redacted.

Additionally, in response to subpoenas served by Magten on Paul Weiss,
Houlihan Lokey and the former members of the Committee, we have received a small
number of documents from Paul Weiss. This production purports to be "all responsive,
non-privileged documents" in the possession of seven of the members of the Committee
and Houlihan Lokey. That production was woefully inadequate as we received no
documents from Paul Weiss, few documents from the members of the Committee and a
total of 14 pages from Houlihan Lokey, consisting of a draft confidentiality agreement
and some miscellaneous court orders. We understand that Paul Weiss has taken the
view that all other responsive documents are privileged.

A Delaware Limited Liability Partnership

Fried, Frank, Harris, Shriver & Jacobson LLP

January 11, 2005
Page 2

As you know, NorthWestern is claiming that it provided information to Paul Weiss and Houlihan Lokey and Paul Weiss and Houlihan Lokey then transmitted that information to the Committee. It is well established that the attorney client privilege does not protect disclosure of underlying facts. See Upjohn Co. v. U.S., 449 U.S. 383, 395 (1981). Therefore, to the extent that communications to and from Committee members or Committee advisors contain factual information that was provided to Paul Weiss or Houlihan Lokey by NorthWestern, no claim of privilege may be asserted as to those facts. Any privileged communications included with such facts can be redacted. To the extent that its your position that no portion of any of the documents in the possession of Paul Weiss, Houlihan Lokey or the former members of the Committee contain factual information that was provided to Paul Weiss or Houlihan Lokey by NorthWestern, please confirm that position in writing.

Because Paul Weiss has taken the position that nearly every communication by and between the Committee and its members or advisors is privileged, we are left with no choice but to make our own determination with respect to which documents are privileged and which documents may be produced in whole or in part. Given the timeframe of the trial and the upcoming discovery cutoff, it is imperative that we complete Magten's production by Thursday. As a result, we intend to produce all documents that we believe to be non-privileged on Thursday, January 13, 2005. If you would like to prevent the disclosure of such documents, you are free to seek a protective order from the Bankruptcy Court.

Lastly, each of the members of the Committee, Paul Weiss and Houlihan Lokey must produce to Magten all non-privileged documents responsive to the subpoenas as well as a detailed privilege log containing adequate detail to enable Magten to challenge any assertion of privilege. Please produce the documents and the privilege log no later than Wednesday, January 12, 2005 at 3:00 p.m., or we will seek appropriate relief from the Bankruptcy Court.

Sincerely,

Gary Kaplan (me)

Gary L. Kaplan

cc:    Bonnie Steingart, Esq.
       Talton Embry
       Mark Packel, Esq.
       Elio Battista, Esq.

486127

JAN 12 2005 15:35 FR PWRW&G     212 373 2773 TO 817333001-12Y265 P.01/03

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS, NEW YORK, N.Y. 10019-6064  (212) 373-3000

# FAX COVER SHEET

FROM: James G. Wheaton          DATE: January 12, 2005        **17333-001**

RETURN FAX NUMBER: 212-373-2773     TOTAL NUMBER OF PAGES:  3  (Including Cover Sheet)

| NAME | FIRM/COMPANY | FAX NO. (LIST ALT. WHERE POSSIBLE) | TIME SENT |
|---|---|---|---|
| Gary L. Kaplan | Fried Frank Harris Shriver & Jacobson LLP | 212-859-8583 | |
| cc:   Mark H. Alcott, Esq. | PWRW&G LLP (NY Office) | x2826 | |
|        Alan W. Kornberg, Esq. | | x2053 | |

*If transmission is incomplete, please call:*  212-373-3713 _____     *Operator: Victoria Williams* _____

RETURN ORIGINAL TO:  [X] SENDER     [ ] RECORDS

COMMENTS:

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED AND CONFIDENTIAL. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE. THANK YOU

Doc #:NY6:893869.1

# PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000
FACSIMILE (212) 757-3990

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER
212-373-3713

WRITER'S DIRECT FACSIMILE
212-373-2773

WRITER'S DIRECT E-MAIL ADDRESS
jwheaton@paulweiss.com

1615 L STREET, NW
WASHINGTON, DC 20036-5694
TELEPHONE (202) 223-7300
FACSIMILE (202) 223-7420

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (813) 3597-8101
FACSIMILE (813) 3597-8120

ORIENTAL PLAZA, TOWER E3
SUITE 1205
NO.1 EAST CHANG AN AVENUE
DONG CHENG DISTRICT
BEIJING, 100738
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 6510-0406
FACSIMILE (86-10) 6518-2760/61

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2536-9933
FACSIMILE (852) 2509-9022

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K
TELEPHONE (44 20) 7367 1600
FACSIMILE (44 20) 7367 1650

MARK H. ALCOTT
ALLAN J. ARFFA
ROBERT A. ATKINS
JOHN F. BAUGHMAN
LYNN B. BAYARD
DANIEL J. BELLER
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
RICHARD B. BORISOFF
HENK BRANDS
JOHN F. BREGLIO
RICHARD J. BRONSTEIN
PATRICK S. CAMPBELL*
JEANETTE K. CHAN
YVONNE Y.F. CHAN
DOUGLAS A. CIFU
LEWIS R. CLAYTON
JAY COHEN
RUSSELL E. COLWELL
KELLEY A. CORNISH
DOUGLAS R. DAVIS
JAMES M. DUBIN
LESLIE GORDON FAGEN
MARC FALCONE
PETER L. FELCHER
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
KENNETH A. GALLO*
MICHAEL E. GERTZMAN
PAUL D. GINSBERG
ERIC S. GOLDSTEIN
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRUCE A. GUTENPLAN
GAINES GWATHMEY, III
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
GERARD E. HARPER
BRIAN S. HERMANN
ROBERT M. HIRSH
STEVEN R. HOWARD
JOYCE S. HUANG
JEH CHARLES JOHNSON
MEREDITH J. KANE
ROBERTA A. KAPLAN
BRAD S. KARP
JOHN C. KENNEDY
ALAN W. KORNBERG

DANIEL J. KRAMER
DAVID K. LAKHDHIR
JOHN E. LANGE
DANIEL J. LEFFELL
MARTIN LONDON
JEFFREY D. MARELL
MARCO V. MASOTTI
EDWIN S. MAYNARD
TOBY S. MYERSON
JOHN E. NATHAN
ALEX YOUNG K. OH
JOHN J. O'NEIL
KELLEY D. PARKER
ROBERT P. PARKER*
MARC E. PERLMUTTER
MARK F. POMERANTZ
VALERIE E. RADWANER
CAREY R. RAMOS
CARL L. REISNER
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
STEVEN B. ROSENFELD
PETER J. ROTHENBERG
RAPHAEL M. RUSSO
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JAMES H. SCHWAB
MICHAEL J. SEGAL
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
MARILYN SOBEL
PHILIP V. SPECTOR*
TARUN M. STEWART
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
JUDITH R. THOYER
DANIEL J. TOAL
MARK A. UNDERBERG
MARIA T. VULLO
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
LISA YANO
JORDAN E. YARETT
ALFRED D. YOUNGWOOD
TONG YU
JULIA L. TARVER

*NOT ADMITTED TO NEW YORK BAR

January 12, 2005

**By Fax**

Gary L. Kaplan
Fried Frank Harris Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004

*NorthWestern Corp.* v. *Magten Asset Management Corp.*
and *Talken R. Embry*, Adv. No. 04-55052

Dear Gary:

I write in response to your letter of January 11, 2005.

First, as you are aware, communications concerning legal advice between Paul, Weiss, Rifkind Wharton & Garrison, LLP ("Paul, Weiss"), Houlihan, Lokey, Howard & Zukin ("Houlihan Lokey"), and members of the Official Committee of Unsecured Creditors (the "Committee"), are privileged. The privilege belongs to the Committee, and only the Committee can waive this privilege. It appears that you plan to produce documents that the Committee's attorneys have stated are privileged. This is clearly inappropriate, and we instruct you to not proceed with your production. The Committee will seek appropriate remedies if you do in fact produce any privileged materials. We also instruct you to send us a copy of all the Committee-related documents that you intend to produce as copies of these documents were not provided to us when we reviewed documents at your offices.

JAN 12 2005 15:35 FR PWRW&G                    212 373 2773 TO 817333001-121285 P.03/03

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Gary L. Kaplan                                                                    2

        Second, we write in response to your request for Paul, Weiss to confirm that all responsive documents in the possession of Paul, Weiss, Houlihan Lokey, or the members of the Committee that were not produced are privileged. We will not make such a representation. As a general matter, Paul, Weiss, Houlihan Lokey, and the Committee members produced responsive documents *subject* to the objections and responses that were submitted to you on January 6, 2005. As a result, we have not produced all non-privileged documents responsive to your requests and we have never made the representation that you attribute to us that the productions comprise "all responsive, non-privileged" documents in each responding party's possession, custody or control.

        We also note that Paul, Weiss objected to producing any documents in Paul, Weiss' January 6, 2005 Objections and Response to Subpoena (the "Objections") because Paul, Weiss only has documents that is possesses in its role as legal adviser to the Committee. In response to your letter, Paul, Weiss will produce responsive, non-privileged documents that Paul, Weiss holds subject to the other objections that Paul, Weiss made. We are also reviewing the productions of our other clients and will produce additional responsive documents if necessary, again subject to the initial objections.

        Third, we respond to your request that Paul, Weiss, Houlihan Lokey and each Committee member produce all documents and a privilege log by 3:00 P.M., January 12, 2005 – only 25 hours after your letter was sent. While we are working diligently on privilege logs and, in response to your letter, we are reviewing the document productions to ensure that they are complete, we are not obligated to meet your arbitrary deadline, and we do not expect to meet it.

        Please call me if you have any questions.

        Sincerely,

        James G. Wheaton

cc:    Mark H. Alcott, Esq.
       Alan W. Kornberg, Esq.

**Fried, Frank, Harris, Shriver & Jacobson LLP**
One New York Plaza
New York, NY 10004-1980
Tel: 212.859.8000
Fax: 212.859.4000
www.friedfrank.com

Direct Line: 212.859.8812
Fax: 212.859.8583
kaplaga@ffhsj.com

January 4, 2005

*By Facsimile*

Margaret Phillips, Esq.
Paul, Weiss, Rifkind, Wharton
& Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-3990

Re:     NorthWestern Corporation v. Magten Asset Management Corporation
        and Talton R. Embry, Adv. No. 04-55051

Dear Margaret:

Following up on our conversation earlier today, please confirm that you have spoken with each individual member of the Official Committee of Unsecured Creditors (the "Committee") subpoenaed by Magten Asset Management Corporation ("Magten") and that none of the Committee members are interested in submitting an affidavit regarding their contact with Magten in lieu of being deposed.

If any of the individual members of the Committee desire to discuss providing an affidavit in lieu of their scheduled deposition, please let us know.

Please call me if you have any questions.

Sincerely,

Gary Kaplan

Gary L. Kaplan

cc:     Alan Kornberg, Esq.
        Bonnie Steingart, Esq.
        Elio Battista, Esq.

A Delaware Limited Liability Partnership
New York • Washington • Los Angeles • London • Paris

**Fried, Frank, Harris, Shriver & Jacobson LLP**
One New York Plaza
New York, NY 10004-1980
Tel: 212.859.8000
Fax: 212.859.4000
www.friedfrank.com

Direct Line:  212.859.8812
Fax:  212.859.8583
kaplaga@ffhsj.com

December 23, 2004



*By Facsimile*

Alan W. Kornberg, Esq.
Paul, Weiss, Rifkind, Wharton
& Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-3990

Re:  <u>NorthWestern Corporation v. Magten Asset Management Corporation
and Talton R. Embry, Adv. No. 04-55051</u>

Dear Alan:

We have received your letter dated December 22, 2004.  In your letter you state
that "the Committee has determined that it will not object to or take any action against
Magten in connection with Magten's response to NorthWestern's Discovery Requests
provided that such response is in compliance with section 4.1 of the Committee By-
Laws…and does not violate any privilege between the Committee and its counsel."  As
you are aware, section 4.1 of the Committee By-Laws permits the disclosure of
"Confidential Material" (as defined therein) to a third party if a member of the
Committee is obligated to produce such documents by law.  In light of the fact that
Magten *is* compelled by law to respond to NorthWestern's document requests, Magten
will produce Committee documents in compliance with section 4.1.  However, so as to
ensure that Magten does not produce any documents that Paul Weiss believes to be
privileged, Fried Frank will make the documents available for your review prior to our
production.  In that regard, please have someone from your office contact us so that you
may review our production on Tuesday, December 28, 2004.

A Delaware Limited Liability Partnership
New York • Washington • Los Angeles • London • Paris

Fried, Frank, Harris, Shriver & Jacobson LLP

Alan W. Kornberg, Esq.                                December 23, 2004
                                                      Page 2

    Please call me if you have any questions.

                                        Regards,

                                        Gary L. Kaplan

cc:     Bonnie Steingart, Esq.
        Talton Embry
        Mark Packel, Esq.
        Elio Battista, Esq.
        Mark Alcott, Esq.

# PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

### 1285 AVENUE OF THE AMERICAS, NEW YORK, N.Y. 10019-6064  (212) 373-3000

# FAX COVER SHEET

FROM: James G. Wheaton

RETURN FAX NUMBER: 212-373-2773

DATE: January 12, 2005    **17333-001**

TOTAL NUMBER OF PAGES: 3  (Including Cover Sheet)

| NAME | FIRM/COMPANY | FAX NO. (LIST ALT. WHERE POSSIBLE) | TIME SENT |
|------|--------------|-----------------------------------|-----------|
| Gary L. Kaplan | Fried Frank Harris Shriver & Jacobson LLP | 212-859-8583 | |
| cc:  Mark H. Alcott, Esq. | PWRW&G LLP (NY Office) | x2826 | |
| Alan W. Kornberg, Esq. | | x2053 | |

*If transmission is incomplete, please call:* 212-373-3713          *Operator: Victoria Williams*

RETURN ORIGINAL TO:  [X] SENDER    [ ] RECORDS

COMMENTS:

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED AND CONFIDENTIAL. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE. THANK YOU

JAN 12 2005 15:35 FR PWRW&G    212 373 2773 TO 817333001-121205 P.02/03

## PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000
FACSIMILE (212) 757-3990

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER
**212-373-3713**

WRITER'S DIRECT FACSIMILE
**212-373-2773**

WRITER'S DIRECT E-MAIL ADDRESS
jwheaton@paulweiss.com

1615 L STREET, NW
WASHINGTON, DC 20036-5694
TELEPHONE (202) 223-7300
FACSIMILE (202) 223-7420

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101
FACSIMILE (81-3) 3597-8120

ORIENTAL PLAZA, TOWER E3
SUITE 1205
NO. 1 EAST CHANG AN AVENUE
DONG CHENG DISTRICT
BEIJING, 100738
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 8518-8828
FACSIMILE (86-10) 8518-2760/61

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2536-9933
FACSIMILE (852) 2536-9622

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600
FACSIMILE (44 20) 7367 1650

MARK H. ALCOTT
ALLAN J. ARFFA
ROBERT A. ATKINS
JOHN F. BAUGHMAN
LYNN B. BAYARD
DANIEL J. BELLER
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
M. CHRISTOPHER BOEHNING
HENK BRANDS
JOHN F. BREGLIO
RICHARD J. BRONSTEIN
PATRICK S. CAMPBELL
JEANETTE K. CHAN
YVONNE Y.F. CHAN
DOUGLAS A. CIFU
NAOMI R. CLAYTON
JAY COHEN
RUSSELL E. COLWELL
KELLEY A. CORNISH
DOUGLAS R. DAVIS
JAMES M. DUBIN
LESLIE GORDON FAGEN
MARC FALCONE
PETER L. FELCHER
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
KENNETH A. GALLO
MICHAEL E. GERTZMAN
PAUL D. GINSBERG
ERIC S. GOLDSTEIN
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRUCE A. GUTENPLAN
GAINES GWATHMEY, III
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
GERARD E. HARPER
BRIAN S. HERMANN
ROBERT M. HIRSH
STEVEN R. HOWARD
JOYCE S. HUANG
JEH CHARLES JOHNSON
MEREDITH J. KANE
ROBERTA A. KAPLAN
BRAD S. KARP
JOHN C. KENNEDY
ALAN W. KORNBERG

DANIEL J. KRAMER
DAVID K. LAKHDIR
JOHN E. LANGE
DANIEL J. LEFFELL
MARTIN LONDON
JEFFREY D. MARELL
MARCO V. MASOTTI
EDWIN S. MAYNARD
TOBY S. MYERSON
JOHN E. NATHAN
ALEX YOUNG K. OH
JOHN J. O'NEIL
KELLEY D. PARKER
ROBERT P. PARKER
MARC E. PERLMUTTER
MARK F. POMERANTZ
VALERIE E. RADWANER
CAREY R. RAMOS
CARL L. REISNER
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
STEVEN B. ROSENFELD
PETER J. ROTHENBERG
RAPHAEL M. RUSSO
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JAMES H. SCHWAB
MICHAEL J. SEGAL
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
MARILYN SOBEL
PHILLIP L. SPECTOR
TARUN M. STEWART
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
JUDITH R. THOYER
DANIEL J. TOAL
MARK A. UNDERBERG
MARIA T. VULLO
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
LISA YANO
JORDAN E. YARETT
ALFRED D. YOUNGWOOD
TONG YU

JULIA L. YARVER
JUDITH R. THOYER

*NOT ADMITTED TO NEW YORK BAR.

<br>

January 12, 2005

**By Fax**

Gary L. Kaplan
Fried Frank Harris Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004

*NorthWestern Corp.* v. *Magten Asset Management Corp.*
and *Talken R. Embry*, Adv. No. 04-55052

Dear Gary:

       I write in response to your letter of January 11, 2005.

       First, as you are aware, communications concerning legal advice between Paul, Weiss, Rifkind Wharton & Garrison, LLP ("Paul, Weiss"), Houlihan, Lokey, Howard & Zukin ("Houlihan Lokey"), and members of the Official Committee of Unsecured Creditors (the "Committee"), are privileged. The privilege belongs to the Committee, and only the Committee can waive this privilege. It appears that you plan to produce documents that the Committee's attorneys have stated are privileged. This is clearly inappropriate, and we instruct you to not proceed with your production. The Committee will seek appropriate remedies if you do in fact produce any privileged materials. We also instruct you to send us a copy of all the Committee-related documents that you intend to produce as copies of these documents were not provided to us when we reviewed documents at your offices.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Gary L. Kaplan                                                                    2

          Second, we write in response to your request for Paul, Weiss to confirm that all responsive documents in the possession of Paul, Weiss, Houlihan Lokey, or the members of the Committee that were not produced are privileged. We will not make such a representation. As a general matter, Paul, Weiss, Houlihan Lokey, and the Committee members produced responsive documents *subject* to the objections and responses that were submitted to you on January 6, 2005. As a result, we have not produced all non-privileged documents responsive to your requests and we have never made the representation that you attribute to us that the productions comprise "all responsive, non-privileged" documents in each responding party's possession, custody or control.

          We also note that Paul, Weiss objected to producing any documents in Paul, Weiss' January 6, 2005 Objections and Response to Subpoena (the "Objections") because Paul, Weiss only has documents that is possesses in its role as legal adviser to the Committee. In response to your letter, Paul, Weiss will produce responsive, non-privileged documents that Paul, Weiss holds subject to the other objections that Paul, Weiss made. We are also reviewing the productions of our other clients and will produce additional responsive documents if necessary, again subject to the initial objections.

          Third, we respond to your request that Paul, Weiss, Houlihan Lokey and each Committee member produce all documents and a privilege log by 3:00 P.M., January 12, 2005 – only 25 hours after your letter was sent. While we are working diligently on privilege logs and, in response to your letter, we are reviewing the document productions to ensure that they are complete, we are not obligated to meet your arbitrary deadline, and we do not expect to meet it.

          Please call me if you have any questions.

          Sincerely,

          James G. Wheaton

cc:    Mark H. Alcott, Esq.
       Alan W. Kornberg, Esq.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000
FACSIMILE (212) 757-3990

LLOYD K. GARRISON    (1946-1991)
RANDOLPH E. PAUL    (1946-1956)
SIMON H. RIFKIND    (1950-1995)
LOUIS S. WEISS    (1927-1950)
JOHN F. WHARTON    (1927-1977)

WRITER'S DIRECT DIAL NUMBER
212-373-3209

WRITER'S DIRECT FACSIMILE
212-373-2053

WRITER'S DIRECT E-MAIL ADDRESS
akornberg@paulweiss.com

1615 L STREET, NW
WASHINGTON, DC 20036-5604
TELEPHONE (202) 223-7300
FACSIMILE (202) 223-7420

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101
FACSIMILE (81-3) 3597-8120

ORIENTAL PLAZA, TOWER E3
SUITE 1205
NO. 1 EAST CHANG AN AVENUE
DONG CHENG DISTRICT
BEIJING, 100738
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 8518-2766
FACSIMILE (86-10) 6518-2760/61

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2536-9933
FACSIMILE (852) 2536-9622

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600
FACSIMILE (44 20) 7367 1650

NEALE M. ALBERT
MARK H. ALCOTT
ALLAN J. ARFFA
ROBERT A. ATKINS
JOHN F. BAUGHMAN
LYNN B. BAYARD
DANIEL J. BELLER
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
RICHARD S. BORISOFF
HENK BRANDS
JOHN F. BREGLIO
RICHARD J. BRONSTEIN
PATRICK S. CAMPBELL*
JEANETTE K. CHAN
YVONNE Y.F. CHAN
DOUGLAS A. CIFU
LEWIS R. CLAYTON
JAY COHEN
RUSSELL E. COLWELL
KELLEY A. CORNISH
DOUGLAS R. DAVIS
JAMES M. DUBIN
LESLIE GORDON FAGEN
MARC FALCONE
PETER L. FELCHER
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
KENNETH A. GALLO
MICHAEL E. GERTZMAN
PAUL D. GINSBERG
ERIC S. GOLDSTEIN
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRUCE A. GUTENPLAN
GAINES GWATHMEY, III
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
GERARD E. HARPER
ROBERT M. HIRSH
STEVEN R. HOWARD
JOYCE S. HUANG
JEH CHARLES JOHNSON
MEREDITH J. KANE
ROBERTA A. KAPLAN
BRAD S. KARP
JOHN C. KENNEDY
ALAN W. KORNBERG

DANIEL J. KRAMER
DAVID K. LAKHDHIR
JOHN E. LANGE
DANIEL J. LEFFELL
MARTIN LONDON
JEFFREY D. MARELL
MARCO V. MASOTTI
EDWIN S. MAYNARD
TOBY S. MYERSON
JOHN E. NATHAN
KEVIN J. O'BRIEN
ALEX YOUNG K. OH
JOHN J. O'NEIL
KELLEY D. PARKER
ROBERT P. PARKER*
MARC E. PERLMUTTER
MARK F. POMERANTZ
VALERIE E. RADWANER
CAREY R. RAMOS
CARL L. REISNER
WALTER RIEMAN
SIDNEY S. ROSDEITCHER
RICHARD A. ROSEN
ANDREW N. ROSENBERG
STEVEN B. ROSENFELD
PETER J. ROTHENBERG
RAPHAEL M. RUSSO
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JAMES H. SCHWAB
MICHAEL J. SEGAL
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
MARILYN SOBEL
PHILLIP L. SPECTOR*
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
JUDITH R. THOYER
DANIEL J. TOAL
MARK A. UNDERBERG
MARIA T. VULLO
THEODORE V. WELLS, JR.
STEVEN L. WOLFRAM
LISA YANO
JORDAN E. YARETT
ALFRED D. YOUNGWOOD

*NOT ADMITTED TO NEW YORK BAR.

December 22, 2004

Via Facsimile & US Mail

Gary L. Kaplan
Fried Frank Harris Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004

**_NorthWestern Corp. v. Magten Asset Management Corporation and Talton R. Embry, Adv No. 04-55051.(CGC) (Bankr. D. Del.)_**

Dear Gary:

As you are aware, we represent the Official Committee of Unsecured Creditors (the "<u>Committee</u>") of NorthWestern Corporation ("<u>NorthWestern</u>"). I am writing in response to your letter of December 17, 2004, in which you request written confirmation that production by your client, Magten Asset Management Corporation ("<u>Magten</u>"), in response to certain document requests, interrogatories and depositions notices (collectively, the "<u>Discovery Requests</u>") served by NorthWestern in the above-captioned adversary proceeding does not violate any confidentiality restrictions imposed on Magten as a former member of the Committee.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
        Gary L. Kaplan                                                                    2


            The Committee has determined that it will not object to or take any action
against Magten in connection with Magten's response to NorthWestern's Discovery
Requests provided that such response is in compliance with section 4.1 of the Committee
By-Laws, a copy of which is enclosed for your reference, and does not violate any
privilege between the Committee and its counsel.


                        Very truly yours,

                        *[signature]*

                        Alan W. Kornberg



cc:       NOR Committee and Advisors
          Mark Alcott, Esq.
          Bonnie Steingart, Esq.
          Mr. Talton Embry
          Mark Packel, Esq.
          Elio Batista, Esq.
          Adam Cole, Esq.
          Scott D. Cousins, Esq.
          William E. Chipman, Esq.

## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF NORTHWESTERN CORPORATION

### Chapter 11 Case No. 03-12872 (Judge Case)

### BY-LAWS

1.    **THE COMMITTEE**

    1.1    <u>Appointment of Committee</u>.  On September 30, 2003, the United States Trustee for the District of Delaware, under the authority conferred by Section 1102(a)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et seq</u>. (the "Bankruptcy Code"), appointed the Official Committee of Unsecured Creditors (the "Committee") of NorthWestern Corporation (the "Debtor"), the members of which are referred to individually as a "Member" and collectively as the "Members."  The functions of the Committee are set forth in Section 1103 of the Bankruptcy Code.

    1.2    <u>Membership</u>.  The Committee is composed of the Members listed in Exhibit "A" hereto, which also identifies the representatives, alternates and counsel of the respective Members, if any.

    1.3    <u>Chairperson</u>.  The Committee has selected Thomas Fuller as Chairperson (the "Chair").  In the event the Chair resigns or for any other reason is unable to serve, the majority of the Members entitled to vote shall choose a successor.  Additionally, such a majority may at any time replace the Chair for cause.

    1.4    <u>Counsel</u>.  The Committee has retained, subject to approval of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP to serve as the Committee's co-counsel ("Counsel"), in the performance of the Committee's duties

under Section 1103 of the Bankruptcy Code. The Committee also has retained, subject to approval of the Bankruptcy Court, The Bayard Firm to serve as the Committee's co-counsel.

1.5     <u>Financial Advisor</u>.  The Committee has retained, subject to Bankruptcy Court approval, Houlihan, Lokey, Howard & Zukin LLC, as its financial advisor to assist in the performance of the Committee's duties under Section 1103 of the Bankruptcy Code.

1.6     <u>Other Professional Persons</u>.  The Committee may retain, pursuant to Bankruptcy Court approval, any other professionals, including, but not limited to additional financial and business advisors, appraisers and accountants, to assist the Committee with the performance of its duties under Section 1103 of the Bankruptcy Code.

1.7     <u>Change in Investment Position; Resignation</u>.  A Member shall promptly notify Counsel in writing if it no longer holds any claims against the Debtor. If a Member ceases to be a creditor of the Debtor, such Member shall thereupon be deemed to have resigned from the Committee and neither such creditor-Member nor its assignee, if any, shall have the right to designate a successor. A Member may also resign at any time by giving written notice thereof to the United States Trustee and Counsel. Each Member shall have the ability to trade, purchase, sell or otherwise dispose of its claims against or interests in the Debtor in accordance with applicable law including any orders entered or to be entered by the Bankruptcy Court.

1.8     <u>Substitutions and Vacancies</u>. Each Member may change or substitute its representatives at any time or, in the event any representative of a Member

resigns, dies, is no longer employed by or is no longer an agent of the creditor

represented, or for any other reason is unable to serve, to designate a successor

representative or alternate, as the case may be, which shall be any authorized employee or

agent of such Member.

    1.9    Replacements.  Upon the resignation or removal (pursuant to

applicable law) of a Member, the Committee may recommend a replacement to the

United States Trustee, or the Committee may refrain from recommending a replacement.

Until a vacancy on the Committee is filled, the Committee may perform all of its

functions with its reduced number (disregarding such vacancy for purposes of

determining a quorum and a majority).

2.    MEETINGS AND ACTION BY THE COMMITTEE.

    2.1    Calling and Notice.  Meetings of the Committee may be called by

the Chair or by Counsel at the direction of the Chair, and shall be called by either

Counsel or the Chair upon the request of a majority of the voting Members.  Notice of the

time and place of each meeting of the Committee shall be given to each Member and its

counsel reasonably (under the circumstances) in advance of such meeting.  No notice of

an adjourned meeting need be given, other than by announcement at the meeting at which

the adjournment is taken and by reasonable notice (under the circumstances) to any

Members and their counsel who were not present at such meeting.  The Committee shall

endeavor, whenever feasible, to determine at each meeting when the next meeting shall

be held.  If feasible, each notice of a meeting shall be in writing or email; if not feasible,

notice may be given orally, by telephone or otherwise.

2.2    <u>Place of Meetings; Meetings by Conference Call</u>.  Meetings of the Committee shall be held at such place designated by the Chair or by Counsel.  As necessary and appropriate in the judgment of the Chair or Counsel, meetings may be conducted by telephone conference call.

2.3    <u>Meeting Agenda</u>.  The agenda for regularly scheduled meetings shall be prepared by the Chair with advice of Counsel, taking into account suggestions (if any) by other Members.  If feasible, a proposed agenda and any relevant documents to be discussed at each Committee meeting will be circulated to each Member and its counsel reasonably (under the circumstances) in advance of each Committee meeting.

2.4    <u>Quorum</u>. A majority of all voting Members (other than any Members who have resigned or been removed) shall constitute a quorum for the transaction of business at any meeting.  A quorum shall include any voting Members attending by telephone connection.

2.5    <u>Voting; Polling by Telephone</u>.  Each voting Member shall be entitled to one vote, and may attend and vote (a) in person by its representative or (b) through a designated alternate or counsel.  Action of the Committee shall be authorized by the vote of a majority of the Members present at the time of the vote if there is a quorum.  The designation of alternates at meetings may be in such form, written or oral, as may be acceptable to the Chair, upon advice of Counsel.  If the matter to be voted on is one of significance and urgency, as determined by the Chair or a majority of the voting Members present, with the advice of Counsel, a reasonable effort shall be made during the meeting to poll by telephone all absent voting Members, provided that the failure to reach any such absent voting Member will not affect the validity of any vote

otherwise proper under these By-Laws. Telephone votes solicited pursuant to this Section shall be given full voting effect, and may be counted in computing a quorum in respect of the relevant action. Attendance at meetings of the Committee shall be limited to Members, their respective counsel, professionals or agents employed or retained by the Committee, and other persons invited by the Committee for special or limited purposes. The Committee may elect to meet in executive session, which shall be open only to all Members, their respective counsel, and professionals employed by the Committee.

2.6    Action Without Meeting; Action Without Vote. Any action required or permitted to be taken by the Committee, or any subcommittee formed pursuant to Section 3.4 of these By-Laws, may be taken without a meeting provided that a reasonable effort is made to contact each voting Member or subcommittee Member or its counsel for its vote, and further provided that the action voted on is approved by no less than a majority of the Members of the Committee or subcommittee. Such polling shall be conducted by the Chair or by Counsel upon the direction of the Chair or by the chair of a subcommittee. Notwithstanding anything else contained in this Section 2.6 to the contrary, when exigent circumstances exist whereby compliance with the normal Committee meeting procedures set forth herein is impracticable, the Chair shall be empowered, without prior Committee action or consent, to take any action required or permitted to be taken by the Committee, or any subcommittee formed pursuant to Section 3.4 of these By-Laws, if advised by Counsel that such action involves a matter of less than $100,000. Any action taken pursuant to this Section shall be memorialized in writing and filed with the minutes of the Committee or subcommittee, as the case may be.

2.7    <u>Conflicts of Interest</u>.  In the event that any matter under review or consideration by the Committee may involve a conflict of interest with respect to any Member, such Member shall disclose such conflict, shall abstain from voting on the matter if determined by a majority of the Committee then present to involve a conflict of interest requiring abstention, and, upon such determination, may be excluded by vote of a majority of the Members then present and not subject to such conflict of interest from that portion of the meeting at which such matter is considered.  Only for the purpose of a vote under this Section to exclude a Member from a meeting, any Member not allowed to vote shall be counted for a quorum.  A determination of the existence of a conflict of interest shall be made by a majority of the Members present and not subject to the alleged conflict of interest, upon advice of Counsel.

Each Member of the Committee retains the right to appear in the Debtor's chapter 11 case in respect of its own interests and to take a position different from that of the Committee, <u>provided, however,</u> that no Member shall purport to represent or speak for the Committee in connection therewith.

The Committee hereby authorizes Counsel, and any other professionals retained by the Committee in accordance with Sections 1.5 and 1.6 hereof (collectively, the "Professionals"), following appropriate direction from the Committee, to investigate, analyze and, if authorized by the Court, prosecute any potential claim or cause of action that may be asserted by or on behalf of the Debtor against any party in interest in the Debtor's chapter 11 case including, without limitation, the Members.

3.    ACTION BY REPRESENTATIVES OF THE COMMITTEE

      3.1    <u>Chair</u>.  The Chair shall preside at all meetings of the Committee, and subject to the control of the Committee, shall have such powers and duties as are set forth in these By-Laws or as the Committee assigns to it.

      3.2    <u>Executive Committee</u>.  An executive committee (the "Executive Committee") may be formed which shall be comprised of those Members appointed in accordance with Section 3.4 of these By-Laws (the "Executive Committee Members"). The Executive Committee shall have only those rights and obligations set forth in this Section 3 and, for purposes of these By-Laws, shall be authorized to act only upon the unanimous consent of all of its members.  An Executive Committee Member may resign from the Executive Committee at any time by giving notice of its resignation to each Member of the Committee and Counsel.  An Executive Committee Member will be deemed to have resigned from the Executive Committee upon ceasing to be a Member of the Committee or if the Committee votes to remove such Executive Committee Member. In the event of a vacancy on the Executive Committee, the Members shall elect a replacement or alternate to serve on such Executive Committee.

      3.3    <u>Emergency Motions</u>.  The Executive Committee, with the advice of Counsel, shall be empowered, without prior Committee action or consent, to consent to or otherwise act upon applications or motions for Bankruptcy Court orders on an emergency basis if the Executive Committee, with the advice of Counsel, determines that it is not feasible to obtain a vote of the Committee pursuant to these By-Laws, and to act on urgent or other matters where a quorum of the entire Committee, under the circumstances, cannot be convened or contacted for such action.  Notwithstanding the

foregoing, the Executive Committee will take every reasonable effort possible to communicate with the Committee before taking any such actions. The Committee shall be advised of any Bankruptcy Court orders, motions, applications or other matters so acted upon by the Executive Committee pursuant to this Section promptly and in any event no later than the next succeeding Committee meeting.

3.4 <u>Subcommittees</u>. The Committee may form an Executive Committee and/or one or more subcommittees, to be appointed by the Chair or Executive Committee upon consultation with the Committee and to serve at the Committee's pleasure, with such powers and duties as the Members of the Committee shall determine.

3.5 <u>Professionals</u>. The Professionals shall act at the request of the Committee (or, when appropriate, a subcommittee or the Executive Committee) or the Chair, and shall perform the duties specified in their respective orders of retention, together with such implementing duties as are set forth in these By-Laws or as may be requested by the Chair, the Committee, any subcommittee or the Executive Committee.

3.6 <u>Secretary</u>. There shall be no secretary for the Committee or any subcommittee. In lieu thereof, Counsel shall, at the request of any Member keep the minutes of all or any meetings of the Committee and any subcommittee, and shall be responsible for giving notice of meetings of the Committee and subcommittee. Unless requested by any Member, no minutes will be kept of any meeting of the Committee. Minutes of each meeting at which minutes are taken shall be circulated to all Members for their review, and shall be adopted by a majority of the Members present at the meeting which is the subject of such minutes. Subject to changes approved by the Committee or subcommittee, as appropriate, the minutes generally shall be limited to a

concise statement of the action taken at a meeting and a brief statement of any significant items discussed by the Committee or subcommittee, but without any details of such discussion. The minutes shall list the Members present.

4.      MISCELLANEOUS.

           4.1    Confidentiality. All (a) information, documents and matters of whatever nature and kind disclosed to the Committee which are identified as confidential, (b) information or documents generated by the Committee, by any of the Professionals or by any Member or counsel to any Member for use by the Committee which are identified as confidential, (c) communications among Members in their capacity as such, and (d) deliberations occurring, or statements made by Committee members, at any Committee meeting (collectively, "Confidential Material"), will, except as otherwise provided herein, be kept confidential and not be disclosed in any manner whatsoever. The Professionals shall endeavor to identify any given information or document, as the case may be, as constituting Confidential Material. Notwithstanding the foregoing, Confidential Material may be disclosed (w) to a Member's directors, officers, employees, members, principals, professional advisors or agents who, in the disclosing Member's judgment, need to know such information (it being understood that such directors, officers, employees, members, principals, professional advisors and agents shall be informed by the Member of the confidential nature of such information and shall undertake to be bound by these rules of confidentiality), (x) to governmental or regulatory or self-regulatory authorities as deemed necessary by counsel to the disclosing Member, (y) to any third party if such Member is obligated by law to do so (in which event such Member shall promptly advise Counsel of such disclosure or prospective

disclosure prior to it being disclosed or, if not practicable, as soon as possible thereafter but no later than two (2) business days after such disclosure) or (z) becomes generally available to the public other than as a result of disclosure by the Committee, any of the Members or the Professionals.

The Committee reserves the right to designate particular additional information as Confidential Material on an ad hoc basis.

Notwithstanding a Member's resignation or removal from the Committee, such Member shall remain bound by the provisions of this Section.

4.2     Media Communications.  Subject to review and approval in advance by the Committee, communications with the media with respect to Committee views or positions in the Debtor's chapter 11 case shall be made only by the Chair or Counsel.

4.3     Amendments.  These By-Laws may be amended, repealed or adopted by the vote of a majority of the Members of the Committee entitled to vote.

4.4     Reimbursement Applications.  Counsel to the Committee shall prepare and submit applications on behalf of each of the Members for reimbursement of expenses in accordance with Section 503 of the Bankruptcy Code.

4.5     Robert's Rules.  If not set forth in these By-Laws, any procedures with respect to Committee meetings shall be governed by Robert's Rules of Order. Dated this 8th day of October, 2003.

By: _____
    Chairman of the Offical Committee of Unsecured Creditors

**<u>EXHIBIT T</u>**

# Greenberg
# Traurig

Scott D. Cousins
Tel. 302.661.7373
Fax 302.661.7360
CousinsS@gtlaw.com

*Via Electronic Filing*

January 20, 2005

The Honorable John L. Peterson
United States Bankruptcy Court
824 Market Street
Wilmington, DE 19801

Re:   Northwestern Corporation  v. Magten Asset Management Corporation, et al.
      Adv. Pro. No. 04-55051 (JLP)

Dear Judge Peterson:

We, along with Paul Hastings, Janofsky & Walker, are counsel to Northwestern Corporation ("Northwestern").  We write with regard to the telephonic hearing scheduled before Your Honor today at 1:30 p.m. Wilmington, Delaware time.

If the Court will recall, among the issues addressed by the Court during the Court's January 7th telephonic hearing was the motion of the Official Committee of Unsecured Creditors ("Committee") for a protective order.  During the hearing, Your Honor indicated that the former members of the Committee were to submit affidavits to counsel for Magten by Wednesday, January 12, 2005.  Those affidavits have now been submitted.

Unfortunately, the information disclosed in the affidavits is wholly insufficient to achieve its intended purpose in the discovery process.  Accordingly, Northwestern joins in the issues that we anticipate that counsel for Magten will raise in connection with the affidavits during this afternoon's telephonic hearing.  Additionally, Northwestern will request that the former Committee members and its professionals be made available for depositions as a result of the lack of useful information contained in the affidavits submitted.  We believe that such depositions are necessary to elicit information critical to Northwestern's claims and Northwestern will suffer substantial prejudice if denied the discovery it seeks.

ALBANY

AMSTERDAM

ATLANTA

BOCA RATON

BOSTON

CHICAGO

DALLAS

DENVER

FORT LAUDERDALE

LOS ANGELES

MIAMI

NEW JERSEY

NEW YORK

ORANGE COUNTY, CA

ORLANDO

PHILADELPHIA

PHOENIX

SILICON VALLEY

TALLAHASSEE

TYSONS CORNER

WASHINGTON, D.C.

WEST PALM BEACH

WILMINGTON

ZURICH

www.gtlaw.com

DEL-SRV01\130713v01

Greenberg Traurig, LLP | Attorneys at Law | Brandywine Building | 1000 West Street | Suite 1540 | Wilmington, DE 19801
Tel 302.661.7000 | Fax 302.661.7360

The Honorable John L. Peterson
January 20, 2005
Page 2

_____

     Counsel is available at the convenience of the Court should Your Honor have any questions or concerns.


Respectfully,

Scott D. Cousins
SDC:dkk

cc:   Alan W. Kornberg, Esquire (via e-mail)
       Neil B. Glassman, Esquire (via e-mail)
       Elio Battista, Jr., Esquire (via e-mail)
       Jesse H. Austin, III, Esquire (via e-mail)
       Karol K. Denniston, Esquire (via e-mail)
       Gary L. Kaplan, Esquire (via e-mail)
       Adam D. Cole, Esquire (via e-mail)

**EXHIBIT U**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| NORTHWESTERN CORPORATION, | : Case No.  03-12872 (JLP) |
| | : |
| Debtor. | : |
| | : |
| | : |
| | : |
| NORTHWESTERN CORPORATION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| MAGTEN ASSET MANAGEMENT | : Adv. No.  04-55051 (JLP) |
| CORPORATION, and TALTON R. EMBRY, | : |
| | : |
| Defendants. | : |
| | : |

## NOTICE OF CANCELLED TRIAL AND
## NOTICE OF RELATED STATUS CONFERENCE

PLEASE TAKE NOTICE that the trial, previously scheduled for February 7,

2005 at 9:00 a.m. in the above-captioned adversary proceeding, has been cancelled by the

Court as a result of a settlement between the parties (the "Settlement").

PLEASE TAKE FURTHER NOTICE that the Court will hold a Status

Conference on the Settlement on February 10, 2005 at 9:00 a.m.

Dated: Wilmington, Delaware
January 31, 2005

GREENBERG TRAURIG, LLP

Scott D. Cousins (No. 3079)
William E. Chipman, Jr. (No. 3818)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801
Telephone: (302) 661-7000

-and-

Adam D. Cole
GREENBERG TRAURIG, LLP
885 Third Avenue
New York, NY 10022
Telephone: (212) 801-2100

***Counsel for Northwestern Corporation***

**<u>EXHIBIT V</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                    )
                                          )
NORTHWESTERN CORPORATION,                 )     Case No. 03-12872 (JLP)
                                          )
                    Reorganized Debtor.   )     Re: Docket No. 2832
_____   )

## ORDER DENYING JOINT MOTION OF MAGTEN ASSET MANAGEMENT
## CORPORATION AND LAW DEBENTURE TRUST COMPANY OF NEW YORK

For the reasons set forth in the Court's Memorandum Opinion of this date, the Joint

Motion of Magten Asset Management Corporation and Law Debenture Trust Company of New

York as Indenture Trustee for Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy

Procedure Approving a Settlement Between Northwestern Corporation, Magten Asset

Management Corporation, and Law Debenture Trust Company of New York [Docket No. 2832]

is **DENIED**.

Dated: March 10, 2005

_____
The Honorable John L. Peterson
United States Bankruptcy Judge

1

**EXHIBIT W**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | Bankruptcy Case No. 03-12872 (JLP) |
| | ) | |
| Reorganized Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 04-55051 (JLP) |
| | ) | |
| v. | ) | |
| | ) | |
| MAGTEN ASSET MANAGEMENT | ) | |
| CORPORATION, and TALTON R. EMBRY, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| MAGTEN ASSET MANAGEMENT | ) | |
| CORPORATION and LAW DEBENTURE | ) | |
| TRUST COMPANY OF NEW YORK, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 04-53324 (JLP) |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**JOINT MOTION (I) FOR ORDER ALLOWING THE DEBTOR TO DISMISS
ITS COMPLAINT AGAINST MAGTEN ASSET MANAGEMENT
CORPORATION AND TALTON R. EMBRY, WITH PREJUDICE, PURSUANT
TO RULE 7041(a) OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE AND RULE 41(a) OF THE FEDERAL RULES OF CIVIL
PROCEDURE, AND (II) FOR LEAVE TO AMEND ANSWER AND
AFFIRMATIVE DEFENSES AND TO WITHDRAW COUNTERCLAIMS TO
FIRST AMENDED COMPLAINT TO AVOID THE TRANSFER OF
ASSETS OF CLARK FORK AND BLACKFOOT LLC**

NY55/434737.3

COMES NOW NorthWestern Corporation (**"NorthWestern"** or the **"Debtor"**), by and through its undersigned counsel, and hereby files its Motion (I) for Order Allowing the Debtor to Dismiss Its Complaint Against Magten Asset Management Corporation and Talton R. Embry, With Prejudice, Pursuant to Rule 7041(a) of the Federal Rules of Bankruptcy Procedure and Rule 41(a) of the Federal Rules of Civil Procedure, and (II) for Leave to Amend Answer and Affirmative Defenses and to Withdraw Its Counterclaims to First Amended Complaint to Avoid the Transfer of Assets of Clark Fork and Blackfoot LLC (the **"Motion"**), and in support thereof respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this Chapter 11 case and the Motion are proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      NorthWestern was incorporated in 1923 and is a publicly traded Delaware corporation. NorthWestern and its direct and indirect energy subsidiaries comprise one of the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of the United States, serving approximately 608,000 customers throughout Montana, South Dakota and Nebraska. The Debtor, a transmission and distribution regulated utility entity, has generated and distributed electricity in South Dakota and has distributed natural gas in South Dakota and Nebraska through its energy division, NorthWestern Energy, since the Debtor's formation in 1923.

NY55/434737.3

3.      On September 14, 2003 (the **"Petition Date"**), NorthWestern filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On September 30, 2003, the Office of the United States Trustee for the District of Delaware (the **"Trustee"**) appointed the official committee of unsecured creditors in the Debtor's bankruptcy proceeding (the "**Committee**").

4.      On October 8, 2004, the Court entered an oral ruling confirming the Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the **"Plan"**), and on October 19, 2004, the Court entered the final Order Confirming the Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code. The effective date of the Debtor's Plan was November 1, 2004.

5.      Talton R. Embry (**"Embry"**) was at all relevant times the 100% owner and Chairman of Magten Asset Management Corporation (**"Magten"** and together with Embry, collectively, the **"Defendants"**), and Magten is a corporation organized under the laws of Delaware, having its principal place of business at 410 Park Avenue, 14th Floor, New York, New York 10022.

6.      Magten filed a proof of claim which was designated claim number 842 by the Debtor's claims agent (the "**Magten Claim**").[1]    The Magten Claim asserts unliquidated claims against the Debtor's estate for: (i) the face amount of the approximately 40% of the Debtor's Series A 8.45% Quarterly Income Preferred Securities ("**QUIPS**") that were held by Magten as of the Petition Date; and (ii) damages

---

[1] A copy of the Magten Claim is attached hereto as <u>Exhibit A</u>. Through the discovery process it became clear that Magten did not own all of the securities referred to in its proof of claim on its own behalf, but rather that such securities were held in accounts managed by Magten for others. To date, Magten has not filed a statement pursuant to Federal Rule of Bankruptcy Procedure 2019, as required by such rule.

resulting from the alleged fraudulent transfer of the utility assets of NorthWestern Energy, LLC to NorthWestern on November 15, 2002 (the **"QUIPS Litigation Claim"**).

7.    On or about November 6, 2003, this Court entered its Order Permitting Securities Trading Upon Establishment of Ethical Wall (the **"Securities Trading Order"**). The Securities Trading Order prohibits members of the Committee (present and future, each a **"Member"**) from trading in the securities of the Debtor and its affiliates, unless and until such Member establishes and implements an ethical wall (the **"Ethical Wall"**) in accordance with the terms and conditions of the Securities Trading Order.

8.    Upon request of Magten, and by notice dated November 25, 2003, the Trustee appointed Magten to the Committee. Magten was represented on the Committee by its 100% principal, Embry.

9.    Once appointed to the Committee, Magten's fiduciary and other common law duties precluded it from trading in the securities of the Debtor and its affiliates, including, without limitation, the QUIPS, except as provided in the Securities Trading Order, which permitted limited trading upon establishment of an Ethical Wall. Magten, however, could not establish an Ethical Wall because it is 100% owned by Embry.

10.    On December 18, 2003, Embry, as Chairman of, and on behalf of, Magten, executed a Confidentiality Agreement with the Committee (the **"Confidentiality Agreement"**). Under the Confidentiality Agreement, the Defendants agreed to maintain as confidential all non-public and proprietary information provided by or to the Committee. In addition, on December 18, 2003, Embry, as Chairman of, and on behalf of, Magten, also executed a confidentiality agreement with the Debtor, pursuant to which

NY55/434737.3

the Defendants agreed to maintain as confidential all non-public and proprietary information provided by the Debtor.

**The NorthWestern Adversary Proceeding**

11.     On or about August 20, 2004, the Debtor filed a complaint against Magten and Embry, thereby commencing the adversary proceeding styled as NorthWestern Corporation v. Magten Asset Management Corporation and Talton R. Embry [Adv. Pro. No. 04-55051-JLP] (the **"NorthWestern Adversary Proceeding"**). The NorthWestern Adversary Proceeding sought subordination of Magten's claims, actual damages and equitable relief, and objected to the Magten Claim, based on Magten's alleged improper trading of the QUIPS while serving as a Member of the Committee.

12.     In the Complaint, the Debtor expressly reserved the right to amend, modify or supplement the Complaint and to object further to the Magten Claim on any and all additional factual or legal grounds.[2]

13.     On or about September 28, 2004, the Defendants filed the Motion of Magten Asset Management and Talton R. Embry to Dismiss the Complaint of NorthWestern Corporation For Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the **"Motion to Dismiss"**) in the NorthWestern Adversary Proceeding.

14.     On November 4, 2004, the Court entered a Scheduling Order that set a discovery cut-of date of January 21, 2005, and scheduled trial to commence on February 7, 2005.

---

[2] *See* Complaint, ¶ 55.

15.    On November 8, 2004, the Court entered an order denying the Motion to Dismiss.

16.    In addition, on or about November 17, 2004, Magten, joined by Law Debenture Trust Company of New York (**"Law Debenture"**), filed a Motion and Memorandum in Support of Motion for Stay of Adversary Proceeding Pending Resolution of Motion to Withdraw the Reference to Bankruptcy Court (the **"Motion for Stay"**).

17.    On December 12, 2004, the Court entered an order denying the Motion for Stay as it relates to the NorthWestern Adversary Proceeding.

18.    The parties entered into settlement discussions and proposed settlement terms were negotiated.    The Plan Committee, and Class 7 holders of claims as represented by Harbert Distressed Investment Master Fund, Ltd., have vehemently objected to the proposed settlement.

19.    In reviewing information obtained during the discovery process from the Committee's advisors, Members and Magten, the Debtor has determined that while it can prove that the Debtor provided material non-public information to the Committee's advisors, the discovery produced by the Committee does not clearly establish what information was conveyed to the Members.    As a result, it no longer makes economic sense for the Debtor to continue the NorthWestern Adversary Proceeding.[3]

---

[3] Discovery was not completed, as a result of the proposed settlement.  However, documents produced by the Committee's advisors do not identify what material, non-public confidential information was provided to the Members or when such information was provided.

**The Magten Adversary Proceeding**

20.    On April 16, 2004, Magten and Law Debenture filed their Complaint (the "**Magten Complaint**") [Adv. Pro. Dkt. No. 1] to Avoid the Transfer of Assets of Clark Fork and Blackfoot LLC (f/k/a NorthWestern Energy, LLC) to NorthWestern Corporation, thereby commencing the adversary proceeding styled as Magten Asset Management Corporation & Law Debenture Trust Company of New York v. NorthWestern Corporation [Adv. Pro. No. 04-53324-JLP] (the "**Magten Adversary Proceeding**").

21.    The Magten Complaint sought, inter alia, to avoid the transfer of assets of Clark Fork and Blackfoot LLC (f/k/a NorthWestern Energy) pursuant to what has been referred to in the Debtor's bankruptcy proceedings generally as the "going flat" transaction.

22.    On or about October 4, 2004, Magten and Law Debenture filed their First Amended Complaint to Avoid the Transfer of Assets of Clark Fork and Blackfoot LLC (f/k/a NorthWestern Energy, LLC) (the "**Amended Magten Complaint**") [Adv. Pro. Dkt. No. 27].

23.    Adjudication of the Magten Adversary Proceeding will essentially serve as a proceeding to determine the validity of the QUIPS Litigation Claim asserted in the Magten Claim, wherein Magten asserts that it is entitled to damages resulting from the alleged fraudulent transfer of the utility assets of NorthWestern Energy, LLC to NorthWestern on November 15, 2002.

24.    On or about November 19, 2004, NorthWestern filed its Answer, Affirmative Defenses and Counterclaims to the Amended Magten Complaint (the **"NorthWestern Answer"**) [Adv. Pro. Dkt. No. 41].

25.    The Debtor's objection to the Magten Claim (the **"Objection"**) is set forth in Count III of the counterclaims in the NorthWestern Answer.  The Objection includes both an objection to the QUIPS Litigation Claim[4] as well as an objection to the Magten Claim based on alleged violations of the Securities Trading Order and Confidentiality Agreement.

26.    The Debtor expressly reserved the right to amend, modify or supplement its counterclaims and to further object to the Magten Claim on any and all additional factual or legal grounds.[5]

## SUMMARY OF RELIEF REQUESTED

27.    After reviewing the evidence obtained during discovery and considering the litigation costs to the bankruptcy estate, the Debtor has determined that as a result of its review of the documents produced by the Committee's advisors, it is no longer cost effective to pursue the NorthWestern Adversary Proceeding because the records do not establish when or what material, non-public information the Committee's advisors disclosed to the Committee.  The Debtor seeks an order from this Court allowing the Debtor to voluntarily dismiss the NorthWestern Adversary Proceeding, **with prejudice**, pursuant to Rule 7041(a)(2) of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**) and Fed. R. Civ. P. 41(a)(2), with each party to bear its own fees and costs.

---

[4] *See* NorthWestern Answer, ¶ 42.

[5] *See* NorthWestern Answer, ¶¶ 41-45, 54.

NY55/434737.3

28.     Further, the Debtor seeks an order granting the Debtor leave to amend the NorthWestern Answer in the Magten Adversary Proceeding and to withdraw its counterclaims asserted therein, while preserving the Objection to the QUIPS Litigation Claim contained in paragraph 42 of the NorthWestern Answer and the Debtor's right to amend or modify the NorthWestern Answer with respect to the Objection to the QUIPS Litigation Claim.

## BASIS FOR RELIEF

### A.  Dismissal of the NorthWestern Adversary Proceeding Will Not Result in Prejudice to the Defendants

29.     The Debtor filed the NorthWestern Adversary Proceeding based on its good faith belief that the Defendants had engaged in inappropriate, and possibly illegal, trading of the Debtor's QUIPS based on confidential, non-public, information about the Debtor that the Defendants allegedly received as a Member of the Committee.

30.     This Court denied the Motion to Dismiss finding that the Debtor had alleged causes of action under F. R. Civ. P. 12(b)(6), made applicable to adversary proceeding by Bankruptcy Rule 7012(b).[6] After assessing the evidence produced by the Committee's advisors, Members and Magten, the Debtor has determined that it is no longer cost effective to pursue the subordination claims asserted in the NorthWestern Adversary Proceeding because the documents produced by the Committee's advisors fail to identify when and what material, non-public information provided by the Debtor to the Committee's advisors was communicated by the Committee's advisors to the Members.

---

[6] *See* Order entered on November 8, 2004 in the NorthWestern Adversary Proceeding [Adv. Pro. Dkt. No. 15].

NY55/434737.3

As a result, the Debtor seeks to voluntarily dismiss the NorthWestern Adversary Proceeding, **with prejudice,** pursuant to Bankruptcy Rule 7041(a)(2).

31. Pursuant to Fed. R. Civ. P. 41(a)(2), made applicable to adversary proceedings by Bankruptcy Rule 7041(a)(2), when a defendant has filed an answer to a complaint, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." Bankruptcy Rule 7041(a)(2); Fed. R. Civ. P. 41(a)(2).

32. "Courts generally agree that Rule 41(a)(2) motions should be allowed unless defendant will suffer some prejudice other than the mere prospect of a second lawsuit," and the Third Circuit endorses a liberal view toward granting Rule 41(a)(2) dismissals. *See DuToit v. Strategic Minerals Corp.*, 136 F.R.D. 82 (D. Del. 1991); *Reach & Assoc., P.C. v. Dencer*, No. CIV.A. 02-1355, 2004 WL 253487, at *1, 2 (D. Del. Feb. 9, 2004) (citations omitted); *In re Paoli RR. Yard PCB Litig.*, 916 F.2d 829, 863 (3d Cir. 1990).[7]

33. Further, "[t]he purpose of Rule 41(a)(2) is to prevent [voluntary] dismissals that prejudice an opposing party and to permit the court to impose curative conditions it deems necessary," and, "[o]rdinarily, a court should grant a Rule 41(a)(2) dismissal unless the defendant will suffer plain legal prejudice." *Reach & Assoc., P.C.*, 2004 WL 253487, at *1; *Spring City Corp. v. American Bldgs. Co.*, Nos. CIV.A. 97-8127, 98-105, 1999 WL 1212201, at *1 (E.D. Pa. Dec. 17, 1999).

34. When determining whether a party will suffer prejudice, the court should consider " 1) 'any excessive and duplicative expense of a second litigation; 2) the effort

---

[7] *See also Westinghouse Elec. Corp. v. United Elec. Radio & Mach. Workers*, 194 F.2d 770, 771 (3d Cir. 1952), *cert. denied*, 343 U.S. 966 (1952); *Ockert v. Union Barge Line Corp.*, 190 F.2d 303 (3d Cir. 1951).

and expense incurred by a defendant in preparing for trial; 3) the extent to which the pending litigation has progressed; and 4) the claimant's diligence in moving to dismiss.'" *See Reach*, 2004 WL 253487, at *1 (quoting *Spring City*, 1999 WL 1212201, at *1).

35.    After assessing the discovery evidence produced by the Committee's advisors, Members and Magten, the Debtor has determined that it is not in the best interest of the Debtor's estate to pursue the NorthWestern Adversary Proceeding.

36.    Because the Debtor seeks approval to dismiss the Adversary Proceeding with prejudice, the Defendants cannot be prejudiced in any way by costs as well as further litigation of the claims and causes of action asserted in the NorthWestern Adversary Proceeding as the Debtor, upon review of the evidence before it, has concluded that dismissal with prejudice is appropriate so as to fully and finally adjudicate the claims and causes set forth in the NorthWestern Adversary Proceeding.

37.    As a result, the Defendants cannot possibly be prejudiced and the relief requested is wholly appropriate.

**B.  Granting Leave to Amend the NorthWestern Answer Will Not Prejudice Magten or Law Debenture in Any Way**

38.    While dismissing the NorthWestern Adversary Proceeding with prejudice is of importance to both the Debtor and the Defendants, so as to eliminate additional expense and finally adjudicate the claims set forth therein, the Debtor is cognizant of the need to amend the NorthWestern Answer in the Magten Adversary Proceeding to be consistent with the request for dismissal with prejudice and to preserve the Debtor's claim objection to the QUIPS Litigation Claim.

39.    Federal Rule of Civil Procedure 15(a), made applicable to adversary proceedings by Bankruptcy Rule 7015(a), mandates that leave to amend a pleading "shall

be [granted] freely when justice so requires," and that "motions to amend pleadings should be liberally granted." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (citing *Adams v. Gould Inc.*, 739 F.2d 858, 867-68 (3d Cir. 1984)).

40.    Further, the Supreme Court has stated:

> In the absence of any apparent or declared reason - - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. - - the leave sought should … be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

41.    In addition, the Third Circuit "has often held that, absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless 'denial [can] be grounded in bad faith or dilatory motive, *truly undue or unexplained delay*, repeated failure to cure deficiency by amendments previously allowed or futility of amendment.'" *Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173 (3d Cir. 1994) (quoting *Bechtel v. Robinson*, 886 F.2d 644, 652-53 (3d Cir. 1989) (emphasis in original).

42.    The burden is placed firmly on the party opposing the amendment to prove that it will be unfairly prejudiced.  This is a "heavier burden than merely claiming prejudice, [the party opposing the amendment] must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the [movant's] amendments been timely." *Heyl & Patterson Int'l Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981); *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000).

43.    The Debtor is seeking leave to amend the NorthWestern Answer in order to withdraw the counterclaims, other than its Objection to the QUIPS Litigation Claim,

asserted therein that are identical to the claims that the Debtor seeks to have dismissed in the NorthWestern Adversary Proceeding.

44.     The Debtor's proposed First Amended Answer, Affirmative Defenses and Withdrawal of Counterclaims to First Amended Complaint does not contain any additional answers, affirmative defenses or counterclaims beyond those alleged in the NorthWestern Answer, thus, neither Magten nor Law Debenture will be prejudiced or burdened if leave is granted.[8]

45.     The Debtor's request for leave is not grounded in bad faith or dilatory motive, and the proposed amendments to the NorthWestern Answer will not result in undue or unexplained delay to either Magten or Law Debenture.

46.     Magten and Law Debenture will not be disadvantaged, prejudiced or burdened if leave is granted to the Debtor to amend the NorthWestern Answer.

## REQUEST FOR RELIEF

47.     Based on the foregoing, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto, (i) allowing the Debtor to voluntarily dismiss the NorthWestern Adversary Proceeding, with prejudice, pursuant to Bankruptcy Rule 7041(a)(2) and Fed. R. Civ. P. 41(a)(2), with each party to bear its own fees and costs, (ii) permitting the Debtor to amend the NorthWestern Answer in the Magten Adversary Proceeding to delete the counterclaims asserted therein, while preserving the Debtor's Objection to the QUIPS Litigation Claim therein,[9] and (iii)

---

[8] A copy of the Debtor's proposed First Amended Answer, Affirmative Defenses and Withdrawal of Counterclaims to First Amended Complaint is attached hereto as Exhibit B. In addition, a copy of the NorthWestern Answer is attached hereto as Exhibit C. A blackline copy of the proposed amended answer comparing it to the NorthWestern Answer is attached hereto as Exhibit D.

[9] See NorthWestern Answer, ¶ 42.

preserving the Debtor's right to amend or modify the Objection in the NorthWestern Answer.[10]

## NOTICE

48.    Notice of this Motion has been provided to: (i) the Trustee, (ii) counsel for the Plan Committee, (iii) counsel for Law Debenture, (iv) counsel for Embry, and (v) counsel for Magten.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice of the Motion is required.

## NO PRIOR REQUEST

49.    No prior request for the relief sought herein has been made to this or any other Court.

[CONCLUDED ON NEXT PAGE]

---

[10] *See* Complaint ¶ 55, wherein the Debtor expressly reserved the right to amend, modify or supplement the Complaint and Objection and to object further to the Magten Claim on any and all additional factual or legal grounds.

- 14 -

## <u>CONCLUSION</u>

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting the relief requested herein, substantially in the form attached hereto, or in such other form that the Court may deem appropriate based on the foregoing.

Dated: February 24, 2005

NORTHWESTERN
CORPORATION

By its attorneys,

GREENBERG TRAURIG, LLP

By: _____

Scott D. Cousins (No. 3079)
William E. Chipman, Jr. (No. 3818)
Dennis A. Meloro (No. 4435)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801
(302) 661-7000 (telephone)

- and -

Jesse H. Austin, III, Esquire
Karol K. Denniston, Esquire
PAUL, HASTINGS, JANOFSKY
& WALKER LLP
600 Peachtree Street, N.E., 24th Floor
Atlanta, GA 30308
(404) 815-2400 (telephone)

*CO-COUNSEL FOR REORGANIZED
DEBTOR*

NY55/434737.3

**<u>EXHIBIT X</u>**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NORTHWESTERN CORPORATION,<br><br>Debtor. | ) Chapter 11<br>)<br>) Case No. 03-12872 (JLP)<br>)<br>)<br>)<br>) |
| MAGTEN ASSET MANAGEMENT CORPORATION<br>& LAW DEBENTURE TRUST COMPANY OF NEW<br>YORK,<br>Plaintiffs,<br>v.<br><br>NORTHWESTERN CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>) Adv. No. 04-53324 (JLP)<br>)<br>)<br>)<br>)<br>) |
| NORTHWESTERN CORPORATION,<br><br>Plaintiff,<br>v.<br><br>MAGTEN ASSET MANAGEMENT CORPORATION,<br>Defendant. | )<br>)<br>)<br>)<br>) Adv. No. 04-55051 (JLP)<br>)<br>)<br>)<br>) |

**LIMITED OBJECTION OF MAGTEN ASSET MANAGEMENT CORPORATION
AND TALTON R. EMBRY TO THE JOINT MOTION (I) FOR ORDER ALLOWING
THE DEBTOR TO DISMISS ITS COMPLAINT AGAINST MAGTEN ASSET
MANAGEMENT CORPORATION AND TALTON R. EMBRY, WITH PREJUDICE,
PURSUANT TO RULE 7041(a) OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE AND RULE 41(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE,
AND (II) FOR LEAVE TO AMEND ANSWER AND AFFIRMATIVE DEFENSES AND
TO WITHDRAW COUNTERCLAIMS TO FIRST AMENDED COMPLAINT TO
AVOID THE TRANSFER OF ASSETS OF CLARK FORK AND BLACKFOOT LLC
[ADV. DOCKET NOS. 63 & 89]**

Magten Asset Management Corporation ("Magten") by and through its undersigned

counsel, submits this limited objection (the "Limited Objection") to the motion (the "Motion")

for order allowing NorthWestern Corporation ("NorthWestern") to dismiss its complaint against

1

Magten and Talton R. Embry ("Embry", together with Magten, the "Defendants"), with prejudice, pursuant to Rule 7041(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 41(a) of the Federal Rules of Civil Procedure, and (ii) for leave to amend answer and affirmative defenses and to withdraw counterclaims to first amended complaint to avoid the transfer of assets of Clark Fork and Blackfoot LLC, and respectfully states as follows:

## PRELIMINARY STATEMENT

1.     By its Motion, NorthWestern is seeking an order allowing it to voluntarily dismiss the adversary proceeding it commenced against Magten and Embry (the "NorthWestern Adversary Proceeding"). While Magten does not object to the withdrawal of the NorthWestern Adversary Proceeding with prejudice, Magten objects to the provision of the proposed order that provides for "each party bear to its own fees." Because the NorthWestern Adversary Proceeding was commenced for the sole purpose of harassing Magten and its principal, Mr. Embry, Magten and Mr. Embry request that the order dismissing the complaint in the NorthWestern Adversary Proceeding preserve Magten's rights to pursue all fees and expenses incurred by Magten and Mr. Embry in defending against, and preparing for, the adversary proceeding.[1]

2.     From the outset, it has been apparent that the allegations in the complaint (the "Complaint") were baseless and wholly without merit. Nearly all of the allegations were asserted "upon information and belief," even though NorthWestern knew what information it provided to the Official Committee of Unsecured Creditors (the "Committee") and it could easily have ascertained what, if any, confidential information NorthWestern or the Committee provided

---

[1]     As this Court is aware, on February 22, 2005, Magten and the Indenture Trustee filed a joint motion for an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure approving a settlement between NorthWestern, Magten and the Indenture Trustee (the "9019 Motion"). In the event that this Court approves the 9019 Motion, Magten will withdraw this Limited Objection as the equity distribution being made to Magten pursuant to the terms of the settlement is intended to compensate Magten for fees, costs and risks incurred by Magten in defending this frivolous litigation.

2

to the Defendants. As the original source of any confidential information provided to the Defendants, NorthWestern had the burden of identifying the material non-public information upon which the Defendants are said to have traded. Instead, NorthWestern plead its allegations "upon information and belief" and took no steps during the discovery process to learn the truth of its allegations.

      3.      Despite alleging that the Committee and its advisors provided material non-public information to Magten, after filing the Complaint, NorthWestern never sought any documentary or testimonial discovery from the Committee or its professionals. NorthWestern took no action to ensure that it received the Committee's documents and postponed the deposition of Mr. Embry on numerous occasion so as to avoid and delay the trial process. It was only through Magten's discovery efforts to subpoena and depose the Committee's professionals and the individual Committee members that NorthWestern learned that its allegations lacked merit. Likewise, when the Committee's professionals refused to provide documents responsive to Magten's subpoenas, NorthWestern made no effort to challenge the assertion of privilege. NorthWestern's lack of a reasonable basis to bring its Complaint combined with its discovery efforts and lack of prosecution, shows that the NorthWestern Adversary Proceeding was commenced simply as a harassment tactic designed to punish a vocal, objecting creditor that was vigorously pursuing its rights and remedies against the Debtor.

      4.      As a result of NorthWestern's vexatious conduct, the Defendants respectfully request that the order dismissing the Complaint preserve Defendants' rights to seek attorneys' fees and costs incurred in connection with the NorthWestern Adversary Proceeding.

3

## BACKGROUND

5.     As this Court is familiar with the facts of the NorthWestern Adversary Proceeding and the procedural history leading up to the scheduled trial date of February 7, 2005, Magten will not burden the Court by restating the comprehensive background of the case. Rather, set forth below are the pertinent facts with respect to the Limited Objection.

6.     On August 20, 2004, NorthWestern initiated the NorthWestern Adversary Proceeding against the Defendants, seeking damages and equitable relief relating the Defendants' trading activities regarding the QUIPS. The primary allegation in the Complaint is that the Defendants traded QUIPS while members of the Committee and that NorthWestern alleged, on information and belief, that Magten had material, non-public information when it made the trades in question.

7.     On September 28, 2004, Magten filed the Motion to Dismiss arguing, among other things, that the Complaint is meritless as evidenced by the fact that the Complaint was plead "upon information and belief," and included a declaration of Mr. Embry declaring that he had no material, non-public information prior to attending Magten's first Committee meeting. NorthWestern filed a reply on October 26, 2004, arguing that it requires discovery from the Committee to prove the allegations in the Complaint.

8.     On November 2, 2004, the Court held a status conference with respect to both the fraudulent conveyance litigation and the NorthWestern Adversary Proceeding. At that status conference, the Court stayed the fraudulent conveyance proceeding and set forth an expedited discovery schedule for the NorthWestern Adversary Proceeding with a trial date of February 7, 2005.

4

9.      Thereafter, on November 8, 2004, the Court entered an order denying the Motion to Dismiss wherein the Court explained that NorthWestern should have an opportunity to offer evidence in support of its claims.

10.     In conducting discovery in the NorthWestern Adversary Proceeding, the Defendants served document requests and deposition notices on NorthWestern and served subpoenas on the following: (i) NorthWestern's counsel; (ii) NorthWestern's financial advisor; (iii) counsel to the Committee; (iv) financial advisor to the Committee; and (v) eight individual members of the Committee who served on the Committee during Magten's membership.

11.     The only discovery conducted by NorthWestern in connection with the NorthWestern Adversary was the service of a document request and deposition notice on the Defendants and the service of subpoenas on certain of Magten's brokers that handled various purchases of QUIPS made by Magten.

12.     Although the Court's decision denying the Motion to Dismiss provided NorthWestern with the opportunity to conduct extensive discovery to prove the allegations in its Complaint, NorthWestern took no action during the course of discovery to obtain the relevant information from the Committee. While NorthWestern served its discovery requests before Defendants served their discovery requests, NorthWestern chose not to seek discovery from the Committee or its members despite the fact that the allegations in the Complaint wholly relied upon what, if any, material information Defendants received from the Committee.

13.     Both NorthWestern and the Committee refused to comply with the subpoenas served by Magten and filed separate motions seeking protective orders from the Court.  In response to both NorthWestern's and the Committee's refusal to comply with discovery demands, on January 27, 2005, the Court held a teleconference at Magten's request in order to

5

resolve discovery disputes and compel both NorthWestern and the Committee to provide documents responsive to Magten's subpoenas.

14.    Even after the Court ordered the Committee to comply with the subpoenas, the Committee continued its refusal to provide responsive documents by asserting claims of privilege and NorthWestern made no effort to challenge the Committee's assertion of privilege. At Magten's request, the Court held another teleconference on January 20, 2005 to determine issues of Committee privilege.

15.    In the course of conducting discovery for the trial, NorthWestern solicited Magten to make an offer to settle all pending claims and causes of actions. In response, Magten submitted an initial settlement proposal to NorthWestern that NorthWestern took under advisement. After two weeks of extensive settlement discussions, on January 27, 2005, the parties reached an agreement in principal concerning the settlement of the claims of NorthWestern, the Indenture Trustee, Magten and the holders of the QUIPS that did not accept NorthWestern's Plan. NorthWestern drafted the settlement agreement, put it in final form, obtained executed copies of the settlement agreement from the parties, and on February 10, 2005, presented the terms of the settlement to the Court.

16.    As a result of the of the settlement reached between the parties, NorthWestern, filed a notice with the Court canceling the trial in the NorthWestern Adversary Proceeding.

17.    However, after the trial date was cancelled and the settlement agreement was presented to this court and made public through the issuance by NorthWestern of a press release, on February 16, 2004, NorthWestern elected to disavow the binding settlement agreement and

6

advised Magten and the Indenture Trustee by letter that it would not honor the terms of the agreement.[2]

18.    At the direction of the Court, on February 22, 2005, Magten and the Indenture Trustee filed the 9019 Motion, seeking approval of the settlement.

## LIMITED OBJECTION

19.    By its motion, the Debtor is seeking to withdraw the Complaint with prejudice pursuant to Bankruptcy Rule 7041(a)(2), and has requested that each party bear its own fees and costs. See Motion at ¶ 27.   The Defendants submit this Limited Objection because Defendants should be permitted to seek to have NorthWestern pay the fees and expenses incurred by the Defendants as a result of NorthWestern's vexatious conduct and obvious harassment of the Defendants in filing the frivolous Complaint.

20.    Rule 41(a)(2) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Bankruptcy Rule 7041, provides:

> an action shall not be dismissed at the plaintiff's instance save
> upon order of the court and upon such terms and conditions as the
> court deems just and proper.

Fed. R. Civ. P. 41(a)(2).

21.    Pursuant to Bankruptcy Rule 7041, NorthWestern's request for a dismissal of the NorthWestern Adversary Proceeding should be conditioned upon "such terms that it deems just and proper," including the award of fees and costs to Defendants. See In re Mizrahi, 179 B.R. 322 (Bankr. M.D. Fla 1995) (in dismissing the complaint with prejudice, the court allowed the defendants to pursue an award of fees and costs).   "While costs are not always required as a condition for a voluntary dismissal, it is usually considered necessary for the protection of the defendant." Peifer v. Royal Bank of Canada, 121 F.R.D. 39, 41 (D. Pa., 1986)(citing Puerto Rico Maritime Shipping Authority v. Leith, 668 F.2d 46, 51 (1st Cir. 1981)). Cf. Colombrito v.

---

[2]    In addition to filing a meritless Complaint, NorthWestern's attempt to breach the settlement is a further example of NorthWestern's vexatious conduct.

Kelly, 764 F.2d 122, 133-134 (2d Cir., 1985)(citations omitted) (when a lawsuit is voluntarily dismissed with prejudice under Fed. R. Civ. P. 41(a)(2), courts have founds that awarding attorney's fees may be appropriate (i) when there is independent statutory authority for such an award or (ii) under exceptional circumstances); Dorfsman v. Law Sch. Admission Council, Inc., 2001 U.S. Dist. LEXIS 24044, *9-10 (D. Pa. 2001) (citations omitted)(holding that when an action is dismissed with prejudice, a court may award attorney's fees under exceptional circumstances); 28 U.S.C.1927 (an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct").

22.     Prior to commencing the adversary, NorthWestern had obtained documents from Magten concerning its trades in the QUIPS. Their information made it clear that Magten made no trades from the time it attended its first committee meeting until after Magten was no longer on the Committee and NorthWestern had filed its plan and disclosure statement with the Court and its quarterly report with the Securities and Exchange Commission. In light of the facts, NorthWestern should have undertaken a minimal pretrial investigation to determine whether there was any material, non-public information in Magten's possession when it traded. Instead of requesting such information from the Committee and its professionals, NorthWestern filed a baseless complaint to harass Magten.

23.     After filing a Complaint with unsubstantiated allegations, NorthWestern chose to ignore Defendants' sworn statements in its declaration in support of the Motion to Dismiss, that "as of December 17, 2003, Magten was not in possession of any material, non-public information regarding the Debtor and its operations." See Exhibit 1 attached hereto, at ¶ 5. Thereafter, during the course of discovery, NorthWestern (i) failed to subpoena the Committee or its professionals, and (ii) objected to producing documents in response to Defendants requests.

24.     It was only through Magten's discovery efforts that NorthWestern learned what information the Committee's professionals provided to its members. See Motion at ¶19.

8

Magten, not NorthWestern, deposed the Committee's professionals and sought to compel the Committee to comply with the subpoenas and ask the Court to waive the Committee's privilege. As a plaintiff filing a complaint "upon information and belief," it was NorthWestern's burden to take such actions and not the Defendants. Nevertheless, NorthWestern did little to prosecute it claims.

25.    NorthWestern's conduct in filing a complaint on "information and belief" and then its lack of diligence in discovery makes it patently obvious that the NorthWestern Adversary Proceeding was brought in bad faith, for oppressive purposes. NorthWestern's actions in pursuing a frivolous litigation resulted in needless waste of time and expense for all parties involved. As a result, Defendants should have the right to seek fees and expenses incurred in defending against the allegations in the Complaint.

### CONCLUSION

**WHEREFORE**, Magten respectfully requests entry of an order, substantially in the form of Exhibit 2 attached hereto, preserving Defendants rights to seek fees and costs incurred in connection with the NorthWestern Adversary Proceeding, and granting such other relief as this Court deems just and proper.

Dated: March 7, 2005            **BLANK ROME LLP**

Mark J. Packel (DE No. 4048)
Elio Battista, Jr. (DE No. 3814)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 425-6400
Facsimile:    (302) 425-6464

-and -

**FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP**
Bonnie Steingart
Gary L. Kaplan
One New York Plaza
New York, NY 10004
Telephone:    (212) 859-8000
Facsimile:    (212) 859-4000

Counsel for Magten Asset Management
Corporation

10

120087.01600/40151367v1

**EXHIBIT Y**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| NORTHWESTERN CORPORATION, | ) | |
| | ) | Case No. 03-12872 (JLP) |
| Reorganized Debtor. | ) | |
| | ) | |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 04-55051 (JLP) |
| | ) | |
| MAGTEN ASSET MANAGEMENT | ) | Re: Docket No. 89 |
| CORPORATION, and TALTON R. | ) | |
| EMBRY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### ORDER ALLOWING THE DEBTOR TO DISMISS ITS COMPLAINT AGAINST MAGTEN ASSET MANAGEMENT CORPORATION AND TALTON R. EMBRY, WITH PREJUDICE, PURSUANT TO RULE 7041(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND RULE 41(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Plaintiff Northwestern Corporation has filed a motion for order allowing the Plaintiff to

dismiss the above-captioned adversary proceeding pursuant to Rule 7041(a) of the Federal Rules

of Bankruptcy Procedure and Rule 41(a) of the Federal Rules of Civil Procedure [Docket No. 89]

(the "Motion"); and Defendant Magten Asset Management filed a limited objection consenting to

the dismissal, but reserving any rights to seek attorney's fees and costs incurred in connection

with this adversary proceeding [Docket No. 93]; and it appearing that the Court has jurisdiction

over the Motion pursuant to 28 U.S.C. § 1334 and that it is a core matter pursuant to 28 U.S.C.

§ 157(b)(2); and the Court having determined that the relief requested in the Motion is in the best

interests of the Debtor, its estate, its creditors and other parties-in-interest; and it appearing that

due notice of the Motion has been provided and that no other further notice need be given; and

sufficient cause appearing therefore; it is hereby

**ORDERED**, that the Motion is granted as modified by this Order; and it is further

**ORDERED**, that the above-captioned adversary proceeding is hereby dismissed, with

prejudice, pursuant to Rule 7041(a) of the Federal Rules of Bankruptcy Procedure and Rule 41(a)

of the Federal Rules of Civil Procedure, and it is further

**ORDERED**, that nothing shall prejudice Defendants' rights to pursue an award of for

attorney's fees and costs incurred in connection with the above-captioned adversary proceeding,

and it is further

**ORDERED**, that this Court shall retain jurisdiction to hear and determine all matters

arising from the implementation of this Order.

Dated: March 9, 2005

Honorable John L. Peterson
United States Bankruptcy Judge