## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>NORTHWESTERN CORPORATION<br><br>Debtor. | ) Chapter 11<br>)<br>) Case No. 03-12872<br>) (KJC)<br>) |
| | |
| MAGTEN ASSET MANAGEMENT CORPORATION<br>AND TALTON R. EMBRY,<br>Appellants,<br>v.<br>NORTHWESTERN CORPORATION,<br>Appellee. | ) Adv. Pro. No<br>) 04-55051 (JLP)<br>)<br>) Civil Action No.<br>) 05-00548 (JJF)<br>) |

## REPLY BRIEF OF APPELLANTS

Bonnie Steingart
Gary L. Kaplan
John W. Brewer
FRIED, FRANK, HARRIS, SHRIVER
   & JACOBSON LLP
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

Dale R. Dubé (No. 2863)
Bonnie Glantz Fatell (No. 3809)
David W. Carickhoff, Jr. (No. 3715)
BLANK ROME LLP
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

Counsel for Appellants Magten
Asset Management Corporation
and Talton R. Embry

Dated: March 30, 2007
Wilmington, Delaware

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................1

ARGUMENT.......................................................................................................4

I.    THE BANKRUPTCY COURT'S FINDINGS OF FACT SHOULD BE
REVERSED BY THIS COURT....................................................................4

    A.    NorthWestern Failed to Pursue Meaningful Discovery to
Substantiate the Allegations Raised in Its Complaint. ....................5

    B.    NorthWestern Knew Appellants Could Not Be in Possession of
Confidential Information Material to the Sale or Purchase of
QUIPS When it Engaged in the December Transactions and the
Post-Committee Transactions..........................................................7

    C.    NorthWestern Asserted Claims for Which It Lacked Standing. .....8

II.    THE BANKRUPTCY COURT'S ERRONEOUS CONCLUSIONS OF
LAW COMPEL REVERSAL BY THIS COURT. .....................................9

    A.    The Bankruptcy Court Erred in Holding that Appellants Were Not
the Prevailing Party. ........................................................................9

    B.    The Bankruptcy Court Erred in Refusing to Exercise its Authority
to Award Appellants Fees and Costs..............................................11

    C.    The Bankruptcy Court Erred in Finding that the Trading Order
Prohibited Appellants From Trading in NorthWestern's
Securities. .......................................................................................14

III.    THE BANKRUPTCY COURT'S REJECTION OF APPELLANTS'
FEES AND COSTS AS UNREASONABLE WAS AN ABUSE OF
DISCRETION AND THIS COURT SHOULD REMAND THIS CASE
FOR A DETERMINATION AS TO REASONABLENESS....................17

CONCLUSION ..................................................................................................20

i

## TABLE OF AUTHORITIES

### FEDERAL CASES

Beer v. John Hancock Life Insurance Co., 211 F.R.D. 67 (N.D.N.Y. 2002) ...................... 9

Behrle v. Olshansky, 139 F.R.D. 370 (W.D. Ark. 1991) ..................................... 14, 14 n. 6

Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485 (1984) .......... 1, 4, 13

Calaway Golf Co. v. Dunlop Slazenger, 384 F. Supp. 735 (D. Del. 2005) ...................... 10

Cantrell v. International Brotherhood of Electric Workers, Local 2021, 69 F.3d
    456 (10th Cir. 1995) .................................................................................................... 9

Chambers v. NASCO, Inc., 501 U.S. 32 (1991) .................................................................. 11

Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured
    Claims, and Committee of Creditors Holding Unsecured Claims as Estate
    Representative of Papercraft Corp., 160 F.3d 982 (3d Cir. 1998) .................................. 9

D'Auria v. Minniti (In re Minniti), 242 B.R. 843 (Bankr. E.D. Pa. 2000) ........................ 12

DeKalb Genetics Corp. v. Pioneer Hi-Bred International, 2002 U.S. Dist. LEXIS
    10628 (N.D. Ill. June 13, 2002) .................................................................................... 10

Dorfsman v. Law Sch. Admission Council, Inc., 2001 U.S. Dist. LEXIS 24044
    (E.D. Pa. Nov. 28, 2001) .............................................................................................. 13

Esquivel v. Arau, 913 F. Supp. 1382 (C.D. Cal. 1996) ...................................................... 14

Fink v. Gomez, 239 F.3d 989 (9th Cir. 2001) .................................................................... 12

In re Federated Dep't Stores, Inc., 1991 Bankr. LEXIS 288 (Bankr. S.D. Ohio
    Mar. 7, 1991) ................................................................................................................. 16

Inwood Laboratories v. Ives Laboratories, 456 U.S. 844 ................................................. 1, 4

John Evans Sons, Inc. v. Majik-Ironers, Inc., 95 F.R.D. 186 (E.D. Pa. 1982) .................. 13

J.T. Gibbons, Inc. v. Crawford Fitting Co., 102 F.R.D. 73 (E.D. La. 1984) .............. 18 n. 7

Kona Enterprises v. Estate of Bishop, 229 F.3d 877 (9th Cir. 2000) ................................. 10

Meder v. Everest & Jennings, Inc., 553 F.Supp. 150 (E.D. Mo. 1982) ...................... 18 n. 7

In re Paoli R.R. Yard PCB Litig., 221 F.3d 449 (3d Cir. 2000)................................ 18 n. 7

Presbyterian and Reformed Publishing Co. v. Commissioner of Internal Revenue,
      743 F.2d 148 (3d Cir. 1984) ...........................................................................................4

Pullman-Standard, Division of Pullman v. Swint, 456 U.S. 273 (1982)................ 1, 12, 13

Sassower v. Field, 973 F.2d 75 (2d Cir. 1992)....................................................................12

Schwarz v. Folloder, 767 F.2d 125 (5th Cir. 1985)...........................................................10

Sheets v. Yamaha Motors Corp., U.S.A., 891 F.2d 533 (5th Cir. 1990)...................... 9, 10

Steinert v. Winn Group, Inc., 440 F.3d 1214 (10th Cir. 2006) .........................................13

United States v. Singer Manufacturing Co., 374 U.S. 174 (1963) ......................................1

United States v. Spallone, 399 F.3d 415 (2d Cir. 2005)...............................................3 n. 3

Viking Associates v. Drewes (In re Olson), 120 F.3d 98 (8th Cir. 1997) ...................... 8, 9

York v. Ferris State University, 36 F. Supp. 2d 976 (W.D. Mich. 1998)...........................13

Zenith Insurance Co. v. Breslav, 108 F.3d 205 (9th Cir. 1997) .......................................10

Zucker v. Katz, 1990 U.S. Dist. LEXIS 1748 (S.D.N.Y. Feb. 21, 1990)...........................14

## FEDERAL STATUTES

11 U.S.C. § 503(b)(4) .........................................................................................................19

11 U.S.C. § 1125 ...................................................................................................................8

11 U.S.C. § 330 ...................................................................................................................19

28 U.S.C. § 1920 ..........................................................................................................passim

Fed. R. Bankr. P. 2004..........................................................................................................5

Fed. R. Bankr. P. 7041............................................................................................ 11, 13, 14

Fed. R. Bankr. P. 7041(a) ...................................................................................................11

Fed. R. Bankr. P. 7054(b) .............................................................................................13, 14

Fed. R. Civ. P. 41 .............................................................................................13, 14, 14 n.6

Fed. R. Civ. P. 41(a) ................................................................................................... 13,14 n.6

Fed. R. Civ. P. 41(d) .................................................................................................. 14, 14 n.6

Fed. R. Civ. P. 52(a) ......................................................................................................... 13

Fed. R. Civ. P. 54(d) ......................................................................................................... 13

Securities Act Rule 405, 17 C.F.R. § 230.405 ..................................................................... 8

Delaware Local Bankruptcy Rule 2016-2 .......................................................................... 19

## MISCELLANEOUS

Alan N. Resnick and Henry J. Sommer, Collier on Bankruptcy, ¶ 503.11[5] (15th
    ed. rev. 2006) ............................................................................................................... 19

1-5 Collier Business Workout Guide P. 5.04 ...................................................................... 16

Herbert S. Wander, Chinese Walls for Creditors' Committees, 48 Bus. Law. 747
    (1993) ......................................................................................................................... 16

Appellants Magten Asset Management Corporation ("Magten") and Talton R. Embry ("Embry") respectfully submit this reply brief in further support of their appeal from the Bankruptcy Court's memorandum of decision and order denying Appellants' motion (the "Fees and Expenses Motion") for fees and expenses incurred in connection with the adversary proceeding (the "Adversary Proceeding") filed by appellee NorthWestern Corporation ("NorthWestern") against Appellants that ultimately was abandoned and voluntarily dismissed by NorthWestern with prejudice.[1]

## PRELIMINARY STATEMENT

The Bankruptcy Court's decision is riddled with (i) wholly erroneous findings of facts and (ii) patently incorrect legal analysis. Given the nature and scope of these errors, there is no basis upon which Bankruptcy Court's decision can be affirmed. Indeed, because the Bankruptcy Court's findings were predicated on erroneous legal principles, Supreme Court precedent mandates plenary review. See Inwood Labs. v. Ives Labs., 456 U.S. 844, 855 n.15 ("if the trial court bases its findings upon a mistaken impression of applicable legal principles, the reviewing court is not bound by the clearly erroneous standard"); Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 501 n.16 (1984); see also Pullman-Standard, Div. of Pullman v. Swint, 456 U.S. 273, 287 (1982); United States v. Singer Manufacturing Co., 374 U.S. 174, 194 n.9 (1963).

As discussed below, the Bankruptcy Court rejected applicable and binding precedent that a dismissal with prejudice confers prevailing party status on a defendant. Further, the Bankruptcy Court premised its decision that Appellants were not the prevailing party on a basic

---

[1]    Capitalized defined terms used herein have the same meaning as set forth in Appellants' opening brief on appeal (the "Opening Brief") unless otherwise specified.

but fundamental error: the Bankruptcy Court's mistaken assumption that Appellants were party to NorthWestern's Motion to Withdraw. In fact, Appellants were not a party to the Motion to Withdraw and objected to the motion. Nevertheless, the Bankruptcy Court treated NorthWestern's self-serving arguments in the Motion to Withdraw as an admission by Appellants that NorthWestern had a proper claim and only sought voluntary dismissal because discovery did not identify information needed to prove its allegations. See App. Exh. 79, Opinion at 3-4 ("Magten did not dispute the Plaintiff's reasons for the dismissal as stated in the joint motion.").[2] Certainly, Appellants had no duty under penalty of preclusion to take issue with every self-serving assertion and inaccuracy in the Motion to Withdraw. Thus, the Bankruptcy Court made glaring factual and legal errors.

NorthWestern argues that, because the Bankruptcy Court analyzed NorthWestern's conduct, any legal errors do not mandate reversal. Northwestern, however, ignores the fact that the Bankruptcy Court erred in limiting its construction of the bad faith exception for awarding fees and costs solely to cases involving fraud. This erroneous legal conclusion resulted in the Bankruptcy Court analyzing NorthWestern's conduct under the wrong standard. Had the Bankruptcy Court utilized the appropriate standard (i.e., whether exceptional circumstances were present), the Bankruptcy Court would have determined that a basis existed to award Appellants fees and costs.

Finally, NorthWestern relies heavily on the Bankruptcy Court's erroneous interpretation of the Trading Order -- i.e., that absent an ethical wall, the Trading Order was a *per se* bar to any

---

[2]     References to items identified in Appellants' Designation of Items to Be Included in the Record on Appeal and Statement of the Issues to be Presented on Appeal of Magten Asset Management Corporation and Talton R. Embry [Docket No. 2] are referred to as "App. Exh. __."

120087.01600/40168084v.1

transaction.[3] The language and the purpose of the Trading Order, however, establish that the Trading Order simply provided a safe harbor for Committee members to continue to trade in NorthWestern's securities while in possession of material confidential information by establishing an ethical wall. As specifically set forth in the Committee's bylaws and the Confidentiality Agreement (executed by NorthWestern and Committee members after entry of the Trading Order), Committee members, including Appellants, had every right to trade in such securities in accordance with federal securities laws. Thus, to the extent Appellants did not have confidential information, the Trading Order was no bar to Appellants' purchase or sale of QUIPS.

Furthermore, it is beyond per adventure that any violation of the Trading Order during the course of the bankruptcy proceedings would have been contempt. Given NorthWestern's and the Committee's actions to remove Magten from the Committee and to mischaracterize Magten's fraudulent conveyance lawsuit, there could be little doubt that both parties would have sought to enforce such contempt had they actually believed that Appellants traded in violation of the Trading Order.

With respect to the reasonableness of Appellants' fees and costs, here again the Bankruptcy Court relied on the wrong legal standard. Moreover, NorthWestern itself did not object at the time, or even now in a meaningful way, to the efforts NorthWestern knew Magten's counsel had to undertake in connection with the Adversary Proceeding. As discussed herein, NorthWestern's dilatory and obstructive tactics forced Appellants to perform an increased

---

3    As set forth in the Opening Brief, the Trading Order was entered by a different Bankruptcy Court judge than Judge Peterson and therefore comes under *de novo* review. See United States v. Spallone, 399 F.3d 415, 423 (2d Cir. 2005) (applying *de novo* review to lower court judge's interpretation of an order where the order was drafted by a preceding judge in the case).

3

amount of work over a brief period of time, including taking significant discovery, drafting

multiple motions and preparing for trial on an expedited basis in order to vindicate Appellants

from NorthWestern's baseless and very damaging lawsuit. The nature and description of the

work spent defending against the Complaint demonstrates the necessity and reasonableness of

the fees and expenses incurred by Appellants.

Accordingly, the Bankruptcy Court's decision denying the Fees and Expenses Motion

should be reversed.

## **ARGUMENT**

I.      THE BANKRUPTCY COURT'S FINDINGS OF FACT SHOULD BE REVERSED BY
        THIS COURT.

NorthWestern's principal argument is that the Bankruptcy Court found NorthWestern had

a colorable right to infer that Appellants' trades were based on material non-public information

and therefore the Complaint was not filed in bad faith or for a vexatious purpose. NorthWestern

further argues that these findings cannot be disturbed absent a showing of clear error. However,

as discussed in Section II.B., *infra*, the Bankruptcy Court's findings of fact were based on a

complete misunderstanding and misapplication of law and therefore deserve no deference. See

Inwood Labs. v. Ives Labs., 456 U.S. 844, 855 n.15 ("if the trial court bases its findings upon a

mistaken impression of applicable legal principles, the reviewing court is not bound by the

clearly erroneous standard"); see also Presbyterian and Reformed Publishing Co. v.

Commissioner of Internal Revenue, 743 F.2d 148, 158 n. 9 (3d Cir. 1984), citing Bose Corp. v.

Consumers Union of United States, Inc., 466 U.S. 485, 501 n. 16 (1984). Moreover, even if the

clearly erroneous standard is applicable in this case, Appellants readily meet it.

4

A.    NorthWestern Failed to Pursue Meaningful Discovery to Substantiate the
      Allegations Raised in Its Complaint.

As an initial matter, the Bankruptcy Court's finding that NorthWestern had a colorable

right to infer that Appellants' trades were based on material non-public information is clearly

erroneous in light of NorthWestern's pre-Complaint possession of all Magten's trading records,

its failure to pursue discovery to substantiate its allegations, and ultimately its efforts to obstruct

the discovery NorthWestern pretended it needed to substantiate its allegations. It is undisputed

that:

> (1)    NorthWestern received Magten's trading records during July 2004
>        – one month prior to filing the Complaint – in connection with
>        discovery related to Magten's objection to NorthWestern's plan of
>        reorganization. (These records show no trades after Magten
>        attended its first Committee meeting on December 18, 2003, and
>        no trades thereafter until NorthWestern had already issued its
>        10-K, 10-Q, plan and disclosure statement.)
>
> (2)    NorthWestern admitted that it made no pre-Complaint inquiry of
>        Appellants, the Committee or the Committee's advisors concerning
>        if and when confidential information given to the Committee's
>        advisors was given to Appellants, even though at that time
>        NorthWestern and the Committee were in league to seek Magten's
>        removal from the Committee and to oppose Magten's fraudulent
>        conveyance claims.[4]
>
> (3)    NorthWestern admitted that neither it nor any of its advisors gave
>        material confidential information to the Committee prior to
>        Appellants' first Committee meeting on December 18, 2003.
>
> (4)    NorthWestern admitted that neither it nor any one of its advisors
>        gave material confidential information directly to Appellants at any
>        time thereafter.

---

[4]    NorthWestern's failure to conduct any preliminary investigation is inexcusable. NorthWestern had a
       number of avenues available for seeking discovery from Appellants that did not necessitate bringing an
       adversary proceeding. For example, NorthWestern could have sought to examine Appellants pursuant to
       Bankruptcy Rule 2004, which is a tool for preliminary investigation to determine the existence of claims.
       The Bankruptcy Court's failure to consider this compounds its other errors since there is no authority that
       permits a debtor to bring a lawsuit without conducting any investigation.

5

    (5)     In response to NorthWestern's claims that confidential information went from NorthWestern's advisors to the Committee's advisors and then Committee members, Appellants sought discovery from NorthWestern's advisors of confidential information such advisors gave to the Committee's advisors. NorthWestern and its counsel sought protective orders to prevent that discovery, and NorthWestern's counsel moved to quash the subpoenas served by Appellants.

    (6)     NorthWestern admitted that after filing the Complaint it did not seek from the Committee or its advisors discovery of information concerning if and when confidential information given to the Committee's advisors was given to Appellants.

    (7)     NorthWestern admitted that the Post-Committee Transactions were made after it filed its 10-K, 10-Q, plan and disclosure statement.

Given these admissions, it is impossible to find that NorthWestern acted in good faith. NorthWestern failed to seek any meaningful discovery because it knew its claims were meritless. NorthWestern's vexatious conduct compelled Appellants to assume the mantle of the plaintiff and pursue discovery to disprove NorthWestern's libelous allegations.

Moreover, NorthWestern took steps to prevent Appellants from establishing the parameters of what confidential information had been provided to the Committee. Instead of complying with Appellants' discovery requests served on NorthWestern and its advisors, NorthWestern filed a motion for a protective order and NorthWestern's counsel, Paul Hastings, filed a motion to quash the subpoenas and for a protective order with the Bankruptcy Court. Then, in an attempt to further frustrate the discovery process, Paul Hastings attempted to remove its motion to quash from this Court's jurisdiction without reason. NorthWestern also took no steps to oppose the Committee's motion for a protective order or its assertion of privilege with respect to discovery requests served by Appellants on the Committee's advisors and individual Committee members. NorthWestern's efforts to thwart Appellants' discovery of the information

6

NorthWestern itself claimed it needed to pursue its claims puts the final nail in NorthWestern's coffin. [5]

B.    NorthWestern Knew Appellants Could Not Be in Possession of Confidential Information Material to the Sale or Purchase of QUIPS When it Engaged in the December Transactions and the Post-Committee Transactions.

The Bankruptcy Court's findings also amount to clear error in that they ignore the fact that NorthWestern knew Appellants did not possess material non-public information when they engaged in the December Transactions and the Post-Committee Transactions. Magten engaged in purchases of QUIPS from December 1 through 17, 2003, and there is no question that Appellants did not receive material confidential information prior to attending Magten's first Committee meeting on December 18, 2003. Since any material confidential information known by the Committee's advisors at that time could not be imputed to Appellants, NorthWestern had full knowledge that Appellants were not in possession of material non-public information at the time of the December Transactions.

With respect to the Post-Committee Transactions, NorthWestern had already filed its plan, disclosure statement, 10-K and 10-Q at the time of such transactions, making it impossible for NorthWestern to have based these transactions on material non-public information. NorthWestern's CEO certified, under penalty of perjury, that NorthWestern's 10-K and 10-Q contained all material financial information. Moreover, NorthWestern was bound by law to disclose all information that could be material to the purchase or sale of QUIPS in its plan, disclosure statement, 10-K and 10-Q. The SEC has defined "material" as follows: "The term 'material,' when used to qualify a requirement for the furnishing of information as to any

---

[5]    In an attempt to mislead this Court, NorthWestern includes a chart with its Response that attempts to mask the manner in which it obstructed discovery and its intentional failure to seek information it later claimed was necessary to prove its allegations. See Addendum to Response.

7

subject, limits the information required to those matters as to which an average prudent investor ought reasonably to be informed before purchasing the security registered." Securities Act Rule 405, 17 C.F.R. § 230.405. Thus, while a public corporation need not disclose every piece of non-public information in its financial statements, it must disclose all information relevant to an investment decision in the corporation's securities. Similarly, a disclosure statement must include "adequate information" under section 1125 of the Bankruptcy Code, which is defined as "information of a kind, and in sufficient detail . . . that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan."

As further discussed in Section II.C., *infra*, the Committee's bylaws and the Confidentiality Agreement specifically permit trading in compliance with the securities laws, and NorthWestern failed to identify any information that would have caused Appellants' trading to be unlawful. NorthWestern's persistence in arguing that some piece of confidential information may have made trading unlawful when NorthWestern itself was (i) unable to identify any such information and (ii) required to disclose all material information makes NorthWestern's vexatious and improper conduct manifest.

C.    NorthWestern Asserted Claims for Which It Lacked Standing.

The Bankruptcy Court's findings also ignore the fact that NorthWestern did not have standing to pursue two of the four counts in its Complaint – namely, breach of fiduciary duty and violation of the Trading Order. Aside from the fact that these claims were entirely without merit, NorthWestern had no conceivable basis for claiming that it had been injured by the challenged transactions. Nor could it pursue such claims on behalf of its creditors. See Viking Assocs. v. Drewes (In re Olson), 120 F.3d 98 (8th Cir. 1997) (trustee lacked standing to seek relief related

8

to transfer of claims when transferors had not objected); <u>Citicorp Venture Capital, Ltd. v. Comm.</u>
<u>of Creditors Holding Unsecured Claims, and Comm. of Creditors Holding Unsecured Claims as</u>
<u>Estate Representative of Papercraft Corp.,</u> 160 F.3d 982, 986 (3d Cir. 1998) (noting that claims
alleging misuse of inside information to purchase claims had been brought by creditors'
committee). NorthWestern's assertion of claims for which it lacked standing undercuts the
Bankruptcy Court's findings of fact and further evidences NorthWestern's bad faith and
vexatious motives in bringing and pursuing the Adversary Proceeding.

II.     THE BANKRUPTCY COURT'S ERRONEOUS CONCLUSIONS OF LAW COMPEL
        REVERSAL BY THIS COURT.

        The Bankruptcy Court's decision denying the Fees and Expenses Motion is based on a
series of erroneous conclusions of law, including its determination that dismissal of the
Complaint with prejudice did not confer prevailing party status on Appellants, its determination
that it lacked authority to award fees and costs, and its determination that the Trading Order
prohibited Appellants from engaging in the Post-Committee Transactions. Each of these legal
determinations is subject to *de novo* review and compels reversal by this Court.

        A.      The Bankruptcy Court Erred in Holding that Appellants Were Not the Prevailing
                Party.

        As set forth in the Opening Brief, voluntary dismissal of a complaint with prejudice
confers prevailing party status on a defendant in the same way that a judgment on the merits
confers such status and may therefore serve as the basis for an award of attorney's fees and costs.
<u>Beer v. John Hancock Life Ins. Co.</u>, 211 F.R.D. 67, 70 (N.D.N.Y. 2002) ("All circuit courts to
have directly addressed this issue have concluded that a defendant ... is a prevailing party [when
the plaintiff voluntarily dismisses the action with prejudice]."); <u>Cantrell v. Int'l Bhd. of Elec.</u>
<u>Workers, Local 2021</u>, 69 F.3d 456, 458 (10th Cir. 1995); <u>Sheets v. Yamaha Motors Corp.,</u>
<u>U.S.A.,</u> 891 F.2d 533, 539 (5th Cir. 1990) (" ... the dismissal of the plaintiff's suit with prejudice

9

is tantamount to a judgment on the merits for the defendants, thereby rendering them the prevailing parties"); Schwarz v. Folloder, 767 F.2d 125, 130 (5th Cir. 1985) ("Having already held that a dismissal with prejudice may be granted at any time in a lawsuit because it does not prejudice the defendant, we would be inconsistent to deny the defendant 'prevailing party' status, since such a denial would be precisely the type of prejudice to the defendant that we claimed would not occur."); Kona Enters. v. Estate of Bishop, 229 F.3d 877, 889 (9th Cir. 2000); Zenith Ins. Co. v. Breslaw, 108 F.3d 205, 207 (9th Cir. 1997); DeKalb Genetics Corp. v. Pioneer Hi-Bred Int'l, 2002 U.S. Dist. LEXIS 10628, at \*3 (N.D. Ill. June 13, 2002). Indeed, this Court has explicitly held that "[a] defendant, who has obtained from a claimant a voluntary dismissal with prejudice can be classified as a prevailing party." Calaway Golf Co. v. Dunlop Slazenger, 384 F.Supp. 735, 746 (D. Del. 2005) (quotations omitted). The Bankruptcy Court clearly ignored the force of this binding precedent when it held that Appellants were not the prevailing party upon NorthWestern's voluntary dismissal with prejudice.

Fully cognizant that the Bankruptcy Court's holding cannot be defended on its merits, NorthWestern tries to avoid the merits by claiming that this Court need not reach the issue of prevailing party status because the Bankruptcy Court analyzed Appellants' claims under the assumption *arguendo* that Appellants were the prevailing party. However, the Bankruptcy Court only made this assumption in analyzing which costs Appellants could seek under 28 U.S.C. section 1920: "Even if I were to hold that costs are allowable to the Defendants, the 'expenses' sought Defendants in the sum of $73,996.30 are not allowable costs under 28 U.S.C. section 1920." App. Exh. 79, Opinion at 14. The Bankruptcy Court did not engage in a similar exercise with respect to Appellants' fees but instead reached a determination on the allowability of fees before ruling that Appellants were not the prevailing party. See App. Exh. 79, Opinion at 7-8.

10

Moreover, the Bankruptcy Court's ultimate ruling on prevailing party status must be reversed because it is predicated on an erroneous fact, namely the Bankruptcy Court's mistaken assumption that Appellants were party to the Motion to Withdraw. Although the Motion to Withdraw was filed by NorthWestern alone, the Bankruptcy Court stated, "Northwestern and Magten filed a joint motion to dismiss this adversary proceeding with prejudice pursuant to Rule 7041(a)." App. Exh. 79, Opinion at 3. In fact, Appellants objected to the Motion to Withdraw and only withdrew its objection and consented to voluntary dismissal once the Bankruptcy Court conditioned dismissal on Appellants having the right to seek fees and costs. The Bankruptcy Court relied exclusively on this error in fact when it found that Appellants were not the prevailing party: "I determine that the Defendants were not the prevailing party in this action because this case was dismissed with prejudice upon joint motion of each party, thereby terminating the litigation once and for all without trial on the merits." App. Exh. 79, Opinion at 14. Thus, not only did the Bankruptcy Court misunderstand the correct legal standard, but it plainly misunderstood the factual record of this case, compelling reversal by this Court.

B.    The Bankruptcy Court Erred in Refusing to Exercise its Authority to Award Appellants Fees and Costs.

The Bankruptcy Court had two available avenues for making an award of fees and costs in this case – (i) its inherent authority under the exception to the American Rule for bringing or maintaining an action "in bad faith, vexatiously, wantonly, or for oppressive reasons," Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991), and (ii) its statutory authority under Bankruptcy Rule 7041. The Bankruptcy Court committed reversible legal error in denying to Appellants fees and costs under each of these sources of authority.

As set forth in the Opening Brief, the Bankruptcy Court misunderstood the bad faith exception to the American Rule to be limited to fraud on the court or an opposing party, despite

11

the fact that the exception has been applied in numerous other contexts, including, among others, harassing conduct and obstructing discovery. See D'Auria v. Minniti (In re Minniti), 242 B.R. 843, (Bankr. E.D. Pa. 2000) (awarding sanctions where debtor's attorney obstructed plaintiff's discovery through false statements and implied threats); Sassower v. Field, 973 F.2d 75, 78-80 (2d Cir. 1992) (imposing sanctions against pro se litigants for harassing conduct during the course of a litigation); see also Fink v. Gomez, 239 F.3d 989, 994 (9th Cir. 2001) ("an attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power").

NorthWestern dismisses the Bankruptcy Court's erroneous construction of the bad faith exception out of hand because the Bankruptcy Court made a finding of fact that the Adversary Proceeding was filed "under a colorable right that was completely divorced from fraud, vexatious, wanton or oppressive conduct." App. Exh. 79, Opinion at 10. NorthWestern's argument fails for two reasons. First, as discussed in Section I., *supra*, the Bankruptcy Court's findings of fact are clearly erroneous in light of NorthWestern's misconduct in bringing the Complaint based on knowingly false allegations and failing to pursue discovery. Second, these findings were defined by and derived from its misunderstanding of the bad faith exception, making NorthWestern's argument entirely circular. In other words, the Bankruptcy Court's findings of fact cannot inform its application of law because its misapplication of law resulted in improper findings of fact. As such, this Court should reverse the Bankruptcy Court's findings and make its own determination as to bad faith based upon a re-examination of the record under the correct legal standards. See Pullman-Standard, Div. of Pullman v. Swint, 456 U.S. 273, 287 (1982) ("if a district court's findings rest on an erroneous view of the law, they may be set

12

aside on that basis"); Bose Corp., 466 U.S. at 501 n. 16 ("Rule 52(a) does not inhibit an appellate court's power to correct ... a finding of fact that is predicated on a misunderstanding of the governing rule of law.").

The Bankruptcy Court also erred in determining that it did not have the authority to grant Appellants' fees and costs under Bankruptcy Rule 7041 and Rule 41(a), which permit a court to award fees and costs upon the voluntary dismissal of a case with prejudice (i) under exceptional circumstances or (ii) when there is independent statutory authority for such award. Steinert v. Winn Group, Inc., 440 F.3d 1214, 1222 (10th Cir. 2006); Dorfsman v. Law Sch. Admission Council, Inc., 2001 U.S. Dist. LEXIS 24044, at \*9-10 (E.D. Pa. Nov. 28, 2001); John Evans Sons, Inc. v. Majik-Ironers, Inc., 95 F.R.D. 186, 191 (E.D. Pa. 1982); York v. Ferris State Univ., 36 F.Supp.2d 976, 980 (W.D. Mich. 1998). Contrary to the foregoing authority, the Bankruptcy Court held that exceptional circumstances are not part of the inquiry under Rule 41(a). Further, this holding is ill-founded and should be reversed in light of the policy of punishing bad faith conduct and the right of a prevailing party to seek fees and costs.

Finally, the Bankruptcy Court committed reversible legal error in concluding that it did not have the authority to award costs outside the scope of 28 U.S.C. section 1920. Section 1920 sets forth the costs that a court may award pursuant to Rule 54(d) or Bankruptcy Rule 7054(b). These costs include duplicating and court reporting costs but do not include the other types of costs incurred by Appellants in defending against the Complaint – costs for telecommunications, courier services, computerized research, transportation for late night and other exigencies, working meals, secretary and paralegal overtime, and temporary paralegals. However, while 28 U.S.C. section 1920 limits the types of costs that a court may award pursuant to Rule 54(d) or Bankruptcy Rule 7054(b), it does not preclude a court from making such an award under Rule 41

13

or Bankruptcy Rule 7041. See Behrle v. Olshansky, 139 F.R.D. 370, 373-74 (W.D. Ark. 1991) (holding that section 1920 is not applicable to an award of costs under Rule 41(d)); see also Zucker v. Katz, 1990 U.S. Dist. LEXIS 1748, at *8-10 (S.D.N.Y. Feb. 21, 1990) (awarding costs for computerized legal research, telephone and telecopy charges, postage, external messengers, express delivery, and public transportation under Rule 41(d)); Esquivel v. Arau, 913 F. Supp. 1382, 1393 (C.D. Cal. 1996) (awarding costs for computerized legal research, messengers, express delivery, and telephone charges under Rule 41(d)). The Bankruptcy Court did not appreciate this distinction between costs awarded under to Bankruptcy Rule 7054(b) and costs awarded under Rule 41.[6] As a result, the Bankruptcy Court only analyzed Appellants' costs under Bankruptcy Rule 7054(b) and therefore erred in concluding that it did not have authority to grant Appellants' costs outside of 28 U.S.C. section 1920.

C.    The Bankruptcy Court Erred in Finding that the Trading Order Prohibited Appellants From Trading in NorthWestern's Securities.

The Bankruptcy Court's interpretation of the Trading Order is also grounds for reversal as an error of law. As set forth in the Opening Brief, the Trading Order established a safe harbor for members of the Committee that had the capacity to create an ethical wall to elect to be subject to the protections of the Trading Order, which allowed such Committee members to trade in NorthWestern's securities while in possession of material confidential information. The Bankruptcy Court misunderstood the safe harbor created by the Trading Order and instead found that trading by any Committee member without establishing an ethical wall is a *per se* violation of the order, even if that Committee member did not possess material non-public information at

---

6    NorthWestern apparently does not understand this distinction either because it mistakenly states that Appellants cite Behrle "[a]s support for their argument that Fed. R. Bankr. P. 7054(b) does not limit costs to the categories set forth in 28 U.S.C. § 1920." Response at 36. In fact, Appellants did not even make this argument and only relied on Behrle in connection Rule 41, not Bankruptcy Rule 7054(b). The Behrle Court held that it was not limited by section 1920 when making an award of costs under Rule 41(d) and, by analogy, Rule 41(a). 139 F.R.D. at 374.

14

the time of the trades. App. Exh. 79, Opinion at 9. NorthWestern argues that this Court should uphold the Bankruptcy Court's erroneous construction that the Post-Committee Transactions were prohibited by the Trading Order, regardless of whether such transactions were based on material non-public information. Response at 20.

Here, if anyone, most especially the Committee or NorthWestern, actually believed that (i) the Trading Order was a *per se* prohibition and (ii) that Appellants' violated it, the only appropriate remedy would have been a motion for contempt. It is apparent that such a motion was not brought because no one believed then, or even now, that the Trading Order amounted to such a *per se* prohibition.

Moreover, NorthWestern recognized the Trading Order's limited function of providing a safe harbor when it gave the Committee members the Confidentiality Agreement six weeks after the Trading Order was entered by the Bankruptcy Court. The Confidentiality Agreement states, "It [is] understood that nothing herein shall prevent Receiving Parties who have established an Ethical Wall pursuant to the [Trading Order] entered by the Bankruptcy Court on November 6, 2003 from trading NorthWestern's securities in accordance with the procedures set forth in such order **or from otherwise trading such securities in accordance with applicable securities law**." App. Exh. 3, Embry Decl. Exh. C., p. 3 (emphasis added). Likewise, the Committee's bylaws also demonstrate that the Trading Order was not a prohibition against trading: "Each member shall have the ability to trade, purchase, sell, or otherwise dispose of its claims against or interest in [NorthWestern] in accordance with applicable law including any orders entered or to be entered by the Bankruptcy Court." App. Exh. 3, Embry Decl. Exh. A, ¶ 1.7. NorthWestern's failure to even take note of these documents in its Response serves as an implicit

15

acknowledgement that the Trading Order did not impose greater restrictions than the securities laws.

Further, the Bankruptcy Court's interpretation of the Trading Order is inconsistent with the order's purpose. The function of a trading order is to enable members of a creditors' committee to continue trading while in possession of material confidential information by establishing an ethical wall. See 1-5 Collier Business Workout Guide P 5.04 (noting that the effect of ethical walls is to give an investor the means of effectively balancing its need to continue trading while allowing the investor to serve on a creditors' committee); Herbert S. Wander, Chinese Walls for Creditors' Committees, 48 Bus. Law. 747 (1993) (concluding that, in order to encourage service on a creditors' committee, bondholders should be allowed to continuing trading pursuant to an ethical wall). As such, a trading order is only relevant to the extent that committee members possess material confidential information. See In re Federated Dep't Stores, Inc., 1991 Bankr. LEXIS 288 (Bankr. S.D. Ohio Mar. 7, 1991) (trading order only applicable with respect to non-public information).

In this case, the fact that Appellants couldn't establish an ethical wall meant they had no means to trade while in possession of material confidential information. Once this information became public through NorthWestern's public filings, plan and disclosure statement, however, there was nothing under the securities laws or otherwise prohibiting Appellants from trading in QUIPS. NorthWestern's position that the Trading Order applies to all trades by Committee members, whether or not based on public information, is completely nonsensical. It would mean that even today, every Committee member that is currently trading in NorthWestern's securities without an ethical wall in place is in violation of the Trading Order. Such a result is not contemplated by the language or the purpose of the Trading Order.

16

III.    THE BANKRUPTCY COURT'S REJECTION OF APPELLANTS' FEES AND COSTS
        AS UNREASONABLE WAS AN ABUSE OF DISCRETION AND THIS COURT
        SHOULD REMAND THIS CASE FOR A DETERMINATION AS TO
        REASONABLENESS.

In addition to its errant conclusions of law, the Bankruptcy Court improperly found that

Appellants' fees and costs were unreasonable in amount and insufficiently documented. While

NorthWestern makes blanket statements in support of this finding of unreasonableness, it fails to

defend any of the Bankruptcy Court's specific bases for such finding – e.g., four lawyers

reviewing the Complaint, hours billed for preparation of summary judgment papers that were not

filed, and a lawyer working on Christmas day. As set forth in the Opening Brief, Fried Frank's

efforts are not unusual or unreasonable from an industry or case specific perspective. It is not

uncommon for firms similarly situated to Fried Frank to have multiple lawyers and paralegals

staffed on a single case with a demanding workload and strict time constraints. Moreover, given

the serious nature of the allegations – insider trading and securities law violations – it is not

surprising that the Complaint was reviewed by bankruptcy lawyers, litigators and securities

lawyers or that Appellants' counsel expended hundreds of thousands of dollars to clear

Appellants' good names in the face of NorthWestern's attempts to tarnish Embry's reputation

and impede Magten's ability to participate in future restructurings. Likewise, given that the

parties reached a settlement on the day summary judgment motions were due, it was necessary

for Magten's counsel to expend significant sums in its painstaking review of the documents,

completion of depositions and preparation of the legal and factual analysis for a motion that was

not filed. Additionally, Appellants had to perform an increased amount of work to define and

defend this action because NorthWestern neglected to pursue its claims while attempting to

thwart Appellants' discovery efforts.

17

NorthWestern's failure to object to the amount of Appellants' fees and expenses in any

way at the time the Fees and Expenses Motion was made further demonstrates the

reasonableness of the amounts Appellants incurred in defending against the Complaint.[7]

NorthWestern knew the type of work Appellants were forced to undertake to disprove the

allegations in the Complaint, and NorthWestern's continued efforts to mislead this Court are a

further indication of NorthWestern's need to cover up its vexatious conduct:

- First, as discussed above, NorthWestern advances the insulting argument that it is somehow exempt from the pre-Complaint due diligence required by the Federal Rules of Civil Procedure. Response at 24. NorthWestern never even asked the Committee if any confidential information was supplied at the relevant times to Magten. Its excuse that it did not ask because it would have been refused is frivolous.

- Second, NorthWestern in its Response provides a chart that misrepresents its discovery chicanery. See Addendum to Response. The only discovery sought by NorthWestern was of records from brokerage firms concerning trading records that NorthWestern already had in its possession. NorthWestern NEVER sought discovery of the precise information it claimed it lacked and could not get by asking the Committee – i.e., what confidential provided by NorthWestern to the Committee's advisors was shared with Magten. Further, NorthWestern moved to quash subpoenas and sought protective orders on discovery sought from NorthWestern's advisors to ascertain what confidential information NorthWerstern provided to the Committee.

- Third, egregiously, NorthWestern completely misrepresents that Appellants insisted on an expedited trial when it knows that the schedule was imposed by the Bankruptcy Court over both parties' reluctance to have to work over Christmas and New Year and that requests for delays made to the Bankruptcy Court during discovery conferences were rejected out of hand. Response at 32 ("Appellants cannot have it both ways – on the one hand, insisting on an expedited trial, and on the other hand,

---

[7]   In particular, NorthWestern's failure to object to Appellants' costs should have led the Bankruptcy Court to find these costs reasonable, as the burden is on the losing party to demonstrate the impropriety of a request for costs. See J.T. Gibbons, Inc. v. Crawford Fitting Co., 102 F.R.D. 73, 80 (E.D. La. 1984), quoting Meder v. Everest & Jennings, Inc., 553 F.Supp. 150 (E.D. Mo. 1982) ("unless the opposing party interposes a specific objection that a deposition was improperly taken or unduly prolonged, deposition costs will be taxed as having been 'necessarily obtained for use in the case' within the meaning of 28 U.S.C. § 1920"); In re Paoli R.R. Yard PCB Litig., 221 F.3d 449, 462-63 (3d Cir. 2000) (citations omitted).

complaining that they were forced by the expedited schedule to expend
enormous sums which NorthWestern must now reimburse.").

NorthWestern also fails to defend the Bankruptcy Court's misplaced reliance on

Delaware Local Bankruptcy Rule 2016-2 for guidance in evaluating the reasonableness of Fried

Frank's billing statements. As noted by Colliers in the context of an administrative expense

claim under Bankruptcy Code section 503(b)(4), professionals who do not anticipate that their

client will seek reimbursement of fees and costs from a debtor's estate should not be held to the

same billing standards as professionals retained under Bankruptcy Code section 330 and

therefore required to submit fee applications in the debtor's bankruptcy case:

> Despite the fact that the standards are similar, a court should not treat an
> application for reimbursement exactly the same as an application for an award of
> compensation under section 330. A professional retained by the estate knows
> from the outset of his or her relationship with the estate that payment of the
> professional's fees will be dependent on an award by the court. The professional
> will keep track of the nature of the services and the cost of such services in
> accordance with whatever requirements currently apply to professionals retained
> by the estate. A professional representing a creditor or custodian has not been
> retained by the estate, however, and may not know that the client will
> subsequently seek reimbursement from the estate. It would thus be unfair to
> automatically deny an award of compensation because the professional did not
> comply with the guidelines applicable to a professional retained by the estate. So
> long as the court has sufficient information from which to determine whether the
> amount is reasonable, and whether the amount bears an appropriate relationship to
> the reason for which the entity became entitled to administrative priority status for
> its expenses, the court should grant an appropriate award.

4 Alan N. Resnick and Henry J. Sommer, Collier on Bankruptcy, ¶ 503.11[5] (15th ed. rev.

2006). The same reasoning should apply in this case. Fried Frank's billing statements provided

the Bankruptcy Court with adequate information to evaluate Appellants' fees and costs, which

were reasonable in amount given the nature of the allegations, the harassing tactics imposed by

NorthWestern, and the disproportionate discovery burden Appellants were forced to undertake.

The Bankruptcy Court abused its discretion in finding that Appellants' fees and costs were

19

unreasonable, and this Court should remand this case for further proceedings to determine to

what extent Appellants' fees and costs should be reasonably allowed.

## CONCLUSION

For the foregoing reasons as well as those set forth in the Opening Brief, Appellants

respectfully request this Court vacate the Fees and Expenses Order and grant such other relief at

it deems appropriate.


**BLANK ROME LLP**

Dated: Wilmington, Delaware
      March 30, 2007

                    *Dale R. Dubé*

Dale R. Dubé (No. 2863)
Bonnie Glantz Fatell (No. 3809)
David W. Carickhoff, Jr. (No. 3715)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

- and -

**FRIED, FRANK, HARRIS, SHRIVER &**
**    JACOBSON LLP**
Bonnie Steingart
Gary Kaplan
John W. Brewer
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

Counsel for Magten Asset Management
Corporation and Talton R. Embry

20

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of March, 2007, I served by hand delivery and

electronic filing the REPLY BRIEF OF APPELLANTS, using CM/ECF which will send

notification of such filing(s) to the following:

Denise Seastone Kraft, Esquire
Edwards Angell Palmer & Dodge LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801

Victoria Watson Counihan, Esquire
Dennis A. Meloro, Esquire
Greenberg Traurig LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

Kathleen M. Miller, Esquire
Smith Katzenstein & Furlow LLP
800 Delaware Avenue
P. O. Box 410
Wilmington, DE 19899

David A. Jenkins, Esquire
Smith Katzenstein & Furlow LLP
800 Delaware Avenue
P. O. Box 410
Wilmington, DE 19899

I also certify that, on this 30th day of March, 2007, I served the aforementioned

document, by e-mail and Federal Express, upon the following participants:

Stanley T. Kaleczyc, Esquire
Kimberly A. Beatty, Esquire
Browning, Kaleczyc, Berry & Hoven, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, Mt 59624

Bijan Amini, Esquire
Avery Samet, Esquire
Bradley F. Silverman, Esquire
Storch Amini & Munves PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017

John V. Snellings, Esquire
Amanda D. Darwin, Esquire
Nixon Peabody LLP
100 Summer Street
Boston, Massachusetts 02110-1832

Steven J. Reisman, Esquire
Joseph D. Pizzurro, Esquire
Nancy E. Delaney, Esquire
Miriam K. Harwood, Esquire
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178-0061

Dale R. Dubé

Dale R. Dubé (I.D. No. 2863)

120087.01600/40168084v.1