# UNREPORTED CASES

1.

LEXSEE 2002 US DIST LEXIS 10628


Analysis
As of: Mar 30, 2007

DeKalb Genetics Corp., et al. vs. Pioneer Hi-Bred Int'l

96 C 50113

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

*2002 U.S. Dist. LEXIS 10628*

June 13, 2002, Decided
June 13, 2002, Filed, Date Docketed

**DISPOSITION:** [*1] Defendant's consolidated motion for costs and attorney's fees granted in part and denied in part.

**COUNSEL:** For DEKALB GENETICS CORP, plaintiff: James P. Devine, John James Holevas, Stephen E. Balogh, Williams & McCarthy, Ronald A. Barch, Cicero & France, Rockford, IL.

For DEKALB GENETICS CORP, plaintiff: Willem G. Schuurman, David L. Parker, Mark J. Rozman, Gary J. Sertich, Nicole Stafford, Arnold, White & Durkee, Austin, TX.

For DEKALB GENETICS CORP, plaintiff: Roderick B. Williams, Howrey, Simon, Arnold, & White, LLP, Houston, TX.

For DEKALB GENETICS CORP, plaintiff: Charles H. De La Garza, Arnold, white & Durkee, Minneapolis, MN.

For MONSANTO COMPANY, intervenor: Daniel James McGrail, Attorney at Law, Rockford, IL.

For PIONEER HI-BRED INTERNATIONAL, defendant: Michael F. O'Brien, McGreevy, Johnson & Williams, Rockford, IL.

For PIONEER HI-BRED INTERNATIONAL, defendant: Annette Michele McGarry, Wildman, Harrold, Allen & Dixon, Randall S. Rapp, Sharon R. Barner, Jeanne Marie Gills, Foley & Lardner, Chicago, IL.

For PIONEER HI-BRED INTERNATIONAL, [*2] defendant: Richard S. Florsheim, Foley & Lardner, Milwaukee, WI.

For PIONEER HI-BRED INTERNATIONAL, defendant: Eric H. Weisblatt, R. Danny Huntington, Regis E. Slutter, Burns, Doane, Swecker & Mathis, Alexandria, VA.

For PIONEER HI-BRED INTERNATIONAL, defendant: Stephen A. Bent, Foley & Lardner, Washington, DC.

For PIONEER HI-BRED INTERNATIONAL, counter-claimant: Sharon R. Barner, Foley & Lardner, Chicago, IL.

For PIONEER HI-BRED INTERNATIONAL, counter-claimant: Ronald M Wawrzyn, Richard S. Florsheim, Foley & Lardner, Milwaukee, WI.

For PIONEER HI-BRED INTERNATIONAL, counter-claimant: Stephen A. Bent, Foley & Lardner, Washington, DC.

For DEKALB GENETICS CORP, counter-defendant: James P. Devine, John James Holevas, Stephen E. Balogh, Williams & McCarthy, Ronald A. Barch, Cicero & France, Rockford, IL.

Case 1:05-cv-00548-JJF    Document 31-2    Filed 03/30/2007    Page 4 of 18

Page 2
2002 U.S. Dist. LEXIS 10628, *

For DEKALB GENETICS CORP, counter-defendant: Willem G. Schuurman, Mark B. Wilson, David L. Parker, Mark J. Rozman, Arnold, White & Durkee, Austin, TX.

For DEKALB GENETICS CORP, counter-defendant: Keith B. Willhelm, Danny L. Williams, Roderick B. Williams, Howrey, Simon, Arnold, & White, LLP, Houston, TX.

JUDGES: Philip G. Reinhard.

OPINION BY: Philip G. Reinhard

OPINION: [*3]

### MEMORANDUM OPINION AND ORDER

This order addresses Pioneer's consolidated motion for costs and attorney's fees under *Federal Rule of Civil Procedure 54(d)* and *35 U.S.C. § 285* in case numbers 96 C 50113 and 96 C 50240. The first question this motion raises is who the "prevailing party" in these two consolidated cases is. On November 10, 1998, this court granted DeKalb's motion under Rule 41(a)(2) to voluntarily dismiss with prejudice all of its charges of infringement in these two cases and entered judgment accordingly. As the relatively scarce authority nearly unanimously indicates, such a voluntary dismissal with prejudice had the effect of conferring on Pioneer "prevailing party" status under Rule 54(d). See *Cantrell v. International Bhd. of Elec. Workers, 69 F.3d 456, 456, 458 (10th Cir. 1995)* (en banc); *Schwarz v. Folloder, 767 F.2d 125, 130 (5th Cir. 1985)*; see also *Zenith Ins. Co. v. Breslaw, 108 F.3d 205, 207 (9th Cir. 1997)* (per curiam), abrogated on other grounds by *Association of Mexican-Am. Educators v. California, 231 F.3d 572 (9th Cir. 2000)*; *First Commodity Traders, Inc. v. Heinold Commodities, Inc., 766 F.2d 1007, 1015 (7th Cir. 1985)*; [*4] 10 Daniel R. Coquillette, et al., *Moore's Federal Practice* § 54.171(3)(c)(iv) (3d ed. 2001); 10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2667, pp. 209-10 (3d ed. 1998). DeKalb does not at all question this authority but argues instead that it is really the "prevailing party" once the litigation between the parties is viewed "in its entirety." Referring to a settlement agreement resolving nine other related but separate cases filed in this court and involving the same parties, certain aspects of which were favorable to DeKalb, DeKalb claims it was the overall victor in the litigation between the two companies. Even assuming this characterization is accurate, the court simply cannot accept DeKalb's "lost the battle but won the war" approach to determining who is the prevailing party in the two, and only two, cases before it in the pending motion. The fact is that DeKalb voluntarily dismissed its infringement claims *in these two cases* with prejudice, leaving Pioneer the prevailing party for Rule 54(d) purposes *in these two cases*. The court thus finds Pioneer is entitled to its costs for cases 96 C 50113 and 96 C 50240. n1

> n1 That said, the court appreciates and shares DeKalb's concern about sorting out the costs related to these two cases from the other nine cases. For that reason Pioneer's costs are limited to those that were reasonable and necessary to just these two cases. In other words, Pioneer may not recover costs related *only* to cases *other* than 96 C 50113 or 96 C 50240. The parties are to try compromising on their own as to which costs are pertinent to these two cases. Pioneer shall file its Bill of Costs within twenty-one days from the date of this order; if no compromise is reached, DeKalb shall file any objections thereto within ten days thereafter; and Pioneer shall file its response thereto within seven days thereafter.

[*5]

Turning to Pioneer's request for attorney's fees, the court assumes *arguendo* Pioneer is the prevailing party under *35 U.S.C. § 285*, and rejects DeKalb's argument that it is really the prevailing party, for the same reasons stated above. Even so, the court finds these are not the sort of "exceptional" cases to warrant an award of attorney's fees. See id. As the moving party, Pioneer bears the burden of proving by clear and convincing evidence that these are "exceptional cases" under § 285 because DeKalb pursued them in bad faith, engaged in vexatious or unjustified litigation, or filed frivolous suits. See *Reactive Metals & Alloys Corp. v. ESM, Inc., 769 F.2d 1578, 1582 (Fed. Cir. 1985)*; see also *Hoffmann-La Roche Inc. v. Invamed Inc., 213 F.3d 1359, 1365 (Fed. Cir. 2000)*; *Cambridge Prods., Ltd. v. Penn Nutrients, Inc., 962 F.2d 1048, 1051-51 (Fed. Cir. 1992)*. This requires "proof of actual wrongful intent" or "gross negligence" -- i.e., that DeKalb "recklessly concluded that [Pioneer] infringed." *Machinery Corp. of Am. v. Gullfiber AB, 774 F.2d 467, 473 (Fed. Cir. 1985)*.

Pioneer's [*6] essential argument here is that long before DeKalb filed these two actions it knew Pioneer's "protoplast uptake method of transformation" (a.k.a. the "T25 event") did not infringe, either literally or under the doctrine of equivalents, on the three DeKalb patents at issue in these cases (the '520, '880, and '877 patents), which used instead the method of "microprojectile bombardment." As evidence of this, Pioneer points to a declaration by Dr. Christopher Flick, DeKalb's Director of Research, and exhibits attached thereto, to show Dr. Flick (and therefore DeKalb) understood at least by May

1995 -- a year before these cases were filed -- how the T25 event worked and that it, not microprojectile bombardment, was used to create Pioneer's "PAT corn products." It also offers excerpts of deposition testimony from various researchers in the area to show that the T25 event does not infringe on the microprojectile bombardment method. In response DeKalb refers to evidence in the record supporting its theory that the T25 event and microprojectile bombardment are legally equivalent. Although DeKalb's evidence is not particularly compelling, the court finds it does establish at a minimum that DeKalb's [*7] decision to file these two actions was not made in bad faith or completely lacking a factual foundation. It is true DeKalb has relied on carefully selected portions of depositions to support its equivalence argument, but Pioneer is equally guilty of the same thing in compiling its evidence that the two methods are not equivalent. The court has also carefully considered Pioneer's remaining arguments and evidence, including the trial testimony of Dr. Nicholas Everett in a related patent suit that was tried in Delaware and DeKalb's refusal to produce the opinion (if any) of the outside counsel it retained before filing suit, but finds they add little in proving the "exceptional" nature of these two cases. In short then, the court finds Pioneer has not shown by clear and convincing evidence that DeKalb filed these actions in bad faith so as to justify an award of attorney's fees under § 285.

Alternatively, even assuming these cases fall into the "exceptional" category, the court would nevertheless exercise its discretion not to award attorney's fees under § 285. See *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1378 (Fed. Cir. 2001) (stating that even [*8] if court finds case is exceptional under § 285, court may still exercise its discretion not to award fees). Besides the reasons stated in the previous paragraph, additional reasons weigh against an award of fees in these cases. In particular, although not relevant in determining who is a "prevailing party," the court finds it proper in determining whether to assess fees to view the litigation between these parties as a whole, rather than looking at these two cases in isolation. No less than eleven separate infringement or noninfringement cases have been filed in this court over the last six years, all involving DeKalb's and Pioneer's corn product-related patents. These cases were especially complex and discovery-intensive. One of these cases eventually went to trial, ending in a hung jury. The parties also engaged in very extensive settlement discussions, which lead to the complete settlement of nine of these cases. Viewed in this broader context, imposing attorney's fees against DeKalb in just these two cases would ignore the reality of the entire and much larger dispute between these parties. With nine of the eleven cases already settled, the court does not see how fee shifting in [*9] the remaining two cases would serve any useful purpose as an "instrument of justice." Id.

For the reasons stated above, Pioneer's consolidated motion for costs and attorney's fees is granted in part and denied in part: Pioneer is awarded its costs in cases 96 C 50113 and 96 C 50240 but is denied its request for attorney's fees in those two cases.

Philip Reinhard

6/13/02

2.

LEXSEE 2001 US DIST LEXIS 24044

⚠ Caution
As of: Mar 30, 2007

LISE NICOLE DORFSMAN, et al., v. LAW SCHOOL ADMISSION COUNCIL, INC.

CIVIL ACTION NO. 00-0306

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*2001 U.S. Dist. LEXIS 24044*

November 28, 2001, Decided

**DISPOSITION:** [*1] Plaintiffs' Motion for Voluntary Dismissal granted. Defendant's request that Court issue an Order recognizing Defendant's right to seek fees, costs and expenses associated with litigation denied.

**COUNSEL:** For LISE NICOLE DORFSMAN, CIMA FATOMEH AMIRI, PLAINTIFFS: DAVID FERLEGER, DAVID FERLEGER, J.D., BALA CYNWYD, PA USA.

For LAW SCHOOL ADMISSIONS COUNCIL, INC., KIM DEMPSEY, DEFENDANTS: JOANNE D. SOMMER, EASTBURN & GRAY, DOYLESTOWN, PA USA.

For LAW SCHOOL ADMISSIONS COUNCIL, INC., KIM DEMPSEY, DEFENDANTS: JANE E. LEOPOLD-LEVENTHAL, EASTBURN & GRAY, P.C., DOYLESTOWN, PA USA.

**JUDGES:** HERBERT J. HUTTON, J.

**OPINION BY:** HERBERT J. HUTTON

**OPINION:**

### MEMORANDUM AND ORDER

HUTTON, J.

November 28, 2001

Presently before the Court are Plaintiffs' Motion to Dismiss (Docket No. 73), Defendant's Reply to Plaintiffs' Motion to Voluntarily Dismiss Cause of Action (Docket No. 74), Plaintiffs' Response to Defendant's Reply to the Motion to Dismiss (Docket No. 75), and Defendant's Sur-Reply to Plaintiffs' Motion to Dismiss (Docket No. 76). For the reasons discussed below, the Court will dismiss the above matter with prejudice. In addition, the Court declines to issue an Order recognizing Defendant's [*2] right to seek fees, costs, and expenses incurred in this litigation. The Court further finds that Plaintiffs are precluded from seeking attorney's fees.

### I. BACKGROUND

Plaintiffs brought suit against the Defendant Law School Admissions Council ("LSAC") on January 18, 2000 under the American's with Disabilities Act ("ADA"). The suit challenged the LSAC's policies and procedures for providing disability accommodations to students registered to take the Law School Admissions Test ("LSAT"). The original complaint named three plaintiffs: Pearl De La Cruz, Lise Nicole Dorfsman, and Cima Fatomeh Amiri. The first named-plaintiff, Pearl De La Cruz, voluntarily withdrew from the litigation soon after the complaint was filed. On February 12, 2001, this Court approved a "Stipulation Regarding Cima Amiri" entered into by the parties and granting Plaintiff Amiri the accommodations she sought. n1

---

n1 A dispute continued to exist as to Plaintiff Amiri's rights to attorney's fees.

---

On May 31, 2001, Plaintiffs filed a [*3] Motion for Class Certification. The Court denied Plaintiffs' motion

Case 1:05-cv-00548-JJF    Document 31-2    Filed 03/30/2007    Page 8 of 18

Page 2
2001 U.S. Dist. LEXIS 24044, *

with leave to renew on August 9, 2001, giving Plaintiffs thirty days to substitute a new class representative with live claims. In addition, the Court postponed any decision regarding class certification until new representatives for the class were named. Prior to the Court's ruling on the motion for class certification, Plaintiff Lise Dorfsman withdrew from the litigation on June 29, 2001.

Plaintiffs then moved this Court for voluntary dismissal of the claim on September 5, 2001. In their Motion, Plaintiffs concede that Lise Nicole Dorfsman and Cima Fatomeh Amiri have no standing to proceed with the current action. See Pls.' Mot. to Dismiss at P 2. While LSAC does not oppose the dismissal of the pending action, LSAC challenges that such a dismissal should be with prejudice and should preclude Plaintiffs from seeking fees, costs and expenses associated with the litigation. Furthermore, LSAC requests an order from this Court recognizing LSAC's right to seek fees, costs, and related expenses incurred in defending against the instant lawsuit.

II. DISCUSSION

A. Voluntary Dismissal with Prejudice [*4]

Rule 41(a)(2) of the Federal Rules of Civil Procedure provides that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. . . . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice." Fed. R. Civ. P. 41(a)(2). If a motion for dismissal under Rule 41(a)(2) fails to specify whether it requests dismissal with or without prejudice, the matter is left to the discretion of the court. *Spring City Corp. v. Am. Bldg. Co., 1999 U.S. Dist. LEXIS 19302, Civ. A. Nos. 97-8127, 98-105, 1999 WL 1212201, *2 (E.D. Pa. Dec. 17, 1999)*; see also Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2367 (1995). "A dismissal without prejudice is not a final adjudication on the merits; instead, it leaves the parties where they would have stood had the lawsuit never been brought." *Selas Corp. of Am. v. Wilshire Oil Co., 57 F.R.D. 3, 8 (E.D. Pa. 1974)*. Conversely, a dismissal of an action with prejudice is "a complete adjudication of the issues presented by the pleadings and is a bar to further action between the parties." Id.

"A [*5] dismissal with prejudice may be granted 'where it would be inequitable or prejudicial to defendant to allow plaintiff to refile the action.'" *John T. v. Del. Co. Intermediate Unit, 2001 U.S. Dist. LEXIS 18254, Civ. A. No. 98-5781, 2001 WL 1391500, at *4 (E.D. Pa. Nov. 7, 2001) (quoting Chodorow v. Roswick, 160 F.R.D. 522, 523 (E.D. Pa. 1995))*. Courts generally consider four factors when considering whether to dismiss an action with prejudice: (1) whether a motion for summary judgment has been filed; (2) the extent of a defendant's efforts and expenses in preparing for trial; (3) the excessive expenses in defending a second action; and (4) insufficient explanation for dismissal by the plaintiff. *Horizon Unlimited, Inc. v. Richard Silva & SNA, Inc., 1999 U.S. Dist. LEXIS 13320, Civ. A. No. 97-7430, 1999 WL 675469, at *5 (E.D. Pa. Aug. 31, 1999) (citing Ellis v. Merrill Lynch & Co., 1989 U.S. Dist. LEXIS 14720, Civ. A. Nos. 86-2865, 86-3375, 1989 WL 149757, *4 (E.D. Pa. Dec. 6, 1989))*; see also *Spring City Corp., 1999 U.S. Dist. LEXIS 19302, 1999 WL 1212201, *2*.

In the instant case, Defendant LSAC, while contesting the terms and conditions of dismissal, does not oppose Plaintiffs' motion to voluntarily dismiss the [*6] case. However, LSAC argues that the dismissal of this litigation should be with prejudice. See Def.'s Reply to Pls.' Mot. at 4. While Plaintiffs' motion does not specify whether it requests dismissal with or without prejudice, upon reply, Plaintiffs clarified that they would not oppose dismissal with prejudice of "Ms. Dorfsman's personal claim as long as such a dismissal would not preclude a suit on new facts which arise thereafter . . ." Pls.' Resp. to Def.'s Mot. at 1 n.1.

The facts of this case clearly warrant dismissal of the cause of action with prejudice. Plaintiffs concede that the only named-plaintiffs, Lise Nicole Dorfsman and Cima Fatomeh Amiri, have no standing to proceed with the current action. See Pls.' Mot. to Dismiss at P 2. "Cima Fatomeh Amiri received all the substantive relief which she and her doctors sought through the Stipulation approved by the Court on February 12, 2001 . . . Plaintiff Lise Dorfsman seeks no personal relief from LSAC." Id. Therefore, the action could have been dismissed for lack of standing. In addition, there is no doubt that LSAC has exhausted significant time and resources in the defending the instant matter and preparing for [*7] trial. The Docket Report details seventy-six filings since the institution of this action in January of 2000. Moreover, no motions for summary judgment have been filed.

Plaintiffs argue that dismissal with prejudice is inappropriate in the instant case because of Plaintiffs' unsuccessful attempt at class certification. See Pls.' Resp. to Def.'s Reply to Pls.' Mot. to Dismiss at 1-2. The Court denied Plaintiffs' request for class certification, granting them leave to renew if they could substitute a new class representative with live claims within thirty days. Rather than do so, Plaintiffs moved to dismiss the cause of action in its entirety.

Accordingly, no class action or class has ever been certified.

"It is the actual certification of an action as a class action . . . which alone gives birth to 'class as jurisprudential entity,' changes the action from a mere individual suit with class allegations into a true class action . . . and provides that sharp line of demarcation between an individual action seeking to become a class action and an actual class action." *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1304 (4th Cir. 1978). Moreover, "the possibility of prejudice [*8] to absent putative class members in the pre-certification context is that, unlike the situation in a certified class action, a 'pre-certification dismissal does not legally bind absent class members.'" *Larkin Gen. Hosp. v. Am. Tel. & Tel. Co.*, 93 F.R.D. 497, 501 (E.D. Pa. 1982). Therefore, no possible prejudice to potential class members exists, and no notice of dismissal is necessary. See *id. at 503*. The instant suit was brought as an individual action, and while Plaintiffs sought class certification, such an action was denied until Plaintiffs could produce a named-plaintiff with a live claim against LSAC. Plaintiff has failed to do so. Therefore, since there are no Plaintiffs in the instant action with standing and no class has been certified, the Court grants Plaintiffs' Motion for Voluntary Dismissal, but concludes that, under the circumstances, dismissal with prejudice is appropriate.

### B. LSAC's Claim for Fees, Costs, and Expenses

LSAC seeks an order from the Court that "Defendant's right to seek fees, costs, and related expenses, as permitted under the law, is not in any way limited or curtailed as a result of Plaintiffs' voluntary [*9] withdraw of this litigation." Def. Reply to Pls.' Mot. to Dismiss at P 5. The Court declines to issue such an order. Courts generally award costs and attorney's fees in cases where a voluntary dismissal has been granted without prejudice "to compensate the defendant for having incurred the expense of trial preparation without the benefit of a final determination of the controversy." *Davenport by Fowlkes v. Gerber Prod. Co.*, 1989 U.S. Dist. LEXIS 14557, Civ. A. No. 87-3198, 1989 WL 147550, *1 (E.D. Pa., Dec. 6, 1989); *John Evans Sons, Inc. v. Majik-Ironers, Inc.*, 95 F.R.D. 186, 191 (E.D. Pa. 1982); *Citizens Sav. Asso. v. Franciscus*, 120 F.R.D. 22, 24-25 (M.D. Pa. 1988) ("The imposition of costs is not always a prerequisite for a voluntary dismissal without prejudice, although it is often necessary for the protection of the defendant, and the decision whether or not to impose costs and attorney's fees upon the plaintiff is within the discretion of the court."). If an action is dismissed with prejudice, however, the court lacks the power to grant attorney's fees, barring exceptional circumstances. *Horizon Unlimited, Inc. v. Richard Silva & SNA, Inc.*, 1999 U.S. Dist. LEXIS 13320, Civ. A. No. 97-7430, 1999 WL 675469, [*10] at *2 (E.D. Pa. Aug. 31, 1999).

For the reasons articulated above, Plaintiffs' cause of action will be dismissed with prejudice. A dismissal with prejudice "in effect grants judgment in favor of defendant at the request of the plaintiff; defendants are in the same position they would have been in had the trial occurred, except they save the additional costs of litigation." *Horizon*, 1999 U.S. Dist. LEXIS 13320, 1999 WL 675469, at *2. LSAC has not demonstrated any exceptional circumstances warranting the imposition of fees and costs. Therefore, the Court declines to issue an Order recognizing Defendant's right to seek fees, costs, and expenses associated with defending the current action.

### C. Plaintiffs' Claim for Attorney's Fees, Costs, and Expenses

Finally, LSAC requests that Plaintiffs be precluded from asserting any claims for fees or costs associated with this litigation. Towards this end, LSAC further seeks to have paragraph four of the February 12, 2001 "Stipulation Regarding Cima Amiri" vacated. Paragraph four of the February 12, 2001 Stipulation states in relevant part that "neither party waives any right to claim or to oppose any such award of fees and expenses in connection [*11] with this Stipulation." Defendant contends that, pursuant to the Stipulation, Plaintiff Amiri is not a "prevailing party" entitled to attorney's fees under the ADA.

#### 1. Prevailing Party -- the *Buckhannon* Standard

A plaintiff who is a "prevailing party" in an ADA action may be awarded reasonable attorney's fees, including litigation expenses and costs. See *42 U.S.C. § 12205* ("The court, . . . in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expense, and costs."). Plaintiff is entitled to reasonable attorney's fees if she is found to be a "prevailing party" for the purposes of the underlying statute. The United States Supreme Court recently addressed the issue of whether a plaintiff is properly to be considered a "prevailing party" for the purpose of recovering attorney's fees in *Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).

In Buckhannon, the Supreme Court held that it would not award attorney's fees to a party whose lawsuit was dismissed as moot, even though it was [*12] likely that the lawsuit helped bring about the legislation that rendered the action moot. *Buckhannon*, 121 S. Ct. at 1839. The Supreme Court rejected the so-called "catalyst theory" of attorney's fees on the ground that it might permit an award "where there is no judicially sanctioned change in the legal relationship of the parties." *Id.* 121 S.

*Ct. at 1840* (emphasis added). The Court noted that a "material alteration of the legal relationship of the parties" is necessary to permit an attorney's fee award. Id. (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93, 109 S. Ct. 1486, 103 L. Ed. 2d 866 (1989)*). Specifically, the Court listed two judicial outcomes under which a party may be considered "prevailing" for the purposes of awarding attorney's fees: (1) an enforceable judgment on the merits, or (2) a settlement agreement enforceable through a court-ordered consent decree. Id. The former provides the necessary foundation for a plaintiff's status as a prevailing party because the plaintiff has received at least some relief based upon the merits of his or her claim. Id. The latter is acceptable, even without an [*13] admission of liability, because it is a "court-ordered change in the legal relationship" between the parties. *Id. 121 S. Ct. at 1839-41*.

As noted above, Plaintiff Dorfsman voluntarily withdrew her cause of action. As she sought no personal relief from LSAC, Plaintiff Dorfsman lacked standing to pursue the instant litigation. See Pls.' Mot. to Dismiss at P 2. Accordingly, she has not prevailed on any of the material issues presented in the case, nor has she effectuated a legal change in her relationship with LSAC. Therefore, Plaintiff Dorfsman is not a "prevailing party" and may not seek attorney's fees, costs, or expenses incurred in pursuing her claim. The issue thus becomes whether Plaintiff Cima Amiri, who settled her claims against LSAC, qualifies as a "prevailing party" under the standard promulgated in Buckhannon.

On February 12, 2001, this Court approved a "Stipulation Regarding Cima Amiri" that was entered into by the parties. The Stipulation afforded Plaintiff Amiri all of the accommodations she sought in taking the LSAT. LSAC contends, however, Plaintiff Amiri is not a prevailing party because she has failed to "'secure a judgment on the merits or a court-ordered consent [*14] decree . . .'" Def.'s Reply to Pls.' Mot. to Dismiss at P 6 (quoting *Buckhannon, 121 S. Ct. at 1840*). Under the circumstances presented in the instant case, the Court agrees.

It is clear that Plaintiff Amiri, who voluntarily settled her lawsuit with LSAC, has not achieved a judgment on the merits, nor has she secured a court-ordered consent decree. Rather, the Court here is confronted with very situation that concerned the United States Supreme Court in Buckhannon - that is, a lawsuit that brought about a voluntary change in a defendant's conduct. Such a "voluntary change in conduct . . . lacks the necessary judicial imprimatur" for a plaintiff to be considered a prevailing party. *Buckhannon, 121 S. Ct. at 1840*; see also *County of Morris v. Nationalist Movement, 273 F.3d 527, Nos. 00-2621 & 00-3569, 2001 WL 1456461*

(3d Cir. November 16, 2001) (characterizing a prevailing party under Buckhannon as "one who has been awarded some relief by the court"); *Ken-N.K., Inc. v. Vernon Twp., 2001 U.S. App. LEXIS 19453, No. 98-1871, 2001 WL 1006265* (6th Cir. Aug. 23, 2001) (slip opinion) ("Because [plaintiffs] obtained neither a judgment on the merits nor a consent [*15] decree with respect to their claims against [defendant], they cannot be considered 'prevailing parties . . .'"); *Crabill v. Trans Union, L.L.C., 259 F.3d 662, 667 (7th Cir. 2001)* ("The significance of the Buckhannon decision . . . [is] its insistence that a plaintiff must obtain formal judicial relief, and not merely 'success,' in order to be deemed a prevailing or successful party under any attorneys' fee provision . . ."); *Griffin v. Steeltek, Inc., 261 F.3d 1026, 1029 (10th Cir. 2001)* (holding that a plaintiff who fails to secure a judgment on the merits or by court-ordered consent decree in a suit under the ADA, is not entitled to attorney's fees even if the pursuit of litigation has caused a desired and voluntary change in the defendant's conduct).

There is a distinction between consent decrees, in which there is a court-ordered change in the legal relationship between the parties, and private settlement agreements, which require no such judicial involvement. Under Buckhannon, private settlement agreements do not confer prevailing party status. See *Buckhannon, 121 S. Ct. at 1840 n.7*. In the instant, the parties [*16] reached the terms and conditions of the Stipulation without any intervention from this Court. Moreover, the Court in no way imposed or dictated the substantive provisions of the Stipulation at issue. Therefore, contrary to Buckhannon, Plaintiff Amiri has failed to achieved a judicially sanctioned change in the parties' legal relationship. Accordingly, Plaintiff Amiri may not be considered a "prevailing party" for the purposes of recovering attorney's fees.

An appropriate Order follows.

### ORDER

AND NOW, this 28th day of November, 2001, upon consideration of Plaintiffs' Motion to Dismiss (Docket No. 73), Defendant's Reply to Plaintiffs' Motion to Voluntarily Dismiss Cause of Action (Docket No. 74), Plaintiffs' Response to Defendant's Reply (Docket No. 75), and Defendant's Sur-Reply to Plaintiffs' Motion to Dismiss (Docket No. 76), IT IS HEREBY ORDERED that Plaintiffs' Motion for Voluntary Dismissal is **GRANTED**.

IT IS FURTHER ORDERED that Defendant's request that this Court issue an Order recognizing Defendant's right to seek fees, costs, and expenses associated with this litigation is **DENIED**.

2001 U.S. Dist. LEXIS 24044, *

IT IS FURTHER ORDERED that Plaintiffs are precluded from seeking [*17] fees, costs, and expenses associated with this litigation.

BY THE COURT:

HERBERT J. HUTTON, J.

3.

LEXSEE 1990 US DIST LEXIS 1748


Analysis
As of: Mar 30, 2007

Irwin A. Zucker, Plaintiff, v. Stanley Katz, et al., Defendants

No. 87 Civ. 7595 (SWK)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*1990 U.S. Dist. LEXIS 1748*

February 21, 1990, Decided
February 23, 1990, Filed

**OPINION BY:** [*1]

KRAM

**OPINION:**

*MEMORANDUM OPINION AND ORDER*

SHIRLEY WOHL KRAM, UNITED STATES DISTRICT JUDGE

This is an application for costs under *Federal Rule of Civil Procedure 41(d)* n1 by defendants and their attorneys, Paul, Weiss, Rifkind, Wharton & Garrison ("Paul, Weiss").

  n1 Rule 41(d) provides that:

  If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.

*Background*

The facts of this case are fully set forth in this Court's Opinion and Order of March 1, 1989, familiarity with which is assumed. *Zucker v. Katz, 708 F. Supp. 525 (S.D.N.Y. 1989)*. In October 1987, Irwin Zucker filed suit against the defendants in this action and their accountants, Perelson Johnson & Rones ("Perelson Johnson") for twenty claims including breach of contract, federal securities and common law fraud, intentional or reckless misrepresentation, intentional infliction of emotional distress, [*2] prima facie tort, and other state law claims. Paul, Weiss discovered that one of the partners in Perelson Johnson was a resident of the same state as plaintiff and thus diversity jurisdiction was lacking. In a conference before this Court, Paul, Weiss informed plaintiff of this discovery. On January 26, 1988, plaintiff filed a voluntary dismissal without prejudice pursuant to *Fed. R. Civ. P. 41(a)(1)*, which this court so ordered. In a March 18, 1988 conference, the parties stipulated that the plaintiff would serve the present complaint and that the defendants would retain their rights under Rule 41. The present complaint was filed on March 23, 1988. The complaint was nearly identical to the first complaint except that Perelson Johnson had been dropped as defendants.

This Court held that defendants are entitled to reasonable, not necessarily actual, costs pursuant to Rule 41(d). *Zucker v. Katz, 708 F. Supp. at 539-40*. This Court directed the parties to endeavor to agree on reasonable costs, and if an agreement could not be reached, to submit papers to this Court regarding what reasonable costs should be granted. The parties could not stipulate on reasonable costs and thus submitted [*3] the appropriate papers to this Court.

Defendants filed an affidavit with this Court requesting payment of costs in the amount of $ 66,154.11. n2

Case 1:05-cv-00548-JJF   Document 31-2   Filed 03/30/2007   Page 14 of 18

Page 2
1990 U.S. Dist. LEXIS 1748, *

Defendants' Affidavit para. 4. Plaintiff answered by claiming that defendants should receive costs equal to the amount necessary to read the caption, call Perelson Johnson to check if diversity jurisdiction was satisfied, and call plaintiff's counsel. n3 Plaintiff's Affidavit para. 15. In their reply brief, defendants assert that in the alternative, $ 25,679.70 n4 plus disbursements would be reasonable costs following plaintiff's argument that only those costs relating to work product which is useless in the second action can be recovered under rule 41(d). Defendants' Reply Brief at n.3.

n2 Defendants reach this amount in the following manner:

| | |
|---|---|
| $ 49,231.01 | research for dismissal of complaint |
| $ 2,201.72 | attorneys fees - court appearances |
| $ 8,326.17 | research relating to accountants |
| $ 6,395.21 | disbursements |
| $ 66,154.11 | total |

Defendants' Affidavit paras. 23, 24.

n3 Plaintiff would have this Court assess costs at the rate for "a semi-competent law clerk [who should] have handled the entire matter in well-under an hour with two simple telephone calls." Plaintiff's Affidavit para. 16.

[*4]

n4 This figure is apparently derived by adding together costs of research rendered useless by the second complaint ($ 15,151.81), court attendance costs for the first action ($ 2,201.72), and matters somehow related to the claims against Perelson Johnson ($ 8,326.17). See Defendants' Affidavit para. 23.

*Discussion*

Reasonable costs under Rule 41(d) are not necessarily the actual costs of the defendant in the defense of the first action. *Zucker v. Katz*, 708 F. Supp. at 539; see *Activox, Inc. v. Envirotech Corp.*, 532 F. Supp. 248, 251 (S.D.N.Y. 1981). A defendant should recover for reasonable costs incurred in defense of the first suit that cannot be used in an ongoing or subsequent litigation. *Cauley v. Wilson*, 754 F.2d 769, 773 (7th Cir. 1985) (". . . the district court should therefore not award attorney's fees for expenses incurred in research, discovery, or preparation that will be useful to [defendant] in defending [the subsequent action] . . ."); see *McLaughlin v. Cheshire*, 676 F.2d 855, 857 (D.C. Cir. 1982); *Lau v. Glendora Unified School Dist.*, 792 F.2d 929 932 (9th Cir. 1986); *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 972-73 (8th Cir. 1984); [*5] *GAF, Corp. v. Transamerica Ins. Co.*, 665 F.2d 364, 367-68 (D.C. Cir. 1981). By requesting over $ 66,000 in reasonable costs for defending the first action here, defendants are seeking to recover their extraordinary, yet apparently actual costs. Defendants also request that this Court award them the entire amount of the disbursements which they incurred in defending the first action. This is inappropriate relief since much of these disbursements and other costs were incurred for work product which can be used in the present action.

Plaintiff's argument that defendants' Rule 41(d) costs should be limited to less than an hour's work of a law clerk is also unreasonable. Plaintiff's voluntary dismissal of the first action and subsequent filing of the second action caused defendants to incur attorneys' fees for court appearances, research for an order to show cause to extend the time to answer the first complaint, and administrative costs associated with these. Plaintiff's opposition is premised on an argument that defendants should not be allowed to recover Rule 41(d) costs because Paul, Weiss did not notify plaintiff that diversity jurisdiction was lacking immediately upon receipt [*6] of the first complaint. Plaintiff cannot seek to lessen the amount of costs it owes defendants by trying to impose its duty upon defendants' attorneys.

Footnote 3 of defendants' reply brief states that "[e]ven under Zucker's interpretation, defendants should still recover $ 25,679.70 plus disbursements -- the costs purely wasted on the dismissal actions, costs fully documented in our application. See Fagen Aff. para. 23." The affidavit of Leslie Fagen categorizes the attorneys' fees as follows:

(i) efforts in analyzing and seeking dismissal of the Amended Complaint: $ 49,231.01 of which $ 15,151.81

Case 1:05-cv-00548-JJF   Document 31-2   Filed 03/30/2007   Page 15 of 18

Page 3
1990 U.S. Dist. LEXIS 1748, *

related to work products rendered useless after the filing of Zucker's third Complaint;

(ii) court attendance costs regarding the Amended Complaint, including the hearing on the Order to Show Cause and the hearing regarding the voluntary dismissal: $ 2,201.72; and

(iii) matters directly relating to claims against the accountant-defendant later dropped in the subsequent action: $ 8,326.17.

Defendants' Affidavit para. 23.

*Attorneys' fees*

The amount of $ 49,231.01 for research regarding the dismissal of the first complaint is not covered by Rule 41(d). Most, if not all, of this [*7] amount reflects research which can be, and probably has been, used in the defense of the second suit. Costs for work product which can be used in a subsequent litigation is not recoverable under Rule 41(d). See, e.g., *Cauley, 754 F.2d at 773; McLaughlin, 676 F.2d at 857*. The request for attorneys' fees in the amount of $ 49,231.01 is denied because it reflects work product which can be used defending the second action.

Defendants claim that $ 15,151.81 of the $ 49,231.01 is related to work product rendered useless by the filing of the second complaint. Defendants have offered no explanation of what work product these costs relate to and why it was rendered useless. The alternative request for $ 15,151.81 of attorneys' fees for research is also denied because defendants have failed to prove that these attorneys' fees are in fact reasonable costs which are covered by Rule 41(d).

The defendants request attorneys' fees of $ 2,201.72 for court attendance for the first action. These are the type of costs which are clearly covered by Rule 41(d) because they cannot be used in defense of the second action. *McLaughlin, 676 F.2d at 857*. The request for $ 2,201.72 in attorney's fees [*8] relating to court attendance for the first suit is granted.

Defendants also request $ 8,326.17 in attorneys' fees relating to claims against Perelson Johnson. Paul, Weiss, however, did not represent the accounting firm in defending against the first complaint and Perelson Johnson is not named in the second complaint. Rule 41(d) allows recovery of costs when the plaintiff files a second action involving the same claims against the same defendant. There can be no recovery of attorneys' fees incurred for or by Perelson Johnson since they are not defendants in the second action. The request for $ 8,326.17 in attorney fees relating to the claims against Perelson Johnson is denied.

*Disbursements*

Defendants request Rule 41(d) costs of $ 6,395.21 for disbursements incurred in defense of the first suit. Defendants' Affidavit para. 24. This amount reflects disbursements for reporting services, Lexis, Law Journal search, word processing, overtime costs, duplicating, telephone tolls, telecopy, postage, external messengers, express delivery, and public transportation. Id.

In the March 1, 1989 Opinion and Order, this Court held that defendants are entitled to recover "reasonable" costs [*9] under Rule 41(d). *Zucker v. Katz, 708 F. Supp. at 539*. Disbursements are not recoverable under Rule 41(d) when they relate to work product that can be used in the second action. See *Simeone v. First Bank Nat'l Ass'n, 125 F.R.D. 150, 155 (D. Minn. 1989)*. Defendants' request for disbursements for Lexis and word processing is denied because defendants have not demonstrated why this work product cannot be used in defending against the second complaint. Defendants request $ 518.75 in disbursements for overtime but they have not shown that these were necessary and reasonable costs. The request for overtime costs is therefore denied.

The disbursements for reporting service, Law Journal search, duplicating costs, telephone tolls, telecopy, postage, external messengers, express delivery, and public transportation are reasonable costs which cannot be used in the defense of the second action. The defendants' request for disbursements of $ 15.52 for reporting service, $ 21.00 for Law Journal search, $ 653.52 for duplicating costs, $ 37.87 for telephone tolls, $ 26.18 for telecopy, $ 7.14 for postage, $ 199.00 for external messengers, $ 210.05 for express delivery, and $ 68.25 for public [*10] transportation is granted Defendants are therefore granted $ 1,238.53 in disbursement costs under Rule 41(d).

*Conclusion*

Plaintiff is directed to pay the defendants $ 3,440.25 in reasonable attorneys' fees and disbursements under *Fed. R. Civ. P. 41(d)* and the present action is stayed until such payment is made.

SO ORDERED

DATED: New York, New York
February 21, 1990

4.

Case 1:05-cv-00548-JJF    Document 31-2    Filed 03/30/2007    Page 16 of 18

LEXSEE 1991 BANKR LEXIS 288


Cited
As of: Mar 30, 2007

IN THE MATTER OF FEDERATED DEPARTMENT STORES, INC.,
ALLIED STORES CORPORATION, ET AL, Debtors

Consolidated Case No. 1-90-00130 Chapter 11, Document 3702

UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN
DISTRICT OF OHIO, WESTERN DIVISION

*1991 Bankr. LEXIS 288*

March 7, 1991, Filed

JUDGES: [*1]

J. Vincent Aug, Jr., United States Bankruptcy Judge.

OPINION BY:

AUG

OPINION:

ORDER PERMITTING SECURITIES TRADING IN CERTAIN CIRCUMSTANCES

Upon the Motion of Fidelity Management & Research Company, ("Fidelity"), a member of the Official Bondholders' Committee (the "Committee") of Allied Stores Corporation ("Allied"), for an order determining that Fidelity will not be violating its duties as a Committee member (and accordingly will not be subjecting its claims to possible disallowance, subordination, or other adverse treatment) by trading in securities of Allied, co-debtor Federated Department Stores, Inc. ("Federated"), and Ralphs Grocery Company ("Ralphs"), a non-debtor, during the pendency of the Allied and Federated Cases (the "Cases"), provided that Fidelity establishes and effectively implements policies and procedures to prevent the misuse of nonpublic information obtained through its activities as a Committee member; and this Court having considered Fidelity's Motion and accompanying Memorandum of Law, setting forth the information blocking devices Fidelity proposes to employ; the Memorandum of the Securities and Exchange Commission; the Statement of the Securities Industry Association and [*2] Certain Members of the Council of Institutional Investors; the Joinder of Caywood-Christian Capital Management; the Response of the Federated Bondholders Committee; the Response of Debtors; and the Response of the United States Trustee; and Memorandum of the U.S. Trustee opposing Fidelity's Motion (Doc. 3469); and the Court having concluded that the motion should be granted; it is hereby

ORDERED, that Fidelity will not be violating its fiduciary duties as a committee member and accordingly, will not be subjecting its claims to possible disallowance, subordination, or other adverse treatment, by trading in securities of the Debtors and Ralphs during the pendency of these Cases, provided that Fidelity employs an appropriate information blocking device or "Chinese Wall" which is reasonably designed to prevent Fidelity trading personnel from receiving any nonpublic committee information through Fidelity committee personnel and to prevent Fidelity committee personnel from receiving information regarding Fidelity's trading in securities of the Debtors or Ralphs in advance of such trades; and it is further

ORDERED, that the "Chinese Wall" procedures to be employed by Fidelity if its wishes [*3] to trade in securities of the Debtors and Ralphs shall include the following information blocking procedures: (1) Fidelity shall have all personnel who will have access to nonpublic information in the bankruptcy proceeding ("committee personnel") execute a letter acknowledging that they may receive non-public information and that they are aware of the "Chinese Wall" procedures which are in effect with respect to the Debtors and Ralphs; (2) Fidel-

ity committee personnel will share non-public Committee information with no other Fidelity employees (except the General Counsel for the purpose of rendering legal advice to committee personnel and who will not share such non-public committee information with other Fidelity employees); (3) Fidelity committee personnel will maintain all files containing non-public information generated from committee activities in cabinets inaccessible to other employees; (4) Fidelity committee personnel will receive no information regarding Fidelity's current securities trades in advance of such trades, except that committee personnel may receive reports on Fidelity's ownership of the securities represented by the Committee no more frequently than monthly; [*4] (5) Fidelity compliance department personnel shall review Fidelity's trades in securities of the Debtors and Ralphs to confirm that such trades were made in compliance with the "Chinese Wall" procedures and shall keep and maintain records of their review; provided, however, this Order is not intended to preclude the Court from taking any action it may deem appropriate in the event that it is determined that an actual breach of fiduciary duty has occurred because the procedures employed are not so effective or for reasons unrelated to the fact of Fidelity's ability to trade based upon the establishment of the procedures set forth in this Order; and it is further

ORDERED, that with respect to the Joinder of Caywood-Christian Capital Management and certain other members of the Committee, such joining parties shall be covered by this Order (i) only if they are engaged in the trading of securities as a regular part of their business, and (ii) such entity files with the Court a copy of the information blocking devices they propose to employ.

Dated: Cincinnati, Ohio
March 7, 1991
SO ORDERED: